IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| DANIEL E. DAVIS,<br>    Plaintiff,<br><br>-vs.-<br><br>FAVELLE FAVCO CRANES USA, INC.,<br>FAVELLE FAVCO CRANES (M) SDN BHD,<br>FAVELLE FAVCO HOLDINGS SDN BHD,<br>and MUHIBBAH ENGINEERING,<br>    Defendants. | § § § § § § § § § § §    Civil Action No. B-00-003<br><br>   Hon. Hilda Tagely |

### PLAINTIFF DAVIS' RESPONSE TO
### DEFENDANT FAVELLE'S MOTION TO DISQUALIFY
### ALTON PAYNE AND FIRM AS COUNSEL FOR PLAINTIFF

Alton W. Payne
Texas Bar No. 15649450
Fed. I.D. No. 2025
Payne & D'Ambrosio, L.L.P.
1700 West Loop South, Suite 1230
Houston, Texas 77027-3008
Telephone: (713) 840-8008
Telefax: (713) 840-8088

Of Counsel:
Ernesto Gamez
Victor Qunitanilla
Law Office of Ernesto Gamez, Jr., P.C.
777 E. Harrison Street
Brownsville, Texas 78520
Telephone: (956) 541-3820
Telefax: (956) 541-7694
ATTORNEYS FOR PLAINTIFF
DANIEL E. DAVIS

# TABLE OF CONTENTS

I. SUMMARY ..................................................................................................................1

    A. Favelle Is A "Wanna-Be" Client ..........................................................................1

    B. Favelle Has Raised Only General, Superficial Connections.........................2

    C. No Confidential Information Transferred ......................................................2

    D. Trademark Matters And Patent Matters Are Not Substantially Related ..................................................................................................................2

    E. Attorneys That Prosecuted A Trademark Or Copyright Application Can Be A Witness In The Litigation Of The Trademark Or Copyright..........................................................................................3

    F. The Matters At Issue Are Not Substantially Related ................................3

II. FAVELLE IS A "WANNA-BE" CLIENT....................................................................3

    A. The Key Is To Preserve A Client's Secrets And Confidences Not To Disrupt Litigation ................................................................................3

    B. No Attorney-Client Relationship Existed Between Favelle and Payne .........................................................................................................4

    C. Payne Could Not Have Received Client Secrets .........................................6

III. FAVELLE HAS RAISED ONLY A GENERAL, SUPERFICIAL CONNECTION BETWEEN THE SUBJECT MATTER OF THE TRADEMARK APPLICATIONS AND THE PRESENT CASE.....................7

IV. NO CONFIDENTIAL INFORMATION WAS, OR COULD HAVE BEEN, USED IN FILING TRADEMARK APPLICATIONS..................................................................................................8

V. TRADEMARK MATTERS AND PATENT MATTERS ARE NOT SUBSTANTIALLY RELATED, GENERALLY OR FOR THIS CASE........................................................................................................9

VI. EVEN THE RULES PROVIDE FOR THE REPRESENTATION IN THE PRESENT CASE............................................................ 11

VII. FAVELLE KNEW DAVIS HAD AN ATTORNEY, AND IT WAS PAYNE............................................................................................. 11

VIII. FAVELLE KNEW IT HAD OBLIGATIONS TO PAY PAYNE ON BEHALF OF ENGINEER ORGERON AND DAVIS............................ 14

IX. CONCLUSION................................................................................................ 15

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAY 22 2000

Michael N. Milby
Clerk of Court

| | |
|---|---|
| DANIEL E. DAVIS,<br>Plaintiff,<br><br>-vs.-<br><br>FAVELLE FAVCO CRANES USA, INC.,<br>FAVELLE FAVCO CRANES (M) SDN BHD,<br>FAVELLE FAVCO HOLDINGS SDN BHD,<br>and MUHIBBAH ENGINEERING,<br>Defendants. | § § § § § § § § § § § | Civil Action No. B-00-003<br><br>Hon. Hilda Tagely |

## PLAINTIFF DAVIS' RESPONSE TO DEFENDANT FAVELLE'S MOTION TO DISQUALIFY ALTON PAYNE AND FIRM AS COUNSEL FOR PLAINTIFF

### I. SUMMARY

**A.** *Favelle Is A "Wanna-Be" Client*

Favelle is a "wanna-be" client[1]. It is undisputed that Payne was Davis' attorney at all times. (**Exhibit 1**, Davis Aff., ¶¶3, 4; **Exhibit 2**, Decl. Greta Sullivan, ¶2). Further, it is undisputed that Payne was the attorney of engineer Orgeron. (**Exhibit 1**, Davis Aff., ¶4; **Exhibit 2**, Decl. Greta Sullivan, ¶3). Both Davis and Orgeron were employees of Favelle. *Id.* These relationships were, at all times, open and undisputed. *Id.* On September 8, 1999, Payne represented Davis in a meeting at the offices of Atlas & Hall where the entire management of Favelle was present in person or by phone as well as all Favelle's lawyers, Davis was fired, and Payne represented Davis. (**Exhibit 1**, Davis Aff., ¶10). Now, as a tactical maneuver, Favelle is a "wanna-be" client so it can disqualify Payne. Such "wanna-be" clients have been chastised by the courts. *Houston Pipe Line Co. v. BHP Petroleum (Americas), Inc.*, 785 S.W.2d 398, 402 (Tex. App. - Houston [14th Dist.] 1988, writ denied).

---

[1] A "wanna-be" client is an entity who has not received the attorney's legal services yet seeks to disqualify the attorney when the attorney becomes adverse to it.

### B. *Favelle Has Raised Only General, Superficial Connections*

Favelle has raised only a general, superficial connection between the subject matters of the trademark applications and the case at hand, particularly, that they are both intellectual property matters. The Texas Supreme Court has stated:

> [T]o prevent a motion to disqualify counsel from being used as a dilatory tactic, trial courts must strictly adhere to an exacting standard when considering such motions. When contemplating whether disqualification of counsel is proper, the court must determine whether the matters embraced within the pending suit are *substantially related* to the factual matters involved in the previous suit. [emphasis in original].

*NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399 (Tex. 1989). Favelle's general, superficial connection between matters misleads this Court and is insufficient to demonstrate a substantial relationship requiring disqualification. *Coker*, 765 S.W.2d at 400 (Tex. 1989).

### C. *No Confidential Information Transferred*

There can be no confidential information transferred with respect to a trademark application. Favelle's representations to the court that all intellectual property matters require the sharing of confidential information is inaccurate and misleading. Payne did not, and could not, use any confidential information in filing the trademark applications. The Trademark Act (15 U.S.C. §1 *et seq.*) requires that no confidential information can exist in a trademark application.

### D. *Trademark Matters And Patent Matters Are Not Substantially Related*

The courts have seen through Favelle's façade that trademark matters and patent matters are substantially related by declaring "[t]he happenstance that trademarks are registered in the Patent Office should not result in confusing the principles involved in **dissimilar proceedings** with respect to wholly **dissimilar rights**." *Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 160 U.S.P.Q. 715 (C.C.P.A. 1969).

### E. Attorneys That Prosecuted A Trademark Or Copyright Application Can Be A Witness In The Litigation Of The Trademark Or Copyright

It is not unusual for the attorney that prosecuted a trademark or copyright application to be a witness in the litigation of the trademark or copyright. For example, Payne has been a witness in cases he litigated in the United States District Court for the Southern District of Texas in the following matters: *Kenneth W. King v. Jewels Custom Home Builders, Inc. et al.*, Civil Action No. H-95-3755, In The United States District Court For The Southern District Of Texas, Houston Division and *Kenneth W. King v. Eli Milbauer, et al.*; Civil Action No. H-95-3754; In the United States District Court for the Southern District of Texas, Houston Division. No disqualification was required nor was it requested.

### F. The Matters At Issue Are Not Substantially Related

Assuming, *arguendo*, that Payne did represent Favelle in the trademark matters, the Texas Disciplinary Rules of Professional Conduct provide that a lawyer may be adverse to a current client so long as the matters are not substantially related and the lawyer will be able to pursue all reasonable alternatives on behalf of both clients during those representations. Comment 11 to Texas Rule 1.06; *Conoco Inc. v. Baskin*, 803 S.W.2d 416, 419-20 (Tex. App. - El Paso 1991, orig. proceeding) (discussing Rule 1.06).

## II. FAVELLE IS A "WANNA-BE" CLIENT

### A. The Key Is To Preserve A Client's Secrets And Confidences Not To Disrupt Litigation

A motion to disqualify counsel is for the purpose of preserving a client's secrets and confidences. The Texas Code of Professional Responsibility DR 4-101(B) mandates that a lawyer shall not knowingly reveal a confidence or secret of his client or use a confidence or secret of his client to that client's disadvantage. Supreme Court of Texas, Rules Governing the State Bar of Texas, Article X, § 9 DR 2-103(D)(2). A motion to disqualify counsel is the proper procedural vehicle to challenge an attorney's representation whenever an attorney seeks to represent an interest

adverse to that of a former client. *Coker*, 765 S.W.2d at 399 (Tex. 1989). Disqualification is a sever remedy requiring strict scrutiny. *Id*. at 400.

The key is to preserve a client's secrets and confidences. *Id*. First, there must be an attorney-client relationship. Second, there must be secrets and confidences of the client that require protecting. The evidence clearly shows that Payne did not have an attorney-client relationship with Favelle; that Favelle did not transfer any secrets and confidences to Payne; and that Favelle knew Payne was Davis' attorney and never protested. Simply stated, Favelle is a "wanna-be" client: *an entity who has not received the attorney's legal services yet seeks to disqualify the attorney when the attorney becomes adverse to it.*

### B. *No Attorney-Client Relationship Existed Between Favelle and Payne*

It is undisputed that Payne was Davis' attorney at all times. (**Exhibit 1**, Davis Aff., ¶¶3, 4; **Exhibit 2**, Decl. Greta Sullivan, ¶2). Further, it is undisputed that Payne was the attorney of engineer Orgeron, an employee of Favelle. (**Exhibit 1**, Davis Aff., ¶4; **Exhibit 2**, Decl. Greta Sullivan, ¶3). Both Davis and Orgeron were employees of Favelle. *Id*. These relationships were, at all times, open and undisputed. It is also undisputed that Payne had meetings with Favelle management representing Davis individually. For example, on September 8, 1999, Payne represented Davis in a meeting at the offices of Atlas & Hall where the entire management of Favelle and its parent company was present in person or by phone and Davis was fired. No one objected to Payne representing Davis at the September 8, 1999 meeting, or at any other time before the present litigation. (**Exhibit 1**, Davis Aff., ¶¶4, 10). Now, as a tactical maneuver, Favelle is a "wanna-be" client so it can disqualify Payne.

Mr. Cheam, the Director in Charge of U.S. Operations for Favelle, confirmed in his testimony that *Payne did not have any contact with anyone that represented Favco USA other than Mr. Davis* until April of 1999 and then it was adversarial. Particularly, Mr. Cheam's testimony was:

> Q.   Okay. What all was done – Well, it doesn't matter. It doesn't matter. Now, prior to this letter that's dated March 22, 1999, which is Exhibit – which is Exhibit 2 where Mr. Payne makes

---
Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff
- 4 -

> the statement that he is representing Mr. Davis in a matter adverse to the corporation, to your knowledge, did Favco USA have any knowledge that Mr. Davis – I mean, Mr. Payne was purporting to represent Mr. Davis individually in a matter adverse to Favco USA?
>
> A.   Until that date we don't really know.
>
> Q.   You knew nothing about that?
>
> A.   Yeah.  We knew nothing.
>
> Q.   He's already testified that he [Payne] did not have any contact with anyone at – that represented Favco USA other than Mr. Davis until, according to his affidavit, April of 1999.  As far as you know, is that correct?
>
> A.   That's correct.

RR at 173:2-18 from Favelle's motion.

Mr. Cheam, the Director in Charge of U.S. Operations for Favelle, testified that no document existed indicating that Payne had an attorney-client relationship with Favelle.  Further, Cheam testified that nothing existed indicating that Payne was paid because he was Favelle's attorney.  Still further, Cheam testified that Favelle didn't even know about Al Payne.  Particularly, Mr. Cheam's testimony was:

> THE COURT:   Until what? I'm sorry. I didn't understand the last part.
>
> THE WITNESS:   Until Danny was terminated I do not know–
>
> THE COURT:   Until he was what?
>
> THE WITNESS:   **I didn't know about whether Al Payne was retained on a retainer basis because – until this date.  <u>We don't really know what was done.  We don't really know.</u>**
>
> Q.   (BY MR. GAMEZ) Okay.  You were in the company in 1998?
>
> A.   Yes.
>
> Q.   Did you ever see any paperwork where FAVCO says, "Al Payne, you are my lawyer"?
>
> A.   No.

---

Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff

- 5 -

> Q. Any monies that you ever paid Al Payne – Do you have anything in your possession where it says, "Al Payne, I'm paying you because you are my personal corporation lawyer"?
>
> A. **In 1998?**
>
> Q. Yes.
>
> A. **We don't know about Al Payne.**

RR at 174:12-175:6 [emphasis added]. Mr. Cheam, the Director in Charge of U.S. Operations for Favelle (1) didn't know what was done, (2) didn't pay Payne to be Favelle's attorney, and (3) didn't even know Al Payne. But now, Cheam claims Al Payne was Favelle's attorney.

### C.  *Payne Could Not Have Received Client Secrets*

Assuming, *arguendo*, that Payne did represent Favelle in the trademark matters, that representation could not have resulted in any confidential information being shared. The Trademark Act (15 U.S.C. §1 *et seq*.) requires that no confidential information can exist in a trademark application because:

(1) the public is provided with notice of the intent to register a trademark (15 U.S.C. §1062(a)),

(2) the public has the opportunity to oppose the registration (15 U.S.C. §1063), and

(3) the public has a right to cancel the registration once it issues (15 U.S.C. §1064).

Since the public has notice of the intent to register a trademark, the right to oppose a trademark application and the right to cancel an issued trademark registration, the trademark process requires full, complete and open disclosure of all related information. Simply stated, there can be no confidential information transferred with respect to a trademark application. Favelle's representations to the court that all intellectual property matters require the sharing of confidential information is inaccurate and misleading. Payne did not, and could not, use any confidential information in filing the trademark applications.

On behalf of Davis (a 10% owner of Favelle), Payne filed trademark applications for Favelle trademarks. (**Exhibit 1**, Davis Aff., ¶9). It is undisputed

that Favelle owns the marks. Also, it is undisputed that Davis has an ownership interest in the marks as a 10% owner of Favelle. Favelle wants to claim Payne as its lawyer so he will be disqualified from representing Davis. Such motions have been chastised. See, e.g., ABA Formal Op. 95-390 (1995); Ill. St. B. Op. 95-15 (May 17, 1996); Cal. St. B. Op. 1989-13 (1989). Orders based upon vague facts as presented by Favelle have been criticized by the Texas Supreme Court.

> Although the words "substantially related" contain no magical properties, the progression of events demonstrates the failure of Judge Coker to find that the matters involved in the two representations were such that a genuine threat existed that confidences or secrets of the former client would be revealed. The vagueness of the court's order indicates that the substantial relation test was not used; had it been, <u>the court should have been able to state without difficulty the precise factors establishing a substantial relationship between the two representations</u>. <u>To hold that the two representations were "similar enough" to give an "appearance" that confidences which could be disclosed "might be relevant" to the representations falls short of the requisites of the established substantial relation standard</u>.

*Coker*, 765 S.W.2d at 400 (Tex. 1989) [emphasis added].

Also, a "wanna-be" client, like Favelle, was rejected by 14th District Court of Appeals which stated that even where the lawyer represented a subsidiary for fifteen years on virtually all matters, there was no conflict where the lawyer was adverse to the parent and there was no proof that the matter adverse to the parent was related to the representations of the subsidiary and the parent would not suffer actual prejudice. *Houston Pipe Line Co. v. BHP Petroleum (Americas), Inc.*, 785 S.W.2d 398, 402 (Tex. App. - Houston [14th Dist.] 1988, writ denied).

Favelle should not be allowed to claim a relationship that did not exist.

### III. FAVELLE HAS RAISED ONLY A GENERAL, SUPERFICIAL CONNECTION BETWEEN THE SUBJECT MATTER OF THE TRADEMARK APPLICATIONS AND THE PRESENT CASE

The Texas Supreme Court has endorsed an application of the substantial relationship test. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 400 (Tex. 1989). In Coker, the Texas Supreme Court vacated an order disqualifying counsel for the

plaintiff because the lower court judge failed to conduct the rigorous factual examination required by the substantial relationship test. *Id.* The Court confirmed that the party requesting disqualification (Favelle, in the present case) bears the burden of *showing the substantial relationship* and that the proof must include evidence of specific similarities which create a genuine threat that confidences revealed to the requesting party's former counsel will be divulged to his present adversary. *Id.* at 400. Additionally, the movant should identify specific common factual issues capable of being recited in the disqualification order. See *Home Ins. Co. v. Marsh*, 790 S.W.2d 749, 753 (Tex. App. - El Paso 1990, no writ) (citing test for alleged disqualification as stated in *Coker*, 765 S.W.2d at 400).

Favelle has failed to show: (1) the substantial relationship, (2) evidence of specific similarities, (3) the confidences that were revealed to Payne, (4) a genuine threat that the confidences revealed to Payne will be divulged to Davis, and (5) the relationship or confidences will affect the present case. Favelle has failed in every element it is required to prove. Favelle has ignored what was required to be proved and has merely "dumped" on the Court irrelevant documents and testimony.

Favelle has raised only a general, superficial connection between the subject matters of the trademark applications and the case at hand, particularly, that they are both intellectual property matters. Such a general, superficial connection misleads the court and is insufficient to demonstrate a substantial relationship requiring disqualification.

### IV.  NO CONFIDENTIAL INFORMATION WAS, OR COULD HAVE BEEN, USED IN FILING TRADEMARK APPLICATIONS

Assuming, *arguendo*, that Payne did represent Favelle in the trademark matters, that representation could not have resulted in any confidential information being shared. The Trademark Act (15 U.S.C. §1 *et seq.*) requires that no confidential information can exist in a trademark application because:

(1)  the public is provided with notice of the intent to register a trademark (15 U.S.C. §1062(a)),

(2)  the public has the opportunity to oppose the registration (15 U.S.C. §1063), and

> (3) the public has a right to cancel the registration once it issues (15 U.S.C. §1064).

Since the public has notice of the intent to register a trademark, the right to oppose a trademark application and the right to cancel an issued trademark registration, the trademark process requires full, complete and open disclosure of all related information. Simply stated, there can be no confidential information transferred with respect to a trademark application. Favelle's representations to the court that all intellectual property matters require the sharing of confidential information is inaccurate and misleading. Payne did not, and could not, use any confidential information in filing the trademark applications.

## V. TRADEMARK MATTERS AND PATENT MATTERS ARE NOT SUBSTANTIALLY RELATED, GENERALLY OR FOR THIS CASE

Further assuming, *arguendo*, that Payne did represent Favelle in the trademark matters, that representation is not "substantially related" nor is it "directly adverse" to the present case. To imply that trademark matters and patent matters are both intellectual property matters and thus substantially related is like saying that a tire and an antenna are both parts of a car and thus are substantially related. Favelle is misleading this court. Patent matters and trademark matters are not substantially related either generally or with respect to the facts of the present case.

The patent matters are distinct, different and even remote from the trademark matters because of: (1) the differences between the rights a trademark registration conveys and the scope of patent rights, (2) the significant differences in the respective examinations and issuance procedures set forth in the applicable statutes and regulations, and (3) the inability of the existence of the trademark application/registration to adversely effect the owners rights in the trademarks because trademark rights are grounded in the common law. The courts have clearly made the distinction between patents and trademarks, and Favelle is misleading this court. The fundamental difference between patent matters and trademark matters has long been known and characterized by the courts:

> Every right a patentee has is given to him by the Patent Office. On the other hand, the acquisition of the right to exclude others from the use of a trademark results from

---
Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff
- 9 -

> the fact of use and common law, independently of registration in the Patent Office. <u>The happenstance that trademarks are registered in the Patent Office should not result in confusing the principles involved in **dissimilar proceedings** with respect to wholly **dissimilar rights**</u>. [emphasis added].

*Morehouse Mfg. Corp. v. J. Strickland & Co.*, 407 F.2d 881, 160 U.S.P.Q. 715 (C.C.P.A. 1969).

In contrast to trademark matters being open to public scrutiny and public control, the patent examining procedure is *ex parte*. Trademark rights do not exclude the sale of any goods or services of anyone, whereas the patent provides the owner with the right to exclude all others from using the patented invention anywhere in the United States. 35 U.S.C. §154. Further, the patent can prevent the sales of similar goods altogether, but the trademark registration has no effect on the sale of identical or similar goods or services. (15 U.S.C. §1065, §1115(b)). In trademark matters, prior common law users have superior rights and may even be able to file for concurrent use registrations (15 U.S.C. §1052(d), 1115(b)). A patent recognizes no rights in third party users, either before or after the patent issues. The following table illustrates just a few of the differences in dissimilar proceedings and wholly dissimilar rights of trademarks and patents.

| Trademark Matters | Patent Matters |
|---|---|
| an individual, corporation or other entity can file an application | only an individual can file an application |
| open to public scrutiny | is *ex parte* |
| open to public control | is *ex parte* |
| does not exclude the sale of any goods or services of anyone | provides the owner with the right to exclude all others |
| has no effect on the sale of identical or similar goods or services | can prevent the sales of similar goods altogether |
| prior common law users have superior rights | recognizes no rights in third party users |
| two entities can register the same mark | only the patentee receives rights under the patent |

Favelle continues to mislead this court by stating that because paten and trademark matters are both intellectual property matters they must be substantially related—when they are not. Patent matters and trademark matters are not substantially related either generally or with respect to the facts of the present case.

### VI. EVEN THE RULES PROVIDE FOR THE REPRESENTATION IN THE PRESENT CASE

The Tex. Disciplinary R. Prof. Conduct provide that a lawyer may act as advocate against a client in situations like the present one. Tex. Disciplinary R. Prof. Conduct 1.06 cmt. 11 (1989); ABA Model Rules of Professional Conduct Rule 1.7 cmt. 8 (1993). The Comment to Texas Rule 1.06 specifically states, as does the Comment to ABA Model Rule 1.7, that there are circumstances in which a lawyer may act as advocate against a client. Comment 11 to Texas Rule 1.06 notes:

> The propriety of concurrent representation can depend on the nature of the litigation. For example, a suit charging fraud entails conflict to a degree not involved in a suit for declaratory judgment concerning statutory interpretation.

If the Texas Disciplinary Rules of Professional Conduct mean what they say, then a lawyer may be adverse to a current client so long as the matters are not substantially related and the lawyer will be able to pursue all reasonable alternatives on behalf of both clients during those representations. See *Conoco Inc. v. Baskin*, 803 S.W.2d 416, 419-20 (Tex. App. - El Paso 1991, orig. proceeding) (discussing Rule 1.06). Similarly, in the present case, trademark representation (if any existed) and patent representation are dissimilar proceedings and address wholly dissimilar rights. Thus, disqualification is not appropriate.

### VII. FAVELLE KNEW DAVIS HAD AN ATTORNEY, AND IT WAS PAYNE

Mr. Cheam testified that as the Director in Charge of U.S. Operations for Favelle he did not know Al Payne and that Favelle did not pay Payne to be its lawyer. See, II. B., above. However in 1997, Messrs. Cheam and Mac[2] did know that Davis

---

[2] Mr. Mac is the person in charge of Favelle Holdings, which owns the 90% of Favelle USA that Davis does not own. Cheam testified:

had his own patent attorney and was working on the patent. Attached as **Exhibit 1-A** is a letter dated November 16, 1997 where Davis told Messrs. Mac, Cheam and Tee that he had his own patent attorney [Al Payne], and that his patent attorney was going to file patent applications for him. On page 2, in paragraph 4), of Davis' November 16, 1997 letter, he states, "**I [Davis] also have a patent attorney [Payne] who will apply for the patent but we [Davis and Payne] have by law one year to file for the patent.**" **Exhibit 1-A**, page 2, paragraph 4). For two (2) years, Favco USA never raised the issue that Payne was its attorney, because Payne was not Favco USA's attorney.

Mr. Cheam wrote a letter dated August 11, 1998 to Davis acknowledging that Davis was filing a patent, and requesting that the ownership and inventor be *changed* from Davis alone to "Favelle Favco and Danny Davis." Mr. Cheam told Davis in the August 11, 1998 letter, "**With regards to the patent, have spoken to Mac and he wants the ownership and inventor to be under <u>Favelle Favco and Danny Davis</u>. Therefore pls proceed accordingly with the changes.**" **Exhibit 1-B**. At all times during the existence of Favco USA, Messrs. Mac and Cheam knew Davis was acquiring legal advice from Payne and that Payne was Davis' attorney, not theirs. They even requested that Davis proceed with changes that they wanted to the patent documents being prepared by Al Payne. "**Therefore pls proceed**

---

| | |
|---|---|
| Q. | Okay. Now, who owns Favco USA? |
| A. | Favco Holdings own 90 percent. |
| Q. | And where is Favco Holdings at? |
| A. | Malaysia. |
| Q. | Who owns Favco Holdings? |
| A. | Muhibbah. |
| Q. | Muhibbah? |
| A. | Yes. |
| Q. | Who is Favelle Favco Cranes (M) SDN BHD? |
| A. | That is – Under Favelle Favco Holdings we have Favelle Favco USA, Favelle Favco (M) which is Malaysia, Favelle Favco Australia, we have Kroll which is in Denmark, and we have Favelle Favco Singapore. |
| Q. | Favco USA here in Harlingen -- |
| A. | Yeah. |
| Q. | -- is directly under Favco Holding in Malaysia? |
| A. | Correct. |
| Q. | They take orders from Favco Holdings in Malaysia; am I correct? |
| A. | Yeah. |
| Q. | And who is the boss man over there? |
| A. | Of Favco Holdings? |
| Q. | Yes. |
| A. | Mac Ngan Boon. |

RR at 178:17-179:16, excerpt from Favelle's filing with the Court.

---

**accordingly** [with the patent application] **with the changes** [from Cheam and Mac]." **Exhibit 1-B**. Messrs. Mac and Cheam knew Payne was working on the patent documents and requested Davis to instruct Payne to make the changes that they wanted.

Messrs. Mac and Cheam wanted Davis to instruct Payne to make the changes because they knew Payne was Davis' attorney, not Favco USA's attorney. If Payne had been Favco USA's attorney, Mac or Cheam could have just called Payne and told him to make the changes, but they did not. Further, for two (2) years, Messrs. Mac and Cheam never raised the issue that Payne was their attorney, because they knew he was not.

Al Payne's representation of Davis, to the exclusion of Favco USA, was open and known by everyone. (**Exhibit 1**, Davis Aff., ¶¶2-8; **Exhibit 2**, Sullivan Aff., ¶¶2,3). On March 22, 1999, Davis instructed Payne to write Shirleen Lee concerning his crawler crane designs. A copy of the March 22, 1999 letter is attached as **Exhibit 1-C**, Davis Aff., ¶7. The first paragraph of Payne's March 22, 1999 letter to Lee states: "**I represent Daniel E. Davis in intellectual property matters. Your letter of March 16, 1999 has been referred to us for response. Your proposed agreement of March 16, 1999 is rejected**." There can be no doubt from the March 22, 1999 letter that Payne represented Davis, and not Favco USA. Lee is the Group Finance Manager for Favco USA, Favelle Holdings, Favelle Maylesia and Muhibbah. But Favco USA nor Muhibbah objected to Payne's representation of Davis in opposition to them. Favco USA did not raise the issue that Payne was their attorney. No conflict was raised because none existed.

Payne's representation of Davis was consistent and unchanging. (**Exhibit 1**, Davis Aff., ¶¶2-8; **Exhibit 2**, Sullivan Aff., ¶¶2,3). On February 17, 2000, Payne wrote Michael Khoo, General Manager of Favco USA, concerning who he represented. A copy of Payne's February 17, 2000 letter is attached as **Exhibit 1-D**, Davis Aff., ¶8. The first paragraph of Payne's February 17, 2000 letter to Khoo states: "**I do not and have not represented Favelle Favco Cranes (USA) Inc. I do represent Daniel E. Davis the former President of Favelle Favco Cranes**

---

Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff

- 13 -

**(USA) Inc."** Payne clearly represents Davis, and has never represented Favco USA. Again, Favco USA did not object to Payne representing Davis to the exclusion of them. And at that time, Favco USA did not raise the issue that Payne was their attorney.

### *VIII. FAVELLE KNEW IT HAD OBLIGATIONS TO PAY PAYNE ON BEHALF OF ENGINEER ORGERON AND DAVIS*

For billing purposes, the invoices from Payne were sent to Davis' attention at Favco USA. (**Exhibit 1**, Davis Aff., ¶4; **Exhibit 2**, Sullivan Aff., ¶¶5,6,7,8). The invoices included all work done by Payne, including work done for Orgeron. At all times, Al Payne was acting on the instructions of Davis and as his attorney (or the attorney for Orgeron), and everyone knew Payne was Davis' attorney. (**Exhibit 1**, Davis Aff., ¶4; **Exhibit 2**, Sullivan Aff., ¶¶2,8). Davis instructed Payne to handle matters that would be beneficial to Davis personally as a 10% owner of Favco USA. The matters Davis instructed Payne to handle were filing trademark applications on the trademarks to be used on his crawler cranes that were being built by Favco USA and a copyright matter with respect to software. Since these matters directly benefited Favco USA (without compromising confidentiality) and Davis was President and purchased 10% of Favco USA, he instructed Favco USA to pay the invoices dealing with these matters. Work Payne did for Davis alone was to be separated from the invoices and paid by Davis personally. The accounting personnel were instructed to separate the bills by subject matter and make payments accordingly. (**Exhibit 1**, Davis Aff., ¶¶4,9; **Exhibit 2**, Sullivan Aff., ¶¶5,6,7,8).

Payne represented Danny Davis personally, and not Favelle Favco. (**Exhibit 1**, Davis Aff., ¶¶2,3,4,10; **Exhibit 2**, Sullivan Aff., ¶¶2.3,6,7). In addition to Danny Davis, Payne represented another employee of Favelle Favco. Al Payne represented Keith Orgeron. Keith Orgeron is an engineer that worked for Favelle Favco. (**Exhibit 1**, Davis Aff., ¶¶4; **Exhibit 2**, Sullivan Aff., ¶¶2,5). Greta Sullivan in the accounting department at Favelle was instructed by Davis that Favelle had an agreement with Orgeron to pay Payne for legal work done for Orgeron. The invoices for work done by Payne for Orgeron were sent to Favelle for payment. (**Exhibit 2**, Sullivan Aff., ¶¶3,4,5).

---

Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff
- 14 -

The invoices from Al Payne sent to Favelle were required by Danny Davis to be separated into groups for Orgeron, trademarks and copyrights. The Orgeron, trademark and copyright bills were all to be paid by Favelle Favco. Patent work done for Davis personally was to be paid for by Davis. At all times, everyone was instructed by Davis and knew that Payne was Davis' attorney. (**Exhibit 2**, Sullivan Aff., ¶5). Ms. Sullivan in the accounting department at Favelle understood that Payne was to handle the filing of trademark applications for the trademarks to be used on Davis' crawler cranes. (**Exhibit 2**, Sullivan Aff., ¶6). Ms. Sullivan was instructed by Davis that the trademark, the copyright and the Orgeron bills directly benefited Favelle and were to be paid by Favelle. She was also instructed by Danny Davis that any bill related to patent work was to be paid for by Davis. (**Exhibit 2**, Sullivan Aff., ¶7). Bills from Payne were to be separated and, if patent related paid by Davis personally, and if trademark, copyright or Orgeron related were to be paid for by Favelle. The accounting personnel were instructed to separate the bills by subject matter and make payments accordingly. (**Exhibit 2**, Sullivan Aff., ¶8).

## IX.   CONCLUSION

Favelle has failed to show: (1) the substantial relationship, (2) evidence of specific similarities, (3) the confidences that were revealed to Payne, (4) a genuine threat that the confidences revealed to Payne will be divulged to Davis, and (5) the relationship or confidences will affect the present case. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398 (Tex. 1989). Favelle has failed in every element it is required to prove. Favelle has ignored what was required to be proved and has merely "dumped" on the Court irrelevant documents and testimony.

In light of the foregoing, Plaintiff Daniel E. Davis respectfully requests that this Court deny Defendant Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff.

A proposed order is attached.

Respectfully submitted,

*[signature: Al Payne]*

Alton W. Payne
Texas Bar No. 15649450
Fed. I.D. No. 2025
Payne & D'Ambrosio, L.L.P.
1700 West Loop South, Suite 1230
Houston, Texas  77027-3008
Telephone:  (713) 840-8008
Telefax:  (713) 840-8088

Of Counsel:
Ernesto Gamez
Victor Qunitanilla
Law Office of Ernesto Gamez, Jr., P.C.
777 E. Harrison Street
Brownsville, Texas 78520
Telephone: (956) 541-3820
Telefax: (956) 541-7694
ATTORNEYS FOR PLAINTIFF
DANIEL E. DAVIS

## CERTIFICATE OF SERVICE

This is to certify that this paper has been served on the attorneys of record for defendant by delivery of a true copy to them via certified mail on the 19th day of May 2000 as follows:

Gary Gurwitz, Esq.
Charles C. Murray, Esq.
Atlas & Hall, LLP
818 Pecan
P.O. Drawer 3725
McAllen, Texas 78502

*[signature: Al Payne]*

---

Davis' Response To Favelle's Motion To Disqualify Alton Payne And Firm As Counsel For Plaintiff
- 16 -