24

United States District Court
Southern District of Texas
Brownsville Division

United States District Court
Southern District of Texas
FILED

JUN 0 7 2000

Michael N. Milby
Clerk of Court

DANIEL E. DAVIS,                        §
        plaintiff                       §
                                        §
v.                                      §          Civil Action No. B-00-003
                                        §
FAVELLE FAVCO CRANES USA, INC.,         §
        defendant                       §


### Defendant Favelle Favco Cranes, U.S.A., Inc.'s Reply to Davis' Response to Motion to Disqualify Alton Payne and firm as Counsel for Plaintiff

Gary Gurwitz
Charles C. Murray
ATLAS & HALL, L.L.P.
State Bar No. 08631000
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

# Contents

1.   *Summary.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   *Payne represented FFC USA.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     2.1   *Payne's admissions and other evidence belie the assertion that Payne did
            not represent FFC USA.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            2.1.1  *Davis had authority to employ Payne on behalf of FFC USA, and did
                    so.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
            2.1.2  *The Orgeron contract is consistent with Payne's employment by FFC
                    USA and with FFC USA's rights in the crane at issue.* . . . . . . . . 2
     2.2   *FFC USA <u>did not</u> waive Payne's conflict of interest.* . . . . . . . . . . . . . . . 4
            2.2.1  *Davis was on-site at FFC USA, and ran the facility* . . . . . . . . . . 4
            2.2.2  *The November 16, 1997 letter supports FFC USA's position that
                    Payne was representing FFC USA.* . . . . . . . . . . . . . . . . . . . . . . 5
     2.3   *Payne's representation related to the crane at issue, and related patent and
            proprietary matters.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
            2.3.1  *The scope of representation extended beyond trademark matters.* 8
            2.3.2  *Eccon agreement was involved in the representation.* . . . . . . . . . 9

3.   *Payne is disqualified under the "substantial relation" test.* . . . . . . . . . . . . . . . 9
     3.1   *The relationship is direct, and substantially related.* . . . . . . . . . . . . . . . 10
     3.2   *Davis misstates the test for disqualification.* . . . . . . . . . . . . . . . . . . . . 10
            3.2.1  *An irrebutable resumption of confidential information exists.* . . . . 10
            3.2.2  *In any event, Payne had access to confidential information.* . . . 11
            3.2.3  *Rules do not allow for this conflict.*   . . . . . . . . . . . . . . . . . . . . 12

4.   *Payne should be disqualified because he participated in Davis' breach of
     fiduciary duty.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5.   *Payne should be disqualified because he will be a witness* . . . . . . . . . . . . . . . 14
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CVisPDF - www.texla.com

United States District Court
Southern District of Texas
FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

JUN 0 7 2000

Michael N. Milby
Clerk of Court

DANIEL E. DAVIS,  §
     plaintiff  §
      §
vs.  §
      §
FAVELLE FAVCO CRANES USA, INC.,  §
     defendant  §

CIVIL ACTION NO. B-00-003

## Defendant Favelle Favco Cranes, U.S.A., Inc.'s Reply to Davis' Response to Motion to Disqualify Alton Payne and Firm as Counsel for Plaintiff

Defendant Favelle Favco Cranes, U.S.A., Inc.'s ("FFC USA") files this reply to plaintiff Daniel Davis ("Davis") response to FFC's motion to disqualify Al Payne ("Payne") and the law firm of Payne, Lundee, D'Ambrosio & Arismendi, L.L.P., as counsel for Davis ("Davis Response"), and would show:

1.   *Summary.* Most of Davis' "arguments" have been addressed in FFC USA's motion to disqualify and ignored by Davis. Considering the motion and the evidence cited therein, it is clear that Payne represented FFC USA on matters substantially related to those at issue in this litigation. Independently, Payne should be disqualified because: a) he participated in Davis' breach of fiduciary duty to FFC USA, and b) he may serve as a witness in this lawsuit. FFC USA's motion to disqualify is not the "dilatory tactic" that Davis calls it. Indeed, FFC USA promptly filed this motion immediately after Payne's appearance as attorney in this case.

2.   *Payne represented FFC USA.* Davis' response reflects a fundamental misunderstanding of when a lawyer represents a corporation (as opposed to its officers or

1

# Contents

1.   *Summary*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

2.   *Payne represented FFC USA*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   2.1   *Payne's admissions and other evidence belie the assertion that Payne did not represent FFC USA*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      2.1.1   *Davis had authority to employ Payne on behalf of FFC USA, and did so*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
      2.1.2   *The Orgeron contract is consistent with Payne's employment by FFC USA and with FFC USA's rights in the crane at issue*. . . . . . . . . 2
   2.2   *FFC USA <u>did not</u> waive Payne's conflict of interest*. . . . . . . . . . . . . . . 4
      2.2.1   *Davis was on-site at FFC USA, and ran the facility*  . . . . . . . . . . 4
      2.2.2   *The November 16, 1997 letter supports FFC USA's position that Payne was representing FFC USA*. . . . . . . . . . . . . . . . . . . . . . . 5
   2.3   *Payne's representation related to the crane at issue, and related patent and proprietary matters*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
      2.3.1   *The scope of representation extended beyond trademark matters*. 8
      2.3.2   *Eccon agreement was involved in the representation*. . . . . . . . . . 9

3.   *Payne is disqualified under the "substantial relation" test*. . . . . . . . . . . . . . . 9
   3.1   *The relationship is direct, and substantially related*. . . . . . . . . . . . . . . 10
   3.2   *Davis misstates the test for disqualification*. . . . . . . . . . . . . . . . . . . . . 10
      3.2.1   *An irrebutable resumption of confidential information exists*. . . . 10
      3.2.2   *In any event, Payne had access to confidential information*. . . . 11
      3.2.3   *Rules do not allow for this conflict.*  . . . . . . . . . . . . . . . . . . . . . 12

4.   *Payne should be disqualified because he participated in Davis' breach of fiduciary duty*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5.   *Payne should be disqualified because he will be a witness* . . . . . . . . . . . . . . 14
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

United States District Court
Southern District of Texas
Brownsville Division

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
|     plaintiff | § | |
| | § | |
| v. | § | Civil Action No. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
|     defendant | § | |

**Defendant Favelle Favco Cranes, U.S.A., Inc.'s Opposed
Motion to Disqualify Al Payne and firm as Counsel for Plaintiff**

Defendant Favelle Favco Cranes, U.S.A., Inc.'s ("FFC USA") files this reply to

plaintiff Daniel Davis' ("Davis") response to FFC's motion to disqualify Al Payne ("Payne")

and the law firm of Payne, Lundee, D'Ambrosio & Arismendi, L.L.P., as counsel for Davis

("Davis Response"), and would show:

1.    *Summary.*  Most of Davis' "arguments" have been addressed in FFC USA's

motion to disqualify and ignored by Davis.  Considering the motion and the evidence cited

therein, it is clear that Payne represented FFC USA on matters substantially related to

those at issue in this litigation.  Independently, Payne should be disqualified because: a)

he participated in Davis' breach of fiduciary duty to FFC USA, and b) he may serve as a

witness in this lawsuit.  FFC USA's motion to disqualify is not the "dilatory tactic" that Davis

calls it.  Indeed, FFC USA promptly filed this motion immediately after Payne's appearance

as attorney in this case.

2.    *Payne represented FFC USA.*   Davis' response reflects a fundamental

misunderstanding of when a lawyer represents a corporation (as opposed to its officers or

1

shareholders), and of the lawyer's obligations <u>to the corporation</u> as opposed to the individual corporate officer who employed the attorney and served as client contact.

      2.1    *Payne's admissions and other evidence belie the assertion that Payne did not represent FFC USA.* Davis repeatedly asserts that "[i]t is undisputed that Payne was Davis' attorney at all times" and that "Al Payne's representation of Davis, to the exclusion of Favco USA, was open and known by everyone." See, e.g., Davis Response at 1, 13. Those assertions are false and are rebutted by Payne's own admissions in his deposition and in the Davis Response. As discussed in section 3 of Defendant Favelle Favco Cranes, U.S.A., Inc.'s Opposed Motion to Disqualify Al Payne and firm as Counsel for Plaintiff ("FFC Motion to Disqualify"), Payne represented FFC USA, and admits such representation. See FFC Motion to Disqualify §§ 3.2 et seq.

      2.1.1  *Davis had authority to employ Payne on behalf of FFC USA, and did so.* The fact that Payne was employed <u>by Davis</u> to represent FFC USA does not negate the fact he was so employed. Davis was president of FFC USA, and had authority to employ counsel for FFC USA. He had authority to – and did – pay bills of such FFC USA counsel with FFC USA funds. See PX-10[1] (Sept. and Oct. bills paid). As president of FFC USA, Davis also had confidential and proprietary information belonging to FFC USA.

      2.1.2  *The Orgeron contract is consistent with Payne's employment by FFC USA and with FFC USA's rights in the crane at issue.* The fact that Payne did work

---

[1] References are to the state court hearing transcript and related exhibits, filed in connection with FFC USA's motion to disqualify.

for Keith Orgeron is equally supportive of the fact that Payne also represented FFC USA. Orgeron was a consultant (not an employee) of FFC USA, and a dispute developed with Orgeron's former employer over a noncompete agreement. FFC USA and Orgeron did enter into a consulting agreement, a copy of which is attached as Attachment C, pursuant to which FFC USA agreed to be responsible for the legal bills in that regard. Attachment C at 4. Orgeron was a consultant in regard to the crane at issue,[2] and the Orgeron agreement was consistent with FFC USA's interests in all respects. The Orgeron contract was signed <u>by Davis as president of FFC USA</u>. The contract specifically recognizes FFC USA's rights in the patent at issue:

> Any ideas, <u>patents</u>, copyrights, drawings, etc. produced by *Consultant* under this *Agreement* <u>shall be the sole property of the *Company*</u> . . . .

Orgeron Contract (Exhibit C) at 5 (emphasis added).

---

[2] Payne billed FFC USA for various matters involving Orgeron and the crane at issue. These include:

| | |
|---|---|
| 06/12/98 | Office conference with Mr. Keith Orgeron concerning additional disclosure materials and information. |
| 08/24/98 | Office conference with Mr. Keith Orgeron concerning evaluation of boom support apparatus; telephone conference with Mr. Danny Davis concerning same. |
| 09/01/98 | Office conference with Mr. Keith Orgeron concerning engineering on boom support crane apparatus. |
| 11/10/98 | Lundeen office conference with Messrs. Payne and Orgeron concerning Austrian patent situation. |

PX-9 (bills of Sept. 30, 1998 and Nov. 30, 1998). Payne admits that the boom relates to the crane at issue in this litigation. RR 83-85.

3

2.2    *FFC USA <u>did not</u> waive Payne's conflict of interest.*  Davis' argument that any conflict was somehow waived is not supported by the "facts" or law[3] alleged by Davis, as described below.  Indeed, Davis' admissions that he was the person that communicated with Payne negate his waiver argument:

2.2.1   *Davis was on-site at FFC USA, and ran the facility.*   During Davis' tenure as president, FFC USA's Harlingen operation was largely run by Davis. Although Davis had contact with other personnel with FFC USA and related companies, such other personnel generally were not on-site and were not initially in a position to realize Davis' breach of his duties to FFC USA.  The fact that Messrs. Cheam and Mac (who were at the time in Malaysia and employed not by FFC USA but by a related company) did not have contact with Payne is hardly surprising.  Indeed, that is the reason why Davis' and Payne's breach of duties was not immediately perceived.  See RR 173 (Until 3/22/99, FFC did not know Payne was purporting to represent Davis in a matter adverse to FFC and, so far as Cheam knows, Payne did not have contact with anyone representing FFC other than Davis until 4/99).  Payne admits never having dealt with anyone at FFC USA except Davis until April 1999.  Davis Response at 4.  The delay in discovery, however, is irrelevant to the issue of whether Davis, as president of FFC USA, hired Payne on behalf of FFC USA.  The evidence is overwhelming that he did, and that Payne performed a significant amount of

---

[3] *Houston Pipe Line Co. v. BHP Petroleum (Americas), Inc.,* 785 S.W.2d 398 (Tex. App.–Houston [14th Dist.] 1988, writ denied), does not support Davis' position.  In that case, the alleged conflict was not alleged until after a motion for new trial was filed.  *See id.* at 402.  FFC USA here raised the issue immediately after Payne filed an appearance in this action.  *Conoco Inc. v. Baskin,* 803 S.W.2d 416, 420 (Tex. App.–El Paso 1991, no writ), similarly involves a delay of months after appearance of counsel before the motion to disqualify was filed, and only shortly before the trial date.

4

.

services for FFC USA related to the crane at issue.  The evidence also is clear that Davis

(not Cheam), as president of FFC USA, authorized payment <u>by FFC USA</u> of the initial

Payne bills.  See PX-10 (payments made by FFC USA on Sept. 30 and Oct. 31 1998 bills);

RR 167-70.

> 2.2.2   *The November 16, 1997 letter supports FFC USA's position that*

*Payne was representing FFC USA.*  The November 16, 1997 letter cited by Davis is not to

the contrary.  That letter <u>does not</u> state that Payne represents Davis as opposed to FFC

USA, nor does it state that Payne represents Davis in matters antagonistic to FFC USA.

The letter does not mention Payne at all.  Rather, the correspondence from Davis to

Muhibbah Engineering (FFC USA's indirect parent) states in connection with the Eccon

contract[4]:

> 4)   Eccon.
> As you mentioned you held back the issuance of the P.O./T.T.
> to Eccon.  I have attached for your viewing the contract Eccon
> has to sign.  This contract is made part of the Caterpillar
> contract I signed and they are all tied together.  <u>I also have a
> patent attorney who will apply for the patent but we have by
> law one year to file for the patent.  We cannot file for a Pat.
> Pending or Patent unless we have a design.</u>  Eccon informed
> Crt/Gallotti there is still nothing in writing between <u>us</u> and
> Eccon.  I feel the attorney covered <u>us</u> in the agreement
> between Favco and Eccon.  Please let me know of okay to
> proceed.

Ex. A to Davis Response ¶ 4 (emphasis added).   Davis attempts to interpret the letter in

his favor by construing "we" to refer to Davis and Payne.  <u>It is clear, however, that "we" and</u>

---

[4] See section 2.3.2 below for a further discussion of the Eccon agreement and its recognition that any patent would belong to FFC.

"us" as used throughout the letter refers generally to FFC USA and its related companies, *not* to Davis and Payne.  The following paragraph, for example states: "We are coming along on the facility in Harlingen; we should be ready for operation the 1st of January or latest about second week of 98." (emphasis added).  Paragraph 6 of the letter similarly states: "Exxon Bid due for release the 18th of November, we were not considered because our facility is not operational as of yet."  Paragraph 7 similarly states:  "As I discussed, if we are to sell the 4100 Manitowoc's we need funds to buy from owners and G.E. will fund when units arrive to Ambels facility.  Paragraph 3 states: "If we loose [lose] the production slots we will be looking at lowers about May/June of 1998.  This would set us back in the release of the Favco 50 MT and 75 MT Crawler and testing."  The FFC response: "Aim for end of March where we can launch if in Bauma."  Ex. A to Davis Response (emphasis added).   The November 16 correspondence thus clearly supports FFC's position, not Davis'; the letter in no way shows that FFC USA was on notice that Davis was breaching his fiduciary duty in regard to the patent and that Payne was helping him do so.

2.2.3  *The November 18, 1998 fax does not support Davis' position.* The November 8, 1998 message to FFC USA from Cheam in regard to the patent similarly does not support Davis' position.  See Exhibit B to Davis Response.  The fax states: "With regards to the patent, have spoken to Mac and he wants the ownership and inventor to be under Favelle Favco and Danny Davis," meaning that the owner should be FFC and the inventor should be Davis, respectively.[5]   In no event can the letter be read to suggest that

---

[5]  In fact, legally the patent has to be issued in an individual's name not a corporate name.

6

Davis, as opposed to FFC USA, owns the patent or that FFC USA consents to Davis' claim of sole interest in the patent.  Indeed, the fax goes on to point out Davis' failure to adequately inform FFC USA of his actions: "P/S  Mac is unhappy this issue as you have not consulted him.  Pls explain to him."  Exhibit B to Davis Response.

      2.2.4    *FFC USA had no notice of Davis' and Payne's breach of duties until the March 22, 1999 correspondence.*  As Mr. Cheam testified (and Davis points out), it was not until Payne's March 22, 1999 correspondence that FFC USA had any notice that Payne was acting for Davis, or acting adversely to the interests of FFC USA. RR 173-74; see DX-1B (also Exhibit C to Davis Response); Davis Response at 5-6.  The February 17, 2000 letter – long after the fact, and about five months after Davis was no longer president and a director of FFC USA – provides no "notice" at all.  See Exhibit D to Davis Response. FFC USA investigated, discovered the breaches of duty, and has promptly acted to protect its rights.[6]

      2.2.5    *Davis' current testimony on payment of Payne bills is contrary to Payne's testimony and contrary to established fact.*  Davis now takes a rather incomprehensible position that he somehow ordered the bills to be "separated" according to whether Payne's work was for Davis personally or for the benefit of FFC USA.  First, that position is contrary to Payne's testimony that the work billed to FFC USA would have been done for FFC USA, and that work for Davis personally would have been billed to him ad

---

[6] Payne's appearance at a single meeting at the Atlas & Hall offices, where counsel for FFC had no understanding of who he was or what he had done, does not establish waiver of conflict.

7

CM/PDF - www.texlaw.com

Davis' home address.[7]  See RR 71-72. Therefore, all the work shown on Payne's bills sent to FFC USA (PX-8) was for FFC USA, and not for Davis personally.  Second, FFC USA in fact paid in full the September and November bills addressed to FFC USA.  See PX-10; RR 167-70.

2.3    *Payne's representation related to the crane at issue, and related patent and proprietary matters.*  The evidence clearly reflects that Payne represented FFC USA – not just Davis – and that his representation of FFC USA extended to matters directly related to the crane at issue, and related patent and proprietary matters.

2.3.1  *The scope of representation extended beyond trademark matters.*  As discussed in the motion to disqualify, Payne represented FFC USA in connection with the crawler crane at issue.  That representation extended not only to trademark matters, but also to patent and other issues of trade secrets and proprietary information.[8]  See FFC's Motion to Disqualify §§ 3.1.1 - 3.1.3.  Other than in the most general of terms, Davis does not and cannot deny that the patent matters and related proprietary issues billed to FFC USA by Payne represent work done by Payne for FFC USA.  Indeed, Payne admited that what was billed to FFC USA represented work done for FFC USA.  RR 71-72.

---

[7] The defendants object to the conclusory and hearsay information contained in the Declaration of Greta Sullivan.  In any event, Sullivan's affidavit merely reflects self-serving comments that may have been made by Davis.

[8] *Morehouse Manufacturing Corp. v. J. Strickland & Co.,* 407 F.2d 881, 888 (U.S.C.C.P.A. 1969), cited by Davis, is not relevant to this situation.  The case does not address disqualification of counsel, and in no way stands for the proposition that an attorney representing a party in a trademark application cannot acquire confidential information.  The case merely states that trademarks and patents are different, and that trademark rights are in part derived from the use of the trademark rather than from rights granted from the patent/trademark office.  *Id.* at 888.

8

2.3.2 *Eccon agreement was involved in the representation.* In addition to the matters previously addressed, the funds expended by FFC USA in regard to the design and development of the crawler crane at issue included the acquisition of designs from Eccon Engineering Computer Consulting Gessellschaft M.B.H. ("Eccon"), an Austrian company. See Attachment B. This is the Eccon Agreement referenced in Davis' letter of November 16, 1997 to Muhibbah Engineering. See section 2.2.2 above. The Eccon Confidentiality Agreement – which was signed by Davis as president of FFC USA – acknowledges that the designs at issue "are proprietary to FAVCO," Confidentiality Agreement at 1, and further acknowledges:

> ECCON agrees and stipulates that it is performing the design, specification, fabrication and testing services solely for FAVCO and that all designs, specifications, work product, and prototypes generated, produced or resulting from ECCON's services shall be the exclusive proprietary property of FAVCO. ECCON agrees and acknowledges that <u>FAVCO shall be the sole owner and the sole party to secure copyrights and patents</u> on all specifications, designs, drawings, and work product generated and produced by ECCON in performing the design and development services in relation to the Crawler Crane design . . .

Confidentiality Agreement at 2 (Attachment B) (emphasis added). Payne had discussions concerning the Eccon agreements, and billed FFC USA for such discussions. PX-8 (entry for December 11, 1998). For this additional reason Payne has represented FFC USA in regard to the ownership and infringement of the patent at issue and related engineering issues.

3. *Payne is disqualified under the "substantial relation" test.* Payne should be disqualified from representing Davis in this matter for multiple independent reasons. This

9

CVisPDF - www.fasisa.com

matter is substantially related to matters as to which Payne previously represented FFC USA; Payne likely will be a witness in this action; and Payne participated in Davis' breach of fiduciary to FFC USA.

      3.1    *The relationship is direct, and substantially related*. As discussed in the FFC Motion to Disqualify, Payne's representation was not limited to trademark matters, but extended to patent issues and other matters involving proprietary information. Davis' Response simply chooses to ignore this evidence.

      3.2    *Davis misstates the test for disqualification.* Davis cites to the Texas Code of Professional Responsibility (see Davis Response at 3), a code which was superceded years ago by the Texas Disciplinary Rules of Professional Conduct. See State Bar Rules art. X § 9 (Texas Disciplinary Rules of Professional Conduct). Davis' statement of the disqualification rules is equally ill-informed.

      3.2.1 *An irrebutable resumption of confidential information exists*. As discussed in the FFC USA motion to disqualify, an attorney is disqualified under the "substantial relationship" test where there exists: 1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify; and 2) a substantial relationship between the former and present representation. *In re American Airlines,* 972 F.2d 605, 614 (5th Cir. 1992), *cert. den.,* 507 U.S. 912 (1993); *Islander East Rental Program v. Ferguson,* 917 F.Supp. 504 (S.D. Tex. 1996) (disqualifying counsel in suit alleging service and trademark violations, unfair competition, and tortious interference where counsel previously had represented member of opposing party association in divorce); *City of El Paso v. Salas-Porras,* 6 F.Supp.2d 617 (W.D. Tex. 1998) (disqualifying

10

counsel); *NCNB v. Coker,* 765 S.W.2d 398 (Tex. 1989) (Texas disqualification law). Where a substantial relationship exists an <u>irrebutable presumption</u> arises that relevant confidential information was disclosed during the former representation. *In re American Airlines,* 972 F.2d at 614; *NCNB,* 765 S.W.2d at 398.

Contrary to Davis' argument, however, the disqualification test was not developed solely to protect confidential information. See Davis Response at 3-4. Rather, the test also is designed to protect the <u>duty of loyalty</u> an attorney has to a client. *In re American Airlines,* 972 F.2d at 616, 618-19. "That is, because the substantial relationship test is concerned with both a lawyer's duty of confidentiality *and* his duty of loyalty, a lawyer who has given advice in a substantially related matter must be disqualified, <u>whether or not he has gained confidences</u>." *Id.* at 619 (emphasis added). Thus, FFC USA is not required to establish that Payne actually received confidential information.

3.2.2 *In any event, Payne had access to confidential information.* The argument that no confidential information could have passed to Payne is limited to analysis of the trademark <u>application,</u> a publicly filed document. See Davis Response at 6-7, 8 - 9. Davis' arguments in that regard are incorrect and incomplete. First, Davis ignores the other facets of Payne's representation, including his representation of FFC USA regarding patent matters and other proprietary information. Further, the fact that the trademark application form contains no information that remains confidential after it is filed does not mean that Payne could not have received confidential information concerning the crane and leading up to the filing of the application form, and thereafter. Pleadings filed in litigation similarly become matters of public record, but it would be silly to argue that a

11

litigation attorney could not acquire confidential information. The defendants to not deny that Davis in fact had confidential information relating to FFC USA and the crawler crane. More importantly, as discussed above there is an irrebutable presumption that confidential information was received.

    3.2.3 *Rules do not allow for this conflict.* Davis argues incorrectly that Texas Rule of Disciplinary Procedure 1.06 allows for Payne's current conflict of interest. That argument is incorrect. First, the current situation is governed by Rule 1.09, which relates to an attorney's representation of a current client (in this case, Davis) against a former client (in this case, FFC USA). Rule 1.09 provides that an attorney may not represent a client adversely to a former client "if it is the same or a substantially related matter" or if the confidentiality rule (1.05) in reasonable probability will be violated.[9] For the reasons discussed herein, Payne's current representation of Davis is substantially related to his prior representation of FFC USA, and a likelihood exists that FFC confidences would be violated. Rule 1.06 would have governed Payne's concurrent representation of FFC

---

[9] Rule 1.09 provides, in part:

> Rule 1.09 Conflict of Interest: Former Client
> (a) Without prior consent, a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client:
>  (1) in which such other person questions the validity of the lawyer's services or work product for the former client;
> (2) if the representation in reasonable probability will involve a violation of Rule 1.05; or
> (3) if it is the same or a substantially related matter.

TEX. R. DISC. PRO. 1.09(a).

USA and Davis in the 1998 time period and Payne's conduct was in violation of such rule

also, as discussed below.

   4.   *Payne should be disqualified because he participated in Davis' breach of*

*fiduciary* duty.   Davis does not address FFC USA's argument that Payne should be

disqualified because of Payne's participation in Davis' breach of duty, except to assert that

Payne's concurrent but conflicting  representation of FFC USA and Davis was appropriate

under comment 11 to Rule 1.06.  See Davis Response at 3.  Rule 1.06 provides, in part:

> Rule 1.06 Conflict of Interest: General Rule
> (a)   A lawyer shall not represent opposing parties to the same litigation.
> (b)   In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:
>   (1)   involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or
>   (2)   reasonably appears to be or become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.
> (c)   A lawyer may represent a client in the circumstances described in (b) if:
>   (1)   the lawyer reasonably believes the representation of each client will not be materially affected; and
>   (2)   each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

TEX. DISC. R. PROF. CONDUCT Rule 1.06 (a) - (c).  The crawler crane at issue was

developed with FFC USA's money, while Davis was an officer of FFC USA and owed

fiduciary duties to the company.  RR 124. Payne's pursuit of the patent without disclosure

13

of the fact that FFC USA had an interest therein clearly was adverse to FFC USA's

interest, and Payne did not secure the consent of FFC USA as required by Rule 1.06(c)(2).

Rule 1.06 therefore does not save Payne from ethical violations.  Comment 11 recognizes:

"Ordinarily, it is not advisable for a lawyer to act as advocate against a client the lawyer

represents in some other matter, even if the other matter is wholly unrelated and even if

paragraphs (a), (b) and (d) are not applicable," and does not negate the consent

requirement otherwise imposed by Rule 1.06.  Payne neither requested nor received

consent from FFC USA.

     5.    *Payne should be disqualified because he will be a witness.*  Payne clearly

has knowledge that will be relevant to the patent dispute, and thus likely will be a witness

in this case.  Davis does not deny this likelihood, but asserts that Payne has been a

witness in other cases where he has been counsel.  Rule 3.08 of the Texas Disciplinary

Rules of Professional Conduct provides, however:

> Rule 3.08 Lawyer as Witness
> (a)   A lawyer shall not accept or continue employment as an advocate before a tribunal in a contemplated or pending adjudicatory proceeding if the lawyer knows or believes that the lawyer is or may be a witness necessary to establish an essential fact on behalf of the lawyer's client, unless:
>      (1)   the testimony relates to an uncontested issue;
>      (2)   the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony;
>      (3)   the testimony relates to the nature and value of legal services rendered in the case;
>      (4)   the lawyer is a party to the action and is appearing pro se; or
>      (5)   the lawyer has promptly notified opposing counsel that the lawyer expects to testify in the matter and

14

> disqualification of the lawyer would work substantial hardship
> on the client.
> (b)    A lawyer shall not continue as an advocate in a pending
> adjudicatory proceeding if the lawyer believes that the lawyer
> will be compelled to furnish testimony that will be substantially
> adverse to the lawyer's client, unless the client consents after
> full disclosure.

Davis does not argue that the requirements of either subdivision (a) or subdivision (b) have

been met.  Thus, whether Payne's testimony will be favorable or adverse to Davis, is

irrelevant at this point.  Payne has signed on for active representation of Davis in this

proceeding, in direct violation of Rule 1.08. *See also Anderson Producing Co. v. Koch Oil

Co.,* 929 S.W.2d 416 (Tex. 1996) (advocate may not be witness). The fact that parties in

other cases may not have moved for disqualification does not negate Payne's breach of

Rule 1.08.

Wherefore, premises considered, FFC USA requests that this court disqualify

attorney Al Payne and the law firm of Payne, Lundee, D'Ambrosio & Arismendi, L.L.P. from

representing Davis in this litigation and in connection with the crawler crane that is the

subject of Patent No. 6,003,252 (the patent at issue). This defendant requests such further

relief to which it may be entitled, at law or in equity.

Respectfully submitted,

Gary Gurwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)
Attorney in charge for defendant

15

Of counsel:

Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

16

CMPDF – www.texio.com

## Certificate of Service

I certify that on June 7, 2000, a true and correct copy of the foregoing document was sent to all counsel of record, as follows:

| Attorney: | For: | Served by: |
|---|---|---|
| Ernesto Gamez<br>Victor Quintanilla<br>LAW OFFICES OF ERNEST GAMEZ, P.C.<br>777 E. Harrison St.<br>Brownsville, Tx 78520 | plaintiff | certified mail, return receipt requested |
| Al Payne<br>PAYNE, LUNDEEN, D'AMBROSIO &<br>ARISMENDI LLP<br>1700 W. Loop South, Suite 1230<br>Houston, Tx 77027 | | |



Gary Gurwitz