28

United States District Court
Southern District of Texas
FILED

JUL 3 1 2000

Michael N. Milby
Clerk of Court

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

DANIEL E. DAVIS                     §
                                    §
vs.                                 §          CIVIL ACTION NO. B-00-003
                                    §
FAVELLE FAVCO CRANES USA, INC.      §

---

## DEFENDANT FAVELLE FAVCO CRANES, USA'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND BRIEF IN SUPPORT THEREOF



CutePDF - www.fsstio.com

# Table of Contents

**Page**

A. SUMMARY OF ARGUMENT ........................................................... 1

B. UNDISPUTED FACTS ................................................................. 4

(1) Favco USA was formed in September 1997 ....................................... 4

(2) Favco Holdings Wanted To Develop a Crawler Crane in the USA ....................... 4

(3) Davis Was Hired to be President and Managing Director of Favco USA ............. 5

(4) One of Davis' Express Responsibilities Was to Ensure That The Crawler Cranes Were Designed, Developed and Marketed by Favco USA ....................................................................... 5

(5) Davis Contends That Two Documents Reflect His Complete Agreement With Favco USA ........................................... 5

(6) These Two Documents Say Nothing About Ownership of the Crawler Cranes or Any Inventions or Designs and Say Nothing to Diminish Favco USA's Rights in the Crawler Cranes ........................... 6

(7) Davis Was In Charge Of Every Aspect Of the Crawler Crane Project ....................................................................... 7

(8) When Davis Came To Favco USA He Had No Patentable Crawler Crane Design ................................................................. 8

(9) Davis Hired Several Contract Engineers For Favco USA to Design and Develop Crawler Cranes ............................................. 9

(10) The Contracts Provided That Favco USA Would Own All Designs, Drawings, Patents and Other Rights .................................... 10

(11) Davis Admits That All Design Work Was Done While He Was In Charge at Favco USA ................................................... 11

(12) Favco USA Made Every Payment For Every Aspect of the Entire Crawler Crane Project .................................................... 11

(13) Davis Informed Cheam Tek Siong In August 1998 That He Had Filed a Patent Application For the Crawler Cranes .......................... 12

(14) Davis' Technical Reason For Filing The Patent Application In His Own Name Was Immediately Countermanded ................................. 12

(15) Even After Filing The Patent Application, Davis Negotiated Confidentiality Agreements on Behalf of Favco USA .......................... 13

(16) After The Engineering Was Complete, Favco USA Began Making The Crawler Cranes at its Plant ............................................ 13

(17) Trademarks Were Applied For By Davis For Favco USA ......................... 14

(18) Once Prototypes Were Built, Davis Advertised and Sold These Cranes as Favco USA Cranes ............................................. 14

(19) Heavy Losses and Few Sales Caused Problems With Davis ..................... 15

(20) Prior to Leaving Favco USA Davis Committed Favco USA to Buy Over Seven Million Dollars in Equipment From Caterpillar .................... 15

ii

C. ARGUMENT ............................................................................... 16

   (1)    Standard for Granting Summary Judgment .......................... 16

   (2)    Texas Law Requires That Davis Assign '252 Patent to Favco USA
           And All Related Patent Applications And The Subject Invention ....... 17

   (3)    Alternatively, Favco USA Possesses a "Shop Right" in the
           Invention  Claimed in the '252 Patent and in Any Other Patent
           Applications Filed By Davis After June 1997 and Owns All of the
           Design Drawings, Trade Secrets, Specifications and Technology
           Related to the Crawler Cranes ............................................................ 20

        (a)    Favco USA is Entitled to Summary Judgment That it has a Shop
               Right in the '252 Patent and in Any Other Patent Applications
               Filed by Davis After June 1997 .................................................. 21

            (i)    Davis developed the invention claimed in the '252 Patent
                     while working at Favco USA, using Favco USA's funding,
                     resources and personnel ............................................... 23

            (ii)   After the cranes were designed and manufactured using
                     Favco USA's funding, resources and personnel, Davis not
                     only acquiesced in Favco USA's selling the crawler cranes,
                     he also participated in and promoted the sale of the crawler
                     cranes under the Favco USA name ............................... 24

            (iii)  All costs and expenses associated with the design,
                     manufacturing and development of the crawler cranes were
                     incurred by Favco USA ............................................... 26

            (iv)  Throughout the time that Davis was spending Favco USA's
                     funding and using Favco USA's resources in developing
                     the crawler cranes, Davis said nothing about precluding
                     Favco USA from manufacturing the crawler cranes without
                     his permission ............................................................. 26

        (b)    Favco USA is Also Entitled to Summary Judgment That it Owns
               the Design Drawings, Trade Secrets, Specifications and All
                Technology Related to the Crawler Cranes and to Summary
               Judgment That Davis Cannot Use Such Information ............... 28

D. FEW ISSUES REMAIN ............................................................. 29

E.  CONCLUSION AND PRAYER ................................................... 29

iii

# Table of Authorities

Page

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) ........................................................................ 16

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.,*
    73 F.3d 1573 (Fed. Cir. 1996) ...................................................... 16

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986) ........................................................................ 16

*Davis v. Alwac Int'l, Inc.,*
    369 S.W.2d 797 (Tex. Civ. App.-- Beaumont 1963, writ ref'd n.r.e.) ................... 17,18,19

*General Mills, Inc. v. Hunt-Wesson, Inc.,*
    103 F.3d 978 (Fed. Cir. 1997) ...................................................... 16

*Great Lakes Press Corp. v. Froom,*
    695 F. Supp. 1440 (W.D.N.Y. 1987) ............................................ 18

*Grip Nut Company v. Sharp,*
    150 F.2d 192 (7th Cir. 1945) ...................................................... 18

*Hyde Corporation v. Huffines,*
    314 S.W.2d 763 (Tex.), *cert. denied,* 358 U.S. 898, 79 S. Ct. 223 (1958) ...................... 28

*International Bankers Life Ins. Co. v. Holloway,*
    368 S.W.2d 567 (Tex. 1963) ........................................................ 17

*Johnston v. American Speedreading Academy, Inc.,*
    526 S.W.2d 163 ( Tex. Civ. App. -- Dallas 1975, no writ) .............................. 28

*KDowse v. Federal Rubber Co.,*
    254 F. 308 (N.D. Ill. 1918) ........................................................ 18

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509 (Tex. 1942) .............................. 17

*McClurg v. Kingsland,*
    42 U.S. (1 How.) 202 (1843) ...................................................... 21

*McElmurry v. Arkansas Power & Light Co.,*
    995 F.2d 1576 (Fed. Cir. 1993) .................................................. 21,22

iv

*Miller v. GTE Corp.,*
    1989 WL 258184 (S.D. Tex. April 7, 1989) ................................................................ 18

*North Branch Products, Inc. v. Fisher,*
    131 U.S.P.Q. 135 (D.C.D.C. 1961) ............................................................................ 18

*Solomons v. United States,*
    137 U.S. 342 (1890) .................................................................................................... 21

*Texas Bank & Trust Co. v. Moore,*
    595 S.W.2d 502 (Tex. 1980) ...................................................................................... 17

*United States v. Dubilier Condenser Corp.,*
    289 U.S. 178 (1933) .................................................................................................... 21

CMxPDF - www.taxisa.com

## A. SUMMARY OF ARGUMENT

This case involves, among other things, a claim by the Plaintiff, Daniel E. Davis, ("Davis"), that he owns a patent to the design of certain crawler cranes[1] and that the Defendants, including Favelle Favco Cranes USA, Inc., ("Favco USA"), have infringed his patent rights. Davis makes this claim despite the undisputed facts that:

(1)     Davis was hired in June 1997, specifically to be Managing Director on behalf of Favelle Favco Cranes Holdings Sdn Bhd ("Favco Holdings") to work at its facility to be started in the United States;

(2)     In September 1997, when Favco Holdings' facility in the United States was incorporated as Favco USA, Davis was elected to serve as President of Favco USA;

(3)     Davis' duties as Managing Director and President of Favco USA included assisting in the conceptualization, design and development of a line of crawler cranes for Favco USA;

(4)     Davis had no patentable design for crawler cranes when he came to Favco Holdings as Managing Director in June 1997, or when he was elected as President of Favco USA in September 1997;

(5)     as President and Managing Director of Favco USA, Davis unequivocally had a fiduciary relationship with the company and was legally obligated to exercise the utmost good faith in all transactions touching upon his duties to Favco USA and its property;

---

[1] The focus of this lawsuit is on the development of the crawler cranes at Favco USA  A crawler crane is a crane that is mobile because it is on crawler treads, as opposed to a crane that is in a fixed position. (Exhibit A, Davis Deposition, Vol. I, pg, 32, lines 2 - 23) The 9 ton crane technically is not a crawler crane because it has rubber wheels instead of crawler treads, but it is included in the reference to crawler cranes anyway for ease of reference.

CSMPDF – www.fesisa.com

(6)     the patent in question, U.S. Patent No. 6,003,252, (hereinafter the "'252 Patent") relates directly to the crawler cranes which Davis was to design and develop for Favco USA and was applied for by Davis nearly a year after he became President and Managing Director of Favco USA;

(7)     all engineering, design work and manufacturing drawings for the crawler cranes was done while Davis was President and Managing Director of Favco USA by persons or companies that were hired for that purpose by Favco USA, the work they did was to belong to Favco USA, and the work they did was all paid for by Favco USA;

(8)     the crawler cranes in question were designed, developed, manufactured and sold under the name and company umbrella of Favco USA while Davis was President, Managing Director and a shareholder of Favco USA;

(9)     Davis is adamant that his rights, if any, in and to the Favco USA crawler cranes are contained exclusively in two documents; (a) an Employment Contract between him and Favco Holdings, or (b) an unsigned draft Shareholders' Agreement which includes his name and the name of Favelle Favco Cranes (M) Sdn Bhd (hereinafter "Favco Malaysia"), and he concedes that there is no other basis for his claims or rights;

(10)    however, neither of these documents says anything about ownership of the crawler cranes at issue; in fact, Davis has no contract, written or oral, with Favco USA that diminishes Favco USA's rights in the crawler cranes that resulted from the engineering and design work that the engineers and companies did for Favco USA.

From these undisputed facts one can see that all of the design, development, manufacturing and sales of the crawler cranes at issue occurred while Davis was President and Managing Director

2

of Favco USA. As President and Managing Director, Davis was under a strong fiduciary obligation to do everything related to the activities of Favco USA for Favco USA, not for himself. Under these undisputed facts, Favco USA is entitled to summary judgment declaring that Favco USA, not Davis, is the true and correct owner of '252 Patent and any other patents or patent applications filed by Davis that are related to crawler cranes.

Alternatively, Favco USA is entitled to summary judgment declaring that it has a royalty free, non-exclusive right to make and use the crawler cranes that are the subject of the '252 Patent and any other patent applications filed by Davis that relate to the crawler cranes or the '252 Patent (i.e. "Shop Rights"). It is undisputed that:

(1)     These crawler cranes were designed and developed while Davis was acting as President and Managing Director of Favco USA;

(2)     Davis hired engineers and contractors on behalf of Favco USA to design and develop the crawler cranes, all of whom were paid by Favco USA;

(3)     Davis used Favco USA's facilities and employees to develop, build, test and market the crawler cranes;

(4)     Davis promoted the crawler cranes for Favco USA by (a) creating brochures to market the crawler cranes, (b) authorizing an attorney to apply for trademarks for the name "Favelle Favco," which was to be applied to the crawler cranes and (c) introduced the crawler cranes to market by selling them under the Favco USA name; and

(5)     in total, under Davis' direction, Favco USA invested about 14 million dollars on the crawler crane project and to date Favco USA has been unable to recover its investment and has sustained substantial losses on the crawler crane project.

3

These are the same crawler cranes that Davis now asserts infringe the '252 patent. Under these undisputed facts, Favco USA is at least entitled to shop rights in the '252 patent and any other patent applications filed by Davis which relate to crawler cranes.

Favco USA also is entitled to summary judgment declaring that it owns the trade secrets, designs, drawings, plans, specifications and all technology related to the crawler cranes. Contracts between Favco USA and engineers and designers of the crawler cranes clearly state that all of the confidential and proprietary information and the design drawings related to the crawler cranes are the property of Favco USA, not Davis personally. Moreover, Davis admits that all of the work that was done pursuant to contracts with engineers and designers was done for Favco USA which was while Davis was President and Managing Director and owed fiduciary duties to Favco USA. In addition, Davis admits that all of this work was paid for by Favco USA and that he had no personal deals with any of these designers and engineers and has never paid them anything personally.

## B. UNDISPUTED FACTS

### (1)  <u>Favco USA was formed in September 1997.</u>

Favco USA was formed in September of 1997 and is headquartered in Harlingen, Texas. Favco Holdings, a Malaysian corporation, owns 90 % of the stock of Favco USA and Coburn International, Ltd., an offshore company owned by Davis,  owns the remaining 10 % of stock. (Exhibit A, Davis Deposition, Vol. I,  pg. 32, lines 2 - 23).

### (2)  <u>Favco Holdings Wanted To Develop a Crawler Crane in the USA.</u>

Not previously having done business in the United States, Favco Holdings was interested in starting a U.S. operation for several reasons.  (Exhibit D, Mac Deposition, pg. 21, lines 6 - 19; Exhibit F, 4-12-00 Hearing Transcript, Cheam Testimony, pg. 176, lines 21-25).  First, Favco Holdings wanted to develop, design, manufacture and sell the crawler crane at and through its Favco

4

USA facility and second, it wanted to begin marketing into the U.S. the other crane models that were already being manufactured outside of the United States by other companies in the Favelle Favco Group. (*Id.*)

> **(3)** **Davis Was Hired to be President and Managing Director of Favco USA.**

In June 1997 Favco Holdings contracted with Davis to be Managing Director of its facility in the United States. (Exhibit A-3, Davis Deposition, Vol. 1, Employment Contract). Favco Holdings' facility in the United States was incorporated as Favco USA in September 1997 and Davis was elected President of Favco USA at that time.

> **(4)** **One of Davis' Express Responsibilities Was to Ensure That The Crawler Cranes Were Designed, Developed and Marketed by Favco USA.**

As President and Managing Director of Favco USA, one of Davis' express responsibilities was to assist Favco USA in the conception, design and development of a line of crawler cranes that Favco USA would manufacture, market and sell. (See Exhibit D, Mac Deposition, pg. 163, line 3 - pg. 164, line 25; Exhibit C, Cheam Deposition, pg. 170, lines 11-19; Exhibit A, Davis Deposition, Vol. I, pg. 37, line 25 - pg. 38, line 7; pg. 40, line 25 - pg. 41, line 6; Exhibit A-2, Davis Deposition, Vol. 1, draft Shareholders' Agreement, ¶ 4.1(h) as proposed by Davis).

> **(5)** **Davis Contends That Two Documents Contain His Complete Agreement With Favco USA.**

Davis asserts that the complete agreement he struck with Favco USA is contained in an Employment Contract (Exhibit A-3, Davis Deposition, Vol. 1, Employment Contract) with Favco Holdings and in an unsigned draft of a Shareholders Agreement referring to Davis and Favco Malaysia. (Exhibit A, Davis Deposition, Vol. I, pg. 17, line 4 - pg. 19, line 22; pg. 21, lines 5 - 18; pg. 22, lines 5 - 18; see Exhibits A-2 and A-3).

5

**(6)** **These Two Documents Say Nothing About Ownership of the Crawler Cranes or Any Inventions or Designs and Say Nothing to Diminish Favco USA's Rights in the Crawler Cranes.**

Davis' Employment Contract says nothing about ownership of the crawler cranes at issue in this case or about ownership of any inventions relating to crawler cranes. In fact, it doesn't mention crawler cranes at all. (See Exhibit A-3). Instead, it says that Davis, as Managing Director of Favco Holdings' facility in the United States, will carry out his duties for the benefit of Favco Holdings. (See Exhibit A-3).

The draft of the Shareholders' Agreement also says nothing about ownership of the crawler cranes. It references Favco Malaysia, which neither owns any stock in Favco USA nor is a party to the Employment Contract. It also does not mention Favco USA. (See Exhibit A-2). Davis asserts that the draft Shareholders' Agreement contains a license to Favco USA from Davis to use the crawler crane invention for three years. (Exhibit A, Davis Deposition, Vol. I, pg. 147, lines 13-23). However, the draft agreement says nothing about a license, including the duration or other terms of any such license.[2] (Exhibit A, Davis Deposition Vol. I. pg. 147, line 24 - pg. 149, line 6; Exhibit A-2). This is the sole basis for Davis' contention that he owns the patent to the crawler cranes and licensed it to Favco Malaysia. (Exhibit A, Davis Deposition, Vol. I, pg. 147, lines 13-23). Davis admits he has no agreements of any kind with Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 145, line 13 - pg. 146, line 1). Davis therefore has no basis for contending that he has any

---

[2] All the draft Shareholders' Agreement says is that Favco Malaysia would pay Davis a royalty of 1% of the sales price of each crawler crane sold for the first three years. (See Exhibit A-2, ¶7.1) Mr. Mac. Ngan Boon, President of Favco Holdings, did confirm that Favco Holdings agreed with Davis to pay him a 1% commission on sales of the crawler cranes for 3 years. (See Exhibit D, Mac Deposition, pg. 28 line 5, pg. 29 line 7, pg. 32 lines 5 - 15, pg. 34 line 3 - pg. 35 line 2; Exhibit E, 11-08-99 Hearing Transcript, Mac Testimony, pg. 88, line 13 - pg. 89, line 6; Exhibit C, Cheam Deposition," pg. 45 line 24 - pg. 47 line 22; pg. 187, line 23 - pg. 189, line 1). Mr. Mac agreed to this commission as an incentive to Davis to encourage the rapid research and development of the crawler crane project, and start receiving an earlier return on what was to be a multimillion dollar investment in that project. (See *Id.*) He did not agree that Davis would own the patent or that Favco USA would operate under any type of license agreement. The Shareholders' Agreement was a draft and was never signed by a representative of any Favco company.

rights in relation to any inventions or patent applications relating to the crawler cranes.  If Davis' agreement with Favco USA, Favco Holdings or Favco Malaysia is contained exclusively in the Employment Contract and draft Shareholders' Agreement, as unequivocally stated by Davis, then he has no claim to or ownership at all in the crawler cranes, either contractually, factually or legally.

This draft Shareholders' Agreement was sent to Davis on June 10, 1997 for his consideration.  The transmittal letter clearly denominated the enclosed documents as "drafts." (Exhibit C-32, Cheam Deposition, 6-10-97 letter from Michael Chen).  Davis never responded to the letter and never returned the draft Shareholders' Agreement to Favco Malaysia or Favco Holdings. (Exhibit D, Mac Deposition, pg. 44, lines 20 - 24).   Cheam says he never received a signed copy. (Exhibit C, Cheam Deposition, pg. 50, line 21; pg. 51, line 11).  The "signed" copy did not appear until it was attached as an exhibit to Davis pleadings in the litigation in late 1999, bearing Davis' signature and the date of August 16, 1997.  It was never agreed to by Favco Malaysia or Favco Holdings or Favco USA and never signed by a representative of any of them.  (Exhibit C, Cheam Deposition, pg.194, line 19 - pg. 195, line 21; Exhibit D, Mac Deposition, pg. 45, lines 11 - 13).

   (7)    **Davis Was In Charge Of Every Aspect Of the Crawler Crane Project.**

As President and Managing Director of Favco USA, Davis ran the day to day operations of Favco USA.  Davis was in charge of every aspect of the complete crawler crane project for Favco USA including arranging and contracting for the design, conception, development, construction, marketing, promotion, and sales. (Exhibit C, Cheam Deposition, pg. 262, line 15 - pg. 263, line 11). Davis on behalf of Favco USA hired the necessary engineers and support staff to carry out the crawler crane project. (Exhibit A, Davis Deposition, Vol. I, pg. 41, lines 11-15; pg. 52, line 19 - pg. 53, line 1; pg. 74, line 18 - pg. 80, line 19).  Davis, on behalf of Favco USA also incurred all of the

expenses and expenditures to carry out the crawler crane project and was primarily responsible for Favco USA's operations. (Exhibit C, Cheam Deposition, pg. 50, lines 12 - 21)

**(8)** **When Davis Came To Favco USA He Had No Patentable Crawler Crane Design.**

Prior to becoming President and Managing Director of Favco USA, Davis worked for Manitowoc Cranes. (Exhibit A, Davis Deposition, Vol. I, pg. 33, lines 5 - 9) Davis claims to have had an idea for building a crawler crane upon joining Favco USA, but Davis is adamant that he did not bring with him from Manitowac any designs, plans, models or prototypes related to the crawler cranes that are the subject of this lawsuit or the '252 patent. (Exhibit D, Mac Deposition, pg. 33, line 23 - pg. 34, line 2; Exhibit A, Davis Deposition, Vol. I, pg. 35, line 15 - pg. 37, line 4; pg. 40, line 25 - pg. 41, line 10).

Further, Davis admits that there was no design that he could file a patent on related to these crawler cranes before coming to work for Favco USA  On November 17, 1997, Davis, as President and Managing Director of Favco USA, wrote to Mac Ngan Boon and others at Muhibbah Engineering (the parent company of Favco Holdings which in turn owns 90% of the stock of Favco USA) to obtain approval for the retention of the ECCON engineering firm to design and develop the crawler cranes. Davis wrote:

> I have attached for you viewing the contract Eccon has to sign. This contract is made part of the Caterpillar contract I signed and they are all tied together. I also have a patent attorney who will apply for the patent but <u>we have</u> by law one year to file for the patent. **We cannot file for a Pat. Pending or Patent unless we have a design.** Eccon informed Cat/Gallotti there is still nothing in writing between us and Eccon. I feel the attorney covered us in the agreement **between Favco and Eccon**. Please let me know if okay to proceed. (See Exhibit A-29, emphasis added).[3]

---

[3] Davis identified the Eccon contract referred to in the first two sentences of this quote as Exhibit A-29. The significant language of this contract is quoted on page 10.

**(9)** **Davis Hired Several Contract Engineers For Favco USA to Design and Develop Crawler Cranes.**

Since Davis had no patentable design, Davis, acting for Favco USA, hired several outside engineers including Horst Zimmerman of Eccon Engineering, Keith Orgeron of Integra Engineering and Jim Rusk to design and develop the crawler cranes. (Exhibit A, Davis Deposition, Vol. I, pg. 41, lines 11 - 24; pg. 52, line 19 - pg. 53, line 25; pg. 68, line 19 - pg. 69, line 2).

In November 1997, Davis hired Horst Zimmerman from ECCON ENGINEERING COMPUTER CONSULTING GESELLSHAFT M.B.H., to begin design work on a 50 ton and larger crawler crane. (Exhibit A, Davis Deposition, Vol. I, pg. 53, lines 21 - 25; Exhibit A-4). In February 1998, Davis, as Favco USA's representative, hired Mr. Keith Orgeron to work on the design and development of the crawler cranes and in June 1998 Davis on behalf of Favco USA hired Jim Rusk. (Exhibit A, Davis Deposition, Vol. I, pg. 41, lines 11 - 24). One of Mr. Orgeron's responsibilities was to convert drawings from metric to U.S. measurements and Jim Rusk was to perform design services for the 28 and 38 ton crane models that Favco USA was going to manufacture and sell. (Exhibit A, Davis Deposition, Vol. I, pg. 64, lines 10 - 18; pg. 65, lines 13 - 14). Later Rusk was also to do design work on the 9 ton for Favco USA, which is also owned by Favco USA. Davis however admits that the 9 ton crane is not covered by the '252 patent. (Exhibit A, Davis Deposition, Vol. I, pg. 191, line 18 pg. 192, line 1; pg. 194, lines 7-10).

As President and Managing Director of Favco USA, Davis signed contracts between Favco USA and Eccon Engineering and between Favco USA and Keith Orgeron. (See Exhibits A-4 and A-9). Later in 1998, as President and Managing Director of Favco USA, Davis also signed contracts with Caterpillar Industrial Products, Inc. (hereinafter "Caterpillar") (Exhibits A-5 and A-6).

9

**(10)** **The Contracts Provided That Favco USA Would Own All Designs, Drawings, Patents and Other Rights.**

These contracts provided that the work was to be done for Favco USA, paid for by Favco USA and that Favco USA, not Davis, would own the designs, the drawings, and any patents, copyrights, or other rights that relate to the designs of the crawler cranes. (See Exhibits A-4, A-5, A-6 and A-9). For instance the Eccon ontract provided that:

> ECCON agrees and stipulates that it is performing the design, specification, fabrication and testing services solely for FAVCO and that all designs, specifications, work product, and prototypes generated, produced or resulting from ECCON'S services <u>SHALL BE THE EXCLUSIVE PROPRIETARY PROPERTY OF FAVCO. ECCON AGREES AND ACKNOWLEDGES THAT FAVCO SHALL BE THE SOLE OWNER AND SOLE PARTY TO SECURE COPYRIGHTS AND PATENTS ON ALL SPECIFICATIONS, DESIGNS, DRAWINGS, AND WORK PRODUCT GENERATED AND PRODUCED BY ECCON IN PERFORMING THE DESIGN AND DEVELOPMENT SERVICES IN RELATION TO THE CRAWLER CRANE DESIGN,</u> including all services performed by ECCON pursuant to Quotation No. 970387. (Exhibit A-4, ¶ 1. "Ownership of Design"). (emphasis added)

Also, the contract with Keith Orgeron stated:

> <u>ANY IDEAS, PATENTS, COPYRIGHTS, DRAWINGS, ETC. PRODUCED BY *CONSULTANT* UNDER THIS *AGREEMENT* SHALL BE THE SOLE PROPERTY OF THE *COMPANY* AND MAY BE USED BY *COMPANY* WITHOUT ANY FEES OR OTHER REMUNERATION PAYABLE TO *CONSULTANT.*</u> However, in the event any ideas, patents, copyrights, drawings, etc. developed by *Consultant* are sold or licensed to a third party by *Company,* then *Consultant* shall be entitled to a royalty interest of ten percent (10%) based on the product sale price. (Exhibit A-9, pg. 5 of 6 "Patents/Copyrights") (empahasis added) (italics in original)

In addition, although it is not expressly in Mr. Rusk's contract who owns his work product, Davis admits that all of the work that Mr. Rusk did was on behalf of Favco USA, and was paid for

10

by Favco USA  (Exhibit A, Davis Deposition, Vol. I, pg. 58, line 16 - pg. 60, line 12; pg. 61, lines 19 - 22; pg. 62, lines 11-16)  Davis also admits that he had no personal deal with Mr. Rusk and that he personally paid him nothing.  (Exhibit A, Davis Deposition, Vol. I, pg. 59, lines 2-3; Exhibit B, Davis Deposition, Vol. II., pg. 18, line 5 - pg. 30, line 7).  There is no dispute that Favco USA owns all of Mr. Rusk's work product.

**(11)**    **Davis Admits That All Design Work Was Done While He Was In Charge at Favco USA.**

The agreement with ECCON was signed on November 22, 1997, and the agreement with Mr. Orgeron was signed on February 3, 1998.  The contract with Mr. Rusk was confirmed in writing on June 3, 1998.  Davis does not dispute that all of the work this design team did was after Davis left his previous employer Manitowoc and while Davis was President and Managing Director of Favco USA.  (Exhibit A, Davis Deposition, Vol. I, pg. 68, line 19 - pg. 69, line 2).

**(12)**    **Favco USA Made Every Payment For Every Aspect of the Entire Crawler Crane Project.**

Since the inception of the crawler crane project, Favco USA has invested about 7 million in research and design of the crawler cranes and 14 million dollars total in the crawler crane project. (Exhibit C, Cheam Deposition, pg. 225, line 19 - pg. 226, line 22).  Favco USA made every payment for every aspect of the entire crawler crane project including conception, design, engineering, development, subcontract employees, facilities, equipment, prototype building, testing, certification, manufacturing, promotion and sales.  (Exhibit C, Cheam Deposition, pg. 262, line 15 - pg. 263, line 11).

ECCON, Rusk and Orgeron were all paid by Favco USA.  (Exhibit A, Davis Deposition, Vol. I, pg. 58 - line 16 pg. 60, line 12; pg. 61, lines 19 - 22; pg. 62, lines 11 - 16).  In addition, all of the manufacturing components used to build the crawler cranes were paid for by Favco USA.

11

(Exhibit A, Davis Deposition, Vol. I, pg. 74, line 18 - pg. 79, line 15). All of the salaries of the manufacturing employees, were paid by Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 255, line 3 - pg. 255, line 11). Moreover, all of the advertising and marketing costs associated with bringing the crawler cranes to market were paid for by Favco USA. (Exhibit C, Cheam Deposition,, pg. 262, line 15 - pg. 263, line 11).

All of this investment took place under Davis' direction while he was President and Managing Director of Favco USA. *Id.* To date, Favco USA has been unable to recoup its investment and has sustained substantial losses. Of the total fourteen million dollars invested, Favco USA has received only about one million in revenue from sales of the crawler cranes. (Exhibit C-34, 2-10-99 Davis Fax to Mac).

### (13)    Davis Informed Cheam Tek Siong In August 1998 That He Had Filed a Patent Application For the Crawler Cranes.

In August of 1998, nearly a year after first beginning to engage the design team, Davis filed a patent application related directly to the crawler cranes. (See Exhibit F, 4-12-00 Hearing Transcript, pg. 90, line 25 - pg. 91, line 20). Davis informed Cheam Tek Siong of the filing of the patent on August 6, 1998. (See Exhibit J).

### (14)    Davis' Technical Reason For Filing The Patent Application In His Own Name Was Immediately Countermanded.

When Davis wrote on August 6, 1998 to say that he had applied for a patent in his name, he said he had done so because United States law requires you file in name of the inventor, not in the name of a company. He never once said that he had filed the application in his own name because he owned the invention or the patent application. In addition, he also never mentioned anything about any agreement to license the patent application to Favco Holdings. (See Exhibit J; Exhibit C, Cheam Deposition pg. 261, line 23 - pg. 262, line 11, pg. 266, line 20 - pg. 267, line 4).

12

Mr. Cheam Tek Siong, who was Group General Manager for Favco Holdings, immediately replied by letter on August 11, 1998, (Exhibit K), to Davis insisting that the owner of the patent should be Favco USA and the inventor be Davis and that Davis should fix it. (See Exhibit K; Exhibit C, Cheam Deposition, pg. 261, line 23 - pg. 262, line 11). Davis never responded to this letter, nor did he tell anyone at Favco USA or Favco Holdings that he was not going to fix the ownership, and in particular, he never said then that he was claiming adverse ownership of the patent application. (Exhibit C, Cheam Deposition, pg. 261, line 23 - pg. 262, line 11; pg. 266, line 20 - pg. 267, line 4). It was not until a March 1999 letter from Al Payne that anyone knew that Davis was claiming the '252 patent adverse to Favco USA. (*Id.*; Exhibit C, Cheam Deposition, pg. 266, line 20 - pg. 267, line 4; Exhibit F, 4-12-00 Hearing Transcript, Cheam Testimony, pg. 173, lines 2 - 13; Exhibit H).

### (15)   Even After Filing The Patent Application, Davis Negotiated Confidentiality Agreements on Behalf of Favco USA.

After filing the patent application, Davis negotiated confidentiality agreements on behalf of Favco USA with various component suppliers including Caterpillar. (See Exhibits A-5 and A-6, Caterpillar contracts). These agreements post date the filing of the patent application and also provide that the resulting designs are the property of Favco USA. (Exhibits A-5 and A-6, ¶¶ 6 and 6, respectively). Davis also negotiated deals for Favco USA with other component suppliers for the crawler cranes including Robway (load moment indicators) and Braden (winch supplier). (Exhibit A, Davis Deposition, Vol. I, pg. 74, line 18 - pg. 79 line 17).

### (16)   After The Engineering Was Complete, Favco USA Began Making The Crawler Cranes at its Plant.

After the design work had been done by the three engineering consultants and Caterpillar, Davis continued on the crawler crane development track and next hired the necessary employees to

13

negotiated distributorship agreements for Favco USA for future sales of the cranes. (Exhibit A, Davis Deposition, Vol. I, pg. 94, line 13 - pg. 95, line 18; pg. 255, lines 21 - pg. 256, line 7; see also Exhibit M, Mustang Agreement). The distributorship agreement provides for distribution of future crawler cranes under the "Favelle Favco" trademarked name. (Exhibit M, ¶ 18).

(19)    **Heavy Losses and Few Sales Caused Problems With Davis.**

Late in 1998 and then in the beginning to middle part of 1999 Mr. Davis' relations with directors and shareholders of Favco USA and its parent companies began to break down because, among other things, Favco USA had sustained substantial losses. (See Exhibit C, Cheam Deposition, pg. 133, line 24 - pg. 136, line 25; Exhibit C-34, Davis Fax to Mac) In March 1999 Davis had Attorney Al Payne write to Shirleen Lee at Muhibbah Engineering. This letter threatens that the company is likely to infringe on Davis' soon-to-issue patent. (Exhibit I). This is the first time Davis had made a claim that he owned the patent, not Favco USA, and that he would use the patent to prevent Favco USA from making the crawler cranes. (Exhibit C, Cheam Deposition, pg. 266, line 20 - pg. 267, line 4; Exhibit F, 4-12-00 Hearing Transcript, Cheam Testimony, pg. 173, lines 2 - 13). However, under Davis' leadership and with his knowledge and consent Favco USA continued to develop, design, manufacture, test, certify and sell crawler cranes.

(20)    **Prior to Leaving Favco USA Davis Committed Favco USA to Buy Over Seven Million Dollars in Equipment From Caterpillar.**

In approximately June of 1999, Davis committed Favco USA to purchase from Caterpillar over $7 million in power units for use as components for crawler cranes. (Exhibit A, Davis Deposition, Vol. I, pg. 149, line 12 - pg. pg. 150, line 18). Davis made this commitment despite the fact that Favco USA had no purchase orders for the crawler cranes at that time. (Exhibit A, Davis Deposition, Vol. I, pg. 150, line 24 - pg. 151, line 5). In defense of his actions, Davis asserts that

15

the Caterpillar orders were cancellable. (Exhibit A, Davis Deposition, Vol. I, pg. 151, lines 6 - 13).

However, Davis had not cancelled any orders before his capacity as President and Managing

Director was terminated in September 1999, and by the time Mr. Cheam or anyone else found out

they were cancellable it was too late to do so. (Exhibit D, Mac Deposition, pg. 86, line 23 - pg. 89,

line 6; Exhibit C, Cheam Deposition, pg. 109, line 10 - pg. 113, line 7; pg. 117, line 24 - pg. 118,

line 24; pg. 124, line 13 - pg. 127, line 5). Thus Favco had to pay the full seven million dollars to

Caterpillar. It still has approximately sixty-three (63) of these units on hand in inventory.

Davis' relationship with the directors and shareholders worsened after this, and Davis was

terminated as President and Managing Director of Favco USA in September of 1999. (See Exhibit

C, Cheam Deposition, pg. 133, line 24 - pg. 136, line 25). Upon leaving, Davis took with him all

the designs and drawings of the Favco USA-owned crawler cranes, (Exhibit A, Davis Deposition,

Vol. I, pg. 109, line 19 - pg. 111, line 6), and had Favco USA's main computer downloaded and took

the tape (Exhibit A, Davis Deposition, page 117, lines 19 - 22).

## C. ARGUMENT

### (1)   Standard for Granting Summary Judgment.

Summary judgment is appropriate where no genuine issue of material fact exists and the

movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,*

477 U.S. 317, 322 (1986); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573 (Fed. Cir.

1996). A fact is material only if a finding of that fact is relevant and necessary to the proceeding.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *General Mills, Inc. v. Hunt-Wesson, Inc.,*

103 F.3d 978, 980 (Fed. Cir. 1997).

(2)    **Texas Law Requires That Davis Assign '252 Patent to Favco USA And All Related Patent Applications And The Subject Invention**

The law is clear in Texas that employees owe their employers fiduciary duties to act in their best interests, to deal openly and fairly with them, and to make full disclosure to them. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (Tex. 1942). Officers are entrusted with greater power, and so they too are subject to strict fiduciary duties to the corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963). Corporate directors and officers are held to an "extreme" measure of honesty, unselfishness, and good faith in any transaction involving self-dealing, such as the one in controversy in this case. *See Holloway*, 368 S.W.2d at 577. Moreover, once a fiduciary relationship is established, a presumption arises that such interested transactions between corporate fiduciaries and their corporations are unfair on the part of the officer or director and fraudulent upon the corporation. *See Holloway*, 368 S.W.2d at 576; *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980).

Acting as President and Managing Director of Favco USA, Davis unequivocally occupied a fiduciary relationship with the company and was legally obligated to exercise the utmost good faith in all transactions touching upon his duties to it and its property. *See id.*; *accord Davis v. Alwac Int'l, Inc.,* 369 S.W.2d 797, 802 (Tex. Civ. App.-- Beaumont 1963, writ ref'd n.r.e.). Among the obligations this fiduciary duty imposes on Davis is to assign any inventions conceived or developed by him during his employment. *Davis v. Alwac Int'l, Inc.,* at 802.

In *Davis*, a former employee, ironically also named Davis, sued his corporate employer, Alwac, for unpaid salary. Alwac counterclaimed against Davis for ownership of certain inventions made by Davis during the term of his employment with Alwac. Davis' name was listed on patent

applications as a co-inventor, and the applications were filed while Davis was still serving as an officer of Alwac. *See id.* at 802.

> Among the obligations which this fiduciary duty imposes on [Davis] is the one that any inventions which he may develop while occupying such a position and which relate to the occupation of the corporation must be assigned to the corporation for its benefit.

*Id.* Accordingly, Davis was ordered to execute proper assignments of the patent applications to Alwac. *See id.* at 802.

This holding was followed in the Federal District Court for the Southern District of Texas in *Miller v. GTE Corp.*, 1989 WL 258184 (S.D. Tex. April 7, 1989). In *Miller*, an employee for GTE jointly invented a portable cell site system to furnish mobile telephone service. Miller developed the idea and reduced the invention to practice while on GTE's salary, and using its facilities. *See id.* at *1. As in *Davis*, the court held that the company owned all intellectual property rights in the invention. Citing *Davis*, the court noted that an employee, like an officer, owes the corporation a fiduciary duty, including the assignment of intellectual property. *See id.* at *2.

This rule has been adopted in many other states and jurisdictions. *E.g., Great Lakes Press Corp. v. Froom*, 695 F. Supp. 1440 (W.D.N.Y. 1987) (former employee required to assign rights as a corporate fiduciary); *North Branch Products, Inc. v. Fisher*, 131 U.S.P.Q. 135, 137 (D.C.D.C. 1961) (president of company who concealed invention from company required to convey ownership); *Grip Nut Company v. Sharp*, 150 F.2d 192, 197 (7th Cir. 1945) (corporate officer had obligation to assign patents in light of fiduciary duty to company); *KDowse v. Federal Rubber Co.*, 254 F. 308 (N.D. Ill. 1918) (president and general manager required to assign patent to employer in light of position with company).

Davis did discuss the development of the crawler cranes forming the basis of the '252 patent at the very outset of his employment with Mr. Mac Ngan Boon and Cheam Tek Siong. (Exhibit A, Davis Deposition, Vol. I, pg. 38, lines 10-11). However, Davis is adamant that he brought no designs, plans, model or prototypes related to the crawler crane design disclosed in the '252 patent from his previous employer, Manitowac. (Exhibit A, Davis Deposition, Vol. I, pg. 34, line 18 - pg. 37, line 11). Moreover, nearly three months after his employment had begun, Davis admitted that he had no patentable crawler crane design. (See **B.  UNDIPUTED FACTS** § (8), *supra,* pg. 8 (hereinafter "Facts")).

Having no patentable design, Davis contracted with Mr. Jim Rusk of Rusk Engineering, Mr. Keith Orgeron of Integra Engineering and Horst Zimmermann of Eccon Engineering to begin design of the crawler cranes. (See Facts § (9), *supra,* pg. 9). Davis admits that all of the design work done by Rusk, Orgeron and Zimmermann was for Favco USA, was billed to and paid by Favco USA and was done after he became President and Managing Director. (See Facts §§ (11)-(12), *supra,* pg. 11). On August 5, 1998, nearly a year after being hired by Favco USA and engaging the design team to work on the crawler cranes, Davis finally filed for a patent application covering the design of the crawler cranes. (See Facts § (14), *supra,* pg. 12; Exhibit F, 4-12-00 Hearing Transcript, pg. 90, line 25 - pg. 91, line 20). This patent application resulted in the '252 patent. (Exhibit F, 4-12-00 Hearing Transcript, pg. 90, line 25 - pg. 91, line 20).

Under these undisputed facts, there is no doubt that all of the design and development work related to the crawler cranes that are the subject of the '252 patent was done at Favco USA, was paid for by Favco USA and was done while Davis was President and Managing Director and had fiduciary obligations running to Favco USA. (Facts §§(8)-(12), *supra,* pgs. 8-11). As with the *Davis v. Alwac* case, Davis owed a fiduciary duty to the company for which he acted as an officer.

19

Accordingly, Davis is legally obligated to assign ownership of the '252 patent and any other patents or patent applications related to crawler cranes to Favco USA, and should be so ordered.

Even Davis' own witness testified that absent an agreement to the contrary, everything that was developed by Davis while Davis was President and Managing Director for Favco USA belongs to Favco USA because of Davis' fiduciary duties to the company. (Exhibit E, 11-08-99 Hearing Transcript, Arizmendi Testimony, p. 75, lines 13-20). There is no agreement to the contrary between Favco USA and Davis.

Davis is adamant that his entire agreement with Favco USA is contained in his Employment Contract, and an unsigned draft of a Shareholders' Agreement, but neither of these documents says anything about ownership of the crawler cranes or any inventions developed by Davis while he is President and Managing Director of Favco USA. (Facts, §§ (5)-(6), *supra,* pgs. 5-6). Moreover, Favco USA is not a party to either of these documents. *Id.* Thus, the undisputed facts in this case compel a ruling that Davis must assign the '252 patent as well as any other patents or patent applications filed by Davis related to crawler cranes to Favco USA.

(3)   **Alternatively, Favco USA Possesses a "Shop Right" in the Invention Claimed in the '252 Patent and in any Other Patent Applications Filed by Davis After June 1997 and Owns All of the Design Drawings, Trade Secrets, Specifications and Technology Related to the Crawler Cranes.**

Even if, arguendo, Favco USA is not entitled to ownership of the '252 patent, (which Favco USA denies), there is no doubt that it is (1) entitled to a nonexclusive, royalty free license to practice the invention claimed in the '252 patent (i.e. a "shop right" in the '252 patent) and in any other patent applications filed by Davis after June 1997, and (2) entitled to ownership of the design drawings, trade secrets, specifications and all technology related to the crawler cranes that were

designed, developed and manufactured by Favco USA while Davis was President and Managing Director of Favco USA.

It is undisputed that all of the design and development of the crawler cranes was done for Favco USA, at Favco USA's expense and using Favco USA's employees and facilities. Moreover, it is undisputed that contracts signed with engineers and contractors on Favco USA's behalf clearly state that everything related to crawler cranes belongs to Favco USA, not Davis personally. Under these undisputed facts, Favco USA is at least entitled to summary judgment declaring that it is entitled to a "shop right" in the '252 patent and in any other patent applications filed by Davis after June 1997, and is the owner of the design drawings, trade secrets, specifications, and all technology related to the crawler cranes.

(a)   **Favco USA is Entitled to Summary Judgment That It Has a Shop Right in the '252 Patent and in Any Other Patent Applications Filed by Davis After June 1997.**

The "shop right" doctrine provides that an employee who uses his employer's resources to conceive an invention or to reduce it to practice must afford to his employer a nonexclusive, royalty free, non transferable license to practice the invention without liability for infringement, even though the employee subsequently obtains a patent thereon. *See, e.g., United States v. Dubilier Condenser Corp.*, 289 U.S. 178 (1933); *Solomons v. United States*, 137 U.S. 342 (1890); *McClurg v. Kingsland*, 42 U.S. (1 How.) 202 (1843); *McElmurry v. Arkansas Power & Light Co.*, 995 F.2d 1576, 1580-81 (Fed. Cir. 1993) ( "A 'shop right' is generally accepted as being a right that is created at common law, … when the circumstances demand it, under principles of equity and fairness, entitling an employer to use without charge an invention patented by one or more of its employees without liability for infringement.").

21

Two independent legal doctrines exist in which an employer is granted a shop right in the ideas or improvements created by its employees. The first is a shop right that is of the implied license type and arises where the employee engaged in activities in developing the invention on the employer's time at the employer's expense. The second is a shop right afforded an employer by law on the basis of acquiescence and estoppel.

Recognizing both the *implied* license and *estoppel* bases for the shop right, the Fifth Federal Circuit adopted a standard of looking at the totality of the circumstances, on a case by case basis, to determine whether the facts of a particular case warrant, under principles of equity and fairness, a holding that a *shop right* exists. *McElmurry,* 995 F.2d at 1581-82. In determining that a shop right existed in *McElmurry*, the Court noted that the employee developed the invention while working with the employer, the employer installed the invention on numerous of its machines with the employee's consent and participation, that all costs and expenses associated with the testing and implementation of the invention on the machines were incurred by the employer, that the employee never asserted that the employer was precluded from using the invention without his permission and never asserted that the employer was required to compensate him for its use of the invention. *See id.* at 1582-1583.

The facts of this case compel the same conclusion reached by the Court in *McElmurry*. The undisputed evidence here establishes that: (i) Davis developed the invention claimed in the '252 Patent and in any other patent applications filed by Davis related to crawler cranes while he was President and Managing Director of Favco USA, using Favco USA's funding, resources and personnel; (ii) after the cranes were designed and manufactured using Favco USA's funding, resources and personnel, Davis participated in and promoted the sale of the crawler cranes by and in the name of Favco USA; (iii) sales were made pursuant to a distributorship agreement with Favco

22

USA; (iv) all costs and expenses associated with the design, manufacturing and development of the crawler cranes were incurred by Favco USA; and (v) throughout the time that Davis was spending Favco USA's funding and using Favco USA's resources in designing and developing the crawler cranes, Davis said nothing about precluding Favco USA from manufacturing the crawler cranes without his permission.

(i)   <u>Davis developed the invention claimed in the '252 Patent while working at Favco USA, using Favco USA's funding, resources and personnel.</u>

One of Davis' express duties as President and Managing Director was to develop a line of crawler cranes. (Facts § (4), *supra*, pg. 5). Davis admits he had no design he could patent when he came to Favco *USA*. (Facts § (8), *supra*, pg. 8). Moreover, Davis positively asserts that he brought no designs or plans related to crawler cranes from his previous employer Manitowac. (Facts § (8), *supra*, pg. 8).

Having no patentable design, in late 1997 and early 1998 Davis, as Favco USA's representative, hired, on behalf of Favco USA, a design team to assist in the development the crawler crane design. (Facts § (9), *supra*, pg. 9).

Davis admits that all of the work the design team did on the crawler cranes was after Davis became President and Managing Director of Favco USA. (Facts § (11), *supra*, pg. 11). Further, Davis admits that Favco USA was billed for and paid all of the fees associated with the design team and Davis personally paid nothing. (Exhibit A, Davis Deposition, Vol. I, pg. 58, line 16 - pg. 62, line 17).

Contracts that Davis signed on behalf of Favco USA with the design team specified that Favco USA was the owner of any work product generated. (Facts § (10), *supra*, pg. 10). Davis signed contracts as Favco USA's representative with ECCON and Mr. Orgeron. *Id.* Each of these

23

contracts specified that Favco USA, and not Davis personally, would be the owner of all work product generated. *Id.* With respect to Mr. Rusk, Davis agrees that all of the work Mr. Rusk did was for Favco USA, not Davis personally, and was paid for by Favco USA, not Davis personally, and thus all of Mr. Rusks drawings are also the property of Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 58, line 16 - pg. 59, line 14). In fact, up until May of 1999, by which time Davis' relations with the shareholders and directors of Favco USA had deteriorated, all of the design and manufacturing drawings contained a title block specifying that they were the property of Favco USA. (See Exhibit N, Declaration of Mr. Jose De La Cruz).

Davis also negotiated contracts on behalf of Favco USA to obtain components to build the crawler cranes. (Facts § (15), *supra,* pg. 13). Davis negotiated confidentiality agreements for Favco USA with Caterpillar, Robway (load moment indicators) and Braden (wench supplier). *Id.* The Caterpillar agreements were signed after the filing of the '252 patent and also provided that the resulting designs would be the property of Favco USA, not Davis personally. (*Id.*; Exhibits A-5 and A-6, ¶ 6, Caterpillar agreements).

Upon completion of the design work and securing the component suppliers, Davis, on behalf of Favco USA, hired the necessary employees to begin construction of the crawler cranes. (Facts, § (16), *supra,* pgs. 13-14). Davis admits that all the construction of the crawler cranes took place on Favco USA's plant located in Harlingen Texas using Favco USA employees and Favco USA's heavy equipment. (*Id.*)

        (ii)     **After the cranes were designed and manufactured using Favco USA's funding, resources and personnel, Davis not only acquiesced in Favco USA's selling the crawler cranes, he also participated in and promoted the sale of the crawler cranes under the Favco USA name.**

In August of 1998, Davis hired an attorney to, among other things, apply for trademarks for Favco USA. (See Exhibit I and Favco USA's *Opposed Motion to Disqualify Alton Payne and Firm as Counsel for Plaintiff* filed in this action on April 26, 2000). Specimens that Davis submitted along with the trademark application confirm that the marks applied for were to be used to promote sales of the crawler cranes under the Favco USA name. (Exhibit J) Further, the attorney, Al Payne signed papers stating he was the attorney for Favco USA, not Davis personally. (See Exhibit I.).

Davis also promoted the crawler cranes on behalf of Favco USA at trade shows. (Facts, § (18), *supra,* pg. 14). Davis recalls spending roughly 40 - 50 thousand dollars, all of which was paid by Favco USA, to take the cranes from Favco USA's plant in Harlingen Texas to display them at CON EXPO for Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 86, lines 9 - 20). The crawler cranes displayed at CON EXPO proudly displayed the Favelle Favco name and were clearly represented as Favco USA products. (See, Exhibit L).

In addition to promoting the crawler cranes at trade shows, Davis assisted in preparing and ultimately approved brochures which marketed the crawler cranes under the Favco USA name. (Facts § (18), *supra,* pg. 14). Separate brochures were prepared for the 28 ton, 38 ton and 50 ton crawler cranes. (See, Exhibits A-12, A-13 and A-14, brochures on 28t, 38t and 50t crawler cranes). Each of these were prepared while Davis was president and managing director, and was reviewed and ultimately approved for use by Davis. (Exhibit A, Davis Deposition, Vol. I, pg. 188, line 19 - pg. 190, line 19).

Davis also sold crawler cranes as president and managing director of Favco USA and negotiated distributorship agreements for future sales. (Facts § (18), *supra*, pg. 14) Davis sold 3 crawler cranes for Favco USA while he was president and managing director of Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 94, line 13 - pg. 95, line 18).

(iii)   **All costs and expenses associated with the design, manufacturing and development of the crawler cranes were incurred by Favco USA.**

All design, development and manufacturing costs for the crawler cranes were paid for by Favco USA. (Facts § (12), *supra*, pg. 11) Davis spent millions of dollars on behalf of Favco USA for research and design in bringing the crawler cranes to market. (*Id.*) All of the fees charged by all of the design engineers and their respective companies, the salaries of the manufacturing employees and the cost of all of the manufacturing components were all paid for by Favco USA. (*Id.*) Moreover, all of the advertising and marketing costs associated with bringing the crawler cranes to market were paid for by Favco USA. (*Id.*)

(iv)   **Throughout the time that Davis was spending Favco USA's funding and using Favco USA's resources in developing the crawler cranes, Davis said nothing about precluding Favco USA from manufacturing the crawler cranes without his permission.**

From the beginning of the crawler crane project and throughout its development Davis led everyone involved to believe that Favco USA would be in the crawler crane business forever. (Exhibit D, Mac Deposition, pg. 164, line 6 - pg. 165, line 8). At the outset, Mr.Mac agreed to fund the design and development of the crawler crane project with the expectation of obtaining a reasonable return on his investment. As an incentive to get the crawler cranes designed, developed and manufactured faster, and thus get a faster return on investment, Mr.Mac agreed that Davis would be paid a commission of 1% for each crane sold for the first 3 years of operation. (Facts § (6), *supra*, pg. 6).

It was not until March of 1999, when relations between Davis and the shareholders and directors of Favco USA were strained, that Davis threatened to prevent Favco USA from making the crawler cranes. (Facts § (19), *supra*, pg. 15). Up until then, Davis had acquiesced, and in fact

26

promoted, all of the activities of the design, development and marketing of the crawler cranes--all under the Favco USA name. (Facts (17), (18), *supra*, pg. 14). He continued to do so thereafter.

Although the evidence of Davis promotion of and acquiescence in Favco USA selling the crawler cranes is overwhelming, one fact is particularly revealing of Davis acquiescence. Up until May of 1999 each and every drawing that was made or used in manufacturing the crawler cranes had a title block. (Exhibit N, Affidavit of Jose De La Cruz.) Each of these title blocks recited that the drawing was the property of Favco USA. *Id.* However in May of 1999, almost a year and a half after the design of the crawler cranes had begun and after hundreds and possibly thousands of drawings had been produced, and three crawler cranes had been built and sold pursuant to the drawings, Davis either individually or through Bill Jones instructed the draftsman to change the block to say that Davis owned the drawings. *Id.* This block was changed back after it was discovered after Davis' relationship with the company was terminated. *Id.*

This uncontested evidence shows as a matter of law that Favco USA is at a minimum entitled to "shop rights" in the '252 patent and all other patent applications relating to the crawler cranes. Clearly, all of the design and development of the crawler cranes was done for Favco USA, at Favco USA's expense and using Favco USA's employees and facilitites. Moreover, the evidence of Davis' consent to and acquiescence in Favco USA's manufacture and use of the crawler cranes claimed in the '252 patent is conclusive. Not only did Davis acquiesce in Favco USA's manufacture and sale of the crawler cranes, Davis himself was promoting the crawler cranes at issue under the soon to be trade-marked "FAVELLE FAVCO" name. Based on this indisputable evidence, there is no material issue of fact and Favco USA is entitled to a declaration that it has at least a shop right in the '252 patent and all other patent applications relating to crawler cranes.

27

**(b)** **Favco USA is Also Entitled to Summary Judgment Declaring that it Owns the Design Drawings, Trade Secrets, Specifications and All Technology Related to the Crawler Cranes and to Summary Judgment That Davis Cannot Use Such Information.**

Contracts between Favco USA and members of the design team for the crawler cranes clearly state that the all of the confidential and proprietary information and the design drawings related to the crawler cranes are the property of Favco USA, not Davis personally. (Facts, §§ (10), (15), *supra,* pgs. 10, 13) Moreover, Davis admits that all of the work that was done pursuant to these contracts was done for Favco USA while Davis was President and Managing Director and owed fiduciary duties to Favco USA. (Exhibit A, Davis Deposition, Vol. I, pg. 68, line 19 - pg. 69, line 2.) In addition, Davis admits that all of this work was paid for by Favco USA and that he had no personal deals with any of these designers and has never paid them anything personally. (Exhibit A, Davis Deposition, Vol. I, pg. 58, line 16 - pg. 60, line 12; pg. 61, lines 19-22, pg. 62, lines 11-16). Thus, unquestionably all of the design drawings, trade secrets, specifications and technology related to the crawler cranes belongs to Favco USA, and Davis personally owns nothing.

Furthermore, Davis was in a unique position as President and Managing Director Favco USA and had access to confidential information regarding every aspect of the design of the crawler cranes. In fact, Davis admits taking Favco USA's drawing upon leaving the company. (Exhibit A, Davis Deposition, Vol I, pg. 109, line 19 - pg. 111, line 6). Any use of this proprietary information of Favco USA would be a breach of Davis' fiduciary obligations to the company and would result in substantial and irreparable harm to Favco USA *Hyde Corporation v. Huffines*, 314 S.W.2d 763, 770 (Tex.), *cert. denied*, 358 U.S. 898, 79 S. Ct. 223 (1958); *Johnston v. American Speedreading Academy, Inc.*, 526 S.W.2d 163, 166 ( Tex. Civ. App. -- Dallas 1975, no writ). As such, Favco USA is entitled to summary judgment that it owns all of the design drawings, trade secrets, specification

28

and technology relate to crawler cranes. Moreover, since Favco USA, not Davis, owns all of this information, Favco USA is entitled to an order preventing Davis from using or disclosing any of such information. *Id.*

### D. FEW ISSUES REMAIN

Although this is a motion for partial summary judgment, the relief requested by Movant will conclude the primary substantive issues adversely to the Plaintiff. Very little will remain to be decided thereafter. The remaining issues will be those such as attorneys' fees and damages. The ultimate determination of these issues can be done in a short period of time.

### E. CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Favco USA requests that the Court:

(1)     declare that it is entitled to ownership of the '252 patent and any other patents or patent applications filed by or for Davis after June 23, 1997 and all inventions forming the subject thereof related to crawler cranes and order Davis to execute a proper assignment conveying such ownership to Favco USA or, in the alternative, declare that Favco USA is entitled to shop rights in the '252 patent and in any such other patents or patent applications;

(2)     declare that Favco USA is the owner of all of the drawings, trade secrets, specifications and any other technology related to the crawler cranes (including the 9 ton mobile cranes);

(3)     order Davis to return all drawings, specifications and any other technology related to the crawler cranes (including the 9 ton mobile crane) to Favco USA; and

29

(4)     enjoin Davis from disclosing or making any use, whether directly or indirectly, for

any purpose, of the drawings, designs, trade secrets, specifications and technology

related to the crawler cranes (including the 9 ton mobile crane).

Respectfully submitted,

_____
Gary Gurwitz
State Bar No. 08631000/Southern Dist. I.D. # 1194
Charles C. Murray
State Bar No. 14719700/Southern Dist. I.D. #1214
ATLAS & HALL, L.L.P.
818 Pecan (Zip Code: 78501)
P.O. Box 3725
McAllen, Texas 78502
Telephone: 956/682-5501
Fax: 956/686-6109

**ATTORNEYS IN CHARGE FOR DEFENDANTS**

**OF COUNSEL:**

Willem G. Schuuman
State Bar No. 17855200
Brian K. Buss
State Bar No. 00798089
VINSON & ELKINS, L.L.P.
600 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone: 512/495-8400
Fax: 512/495-8612

30

# CERTIFICATE OF SERVICE

This will certify that a true and correct copy of this document was served on all counsel of record, by certified mail, return receipt requested, on the __*3 1*__ day of July, 2000, as follows:

Ernesto Gamez, Jr.
Victor Quintanilla
LAW OFFICES OF ERNESTO GAMEZ, JR., P.C.
777 E. Harrison Street
Brownsville, Texas 78520

31