5/

United States District Court
Southern District of Texas
FILED

JAN 1 8 2001

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | |
|---|---|
| **DANIEL E. DAVIS** § | |
| § | |
| **VS.** § | |
| § | **CIVIL ACTION NO.  B-00-003** |
| **FAVELLE FAVCO CRANES USA, INC.** § | |
| **AND FAVELLE FAVCO CRANES (M)** § | |
| **SDN BHD** § | |

---

## JOINT PRETRIAL ORDER

---

### 1. APPEARANCE OF COUNSEL

List each party, its counsel, and counsel's address and telephone number in separate paragraphs.

1.    Plaintiff:               **DANIEL E. DAVIS**

        Of Counsel:           **Ernesto Gamez, Jr.**
                              State Bar No. 07606600
                              Southern District of Texas No. 8645
                              **Victor Quintanilla**
                              State Bar No. 00786181
                              Southern District of Texas No. 16073
                              **LAW OFFICES OF ERNESTO GAMEZ, JR., P.C.**
                              777 E. Harrison Street
                              Brownsville, Texas 78520
                              Telephone No. 956/541-3820
                              Fax No. 956/541-7694

2.    Defendants:           **FAVELLE FAVCO CRANES USA, INC.**
                              **FAVELLE FAVCO CRANES (M) SDN. BHD**.

        Defendants' Counsel:    **Gary Gurwitz**
                                State Bar No. 08631000
                                Southern District of Texas No. 1194

Charles C. Murray
State Bar No. 14719700
Southern District of Texas No. 1214
ATLAS & HALL, L.L.P.
818 Pecan - P.O. Drawer 3725
McAllen, Texas  78502
Telephone No. 956/682-5501

OF COUNSEL:

Willem G. Schuurman
State Bar No.  17855200
Southern District of Texas No.
Brian K. Buss
State Bar No. 00798089
Southern District of Texas No.
VINSON & ELKINS, L.L.P.
600 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone No. 512/495-8400
Fax No. 512/495-8612

## 2. STATEMENT OF THE CASE

FAVELLE FAVCO CRANES, USA, INC., ("Favco USA") is a Texas

Corporation that was organized on September 3, 1997, to manufacture, assemble and

sell, primarily in the United States market, an existing line of products of subsidiaries

of Favco Holdings in other countries, and to design, develop, manufacture, assemble

and sell a type of crane referred to as a crawler crane, which is a mobile crane that

moves on tracks like a tank.  The 9 ton model is on rubber tires instead of tracks but

to keep things simple it may be included in the generic reference to "crawler cranes" in this case.

DANIEL E. DAVIS, ("Davis"), was President and Managing Director and a Director of Favco USA from the date of its beginning until he was discharged on September 8, 1999.

The stock of Favco USA is owned ninety percent (90%) by FAVELLE FAVCO HOLDINGS, SDN BHD, ("Favco Holdings"), a Malaysian company, and ten percent (10%) by COBURN INTERNATIONAL, LTD., a British Virgin Islands Company owned by Davis.

Crawler cranes were designed and developed for Favco USA, and were then manufactured, assembled and sold by Favco USA during the time that Davis was President, Managing Director and a Director of Favco USA. Also during the time Davis was President, Managing Director and a Director of Favco USA, he applied for a patent on certain crawler cranes, naming himself as inventor and owner. A patent was issued on December 21, 1999 as #6,003,252. Davis contends these are the crawler cranes he conceived the idea for prior to becoming President, Managing Director and a Director of FFC USA.

Davis is alleging that the Defendants have infringed his patent and that he is entitled to damages.

The Defendants deny that Davis owns the 252 patent and that it has been infringed.  The Defendants contend that as President, Managing Director and a Director of Favco USA,  Davis owes the corporation the duty of an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation, including the dedication of his uncorrupted business judgement for the sole benefit of the corporation.  The Defendants further contend that Davis violated this obligation to Favco USA by, among other things, applying for and obtaining the patent showing himself as the owner.  Under the facts and circumstances, Favco USA contends that it is the real owner of the patent and is the owner of all technical materials and trade secrets relating to crawler cranes designed and developed for Favco USA.  Favco USA also contends it has shop rights which give it the right to manufacture and sell, royalty free, crawler cranes that were designed and developed at its expense while  Davis was President, Managing Director and a Director of Favco USA.  Favco USA also contends that Davis should be enjoined from using or threatening to use trade secrets that are the property of Favco USA and that he should be required to return money he has taken that does not belong to him.

### 3. JURISDICTION

Briefly specify the jurisdiction of the subject matter and the parties; If there is an unresolved jurisdictional question, state it.

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1441(b) (federal question jurisdiction).

## 4. MOTIONS

List pending motions.

    (1)    Favco USA.'s Motion for Partial Summary Judgment filed July 31, 2000.

    (2)    Davis' Motion for Leave to File Response to Favco USA's Motion for Partial Summary Judgment filed January 12, 2001.

    (3)    Davis' Opposed Plea in Abatement and Motion for Stay Pending Resolution of First Filed Claims filed December 22, 2000.

    (4)    Davis' Opposed Second Motion for Withdrawal of Counsel and proposed orders filed December 21, 2000.

## 5. CONTENTIONS OF THE PARTIES

State concisely in separate paragraphs each party's claims.

**(1)    PLAINTIFF'S CLAIMS:**

    (1)    On March 24, 2000, Plaintiff DANIEL E. DAVIS filed his *Plaintiff's Original Complaint* in the above-styled and numbered civil action.

    (2)    This is an action for patent infringement. The patent infringement claims stem from Defendants' illegal manufacturing, use and sale of crawler cranes covered by the patent owned by Plaintiff, who is the inventor.

    (3)    Plaintiff contends that he is the inventor and owner of U.S. Patent No. 6,003,252 ("the 252 patent") issued on December 21, 1999 and entitled

"Conversion Apparatus and Method for Use with Excavator and Crane Devices.

(4)     Plaintiff further contends that on or about June of 1997, he and Defendants entered into an agreement by which he was hired as the President and Managing Director of Favco USA in Harlingen, Texas.  Plaintiff agreed to bring to Favco USA a line of new and unique crawler cranes (i.e., the "Davis Crawler Cranes").  The Davis Crawler Cranes were, and are unique because, among other things, they can be manufactured quicker and less expensively resulting in a more stable crane for its overall size.  Plaintiff contends that he brought the crane know-how, designs, concept and/or idea with him when he became employed by Favco Holdings and Favco USA.

(5)     Plaintiff further contends that Favco USA is ninety percent (90%) owned by Favco Holdings, which also serves as a holding company for Favco Malaysia, which in turn, is also one hundred percent (100%) owned by MUHIBBAH ENGINEERING ("Muhibbah").

(6)     Plaintiff further contends that the Defendants have infringed and continue to infringe on the 252 patent by manufacturing, using, and selling crawler cranes covered by the 252 patent.  As a direct and proximate result of Defendants' patent infringement Plaintiff has suffered and continues to suffer irreparable injury.

(7)     Plaintiff contends that he is the owner of the 252 patent entitled "Conversion Apparatus and Method for Use with Excavator and Crane Devices."

(8)     Plaintiff contends that he is the inventor of the "Conversion Apparatus and Method for Use with Excavator and Crane Devices" as described in the 252 patent.

(9)     Plaintiff contends that prior to being hired by Favco Holdings he conceived the idea and concept of the crawler cranes subject of the 252 patent.

(10)    Plaintiff contends that in the summer of 1995 he discussed his idea and concept of the crawler cranes with Richard Robey.

**B.     DEFENDANTS' CLAIMS:**

---

(1)     Favco Holdings wanted to start an operation in the United States to, among other things, design, develop, assemble and manufacture and sell a line of products referred to as crawler cranes.

(2)     Favco USA was incorporated as a Texas corporation on September 3, 1997 and Davis was formally named as President and Managing Director on September 4, 1997.

(3)     As President and Managing Director of Favco USA, Davis' duties for the corporation included overseeing the designing, developing, manufacturing, assembling and selling crawler cranes.

(4)     At the time Davis became President and Managing Director of Favco USA there were no designs, engineering drawings, models, working plans, prototypes, patents or anything that could be patented, facilities, equipment, materials, employees, engineers, suppliers or money to be able to design, develop, manufacture, assemble or sell crawler cranes.

(5)     While Davis was President and Managing Director of Favco USA, engineers and other contractors were hired and paid by Favco USA to design and develop crawler cranes, and to manufacture or fabricate some components of the crawler cranes.

(6)     The engineers and other contractors did everything for and on behalf of Favco USA.

(7)     Davis had no personal contracts or agreements with any engineers or other contractors to do any services for him personally regarding the crawler cranes.

(8)     The crawler cranes were manufactured using plans and specifications drawn up by engineers hired while Davis was President and Managing Director of Favco USA, their services were performed on behalf of Favco USA only, and they were paid only by Favco USA.

(9)     Contracts between Favco USA and engineers and contractors state that the work of the engineers and contractors is to belong to and be the property of Favco USA.

CAMPDF – www.favko.com

(10) All facilities, equipment, employees, parts, materials, supplies and money necessary to design, develop, manufacture, assemble and sell crawler cranes were furnished or paid for by Favco USA while Davis was President and Managing Director.

(11) Without the knowledge or consent of Favco USA, Davis secretly applied for a patent for crawler cranes, naming himself as owner, that was based on drawings created and engineering work done by engineers working for, under contract to, and being paid by Favco USA.

(12) The 252 patent was applied for without Favco USA's knowledge or consent, on August 5, 1998, while Davis was President, Managing Director and a Director of Favco USA.

(13) It was not in the best interests of Favco USA for Davis to apply for the patent as the owner.

(14) The 252 patent was issued in the name of Davis on December 21, 1999.

(15) Under the circumstances, the 252 patent and any other patents or patent applications, ("patent rights"), relating to the 252 patent or the crawler cranes belong to Favco USA, and Davis should be required to assign all of his right, title and interest in and to such patent rights to Favco USA.

(16) It is not in the best interests of Favco USA for Davis to own the 252 patent.

(17) All plans, drawings, specifications, manufacturing details, parts lists, manufacturing and assembly procedures, sales techniques, customer lists, price lists, parts lists, list of materials and all other information regarding the design, development, assembly, manufacture or sale of crawler cranes are trade secrets and proprietary information belonging to Favco USA. Davis should be enjoined from using or disclosing any of such trade secrets and proprietary information in any manner to anyone and should be required to return all copies of such trade secrets or proprietary information to Favco USA.

(18)  Because everything was done for and paid for by Favco USA, Favco USA is entitled to shop rights under the patent rights and has the absolute right to continue to design, develop, manufacture, assemble and sell crawler cranes without the payment of royalties or fees of any kind to anyone.

(19)  The crawler cranes manufactured or sold by Favco USA do not infringe any claim of the 252 patent; either literally or under the doctrine of equivalents.

(20)  Davis withdrew, or caused to be withdrawn, and paid to himself or a company that he controls, money to which Davis or his company was not entitled to and Davis should be required to repay money in excess of money, if any, that he was entitled to receive.  Davis is guilty of common law conversion and violations of the Texas Theft Liability act, Tex. Civ. Prac. & Rem. Code, § 134.01 *et seq.*

(21)  This is an exceptional case and Favco USA is entitled to recover attorney's fees, interests and costs.

(22)  Favco USA is entitled to recover damages.

(23)  The document entitled "Shareholder's Agreement," which Davis claims he signed on August 16, 1997, was only a draft of a series of drafts, was not an offer, the terms were never agreed upon, the draft was never returned to Favco USA by Davis, the contract was never finalized, and neither that draft of the Shareholder's Agreement nor any other was ever signed by anyone representing Favco Holdings, Favco Malaysia or Favco USA.

(24)  Favco USA, Favco Holdings and Favco Malaysia never intended any draft to be a binding agreement until all terms were agreed upon by all parties and the document was signed by all parties.

(25)  There is no agreement of any kind between Davis and Favco USA, Favco Holdings or Favco Malaysia that Davis owns the 252 patent or any other patent involving crawler cranes.  Favco USA is not a party to the document entitled "Shareholders' Agreement," which Davis claims he signed on August 16, 1997.

---

DAVIS
vs.
FFC

JOINT PRETRIAL ORDER
PAGE 9

(26)   The document entitled "Shareholders' Agreement," which Davis claims to have signed on August 16, 1997 is not a valid or binding contract.

(27)   In the alternative, if the draft Shareholder's Agreement which Davis claims he signed on August 16, 1997, is a binding contract, which Defendants deny, then the non-competition clause in the document will also be binding.

(28)   Favco USA has invested approximately 14 million dollars in the design, development, manufacture, assembly and sale of crawler cranes and presently has millions of dollars in inventory, parts, and unsold crawler cranes.

(29)   In the alternative, if Favco USA is not the owner of the 252 patent or any other patent rights relating to the crawler cranes and is not entitled to shop rights, then Favco USA is entitled to recover its investment in the crawler crane project.

(30)   Davis has no present capability of designing, developing, manufacturing or assembling crawler cranes.

(31)   Davis owed Favco USA a fiduciary duty as President, Managing Director and a Director of Favco USA to act in its best interest and Davis breached that duty. An officer and/or director of a corporation owes a fiduciary duty to that corporation. Fiduciary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. The responsibility of a corporate fiduciary includes the dedication of his uncorrupted business judgment for the sole benefit of the corporation.

(32)   Davis breached his fiduciary duty to Favco USA.

(33)   By his conduct, Davis is estopped from asserting that Favco USA does not have any right to continue to make, use and sell crawler cranes.

(34)   Davis' claims are barred by the Statute of Frauds.

(35)   When Davis became President, Managing Director and a Director of Favco USA he had no patentable crawler crane design.

---

CVisPDF - www.favisa.com

(36)    Trademarks were applied for by Davis for Favco USA.

(37)    After prototype of crawler cranes were built, they were advertised and sold as Favco USA cranes.

(38)    At all times the crawler cranes were identified, marketed, advertised, and sold as Favlle Favco cranes by Davis.

(39)    The crawler cranes were never marketed, advertised or sold as "Davis Crawler Cranes."

(40)    Davis' crawler crane designs were not new and unique at the time Davis became President and Managing Director of Favco USA.

(41)    Davis' employment contract says that Davis, as Managing Director, will carry out his duties for the benefit of Favco Holdings.

(42)    Davis never returned the document entitled "Shareholders' Agreement," which he claims to have signed on August 16, 1997, to anyone at Favco Malaysia or Favco Holdings or Favco USA.

(43)    Davis' duties as Managing Director and President of Favco USA included assisting in or overseeing the conceptualization, design and development of crawler cranes.

(44)    Davis was in charge of every aspect of the crawler crane project for Favco USA including arranging and contracting for the design, conception, development, construction, marketing, promotion and sales.

(45)    The ten percent (10%) of the Favco USA stock owned by Coburn has not been paid for in full.

(46)    The ninety percent (90%) of the Favco USA stock owned by Favco Holdings has been paid for in full.

(47)    Davis became President, Managing Director and a Director of Favco USA on September 4, 1997 and served in those capacities until he was discharged on September 8, 1999.

(48)   Favco USA had the right to discharge Davis at any time, with or without cause.

(49)   Davis had no engineering drawings, manufacturing drawings, working plans, patents or anything that could be patented, engineering specifications, prototypes or models of the crawler cranes in question at the time he became President, Managing Director and a Director of Favco USA.

(50)   One of Davis' express responsibilities as President and Managing Director of Favco USA was to oversee that the crawler cranes were designed, developed, manufactured, assembled and marketed by Favco USA.

(51)   Davis contends that two documents contain his complete agreement with Favco USA.  These two documents say nothing about ownership of the crawler cranes or any inventions or designs. Neither of thses documents is an agreement with Favco USA.

(52)   Davis was in charge of and oversaw every aspect of the crawler crane project for Favco USA.

(53)   Contracts between Favco USA and engineers and contractors state that Favco USA would own all designs, drawings, patents and other rights.

(54)   All design work related to the crawler cranes was done while Davis was President and Managing Director of Favco USA.

(55)   Even after filing the patent application, Davis negotiated Confidentiality Agreements on behalf of and for the benefit of Favco USA.  These agreements provide that all designs and work belong to Favco USA, not Davis personally.

(56)   After the engineering work was substantially complete, Favco USA began making the crawler cranes at its plant.

(57)   Trademarks were applied for by Davis for Favco USA for use with crawler cranes.

(58)   Before leaving Favco USA in 1999, Davis ordered for Favco USA over $7 million dollars in equipment from Caterpillar.

(59)    Favco USA owns the work done by Eccon under the Eccon contract dated November 22, 1997.

(60)    All labor used in the manufacture of crawler cranes at the Favco USA facility, or elsewhere, was contracted to and paid for by Favco USA.

(61)    All materials purchased in connection with the crawler crane project were purchased and paid for by Favco USA.

(62)    Favco USA had no knowledge that Davis had applied in his own name for the the patent at the time that it was filed.

(63)    Favco USA owns all of the engineering, design or any and all other work done or produced relating to the crawler cranes in question.

(64)    At all times the crawler cranes were identified, marketed, advertised and sold as Favelle Favco cranes by Davis.

(65)    Davis never marketed, advertised or sold any of the crawler cranes as "Davis" crawler cranes.

(66)    Favco USA owns the work done by Mr. Orgeron.

(67)    Favco USA owns the work done by Mr. Rusk.

(68)    Favco USA owns the work done by CIPI.

(69)    The shareholder's agreement was not to be performed in one year from the date of its making.

(70)    Favco Malaysia did not infringe the 252 patent or induce anyone else to infringe it.

(71)    Favco Malaysia is not liable to the plaintiff for any damages.

## 6. ADMISSIONS OF FACT

(1)     An employment contract was entered into between Davis and Favco Holdings on June 23, 1997, which, among other things, provided that Davis was employed as a Managing Director to perform on behalf of Favco Holdings work at its facility in the United States.

(2)     Before becoming President and Managing Director of Favco USA, Davis was employed by Manitowoc.  The United States Patent and Trademark Office issued patent number 252 patent on or about December 21, 1999.

(3)     Davis served as the President and Managing Director of Favco USA until September 8, 1999.

(4)     Favco USA is a Texas Corporation incorporated on September 3, 1997.

(5)     Favco Holdings wanted to develop, manufacture and sell a crawler crane in the United States.

(6)     Ninety percent (90%) of the Favco USA stock is owned by Favco Holdings and 10% of the stock is owned by Coburn International, Ltd., a company controlled by Davis.

(7)     Davis hired several contract engineers for Favco USA to design and develop crawler cranes.

(8)     Favco USA made every payment for every aspect of the entire crawler crane project.

(9)     Prototypes of crawler cranes were essentially completed in time to be exhibited at Con Expo in March of 1999 and were exhibited and sold as Favelle Favco USA Products.

(10)    A contract was entered into between Favco USA (signed by Davis as President of Favco USA), Favco Malaysia and Eccon Engineering Computer Consulting Gesellschaft M.B.H., ("Eccon"), dated November 22, 1997, titled *Confidentiality Agreement*, whereby Eccon was to do engineering, design and plan work on crawler cranes.

(11)    The work done under the aforementioned Eccon contract was performed during the time that Davis was President and Managing Director of Favco USA.  Eccon was paid for all work done under this contract by Favco USA.

---

**DAVIS**                                                      **JOINT PRETRIAL ORDER**
**vs.**                                                                        **PAGE 14**
**FFC**

(12)   A contract was entered into between Keith J. Orgeron, P.E., ("Orgeron"), and Favco USA, (signed by Davis as Managing Director and President of Favco USA), dated January 18, 1998, titled *Engineering Consulting Services Agreement*, whereby Orgeron was to do engineering consulting work on behalf of Favco USA. The contract stated that any ideas, patents, copyrights, drawings, etc., produced by Orgeron under this Agreement were to be the sole property of Favco USA. The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA. Orgeron was paid for all work done under this contract by Favco USA.

(13)   An agreement was entered into between J. A. Rusk Engineering, ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 ton and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998. The services provided by Rusk under this contract were to belong to Favco USA. The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA. Rusk was paid for all work done under this contract by Favco USA.

(14)   A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director), and Favco Malaysia, dated August 21, 1998, titled *Design Ownership/Responsibility Agreement 1, Cranes Utilizing Standard Hydraulic Excavator Main Frames*. The work done by CIPI under the contract was performed during the time that Davis was President, Managing Director and a Director of Favco USA.

(15)   A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director), and Favco Malaysia, dated August 21, 1998, titled *Design Ownership /Responsibility Agreement 2, Cranes Utilizing Custom Main Frames.*

(16)   A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director) dated March 29, 1999, titled *Design Ownership /Responsibility Agreement 3, Cranes Utilizing Telehandler Powermodules*. The work done under this contract was performed during the time the Davis was President and Managing Director of Favco USA.

(18)     All work done on crawler cranes manufactured and sold by Favco USA was done after Davis became President and Managing Director of Favco USA.

(19)     The facilities in Harlingen where work was done on crawler cranes was owned and controlled by Favco USA.

(20)     All power units purchased from CIPI in connection with the crawler crane project were purchased by Favco USA.

(21)     Davis had no contracts personally with Eccon, Orgeron, Rusk or CIPI to provide engineering or design services involving the crawler cranes in question in the lawsuit.

(22)     Davis had no contracts personally with anyone to provide any services, materials, equipment, or labor involving the crawler cranes in question in the lawsuit.

(23)     Davis applied for a patent on crawler cranes on August 5, 1998.

(24)     A patent was issued in the name of Daniel Davis on December 21, 1999, for crawler cranes.

(25)     Davis was discharged as President and Managing Director of Favco USA on September 8, 1999.

(26)     According to Davis, Favco USA could manufacture, use and sell crawler cranes in question in this lawsuit through August 16, 2000.

## 7. CONTESTED ISSUES OF FACT

List all material facts in bona fide controversy.

(1)     Plaintiff disputes Defendants' contention that its information relating to the design and manufacture of the subject crawler cranes constitutes trade secrets and confidential information of Favco USA.

(2)     Plaintiff disputes Favco USA's contention that he has pursued patent protection for inventions that belong to it.

---

(3)     Plaintiff disputes Favco USA's contention that he has misappropriated trade secrets that belong to it.

(4)     Plaintiff disputes Favco USA's contention that he made false, misleading, or deceptive statements or representations regarding the nature, characteristics, qualities and/or origin of its cranes in violation of 15 U.S.C. § 1125(a).

(5)     Plaintiff disputes Favco USA's contention that he made false, misleading, or deceptive statements or representations regarding the nature, characteristics, qualities and/or origin of what the plaintiff refers to as "Davis Crawler Cranes" in violation of 15 U.S.C. § 1125 (a).

(6)     Plaintiff disputes Favco USA's contention that was not entitled to pay himself or be paid royalties.

(7)     Plaintiff disputes Favco USA's contention that he wrongfully appropriated royalties.

(8)     Plaintiff disputes Favco USA's contention that it will suffer loss of its substantial investment and the loss of potential profits.

(9)     Plaintiff disputes Favco USA's contention that its business reputation will be ruined, resulting in damages to it that are unpredictable and unending.

(10)    Plaintiff disputes Favco USA's contention that he misused its proprietary information and trade secrets.

(11)    Plaintiff disputes Favco USA's contention that his conduct makes this an exceptional case under 15 U.S.C. § 1117(a).

(12)    Plaintiff disputes Favco USA's contention that he acted in his own interests and contrary to those interests of Favco USA, violating his fiduciary duties.

(13)    Plaintiff disputes Favco USA's contention that it has suffered damages and will continue to suffer damages caused by his alleged breach of fiduciary duties.

(14)    Plaintiff disputes Favco USA's contention that he has committed theft as defined in the Texas Theft Liability Act, Texas Civil Practice & Remedies Code Ann., § 134.01 *et seq.*

(15) Plaintiff disputes Favco USA's contention that he wrongfully and tortiously converted its property to his own use and dominion.

(16) Plaintiff disputes Favco USA's contention that it has suffered injury and will continue to suffer injury as a result of his alleged conversion.

(17) Plaintiff disputes Favco USA's contention that he was engaged in intentional, knowing, willful and deliberate conversion.

(18) Plaintiff disputes Favco USA's contention that it is entitled to recover attorney's fees.

(19) Plaintiff disputes Favco USA's contention that it is the rightful owner of the 252 patent.

(20) Plaintiff disputes Favco Malaysia's contention that it is entitled to recover attorney's fees.

(21) Plaintiff disputes Favco USA's contention and/or assertion that he breached his duty of loyalty to it.

(22) Plaintiff disputes Favco USA's contention and/or assertion that it is the true owner of the 252 patent, as well as any other patent applications applied for by him related to crawler cranes.

(23) Plaintiff disputes Favco USA's contention and/or assertion that, in the alternative, it has an irrevocable shop right and an express or implied royalty free license to use the technology that is the subject of the 252 patent, as well as any other patent or patent application applied for by him that relates to crawler cranes.

(24) Plaintiff disputes Favco USA's contention and/or assertion that it owns the technology, trade secrets and information made the basis of this civil action.

(25) Plaintiff admits that he signed the Shareholder's Agreement between him and Favco Malaysia on August 16, 1997.

(26) Whether the 9-ton "crawler crane" infringes any claim of the 252 patent.

(27) Whether the 28-ton "crawler crane" infringes any claim of the 252 patent.

(28)   Whether the 38-ton "crawler crane" infringes any claim of the 252 patent.

(29)   Whether the 50-ton "crawler crane" infringes any claim of the 252 patent.

(30)   Whether the "crawler cranes" with tonnage greater than 50 ton infringe any claim of the 252 patent.

(31)   Whether Daniel Davis has suffered any injury or damage.

(32)   The amount of such damages, if any.

(33)   Whether Davis' claims that after August 16, 2000, Favco USA could not manufacture, use or sell crawler cranes are false, misleading or deceptive.

(34)   The amount of money Favco USA has invested in the design, development, manufacture and sale of crawler cranes.

(35)   Whether Davis' claim that he owns the 252 patent is in the best interest of Favco USA.

(36)   Has Davis misappropriated Favco USA's proprietary designs, drawings, trade secrets, proprietary information and confidential information.

(37)   Has Davis kept documents or copies of documents belonging to Favco USA.

(38)   Has Favco USA suffered damages.

(39)   The extent of such damages.

(40)   Did Davis breach his fiduciary duty to Favco USA.

(41)   Did Davis take money from Favco USA to which he or a company controlled by him were not entitled.

(42)   How much money did Davis take to which he was not entitled.


## 8.  AGREED PROPOSITIONS OF LAW

(1)     A patent issued by the United States Patent Office is presumed to be valid. 35 U.S.C. § 272.

(2)     In order to rebut the presumption that a patent issued by the United States Patent Office is valid, the defendant must establish by clear and convincing evidence that Plaintiff's patent or any claim in the patent is not valid. *N.V. Akzo vs. E.I. DuPont de Nemours*, 810 F.2d. 1148, 1150 (Fed. Cir. 1987).

(3)     Determining patent infringement requires determining whether someone (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent. 35 U.S.C.A. § 271 (h); *Genetech, Inc. vs. Eli Lilly 9 Co.*, 998 F.2d 931, 939-44 (Fed. Cir. 1993) cert. denied, 114 S.Ct. 1126 (1994); 35 U.S.C.A. § 271(a) (1994).

(4)     If there is a finding of infringement, the owner of the patent is entitled to an award of damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use the defendant made of the invention. 35 U.S.C. § 284.

(5)     In order to satisfy the burden to establish by a reasonable probability that the infringement cost him lost profits, the plaintiff must show that there was a reasonable probability that he would have made the sales that the infringement made, but for the infringement. *Herbert v. Lisle Corp.*, 99 F.3d 1009, 1119 (Fed. Cir. 1996); *Standard Havens Prods., Inc. v. Gencor Indus. Inc.*, 953 F.2d 1360, 1372 (Fed. Cir. 1991); *King Instrument Corp. v. Otari Corp.*; 767 F.2d 853, 863 (Fed. Cir. 1985).

(6)     In determining lost profits, the trier of fact may consider whether plaintiff has established the following facts: (1) the demand for the patented product; (2) the absence of acceptable non-infringing substitutes; (3) the patent holder's capacity to meet the demand; (4) and the amount of profit the patent holder would have made but for the defendant's sales. *Panduit Corp. vs. Stablin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Standard Havens Prods., Inc. vs. Gencar Indus., Inc.*, 953 F.2d 1360, 1372-73 (Fed. Cir. 1991).

(7)     Claims construction is a question of law for the court. *Markman vs. Westview Instruments*, 517 U.S. 370 (1996).

---

(8)    To determine infringement the properly construed claims have to be compared against the accused devices. *Markman vs. Westview Instruments,* 517 U.S. 370 (1996).

(9)    If an element of a claim is totally missing then there can be no infringement either literally or under the doctrine of equivalents as a matter of law. *Becton Dickinson and Company vs. C.R. Bard, Inc.,* 922 F. 2d 792 (Fed. Cir 1990).

(10)   An officer and/or director of a corporation owes a fiduciary duty to that corporation. *International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567 (Tex. 1963). Fiducary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. *Id.* The responsibility of a corporate fiduciary includes the dedication of his uncorrupted business judgment for the sole benefit of the corporation. *Id.*

(11)   An individual owing a corporation a fiduciary duty is obligated to assign to the corporation all rights to any invention which was developed while the fiduciary duty was owed and which relates to the business of the corporation. *Davis v. Alwac Int'l, Inc.,* 369 S.W.2d 797, 802 (Tex. Civ. App. – Beaumont 1963, writ ref'd n.r.e.). *Miller v. GTE Corp.,* 1989 WL 258184 (S.D. Tex. April 7, 1989).

(12)   A shop right is the right of an employer to use without charge an invention patented by its current or former employee without liability for infringement. *McElmurry v. Arkansas Power and Light Co.,* 95 F. 2d 1576 (Fed. Cir. 1993).

(13)   An employer is entitled to a shop right when the employer has financed the invention. *McElmurry v. Arkansas Power and Light Co.,* 95 F. 2d 1576 (Fed. Cir. 1993).

(14)   A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Hyde Corp. v. Huffines,* 158 Tex. 566, 314 S.W.2d 763, 776 (Tex. 1958), cert denieed,

Absolute secrecy is not required to establish that information is a trade secret so long as the formula, pattern, device or compilation of information in

question is not generally known or readily ascertainable or easily discoverable by others except through the use of improper means. *United States Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W. 2d 214, 220 (Tex. App.–Waco 1993, writ denied); *Universal City Studios v. Kamer Indus.,* 217 U.S.P.Q. 1162 (S.D. Tex. 1982) (recognizing misappropriation as a type of unfair competition under Texas law); *International News Serv. v. Associated Press,* 248 U.S. 215 (1918) (recognizing tort of misappropriation under federal law); *Hyde Corp. v. Huffines,* 314 S.W. 2d 763, 769 (Tex.), *cert. denied,* 358 U.S. 898 (1958); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 16.06 (1994) (discussing legal protection for confidential ideas); Restatement of Torts § 757 (1939); Restatement of Torts § 757 cmt.b (1939); Restatement of Torts § 759 (1939); Restatement of Torts § 759 comment c (1939).

(15)   Even in a case like this in which a jury has been demanded, equitable issues such as shop rights, estoppel, and trade secrets are to be decided by the Court. *Nimrod Marketing (Overseas) Ltd. v. Texas Energy Investment Corp.,* 769 F.2d 1076, 1079-80 (5th Cir. 1985); 9 C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 2302.1 (West 1995 & Supp. 2000). *See generally Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 509, 79 S.Ct. 948, 955-56 (1959) (relating to order of trial); U.S. CONST. amend. 7; FED. R. CIV. P. 38, 39; MOORE'S FEDERAL PRACTICE § 38.16[2][a] (2000).

(16)   Any inventions developed by an employee or reduced to practice while on the employer's salary and using its facilities belongs to the employer absent an agreement to the contrary. *Miller vs. GTE Corp.* 1989 Westlaw 258184 (S.D. Tex., April 7, 1989); *Davis vs. Alwac International, Inc.* 369 S.W. 2d 797 (Tex. Civ. App.-Beaumont 1963, writ ref'd n.r.e.).

(17)   "Shop Rights" is an equitable doctrine to be decided by the court. *McElmurry vs. Arkansas Power & Light Co.,* 995 F. 2d 1576 (Fed. Cir. 1993).

(18)   Any narrowing amendment or argument made during prosecution of a patent that is for reasons related to patentability forecloses any application of the doctrine of equivalents to the element in question. *Testo Corp. v. Shoketsu Kinsoku Kogyo Kabushiki,*

(19)    An agreement which is not to be performed within one year from the date of making the agreement is unenforceable pursuant to the statute of frauds, § 26.01(a)(6), Tex. Bus. & Com. Code.

(20)    The shareholder's agreement is not ambiguous, and its construction and interpretation are questions of law for the Court. *City of Pinehurst v. Spooner Addition water Co.*, 432 S.W.2d 515, 518 Tex. 1968).

(21)    Daniel Davis is estopped from asserting that the defendants infringed the 252 patent if all of the following circumstances occurred:

    1.    Daniel Davis

        a.    by words or conduct made a false representation or concealed material facts,

        b.    with knowledge of the facts or with knowledge or information that would lead a reasonable person to discovery the facts, and

        c.    with the intention that Favco USA would rely on the false representation or concealment in acting or deciding not to act; and

    2.    Favco USA

        a.    did not know and had no means of knowing the real facts; and

        b.    relied to its detriment on the false representation or concealment of material facts.

(21)    Equitable estoppel may also be based upon on silence or inaction, rather than on affirmative misrepresentations, if one under a duty to speak or act has by his silence or inaction misled the opposing party to his detriment. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).

(22)    The doctrine of equivalents as set forth in Section 9.1 5th Circuit Pattern Jury Instructions Civil (1999 West Group).

## 9. CONTESTED PROPOSITIONS OF LAW

---

State briefly the unresolved questions of law, with authorities to support each.

## 10. EXHIBITS

22.     On a separate form similar to the one provided by the clerk, each party will attach four lists of all exhibits expected to be offered and will make the exhibits available for examination by opposing counsel. All documentary exhibits must be exchanged before trial, except for rebuttal exhibits or those whose use cannot be anticipated.

23.     A party requiring authentication of an exhibit must notify the offering counsel in writing within five (5) days after the exhibit is listed and made available; failure to object in writing in advance of the trial concedes authenticity.

24.     Within reason, other objections to admissibility of exhibits must be made at least three business days before trial; the Court will be notified in writing of disputes, with copies of the disputed exhibit and authority.

25.     Parties must mark their exhibits to include the date and case number on each.

26.     At the trial, the first step will be the offer and receipt in evidence of exhibits.


A.     **PLAINTIFF'S EXHIBITS:** See attached Exhibit List

A.     **DEFENDANTS' EXHIBITS:** See attached Exhibit List


## 11. WITNESSES

1.     On a separate form, each party will attach four lists with the names and addresses of witnesses who may be called with a brief statement of the nature of their testimony.

2.     Include:
       If other witnesses to be called at the trial become known, their names, addresses, and subject of their testimony will be reported to opposing counsel in writing as soon as they are known; this does not apply to rebuttal or impeachment witnesses.


A.     **PLAINTIFF'S WITNESSES:** See attached Witness List.

B.  **DEFENDANTS' WITNESSES:** See attached Witness List.

## 12. SETTLEMENT

All settlement efforts have been exhausted and it will have to be tried.

## 13. TRIAL

A.  **PROBABLE LENGTH OF TRIAL**

The Plaintiff's case will take approximately two and one-half (2 1/2) days for trial and the Defendants' case will take approximately three and one-half days for trial. Plaintiff's rebuttal will take approximately half a day.

B.  **LOGISTICAL PROBLEMS**

Some witnesses and parties must come from out of state and even out of the country.

## 14. ATTACHMENTS

Each party must file as a separate document (captioned, signed by counsel and with service certified) these required attachments in duplicate:

For a jury trial:

(1)  Proposed questions for the voir dire examination.

(2)  Proposed charge, including instructions, definitions, and special interrogatories, with authority.

A.  **PLAINTIFF'S ATTACHMENTS:**

(1)  See attached Proposed Questions for the Voir Dire Examination.

(2)  See attached Proposed Jury Charge, including Instructions and Definitions.

B.  **DEFENDANTS' ATTACHMENTS:**

---

**DAVIS**
**vs.**
**FFC**

**JOINT PRETRIAL ORDER**
**PAGE 25**

(1)     See attached Proposed Questions for the Voir Dire Examination.

(2)     See attached Proposed Jury Charge, including Instructions and Definitions.

Date:_____

_____
UNITED STATES DISTRICT JUDGE

**APPROVED:**

Date: 01/18/01

_____
Of Counsel for Plaintiff
Ernesto Gamez, Jr. (Of Counsel)
Bar # 0760660      SDOT #  8645

Victor Quintanilla (Of Counsel)
Bar # 00786181   SDOT # 16073
Law Offices of Ernesto Gamez, Jr., P.C.
777 E. Harrison Street
Brownsville, Texas 78520
Telephone No. 956/541-3820

Date: 01/18/01

_____
Attorney-in-Charge, Defendants
Gary Gurwitz
Bar # 08631000      SDOT # 1194

Charles C. Murray
Bar # 14719700      SDOT # 1214
Daniel G. Gurwitz
Bar # 00787608      SDOT # 16895
ATLAS & HALL, L.L.P.
818 Pecan - P.O. Drawer 3725
McAllen, Texas  78502
Telephone No. 956/682-5501
Fax No. 956/686-6109

**DAVIS**
vs.
**FFC**

**JOINT PRETRIAL ORDER**
**PAGE 26**

Willem G. Schuurman/Bar # 17855200
Brian K. Buss/Bar # 00798089
VINSON & ELKINS, L.L.P.
600 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone No. 512/495-8400
Fax No. 512/495-8612

# UNITED STATES DISTRICT COURT  ☆  SOUTHERN DISTRICT OF TEXAS

| DANIEL E. DAVIS<br>*Versus* - - - - - - - - - - - - - - -<br>FAVELLE FAVCO CRANES, USA, INC., ET.AL. | CASE NO.   B-00-003 |
|---|---|
| | **Exhibit List** |
| Judge Hilda G. Tagle | Case Manager: Stella Cavasos<br>Court Reporter: Breck Record |
| List of<br>**PLAINTIFF** | Proceeding        Date |

| No. | Description | Adm. | Exd. |
|---|---|---|---|
| 1 | United States Patent NO. 6,003,252 | | |
| 2 | Drawings/Sketches (Figures 1A-24) attached to United States Patent No. 6,003,252 | | |
| 3 | Employment Contract (06/23/97) | | |
| 4 | Shareholders' Agreement (08/16/97) | | |
| 5 | FFC 28T Brochure | | |
| 6 | FFC 38T Brochure | | |
| 7 | FFC 50MT Brochure | | |
| 8 | Drawing/Sketch of Weldment-Boom Insert (38T) | | |
| 9 | Drawing/Sketch of Weldment-Boom Insert (38T) | | |
| 10 | Laser Photograph of 28 Ton Crane | | |
| 11 | Laser Photograph of 28 Ton Crane (Caterpillar Power Module) | | |
| 12 | Diagram of FFC 28 Ton Unit (with Dimensions) | | |
| 13 | Diagram of FFC 28 Ton Unit (with Dimensions) | | |
| 14 | Laser Photograph of 28 Ton Crane | | |
| 15 | Laser Photograph of 28 Ton Crane | | |
| 16 | Laser Photograph of 38 Ton Crane (Caterpillar Power Module) | | |
| 17 | Diagram of FFC-38 Ton Unit (Maximun Angle) | | |
| 18 | Diagram of FFC-38 Ton Unit (with Dimensions) | | |
| 19 | Laser Photograph of 38 Ton Unit | | |
| 20 | Laser Photograph of 50 Ton Unit | | |
| 21 | Laser Photograph of 50 Ton Unit (Caterpillar Power Module) | | |

| No. | Description | Adm. | Exd. |
|-----|-------------|------|------|
| 22 | Diagram of 50 MT Crane (with Dimensions) | | |
| 23 | Laser Photographs of FFC-50MT Crane | | |
| 24 | Laser Photographs of FFC-50MT Crane | | |
| 25 | Laser Photographs of FFC-50MT Crane | | |
| 26 | FIG. 8 200105 | | |
| 27 | FIG. 9 and FIG. 10 200106 | | |
| 28 | FIG. 12 200107 | | |
| 29 | FIG. 13 and FIG. 14 200108 | | |
| 30 | FIG. 15 and FIG. 16 200109 | | |
| 31 | Resume of Loren G. Helmreich | | |
| 32 | Expert Report of Loren G. Helmreich (08/03/00) | | |
| 33 | Report from Richard Robey (07/31/00) | | |
| 34 | Transcript of the Oral Deposition of Cheam Tek Siong (07/11/00) with Exhibits | | |
| 35 | Transript of the Oral Deposition of Mac Ngan Boon (07/12/00) with Exhibits | | |
| 36 | Transcript of Telephonic Video Deposition of Richard Howard Robey (10/12/00) with Exhibits | | |
| 37 | Transcript of the Oral Deposition of Loren G. Helmreich (09/01/00) with Exhibits | | |
| 38 | Transcript of the Oral and Videotaped Deposition of Daniel E. Davis (05/11/00) (Volume I) with Exhibits | | |
| 39 | Transcript of the Oral and Videotaped Deposition of Daniel E. Davis (05/12/00) (Volume II) with Exhibits | | |
| 40 | Transcript of the Oral Deposition of Greta Sullivan (08/17/00) with Exhibits | | |
| 41 | First Amended Expert Report of Loren G. Helmreich (08/18/00) | | |
| 42 | Certified copy of the Prosecutuin History of U.S. Patent No. 6,003,252 | | |
| 43 | Letter and/or Memorandum from Yee to Mac Ngan Boon (04/07/99) | | |

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
| --- | --- | --- |

| DANIEL E. DAVIS<br>versus<br>FAVELLE FAVCO CRANES USA, INC.<br>and FAVELLE FAVCO CRANES (M) SDN<br>BHD | Case No. B-00-003 |
| --- | --- |
| | **EXHIBIT LIST** |
| Judge Hilda G. Tagle | Case Manager: Letty Garza<br>Court Reporter: Breck Record |
| List of Defendants | Proceeding                          Date |

| No. | Description | Adm | Exd |
| --- | --- | --- | --- |
| 1 | 09/03/97 CERTIFICATE OF INCORPORATION of FFC USA | | |
| 2 | 09/04/97 MINUTES of Organizational Meeting of Directors of FFC USA | | |
| 3 | ORGANIZATIONAL CHART (color) | | |
| 4 | FCC 28 ton BROCHURE;<br>(EXHIBIT 12 to Davis Deposition) | | |
| 5 | FFC 38 ton BROCHURE;<br>(EXHIBIT 13 to Davis Deposition) | | |
| 6 | FFC 50 ton BROCHURE;<br>(EXHIBIT 14 to Davis Deposition) | | |
| 7 | FFC 9 ton Brochure;<br>(EXHIBIT 11 to Davis Deposition) | | |
| 8 | 11/16/97 LETTER from Danny Davis, FFC USA to Muhibbah Engineering,<br>Attn: Mac Ngan Boon, Cheam Tek Siong, Tee Yin Tiong;<br>(EXHIBIT 29 to Davis Deposition) | | |
| 9 | 11/22/97 Executed CONFIDENTIALITY AGREEMENT between FFC USA,<br>FFC Malaysia and ECCON Engineering;<br>(EXHIBIT 4 to Davis Deposition) | | |
| 10 | 10/20/97 QUOTATION No. 970387 from ECCON, H. Zimmerman, C. Hartl<br>to FFC USA, Daniel Davis | | |
| 11 | 02/03/98 ENGINEERING CONSULTING AGREEMENT Rev. 3, between<br>Keith Orgeron and FFC USA;<br>(EXHIBIT 9 to Davis Deposition) | | |
| 12 | Keith Orgeron/Integra BILLS | | |

| | | | |
|---|---|---|---|
| 12A | 12/01/997-02/28/98Integra Engineering Expense Report re: FFC USA Project(s) | | |
| 12B | 02/16/98 STATUS REPORT LETTER #01 from Integra Engineering to Daniel Davis, FFC                                                                              29 | | |
| 12C | 02/16/98 Letter from Keith Orgeron, Integra, to FFC USA attn:Daniel E. Davis, President, re: Status Report #01 | | |
| 12D | 03/02/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0201)<br>          03/02/98  Invoice from Keith Orgeron, Integra, to FFC USA<br>          attn: Purchasing re: Invoice #98-IE-0201 | | |
| 12E | 04/06/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0202)<br>          04/06/98  Invoice from Keith Orgeron, Integra, to FFC USA attn:<br>          Purchasing re: Invoice #98-IE-0202<br>          03/30/98-04/04/98   Integra Engineering Expense Report re: FFC<br>          USA's Project(s) | | |
| 12F | 03/01/98-03/29/98 Integra Engineering Expense Report re: FFC USA's Project(s) | | |
| 12G | 04/05/98-04/10/98 Integra Engineering Expense Reprot re: FFC USA's Project(s) | | |
| 12H | 05/05/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (398-IE-0203)<br>          05/05/98 Invoice from Keith Orgeron, Integra, to FFC USA attn:<br>          Purchasing re: Invoice #98-IE-0203<br>          Notes and Memos made in April 1998 | | |
| 12I | 05/18/98 Fax from Keith Orgeron, Integra, to Mr. D.E. Davis<br>          Manhour Status Report to May 17, 1998 | | |
| 12J | 06/09/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0204)<br>          06/09/98 Invoice from Keith Orgeron, Integra, to FFC USA attn:<br>          Purchasing re: Invoice #98-IE-0204<br>          Manhour Status Report, June 1998<br>          FFC USA check dated 07/21/98 payable to Integra Engineering for<br>          $10,624.00. | | |
| 12K | 04/11/98-06/10/98 Integra Engineering Expense Report re: FFC USA Project(s) | | |
| 12L | 06/24/98 FAX from Keith Orgeron, Integra to Danny Davis with invoice          40 | | |
| 12M | 07/09/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0205)<br>          07/09/98 Invoice from Keith Orgeron, Integra, to FFC USA attn:<br>Purchasing re: Invoice #98-IE-0205<br>          Manhour Status Report, June 1998 | | |

| | | | |
|---|---|---|---|
| 12N | 08/08/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0206)<br>08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0206<br>Manhour Status Report, July 1998<br>FFC USA Check dated 09/17/98 payable to Integra Engineering for $5,793.75.<br>08/08/98 Invoice from Keith Orgeron, Integra to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0206 | | |
| 12O | 09/13/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0207)<br>08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0207<br>FFC USA Check dated 10/07/98 payable to Integra Engineering for $5,437.50. | | |
| 12P | 10/10/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0208)<br>08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0208 | | |
| 12Q | 11/09/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0209)<br>08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0209 | | |
| 12R | 12/04/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0210)<br>08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0210<br>FFC USA Check dated 01/06/99 payable to Integra Engineering for $13,725.00 | | |
| 12S | 02/14/99  Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#99-IE-0213-A and #99-IE-0213-B)<br>Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0213-A<br>02/14/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice # 99-IE-0213-B | | |
| 12T | 04/07/99 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#99-IE-0215-A and #99-IE-0215-B)<br>04/07/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0215-A.<br>04/07/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0215-B | | |
| 12U | 02/27/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Engineering Copiers, Scanners & Plotters | | |
| 13 | 06/03/98 FAX from J.A. Rusk Engineering to Danny Davis, FFC;<br>(EXHIBIT 26 to Davis Deposition) | | |
| 14 | 08/16/98 INVOICE from J.A. Rusk Engineering to FFC, Danny Davis | | |

| 15 | 11/23/99 ACCOUNT RECONCILIATION - J.A. Rusk Account, FFC USA | | |
|----|------------------------------------------------------------------|--|--|
| 16 | 12/13/99 FAX from Jim Rusk to Cheam T.S., FFC | | |
| 17 | 06/14/98 LETTER from Fredrick G. Lautz, Quarles & Brady to Mac Ngan Boon, Muhibbah Engineering (M) Bdh | | |
| 18 | 06/23/98 MEMO from Daniel Davis to Mac Ngan Boon; (EXHIBIT 10 to Davis Deposition) | | |
| 19 | 08/21/98 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 1, Cranes Utilizing Standard Hydraulic Excavator Main Frames, among CAT, FFC USA and FFC Malaysia; (EXHIBIT 5 to Davis Deposition) | | |
| 20 | 08/21/98 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 2, Cranes Utilizing Custom Main Frames, among CAT, FFC USA and FFC Malaysia; (EXHIBIT 6 to Davis Deposition) | | |
| 21 | 03/29/99 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 3, Cranes Utilizing Telehandler Powermodules between CAT and FFC USA; (EXHIBIT 7 to Davis Deposition) | | |
| 22 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by FFC and accepted by Bill Young, Victoria Machine & Fab. Co. | | |
| 23 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by Ralph Barrera, FFC and accepted by P. Hines, Femco Machine Company | | |
| 24 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by Ralph Barrera, FFC and accepted by Daryl D. Gates, Aero American Cranes | | |
| 25 | 07/20/98 LETTER from Robway Safety Systems PTY LTD to FFC USA, Attn Daniel Davis | | |
| 26 | 08/01/98 FFC Employee Handbook | | |
| 27 | 08/0698 FAX (on Hotel Negara Singapore Guest Stationery) from T.S. Cheam to Danny Davis, FFC USA | | |
| 28 | 08/06/98 FAX from Daniel Davis, FFC USA to T.S. Cheam | | |
| 29 | 08/10/98 FAX from Cheam to FFC USA, Attn: Danny Davis | | |
| 30 | 08/11/98 FAX from Cheam to Danny Davis, FFC USA | | |
| 31 | 06/10/97 LETTER from Michael Chen & Lee (attorneys) to Cheam, FFC Malaysia, re: draft Shareholders Agreement; (EXHIBIT 32 to Davis Deposition) | | |
| 32 | 08/05/98 NEW APPLICATION TRANSMITTAL by Daniel Davis (Alton Payne) to Commissioner of Patents | | |
| 33 | 10/27/98 LETTER from Al Payne to Daniel Davis at FFC; (EXHIBIT 22 to Davis Deposition) | | |
| 34 | 04/30/98 LETTER from Daniel Davis to Al Payne (Eccon Agreement) | | |
| 35 | 08/20/98 CALLING CARD for Daniel E. Davis, President, FFC USA | | |

| 36 | 10/29/98 LETTER from Daniel E. Davis, Presidnet/Managing Director, FFC to CBI Na-Con, attn: Jerry Tubbs, Houston, TX | | |
|---|---|---|---|
| 37 | 03/22/99 LETTER from Al Payne representing Daniel Davis to Muhibbah Engineering, attn: Shirleen Lee | | |
| 38 | 05/21/99 DISTRIBUTION AGREEMENT between FFC USA and Mustang Tractor & Equipment Company (Dealer) | | |
| 39 | All FFC USA PURCHASE ORDERS to Caterpillar                    118 | | |
| 39A | 09/08/98 Purchase Order #CFF1234 by FFC USA to Caterpillar<br>      09/08/99   FFC USA Purchase Order-Production  #CFF 1234 | | |
| 39B | 09/19/98 Purchase Order #CFF1261 by FFC USA to Caterpillar<br>      09/19/98   FFC USA Purchase Order-Production # CFF 1261 | | |
| 39C | 12/07/98 Purchase Order #CFF1370 by FFC USA to Caterpillar<br>      12/07/98   FFC USA Purchase Request Requisition #1370 | | |
| 39D | 12/07/98 Purchase Order #CFF1371 by FFC USA to Caterpillar<br>      12/07/98   FFC USA Purchase Request Requisition #1743 | | |
| 39E | 02/06/99 Purchase Order #CFF1441 by FFC USA to Caterpillar<br>      02/06/99   FFC USA Purchase Request Requisition #0250 | | |
| 39F | 02/06/99 Purchase Order #CFF 1442 by FFC USA to Caterpillar<br>      02/06/99   FFC USA Purchase Request Requisition #0859 | | |
| 39G | 02/06/99 Purchase Order #CFF1443 by FFC USA to Caterpillar<br>      02/06/99   FFC USA Purchase Request Requisition #0871 | | |
| 39H | 02/07/99 Purchase Order #CFF7058 by FFC USA to Caterpillar<br>      02/07/99   FFC USA Purchase Request Requisition #0876 | | |
| 39I | 02/07/99 Purchase Order #CFF7059 by FFC USA to Caterpillar<br>      02/07/99   FFC USA Purchase Request Requisition #0879 | | |
| 39J | 02/07/99 Purchase Order #CFF7065 by FFC USA to Caterpillar<br>      02/07/99   FFC USA Purchase Request Requisition #0880 | | |
| 39K | 03/09/99 Purchase Order #CFF7174 by FFC USA to Caterpillar<br>      03/09/99   FFC USA Purchase Request Requisition #1325 | | |
| 39L | 03/09/99 Purchase Order #CF7174 by FFC USA to Caterpillar<br>      03/09/99   FFC USA Purchase Request Requisition #1325 | | |
| 39M | 03/16/99 Purchase Order #CFF7173 by FFC USA to Caterpillar<br>      03/09/99   FFC USA Purchase Request Requisition #1324 | | |
| 39N | 05/01/99 Purchase Order #CFF7057 by FFC USA to Caterpillar<br>      02/04/99   FFC USA Purchase Request Requisition #1742 | | |
| 39O | 05/01/99 Purchase Order #CFF-80031 by FFC USA to Caterpillar<br>      03/28/98   FFC USA Purchase Order-Production #CFF-80031<br>      06/02/98   FFC USA Purchase Order-Production #SFF-80301 | | |

| | | | |
|---|---|---|---|
| 39P | 06/07/99 Purchase Order #CFF7226 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1739 | | |
| 39Q | 06/07/99 Purchase Order #CFF7226 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1739 with attachment | | |
| 39R | 06/11/99 Purchase Order #CFF7224 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1740 | | |
| 39S | 06/11/99 Purchase Order #CFF7224 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1740 | | |
| 39T | 06/11/99 Purchase Order #CFF7225 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1738 | | |
| 39U | 06/11/99 Purchase Order #CFF7225 by FFC USA to Caterpillar<br>05/10/99  FFC USA Purchase Request Requisition #1738 | | |
| 40 | 04/20/90 EMAIL from Jim Hopkins, Caterpillar to C.R. Allen, FFC USA | | |
| 41 | 06/99 STRAIN GAUGE TESTING of FFC 38 ton Mobile Crane by<br>Stress Engineering | | |
| 42 | 06/99 STRAIN GAUGE TESTING of FFC 28 ton Mobile Crane by<br>Stress Engineering | | |
| 43 | 06/07/99 CHECK 1981, FFC USA payable to Davisco, Inc. for $10,560 | | |
| 44 | 06/24/99 CHECK 2072 FFC USA payable to Davisco Inc. for $10,560 | | |
| 45 | 07/12/99 CHECK 2107 FFC USA payable to DavisCo Inc. for $13,200 | | |
| 46 | 06/14/99 LETTER from Daniel Davis, FFC USA to GAR International | | |
| 47 | U.S. Patent Office FILE HISTORY of U.S. Patent No. 6,003,252 | | |
| 48 | Caterpillar BROCHURES | | |
| 49 | PICTURES of FFC and Caterpillar cranes, assembly area at FFC Harlingen | | |
| 50 | ANSI REPORTS | | |
| 51 | Brochures and documents relating to the sale of crawler cranes in the<br>United States and elsewhere | | |
| 52 | DRAWING<br>(EXHIBIT 24 to Davis Deposition) | | |
| 53 | DRAWING<br>(EXHIBIT 25 to Davis Deposition) | | |
| 54 | 09/13/99 LETTER from Payne to Whom It May Concern re: crawler crane<br>design of Daniel E. Davis | | |

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| DANIEL E. DAVIS<br>*Versus* - - - - - - - - - - - - - -<br>FAVELLE FAVCO CRANES, USA, INC., ET.AL. | CASE NO.   B-00-003 |
|---|---|
| | **Witness List** |
| Judge Hilda G. Tagle | Case Manager: Stella Cavasos<br>Court Reporter: Breck Record |
| List of<br>**PLAINTIFF** | Proceeding          Date |

1.    Daniel E. Davis (Plaintiff)
      800 Wilcrest, Suite 160
      Houston, Texas   77042
      (956) 245-8500

      Mr. Davis is the Plaintiff in this civil action.  He has knowledge of the contents of the
      Employment Contract dated June 23, 1997 which he signed with Favelle Favco Holdings
      SDN BHD.  He also has knowledge of the fact that he was terminated as President and
      Managing Director of Favco USA on or about September 8, 1999.

      He has knowledge of the efforts and work undertaken by him in developing his ideas and
      concepts concerning the unique line of crawler cranes referred to as **"Davis Crawler
      Cranes"** which are the subject of U.S. Patent No. 6,003,252 **("the 252 patent")**.  Mr.
      Davis also has knowledge of the actions under taken by him to apply for and obtain U.S.
      Patent No. 6,003,252 **("the 252 patent")**.  Mr. Davis also has knowledge of the fact that
      he is the inventor and owner of U.S. Patent No. 6, 003, 252 **("the 252 patent")** issued by
      the United States Patent and Trademark office on December 21, 1999 entitled
      **"Conversion Apparatus and Method for Use with Excavator and Crane Devices".**
      Mr. Davis also has knowledge of the agreement entered into by him and the Favelle Favco
      Cranes defendants on or about June 23, 1997.  Mr. Davis also has knowledge of the fact
      that the Defendants have infringed and continue to infringe on his **252 patent**.
      Additionally, Mr. Davis has knowledge of the damages and/or injury caused by
      Defendants' actions or patent infringement and how he will continue to suffer irreparable
      injury if the Defendants are not stopped from continuing to infringe on Mr. Davis' patent.

2.      Shirleen Lee
        c/o Muhibbah Engineering (M) BHD
        Lot 586 & 579, 2nd Mile
        Jalan Batu Tiga Lama
        41300 Klang
        Selangor Darul Ehsan, Malaysia
        (603) 342-4322 or (603) 342-4323

Ms. Lee is the Group Finance Manager for Muhibbah Engineering (M) BHD.  She has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD.  Mr. Davis reasonably believes that Ms. Lee has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**.  Ms. Lee also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997.  She also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. (**NOTE:** It may not be possible to call Ms. Lee to testify as a witness due to logistical circumstances and subpoena range.  However, Ms. Lee is still being listed herein out of an abundance of caution in the event her testimony is needed at trial.).

3.      Cheam Tek Siong
        c/o Favelle Favco Cranes (USA), Inc.
        4 Mile East 106, Port of Harlingen
        P.O. Box 3049
        Harlingen, Texas   78551-3049
        (956) 4258-7488

Cheam is the General Manager of Favelle Favco Cranes (USA), Inc.. He has knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco.  He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of Favco USA on or about September 8, 1999.  He also has knowledge of the Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD.  Mr. Cheam also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**.  Mr. Cheam also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997.  He also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. (**NOTE:** Mr. Cheam's deposition was taken on **July 11, 2000** in both this case and the 197th Judicial District Court case by agreement of the parties.  His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

CSXPDF - www.fesko.com

4.      Mac Ngan Boon
        Lot 586 & 579, 2nd Mile
        Jalan Batu Tiga Lama
        41300 Klang
        Selangor Darul Ehsan, Malaysia
        (603) 342-4322 or (603) 342-4323

Mac is the Chairman of the Board of Muhibbah Engineering (M) BHD. He has knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco. He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of Favco USA on or about September 8, 1999. He also has knowledge of the Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Mr. Mac also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Mac also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. He also has knowledge of the fact that the Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. (**NOTE:** Mr. Mac's deposition was taken on July 12, 2000 in both this case and the 197th Judicial District Court case by agreement of the parties. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

5.      Greta L. Sullivan
        50 Casa de Amigos
        Brownsville, Texas 78521
        (956) 544-7663

Ms. Sullivan is the former Accounts Manager for Favelle Favco Cranes (USA), Inc.. He has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Ms. Sullivan also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. She also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. She also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. (**NOTE:** Ms. Sullivan's deposition was taken on **August 17, 2000** in both this case and the 197th Judicial District Court case by agreement of the parties. Her deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

3

6.  Michael Khoo
    c/o Favelle Favco Cranes (USA), Inc.
    4 Mile East 106, Port of Harlingen
    P.O. Box 3049
    Harlingen, Texas   78551-3049
    (956) 428-7488

    Mr. Khoo is the former General Manager of Favelle Favco Cranes (USA) Inc.. He has
    knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr.
    Davis signed with Favelle Favco. He also has knowledge of the fact that Mr. Daniel E.
    Davis was terminated as President and Managing Director of Favco USA on or about
    September 8, 1999. Mr. Khoo also has knowledge of the contents of the letter dated
    September 13, 1999 which he sent to Mr. Davis'. He also has knowledge of the
    Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes
    Holdings SDN BHD. Mr. Khoo also has knowledge of the fact that Mr. Davis is the
    inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United
    States Patent and Trademark office on December 21 1999 entitled **"Conversion
    Apparants and Method for Use with Excavator and Crane Devices"**. Mr. Siong also
    has knowledge of the agreement entered into by Mr. Davis and  the Favelle Favco Cranes
    defendants on or about June 23, 1997. He also has knowledge of the fact that Defendants
    have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and
    selling cranes covered by **the 252 patent**.

7.  Willie C. Jones
    2901 Haine Drive, #2005
    Harlingen, Texas   78550
    (956) 425-2358

    Mr. Jones is a former employee of the Defendants. He has knowledge of  the
    Shareholders' Agreement between Mr Daniel E. Davis and Faveoli Favco Cranes Holdings
    SDN BHD. Mr. Jones may also have knowledge of the fact that Mr. Davis is the inventor
    and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States
    Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and
    Method for Use with Excavator and Crane Devices"**. Mr. James may also have
    knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes
    defendants on or about June 23, 1997. He may also have knowledge of the fact that
    Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making,
    using, and selling cranes covered by **the 252 patent**.

8.  Keith J. Orgeron, P.E.
    c/o Integra Engineering
    2241 Loma Rica Circle
    Prescott, Arizona   86303
    (520) 443-8958

4

Mr. Orgeron has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Faveoli Favco Cranes Holdings SDN BHD. Mr. Orgeron may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 ("the 252 patent") issued by the United States Patent and Trademark office on December 21 1999 entitled "**Conversion Apparants and Method for Use with Excavator and Crane Devices**". Mr. Orgeron may also have knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. He may also have knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**.

9.    Andres Garcia, P.E.
      2777 Briar Grove #905
      Houston, Texas  77057
      (713) 953-9849

Mr. Garcia has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Faveoli Favco Cranes Holdings SDN BHD. Mr. Garcia may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 ("**the 252 patent**") issued by the United States Patent and Trademark office on December 21 1999 entitled "**Conversion Apparants and Method for Use with Excavator and Crane Devices**". Mr. Garcia may also have knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. He may also have knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**.

10.   Hon. Ernesto Gamez, Jr.
      **LAW OFFICES OF**
      **ERNESTO GAMEZ, JR., P.C.**
      777 E. Harrison Street
      Brownsville, Texas  78520
      (956) 541-3820

Mr. Gamez is a licensed attorney. He has knowledge of the legal work that has been performed on behalf of **DANIEL E. DAVIS** and the time expended to complete said work. He has further knowledge of the attorney's fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of this case. He may be familiar with the hourly rate which is customarily charged in these types of cases in this area, and is expected to testify that the attorney's fees that **MR. DAVIS** has incurred are reasonable and customarily.

11.   Victor Quintanilla
      **LAW OFFICES OF**
      **ERNESTO GAMEZ, JR., P.C.**
      777 E. Harrison Street
      Brownsville, Texas  78520
      (956) 541-3820

5

Mr. Quintanilla is an associate attorney with the LAW OFFICES OF ERNESTO GAMEZ, JR., P.C..  He has knowledge of the legal work that he has performed on behalf of **DANIEL E. DAVIS** and the time expended to complete said work.  He has further knowledge of the attorney's fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of his case.  He may be familiar with the hourly rate which is customarily charged in these types of cases in this area, and is expected to testify that the attorney's fees incurred by **Mr. DAVIS** are reasonable and customarily.

12.   Alton W. Payne, Ph.D.
      **PAYNE & D'AMBROSIO, L.L.P.**
      800 Wilcrest, Suite 160
      Houston, Texas   77027-3008
      (713) 840-8008

Mr. Payne is a licensed attorney who specializes in intellectual property law.  He has knowledge of the legal work that has been performed on behalf of **DANIEL E. DAVIS** and the time expended to complete said work.  He also has knowledge of the attorney's fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of this case.  Mr. Payne also has knowledge with the hourly rate which is customarily charged in these types of cases and is expected to testify that the attorney's fees that **MR. DAVIS** has incurred are reasonable and customarily.  Additionally, Mr. Payne has knowledge of the patent application submitted by **MR. DAVIS** to the United States Patent and Trademark office and the work undertaken by him which ultimately resulted in **MR. DAVIS** being issued U.S. Patent No. 6,003, 252 (**"the 252 patent"**) on December 21, 1999.

13.   Richard H. Robey
      2219 Jarosa Lane
      Superior, Colorado   80027
      (303) 298-9322

Mr. Robey is a crane marketing and development expert.  He has been involved in the sales and marketing of cranes for several years.  Mr. Robey has knowledge about the fact that Mr. Daniel E. Davis came up with the concept or idea which is the subject of U.S. Patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21, 1999 entitled **"Conversion Apparatus and Method for use with Excavator and Crane Devices"**.  Mr. Robey has knowledge that Mr. Davis initiated this concept or idea while he (i.e. Mr. Davis) was employed by Manitowoc.  Mr. Robey also has knowledge and is familiar with the concept or idea and subject matter invented by Mr. Davis.  Mr. Robey may also have knowledge of the fact that Plaintiff has violated Mr. Davis' trade secrets and continues to violate his trade secrets.  Additionally, Mr. Robey has knowledge of the contents of his report dated July 31, 2000 and the discussion of the facts included therein. (**NOTE:** Mr. Robey's deposition was taken on October 12, 2000 in both this case and the 197th Judicial District Court case by agreement of the parties.  His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.). (**ALSO NOTE:** Mr. Robey will be called to testify at trial by way of videotaped deposition).

6

14.   Loren G. Helmreich
      **BROWNING BUSHMAN**
      Attorneys at Law
      5718 Westheimer, Suite 1800
      Houston, Texas  77057
      (713) 266-5593

      Mr. Helmreich is a licensed attorney who specializes in intellectual property law.  He is
      expected to testify as to issues relating to inventorship, ownership of intellectual property
      rights, shop rights, confidential information and trade secrets, the relationship between
      such technology and patents, and the three (3) year license agreement between **MR.
      DAVIS** and Favelle Favco.  Mr. Helmreich also has knowledge of the contents of his
      written report dated August 14, 2000.  **NOTE**: Mr. Helmreich's deposition was taken on
      September 1, 2000 in both this case and the 197th Judicial District Court case by
      agreement of the parties.  His deposition testimony is incorporated herein as if fully
      copied and set forth at length.).

15.   Jim Rusk
      c/o J.A. Rusk Engineering
      11713 Fuller
      Kansas City, Missouri  64134
      (816) 763-9003

      Mr. Rusk is an engineer who was hired to reduce Mr. Davis' ideas and concepts of the
      crawler cranes **"Davis Crawler Cranes"** to plans, specifications, models, and/or writing.
      Mr. Rusk has knowledge of the conversations and/or communications he had with Mr.
      Davis in regard to Mr. Davis' ideas and concepts of the subject crawler cranes.  Mr. Rusk
      also has knowledge of the engineering drawings and/or plans he prepared in regard to the
      subject crawler cranes.  Mr. Rusk may also have knowledge of the sketches of the subject
      crawler cranes prepared by Mr. Davis. Furthermore, Mr. Rusk has knowledge of the
      contents and/or subject matter of the documents entitled "Caterpillar-Manitex Crawler
      Proposal" (02/20/97) as well as the contents and/or subject matter of all documents,
      facsimiles, information, drawings, sketches, and/or items exchanged between him and
      Womack and between him and Manitex, Inc. regarding LMI Injunction Box Crawler 320,
      Gallotti Car Body Specifications, and Electrical Schematics for the Crawler 320,
      respectively.  Any additional knowledge known to or held by Mr. Rusk is unknown to
      Plaintiff at this time.

16.   James E. Hopkins
      c/o Asiatrak
      #169 Hai Ein Jiu Road
      Attn: Port Free Trade Zone
      Taian Jin, China 300456
      011-86-2223355888 #1905

Case 1:00-cv-00003    Document 51    Filed in TXSD on 01/18/2001    Page 43 of 182

Mr. Hopkins has knowledge of Mr. Davis' ideas and concepts of the Crawler Cranes made the subject of this lawsuit. He also has knowledge that Mr. Davis originated the idea and/or concept of the crawler cranes prior to him (i.e. Mr. Davis) working for FFC USA. Mr. Hopkins also has knowledge of the Design Ownership/Responsibility Agreements between CIPI and FFC USA dated August 21, 1998 and March 29, 1999, respectively and their respective contents. Mr. Hopkins also has knowledge of the Purchase Orders made by or caused to be made by FFC USA in regard to Upper and Lower Structures and/or other cranes components. Additionally, Mr. Hopkins has knowledge of the contents and/or subject matter of his discussions with either **Cheam Tek Siong, Mac Ngan Boon, Bud Davis, Daniel E. Davis, Carl Allen, Anker B. Henningsen, Julian Gallego, Glenn G. Dyer, David A. Schuldt, Koichi Monikawa, and/or any agent, employee, and/or representative of Favelle Favco Cranes USA, Inc., Favelle Favco Holdings SDN BHD, and/or Favelle Favco Cranes (M) SDN BHD in regard the Crawler Cranes, etc.**. Furthermore, Mr. Hopkins has knowledge of the contents and/or subject matter of all e-mails, memorandums, or other documents which he generated to either **Cheam Tek Siong, Mac Ngan Boon, Bud Davis, Daniel E. Davis, Carl Allen, Anker B. Henningsen, Julian Gallego, Glenn G. Dyer, David A. Schuldt, Koichi Monikawa, and/or any agent, employee, and/or representative of Favelle Favco Cranes USA, Inc., Favelle Favco Holdings SDN BHD, and/or Favelle Favco Cranes (M) SDN BHD in regard the Crawler Cranes, etc.** (**NOTE**: It may not be possible to call Mr. Hopkins to testify as a witness due to logistical circumstances and subpoena range. However, Ms. Lee is still being listed herein out of an abundance of caution in the event his testimony is needed at trial.).

17.    Joe E. Conway
       c/o Manitex
       P.O. Box 1609
       3000 South Austin Avenue
       Georgetown, Texas 78627-1609

       Mr. Conway is the Executive President & General Manager of Manitex. He has knowledge of the contents of the February 12, 1999 letter to Mr. Davis, including the attached agreement, and any other correspondence, e-mails, memorandums, and/or documents between him and Mr. Davis. He also has knowledge of the conversations and/or communications he has had with Mr. Davis in regard to Mr. Davis' ideas and concepts of the subject Crawler Cranes. He also has knowledge that Mr. Davis originated the idea and/or concept of the crawler cranes (**"Davis Crawler Cranes"**) prior to him (i.e. Mr. Davis) working for FFC USA. Mr. Conway may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. Patent No. 6,003,252 (**"the 252 patent"**). Any additional knowledge held by Mr. Conway is unknown to Defendants at this time.

18.    Dennis Sanchez
       **SANCHEZ, WHITTINGTON
       JANIS & ZABARTE, L.L.P.**
       100 N. Expressway 83
       Brownsville, Texas  78521
       (956) 546-3731

8

Mr. Sanchez is an attorney who prepared the Shareholders' Agreement between Mr. Davis and Favelle Favco Cranes (M) SDN BHD.  He has knowledge of its contents as well as the various drafts he prepared.  Mr. Sanchez also has knowledge that the terms and conditions of said Shareholders' Agreement had been agreed to by the parties.  (**NOTE:** Mr. Sanchez will not be asked to divulge or testify as to any matters constituting attorney-client privilege or attorney-work product.).

9

2.      **Cheam Tek Siong**
        **4 Mile East F.M. 106**
        **Port of Harlingen**
        **P.O. Box 3049**
        **Harlingen, Texas 78551-3049**
        **Telephone:  956-428-7488**

> Mr. Cheam is the Group General Manager of Favco Holdings and is a Director of Favco USA and is Managing Director of Favco USA.  He dealt with Daniel Davis concerning all matters at issue and is familiar with corporate operations.  Mr. Cheam may also testify about matters and issues discussed in his deposition and of hearing testimony that he gave while this case was still in state court.

3.      **Michael Khoo**
        **4 Mile East F.M. 106**
        **Port of Harlingen**
        **P.O. Box 3049**
        **Harlingen, Texas 78551-3049**
        **Telephone:  956-428-7488**

> Mr. Khoo is the Group General Manager of Favco Holdings and is General Manager of Favco USA. He had dealings with Daniel Davis and is familiar with corporate operations.

4.      **Jose de la Cruz**
        **4 Mile East F.M. 106**
        **Port of Harlingen**
        **P.O. Box 3049**
        **Harlingen, Texas 78551-3049**
        **Telephone:  956-428-7488**

> Mr. de la Cruz is a CAD (Computer Aided Drafting) operator employed by Favco USA. He is responsible for creating and updating, design drawings for the models of Favco USA crawler cranes and has knowledge of the changes made in the logos and title blocks of the design drawings to change indication of ownership from Favco USA to Daniel Davis.  See Affidavit of Jose de la Cruz filed in the above-captioned action.

2

5.      **Daniel Davis**
        **3205 Merion Ct.**
        **Harlingen, Texas 78550**

        Mr. Davis is a former President, Managing Director and Director of Favco
        USA.  See his deposition in this case.

6.      **Todd Teulon**
        **Teulon Kuhns & Associates**
        **830 W. Price Road**
        **Brownsville, Texas**
        **Telephone: 542-4717**

        Mr. Teulon was hired by Davis to download FFC's computer hard drive onto
        Davis' personal computer and removed the material from FFC's computer at
        FFC's expense.

7.      **Richard Cortez**
        **Burton McCumber & Cortez LLP**
        **Certified Public Accountants and Management Consultants**
        **200 South 10th Street, Suite 1501**
        **McAllen, Texas 78501**
        **Telephone No.: 956/618-2300**

        Richard Cortez will testify regarding accounting and analyses of Favco USA's
        books and records and the opinions expressed in his written report

8.      The following experts designated by Defendants:

        a.      **Mr. Terry Qualey**
                **Merchant & Gould**
                **90 South 7th Street, Suite 21**
                **Minneapolis, MN 55402**
                **Telephone No.: 612/371-5321**

                Terry Qualey will testify regarding the ownership of U.S. Patent No.
                6,003,252 and related patent applications, shop rights under that patent,
                and those patent applications, ownership of trade secrets in the design,
                manufacture and sale of Favco USA's 9, 28, 38 and 50 ton cranes, and

CVisPDF - www.lexisa.com

the opinions expressed in his report. He also will testify about the noninfringement of the 252 patent.

**b.**   **Dr. Steven P. Nichols, P.E., J.D., Ph.D.**
         **Assoc. Chair & Assoc. Professor of Dept. of Mechanical Engineering**
         **University of Texas**
         **ETC 4.102**
         **Austin, Texas 78712 - 1063**
         **Telephone No.: 512/471-3565 Fax: 512/471-1494**

         Dr. Steven Nichols will testify regarding engineering and trade secrets and the opinions expressed in his report.

**c.**   **Stuart Anderson**
         **President**
         **Chortsey Barr Associates**
         **43 Mealey Parkway**
         **Hagerstown, MD 21742**

         Mr. Anderson will testify about the past history of sales of crawler cranes generally and specifically in the United States and the past history of the market for crawler cranes.

4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| | § | |
| -vs.- | § | Civil Action No. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN BHD, | § | |
| FAVELLE FAVCO HOLDINGS SDN BHD, | § | |
| and MUHIBBAH ENGINEERING | § | |

## PLAINTIFF'S PROPOSED INTRODUCTORY COMMENTS FOR THE COURT AND SUGGESTED QUESTIONS TO BE PROPOUNDED TO THE PROSPECTIVE JURORS

Plaintiff Daniel Davis submits the following proposed introductory comments for the Court, and list of suggested questions to be propounded to the prospective jurors:

All members of the panel are requested to pay close attention to my questions addressed to the jurors now in the jury box Particularly, pay attention where the question calls for information by you. If and when you are called to the jury box, you will be asked to give your answers to these questions.

The purpose of the voir dire examination is to obtain a jury which will give fair and unbiased consideration to this case, and not to pry into your personal affairs. If there is any fact or any reason why any of you might be biased in any way, you should disclose such fact or reason during this examination. It is your duty to do so.

I will now ask each of you some basic questions:

1(a)  your full name (including maiden name);

1(b)  where you live;

1(c)  how long you have lived there;

1(d)  where you lived before that;

1(e)  how long you lived there;

1(f)  your age;

1(g)  present occupation and former occupations;

1(h)  name and address of employer,

1(i)  if retired, your last occupation and employer.

1(j)  your spouse's occupation and employer;

1(k)  if your spouse is retired or deceased, your spouses last occupation and employer;

1(l)  your formal education after grammar or elementary school, including where you attended high school and college, and, when any degrees were received.

*     *     *

If your response to any of my following questions is in the affirmative, please indicate this by raising your hand.

2.   Have any of you ever served before as juror or witness in any case?

Plaintiff's Proposed Introductory Comments For The Court
and Suggested Questions To Be Propounded To
The Prospective Jurors                          CIVIL ACTION NO. B-00-003

3.   Are you or anyone close to you now a party in any type of lawsuit, or have you ever been sued before?

4.   Do any of you have any disabilities or infirmities that will be aggravated or bothered in any way by being here for a long period, or will in any way affect your ability to pay attention and concentrate upon the evidence?

5.   Do any of you have any uncorrected visual, hearing or other problems that might impair your ability to observe, hear or comprehend the proceedings?

6.   The Plaintiff is Daniel E. Davis.  Does anyone know Mr. Davis?

7.   Do you know anyone who is employed by Mr. Davis?

    (a)  If so, who?

    (b)  What is his or her relation to
    the company?

8.   The Defendants in this case are Favelle Favco Cranes USA, Inc. And Favelle Favco Holdings SDN BHD.  Are you familiar with these companies?

9.   Do you know anyone who is employed by these companies?

    (a)  If so, who?

    (b)  What is his or her relation to
    the particular company?

10.  The following individuals may be called as witnesses in this trial:

Daniel E. Davis

Cheam Tek Siong

Mac Ngan Boon

Alton W. Payne, Ph.D., attorney

Shirleen Lee

Greta Sullivan

Michael Khoo

Willie C. Jones

Keith J. Orgeron, P.E.

Andres Garcia, P.E.

Ernest Gamez, Jr.

Victor Quintanilla

Richard H. Robey

Loren G. Helmreich

Jim Rusk

James E. Hopkins

Joe E. Conway

Dennis Sanchez

Gary Gurwitz

Charles C. Murray

    11.  Do you or anyone close to you to your knowledge, know any of these individuals?

    12.  I will introduce you now to all the counsel who will be participating in this trial:

Plaintiff's Proposed Introductory Comments For The Court
and Suggested Questions To Be Propounded To
The Prospective Jurors                                    CIVIL ACTION NO. B-00-003

Ernest Gamez, Jr.

Victor Quintanilla

Gary Gurwitz and Charles Murray (Atlas & Hall)

Willem G. Schuurman and Brian K. Buss (Vinson & Elkins)


Is there any member of the panel, or to your knowledge, anyone close to you, who knows or has had any dealings with any of these attorneys or any member of their law firms?

13.   Have any of you ever heard or read of this case, or do you have any knowledge of any of the facts upon which this action is based, or do you have any opinion or feeling as to the merits of either side?

14.   Do any of you or anyone close to you have any interest of any kind in the outcome of this action?

15.   Would the fact that one side may put on more witnesses than the other side influence you in any way?

16.   Have you or anyone close to you ever had any training in the field of law, or done any legal or investigative work of any type?

17.   Have you or anyone close to you ever had any training in the crane industry? If so, what type?

18.   Have you or anyone close to you worked in the crane industry? If so, what type?

19.   Have you or anyone close to you ever had any training in the machinery industry? If so, what type?

20.   It is important that I have your assurance that you will without reservation follow and accept as a correct statement of law the rulings of the court during the trial and the instructions which I will give to you.  To put it somewhat differently, whether you approve or disapprove of the rulings of the court or the law as given to you by the court, it is your solemn duty to accept as correct the court's statement of the law.  Are there any of you who would permit yourself to be governed by your personal views of what you think the law ought to be rather than the rulings made and the instructions given by the court as to the law in this case?

21.   Do you know of any reasons why you could not listen to the evidence and render a fair and impartial verdict if you were

chosen as a juror in this case?

22.  Have you or a family member ever invented anything?

23.  If so, did you commercialize the invention?

24.  Have you or a family member ever applied for a patent?

25.  If a patent was applied for, was a patent issued?

26.  If the patent issued, did you commercialize the patented invention?

27.  Do any of you work for companies which require you to assign or disclose your new ideas to your employer?

28.  Have any of you ever assigned your idea or have you given your idea to someone else?

29.  Have any of you ever disclosed an idea to someone else?

30.  If so, was the disclosure confidential?

31.  If so, did the confidential relationship work to your advantage?

Or, did the confidential relationship work to your disadvantage?

32.  Does anyone believe that it is wrong for the government to grant patents?

33.  Have you or a family member ever been accused of infringing someone's patent, copyright or trademark?

34.  If so, what happened?

35.  Have you or a family member ever accused someone else of infringing your patent, copyright or trademark?

36.  If so, what happened?

37.  Other than in family matters such as a divorce, have you ever been involved in a lawsuit?

38.  If so, tell me about it.

39.  Do you have any knowledge of, training in, or employment history with, fuel processing units for motor vehicles?

40.  Do you have any knowledge of, training in, or employment

Plaintiff's Proposed Introductory Comments For The Court
and Suggested Questions To Be Propounded To
The Prospective Jurors                                    CIVIL ACTION NO. B-00-003

history with, internal combustion engines?

41. Have you gone into competition with a former employer?

42. In this case, the patent holder is located in Texas, and the accused infringer is located in Texas and overseas. Is there any member of the panel who may have some difficulty treating fairly an out-of-state defendant, and in particular, a defendant from another country?

43. Can you treat a foreign company with the same degree of fairness and impartiality that you would treat any Texas-based company?

44. Do you have any knowledge, educational background, training or employment in the area of mechanical engineering?

45. If so, please explain.

46. Have you ever written anything that someone else used without your permission?

> If so, how did you feel about the
> other person using it?

47. In your job, do you or your fellow employees write or draw anything?

> Who owns what is written or drawn on
> the job?
>
> How do you know who is the owner of
> what is written or drawn?
>
> At your work, who determines the
> ownership of what is written or
> drawn?

48. If your employer told you that everything you create <u>in doing your work</u> belongs to the employer, how would you feel?

> Would you like that situation?
>
> Would you tell your employer you
> thought it was fair for the company
> to own what you created in doing your

work?

Would you tell your employer you
thought it was NOT fair for the
company to own what you created in
doing your work?

Why would it not be fair for the
company to own what you created in
doing your work?

49.   If your employer told you that everything you create in

doing your work belongs to the employer, <u>even if you did it at</u>

<u>home</u>, how would you feel?

Would you like that situation?  Why?
Why not?

Would you tell your employer you
thought it was fair for the company
to own what you created in doing your
work, even if you did it at home?
Why?      Why not?

Would you tell your employer you
thought it was NOT fair for the
company to own what you created in
doing your work, even if you did it
at home?      Why?      Why not?

Why would it be fair for the company
to own what you created in doing your
work, even if you did it at home?

Why would it NOT be fair for the
company to own what you created in
doing your work, even if you did it
at home?

50.   If your employer told you that everything you create <u>on</u>

<u>your own time</u> belongs to the employer, how would you feel?

Would you like that situation?  Why?

Why not?

Would you tell your employer you
thought it was fair for the company
to own what you created on your own
time?
        Why?        Why not?

Would you tell your employer you
thought it was NOT fair for the
company to own what you created on
your own time?
        Why?        Why not?

Why would it not be fair for the
company to own what you created on
your own time?

Why would it not be fair for the
company to own what you created on
your own time?

51.    Assume you are getting ready to move to a new job.    The
files at your current job would be very helpful to you at your new
job.    Is it acceptable for you to take the files?

Would you ask your employer if it
would be OK to take the files with
you? Why?        Why not?

Would you take the files with you and
NOT ask your employer?
Why?        Why not?

Would it be important for you to
discuss with your employer how
helpful the files would be to you at
your new job?
        Why?        Why not?

Would you tell your employer you
thought it was NOT fair for the
company to prevent you from taking

the files?

Would you tell your employer you
thought it was fair for the company
to prevent you from taking the files?

52. Assume you are getting ready to move to a new job. You
created documents while working for your present employer. The
documents you created would be very helpful to you at your new job.
Is it acceptable for you to take the documents you created?

Would you ask your employer if it
would be OK to take the documents you
created?        Why?        Why not?

Would you take the documents you
created and NOT ask your employer?
Why?        Why not?

Would it be important for you to
discuss with your employer how
helpful the documents you created
would be to you at your new job?
Why?        Why not?

Would you tell your employer you
thought it was NOT fair for the
company to prevent you from taking
the documents you created?

Would you tell your employer you
thought it was fair for the company
to prevent you from taking the
documents you created?

53. Assume you run a restaurant. You play music for
customers while they eat at your restaurant. The music is played
on your tape player, and the tapes are yours. A song writer is
eating and hears one of his songs playing. The song writer asks if
you have paid for a license to play his song in public.

Plaintiff's Proposed Introductory Comments For The Court
and Suggested Questions To Be Propounded To
The Prospective Jurors                    CIVIL ACTION NO. B-00-003
                    - 10 -

Should the song writer be paid when
the restaurant owner plays his own
tapes on his own player?
       Why?     Why not?

Would you take a license?
       Why?     Why not?

Is it fair to have to pay to play
what you already own?
       Why?     Why not?

Respectively Submitted,
OF COUNSEL
**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
**777 E. HARRISON**
**BROWNSVILLE, TEXAS 78520**
**(956) 541-3820**
**(956) 541-7694**

**ERNESTO GAMEZ, JR.** (Of Counsel)
**SBOT NO.** 07606600
**FED. ID NO.** 8645

**VICTOR QUINTANILLA** (Of Counsel)
**SBOT NO.** 00786181
**FED. ID NO.** 16073

**OF COUNSEL FOR PLAINTIFF**
**DANIEL E. DAVIS**

Plaintiff's Proposed Introductory Comments For The Court
and Suggested Questions To Be Propounded To
The Prospective Jurors             CIVIL ACTION NO. B-00-003

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent via facsimile (956) 686-6109 to the Hon. Gary Gurwitz on this the 17th day of January, 2001.

VICTOR QUINTANILLA
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| **VS.** | § | |
| | § | **CIVIL ACTION NO.  B-00-003** |
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| **AND FAVELLE FAVCO CRANES (M)** | § | |
| **SDN BHD** | § | |

---

## DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS

---

Defendants FAVELLE FAVCO CRANES USA, INC. and FAVELLE FAVCO CRANES (M) SDN BHD, submit the following proposed voir dire questions:

1.    Has anyone heard anything or believe that they know anything about this lawsuit?

2.    If the answer to the preceding question is yes, then answer the following:

   (a)    What do you know?

   (b)    How do you know it?

   (c)    What have you heard?

   (d)    Who have you heard it from?

   (e)    When did you hear it?

   (f)    Have you discussed the case with anyone?

   (g)    Have you formed any opinions?

3.    Does anyone know Daniel E. Davis?

4.    If you have answered the previous question yes, then answer the following:

   (a)    How do you know him?

(b)     When did you meet him?

(c)     The extent of your acquaintanceship?

(d)     Was it a personal or business relationship?

(e)     Have you been in business with him?

(f)     Do you visit in his home?

(g)     Do you know his family?

5.      Does anyone know Ernesto Gamez?

6.      If you have answered the previous question yes, then answer the following:

(a)     How do you know him?

(b)     When did you meet him?

(c)     The extent of your acquaintanceship?

(d)     Have you been in business with him?

(e)     Do you visit in his home?

(f)     Do you know his family?

(g)     Has he or his law firm ever represented you?

(h)     What was the nature of the representation?

7.      Does anyone know Victor Quintanilla or anyone in his law firm?

8.      If you have answered the previous question yes, then answer the following:

(a)     How do you know him?

(b)     When did you meet him?

(c)     The extent of your acquaintanceship?

(d)     Have you been in business with him?

(e)     Do you visit in his home?

(f)     Do you know his family?

(g)     Has he or his law firm ever represented you?

(h)     What was the nature of the representation?

9.     Do you know anyone else in this firm?

10.     If you have answered the previous question yes, then name them.

11.     Does anyone know someone who now works at, or previously worked at, the Favelle Favco Plant at the Port of Harlingen?

12.     If you have answered this yes, then answer the following:

(a)     Who do you know?

(b)     How do you know them?

(c)     What do they do?

(d)     How long have they been there?

(e)     Have they ever discussed their employment with you?

(f)     Have they ever discussed this lawsuit with you?

13.     Do you know _____? (He will enter the name in later when he gets the list of witnesses)

14.     If you have answered the previous question yes, then answer the following.

(a)     How do you know him?

(b)     When did you meet him?

    (c)      The extent of your acquaintanceship?

    (d)      Have you been in business with him?

    (e)      Do you visit in his home?

    (f)      Do you know his family?

15.    Do you know what a crawler crane is?

16.    Have you ever worked with or around a crawler crane?

17.    Who was the manufacturer or what brand name did it have?

18.    What was your experience with the crawler crane?

19.    Have you ever tried to patent an invention or tried to obtain a copyright or a trademark?

20.    If you have answered the previous question yes, then answer the following:

    (a)      What did you try to patent, copyright, or trademark?

    (b)      When did you attempt this?

    (c)      How did you go about doing it?

    (d)      Did you hire a lawyer?

    (e)      Did you file an application with the United States Patent and Trademark Office?

    (f)      Was your patent, copyright, or trademark approved?

    (g)      If it was not approved, why was it disapproved?

21.    Do you know anyone else who has tried to obtain a patent, copyright or trademark?

22.    If your answer to that is yes, who was it and what was their relationship to you?

23.    What was their experience?

24.     Because of your own experience or the experience of the person you just mentioned, do you have any opinions in this case?

25.     A corporation is like a separate person – does anyone have any difficulty or problem with that concept?

26.     A corporation can only act through its officers, agents and employees – does anyone have any difficulty with that legal concept?

27.     An officer of a corporation owes the highest degree of loyalty etc. (get exact language from Chuck) – does anyone have any problem with that concept?

28.     Davis claims that he is the inventor of the crawler cranes at issue in this lawsuit and is the owner of a certain patent involving crawler cranes.  Favco USA claims that the engineering and design work necessary to build the crawler cranes at issue in this lawsuit was done by engineers hired and paid for by Favco USA and that Favco USA should be named as owner of any patent that resulted from this work – does anyone have a problem distinguishing between inventorship and ownership, that is, one person may have invented a product for which a patent was issued, but another person may be entitled to own the patent?

29.     Have you ever been in a lawsuit?

30.     If your answer to the above question is yes, then answer the following.

        (a)     Were you the plaintiff or the defendant?

        (b)     What type of case was it?

        (c)     Has a verdict been reached?

        (d)     Do you have any preconceived ideas about how this case should be tried?

31.  Is there any reason you cannot be fair and impartial?

32.  If you hired someone to do a specific job and you invested millions of dollars in the project, do you think it would be fair for the employee to take the project with him and leave you with nothing at all?

33.  If you hired someone to do a specific job, do you think it would be fair for the employee to use your money, equipment, facilities and use your work time to work for himself in a way that is not in your best interests and is harmful to you–that is to work for himself and against you?

34.  If you are an employer, do you expect your employees to be loyal to you?

35.  If you are an employee, do you believe you should be loyal to your employer?


_____
Attorney-in-Charge, Defendants
Gary Gurwitz
Bar # 08631000    SDOT # 1194

Charles C. Murray
Bar # 14719700    SDOT # 1214
Daniel G. Gurwitz
Bar # 00787608    SDOT # 16895
ATLAS & HALL, L.L.P.
818 Pecan - P.O. Drawer 3725
McAllen, Texas  78502
Telephone No. 956/682-5501
Fax No. 956/686-6109

Willem G. Schuurman/Bar # 17855200
Brian K. Buss/Bar # 00798089
VINSON & ELKINS, L.L.P.
600 Congress Avenue, Suite 2700

Austin, Texas 78701
Telephone No. 512/495-8400
Fax No. 512/495-8612

## CERTIFICATE OF SERVICE

This will certify that a true and correct copy of this document was served on all counsel of record by certified mail, return receipt requested, hand delivery and/or fax on the ____18th____ day of January, 2001, as follows:

Ernesto Gamez, Jr.
Victor Quintanilla
Law Offices of Ernesto Gamez, Jr., P.C.
777 E. Harrison Street
Brownsville, Texas 78520

_____
Gary Gurwitz

---

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| -vs.- | § | Civil Action No. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN BHD, | § | |
| FAVELLE FAVCO HOLDINGS SDN BHD, | § | |
| and MUHIBBAH ENGINEERING | § | |

PLAINTIFF'S PROPOSED JURY CHARGE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, DANIEL E. DAVIS, Plaintiff in the above-styled and numbered civil action, and submits to this Honorable Court the attached Proposed Jury Charge.

Respectively Submitted,
OF COUNSEL
**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
**777 E. HARRISON**
**BROWNSVILLE, TEXAS 78520**
**(956) 541-3820**
**(956) 541-7694**

**ERNESTO GAMEZ, JR.**
(Of Counsel)
**SBOT NO.** 07606600
**FED. ID NO.** 8645
**VICTOR QUINTANILLA**
(Of Counsel)
**SBOT NO.** 00786181
**FED. ID NO.** 16073

**OF COUNSEL FOR PLAINTIFF**
**DANIEL E. DAVIS**

1. Do you find that plaintiff has proven by a preponderance of the evidence that either of Claims 1 or 6 of the Davis Patent is infringed by defendants' mobile crane?

Claim 1:        _____Yes
                _____No

Claim 6:        _____Yes
                _____No

2. If you found infringement of at least one claim, what amount of damages, in dollars, do you find to be reasonable for defendants' infringement of the Davis patent?

$ _____

3. If you found infringement of at least one claim, do you find from a preponderance of the evidence that defendants willfully infringed the Davis' Patent?_
_____ Yes
_____ No

4. If you found infringement of at least one claim, what amount of damages, in dollars, do you find to be reasonable for defendants' willful infringement of the Davis patent?

$ _____

PATTERN JURY INSTRUCTIONS, (CIVIL CASES), #1 and #3 prepared by the Committee on Pattern Jury Instructions, District Judge Association, Fifth Circuit (1980).

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent via facsimile (956) 686-6109 to the Hon. Gary Gurwitz on this the 18th day of January, 2001.

VICTOR QUINTANILLA

(OF COUNSEL)

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
|     Plaintiff, | § | |
| | § | |
| -vs.- | § | Civil Action No. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN BHD, | § | |
| FAVELLE FAVCO HOLDINGS SDN BHD, | § | |
| and MUHIBBAH ENGINEERING, | § | |
|     Defendants. | § | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Respectively Submitted,
OF COUNSEL
**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
**777 E. HARRISON**
**BROWNSVILLE, TEXAS 78520**
**(956) 541-3820**
**(956) 541-7694**

**ERNESTO GAMEZ, JR.**(Of Counsel)
**SBOT NO.** 07606600
**FED. ID NO.** 8645

**VICTOR QUINTANILLA**(Of Counsel)
**SBOT NO.** 00786181
**FED. ID NO.** 16073

**OF COUNSEL FOR PLAINTIFF**
**DANIEL E. DAVIS**

# CONTENTS

1.  PRELIMINARY INSTRUCTIONS . . . . . . . . . . . . . . . . . . 1

2.  FIRST RECESS . . . . . . . . . . . . . . . . . . . . . . . 3

3.  STIPULATED TESTIMONY . . . . . . . . . . . . . . . . . . 4

4.  STIPULATIONS OF FACT . . . . . . . . . . . . . . . . . . 5

5.  JUDICIAL NOTICE . . . . . . . . . . . . . . . . . . . . 6

6.  DISCONTINUANCE AS TO SOME PARTIES . . . . . . . . . . . 7

7.  PUBLICITY DURING TRIAL . . . . . . . . . . . . . . . . 8

8.  BENCH CONFERENCES AND RECESSES . . . . . . . . . . . . 9

9.  DEMONSTRATIVE EVIDENCE . . . . . . . . . . . . . . . . 10

10.     WITNESS NOT CALLED . . . . . . . . . . . . . . . . 11

11.     SIMILAR ACTS-CAUTIONARY CHARGE . . . . . . . . . . 12

12.     DUTY TO DELIBERATE . . . . . . . . . . . . . . . . 13

13.     INSTRUCTIONS ON DELIBERATION . . . . . . . . . . . 14

14.     BIAS-CORPORATE PARTY INVOLVED . . . . . . . . . . 15

15.     CLEAR AND CONVINCING EVIDENCE . . . . . . . . . . 16

16.     LIMITING INSTRUCTION . . . . . . . . . . . . . . . 17

17.     IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS . . 18

18.     IMPEACHMENT BY WITNESSES' FELONY CONVICTION . . . . . 19

19.     CONSIDERATION OF THE EVIDENCE . . . . . . . . . . 20

20.     EXPERT WITNESSES . . . . . . . . . . . . . . . . . 21

21.     BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN . . . . 22

22.    USE OF NOTES TAKEN BY JURORS . . . . . . . . . .    23

23.    CAUTIONARY INSTRUCTION ON DAMAGES . . . . . . . .    24

24.    DEPOSITION TESTIMONY   . . . . . . . . . . . . .    25

25.    GENERAL INSTRUCTIONS FOR CHARGE  . . . . . . . .    26

26.    PATENT INFRINGEMENT . . . . . . . . . . . . . .    29

27.    DESCRIPTION OF A PATENT  . . . . . . . . . . . .    39

28.    BURDEN OF PROOF  . . . . . . . . . . . . . . . .    40

29.    INFRINGEMENT—INTRODUCTION . . . . . . . . . . .    42

30.    ELEMENTS OF DIRECT INFRINGEMENT  . . . . . . . .    43

31.    DIRECT INFRINGEMENT  . . . . . . . . . . . . . .    44

32.    DOCTRINE OF EQUIVALENTS  . . . . . . . . . . . .    49

33.    ACTIVE INDUCEMENT  . . . . . . . . . . . . . . .    50

34.    PATENT VALIDITY—INTRODUCTION  . . . . . . . . .    51

35.    PRIOR ART DEFINED  . . . . . . . . . . . . . . .    52

36.    NOVELTY—GENERALLY  . . . . . . . . . . . . . . .    53

37.    PRIOR PUBLIC USE   . . . . . . . . . . . . . . .    54

38.    ON SALE INVALIDITY . . . . . . . . . . . . . . .    55

39.    PRINTED PUBLICATION . . . . . . . . . . . . . .    56

40.    NON-OBVIOUSNESS  . . . . . . . . . . . . . . . .    57

41.    DIFFERENCES BETWEEN PRIOR ART AND INVENTION  . . . . .    58

42.    LEVEL OF ORDINARY SKILL  . . . . . . . . . . . .    59

43.    INEQUITABLE CONDUCT  . . . . . . . . . . . . . .    60

44.    DAMAGES  . . . . . . . . . . . . . . . . . . . .    62

45.   REASONABLE ROYALTY   . . . . . . . . . . . . . . .   63

46.   LOST PROFITS DEFINED   . . . . . . . . . . . . . .   66

47.   LOST PROFIT CONSIDERATIONS AND MEASURE OF DAMAGES   . .   67

48.   WILLFUL INFRINGEMENT   . . . . . . . . . . . . . .   69

49.   PUNITIVE AND SPECULATIVE DAMAGES NOT ALLOWED   . . . . .   71

50.   SPECIAL VERDICT FORM   . . . . . . . . . . . . . .   72

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| | § | |
| -vs.- | § | Civil Action No. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN BHD, | § | |
| FAVELLE FAVCO HOLDINGS SDN BHD, | § | |
| and MUHIBBAH ENGINEERING | § | |

PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

1. PRELIMINARY INSTRUCTIONS[1]

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case. As the jury you will decide the disputed questions of fact.

As the Judge, I will decide all questions of law and procedure. From time to time during the trial and at the end of the trial, I will instruct you on the rules of law that you must follow in making your decision.

Soon, the lawyers for each of the parties will make what is called an opening statement. Opening statements are intended to assist you in understanding the evidence. What the lawyers say is not evidence.

After the opening statements, the plaintiff will call witnesses and present evidence. Then, the defendant will have an opportunity to call witnesses and present evidence. After the parties' main case is completed, the plaintiff may be permitted to

---

[1] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §1.1 (1998).

present rebuttal evidence. After all the evidence is completed, the lawyers will again address you to make final arguments. Then I will instruct you on the applicable law. You will then retire to deliberate on a verdict.

Keep an open mind during the trial. Do not decide any fact until you have heard all of the evidence, the closing arguments, and my instructions.

Pay close attention to the testimony and evidence.

If you would like to take notes during the trial, you may do so. If you do take notes, be careful not to get so involved in note taking that you become distracted and miss part of the testimony. Your notes are to be used only as aids to your memory, and if your memory should later be different from your notes, you should rely on your memory and not on your notes. If you do not take notes, rely on your own independent memory of the testimony. Do not be unduly influenced by the notes of other jurors. A juror's notes are not entitled to any greater weight than the recollection of each juror concerning the testimony. Even though the court reporter is making stenographic notes of everything that is said, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits [may] [will] be available to you during your deliberations.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence. Do not discuss the case even with the other jurors until all of the jurors are in the jury room actually deliberating at the end of the case. If anyone should attempt to discuss this case or to approach you concerning the case, you should inform the Court immediately. Hold yourself completely apart from the people involved in the

case-the parties, the witnesses, the attorneys and persons associated with them. It is important not only that you be fair and impartial but that you also appear to be fair and impartial.

Do not make any independent investigation of any fact or matter in this case. You are to be guided solely by what you see and hear in this trial. Do not learn anything about the case from any other source.

During the trial, it may be necessary for me to confer with the lawyers out of your hearing or to conduct a part of the trial out of your presence. I will handle these matters as briefly and as conveniently for you as I can, but you should remember that they are a necessary part of any trial.

It is now time for the opening statements.

## 2. FIRST RECESS[2]

We are about to take our first break during the trial and I want to remind you of the instruction I gave you earlier. Until the trial is over, you are not to discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone approaches you and tries to talk to you about the case, do not tell your fellow jurors but advise me about it immediately. Do not read or listen to any news reports of the trial. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

If you need to speak with me about anything, simply give a signed note to the marshal to give to me.

I may not repeat these things to you before every break that we take, but keep them in mind throughout the trial.

---

[2] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.1 (1998).

## 3. STIPULATED TESTIMONY[3]

The parties have agreed or stipulated that [e.g., if _____ were called as a witness he would testify that _____].

The agreement is that that would be [_____'s] testimony if called as a witness.  You should consider that testimony in the same way as if it had 'been given here in court, and give it the value you believe it deserves.

---

[3] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.2 (1998).

# 4.STIPULATIONS OF FACT[4]

The parties have agreed, or stipulated, that [_____].  This means that both sides agree that this is a fact. You must therefore treat this fact as having been proved.

---

[4] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.3 (1998).

## 5. JUDICIAL NOTICE[5]

Although no evidence has been presented, I instruct you that you must accept as proved [state the facts].

---

[5] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.4 (1998).

## 6. DISCONTINUANCE AS TO SOME PARTIES[6]

_____ and _____ are no longer involved in this trial. As jurors, it is your duty to consider the issues between [among] (identify remaining parties) under the instructions I give you after you have heard all of the evidence [which might still concern _____ and _____ 's conduct in this dispute].

_____

[6] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.5 (1998).

## 7.PUBLICITY DURING TRIAL[7]

If there is publicity about this trial, you must ignore it. You must decide this case only from the evidence presented in the trial. Do not read anything or listen to any TV or radio programs about the case. [This instruction can be modified according to the extent of the case's notoriety].

---

[7] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.6 (1998).

## 8.BENCH CONFERENCES AND RECESSES[8]

At times during the trial it may be necessary for me to talk with the lawyers here at the bench out of your hearing, or by calling a recess. We meet because often during a trial something comes up that doesn't involve the jury.

---

[8] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.7 (1998).

## 9. DEMONSTRATIVE EVIDENCE[9]

Exhibit [describe] is an illustration. It is a party's [description or picture or model] to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.

---

[9] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.8 (1998).

## 10. WITNESS NOT CALLED[10]

(Name of Witness) _____ was available to both sides. Thus [the plaintiff] [the defendant] cannot complain that (Witness) was not called to testify, because
(Party) could have called (Witness).


[This instruction is appropriate only if the issue arises during closing argument or at some other time in trial.]

---

[10] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.9 (1998).

## 11.SIMILAR ACTS-CAUTIONARY CHARGE[11]

Evidence that an act was done at one time or on one occasion is not any evidence or proof whatever that the act was done in this case.

Then how may you consider evidence of similar acts?

You may consider evidence of similar acts for the limited purpose of showing __ )s [motive, opportunity, intent, knowledge, plan, identity, or absence of mistake or accident] which is at issue in this case.

Such evidence may not be considered for any other purpose whatsoever. You can't use it to reflect on _____ 's character.


[This is a charge pursuant to FRE 404B and should not be used if the evidence is otherwise admissible as circumstantial evidence of the act at issue in the case [prior or subsequent occurrence; see, e.g., McCormick on Evidence, Third Edition, See. 200, West Pub. Co., 1984; *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311 (8th Cir.1987) and the cases cited therein].]

---

[11] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.10 (1998).

## 12. DUTY TO DELIBERATE[12]

It is your sworn duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so. Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury. While you are discussing the case, do not hesitate to re-examine your own opinion and change your mind if you become convinced that you are wrong. However, do not give up your honest beliefs solely because the others think differently, or merely to finish the case.

Remember that in a very real way you are the judges-judges of the facts. Your only interest is to seek the truth from the evidence in the case.

---

[12] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.11 (1998).

## 13. INSTRUCTIONS ON DELIBERATION[13]

When you retire to the jury room. to deliberate, you may take with you [this charge and] the exhibits that the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that I have given you concerning your conduct during the trial. After you have reached your unanimous verdict, your Foreperson must fill in your answers to the written questions and sign and date the verdict form. [Return this charge together with your written answers to the questions.] Unless I direct you otherwise, do not reveal your answers until such time as you are discharged. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by meeting with you in the courtroom. I will always first show the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless I order you to do so.

You may now retire to the jury room to conduct your deliberations.

---

[13] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.12 (1998).

## 14. BIAS-CORPORATE PARTY INVOLVED[14]

Do not let bias, prejudice or sympathy play any part in your deliberations. A corporation and all other persons are equal before the law and must be treated as equals in a court of justice.

---

[14] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.13 (1998).

## 15. CLEAR AND CONVINCING EVIDENCE[15]

Clear and convincing evidence is evidence that produces in your mind a firm belief or conviction as to the matter at issue. This involves a greater degree of persuasion than is necessary to meet the preponderance of the evidence standard; however, proof to an absolute -certainty is not required.

---

[15] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.14 (1998).

## 16. LIMITING INSTRUCTION[16]

You will recall that during the course of this trial I instructed you that I admitted ' certain testimony [and certain exhibits] for a limited purpose and I instructed you that you may consider some testimony [and documents] as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. [Specific limiting instructions may be repeated as appropriate.]

---

[16] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.15 (1998).

## 17. IMPEACHMENT BY WITNESSES' INCONSISTENT STATEMENTS[17]

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely about some important fact, or, whether there was evidence that at some other time the witness said [or did] something, [or failed to say or do something] that was different from the testimony he gave at the trial!

This charge may be elaborated on in the following manner:

You should remember that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth. People may tend to forget some things or remember other things inaccurately. If a witness has made a misstatement, you must consider whether it was simply an innocent lapse of memory or an intentional falsehood, and that may depend upon whether it concerns an important fact or an unimportant detail.

---

[17] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.16 (1998).

## 18. IMPEACHMENT BY WITNESSES' FELONY CONVICTION[18]

In weighing the credibility of a witness, you may consider the fact that he has previously been convicted of a felony [a crime involving dishonesty or false statement]. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.

---

[18] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.17 (1998).

## 19. CONSIDERATION OF THE EVIDENCE[19]

You must consider only the evidence in this case. However, you may draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the testimony and evidence.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence you may consider. One is direct evidence-such as testimony of an eyewitness. The other is indirect or circumstantial evidence the proof of circumstances that tend to prove or disprove the existence or nonexistence of certain other facts. The law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

---

[19] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.18 (1998).

## 20. EXPERT WITNESSES[20]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field-he is called an expert witness-is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

---

[20] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.19 (1998).

## 21. BURDEN OF PROOF WHEN ONLY PLAINTIFF HAS BURDEN[21]

In this case, the plaintiff must prove every essential part of his claim by a preponderance of the evidence.

A preponderance of the evidence simply means evidence that persuades you that the plaintiffs claim is more likely true than not true.

In deciding whether any fact has been proven by a preponderance of the evidence, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

If the proof fails to establish any essential part of the plaintiff's claim by a preponderance of the evidence, you should find for the defendant as to that claim.

---

[21] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.20 (1998).

## 22. USE OF NOTES TAKEN BY JURORS[22]

Any notes that you have taken during this trial are only aids to your memory. If your memory differs from your notes, you should rely on your memory and not on the notes. The notes are not evidence. If you have not taken notes, you should rely on your independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.

---

[22] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.21 (1998).

## 23. CAUTIONARY INSTRUCTION ON DAMAGES[23]

You should not interpret the fact that I have given instructions about the plaintiff's damages as an indication in any way that I believe that the plaintiff should, or should not, win this case.

---

[23] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.22 (1998).

## 24. DEPOSITION TESTIMONY[24]

Certain testimony will now be presented to you through a deposition. A deposition is the sworn, recorded answers to questions asked a witness in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. Some time before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers will be read (shown) to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you insofar as possible in the same way] as if the witness had been present and had testified from the witness stand in court.

---

[24] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §2.23 (1998).

## 25.GENERAL INSTRUCTIONS FOR CHARGE[25]

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

[After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments.] [You have heard the closing arguments of the attorneys.] Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. [Do not decide who you think should win and then answer the questions accordingly.] Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater

weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

---

[25] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §3.1 (1998).

PROPOSED JURY INSTRUCTIONS

[You will recall that during the course of this trial I instructed you that certain testimony and certain exhibits were admitted into evidence for a limited purpose and I instructed you that you may consider some documents as evidence against one party but not against another. You may consider such evidence only for the specific limited purposes for which it was admitted. (Specific limiting instructions may be repeated as appropriate.) I

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

[The fact that a witness has previously been convicted of a felony, or a crime involving dishonesty or false statement, is also a factor you may consider in weighing the credibility of that witness. Such a conviction does not necessarily destroy the witness' credibility, but it is one of the circumstances you may take into account in determining the weight to give to his testimony.]

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence such as testimony of an eyewitness. The other is indirect or circumstantial evidence-the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field-he is called an expert witness-is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from evidence that the expert witness has

been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

[Any notes that you have taken during this trial are only aids to memory. If your memory should differ from your notes, then you should rely on your memory and not on the notes. The notes are not evidence. A juror who has not taken notes should rely on his or her independent recollection of the evidence and should not be unduly influenced by the notes of other jurors. Notes are not entitled to any greater weight than the recollection or impression of each juror about the testimony.]

When you retire to the jury room to deliberate on your verdict, you may take [this charge with you as well as] exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all of the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

---

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise. [You may now retire to the jury room to conduct your deliberations.]

## 26. PATENT INFRINGEMENT[26]

This is a patent infringement suit. The Davis claims that the defendants infringed a patent that Davis owned. Davis seeks damages for patent infringement from the time the defendants started selling his product or process to the present time.

Once a patent is issued, the owner of the patent has the right to exclude others from making, using or selling the patented invention throughout the United States for a term of twenty years from the date of filing. Thus, infringement of a patent occurs whenever any person, without the owner's permission, makes, uses or sells the patented invention anywhere in the United States, while the patent is in force.

---

[26] Authority: Fifth Circuit, Pattern Jury Instructions (Civil Cases), §9.1 (1998).

In prior editions, the model jury charge for patent infringement instructed jurors that specifications and drawings could be used to explain the meaning of words used in claims. This language has been deleted because the meaning and scope of claims are questions of law for the court. See *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir.1995) (en banc).

A party asserting infringement under the doctrine of equivalents must present evidence establishing what the function, way, and result of both the claimed device and the accused device are, and why those functions, ways, and results are substantially the same, to be entitled to have the issue presented to the jury. See *Lear Siegler, Inc. v. Sealy Mattress Co.*, 873 F.2d 1422, 1426-27 (Fed.Cir.1989).

In Hilton-Davis Chemical Co. v. Warner-Jenkinson Co., 62 F.3d 1512 (Fed.Cir.1995), the Federal Circuit recognized that the traditional function-way-result test is often adequate for resolving "equivalency" issues. However, the court also recognized that as "technology becomes more sophisticated and the innovative process more complex, the functional-way-result test may not invariably suffice to show the substantiality of differences." Accordingly, when the record presents other evidence of substantiality, the court should instruct the fact-finder to consider it. If there is no evidence of substantiality apart from function-way-result evidence, instructions on "known interchangeability," copying, and the development process are unnecessary. The precise wording of this instruction should therefore be revised by the court to reflect the evidence admitted at trial. The *Supreme Court* granted writs in this case. See - U.S. 116 S.Ct. 1014, 134 L.Ed.2d 95 (1996).

The meaning and scope of the claims are questions of law for the court, and the elements of each claim and any term definitions should be provided by the court. See Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed.Cir.1995) (en banc) cert. granted, 515 U.S. 1191, 116 S.Ct. 40, 132 L.Ed.2d 921 (1995).

The application for a patent must be in writing, under oath or written declaration, and often, as in the present case, must contain a drawing, and a specification containing a written description of the invention and of the manner and process of making and using it.  This is called the claims of the patent.  These claims define the exact limits or nature of the invention, and it is only the claims of the patent that can be infringed.  In this case, Davis contends that defendants infringed upon claim numbers 1 through 6 of United States Patent Number 6,003,252.  The claims are:

  1. A crane for freely suspending a load above the ground comprising:
    (a) a lower crawler adapted for use with an excavator, the lower excavator crawler comprising:
      (1) a first swivel at a position remote from the ground and
      (2) a continuous belt drive track for mobilizing the crane over the ground,
    (b) an upper body adapted for use with an excavator, the upper excavator body comprising:
      (1) a support member for providing structural integrity for the upper body.
      (2) a second swivel at a position proximate to the ground, and
      (3) a receptacle adapted to accept an excavator boom, the second swivel rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized.
    (c) a boom adapted to engage a crane body, the crane boom comprising:
      (1) a distal end having associated therewith at least one lifting device, and
      (2) a proximate end adapted to engage a crane body, and
    (d) an adaptor for engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle fixedly secured together such that the adaptor

defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable to the range of boom angles available to the boom connected to a crane body.

2. The crane as defined in claim 1 wherein the boom is telescoping.

3. The crane as defined in claim 1 further comprising a hoist in operative association with the crane boom.

4. The crane as defined in claim 1 further comprising a lifting device in operative association with the crane boom.

5. The crane as defined in claim 1 wherein the lifting device comprises an implement selected from the group of a sheave, a hook, an auxiliary hook, a main block, a whip line and a fast line.

6. A method for adapting an excavator for use as a crane, the method comprising the steps of:
    (a) providing an assembly having:
        a lower crawler adapted for use with the excavator, the lower crawler comprising:
        a first swivel a position remote from the ground and
        a continuous belt drive track for mobilizing the crane over the ground,
        an upper body adapted for use with the excavator, the upper body comprising:
        a support member for providing structural integrity for the upper body,
        a second swivel at a position proximate to the ground, and
            a receptacle adapted to accept an excavator boom, the second swivel adapted to be rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized;
            a boom adapted to engage a crane body, the boom comprising:
                a distal end having associated therewith at least one lifting device, and a

proximate end adapted to engage the crane body and,

an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle capable of being fixedly secured together such that, when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles available to the boom connected to a crane body.

(b) disengaging, if connected, the excavator boom from the receptacle.

(c) engaging an adaptor with the receptacle secured to the upper excavator body, the adaptor defining a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable tot he range of boom angles available to the boom connected to the crane body.

(d) engaging the crane boom with the connector, and

(e) articulating the crane boom with respect to the connector in such a manner as to provide an excavator crane apparatus having the same operating and stability characteristics as a crane.

Davis may prove his claim of infringement by demonstrating either that defendants product or process literally infringes a claim contained in the patent or that the accused product or process infringes one of the patent claims under the doctrine of equivalents.

A product literally infringes a claim of a patent when it contains each and every element of the invention as defined by the particular patent claim. In other words, a product literally infringes a patent claim when the same combination of elements found in the claim can also be found in the product. In making your determination, you must therefore consider each claim separately.

---

PROPOSED JURY INSTRUCTIONS

If you find that it has been proven by a preponderance of the evidence that the accused product contains every element of a particular claim in the plaintiff's patent, the plaintiff has literally infringed that claim. On the other hand, if you find that Davis has not proven by a preponderance of the evidence that the accused product contains every element of a particular claim, the patent claim has not been literally infringed.

Even though each and every element of a particular claim does not appear in defendants product or process, the patent claim may still have been infringed, if you determine that the defendants' product or process is substantially equivalent to the patent claim. This is called infringement under the doctrine of equivalents. Under the doctrine, defendants' product or process infringes a patent claim if it performs substantially the same function in substantially the same way to produce substantially the same result as the elements recited in the claim. On the other hand, defendants' product or process does not infringe a patent claim under the doctrine of equivalents if it is so far changed in principle that it performs the same function in a substantially different way as the elements recited in the claim. In other words, for there to be an infringement under the doctrine of equivalents, you must determine that Davis has proven by a preponderance of the evidence not only that the defendants' product or process performs substantially the same function to achieve substantially the same result as the plaintiffs invention, but also the presence, in the accused device, of every claim element or its substantial equivalent. You should view the evidence from the perspective of a person of ordinary skill in the art. The test is objective, that is, whether a person of ordinary skill in the art would have considered the differences insubstantial.

A factor to consider is whether there is evidence of known interchangeability of the accused and claimed elements. If a person with ordinary skill in the art would have known about the interchangeability of the accused and claimed elements, you may infer that such a person would have considered the change insubstantial.

You may also consider evidence of copying. If you find that the defendant has attempted to copy the patented invention, you may infer that the defendant has made a fair copy with only insubstantial changes. On the other hand, if you find that the defendant was attempting to "design around" the patent, that is, that the defendant used the patent to design a new product that does not infringe, you may infer that the defendant has designed substantial changes into the new product to avoid infringement. However, an inference is just that, an inference. An inference is not conclusive, and it is for you to decide the strength of the inference based on the strength of the evidence supporting it. Moreover, in reaching a conclusion on the issue of infringement under the doctrine of equivalents, you must weigh any inference together with the other evidence of the substantiality of the differences.

I instruct you that a person who has developed his product or process through independent research has not "designed around" the patent because an independent developer without knowledge could not have set out to make his product different from the claimed device. By the same token, if the accused product was developed through independent research or the inventor had no knowledge of the patent, you should find that the defendant did not copy the patent since he could not have set out to make his product similar to the claimed device. However, independent development or the absence of

bad faith on the part of the defendant is not excuse for infringement. Those who make only insubstantial changes to a patented product or process are liable for infringement regardless of their awareness of the patent and its disclosure.

In your deliberations on the issue of infringement, you are instructed not to interpret or construe the meaning or the scope of the claims. Your decision should be based solely on a comparison of the defendants' product or process with Davis' patent claims as they are hereinafter defined. Claims 1 through 6 of plaintiff's patent is composed of the following elements:

1.   A crane for freely suspending a load above the ground comprising:
    (a)   a lower crawler adapted for use with an excavator, the lower excavator crawler comprising:
        (1)   a first swivel at a position remote from the ground and
        (2)   a continuous belt drive track for mobilizing the crane over the ground,
    (b)   an upper body adapted for use with an excavator, the upper excavator body comprising:
        (1)   a support member for providing structural integrity for the upper body.
        (2)   a second swivel at a position proximate to the ground, and
        (3)   a receptacle adapted to accept an excavator boom, the second swivel rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized.
    (c)   a boom adapted to engage a crane body, the crane boom comprising:
        (1)   a distal end having associated therewith at least one lifting device, and
        (2)   a proximate end adapted to engage a crane body, and
    (d)   an adaptor for engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle

fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable to the range of boom angles available to the boom connected to a crane body.

2.   The crane as defined in claim 1 wherein the boom is telescoping.

3.   The crane as defined in claim 1 further comprising a hoist in operative association with the crane boom.

4.   The crane as defined in claim 1 further comprising a lifting device in operative association with the crane boom.

5.   The crane as defined in claim 1 wherein the lifting device comprises an implement selected from the group of a sheave, a hook, an auxiliary hook, a main block, a whip line and a fast line.

6.   A method for adapting an excavator for use as a crane, the method comprising the steps of:

(a)   providing an assembly having:

a lower crawler adapted for use with the excavator, the lower crawler comprising:

a first swivel a position remote from the ground and

a continuous belt drive track for mobilizing the crane over the ground,

an upper body adapted for use with the excavator, the upper body comprising:

a support member for providing structural integrity for the upper body,

a second swivel at a position proximate to the ground, and

a receptacle adapted to accept an excavator boom, the second swivel adapted to be rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized;

a boom adapted to engage a crane body, the boom comprising:

a distal end having associated therewith

---

at least one lifting device, and a proximate end adapted to engage the crane body and,

an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle capable of being fixedly secured together such that, when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles available to the boom connected to a crane body.

(b) disengaging, if connected, the excavator boom from the receptacle.

(c) engaging an adaptor with the receptacle secured to the upper excavator body, the adaptor defining a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable tot he range of boom angles available to the boom connected to the crane body.

(d) engaging the crane boom with the connector, and

(e) articulating the crane boom with respect to the connector in such a manner as to provide an excavator crane apparatus having the same operating and stability characteristics as a crane.

In your deliberations, you should consider the issue of literal infringement first. If you find that the defendants product or process does not literally infringe a particular claim, you should then consider whether the accused product infringes that claim under the doctrine of equivalents. On the other hand, if you determine that defendants product or process literally infringes a particular claim, you should then move on to the next claim allegedly infringed by the accused product without considering the issue of infringement under the doctrine of equivalents. If you find that the plaintiff has failed to prove by a preponderance of the evidence that the defendant infringed any of the claims listed

above, either literally or under the doctrine of equivalents, you must find for defendants. However, if you find that the Davis has established by a preponderance of the evidence that defendants infringed one or more claims, you must then determine whether the patent is a valid patent.

A patent that the United States Patent Office issues is presumed to be valid. Each claim of a patent is presumed valid independently of the validity of the other claims. Defendants must establish with clear and convincing evidence that Davis' patent or any claim in the patent is not valid. Because the law presumes that the patent is valid, defendants must come forward with something more than a preponderance of the evidence in order to overcome that presumption. However, this presumption of validity extends only to the record before the examiners in the Patent and Trademark Office in Washington. That record is called the file wrapper or prosecution history. Where the file wrapper discloses that the examiner considered certain information or documents during the prosecution of the application for the patent, there is a presumption that the examiner found patentable differences between the information or the documents he considered and the invention claimed in the plaintiffs patent application. However, there is no presumption of patentable differences from information or documents in the file wrapper that you find the examiner did not consider. But as to any information or documents which you find in the file wrapper that the examiner did not consider, and which you find discloses an invention more like the one claimed in the plaintiffs patent than the inventions disclosed in the information which the examiner did consider, no such presumption exists, and you may take such failure into account in deciding whether there is a preponderance of the evidence which overcome or outweighs the

presumption concerning the validity of the plaintiffs patent.

A person is not entitled to a patent if

1. The claimed invention was publicly known or used by others in the United States, or patented or described in a printed publication in the United States or in a foreign country, before the applicant allegedly invented it; or

2. The claimed Invention was patented or described in a printed publication in the United States or a foreign country or was in public use or on sale in the United States, more than one year prior to the date of the application for patent in the United States; or

3. The applicant has abandoned the claimed invention; or

4. The applicant or a representative of the applicant filed a foreign patent application on the claimed invention twelve months before the United States application was filed and the foreign patent was issued before the United States application was filed; or

5. The claimed invention was described in a United States patent granted to someone else before the applicant invented it; or

6. The applicant did not personally invent the subject matter sought to be patented; or

7. Before the applicant's invention, the claimed invention was made in the United States by another who had not abandoned, suppressed or concealed it; or

8. The differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious, at the time the claimed invention was made, to a person having ordinary skill in the art to which

said subject matter pertains.

Prior art includes all of the knowledge, acts, descriptions and patents which I have just described to you, such as public knowledge and use by others in this country, patents, and descriptions in printed publications in the United States or in a foreign country. However, the patentability of an invention does not depend on how the invention was made.

If one prior art reference completely embodies the same product as any claim of the plaintiffs patent, the product recited by that claim is said to be anticipated by the prior art and that the claim of the patent is therefore invalid for want of novelty. Similarly, if you find that the differences between the product recited in any claim in the plaintiffs patent and what is taught by the prior art would have been such that the whole idea would have been obvious to a person skilled in the field at the time the claimed invention was made, then the product is said to be "obvious" from the prior art and the claim of the patent is invalid.

If you find that defendant has infringed any of the claims of the Davis patent and that those claims are valid, you must then consider the issue of damages to be awarded to Davis.

If you find there has been an infringement, the owner of the patent is entitled to an award of damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer.

This means that the minimum damages to which the plaintiff is entitled is what you determine, from a preponderance of the evidence, would have been a reasonable royalty for a license to the defendant to use the claimed invention during the period of the

infringement. A reasonable royalty is the amount which the owner of a patent would accept, assuming a willingness on the owner's part to license its use, from a person who wants to obtain a license to use the claimed invention, neither of whom is acting under financial distress or other compulsion to enter into the agreement.

You must calculate damages from the moment of infringement, if all of the products manufactured and sold by the plaintiff or by persons acting under the plaintiff were properly marked, that is, the products contained the number of the patent from the time when the plaintiff obtained the patent. If not, you should calculate the damages from the time the defendant was first notified of the infringement. Filing of an action for infringement is such notice. If the products were not marked, with their patent number, then you should not award any damages for the period of time before the defendant had notice of the infringement.

However, if the defendant had actual knowledge of the plaintiffs patent and, in spite of such knowledge, willfully and wantonly made, used or sold the patented product without the permission of the plaintiff and with a disregard for the rights of the plaintiff, then you may find that the defendant is guilty of willful infringement. If you find that there was a willful infringement by the defendant then you may treble—that is, multiply by three—the amount of the damages you award.

---

PROPOSED JURY INSTRUCTIONS

## 27. DESCRIPTION OF A PATENT[27]

A patent is a document that consists of a specification; a claim or claims, which are part of the specification; a drawing; and an oath supplied by the applicant. A drawing is required when it is necessary to understand the subject matter sought to be patented. The oath requires the applicant to swear that he or she is the original and first and true inventor of that for which the applicant seeks the patent.

The specification is essentially a description of the invention. The law requires that the specification of a patent give a written description of the invention that is clear, concise and exact, so that a person skilled in the art to which the patent pertains could make and use the invention.

The specification must conclude with one or more claims. The claims are numbered paragraphs which define, in words, the inventor's rights by marking the limits or boundaries of the invention claimed to have been invented. The claims of the patent must define the particular thing claimed to have been invented with precision so that the public will know what that thing is, and so be able to avoid infringing the patent.

The claims are also important because only the claim of a patent can be infringed. Each of the claims must be considered individually. It takes infringement of only one claim of a patent for the patent to be infringed.

---

[27] Authority:  35 U.S.C. §§ 111-113, 115;  Federal Circuit: W.L. Gore & Associates, Inc. v. Garlock, Inc., 721 F.2d 1540 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984);  Fifth Circuit: Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539 (5th Cir. 1970), *cert. denied*, 401 U.S. 909 (1971);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

CVISPDF – www.fastio.com

## 28. BURDEN OF PROOF[28]

There will be two burden of proof standards by which you must weigh the evidence in this case: preponderance of the evidence and clear and convincing evidence.

What does a "preponderance of the evidence' mean? To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. A preponderance of the evidence means the greater weight of the evidence. It refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents. In determining whether a claim has been proved by a preponderance of the evidence, you may consider the relevant testimony of all witnesses, regardless of who may have called them, and all the relevant exhibits received in evidence, regardless of who may have produced them. The plaintiff has the burden of establishing infringement of the claims of its patent by a preponderance of the evidence.

If you rind that the credible evidence on a given issue is evenly divided between the parties—that it is equally probable that one side is right as it is that the other side is right—then you must decide that issue against the party having this burden of proof That is because the party bearing this burden must prove more than simple equality of evidence-he or she must prove the element at issue by a preponderance of the evidence. On the other hand, the party with this burden of proof need prove no more than a

---

[28] Authority: 35 U.S.C. § 282; Federal Circuit: Symbol Technologies, Inc. v. Opticon, Inc., 935 F.2d 1569 (Fed. Cir. 1991); Richardson v. Suzuki Motor Co., 868 F.2d 1226, 1238 (Fed. Cir.), *cert. denied*, 493 U.S. 853 (1989); SmithKline Diagnostics, Inc. v. Helena Laboratories Corp., 859 F.2d 878 (Fed. Cir. 1988); Shatterproof Glass Corp. v. Libbey-Owens Ford Co., 758 F.2d 613 (Fed. *Cir.),* *cert. dismissed,* 474 U.S. 976 (1985);  Adapted from the charge of Judge Sofaer in Sharon v. Time, Inc., 83 Civ. 4660 (S.D.N.Y. 1985).

[28] Authority: 35 U.S.C. § 271.

---

preponderance. So long as you find that the scales tip, however slightly, in favor of the party with this burden of proofthat what the party claims is more likely true than not true-then that element will have been proved by a preponderance of the evidence.

What does "clear and convincing evidence" mean? Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind, not only that the proposition at issue is probable, but also that it is highly probable. It is enough if the party with the burden of proof establishes its claim beyond any "substantial doubt"; the party does not have to dispel every "reasonable doubt." Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, where you need believe only that the party's claim is more likely true than not true. On the other hand, clear and convincing proof is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt. The alleged infringer has the burden of establishing that the patent was invalid and/or unenforceable by clear and convincing evidence.

## 29. INFRINGEMENT—INTRODUCTION[29]

Davis claims that the the defendants have infringed his patent.

Any person or business entity which makes, uses or sells, without the owner's permission, any product, apparatus or method legally protected by at least one claim of a patent within the United States before the patent expires, infringes the patent.

There are three ways to infringe a patent. One may:

(1)   directly infringe a patent;

(2)   induce others to infringe a patent, in which case the inducer is liable for infringement in the same way as a direct infringer; or

(3)   contribute to the infringement of a patent by another by supplying a component specially designed for the invention, in which case both the direct infringer and contributing infringer will be liable for patent infringement.

Davis alleges that defendants directly infringed and further induced infringement..

---

[29] Authority: 35 U.S.C. § 271; Third Circuit: Ziggity Systems, Inc. v. Val Watering Systems, 769 F. Supp. 752, 795 (E.D. Pa. 1990); Sixth Circuit: Schnadig Corp. v. Gaines Manufacturing Co., 620 F.2d 1166, 1168 n.3 (6th Cir. 1980); Ninth Circuit: Wilden Pump & Engineering Co. v. Pressed & Welded Products Co., 655 F.2d 984, 989 (9th Cir. 1981).

## 30. ELEMENTS OF DIRECT INFRINGEMENT[30]

In order to establish that the defendant is liable for direct infringement, Davis must prove by a preponderance of the evidence each of the following elements:

First, that Davis is the owner of the patent;

Second, that the defendant infringed one or more of the claims of the patent by making, using or selling the invention within the United States before the patent expired; and,

Third, that the defendant acted without Davis' consent.

Defendant may infringe the Davis patent without knowing that its acts infringe the patent. Good faith is not a defense to a claim of direct infringement.

---

[30] Authority: 35 U.S.C. § 271; Third Circuit: Ziggity Systems, Inc. v. Val Watering Systems, 769 F. Supp. 752, 795 (E.D. Pa. 1990); Sixth Circuit: Schnadig Corp. v. Gaines Manufacturing Co., 620 F.2d 1166, 1168 n.3 (6th Cir. 1980); Ninth Circuit: Wilden Pump & Engineering Co. v. Pressed & Welded Products Co., 655 F.2d 984, 989 (9th Cir. 1981).

## 31. DIRECT INFRINGEMENT[31]

The second element Davis must prove by a preponderance of evidence in order to establish that defendant is liable for direct infringement is that defendant infringed one or more of the claims of the patent by making, using or selling the invention within the United States before the patent expired.

To determine whether there is an infringement, you must compare the allegedly infringing devices with the scope of the patent claims.

The scope of the patent claims is a question of law for the court. Davis alleges that defendant has infringed claims of the patent. I instruct you that the patent claims alleged to have been infringed in this case are claims 1 through 6 as follow:

    1.    A crane for freely suspending a load above the ground comprising:

        (a)  a lower crawler adapted for use with an excavator, the lower excavator crawler comprising:

            (1)  a first swivel at a position remote from the ground and

            (2)  a continuous belt drive track for mobilizing the crane over the ground,

        (b)  an upper body adapted for use with an excavator, the upper excavator body comprising:

            (1)  a support member for providing structural integrity for the upper body.

            (2)  a second swivel at a position proximate to the ground, and

---

[31] Authority: 35 U.S.C. § 271(a); Federal Circuit: Read Corp. v. Portec, Inc., 970 F.2d 816, 822 n.2 (Fed. Cir. 1992); Nestier Corp. v. Menasha Corp., Lewisystems Div., 739 F.2d 1576, 1579 (Fed. Cir. 1984), cert. denied, 470 U.S. 1053 (1985); W.L. Gore & Associates, Inc. v. Garlock, Inc., 721 F.2d 1540, 1559 (Fed. Cir. 1983), cert. denied, 469 U.S. 851 (1984); Fifth Circuit: Sterner Lighting, Inc. v. Allied Electrical Supply, Inc., 431 F.2d 539 (5th Cir. 1970), cert. denied, 401 U.S. 909(1971); Adapted from the charge of Judge Stanton in Telcor, Inc. v. Recoton Corp., 89 Civ. 6032 (LLS) (S.D.N.Y. 1989), and the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457 (JSM) (S.D.N.Y. 1991).

(3) a receptacle adapted to accept an excavator
boom, the second swivel rotatably engaged with
the first swivel of the lower excavator
crawler for providing rotation of the upper
excavator body upon the lower crawler when the
lower crawler is stationary or mobilized.

(c) a boom adapted to engage a crane body, the crane
boom comprising:

(1) a distal end having associated therewith at
least one lifting device, and

(2) a proximate end adapted to engage a crane
body, and

(d) an adaptor for engaging the receptacle of the
excavator upper body as if the adaptor was the
excavator boom, the adaptor and the receptacle
fixedly secured together such that the adaptor
defines a connector for receiving the crane boom in
the same manner as the crane boom would be accepted
by a crane body for providing a range of boom
angles comparable to the range of boom angles
available to the boom connected to a crane body.

2. The crane as defined in claim 1 wherein the boom is
telescoping.

3. The crane as defined in claim 1 further comprising a
hoist in operative association with the crane boom.

4. The crane as defined in claim 1 further comprising a
lifting device in operative association with the crane boom.

5. The crane as defined in claim 1 wherein the lifting
device comprises an implement selected from the group of a sheave,
a hook, an auxiliary hook, a main block, a whip line and a fast
line.

6. A method for adapting an excavator for use as a crane,
the method comprising the steps of:

(a) providing an assembly having:

a lower crawler adapted for use with the excavator,
the lower crawler comprising:

a first swivel a position remote from the ground
and

a continuous belt drive track for mobilizing the
crane over the ground,

an upper body adapted for use with the excavator,

the upper body comprising:

a support member for providing structural integrity for the upper body,

a second swivel at a position proximate to the ground, and

a receptacle adapted to accept an excavator boom, the second swivel adapted to be rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized;

a boom adapted to engage a crane body, the boom comprising:

a distal end having associated therewith at least one lifting device, and a proximate end adapted to engage the crane body and,

an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle capable of being fixedly secured together such that, when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles available to the boom connected to a crane body.

(b) disengaging, if connected, the excavator boom from the receptacle.

(c) engaging an adaptor with the receptacle secured to the upper excavator body, the adaptor defining a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable tot he range of boom angles available to the boom connected to the crane body.

(d) engaging the crane boom with the connector, and

(e) articulating the crane boom with respect to the connector in such a manner as to provide an excavator crane apparatus having the same operating and stability characteristics as a crane.

I, as a matter of law, have interpreted the patent to mean the

following:

1. A crane for freely suspending a load above the ground comprising:

    (a) a lower crawler adapted for use with an excavator, the lower excavator crawler comprising:

        (1) a first swivel at a position remote from the ground and

        (2) a continuous belt drive track for mobilizing the crane over the ground,

    (b) an upper body adapted for use with an excavator, the upper excavator body comprising:

        (1) a support member for providing structural integrity for the upper body.

        (2) a second swivel at a position proximate to the ground, and

        (3) a receptacle adapted to accept an excavator boom, the second swivel rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized.

    (c) a boom adapted to engage a crane body, the crane boom comprising:

        (1) a distal end having associated therewith at least one lifting device, and

        (2) a proximate end adapted to engage a crane body, and

    (d) an adaptor for engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable to the range of boom angles available to the boom connected to a crane body.

2. The crane as defined in claim 1 wherein the boom is telescoping.

3. The crane as defined in claim 1 further comprising a hoist in operative association with the crane boom.

4. The crane as defined in claim 1 further comprising a

---

lifting device in operative association with the crane boom.

5.  The crane as defined in claim 1 wherein the lifting device comprises an implement selected from the group of a sheave, a hook, an auxiliary hook, a main block, a whip line and a fast line.

6.  A method for adapting an excavator for use as a crane, the method comprising the steps of:

(a)  providing an assembly having:

a lower crawler adapted for use with the excavator, the lower crawler comprising:

a first swivel a position remote from the ground and

a continuous belt drive track for mobilizing the crane over the ground,

an upper body adapted for use with the excavator, the upper body comprising:

a support member for providing structural integrity for the upper body,

a second swivel at a position proximate to the ground, and

a receptacle adapted to accept an excavator boom, the second swivel adapted to be rotatably engaged with the first swivel of the lower excavator crawler for providing rotation of the upper excavator body upon the lower crawler when the lower crawler is stationary or mobilized;

a boom adapted to engage a crane body, the boom comprising:

a distal end having associated therewith at least one lifting device, and a proximate end adapted to engage the crane body and,

an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom, the adaptor and the receptacle capable of being fixedly secured together such that, when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles available to the boom connected to a

crane body.
   (b) disengaging, if connected, the excavator boom from the receptacle.
   (c) engaging an adaptor with the receptacle secured to the upper excavator body, the adaptor defining a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body for providing a range of boom angles comparable tot he range of boom angles available to the boom connected to the crane body.
   (d) engaging the crane boom with the connector, and
   (e) articulating the crane boom with respect to the connector in such a manner as to provide an excavator crane apparatus having the same operating and stability characteristics as a crane.

Your task is to determine, as a question of fact whether the allegedly infringing devices or process infringe the patent claims, as I have defined their scope.

In this case, Davis contends that the patented claim was directly infringed. A patent is directly infringed if the allegedly infringing device literally infringes one of the patent claims. There are two ways in which a patent can be directly infringed. First, a patented claim may be literally infringed. Second, a claim may be infringed under what is called the "doctrine of equivalents."

In order for you to find that defendants product or process literally infringed one of Davis' patent claims, you must find that each feature of the patent claim is found in defendants product or process. In other words, a patent claim of Davis is literally infringed if defendants product or process includes each and every element, limitation and feature of the patent claim. If defendants product or process does not have any single element, limitation or feature recited in Davis' patent claim, defendant does not literally infringe that claim. Similarly, if there are differences between the elements of an asserted claim and the allegedly

infringing product, there can be no literal infringement of that claim.

You must determine literal infringement with respect to each asserted patent claim individually. Not all the claims of a patent have to be infringed before a patent is infringed. In order to prove patent infringement, Davis need only establish by a preponderance of the evidence that one claim is infringed.

You should not compare defendants product or process with Davis' commercial products which are the commercial embodiments of the inventions claimed by plaintiff in the patents in this lawsuit, but rather with the claims in the patents themselves, because it is only the claims that can be infringed.

If you find that defendants product does not literally infringe, you must then determine whether it infringes under the doctrine of equivalents.

# 32. DOCTRINE OF EQUIVALENTS[32]

Even if the patented claim was not literally infringed, Davis may satisfy the second element of direct infringement under the alternative theory called the "doctrine of equivalents."

Under the doctrine of equivalents, you may find that defendants product or process infringes a patented claim if Davis establishes by a preponderance of the evidence that defendants product or process contains elements identical or substantially equivalent to each element of the patented invention.

In order to make such a finding under the doctrine of equivalents, you must find that there are not substantial differences between the patented and the alleged infringing product. In this regard, you may consider whether defendants product or process performs (1) substantially the same function (2) in substantially the same way (3) to produce substantially the same result when compared to the patented product, even though they may differ in name, shape or form.

An accused product does not infringe under the doctrine of equivalents if it performs the function and achieves the result in substantially different way than the claimed invention.

The doctrine of equivalents does not involve the application of formula and is not an absolute to be considered in a vacuum. Rather, the question of whether one component of the allegedly infringing device is equivalent to an element in the patented claim is a factual matter. It requires you to consider the context of the

---

[32] Authority:  United States Supreme Court: Warner-Jenkinson Co. v. Hilton Davis Chemical Co., 117 S. Ct. 1040,137 L. Ed. 2d 146 (1997); Graver Tank & Manufacturing Co. v. Linde Air Products Co., 339 U.S. 605, 70 S. Ct. 854, 90 L. Ed. 1097 (1950);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

entire claim. Your answer will depend upon the drawings and written description, the patent application history, the prior art and all the circumstances of this case.

## 33. ACTIVE INDUCEMENT[33]

Davis contends that defendant is liable because defendant actively induced infringement of the patent claim by others.

I instruct you that whoever actively induces infringement of a patent is liable as an infringer. In order to find that defendant is liable for inducing infringement, Davis must prove by a preponderance of the evidence each of the following elements:

First, the accused product infringed one or more of plaintiff's claims;

Second, that defendant actively induced the infringement; that is, that defendant knowingly induced the infringement. In other words, it is Davis' burden to prove by a preponderance of the evidence that defendant intended that its actions would induce actual infringement by others.

---

[33] Authority: 35 U.S.C. § 271 (b); Federal Circuit: Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660 (Fed. Cir.), *cert. denied,* 488 U.S. 968 (1988); Ninth Circuit: Ninth Circuit Model Civil Jury Instruction 16.04.04; Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

## 34.PATENT VALIDITY—INTRODUCTION[34]

Defendant claims that the patent is invalid. As I previously instructed you, the patent is presumed to be valid. It is defendants' burden to establish invalidity of the patent by clear and convincing evidence.

Defendant claims that the patent is invalid because …

Defendant claims that the patent should not have been granted because it was lacking one of the elements to be a valid patent. The three elements to a valid patent are:

(1)  novelty;

(2)  utility; and

(3)  non-obviousness.

To prove invalidity, the defendant must show by clear and convincing evidence that one of these three elements is not present.

Defendant claims that the patent is unenforceable because the patent holder engaged in inequitable conduct by perpetrating fraud on the Patent Office.

If you find by clear and convincing evidence that the patent lacks novelty or utility or non-obviousness, or the patent holder engaged in inequitable conduct, then you should find the patent invalid and render a verdict for the defendant.

---

[34] Authority:  United States Supreme Court: Graham v. John Deere Co., 383 U.S. 1, 86 S. Ct. 684, 15 L. Ed. 2d 545 (1966);  Federal Circuit: Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561 (Fed. Cir.), cert. denied, 481 U.S. 1052 (1987).

## 35. PRIOR ART DEFINED[35]

Prior art means technology and information that was publicly available before the date of the invention. Prior art includes any of the following items which was received into evidence during the trial:

1.  Patents that issued more than one year before the filing date of the invention or before the date of the invention;

2.  Publications having a date more than one year before the filing date of the patent or before the date of the invention;

3.  U.S. patents that have a filing date prior to the date of the invention of the subject matter in the patent;

4.  Anything in the public use or on sale in the U.S. more than one year before the filing date of the patent in suit;

5.  Anything that was publicly known or used by others in the country before the date of invention of the claimed subject matter in the patent; and

6.  Anything that was made or built in this country by another person before the date of invention of the claimed subject matter in the patent where the thing made or built was not abandoned, suppressed or controlled.

---

[35] Authority:  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

## 36.NOVELTY—GENERALLY[36]

Defendant argues that the patented claim is invalid because it lacks novelty because the patented claim was anticipated by prior art. In order to prevail on this defense, defendant must prove anticipation by clear and convincing evidence.

In order for a potential claim to have been anticipated, you must rind that the earlier invention completely embodied the same process or product as the patented claim and that all of the elements recited in the patented claim were previously found in exactly the same situation and united in the same way to perform the identical function. Put another way, each and every element of the patented claim must have been either inherent or expressly disclosed in a single prior invention or in a single prior art reference.

You may not combine two or more items of prior art to make out an anticipation.

If these requirements have not been met, then the patented claims are not invalid by reason of anticipation.

By contrast, if these requirements have been met, you should next consider whether the defendant has satisfied its burden of proving how the patented claims were anticipated.

---

[36] Authority:  Federal Circuit: Scripps Clinic & Research Foundation v. Genentech, Inc., 927 F.2d 1565 (Fed. Cir. 1991); Richardson v. Suzuki Motor Co., 868 F.2d 1226 (Fed. Cir. 1989); Constant v. Advanced Micro Devices, Inc., 848 F.2d 1560 (Fed. Cir.), *cert. denied,* 488 U.S. 892 (1988);  Fourth Circuit: Tights, Inc. v. Acme-McCrary Corp., 541 F.2d 1047 (4th Cir.), *cert. denied,* 97 S. Ct. 493 (1976);  Seventh Circuit: Roberts v. Sears, Roebuck & Co., 723 F.2d 1324 (7th Cir. 1983) (en banc);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

## 37. PRIOR PUBLIC USE[37]

Defendant contends that there was a prior public use and therefore the patent is invalid for lack of novelty.

I instruct you that a patent is not valid if the invention was in public use in this country or patented or described in a printed publication in this or a foreign country more than one year prior to the patent application filing date.

Public use is any use of the invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor. An invention is publicly used when it is available to a member of the public, even a single person, whether or not the public could reasonably learn the invention by analyzing or inspecting the thing used. A single public use is sufficient to render a patent invalid.

However, not every use is a public use within the meaning of the statute. A good faith use for experimental purposes is not a public use. During an experimental period, the inventor may freely use his device for the purpose of testing the machine or in order to bring the invention to perfection. The statutory period will not begin to run during this experimental period.

In determining whether a prior use was experimental, you may consider all of the circumstances surrounding the prior use, including the length of the alleged test period, whether payment was made for the product, whether there was a secrecy agreement, whether progress reports or other test results were kept, whether

---

[37] Authority:  35 U.S.C. § 102(b);  Federal Circuit: Allied Colloids, Inc. v. American Cyanamid Co., 64 F.3d 1570 (Fed. Cir. 1995); Sinskey v. Pharmacia Ophthalmics, Inc., 982 F.2d 494 (Fed. Cir. 1992), *cert. denied, 113 S.* Ct. 2346 (1993); RCA Corp. v. Data General Corp., 887 F.2d 1056 (Fed. Cir. 1989); Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

someone other than the inventor conducted the experiments, and the overall number of tests performed. An invention cannot remain in this experimental status at the same time that it is being offered for sale to customers. A sale or offer to sell the product terminates its experimental status.

Secret use by a third party is also not an invalidating public use. Thus, if the particular product is used by a third party under circumstances of secrecy, that does not invalidate the patent.

## 38. ON SALE INVALIDITY[38]

Defendant claims that the invention was "on sale" more than one year before the filing of the patented claims and therefore the patent claim is invalid for lack of novelty.

I instruct you that a patent is invalid if the invention claimed in the patent was on sale in the United States more than one year prior to the application filing date.

In order to satisfy its burden of proof, defendant must establish by clear and convincing evidence each of the following requirements:

1.  The complete invention named in the patent must have been embodied in or obvious in the invention previously offered for sale;

2.  The invention must have been sufficiently tested to verify that it was operable and commercially marketable; and

3.  The sale must have been primarily for profit rather for experimental purposes.

The law does not require that a sale was consummated, only that there has been activity in attempting to sell the patented product. An offer of sale, solicitation of orders, promotional activities or advertisements can constitute being "on sale," even though no actual sale takes place. The essential element is an attempt to obtain commercial benefit.

In order to be "on sale," the invention must have been developed to the point of demonstrating that it will work for its intended purpose. Thus, if the inventor had merely a conception or

---

[38] Authority:  35 U.S.C. § 102(b);  Federal Circuit: King Instrument Corp. v. Otari, 767 F.2d 853 (Fed. Cir. 1985);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

was working toward development of that conception, then there was no "invention" which could have been placed "on sale." The invention need not, however, be reduced to practice or fully perfected or in commercial production. It is not necessary that there be a stock or inventory available for sale.

All of the circumstances surrounding alleged "offers to sell," including the stage of development of the invention, must be considered.

## 39. PRINTED PUBLICATION[39]

Defendant claims that the patent previously appeared in a printed publication and therefore is invalid for lack of novelty.

I instruct you that if you find that the defendant has proved by clear and convincing evidence that the invention was described in a prior publication in this country or in a foreign country before it was invented by the patentee or more than one year prior to the filing date of his application, then the patent is invalid.

There are three components to the prior publication that the defendant must prove.

First, that the publication occurred before the plaintiff invented the invention (or more than one year before plaintiff filed his application for the patent claim of the invention).

Second, that the prior publication was at least reasonably available to at least some segment of the public. In this respect, it is not necessary that the Prior publication be available to every member of the public. It must be available, without restriction, to that segment of the public most likely to avail itself of the publication's contents.

Finally, the prior publication must make a meaningful disclosure of the invention. To be meaningful, the disclosure must enable a person of ordinary skill in this art to understand the invention. The disclosure must be enabling and meaningful. In determining whether the disclosure is complete, enabling and meaningful, you should take into account what would have been within the knowledge of a person of ordinary skill in the art to make, construct and practice the invention.

---

[39] Authority:  35 U.S.C. §§ 102(a), (b).

---

# 40.NON-OBVIOUSNESS[40]

Defendant contends that the patent is invalid because the invention was "obvious."

I instruct you that a patent is invalid if the defendant establishes by clear and convincing evidence that the subject matter as a whole would have been obvious to a person of ordinary skill in the pertinent art at the time the invention was made.

The question of whether the invention was obvious ultimately is a question of law for me to decide. However, I will decide that question based upon whether you find the following facts to have been proved by clear and convincing evidence:

1.    What was the scope and content of the prior art at the time the product was invented?

2.    What the differences are between each claim of the patent and the prior art?

3.    What was the level of ordinary skill in the prior art at the time the invention was made?

4.    Whether there are secondary considerations that negate defendant's claim of obviousness?

---

[40] Authority:  United States Supreme Court: Graham v. John Deere Co., 383 U.S. 1, 86 S. Ct. 684, 18 L. Ed. 2d 545 (1966);  Federal Circuit: B.F. Goodrich Co. v. Aircraft Braking Systems Corp., 72 F.3d 1577 (Fed. Cir. 1996); Ryko Manufacturing Co. v. NuStar, Inc., 950 F.2d 714 (Fed. Cir. 1991); Continental Can Co. U.S.A., Inc. v. Monsanto Co., 948 F.2d 1264 (Fed. Cir. 1991); Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561 (Fed. Cir.), *cert. denied,* 481 U.S. 1052 (1987).

## 41. DIFFERENCES BETWEEN PRIOR ART AND INVENTION[41]

The next factual issue you must consider is what are the differences between the prior art and the invention.

The defendant has the burden to show that the prior art taken as a whole suggests the obviousness of making the combination that is in the form of the patented invention. In determining what, if any, differences there are between the prior art and the patented invention, you should consider the prior art as it appeared to a person of ordinary skill in the art at the time. You cannot use hindsight to reconstruct any of the prior art devices or materials, nor can you assemble the invention from parts made up of individual elements of the prior art devices, unless it would have been obvious to do so at the time to one of ordinary skill in the art.

---

[41] Authority:  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

## 42. LEVEL OF ORDINARY SKILL[42]

I have referred in these instructions to a person of ordinary skill in the art. What do I mean by such a person? The person of ordinary skill is a hypothetical person who is presumed to be one who is aware of all pertinent prior art. The skill of the actual inventor is irrelevant, because inventors may possess something which sets them apart from the workers of ordinary skill in the art.

Factors to be considered in determining what is the level of ordinary skill in the pertinent art include all of the evidence submitted by the parties that show:

1.  the education level of the inventor;

2.  the types of problems encountered in the art;

3.  the prior art patents and publications;

4.  the activities of others;

5.  prior art solutions to the problems encountered by the inventor;

6.  the rapidity of innovation in the field;

7.  the sophistication of the technology; and

8.  the education of others working in the field.

---

[42] Authority:  Federal Circuit: U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554 (Fed. Cir. 1997);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

## 43. INEQUITABLE CONDUCT[43]

Defendant contends that Davis engaged in inequitable conduct before the Patent and Trademark Office.

The question of whether Davis engaged in inequitable conduct is a question of law for me to decide. However, I will decide that question based upon whether you find that the following facts have been proved by clear and convincing evidence:

(1)   that Davis made a misrepresentation to the PatentOffice;

(2)   that any such misrepresentation was material;

(3)   the degree to which you find that the plaintiff acted with intent.

It is for you to decide based upon the evidence or lack of evidence whether the defendant made the statement or opinion claimed to be false. Misrepresentation can be in the form of either a false statement of a material fact or the omission of a material fact from a statement that was made.

A fact is material when there is a substantial likelihood that a reasonable examiner would consider it important in deciding whether to allow the application as a patent.

The degrees of intent go from none at all to simple negligence, gross negligence, recklessness, or deliberate deception. Direct proof of an intent to deceive is almost never available. It would be a rare case where it could be shown that a person wrote or stated that he committed an act with such an intent. Such direct proof is not required. The question of intent,

---

[43] Authority:  Federal Circuit: General Electro Music Corp. v. Samick Music Corp., 19 F.3d 1405 (Fed. Cir. 1994); N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148 (Fed. Cir. 1987); American Hoist & Derrick Co. v. Sowa & Sons, Inc., 725 F.2d 1350 (Fed. Cir. 1984).

though subjective, may be established by circumstantial evidence, based upon a person's outward manifestations, his words, his conduct, his acts, and all the surrounding circumstances disclosed by the evidence, together with the rational and logical inferences that may be drawn from them. If you find that the plaintiff knowingly submit. ted a false or misleading statement which was material to the consideration of the patent application, you may, but are not required to, conclude that the statement was part of a deliberate scheme to deceive the Patent Office.

Based on your findings of whether the misrepresentation was made, its materiality and the degree of intent of the plaintiff, the court will make the ultimate determination of whether the plaintiff engaged in inequitable conduct as a matter of law.

## 44.DAMAGES

If you find that Defendant has infringed any of the claims of Davis' patent and that these claims are valid, than you should consider the amount of money Davis should be awarded as damages.

In this respect, it is Davis' burden of proving by a preponderance of the evidence the amount of damages caused by the infringer.

The fact that I will now turn to the issue of how you should measure damages should not be taken by you to mean that the Court believes that there was an infringement or that the patent is valid. There are issues for you to resolve consistent with the instructions I have given you. I am instructing you on damages so that you will have guidance should you decide that the patentee is entitled to recovery.

## 45. REASONABLE ROYALTY[44]

The owner of a valid patent which has been infringed is entitled to recover enough money so that he will be compensated for the infringement, but in no event less than a reasonable royalty for the use which the infringer made of the invention.

A royalty is the amount of money an assignee (or licensee) is required to pay to a patent owner for each article or process the assignee made (or used or sold).

A reasonable royalty is the amount of money a willing patent owner and a willing, prospective assignee would have agreed upon at the time of the infringement for an assignment (or a license) to make the invention.

It is important to focus on the time period when the infringer began his infringing activities in order to determine what royalty these two parties would have agreed on, based on the facts that existed at that time. You are not to be influenced by things that happened after that date, for example, whether the infringer made a greater or lesser profit than he anticipated.

The infringer's actual profit may or may not bear on the reasonableness of an award based on a reasonable royalty. The real issue is what the parties' expectations would have been had they entered an arm's length negotiation for royalties at the time of the infringing activity.

In determining the reasonable royalty, you should consider all

---

[44] Authority:  Federal Circuit: Maxwell v. J. Baker, Inc., 86 F.3d 1098 (Fed. Cir. 1996), cert. *denied, 117 S.* Ct. 1244 (1997);  Second Circuit: Georgia-Pacific Corp. v. United States Plywood Corp., 258 F.2d 124 (2nd Cir.), *cert. denied,* 358 U.S. 884 (1958);  Sixth Circuit: Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978);  Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

facts known and available to the parties at the time the infringement began, when the royalty would have been negotiated. The following are among the kinds of factors that might have influenced the royalty:

    (1)   whether the patent holder had an established royalty for the particular invention or had terms tending to prove an established royalty for the patent; in the absence of such licensing history by the patent holder, any royalty arrangements that were generally used and recognized in the particular industry at that time;

    (2)   the commercial relationship between patent owner and the licensee, such as whether they were competitors in the same territory and the same line of business, or whether they are inventor and promoter;

    (3)   the established profitability of the product made under the patent; its commercial success; and its current popularity;

    (4)   whether the patent owner had an established policy and marketing program of either granting licenses or retaining the patented invention as its exclusive right or whether the patent holder had a policy of granting licenses under special conditions designed to preserve his monopoly;

    (5)   The size of the market actually and reasonably anticipated at the time the infringement began;

    (6)   the duration of the patent and the term of the license;

    (7)   the rates paid by the licensee for the use of other patents comparable to the patent in suit;

(8)   the nature and scope of the license, as
      exclusive or nonexclusive; or as
      restricted in terms of territory or with
      respect to when the manufactured product
      may be sold;

(9)   the effect of selling the patented
      specialty in promoting sales of other
      products of the licensee, the existing
      value of the invention to the licensor as
      a generator of sales of his nonpatented
      items, and the extent of such sales;

(10)  the utility and advantages of the patented
      property over the old modes and patented
      device, if any, that had been used for
      working out similar results;

(11)  the nature of the patented invention; the
      character of the commercial embodiment of
      it as owned and produced by the licensor;
      and the benefits to those who have used
      the invention;

(12)  the extent to which the infringer used the
      invention, and any evidence probative of
      the value of that use;

(13)  the portion of the profit of the selling
      price that may be customary in the
      particular business or in comparable
      businesses to allow for the use of the
      invention or analogous inventions;

(14)  the portion of the realized profit that
      should be credited to the invention as
      distinguished from non-patented elements,
      the manufacturing process, business risks,
      or significant features or improvements
      added by the infringer;

(15)  the opinion testimony of qualified experts
      and of the patent holder, such testimony
      to be weighed and considered by you in
      accordance with the instructions that I
      have previously given you; and

(16) any other factors, which, in your mind,
     would have increased or decreased the
     royalty the infringer would have been
     willing to pay and the patented owner
     would have been willing to accept, both
     acting as normally prudent business people
     at the time.

## 46. LOST PROFITS DEFINED[45]

Davis has argued that he should be awarded the amount of profits he lost because of the alleged infringement.

Lost profits may be in the form of diverted sales, eroded prices or increased expenses. In this respect, it is Davis' burden to establish by a reasonable probability that the infringement caused his lost profits. In order to satisfy this burden, you must find that Davis would have made the sales that the infringer made, charged higher prices, and/or incurred lower expenses "but for" the infringement. In other words, had the infringer not infringed, what would the plaintiff have made.

---

[45] Authority:  Federal Circuit: Fonar Corp. v. General Electric Co., 107 F.3d 1543, 1553 (Fed. Cir. 1997); Hebert v. Lisle Corp., 99 F.3d 1109 (Fed. Cir. 1996); Standard Havens Products, Inc. v. Gencor Industries, Inc., 953 F.2d 1360 (Fed. Cir. 1991), cert. denied, 113 S. Ct. 60 (1992); Kaufman Co. v. Lantech, Inc., 926 F.2d 1136 (Fed. Cir. 1991).

## 47. LOST PROFIT CONSIDERATIONS AND MEASURE OF DAMAGES[46]

In determining lost profits, you may consider the following:

(1)   the demand for the patented product in the marketplace;

(2)   the absence of acceptable non-infringing substitutes;

(3)   the manufacturing and marketing capability to exploit the demand for the patented inventions; and

(4)   the amount of profit the patent holder would have made but for the defendant infringer's sales.

In demonstrating the absence of an acceptable non-infringing substitute, Davis does not have to negate every possibility that a purchaser might not have bought its product instead of the infringing one, or might have foregone the purchase altogether. Instead, Davis must show that there was a reasonable probability that the sales of his patented product would have been made but for the infringement.

In this regard, I instruct you that not all competing devices are "acceptable" substitutes. In order to be an "acceptable" substitute, a device must not have an excessively higher price or possess characteristics significantly different from the patented product. Thus, if the patented product is sought after because it possesses unique features or is available at special price savings,

---

[46] Authority: Federal Circuit: Kearns v. Chrysler Corp., 32 F.3d 1541 (Fed. Cir. 1994); Minnesota Mining & Manufacturing Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559 (Fed. Cir. 1992); Standard Havens Products, Inc. v. Gencor Industries, Inc., 953 F.2d 1360 (Fed. Cir. 1991), cert. denied, 113 S. Ct. 60 (1992); Kaufman Co. v. Lantech, Inc., 926 F.2d 1136 (Fed. Cir. 1991); Sixth Circuit: Panduit Corp. v. Stahlin Bros. Fibre Works, Inc., 575 F.2d 1152 (6th Cir. 1978); Adapted from the charge of Judge Martin in Construction Technology, Inc. v. Lockformer Co., 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

a competing device cannot be said to be an "acceptable substitute." By contrast, if you find that the competing device would have been purchased despite the existence of a difference in products, it would be an "acceptable substitute," and Davis would not have met its burden of proving lost profits.

If you find that Davis has sustained its burden of proving that it is entitled to lost profits, you should turn next to the measure of those damages. In that respect, you should consider the amount or number of lost sales, the gross receipts that Davis would have obtained from the lost sales had there been no infringement, the cost of sales to be deducted from the gross receipts and, then, the profit on the lost sales.

However, if you find that Davis would not have made the sales which defendant in fact made, you may not award lost profits. Instead, you must award an amount based on a reasonable royalty which will be explained next.

## 48. WILLFUL INFRINGEMENT[47]

Davis contends that defendants committed the act of infringement willfully. The determination of whether defendants' infringement was willful will not affect the amount of damages, if any, that you will assess. The purpose of your determination is to aid the Court in making decisions that it will thereafter be called upon to make.

You must determine whether Davis has proven willful infringement by clear and convincing evidence. Remember that this is a higher degree of persuasion than that necessary to meet the preponderance of the evidence standard.

Willful infringement is established where it is shown that:

(1)    defendant was aware of plaintiffs patent; and

(2)    had no reasonable basis for reaching a good faith conclusion that his making, using or selling his device avoided infringement of the patent.

Willful infringement may also be established where it is shown that defendant did not exercise due care to determine whether or not he was infringing Davis' patent once he had actual notice of the patent.

One factor to consider with respect to defendants good faith and due care is whether defendants obtained and followed competent legal advice from counsel after having actual notice of the patent and before beginning or continuing the allegedly infringing activities. Competent legal advice means an opinion by counsel

---

[47] Authority:  Federal Circuit: *Hoechst Celanese Corp. v. BP Chemicals Ltd.*, 78 F.3d 1575, 1583 (Fed. Cir.), *cert. denied,* 117 S. Ct. 275 (1996);  Adapted from the charge of Judge Martin in *Construction Technology, Inc. v. Lockformer Co.*, 86 Civ. 0457, 88 Civ. 0742 (S.D.N.Y. 1991).

based on a reasonable examination of the facts and law relating to the validity and infringement issues, consistent with the standards and practices generally followed by competent lawyers. If you find that counsel provided competent legal advice, you should then consider whether defendant actually relied upon and followed counsel's opinion.

Another factor in determining whether Davis has proven willful infringement is whether defendants copied Davis' product or process as covered by the patent claims, or whether they, as a competitor of Davis, tried to match Davis' product or process with their own product or process with a functionally competitive structure, but without copying it, even if infringement is ultimately found.

No factor by itself requires a finding of willful or non-willful infringement. In considering whether defendant's infringement was willful, you should consider the totality of the circumstances and all of the evidence demonstrating defendant's intentions.

## 49. PUNITIVE AND SPECULATIVE DAMAGES NOT ALLOWED

You must not award plaintiff more than damages adequate to compensate for the infringement. You must not include an additional amount for the purpose of punishing defendant or setting an example. In considering damages, you must not consider plaintiff's allegations of willfulness, or take into account any evidence relating to those allegations. The consideration of willfulness, if any, is entirely separate from the question of any damages you are asked to determine. Damages should not be increased because you rind willfulness, nor decreased because you do not find willfulness. Nor should you include any amount in your damages award for interest, attorneys' fees or other expenses.

You may not include damages that are speculative, only possible, or that are based on guesswork.

## 50. SPECIAL VERDICT FORM[48]

A form of special verdict has been prepared for your convenience to guide you in your deliberations. You will take this form to the jury room.

The answer to each question must be the unanimous answer of the jury. The foreperson will write the unanimous answer of the jury in space provided opposite each question.

*    *    *

---

[48] Authority:  Federal Circuit: Richardson v. Suzuki Motor Co., 868 F.2d 1226 (Fed. Cir. 1989); Panduit Corp. v. Dennison Manufacturing Co., 810 F.2d 1561 (Fed. Cir.), *cert. denied*, 481 U.S. 1052 (1987);  Adapted from the charge of Judge Wood in Alpex Computer Corp. v. Nintendo Co., 86 Civ. 1749 (KMW) (S.D.N.Y. 1986), *aff'd in part and rev'd in part on other grounds*, 102 F.3d 1214 (Fed. Cir. 1996), *cert. denied*, 117 S. Ct. 2480 (1997).

---

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was sent
via facsimile (956) 686-6109 to the Hon. Gary Gurwitz on this the
17th day of January, 2001.

VICTOR QUINTANILLA
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES, U.S.A. INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN | § | |
| BHD, | § | |

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

"The 252 patent" means U.S. patent number 6003252.
"Favco USA" means Favelle Favco Cranes USA, Inc.
"Favco Malaysia" means Favelle Favco Cranes (M) SDN.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from the evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

-2-

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

An officer and/or director of a corporation owes a fiduciary duty to that corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963). Fiduciary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. *Id.* The responsibility of a corporate fiduciary includes the dedication of his uncorrupted judgment for the sole benefit of the corporation. *Id.*

Unless there is an agreement to the contrary, an individual owing a corporation a fiduciary duty is obligated to assign to the corporation all rights to any invention which was developed while the fiduciary duty was owed and which relates to the business of the corporation. *Davis v. Alwac Int'l, Inc.*, 369 S.W.2d 797, 802 (Tex. Civ. App. – Beaumont 1963, writ ref'd n.r.e.). In other words, Daniel Davis is obligated to assign the 252 patent to Favco USA unless Favco USA contracted that Daniel Davis would be the owner of such patent. *Id.*

Daniel Davis claims that the shareholder's agreement he signed constitutes a contract with Favco USA that Daniel Davis would be the owner of this patent. The defendants contend that the shareholder's agreement is merely a draft and was not intended to be a contract. They also contend that Favco USA is not a party to this draft and that the draft does not state that Daniel Davis is the owner of the patent.

A contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty. To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract. This is referred to as the "meeting of the minds." There must be a meeting of the minds; there can be no contract if only one party intends to be bound.

-3-

O'Malley, Grenig and Lee, 3 Federal Jury Practice and Instructions § 126.01 (5th Ed., 2000).

To form a valid contract, the parties must have the same understanding of the subject matter of the contract and all its essential terms. *Smulcer v. Rogers*, 256 S.W.2d 129 (Tex. Civ. App. – Fort Worth 1953, writ ref'd n.r.e.). To be enforceable, a contract must be reasonably definite and certain. Failure to agree on or include an essential term renders a contract unenforcable. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

The following circumstances which may be helpful in determining whether a contract has been concluded: the extent to which express agreement has been reached on all the terms to be included; whether the contract is of a type usually put in writing; whether it needs a formal writing of its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance during the negotiations. *Foreca, S.A. v. GRD Development Co., Inc.*, 758 S.W.2d 744, 746 fn.2 (Tex. 1988). In order to form a contract, there must be an offer and an acceptance. *Farley v. Clark Equipment Company*, 484 S.W.2d 142, 147 (Tex. Civ. App. - Amarillo, 1972 writ ref'd n.r.e.). The acceptance must be communicated to the party that made the offer, *Mann v. Risinger*, 423 S.W.2d 626, 633 (Tex. Civ. App. – Beaumont 1968, no writ), and the acceptance must occur within a reasonable time after the offer. *Moore v. Dodge*, 603 S.W.2d 236, 239 (Tex. Civ. App. - El Paso 1980, writ ref'd, n.r.e.)

In this case the shareholder's agreement that Daniel Davis contends constitutes a contract is signed by Daniel Davis, but not by Favco Malaysia, although a signature block for Favco Malaysia was provided. Nor is this document signed by Favco USA. Under these circumstances, you may conclude that the shareholder's agreement is a contract only if the acts, words or conduct of Favco USA or Favco Malaysia reasonably give rise to the inference that Favco USA or Favco Malaysia intended to assent to this document in the absence of their signature. On the other hand, if you conclude that Favco USA or Favco Malaysia intended this document to be a draft, it cannot be a contract. *Simmons and Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 419 (Tex. 1955).

INTERROGATORY NO. 1:

Do you find from a preponderance of the evidence that the shareholder's agreement constituted a contract between Daniel Davis and Favco USA?

Answer "Yes" or "No."

ANSWER:_____

-4-

INTERROGATORY NO. 2:

Do you find from a preponderance of the evidence that the shareholder's agreement constituted a contract between Daniel Davis and Favco Malaysia?

Answer "Yes" or "No."

ANSWER:_____

Employees may claim an employee's inventive work where the employer specifically hires or directs the employee to exercise inventive facilities. Even if hired for a general purpose, an employee with a specific task of developing a device or process must yield ownership of the invention to his or her employer. This type of evidence shows that there was an implied-in-fact contract that any inventions developed by the employee should be assigned to the employer and belong to the employer.

*Kinzbach Tool Vo. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (Tex. 1942). *International Banker's Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576-577 (Tex. 1963). *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). *Davis v. Alwac Int'l, Inc.*, 369 S.W.2d 797, 802 (Tex. Civ. App. - Beaumont 1963, writ ref'd n.r.e.). *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407-408 (Fed. Cir. 1996), *cert. denied*, 117 S.Ct. 513 (1996).

INTERROGATORY NO. 3:

Do you find by a preponderance of the evidence that:

A.    One of the duties of Daniel Davis as president and managing director of Favco USA was the specific purpose of developing a line of crawler cranes including any cranes covered by U.S. Patent No. 6,003,252 and any related patents or applications?

Answer "Yes" or "No."

ANSWER:_____

Daniel Davis claims that Favco USA infringed a patent that Daniel Davis owned. Favco USA claims that it did not infringe the patent.

A patent is a document that consists of a specification, a claim or claims which are part of the specification, a drawing and an oath supplied by the applicant.  The specification must conclude with one or more claims. Claims are numbered paragraphs which define in words the inventor's rights by marking the limits or boundaries of the invention claimed to have been invented.  The claims of the patent must define the

particular thing claimed to have been invented with precision so that the public will know what the thing is and be able to avoid infringing the patent. These claims define the exact limits or nature of the invention, and it is only the claims of the patent that can be infringed.

The scope of the patent claims is a question of law for the Court. In this case, Daniel Davis contends that Favco USA infringed claim nos._____ of the 252 patent. I instruct you that the patent claims alleged to have been infringed in this case are **[set forth the scope of the claims alleged to have been infringed.]**

Infringement of a patent occurs when a person, without the owner's permission, makes, uses or sells the patented invention anywhere in the United States while the patent is in force. To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims as I have defined them for you.

In order for you to find that Favco USA's product literally infringes a claim of Daniel Davis' patent, you must find that each and every element of the patented claim is found in defendant's product. In other words, a product literally infringes a patented claim when the same combination of elements found in the claim can also be found in the product. In making your determination, you must consider each claim separately.

Daniel Davis need not prove Favco USA had the intent to literally infringe the patent or that it knew that its acts infringed the patent. Good faith is not a defense to a claim of patent infringement.

If you find that Daniel Davis has failed to prove by a preponderance of the evidence that Favco USA infringed any of the claims listed above you must find for Favco USA. Pattern Jury Instructions Fifth Circuit 1999 West Group §9.

INTERROGATORY NO. 4:

Do you find that the 9 ton crane manufactured by Favco USA:

A.    freely suspends a load above the ground?

No:_____        Yes:_____

B.    has a lower crawler adapted for use with an excavator?

No:_____        Yes:_____

C.    has a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

-6-

D.    has a support member for providing structural integrity for the upper body?

No:_____        Yes:_____

E.    has a receptacle adapted to accept an excavator boom?

No:_____        Yes:_____

F.    has an adaptor for engaging the receptacle of the excavator upper body as if it the adaptor were the receptacle boom?

No:_____        Yes:_____

G.    has the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____        Yes:_____

## INTERROGATORY NO. 5:

Do you find that in the method of constructing the 9 ton crane by Favco USA:

A.    a method was employed in which an excavator was adapted for use as a crane?

No:_____        Yes:_____

B.    an assembly was provided having a lower crawler adapted for use with the excavator?

No:_____        Yes:_____

C.    an assembly was provided having a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

D.    an assembly was provided having an upper body adapted for use with the excavator?

No:_____        Yes:_____

-7-

E.     that the upper body has a support member for providing structural integrity for the upper body?

No:_____          Yes:_____

F.     an assembly was provided having a receptacle adapted to accept an excavator boom?

No:_____          Yes:_____

G.     an assembly was provided having an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom?

No:_____          Yes:_____

H.     an assembly was provided in which the adaptor and the receptacle were capable of being fixedly secured together such that when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____          Yes:_____

I.     a method was employed in which the excavator boom, if connected, was disengaged from the receptacle?

No:_____          Yes:_____

J.     a method was employed in which an adaptor was engaged with the receptacle secured to the upper excavator body?

No:_____          Yes:_____

K.     a method was employed in which the adaptor defined a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____          Yes:_____

INTERROGATORY NO. 6:

Do you find that the 28 ton crane manufactured by Favco USA:

-8-

A.  freely suspends a load above the ground?

No:_____        Yes:_____

B.  has a lower crawler adapted for use with an excavator?

No:_____        Yes:_____

C.  has a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

D.  has a support member for providing structural integrity for the upper body?

No:_____        Yes:_____

E.  has a receptacle adapted to accept an excavator boom?

No:_____        Yes:_____

F.  has an adaptor for engaging the receptacle of the excavator upper body as if it the adaptor were the receptacle boom?

No:_____        Yes:_____

G.  has the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____        Yes:_____

## INTERROGATORY NO. 7:

Do you find that in the method of constructing the 28 ton crane by Favco USA:

A.  a method was employed in which an excavator was adapted for use as a crane?

No:_____        Yes:_____

B.  an assembly was provided having a lower crawler adapted for use with the excavator?

No:_____        Yes:_____

-9-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL E. DAVIS                          §
                                         §
VS.                                      §               CIVIL ACTION NO. B-00-003
                                         §
FAVELLE FAVCO CRANES, U.S.A. INC.,       §
FAVELLE FAVCO CRANES (M) SDN             §
BHD,                                     §

## CHARGE OF THE COURT

MEMBERS OF THE JURY:

You have heard the evidence in this case. I will now instruct you on the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them. Do not decide who you think should win and then answer the questions accordingly. Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence. By this is meant the greater weight and degree of credible evidence before you. In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so. In determining whether any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

"The 252 patent" means U.S. patent number 6003252.
"Favco USA" means Favelle Favco Cranes USA, Inc.
"Favco Malaysia" means Favelle Favco Cranes (M) SDN.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence – such as testimony of an eyewitness. The other is indirect or circumstantial evidence – the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness – is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer from the evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of his income.

-2-

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

When you retire to the jury room to deliberate on your verdict, you may take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all the instructions that the Court has given you about/on your conduct during the trial. After you have reached your unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

An officer and/or director of a corporation owes a fiduciary duty to that corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963). Fiduciary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. *Id*. The responsibility of a corporate fiduciary includes the dedication of his uncorrupted judgment for the sole benefit of the corporation. *Id*.

Unless there is an agreement to the contrary, an individual owing a corporation a fiduciary duty is obligated to assign to the corporation all rights to any invention which was developed while the fiduciary duty was owed and which relates to the business of the corporation. *Davis v. Alwac Int'l, Inc.*, 369 S.W.2d 797, 802 (Tex. Civ. App. – Beaumont 1963, writ ref'd n.r.e.). In other words, Daniel Davis is obligated to assign the 252 patent to Favco USA unless Favco USA contracted that Daniel Davis would be the owner of such patent. *Id*.

Daniel Davis claims that the shareholder's agreement he signed constitutes a contract with Favco USA that Daniel Davis would be the owner of this patent. The defendants contend that the shareholder's agreement is merely a draft and was not intended to be a contract. They also contend that Favco USA is not a party to this draft and that the draft does not state that Daniel Davis is the owner of the patent.

A contract is a promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes a duty. To be binding, a contract must include a manifestation of mutual assent to the terms and conditions of the contract. This is referred to as the "meeting of the minds." There must be a meeting of the minds; there can be no contract if only one party intends to be bound.

-3-

O'Malley, Grenig and Lee, 3 Federal Jury Practice and Instructions § 126.01 (5th Ed., 2000).

To form a valid contract, the parties must have the same understanding of the subject matter of the contract and all its essential terms. *Smulcer v. Rogers*, 256 S.W.2d 129 (Tex. Civ. App. – Fort Worth 1953, writ ref'd n.r.e.). To be enforceable, a contract must be reasonably definite and certain. Failure to agree on or include an essential term renders a contract unenforcable. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992).

The following circumstances which may be helpful in determining whether a contract has been concluded: the extent to which express agreement has been reached on all the terms to be included; whether the contract is of a type usually put in writing; whether it needs a formal writing of its full expression; whether it has few or many details; whether the amount involved is large or small; whether it is a common or unusual contract; whether a standard form of contract is widely used in similar transactions; and whether either party takes any action in preparation for performance during the negotiations. *Foreca, S.A. v. GRD Development Co., Inc.*, 758 S.W.2d 744, 746 fn.2 (Tex. 1988). In order to form a contract, there must be an offer and an acceptance. *Farley v. Clark Equipment Company*, 484 S.W.2d 142, 147 (Tex. Civ. App. - Amarillo, 1972 writ ref'd n.r.e.). The acceptance must be communicated to the party that made the offer, *Mann v. Risinger*, 423 S.W.2d 626, 633 (Tex. Civ. App. – Beaumont 1968, no writ), and the acceptance must occur within a reasonable time after the offer. *Moore v. Dodge*, 603 S.W.2d 236, 239 (Tex. Civ. App. - El Paso 1980, writ ref'd, n.r.e.)

In this case the shareholder's agreement that Daniel Davis contends constitutes a contract is signed by Daniel Davis, but not by Favco Malaysia, although a signature block for Favco Malaysia was provided. Nor is this document signed by Favco USA. Under these circumstances, you may conclude that the shareholder's agreement is a contract only if the acts, words or conduct of Favco USA or Favco Malaysia reasonably give rise to the inference that Favco USA or Favco Malaysia intended to assent to this document in the absence of their signature. On the other hand, if you conclude that Favco USA or Favco Malaysia intended this document to be a draft, it cannot be a contract. *Simmons and Simmons Constr. Co. v. Rea*, 286 S.W.2d 415, 419 (Tex. 1955).

INTERROGATORY NO. 1:

Do you find from a preponderance of the evidence that the shareholder's agreement constituted a contract between Daniel Davis and Favco USA?

Answer "Yes" or "No."

ANSWER:_____

-4-

INTERROGATORY NO. 2:

Do you find from a preponderance of the evidence that the shareholder's agreement constituted a contract between Daniel Davis and Favco Malaysia?

Answer "Yes" or "No."

ANSWER:_____

Employees may claim an employee's inventive work where the employer specifically hires or directs the employee to exercise inventive facilities. Even if hired for a general purpose, an employee with a specific task of developing a device or process must yield ownership of the invention to his or her employer. This type of evidence shows that there was an implied-in-fact contract that any inventions developed by the employee should be assigned to the employer and belong to the employer.

*Kinzbach Tool Vo. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 513 (Tex. 1942). *International Banker's Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576-577 (Tex. 1963). *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex. 1980). *Davis v. Alwac Int'l, Inc.*, 369 S.W.2d 797, 802 (Tex. Civ. App. - Beaumont 1963, writ ref'd n.r.e.). *Teets v. Chromalloy Gas Turbine Corp.*, 83 F.3d 403, 407-408 (Fed. Cir. 1996), *cert. denied*, 117 S.Ct. 513 (1996).

INTERROGATORY NO. 3:

Do you find by a preponderance of the evidence that:

A.    One of the duties of Daniel Davis as president and managing director of Favco USA was the specific purpose of developing a line of crawler cranes including any cranes covered by U.S. Patent No. 6,003,252 and any related patents or applications?

Answer "Yes" or "No."

ANSWER:_____

Daniel Davis claims that Favco USA infringed a patent that Daniel Davis owned. Favco USA claims that it did not infringe the patent.

A patent is a document that consists of a specification, a claim or claims which are part of the specification, a drawing and an oath supplied by the applicant.  The specification must conclude with one or more claims. Claims are numbered paragraphs which define in words the inventor's rights by marking the limits or boundaries of the invention claimed to have been invented.  The claims of the patent must define the

-5-

particular thing claimed to have been invented with precision so that the public will know what the thing is and be able to avoid infringing the patent. These claims define the exact limits or nature of the invention, and it is only the claims of the patent that can be infringed.

The scope of the patent claims is a question of law for the Court. In this case, Daniel Davis contends that Favco USA infringed claim nos._____ of the 252 patent. I instruct you that the patent claims alleged to have been infringed in this case are **[set forth the scope of the claims alleged to have been infringed.]**

Infringement of a patent occurs when a person, without the owner's permission, makes, uses or sells the patented invention anywhere in the United States while the patent is in force. To determine whether there is an infringement you must compare the allegedly infringing product with the scope of the patent claims as I have defined them for you.

In order for you to find that Favco USA's product literally infringes a claim of Daniel Davis' patent, you must find that each and every element of the patented claim is found in defendant's product. In other words, a product literally infringes a patented claim when the same combination of elements found in the claim can also be found in the product. In making your determination, you must consider each claim separately.

Daniel Davis need not prove Favco USA had the intent to literally infringe the patent or that it knew that its acts infringed the patent. Good faith is not a defense to a claim of patent infringement.

If you find that Daniel Davis has failed to prove by a preponderance of the evidence that Favco USA infringed any of the claims listed above you must find for Favco USA. Pattern Jury Instructions Fifth Circuit 1999 West Group §9.

INTERROGATORY NO. 4:

Do you find that the 9 ton crane manufactured by Favco USA:

A.      freely suspends a load above the ground?

        No:_____        Yes:_____

B.      has a lower crawler adapted for use with an excavator?

        No:_____        Yes:_____

C.      has a continuous belt drive track for mobilizing the crane over the ground?

        No:_____        Yes:_____

D.    has a support member for providing structural integrity for the upper body?

No:_____        Yes:_____

E.    has a receptacle adapted to accept an excavator boom?

No:_____        Yes:_____

F.    has an adaptor for engaging the receptacle of the excavator upper body as if it the adaptor were the receptacle boom?

No:_____        Yes:_____

G.    has the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____        Yes:_____

## INTERROGATORY NO. 5:

Do you find that in the method of constructing the 9 ton crane by Favco USA:

A.    a method was employed in which an excavator was adapted for use as a crane?

No:_____        Yes:_____

B.    an assembly was provided having a lower crawler adapted for use with the excavator?

No:_____        Yes:_____

C.    an assembly was provided having a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

D.    an assembly was provided having an upper body adapted for use with the excavator?

No:_____        Yes:_____

-7-

E.     that the upper body has a support member for providing structural integrity for the upper body?

       No:_____          Yes:_____

F.     an assembly was provided having a receptacle adapted to accept an excavator boom?

       No:_____          Yes:_____

G.     an assembly was provided having an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom?

       No:_____          Yes:_____

H.     an assembly was provided in which the adaptor and the receptacle were capable of being fixedly secured together such that when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

       No:_____          Yes:_____

I.     a method was employed in which the excavator boom, if connected, was disengaged from the receptacle?

       No:_____          Yes:_____

J.     a method was employed in which an adaptor was engaged with the receptacle secured to the upper excavator body?

       No:_____          Yes:_____

K.     a method was employed in which the adaptor defined a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

       No:_____          Yes:_____

INTERROGATORY NO. 6:

       Do you find that the 28 ton crane manufactured by Favco USA:

-8-

A.     freely suspends a load above the ground?

No:_____        Yes:_____

B.     has a lower crawler adapted for use with an excavator?

No:_____        Yes:_____

C.     has a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

D.     has a support member for providing structural integrity for the upper body?

No:_____        Yes:_____

E.     has a receptacle adapted to accept an excavator boom?

No:_____        Yes:_____

F.     has an adaptor for engaging the receptacle of the excavator upper body as if it the adaptor were the receptacle boom?

No:_____        Yes:_____

G.     has the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____        Yes:_____

INTERROGATORY NO. 7:

Do you find that in the method of constructing the 28 ton crane by Favco USA:

A.     a method was employed in which an excavator was adapted for use as a crane?

No:_____        Yes:_____

B.     an assembly was provided having a lower crawler adapted for use with the excavator?

No:_____        Yes:_____

-9-

C.  an assembly was provided having a continuous belt drive track for mobilizing the crane over the ground?

No:_____          Yes:_____

D.  an assembly was provided having an upper body adapted for use with the excavator?

No:_____          Yes:_____

E.  that the upper body has a support member for providing structural integrity for the upper body?

No:_____          Yes:_____

F.  an assembly was provided having a receptacle adapted to accept an excavator boom?

No:_____          Yes:_____

G.  an assembly was provided having an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom?

No:_____          Yes:_____

H.  an assembly was provided in which the adaptor and the receptacle were capable of being fixedly secured together such that when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____          Yes:_____

I.  a method was employed in which the excavator boom, if connected, was disengaged from the receptacle?

No:_____          Yes:_____

J.  a method was employed in which an adaptor was engaged with the receptacle secured to the upper excavator body?

No:_____          Yes:_____

-10-

K.     a method was employed in which the adaptor defined a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

      No:_____          Yes:_____

## INTERROGATORY NO. 8:

Do you find that the 38 ton crane manufactured by Favco USA:

A.     freely suspends a load above the ground?

      No:_____          Yes:_____

B.     has a lower crawler adapted for use with an excavator?

      No:_____          Yes:_____

C.     has a continuous belt drive track for mobilizing the crane over the ground?

      No:_____          Yes:_____

D.     has a support member for providing structural integrity for the upper body?

      No:_____          Yes:_____

E.     has a receptacle adapted to accept an excavator boom?

      No:_____          Yes:_____

F.     has an adaptor for engaging the receptacle of the excavator upper body as if it the adaptor were the receptacle boom?

      No:_____          Yes:_____

G.     has the adaptor and the receptacle fixedly secured together such that the adaptor defines a connector for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

      No:_____          Yes:_____

## INTERROGATORY NO. 9:

Do you find that in the method of constructing the 38 ton crane by Favco USA:

-11-

A.  a method was employed in which an excavator was adapted for use as a crane?

No:_____        Yes:_____

B.  an assembly was provided having a lower crawler adapted for use with the excavator?

No:_____        Yes:_____

C.  an assembly was provided having a continuous belt drive track for mobilizing the crane over the ground?

No:_____        Yes:_____

D.  an assembly was provided having an upper body adapted for use with the excavator?

No:_____        Yes:_____

E.  that the upper body has a support member for providing structural integrity for the upper body?

No:_____        Yes:_____

F.  an assembly was provided having a receptacle adapted to accept an excavator boom?

No:_____        Yes:_____

G.  an assembly was provided having an adaptor capable of engaging the receptacle of the excavator upper body as if the adaptor was the excavator boom?

No:_____        Yes:_____

H.  an assembly was provided in which the adaptor and the receptacle were capable of being fixedly secured together such that when secured, the adaptor defines a connection for receiving the crane boom in the same manner as the crane boom would be accepted by a crane body?

No:_____        Yes:_____

-12-

LAW OFFICES OF

# ERNEST GAMEZ, JR., P.C.

ERNEST GAMEZ, JR.
YVONNE MARIE GOMEZ
VICTOR QUINTANILLA
SEAN P. BELLEVILLE

777 E. HARRISON
BROWNSVILLE, TEXAS 78520-7118
TELEPHONE (956) 541-3820
FAX (956) 541-7694

United States District Court
Southern District of Texas
RECEIVED

JAN 18 2001

Michael N. Milby, Clerk of Court

January 18, 2001

Mr. Michael N. Milby                    **VIA HAND-DELIVERY**
U. S. District Clerk
600 E. Harrison Street
Brownsville, Texas  78520

Re:  Daniel E. Davis vs. Favelle Favco Cranes, USA, Inc.; Civil
     Action B-00-003

Dear Mr. Milby:

Enclosed herewith is a **Joint Pretrial Order** along with **Attachments**
(i.e. **Proposed Voir Dire Questions, Jury Instructions, Jury Charge,
Exhibit Lists, and Witness Lists**), and the required 3.5" diskettes
for filing with the Court in the above-styled and numbered civil
action.

Should you have any questions regarding the above mentioned matter,
please do not hesitate to contact our office.

Thanking you in advance for your professional courtesy and
attention in this matter.

Respectfully,

LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.

VICTOR QUINTANILLA

VQ/er

Enclosures

xc:  Hon. Gary Gurwitz                  **VIA CM RRR #7099 3220 0006 2777 6865**
     ATLAS & HALL, L.L.P.
     Professional Arts Building
     818 Pecan, P.O. Box 3725
     McAllen, Texas  78502-3725