55

United States District Court
Southern District of Texas
FILED

JAN 3 1 2001

Michael N. Milby
Clerk of Court

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and  FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

## AMENDED JOINT PRETRIAL ORDER

## 1. APPEARANCE OF COUNSEL

List each party, its counsel, and counsel's address and telephone number in separate paragraphs.

| | | |
|---|---|---|
| 1. | Plaintiff: | **DANIEL E. DAVIS** |
| | (Plaintiffs and | **(Both Cases)** |
| | Counter-Defendants) | **DAVISCO INC.** |
| | (Collectively the Davis | **(B-00-184)** |
| | parties or Plaintiffs) | **COBURN INTERNATIONAL** |
| | | (B-0-184) |

Of Counsel:                          Ernesto Gamez, Jr.
                                     State Bar No. 07606600
                                     Southern District of Texas No. 8645

                                     **Victor Quintanilla**
                                     State Bar No. 00786181
                                     Southern District of Texas No. 16073
                                     **LAW OFFICES OF ERNESTO GAMEZ, JR., P.C.**
                                     777 E. Harrison Street
                                     Brownsville, Texas 78520
                                     Telephone No. 956/541-3820
                                     Fax No. 956/541-7694

2.    Defendants:                    **FAVELLE FAVCO CRANES USA, INC.**
      (Counter-Plaintiffs and        **(Both Cases)**
      Third Party Defendants)        **FAVELLE FAVCO CRANES (M) SDN. BHD**.
      (Collectively Favco            **(B-00-003)**
      parties or Defendants)         **FAVELLE FAVCO HOLDINGS SDN BHD**
                                     **(B-00-184)**

      Defendants' Counsel:           **Gary Gurwitz**
                                     State Bar No. 08631000
                                     Southern District of Texas No. 1194
                                     **Charles C. Murray**
                                     State Bar No. 14719700
                                     Southern District of Texas No. 1214
                                     **ATLAS & HALL, L.L.P.**
                                     818 Pecan - P.O. Drawer 3725
                                     McAllen, Texas 78502
                                     Telephone No. 956/682-5501

                                     **OF COUNSEL:**

                                     **Willem G. Schuurman**
                                     State Bar No.  17855200
                                     Southern District of Texas No.
                                     **Brian K. Buss**
                                     State Bar No. 00798089
                                     Southern District of Texas No.
                                     **VINSON & ELKINS, L.L.P.**
                                     600 Congress Avenue, Suite 2700
                                     Austin, Texas 78701
                                     Telephone No. 512/495-8400
                                     Fax No. 512/495-8612

## 2. STATEMENT OF THE CASE

FAVELLE FAVCO CRANES, USA, INC., ("Favco USA") is a Texas Corporation that was organized on September 3, 1997, to manufacture, assemble and sell, primarily in the United States market, an existing line of products of subsidiaries of Favco Holdings in other countries, and to design, develop, manufacture, assemble and sell a type of crane referred to as a crawler crane, which is a mobile crane that moves on tracks like a tank.  The 9 ton model is on rubber tires instead of tracks but to keep things simple it may be included in the generic reference to "crawler cranes" in this case.

DANIEL E. DAVIS, ("Davis"), was President and Managing Director and a Director of Favco USA from the date of its beginning until he was discharged on September 8, 1999.

The stock of Favco USA is owned ninety percent (90%) by FAVELLE FAVCO HOLDINGS, SDN BHD, ("Favco Holdings"), a Malaysian company, and ten percent (10%) by COBURN INTERNATIONAL, LTD., a British Virgin Islands Company owned by Davis.

Crawler cranes were designed and developed for Favco USA, and were then manufactured, assembled and sold by Favco USA during the time that Davis was President, Managing Director and a Director of Favco USA.  Also during the time Davis was President, Managing Director and a Director of Favco USA, he applied for a patent on certain crawler cranes, naming himself as inventor and owner.  A patent was issued on December 21, 1999 as #6,003,252.  Davis contends these are the crawler cranes he conceived the idea for prior to becoming President, Managing Director and a Director of FFC USA.

Davis is alleging that the Defendants have infringed his patent and that he is entitled to damages.

The Defendants deny that Davis owns the 252 patent and that it has been infringed. The Defendants contend that as President, Managing Director and a Director of Favco USA, Davis owes the corporation the duty of an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation, including the dedication of his uncorrupted business judgement for the sole benefit of the corporation. The Defendants further contend that Davis violated this obligation to Favco USA by, among other things, applying for and obtaining the patent showing himself as the owner. Under the facts and circumstances, Favco USA contends that it is the real owner of the patent and is the owner of all technical materials and trade secrets relating to crawler cranes designed and developed for Favco USA. Favco USA also contends it has shop rights which give it the right to manufacture and sell, royalty free, crawler cranes that were designed and developed at its expense while Davis was President, Managing Director and a Director of Favco USA. Favco USA also contends that Davis should be enjoined from using or threatening to use trade secrets that are the property of Favco USA and that he should be required to return money he has taken that does not belong to him. Davis denies that he violated any fiduciary duty to Favco USA. Also, Davis denies that Favco USA is entitled to shop rights as alleged by Favco USA. Furthermore, Davis denies that Favco USA owns any trade secrets pertaining to the "Davis Crawler Cranes".

---

Davis asserts several causes of action against Favelle Favco Cranes USA, Inc., Favelle Favco Cranes (M) SDN BHD, and Favelle Favco Holdings SDN BHD, including, breach of employment contract, breach of shareholders agreement, misappropriation of trade secrets, proprietary information and confidential information, tortious interference with business relationship, misrepresentation of business relationship, breach of fiduciary duty, and fraud. The Favco parties deny all of Davis's allegations.

Davis contends that as a direct and proximate result of Defendant's acts and/or omissions, he has suffered certain damages (which are more specifically set out in Davis' pleadings) for which he seeks recovery from Defendants, jointly and severally. The Favco parties deny that Davis has suffered damages or that he is entitled to recover anything from any of the Favco parties.

### 3. JURISDICTION

Briefly specify the jurisdiction of the subject matter and the parties; If there is an unresolved jurisdictional question, state it.

The court has jurisdiction pursuant to 28 U.S.C. § 1331 and § 1441(b) (federal question jurisdiction).

### 4. MOTIONS

List pending motions.

No pending motions at this time, but the Favco parties intend to file Daubert motions challenging Stephen Horner and Loren Helmreich. The Favco parties also will challenge any other witness offered by the Davis parties as expert witnesses who have not furnished reports in either state court or federal court pursuant to orders of the respective courts, or fact witnesses who have not previously been disclosed. The Favco parties also intend to file a Motion-in-limine.

Plaintiffs intend to file objections to and Request for Authentication of Defendants' Exhibits as Listed on Exhibit List Attached to the Joint Pretrial order. Plaintiffs also intend to file a Motion in Limine.

## 5. CONTENTIONS OF THE PARTIES

State concisely in separate paragraphs each party's claims.

**(3)**   **PLAINTIFF'S/COUNTER-PLAINTIFFS' CLAIMS:**

(1)   On March 24, 2000, Plaintiff DANIEL E. DAVIS filed his *Plaintiff's Original Complaint* in the above-styled and numbered civil action.

(2)   This is an action for patent infringement. The patent infringement claims stem from Defendants' illegal manufacturing, use and sale of crawler cranes covered by the patent owned by Plaintiff, who is the inventor.

(3)   Plaintiff contends that he is the inventor and owner of U.S. Patent No. 6,003,252 ("the 252 patent") issued on December 21, 1999 and entitled "Conversion Apparatus and Method for Use with Excavator and Crane Devices.

(4)   Plaintiff further contends that on or about June of 1997, he and Defendants entered into an agreement by which he was hired as the President and Managing Director of Favco USA in Harlingen, Texas. Plaintiff agreed to bring to Favco USA a line of new and unique crawler cranes (i.e., the "Davis Crawler Cranes"). The Davis Crawler Cranes were, and are unique because, among other things, they can be manufactured quicker and less expensively resulting in a more stable crane for its overall size. Plaintiff contends that he brought the crane know-how, designs, concept and/or idea with him when he became employed by Favco Holdings and Favco USA.

(5)   Plaintiff further contends that Favco USA is ninety percent (90%) owned by Favco Holdings, which also serves as a holding company for Favco Malaysia, which in turn, is also one hundred percent (100%) owned by MUHIBBAH ENGINEERING ("Muhibbah").

(6)   Plaintiff further contends that the Defendants have infringed and continue to infringe on the 252 patent by manufacturing, using, and selling crawler cranes covered by the 252 patent. As a direct and proximate result of Defendants' patent infringement Plaintiff has suffered and continues to suffer irreparable injury.

(7)   Plaintiff contends that he is the owner of the 252 patent entitled "Conversion Apparatus and Method for Use with Excavator and Crane Devices."

(8)     Plaintiff contends that he is the inventor of the "Conversion Apparatus and Method for Use with Excavator and Crane Devices" as described in the 252 patent.

(9)     Plaintiff contends that prior to being hired by Favco Holdings he conceived the idea and concept of the crawler cranes subject of the 252 patent.

(10)    Plaintiff contends that in the summer of 1995 he discussed his idea and concept of the crawler cranes with Richard Robey.

(11)    On November 6, 2000, DANIEL E. DAVIS, et. al., as Counter-Plaintiffs, filed their *Defendants' First Amended Counterclaim* in the 197th Judicial District Court case. (now Civil Action No. B-00-184).

(12)    Counter-Plaintiffs assert several causes of action against Favelle Favco Cranes USA, Inc., Favelle Favco Cranes (M) SDN BHD, and Favelle Favco Holdings SDN BHD, including, breach of employment contract, breach of shareholders agreement, misappropriation of trade secrets, proprietary information and confidential information, tortious interference with business relationship, misrepresentation of business relationship, breach of fiduciary duty, and fraud.

(13)    Counter-Plaintiffs assert that **MR. DAVIS** entered into an Employment Contract with Favelle Favco Holdings on June 23, 1997. Pursuant to this said Employment Contract, **MR. DAVIS** was employed as a Managing Director and President of Favelle Favco Cranes USA, Inc. in its Harlingen, Cameron County, Texas facility.

(14)    The said Employment Contract was for a term period of thirty-six (36) months. **MR. DAVIS** was to be compensated at a monthly salary of **EIGHT THOUSAND AND NO/100THS DOLLARS ($8,000.00)** and provided a company car, workers' compensation benefits, and a health insurance plan.

(15)    On or about September 8, 1999, **DANIEL E. DAVIS** was terminated from his employment with Favelle Favco Cranes USA, Inc. without cause.

(16)    Counter-Plaintiffs contend that Counter-Defendants' action on September 8, 1999 amounts to a breach of the Employment Contract.

(17)    On or about **August 16, 1997, MR. DAVIS** executed a Shareholders' Agreement between him and Favelle Favco Cranes (M) SDN BHD.

CutePDF - www.cutepdf.com

(18)    Pursuant to the Shareholders' Agreement, Favelle Favco Cranes (M) SDN BHD shall for a period of three (3) years from August 16, 1997 pay **MR. DAVIS** royalty fee of one percent (1%) of the sale price for the sale of each crawler crane manufactured or assembled pursuant to **MR. DAVIS'** patented invention, namely the Excavator Upper and Variable Gauge Lower for the making of a Latice and Box Boom Crawler Crane, and whether or not the sale took place before or after the termination of the Shareholders' Agreement.

(19)    On or about April of 1999, Counter-Defendants, by and through their agent, employee, and/or representative, Yee Yang Chien requested **MR. DAVIS** to agree to changes in the **SHAREHOLDER'S AGREEMENT** dated August 16, 1997 and to execute a "**New Shareholder's Agreement for FFC-USA**". Counter-Defendants by and through their agent, employee and/or representative, **Yee Yang Chien**, requested that the "**New Shareholder's Agreement for FFC-USA**" include, among other issues, the following issues:

"**...3) Patent to Crawler crane design**

Mr. Daniel Davis is the inventor and the owner of the patents to the design. The rights to use the designs and drawings are to be licensed to FFC-USA. In return, Mr. Daniel Davis is to derive a royalty of _____ over a period of _____ years..."

This particular issue is included in a document entitled "Issues to be incorporated in the New Shareholder's Agreement for FFC-USA". Counter-Defendants' agent, employee, and/or representative, **Yee Yang Chien,** writes in his own handwriting "... **Danny, Attached the Issues to Be Addressed in The New Agreement**..." Counter-Plaintiff **DANIEL E. DAVIS** contends that this conduct on the part of Counter-Defendants clearly demonstrate that they consider him to be the owner of the **Davis Crawler Cranes**, the patent and all associated technology and drawings.

(20)    **On or about May 1999,** Counter-Plaintiff **DANIEL E. DAVIS** through Favco sold three (3) **Davis Crawler Cranes** to Mustang Equipment in Houston, Texas. Although there continues to be known skepticism as to whether the **Davis Crawler Cranes** work, the three (3) **Davis Crawler Cranes** sold to Mustang Equipment have been and continue to work without problems. Thereafter, additional customers requested **Davis Crawler Cranes**. Counter-Plaintiff **DANIEL E. DAVIS** sought to get funding and equipment from Counter-Defendants to build the additionally requested **Davis Crawler Cranes**. Counter-Defendants refused to fund the manufacture of the **Davis Crawler Cranes** requested. This refusal has caused and continues to cause Counter-Plaintiff **DANIEL E. DAVIS** to suffer damages.

(21) At the same time Counter-Defendants **FAVCO** refused to fund the manufacture of **Davis Crawler Cranes** requested by customers, Counter-Defendants requested that Counter-Plaintiff **DANIEL E. DAVIS** assign all or half of his patent rights to them. Counter-Plaintiff **DANIEL E. DAVIS** contends that these demands on the part of Counter-Defendants were unreasonable. Counter-Plaintiff refused the request, and referred Counter-Defendants to the Shareholder's Agreement dated August 16, 1997. The Favco Shareholder's Agreement recites in paragraph 7.1 that Favco shall pay **MR. DAVIS** a royalty for cranes sold under Davis' patented invention. Counter-Defendants refused to pay any royalties to Counter-Plaintiff **DANIEL E. DAVIS**. Counter-Plaintiffs contends that this conduct on the part of Counter-Defendants amounts to a breach of the **SHAREHOLDERS' AGREEMENT**.

(22) Counter-Plaintiff **DANIEL E. DAVIS** would show this Honorable Court that as a direct and proximate result of Counter-Defendants' breach of the **SHAREHOLDERS' AGREEMENT**, he has suffered damages including but not limited to loss of royalty monies.

(23) As alleged beforehand, Counter-Plaintiff **DANIEL E. DAVIS** has diligently pursued the conception and development of his unique and singular crawler crane design. Further, Counter-Plaintiff has taken the necessary precautions to protect the manufacturing methodology of his crawler crane as well as all associated designs, schematics, graphics, drawings and blueprints. Further, no production, manufacture or sale of the aforementioned **Davis Crawler Crane** had taken place prior to entry by the parties in the aforementioned **SHAREHOLDERS' AGREEMENT**.

(24) Further, such information pertaining to the production, manufacture and sale of the **Davis Crawler Cranes** that is currently being used and distributed worldwide by the Counter-Defendants was obtained by and came into Counter-Defendants' possession as a result of a confidential relationship with Counter-Plaintiff **DANIEL E. DAVIS**. Therefore, Counter-Defendants have committed a breach of confidence and misappropriated proprietary information confidential information and trade secrets based upon Counter-Defendants' use, continued use and distribution worldwide of Counter-Plaintiff's trade secret methodology as it pertains to the production, manufacture and sale of the Counter-Plaintiff's crawler cranes (**Davis Crawler Cranes**) and the associated designs, schematics, graphics, drawings and blueprints.

(25)  Therefore, Counter-Plaintiffs contend that as a direct and proximate result of the Counter-Defendants' misappropriation of trade secrets, proprietary information and confidential information, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damages including and not limited to lost royalties, lost profits and lost business opportunities.  Counter-Plaintiffs seek to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(26)  As alleged beforehand, Counter-Plaintiff **DANIEL E. DAVIS has developed tiff his ideas and concepts concerning a new and unique** line of **crawler cranes (Davis Crawler Cranes)**.  However, after Counter-Defendants terminated Counter-Plaintiff **DANIEL E. DAVIS** from his employment with **FFC USA**, they sought to take for their own Counter-Plaintiff **DANIEL E. DAVIS'** ideas and concepts.

(27)  Counter-Plaintiffs contend that instead of funding the manufacture of additional **Davis Crawler Cranes**, Counter-Defendants terminated Counter-Plaintiff **DANIEL E. DAVIS** from his employment with **FFC USA**.  After Counter-Defendants terminated Counter-Plaintiff **DANIEL E. DAVIS**, they sought to interfere with the prospective buyers of **Davis Crawler Cranes** by launching or initiating this lawsuit over the rights to the **Davis Crawler Cranes** ideas and concepts and preventing him from selling the crawler cranes.  Counter-Plaintiffs contend that this conduct on the part of Counter-Defendants amounts to tortious interference with Counter-Plaintiff **DANIEL E. DAVIS'** business relationships.  Moreover, Counter-Plaintiffs contend that this conduct on the part of Counter-Defendants also amounts to tortious interference with the business relationship between Counter-Plaintiff **DANIEL E. DAVIS** and Counter-Defendants.

(28)  Counter-Plaintiffs contend that as a direct and proximate result of Counter-Defendants' tortious interference with Counter-Plaintiff **DANIEL E. DAVIS'** business relationships, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damages including, but not limited to economic damages, lost profits, lost royalties, and lost business opportunities.  Counter-Plaintiff **DANIEL E. DAVIS** seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(29)  Counter-Plaintiffs contend that Counter-Defendants had a business relationship with Counter-Plaintiff **DANIEL E. DAVIS** by the two (2) existing contracts between them, to-wit: (1) **EMPLOYMENT CONTRACT** and (2) the **SHAREHOLDERS' AGREEMENT**.  Counter-Plaintiff **DANIEL E. DAVIS** was led to believe by Counter-Defendants that he was

the owner of the **Davis Crawler Cranes**, the patent, and all associated technology and drawings. He was also led by Counter-Defendants to believe that he was going to receive or be paid a royalty fee of one percent (1%) of the sale price for the sale of each crane manufactured or assembled pursuant to his invention.

(30)  However, such was not the case in that Counter-Defendants initiated this lawsuit against Counter-Plaintiff **DANIEL E. DAVIS** alleging that the had no patentable design for crawler cranes and that the sole owner of the patents involving the **Davis Crawler Cranes** are Counter-Defendants. As such, Counter-Defendants either intentionally or negligently misrepresented their business relationship with Counter-Plaintiff **DANIEL E. DAVIS** to him. Counter-Plaintiff **DANIEL E. DAVIS** relied on this misrepresentation or representation to his detriment.

(31)  Counter-Plaintiffs contend that as a direct and proximate result of Counter-Defendants' misrepresentation of their business relationship with Counter-Plaintiff **DANIEL E. DAVIS**, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damages including, but not limited to economic damages, lost profits, lost royalties, and lost business opportunities. Counter-Plaintiff **DANIEL E. DAVIS** seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(32)  Counter-Plaintiffs contend that on or about **August 16, 1997**, Counter-Defendants **FAVCO** submitted a **SHAREHOLDERS' AGREEMENT** to Counter-Plaintiff **DANIEL E. DAVIS**. **MR. DAVIS** executed the **SHAREHOLDERS' AGREEMENT** and returned it to Counter-Defendants. **MR. DAVIS** was at that point working for Counter-Defendants at FFC USA under an **EMPLOYMENT CONTRACT** dated June 23, 1997.

(33)  Counter-Plaintiffs contend that Counter-Defendants had a fiduciary duty to Counter-Plaintiff **DANIEL E. DAVIS** which resulted form the **SHAREHOLDERS' AGREEMENT** as well as the **EMPLOYMENT CONTRACT**. Counter-Plaintiffs would show the Court that Counter-Defendants breached their fiduciary duty to Counter-Plaintiff **DANIEL E. DAVIS** when they terminated him from his employment and began using his trade secrets, proprietary information, and confidential information to manufacture and sell the **Davis Crawler Cranes**, both domestic and foreign.

(34)    Counter-Plaintiffs contend that as a direct and proximate result of Counter-Defendants' breach of fiduciary duty to Counter-Plaintiff **DANIEL E. DAVIS**, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damages including, but not limited to economic damages, lost profits, lost royalties, and lost business opportunities.  Counter-Plaintiff **DANIEL E. DAVIS** seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(35)    As alleged beforehand, Counter-Plaintiff **DANIEL E. DAVIS** had two existing contracts with Counter-Defendants, to-wit: (1) the **EMPLOYMENT CONTRACT** and (2) the **SHAREHOLDERS' AGREEMENT**.  At the time of the signing of these contracts and/or agreements, Counter-Defendants knowingly made false representations as to material facts or knowingly concealed all or part of material information from Counter-Plaintiffs with the intent of inducing Counter-Plaintiff **DANIEL E. DAVIS** to enter and/or sign said Contract and/or Agreement.    Counter-Defendants knew the representations made to Counter-Plaintiff **DANIEL E. DAVIS** were false when they made them or made them recklessly without any knowledge of their truth and as positive assertions.  Furthermore, Counter-Defendants, by and through their agents, employees, and/or representations, made said representations with the intention that they be acted upon by Counter-Plaintiffs, including Counter-Plaintiff **DANIEL E. DAVIS**.  **MR. DAVIS** did, in fact, act and signed the said Contract and/or Agreement  in reliance upon such representations.

(36)    Counter-Plaintiffs contend that Counter-Defendants made the following representations or knowingly concealed the following information; including, but not limited to:

(a)    **MR. DAVIS** was to be employed as Managing Director and President of **FFC USA**;

(b)    **MR. DAVIS** was to be paid his salary, home leave benefits, and other benefits accrued if he was discharged for cause;

(c)    **MR. DAVIS** would have a ten percent (10%) ownership in **FFC USA**;

(d)    **MR. DAVIS** would receive a royalty fee of one percent (1%) of the sale price for the sale of each crane manufactured or assembled pursuant to his patented invention, namely, the Excavator Upper and Variable Gauge Lower for the making of a lattice and box boom Crawler Crane, and whether or not the sale took place before or after the termination of the Shareholders' Agreement;

(e)     **MR. DAVIS** would be acknowledged as the inventor of and owner of the trade secrets to the **DAVIS CRAWLER CRANES**; and

(f)     **MR. DAVIS** would be acknowledged as the owner of all technology and drawings associated with the **Davis Crawler Cranes**.

(37)    Counter-Plaintiffs further allege that each and every one of the representations set forth above were more than mere opinions, predictions, or expectations, but concerned material facts for the reason that Counter-Plaintiff **DANIEL E. DAVIS** would not have signed the **EMPLOYMENT CONTRACT** and/or **SHAREHOLDERS' AGREEMENT**.  Each and every one of the representations was relied on by Counter-Plaintiffs to Plaintiffs' substantial injuries and damages as described more fully below.  Plaintiffs' damages and/or injuries have occurred as a direct and proximate result of Counter-Defendant's fraudulent representations and/or actions.  As such, Counter-Plaintiffs seek damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(38)    Based upon the acts and/or omissions of the Counter-Defendants, Counter-Plaintiff **DANIEL E. DAVIS** has suffered emotional distress and/or mental anguish in the future, and will continue to suffer emotional distress and/or mental anguish, and seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court..

(39)    Based upon the acts and/or omissions of the Counter-Defendants, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damage to his reputation, and seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(40)    Based upon acts and/or omissions of the Counter-Defendants, Counter-Plaintiff **DANIEL E. DAVIS** has suffered damage to his business reputation, and seeks to recover these damages from Counter-Defendants, jointly and severally, in an amount within the jurisdictional limits of this Court.

(41)    Based upon the acts and/or omissions of the Counter-Defendants, Counter-Plaintiff **DANIEL E. DAVIS** has suffered economic damages, including, but not limited to lost wages, lost income, and lost royalties, and seeks to recover these damages from Counter-Defendants jointly and severally

(42)    Counter-Plaintiff contends that all of the foregoing conduct of the Counter-Defendants constitutes malice in that such conduct was either a specific intent by the Counter-Defendants to cause substantial injury to Counter-Plaintiff **DANIEL E. DAVIS** or an act or omission by Counter-Defendants which when viewed objectively from the standpoint of the Counter-Defendants at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others and of which the Counter-Defendants have actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

(43)    As a direct and proximate result of Counter-Defendants' malicious conduct, Counter-Plaintiffs seek to recover exemplary and/or punitive damages from Counter-Defendants, jointly and severally in an amount to be determined by the jury or trier of fact.

(44)    As a further result of Counter-Defendants' actions and practices, Counter-Plaintiffs have been compelled to engage the services the attorneys who are prosecuting his claims and have agreed to pay such attorneys for legal services rendered and to be rendered in the preparation and trial of this cause.  As such, Counter-Plaintiffs seek to recover reasonable attorney's fees in relation to the work performed and to be performed in this cause of action.

**B.    DEFENDANTS/COUNTER-DEFENDANTS' CLAIMS:**

(1)    Favco Holdings wanted to start an operation in the United States to, among other things, design, develop, assemble and manufacture and sell a line of products referred to as crawler cranes.

(2)    Favco USA was incorporated as a Texas corporation on September 3, 1997 and Davis was formally named as President and Managing Director on September 4, 1997.

(3)    As President and Managing Director of Favco USA, Davis' duties for the corporation included overseeing the designing, developing, manufacturing, assembling and selling crawler cranes.

(4)    At the time Davis became President and Managing Director of Favco USA there were no designs, engineering drawings, models, working plans, prototypes, patents or anything that could be patented, facilities, equipment, materials, employees, engineers, suppliers or money to be able to design, develop, manufacture, assemble or sell crawler cranes.

(5)     While Davis was President and Managing Director of Favco USA, engineers and other contractors were hired and paid by Favco USA to design and develop crawler cranes, and to manufacture or fabricate some components of the crawler cranes.

(6)     The engineers and other contractors did everything for and on behalf of Favco USA.

(7)     Davis had no personal contracts or agreements with any engineers or other contractors to do any services for him personally regarding the crawler cranes.

(8)     The crawler cranes were manufactured using plans and specifications drawn up by engineers hired while Davis was President and Managing Director of Favco USA, their services were performed on behalf of Favco USA only, and they were paid only by Favco USA.

(9)     Contracts between Favco USA and engineers and contractors state that the work of the engineers and contractors is to belong to and be the property of Favco USA.

(10)     All facilities, equipment, employees, parts, materials, supplies and money necessary to design, develop, manufacture, assemble and sell crawler cranes were furnished or paid for by Favco USA while Davis was President and Managing Director.

(11)     Without the knowledge or consent of Favco USA, Davis secretly applied for a patent for crawler cranes, naming himself as owner, that was based on drawings created and engineering work done by engineers working for, under contract to, and being paid by Favco USA.

(12)     The 252 patent was applied for without Favco USA's knowledge or consent, on August 5, 1998, while Davis was President, Managing Director and a Director of Favco USA.

(13)     It was not in the best interests of Favco USA for Davis to apply for the patent as the owner.

(14)     The 252 patent was issued in the name of Davis on December 21, 1999.

(15)    Under the circumstances, the 252 patent and any other patents or patent applications, ("patent rights"), relating to the 252 patent or the crawler cranes belong to Favco USA, and Davis should be required to assign all of his right, title and interest in and to such patent rights to Favco USA.

(16)    It is not in the best interests of Favco USA for Davis to own the 252 patent.

(17)    All plans, drawings, specifications, manufacturing details, parts lists, manufacturing and assembly procedures, sales techniques, customer lists, price lists, parts lists, list of materials and all other information regarding the design, development, assembly, manufacture or sale of crawler cranes are trade secrets and proprietary information belonging to Favco USA. Davis should be enjoined from using or disclosing any of such trade secrets and proprietary information in any manner to anyone and should be required to return all copies of such trade secrets or proprietary information to Favco USA.

(17)    Because everything was done for and paid for by Favco USA, Favco USA is entitled to shop rights under the patent rights and has the absolute right to continue to design, develop, manufacture, assemble and sell crawler cranes without the payment of royalties or fees of any kind to anyone.

(18)    The crawler cranes manufactured or sold by Favco USA do not infringe any claim of the 252 patent; either literally or under the doctrine of equivalents.

(19)    Davis withdrew, or caused to be withdrawn, and paid to himself or a company that he controls, money to which Davis or his company was not entitled to and Davis should be required to repay money in excess of money, if any, that he was entitled to receive. Davis is guilty of common law conversion and violations of the Texas Theft Liability act, Tex. Civ. Prac. & Rem. Code, § 134.01 *et seq.*

(20)    This is an exceptional case and Favco USA is entitled to recover attorney's fees, interests and costs.

(21)    Favco USA is entitled to recover damages.

(22)    The document entitled "Shareholder's Agreement," which Davis claims he signed on August 16, 1997, was only a draft of a series of drafts, was not an offer, the terms were never agreed upon, the draft was never returned to Favco USA by Davis, the contract was never finalized, and neither that draft of the Shareholder's Agreement nor any other was ever signed by anyone representing Favco Holdings, Favco Malaysia or Favco USA.

(23) Favco USA, Favco Holdings and Favco Malaysia never intended any draft to be a binding agreement until all terms were agreed upon by all parties and the document was signed by all parties.

(24) There is no agreement of any kind between Davis and Favco USA, Favco Holdings or Favco Malaysia that Davis owns the 252 patent or any other patent involving crawler cranes. Favco USA is not a party to the document entitled "Shareholders' Agreement," which Davis claims he signed on August 16, 1997.

(25) The document entitled "Shareholders' Agreement," which Davis claims to have signed on August 16, 1997 is not a valid or binding contract.

(26) In the alternative, if the draft Shareholder's Agreement which Davis claims he signed on August 16, 1997, is a binding contract, which Defendants deny, then the non-competition clause in the document will also be binding.

(27) Favco USA has invested approximately 14 million dollars in the design, development, manufacture, assembly and sale of crawler cranes and presently has millions of dollars in inventory, parts, and unsold crawler cranes.

(28) In the alternative, if Favco USA is not the owner of the 252 patent or any other patent rights relating to the crawler cranes and is not entitled to shop rights, then Favco USA is entitled to recover its investment in the crawler crane project.

(29) Davis has no present capability of designing, developing, manufacturing or assembling crawler cranes.

(30) Davis owed Favco USA a fiduciary duty as President, Managing Director and a Director of Favco USA to act in its best interest and Davis breached that duty. An officer and/or director of a corporation owes a fiduciary duty to that corporation. Fiduciary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. The responsibility of a corporate fiduciary includes the dedication of his uncorrupted business judgment for the sole benefit of the corporation.

(31) Davis breached his fiduciary duty to Favco USA.

(32) By his conduct, Davis is estopped from asserting that Favco USA does not have any right to continue to make, use and sell crawler cranes.

(33) Davis' claims are barred by the Statute of Frauds.

(34)    When Davis became President, Managing Director and a Director of Favco USA he had no patentable crawler crane design.

(35)    Trademarks were applied for by Davis for Favco USA.

(36)    After prototype of crawler cranes were built, they were advertised and sold as Favco USA cranes.

(37)    At all times the crawler cranes were identified, marketed, advertised, and sold as Favelle Favco cranes by Davis.

(38)    The crawler cranes were never marketed, advertised or sold as "Davis Crawler Cranes."

(39)    Davis' crawler crane designs were not new and unique at the time Davis became President and Managing Director of Favco USA.

(40)    Davis' employment contract says that Davis, as Managing Director, will carry out his duties for the benefit of Favco Holdings.

(41)    Davis never returned the document entitled "Shareholders' Agreement," which he claims to have signed on August 16, 1997, to anyone at Favco Malaysia or Favco Holdings or Favco USA.

(43)    Davis' duties as Managing Director and President of Favco USA included assisting in or overseeing the conceptualization, design and development of crawler cranes.

(44)    Davis was in charge of every aspect of the crawler crane project for Favco USA including arranging and contracting for the design, conception, development, construction, marketing, promotion and sales.

(45)    The ten percent (10%) of the Favco USA stock owned by Coburn has not been paid for in full.

(46)    The ninety percent (90%) of the Favco USA stock owned by Favco Holdings has been paid for in full.

(47)    Davis became President, Managing Director and a Director of Favco USA on September 4, 1997 and served in those capacities until he was discharged on September 8, 1999.

---

CHMPDF - www.fenrir.com

(48) Favco USA had the right to discharge Davis at any time, with or without cause.

(49) Davis had no engineering drawings, manufacturing drawings, working plans, patents or anything that could be patented, engineering specifications, prototypes or models of the crawler cranes in question at the time he became President, Managing Director and a Director of Favco USA.

(50) One of Davis' express responsibilities as President and Managing Director of Favco USA was to oversee that the crawler cranes were designed, developed, manufactured, assembled and marketed by Favco USA.

(51) Davis contends that two documents contain his complete agreement with Favco USA. These two documents say nothing about ownership of the crawler cranes or any inventions or designs. Neither of these documents is an agreement with Favco USA.

(52) Davis was in charge of and oversaw every aspect of the crawler crane project for Favco USA.

(53) Contracts between Favco USA and engineers and contractors state that Favco USA would own all designs, drawings, patents and other rights.

(54) All design work related to the crawler cranes was done while Davis was President and Managing Director of Favco USA.

(55) Even after filing the patent application, Davis negotiated Confidentiality Agreements on behalf of and for the benefit of Favco USA. These agreements provide that all designs and work belong to Favco USA, not Davis personally.

(56) After the engineering work was substantially complete, Favco USA began making the crawler cranes at its plant.

(57) Trademarks were applied for by Davis for Favco USA for use with crawler cranes.

(58) Before leaving Favco USA in 1999, Davis ordered for Favco USA over $7 million dollars in equipment from Caterpillar.

(59) Favco USA owns the work done by Eccon under the Eccon contract dated November 22, 1997.

(60) All labor used in the manufacture of crawler cranes at the Favco USA facility, or elsewhere, was contracted to and paid for by Favco USA.

---

(61)   All materials purchased in connection with the crawler crane project were purchased and paid for by Favco USA.

(62)   Favco USA had no knowledge that Davis had applied in his own name for the the patent at the time that it was filed.

(63)   Favco USA owns all of the engineering, design or any and all other work done or produced relating to the crawler cranes in question.

(64)   At all times the crawler cranes were identified, marketed, advertised and sold as Favelle Favco cranes by Davis.

(65)   Davis never marketed, advertised or sold any of the crawler cranes as "Davis" crawler cranes.

(66)   Favco USA owns the work done by Mr. Orgeron.

(67)   Favco USA owns the work done by Mr. Rusk.

(68)   Favco USA owns the work done by CIPI.

(69)   The shareholder's agreement was not to be performed in one year from the date of its making.

(70)   Favco Malaysia did not infringe the 252 patent or induce anyone else to infringe it.

(71)   Favco Malaysia is not liable to the plaintiff for any damages.

## 6. ADMISSIONS OF FACT

(1)   An employment contract was entered into between Davis and Favco Holdings on June 23, 1997, which, among other things, provided that Davis was employed as a Managing Director to perform on behalf of Favco Holdings work at its facility in the United States.

(2)   Before becoming President and Managing Director of Favco USA, Davis was employed by Manitowoc. The United States Patent and Trademark Office issued patent number 252 patent on or about December 21, 1999.

(3)   The United States Patent and Trademark Office issued patent number 252 patent on or about December 21, 1999.

(4)   Davis served as the President and Managing Director of Favco USA until September 8, 1999.

(5)     Favco USA is a Texas Corporation incorporated on September 3, 1997.

(6)     Favco Holdings wanted to develop, manufacture and sell a crawler crane in the United States.

(7)     Ninety percent (90%) of the Favco USA stock is owned by Favco Holdings and 10% of the stock is owned by Coburn International, Ltd., a company controlled by Davis.

(8)     Davis hired several contract engineers for Favco USA to design and develop crawler cranes.

(9)     Favco USA made every payment for every aspect of the entire crawler crane project.

(10)    Prototypes of crawler cranes were essentially completed in time to be exhibited at Con Expo in March of 1999 and were exhibited and sold as Favelle Favco USA Products.

(11)    A contract was entered into between Favco USA (signed by Davis as President of Favco USA), Favco Malaysia and Eccon Engineering Computer Consulting Gesellschaft M.B.H., ("Eccon"), dated November 22, 1997, titled *Confidentiality Agreement*, whereby Eccon was to do engineering, design and plan work on crawler cranes.

(12)    The work done under the aforementioned Eccon contract was performed during the time that Davis was President and Managing Director of Favco USA. Eccon was paid for all work done under this contract by Favco USA.

(13)    A contract was entered into between Keith J. Orgeron, P.E., ("Orgeron"), and Favco USA, (signed by Davis as Managing Director and President of Favco USA), dated January 18, 1998, titled *Engineering Consulting Services Agreement*, whereby Orgeron was to do engineering consulting work on behalf of Favco USA. The contract stated that any ideas, patents, copyrights, drawings, etc., produced by Orgeron under this Agreement were to be the sole property of Favco USA. The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA. Orgeron was paid for all work done under this contract by Favco USA.

(14)    An agreement was entered into between J. A. Rusk Engineering, ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 ton and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998. The services provided by Rusk under this contract were to belong to Favco USA. The work done under this contract was performed during the

time that Davis was President and Managing Director of Favco USA. Rusk was paid for all work done under this contract by Favco USA.

(15)    A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director), and Favco Malaysia, dated August 21, 1998, titled *Design Ownership/Responsibility Agreement 1, Cranes Utilizing Standard Hydraulic Excavator Main Frames*. The work done by CIPI under the contract was performed during the time that Davis was President, Managing Director and a Director of Favco USA.

(16)    A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director), and Favco Malaysia, dated August 21, 1998, titled *Design Ownership /Responsibility Agreement 2, Cranes Utilizing Custom Main Frames.*

(17)    A contract was entered into between Caterpillar Industrial Products, Inc., ("CIPI"), and Favco USA, (signed by Davis as President and Managing Director) dated March 29, 1999, titled *Design Ownership /Responsibility Agreement 3, Cranes Utilizing Telehandler Powermodules.* The work done under this contract was performed during the time the Davis was President and Managing Director of Favco USA.

(18)    All work done on crawler cranes manufactured and sold by Favco USA was done after Davis became President and Managing Director of Favco USA.

(19)    The facilities in Harlingen where work was done on crawler cranes was owned and controlled by Favco USA.

(20)    All power units purchased from CIPI in connection with the crawler crane project were purchased by Favco USA.

(21)    Davis had no contracts personally with Eccon, Orgeron, Rusk or CIPI to provide engineering or design services involving the crawler cranes in question in the lawsuit.

(22)    Davis had no contracts personally with anyone to provide any services, materials, equipment, or labor involving the crawler cranes in question in the lawsuit.

(23)    Davis applied for a patent on crawler cranes on August 5, 1998.

(24)    A patent was issued in the name of Daniel Davis on December 21, 1999, for crawler cranes.

(25) Davis was discharged as President and Managing Director of Favco USA on September 8, 1999.

(26) According to Davis, Favco USA could manufacture, use and sell crawler cranes in question in this lawsuit through August 16, 2000.

## 7. CONTESTED ISSUES OF FACT

(1) Plaintiff disputes Defendants' contention that its information relating to the design and manufacture of the subject crawler cranes constitutes trade secrets and confidential information of Favco USA.

(2) Plaintiff disputes Favco USA's contention that he has pursued patent protection for inventions that belong to it.

(3) Plaintiff disputes Favco USA's contention that he has misappropriated trade secrets that belong to it.

(4) Plaintiff disputes Favco USA's contention that he made false, misleading, or deceptive statements or representations regarding the nature, characteristics, qualities and/or origin of its cranes in violation of 15 U.S.C. § 1125(a).

(5) Plaintiff disputes Favco USA's contention that he made false, misleading, or deceptive statements or representations regarding the nature, characteristics, qualities and/or origin of what the plaintiff refers to as "Davis Crawler Cranes" in violation of 15 U.S.C. § 1125 (a).

(6) Plaintiff disputes Favco USA's contention that was not entitled to pay himself or be paid royalties.

(7) Plaintiff disputes Favco USA's contention that he wrongfully appropriated royalties.

(8) Plaintiff disputes Favco USA's contention that it will suffer loss of its substantial investment and the loss of potential profits.

(9) Plaintiff disputes Favco USA's contention that its business reputation will be ruined, resulting in damages to it that are unpredictable and unending.

(10) Plaintiff disputes Favco USA's contention that he misused its proprietary information and trade secrets.

(11) Plaintiff disputes Favco USA's contention that his conduct makes this an exceptional case under 15 U.S.C. § 1117(a).

(12)     Plaintiff disputes Favco USA's contention that he acted in his own interests and contrary to those interests of Favco USA, violating his fiduciary duties.

(13)     Plaintiff disputes Favco USA's contention that it has suffered damages and will continue to suffer damages caused by his alleged breach of fiduciary duties.

(14)     Plaintiff disputes Favco USA's contention that he has committed theft as defined in the Texas Theft Liability Act, Texas Civil Practice & Remedies Code Ann., § 134.01 *et seq.*

(15)     Plaintiff disputes Favco USA's contention that he wrongfully and tortiously converted its property to his own use and dominion.

(16)     Plaintiff disputes Favco USA's contention that it has suffered injury and will continue to suffer injury as a result of his alleged conversion.

(17)     Plaintiff disputes Favco USA's contention that he was engaged in intentional, knowing, willful and deliberate conversion.

(18)     Plaintiff disputes Favco USA's contention that it is entitled to recover attorney's fees.

(19)     Plaintiff disputes Favco USA's contention that it is the rightful owner of the 252 patent.

(20)     Plaintiff disputes Favco Malaysia's contention that it is entitled to recover attorney's fees.

(21)     Plaintiff disputes Favco USA's contention and/or assertion that he breached his duty of loyalty to it.

(22)     Plaintiff disputes Favco USA's contention and/or assertion that it is the true owner of the 252 patent, as well as any other patent applications applied for by him related to crawler cranes.

(23)     Plaintiff disputes Favco USA's contention and/or assertion that, in the alternative, it has an irrevocable shop right and an express or implied royalty free license to use the technology that is the subject of the 252 patent, as well as any other patent or patent application applied for by him that relates to crawler cranes.

(24)     Plaintiff disputes Favco USA's contention and/or assertion that it owns the technology, trade secrets and information made the basis of this civil action.

(25)    Plaintiff admits that he signed the Shareholder's Agreement between him and Favco Malaysia on August 16, 1997.

(26)    Whether the 9-ton "crawler crane" infringes any claim of the 252 patent.

(27)    Whether the 28-ton "crawler crane" infringes any claim of the 252 patent.

(28)    Whether the 38-ton "crawler crane" infringes any claim of the 252 patent.

(29)    Whether the 50-ton "crawler crane" infringes any claim of the 252 patent.

(30)    Whether the "crawler cranes" with tonnage greater than 50 ton infringe any claim of the 252 patent.

(31)    Whether Daniel Davis has suffered any injury or damage.

(32)    The amount of such damages, if any.

(33)    Whether Davis' claims that after August 16, 2000, Favco USA could not manufacture, use or sell crawler cranes are false, misleading or deceptive.

(34)    The amount of money Favco USA has invested in the design, development, manufacture and sale of crawler cranes.

(35)    Whether Davis' claim that he owns the 252 patent is in the best interest of Favco USA.

(36)    Has Davis misappropriated Favco USA's proprietary designs, drawings, trade secrets, proprietary information and confidential information.

(37)    Has Davis kept documents or copies of documents belonging to Favco USA.

(38)    Has Favco USA suffered damages.

(39)    The extent of such damages.

(40)    Did Davis breach his fiduciary duty to Favco USA.

(41)    Did Davis take money from Favco USA to which he or a company controlled by him were not entitled.

(42)    How much money did Davis take to which he was not entitled.

(43)    Plaintiff disputes Defendants and/or Counter-Defendants' contention that he was terminated for cause on September 8, 1999.

(44)    Plaintiff disputes Defendants and/or Counter-Defendants' contention that he was terminated from his position as President and Managing Director of Favelle Favco Cranes USA, Inc. for cause.

(45)    Plaintiff disputes Defendants and/or Counter-Defendants contention and/or assertion that he is not entitled to recover in the capacity in which he sues.

(46)    Plaintiff disputes Defendants and/or Counter-Defendants contention and/or assertion that he conceived a scheme to usurp Favco USA's property and corporate opportunity in the area of crawler cranes and engaged in conduct to further such scheme while he was President and a Director of Favco USA.

(47)    All work done on crawler cranes manufactured and sold by Favco USA was done after Davis became President and Managing Director of Favco USA.

(48)    Favco USA has invested approximately 14 million dollars in the design, development, manufacture, assembly and sale of crawler cranes and presently has millions of dollars in inventory, parts, and unsold crawler cranes.

(49)    When Davis became President, Managing Director and a Director of Favco USA he had no patentable crawler crane design.

(50)    Davis never returned the document entitled "Shareholders' Agreement," which he claims to have signed on August 16, 1997, to anyone at Favco Malaysia or Favco Holdings or Favco USA.

(51)    Davis was in charge of every aspect of the crawler crane project for Favco USA including arranging and contracting for the design, conception, development, construction, marketing, promotion and sales.

(52)    The ten percent (10%) of the Favco USA stock owned by Coburn has not been paid for in full.

(53)    The ninety percent (90%) of the Favco USA stock owned by Favco Holdings has been paid for in full.

(54)    Davis became President, Managing Director and a Director of Favco USA on September 4, 1997 and served in those capacities until he was discharged on September 8, 1999.

(55)    Favco USA had the right to discharge Davis at any time, with or without cause.

(56)   Davis had no engineering drawings, manufacturing drawings, working plans, patents or anything that could be patented, engineering specifications, prototypes or models of the crawler cranes in question at the time he became President, Managing Director and a Director of Favco USA.

(57)   One of Davis' express responsibilities as President and Managing Director of Favco USA was to oversee that the crawler cranes were designed, developed, manufactured, assembled and marketed by Favco USA.

(58)   Davis contends that two documents contain the complete agreement with Favco USA. These two documents say nothing about ownership of the crawler cranes or any inventions or designs. Neither of these documents is an agreement with Favco USA.

(59)   Davis was in charge of and oversaw every aspect of the crawler crane project for Favco USA.

(60)   Before leaving Favco USA in 1999, Davis ordered for Favco USA over &7 million dollars in equipment from Caterpillar.

(61)   All labor used in the manufacture of crawler cranes at the Favco USA facility, or elsewhere, was contracted to and paid for by Favco USA.

(62)   All materials purchased in connection with the crawler crane project were purchased and paid for by Favco USA.

(63)   Favco USA had no knowledge that Davis had applied in his own name for the patent at the time that it was filed.

(64)   All design work related to the crawler cranes was done while Defendant was President and Managing Director of Favco USA.

(65)   Shareholder's agreement was not to be performed in one year from the date of its making.

(66)   Favco Malaysia did not infringe the 252 patent or induce anyone else to infringe it.

(67)   No Favco party is liable to any Davis party for any damages.

(68)   Defendants deny that any of the defendants breached the Employment Contract of June 23, 1997 between Favco Holdings and Davis.

(69)   At no time did any Favco defendant refuse to fund the manufacturing of cranes requested by customers.

(70)   Davis has not lost any royalties to which he is entitled.

(71)   Defendants have not misappropriated any proprietary information or trade secrets belonging to Davis.

(72)   None of the defendants have done anything to prevent Davis from selling crawler cranes.

(73)   None of the defendants have tortiously interfered with Davis' business relationships.

(74)   None of the defendants have any fiduciary duty to Davis and have not breached any such alleged fiduciary duties.

(75)   None of the defendants have made any misrepresentations to Davis.

(76)   Defendants deny that there is any liability to Davis, jointly or separately.

(77)   After his termination from employment, Davis interfered with Favco USA's ability to sell crawler cranes in question.   He has misused proprietary information and trade secrets belonging to Favco and has made false, misleading, or deceptive statements or representations regarding the nature, characteristics, qualities and/or origin of its cranes.

(78)   Plaintiffs are not entitled to future damages.

(79)   None of the Favco parties had any knowledge that Davis had applied in his own name for the patent at the time that it was filed.

(80)   Plaintiffs dispute that the 9 ton crawler crane is at issue in this lawsuit.

(81)   Plaintiffs dispute that the 50 ton crawler crane is at issue in this lawsuit.

### 8.  AGREED PROPOSITIONS OF LAW

(1)   A patent issued by the United States Patent Office is presumed to be valid. 35 U.S.C. § 272.

(2)   In order to rebut the presumption that a patent issued by the United States Patent Office is valid, the defendant must establish by clear and convincing evidence that Plaintiff's patent or any claim in the patent is not valid. *N.V. Akzo vs. E.I. DuPont de Nemours*, 810 F.2d. 1148, 1150 (Fed. Cir. 1987).

(3)     Determining patent infringement requires determining whether someone (1) without authority (2) makes, uses, offers to sell, sells, or imports (3) the patented invention (4) within the United States, its territories, or its possessions (5) during the term of the patent. 35 U.S.C.A. § 271 (h); *Genetech, Inc. vs. Eli Lilly 9 Co.*, 998 F.2d 931, 939-44 (Fed. Cir. 1993) cert. denied, 114 S.Ct. 1126 (1994); 35 U.S.C.A. § 271(a) (1994).

(4)     If there is a finding of infringement, the owner of the patent is entitled to an award of damages adequate to compensate for the infringement but in no event less than a reasonable royalty for the use the defendant made of the invention. 35 U.S.C. § 284.

(5)     In order to satisfy the burden to establish by a reasonable probability that the infringement cost him lost profits, the plaintiff must show that there was a reasonable probability that he would have made the sales that the infringement made, but for the infringement. *Herbert v. Lisle Corp.*, 99 F.3d 1009, 1119 (Fed. Cir. 1996); *Standard Havens Prods., Inc. v. Gencor Indus. Inc.*, 953 F.2d 1360, 1372 (Fed. Cir. 1991); *King Instrument Corp. v. Otari Corp.*; 767 F.2d 853, 863 (Fed. Cir. 1985).

(6)     In determining lost profits, the trier of fact may consider whether plaintiff has established the following facts: (1) the demand for the patented product; (2) the absence of acceptable non-infringing substitutes; (3) the patent holder's capacity to meet the demand; (4) and the amount of profit the patent holder would have made but for the defendant's sales. *Panduit Corp. vs. Stablin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978); *Standard Havens Prods., Inc. vs. Gencar Indus., Inc.*, 953 F.2d 1360, 1372-73 (Fed. Cir. 1991).

(7)     Claims construction is a question of law for the court. *Markman vs. Westview Instruments*, 517 U.S. 370 (1996).

(8)     To determine infringement the properly construed claims have to be compared against the accused devices. *Markman vs. Westview Instruments*, 517 U.S. 370 (1996).

(9)     If an element of a claim is totally missing then there can be no infringement either literally or under the doctrine of equivalents as a matter of law. *Becton Dickinson and Company vs. C.R. Bard, Inc.*, 922 F. 2d 792 (Fed. Cir 1990).

(10)    An officer and/or director of a corporation owes a fiduciary duty to that corporation. *International Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567 (Tex. 1963). Fiduciary duty means that these officers and directors are held to an extreme measure of honesty, unselfishness and good faith in any transactions relating to the corporation. *Id.* The responsibility of a corporate

fiduciary includes the dedication of his uncorrupted business judgment for the sole benefit of the corporation. *Id.*

(11)  An individual owing a corporation a fiduciary duty is obligated to assign to the corporation all rights to any invention which was developed while the fiduciary duty was owed and which relates to the business of the corporation. *Davis v. Alwac Int'l, Inc.*, 369 S.W.2d 797, 802 (Tex. Civ. App. – Beaumont 1963, writ ref'd n.r.e.). *Miller v. GTE Corp.*, 1989 WL 258184 (S.D. Tex. April 7, 1989).

(12)  A shop right is the right of an employer to use without charge an invention patented by its current or former employee without liability for infringement. *McElmurry v. Arkansas Power and Light Co.,* 95 F. 2d 1576 (Fed. Cir. 1993).

(13)  An employer is entitled to a shop right when the employer has financed the invention. *McElmurry v. Arkansas Power and Light Co.,* 95 F. 2d 1576 (Fed. Cir. 1993).

(14)  A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. *Hyde Corp. v. Huffines*, 158 Tex. 566, 314 S.W.2d 763, 776 (Tex. 1958), cert denied,

Absolute secrecy is not required to establish that information is a trade secret so long as the formula, pattern, device or compilation of information in question is not generally known or readily ascertainable or easily discoverable by others except through the use of improper means. *United States Sporting Products, Inc. v. Johnny Stewart Game Calls, Inc.,* 865 S.W. 2d 214, 220 (Tex. App.–Waco 1993, writ denied); *Universal City Studios v. Kamer Indus.*, 217 U.S.P.Q. 1162 (S.D. Tex. 1982) (recognizing misappropriation as a type of unfair competition under Texas law); *International News Serv. v. Associated Press,* 248 U.S. 215 (1918) (recognizing tort of misappropriation under federal law); *Hyde Corp. v. Huffines,* 314 S.W. 2d 763, 769 (Tex.), *cert. denied,* 358 U.S. 898 (1958); 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 16.06 (1994) (discussing legal protection for confidential ideas); Restatement of Torts § 757 (1939); Restatement of Torts § 757 cmt.b (1939); Restatement of Torts § 759 (1939); Restatement of Torts § 759 comment c (1939).

(15)  Even in a case like this in which a jury has been demanded, equitable issues such as shop rights, estoppel, and trade secrets are to be decided by the Court. *Nimrod Marketing (Overseas) Ltd. v. Texas Energy Investment Corp.,* 769 F.2d 1076, 1079-80 (5th Cir. 1985); 9 C. Wright & A. Miller, Federal Practice & Procedure § 2302.1 (West 1995 & Supp. 2000). *See generally*

*Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 509, 79 S.Ct. 948, 955-56 (1959) (relating to order of trial); U.S. CONST. amend. 7; FED. R. CIV. P. 38, 39; MOORE'S FEDERAL PRACTICE § 38.16[2][a] (2000).

(16)  Any inventions developed by an employee or reduced to practice while on the employer's salary and using its facilities belongs to the employer absent an agreement to the contrary. *Miller vs. GTE Corp.* 1989 Westlaw 258184 (S.D. Tex., April 7, 1989); *Davis vs. Alwac International, Inc.* 369 S.W. 2d 797 (Tex. Civ. App.-Beaumont 1963, writ ref'd n.r.e.).

(17)  "Shop Rights" is an equitable doctrine to be decided by the court. *McElmurry vs. Arkansas Power & Light Co.*, 995 F. 2d 1576 (Fed. Cir. 1993).

(18)  Any narrowing amendment or argument made during prosecution of a patent that is for reasons related to patentability forecloses any application of the doctrine of equivalents to the element in question. *Testo Corp. v. Shoketsu Kinsoku Kogyo Kabushiki,*

(19)  An agreement which is not to be performed within one year from the date of making the agreement is unenforceable pursuant to the statute of frauds, § 26.01(a)(6), Tex. Bus. & Com. Code.

(20)  The shareholder's agreement is not ambiguous, and its construction and interpretation are questions of law for the Court. *City of Pinehurst v. Spooner Addition water Co.*, 432 S.W.2d 515, 518 Tex. 1968).

(21)  Daniel Davis is estopped from asserting that the defendants infringed the 252 patent if all of the following circumstances occurred:

1.    Daniel Davis

a.    by words or conduct made a false representation or concealed material facts,

b.    with knowledge of the facts or with knowledge or information that would lead a reasonable person to discovery the facts, and

c.    with the intention that Favco USA would rely on the false representation or concealment in acting or deciding not to act; and

2.   Favco USA

    a.   did not know and had no means of knowing the real facts; and

    b.   relied to its detriment on the false representation or concealment of material facts.

(21)   Equitable estoppel may also be based upon on silence or inaction, rather than on affirmative misrepresentations, if one under a duty to speak or act has by his silence or inaction misled the opposing party to his detriment. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex. 1979).

(22)   The doctrine of equivalents as set forth in Section 9.1 5th Circuit Pattern Jury Instructions Civil (1999 West Group).

## 9.   CONTESTED PROPOSITIONS OF LAW

(1)   Was there an offer and acceptance and a contract formed between Daniel E. Davis and Favco USA or any other Favco party. *Scaife v. Associated Air Center, Inc.*, 100 F. 3d 406 (5th Cir. 1996).

(2)   In order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties, so long as the party not signing accepts the contract by its acts, conduct, or acquiescence. *Karl Rove. & Co. v. Thornburgh*, 824 F.Supp. 662, 673 (W.D. Tex. 1993), aff'd in part, 39 F.3d 1273 (5th Cir. 1994), citing *Augusta Dev. Co. v. Fish Oil Well Serv. Co., Inc.*, 761 S.W.2d 538, 544 (Tex. App.-- Corpus Christi 1988, no writ).

(3)   Parties may intend to be bound by a contract only by execution of formal signed documents. *Scaife v. Associated Air Center, Inc.*, 100 F. 3d 406 (5th Cir. 1996); *Simmons & Simmons Construction Co. v. Rea*, 155 Tex. 353, 286 S.W.2d 415, 417 (1955).

(4)   A promise or agreement which is not to be performed within one year from the date of the making of the agreement is not enforceable unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be changed with the promise or agreement or by someone lawfully authorized to sign for him. TEX. BUS. & COM. CODE § 26.01(West 2000).

(5)   Whether a contract falls within the statute of frauds generally is a question of law. *Choi v. McKenzie*, 975 S.W.2d 740, 743 (Tex. App.–Corpus Christi 1998, pet. denied). See *Bratcher v. Dozier*, Tex. 319, 346 S.W.2d 795, 796 (Tex. 1961).

(6)  Unless there is an agreement to the contrary, an individual owing a corporation a fiduciary duty is obligated to assign to the corporation all rights to any invention which was developed while the fiduciary duty was owed and which relates to the business of the corporation. *Davis v. Alwac Int'll, Inc.,* 369 S.W.2d 797, 802 (Tex. Civ. App. - Beaumont 1963, writ ref'd n.r.e.). In other words, Daniel Davis is obligated to assign the 252 patent to Favco USA unless Favco USA contracted that Daniel Davis would be the owner of such patent. *Id.*

## 10. EXHIBITS

**A.  PLAINTIFF'S EXHIBITS:** See attached Amended Exhibit List

**A.  DEFENDANTS' EXHIBITS:** See attached Exhibit List

## 11. WITNESSES

**A.  PLAINTIFF'S WITNESSES:** See attached Amended Witness List.

**A.  DEFENDANTS' WITNESSES:** See attached Witness List.

## 12. SETTLEMENT

All settlement efforts have been exhausted and it will have to be tried. Most recently, the parties and their counsel met on January 25, 2001 to discuss settlement. However, a settlement was unable to be reached.

## 13. TRIAL

**A.  PROBABLE LENGTH OF TRIAL**

The Plaintiff and/or Counter-Plaintiffs' case will take approximately four (4) days for trial and the Defendants' case will take approximately three and one-half days for trial. Plaintiff's rebuttal will take approximately two (2) days.

**B.  LOGISTICAL PROBLEMS**
Some witnesses and parties must come from out of state and even out of the country.

## 14. ATTACHMENTS

**A.  PLAINTIFF/COUNTER-PLAINTIFFS' ATTACHMENTS:**

(1)  See attached Proposed Questions for the Voir Dire Examination.

(2)     See attached Amended Proposed Jury Charge, including Instructions and Definitions.

**B.     DEFENDANTS'/ COUNTER-DEFENDANTS' ATTACHMENTS:**

(1)     See attached Proposed Questions for the Voir Dire Examination.

(2)     See attached Proposed Jury Charge, including Instructions and Definitions.

Date:_____

_____
UNITED STATES DISTRICT JUDGE

**APPROVED:**

Date: 01/31/01

_____
Of Counsel for Plaintiff
Ernesto Gamez, Jr. (Of Counsel)
Bar # 0760660     SDOT # 8645

Victor Quintanilla (Of Counsel)
Bar # 00786181   SDOT # 16073
Law Offices of Ernesto Gamez, Jr., P.C.
777 E. Harrison Street
Brownsville, Texas 78520
Telephone No. 956/541-3820

Date: 01/31/01

_____
Attorney-in-Charge, Defendants
Gary Gurwitz
Bar # 08631000     SDOT # 1194

Charles C. Murray
Bar # 14719700     SDOT # 1214
Daniel G. Gurwitz
Bar # 00787608     SDOT # 16895
ATLAS & HALL, L.L.P.
818 Pecan - P.O. Drawer 3725
McAllen, Texas  78502
Telephone No. 956/682-5501
Fax No. 956/686-6109

**DAVIS
vs.
FFC**

**AMENDED JOINT PRETRIAL ORDER
PAGE 34**

Willem G. Schuurman/Bar # 17855200
Brian K. Buss/Bar # 00798089
VINSON & ELKINS, L.L.P.
600 Congress Avenue, Suite 2700
Austin, Texas 78701
Telephone No. 512/495-8400
Fax No. 512/495-8612

---

CutePDF - www.fastio.com

| UNITED STATES DISTRICT COURT | ☆ | SOUTHERN DISTRICT OF TEXAS |
|---|---|---|

| Daniel E. Davis<br>*Versus* - - - - - - - -<br>Favelle Favco USA, Inc., et. al.<br>*Versus* - - - - - - - -<br>Daniel E. Davis, et. al. | CASE NO.    B-00-003<br>CASE NO.    B-00-184 |
|---|---|
| | **Witness List**<br>(AMENDED) |
| Judge Hilda G. Tagle | Case Manager: Stella Cavasos<br>Court Reporter: Breck Record |
| List of<br>**PLAINTIFF**<br>(Counter-Plaintiffs) | Proceeding                    Date |

1.    Daniel E. Davis (FACT and/or EXPERT WITNESS)
      800 Wilcrest, Suite 160
      Houston, Texas   77042
      (956) 245-8500

      Mr. Davis is the Plaintiff as well as one of the Defendants and/or Counter-Plaintiffs in this
      case.  He has approximately twenty (20) years experience in the crane business and/or
      industry.  From the late 1970's until the mid-1980's, he worked as a crane operator and/or
      superintendent for various companies.  He also worked as a crane consultant for Caltex-
      Indonesia for approximately one (1) year.  Thereafter, between approximately 1992 and
      1994, Mr. Davis worked for ESSO Malaysia as a crane supervisor/consultant and off-
      shore cranes maintenance person.  He then worked for The Manitowoc Company (one of
      the largest crawler crane manufactures in the world) as an officer and Managing Director
      between 1994 and 1997.  During his tenure with The Manitowoc Company, Mr. Davis
      reported directly to the Chief Executive Officer (CEO).    He also worked for Favelle
      Favco Cranes USA, Inc. between 1997 and 1999 as President and Managing Director.
      Additionally, he has knowledge of and the know- how of the crawler crane concept
      (**"Davis Crawler Cranes"**) which he conceived and developed.

      Mr. Davis has knowledge of the contents of the Employment Contract dated June 23,
      1997 which he signed with Favelle Favco.  He also has knowledge of the fact that he was
      terminated as President and Managing Director of Favco USA on or about September 8,
      1999, and of the damages he sustained and continues to sustain because of said
      termination.  He also has knowledge of the Shareholders' Agreement between him and
      Favelle Favco Cranes Holdings SDN BHD, and of the damages he has sustained because
      of Defendants' breach of said agreement.

Additionally, Mr. Davis has knowledge of the efforts and work undertaken by him in developing his ideas and concepts concerning the unique line of crawler cranes referred to as **"Davis Crawler Cranes"** which are the subject of U.S. Patent No. 6,003,252 (**"the 252 patent"**). He has knowledge of the actions under taken by him to apply for and obtain U.S. Patent NO. 6,003,252 (**"the 252 patent"**). He also has knowledge of the fact that he is the inventor and owner of U.S. Patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21, 1999 entitled **"Conversion Apparatus and Method for Use with Excavator and Crane Devices"**. . He also has knowledge of the fact that the Favelle Favco companies violated his trade secrets and continue to violate his trade secrets in regard to the **"Davis Crawler Cranes."**

Moreover, Mr. Davis has knowledge of the attorney's fees that he has incurred and will incur in the future in this case.

Mr. Davis also has knowledge of the fact that the Defendants have infringed and continue to infringe on his **252 patent**. Additionally, Mr. Davis has knowledge of the damages and/or injury caused by Defendants' actions or patent infringement and how he will continue to suffer irreparable injury if the Defendants are not stopped from continuing to infringe on Mr. Davis' patent. (**NOTE:** Mr. Davis' deposition was taken on March 11, 2000 and May 12, 2000, respectively, in regard to this case. His deposition testimony is incorporated herein as if fully copied and set forth at length).

2.      Shirleen Lee
        c/o Muhibbah Engineering (M) BHD
        Lot 586 & 579, 2nd Mile
        Jalan Batu Tiga Lama
        41300 Klang
        Selangor Darul Ehsan, Malaysia
        (603) 342-4322 or (603) 342-4323

Ms. Lee is the Group Finance Manager for Muhibbah Engineering (M) BHD. She has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Mr. Davis reasonably believes that Ms. Lee has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Ms. Lee may also have knowledge of Defendants' " net worth". Ms. Lee also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. She also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Ms. Lee has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes"**. (**NOTE**: It may not be possible to call Ms. Lee to testify as a witness due to logistical circumstances and subpoena range. However, Ms. Lee is still being listed herein out of an abundance of caution in the event her testimony is needed at trial and can possibly be obtained.

2

3.      Cheam Tek Siong
        c/o Favelle Favco Cranes (USA), Inc.
        4 Mile East 106, Port of Harlingen
        P.O. Box 3049
        Harlingen, Texas  78551-3049
        (956) 4258-7488

Cheam is the General Manager of Favelle Favco Cranes (USA), Inc.. He has knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco. He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of Favco USA on or about September 8, 1999. He also has knowledge of the Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Mr. Cheam also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Mr. Cheam should also have knowledge of Defendants' "net worth". Mr. Cheam also has knowledge of the agreement entered into by Mr. Davis and  the Favelle Favco Cranes defendants on or about June 23, 1997. He also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Mr. Cheam has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes"**. **(NOTE:** Mr. Cheam's deposition was taken on **July 11, 2000** in both this case and the 197th Judicial District Court case by agreement of the parties. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

4.      Mac Ngan Boon
        Lot 586 & 579, 2nd Mile
        Jalan Batu Tiga Lama
        41300 Klang
        Selangor Darul Ehsan, Malaysia
        (603) 342-4322 or (603) 342-4323

Mac is the Chairman of the Board of Muhibbah Engineering (M) BHD. He has knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco. He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of Favco USA on or about September 8, 1999. He also has knowledge of the Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Mr. Mac also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Mr. Mac should also have knowledge of Defendants' "net worth". Mac also has knowledge of the agreement entered into by Mr. Davis and  the Favelle Favco Cranes defendants on or about June 23, 1997. He also has knowledge of the fact that the

3

Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Mr. Mac has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes."** (**NOTE:** Mr. Mac's deposition was taken on July 12, 2000 in both this case and the 197th Judicial District Court case by agreement of the parties. His deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

5.   Greta L. Sullivan
     50 Casa de Amigos
     Brownsville, Texas 78521
     (956) 544-7663

Ms. Sullivan is the former Accounts Manager for Favelle Favco Cranes (USA), Inc.. He has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Ms. Sullivan also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 **("the 252 patent")** issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. She also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. She also has knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. **(NOTE:** Ms. Sullivan's deposition was taken on **August 17, 2000** in both this case and the 197th Judicial District Court case by agreement of the parties. Her deposition testimony is incorporated herein by reference the same as if fully copied and set forth at length.).

6.   Michael Khoo
     c/o Favelle Favco Cranes (USA), Inc.
     4 Mile East 106, Port of Harlingen
     P.O. Box 3049
     Harlingen, Texas   78551-3049
     (956) 428-7488

Mr. Khoo is the current General Manager of Favelle Favco Cranes (USA) Inc.. He has knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco. He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of Favco USA on or about September 8, 1999. He also has knowledge of the Shareholder's Agreement between Mr. Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD. Mr. Khoo also has knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 **("the 252 patent")** issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Mr. Khoo also has knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. He also has knowledge of the fact that Defendants have infringed and continue to infringe

4

on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Mr. Khoo has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes."**

7.  Willie C. Jones
    2901 Haine Drive, #2005
    Harlingen, Texas  78550
    (956) 425-2358

Mr. Jones is a former employee of the Defendants.  He has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Favelle Favco Cranes Holdings SDN BHD.  Mr. Jones may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 **("the 252 patent")** issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**.  Mr. Jones may also have knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997.  He may also have knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**.  Additionally, Mr. Jones may have knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes."**

8.  Keith J. Orgeron, P.E.
    c/o Integra Engineering
    2241 Loma Rica Circle
    Prescott, Arizona  86303
    (520) 443-8958

Mr. Orgeron has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Faveoli Favco Cranes Holdings SDN BHD.  Mr. Orgeron may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 **("the 252 patent")** issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**.  Mr. Orgeron may also have knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997.  He may also have knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Mr. Jones has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes."** Mr. Orgeron also has knowledge about Engineering work which he undertook in regard to the **"Davis Crawler Cranes."**

5

9.    Andres Garcia, P.E.
2777 Briar Grove #905
Houston, Texas   77057
(713) 953-9849

Mr. Garcia has knowledge of the Shareholders' Agreement between Mr Daniel E. Davis and Faveoli Favco Cranes Holdings SDN BHD. Mr. Garcia may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. patent No. 6,003,252 (**"the 252 patent"**) issued by the United States Patent and Trademark office on December 21 1999 entitled **"Conversion Apparants and Method for Use with Excavator and Crane Devices"**. Mr. Garcia may also have knowledge of the agreement entered into by Mr. Davis and the Favelle Favco Cranes defendants on or about June 23, 1997. He may also have knowledge of the fact that Defendants have infringed and continue to infringe on Mr. Davis' **252 patent** by making, using, and selling cranes covered by **the 252 patent**. Additionally, Mr. Jones has knowledge of the fact that the Favelle Favco companies violated and/or misappropriated Mr. Davis' trade secrets and continue to do so in regard to the **"Davis Crawler Cranes."**

10.   Hon. Ernesto Gamez, Jr. (EXPERT WITNESS)
**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas   78520
(956) 541-3820

Mr. Gamez is a licensed attorney. He has knowledge of the legal work that has been performed on behalf of **DANIEL E. DAVIS** and the time expended to complete said work. He has further knowledge of the attorney's fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of this case. He is familiar with the hourly rate which is customarily charged in these types of cases in this area, and is expected to testify that the attorney's fees that **MR. DAVIS** has incurred are reasonable and customarily.

11.   Victor Quintanilla (EXPERT WITNESS)
**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas   78520
(956) 541-3820

Mr. Quintanilla is an associate attorney with the LAW OFFICES OF ERNESTO GAMEZ, JR., P.C.. He has knowledge of the legal work that he has performed on behalf of **DANIEL E. DAVIS** and the time expended to complete said work. He has further knowledge of the attorney's fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of his case. He is familiar with the hourly rate which is customarily charged in these types of cases in this area, and is expected to testify that the attorney's fees incurred by **Mr. DAVIS** are reasonable and customarily.

12.   Alton W. Payne, Ph.D. ( FACT and/or EXPERT WITNESS)
      **PAYNE & D'AMBROSIO, L.L.P.**
      800 Wilcrest, Suite 160
      Houston, Texas  77027-3008
      (713) 840-8008

      Mr. Payne is a licensed attorney who specializes in intellectual property law.  He has
      knowledge of the legal work that has been performed on behalf of **DANIEL E. DAVIS**
      and the time expended to complete said work.  He also has knowledge of the attorney's
      fees which **DANIEL E. DAVIS** has incurred and will continue to incur in the litigation of
      this case.  Mr. Payne also has knowledge with the hourly rate which is customarily
      charged in these types of cases and is expected to testify that the attorney's fees that **MR.
      DAVIS** has incurred are reasonable and customarily.  Additionally, Mr. Payne has
      knowledge of the patent application submitted by **MR. DAVIS** to the United States
      Patent and Trademark office and the work undertaken by him which ultimately resulted in
      **MR. DAVIS** being issued U.S. Patent No. 6,003, 252 **("the 252 patent")** on December
      21, 1999.  Moreover, Mr. Payne has knowledge of the legal work to obtain patents such
      as the 252 patent.

13.   Richard H. Robey (FACT and/or EXPERT WITNESS)
      2219 Jarosa Lane
      Superior, Colorado  80027
      (303) 298-9322

      Mr. Robey is a crane marketing and development expert.  He has been involved in the
      sales and marketing of cranes for several years.  Mr. Robey has knowledge about the fact
      that Mr. Daniel E. Davis came up with the concept or idea which is the subject of U.S.
      Patent No. 6,003,252 **("the 252 patent")** issued by the United States Patent and
      Trademark office on December 21, 1999 entitled **"Conversion Apparatus and Method
      for use with Excavator and Crane Devices".**  Mr. Robey has knowledge that Mr. Davis
      initiated this concept or idea while he (i.e. Mr. Davis) was employed by Manitowoc.  Mr.
      Robey also has knowledge and is familiar with the concept or idea and subject matter
      invented by Mr. Davis.  Mr. Robey may also have knowledge of the fact that Defendants
      and/or Counter-Defendants have violated Mr. Davis' trade secrets and continue to violate
      his trade secrets.  Additionally, Mr. Robey has knowledge of the contents of his report
      dated July 31, 2000 and the discussion of the facts included therein. (**NOTE:** Mr. Robey's
      deposition was taken on October 12, 2000 in both this case and the 197th Judicial District
      Court case by agreement of the parties.  His deposition testimony is incorporated herein
      by reference the same as if fully copied and set forth at length.).  (**ALSO NOTE:** Mr.
      Robey will be called to testify at trial by way of videotaped deposition).

14.   Loren G. Helmreich (EXPERT WITNESS)
      **BROWNING BUSHMAN**
      Attorneys at Law
      5718 Westheimer, Suite 1800
      Houston, Texas  77057
      (713) 266-5593

CUtePDF - www.fwsolu.com

Mr. Helmreich is a licensed attorney who specializes in intellectual property law. Mr. Helmreich was retained by Plaintiff and/or Counter-Plaintiffs as an expert witness to testify as to issues relating to inventorship, ownership of intellectual property rights, shop rights, confidential information and trade secrets, the relationship between such technology and patents, and the three (3) year license agreement between **MR. DAVIS** and Favelle Favco. Mr. Helmreich has knowledge of these said issues by virtue of his education, training, experience, and review of the facts and certain documents pertaining to this case. Mr. Helmreich also has knowledge of the contents of his written reports and amended expert reports which he prepared in this civil action and the 197th Judicial District Court case. **NOTE**: Mr. Helmreich's deposition was taken on September 1, 2000 in both this case and the 197th Judicial District Court case by agreement of the parties. His deposition testimony is incorporated herein as if fully copied and set forth at length.).

15.  Jim Rusk
c/o J.A. Rusk Engineering
11713 Fuller
Kansas City, Missouri 64134
(816) 763-9003

Mr. Rusk is an engineer who was hired to reduce Mr. Davis' ideas and concepts of the crawler cranes **"Davis Crawler Cranes"** to plans, specifications, models, and/or writing. Mr. Rusk has knowledge of the conversations and/or communications he had with Mr. Davis in regard to Mr. Davis' ideas and concepts of the subject crawler cranes. Mr. Rusk also has knowledge of the engineering drawings and/or plans he prepared in regard to the subject crawler cranes. Mr. Rusk may also have knowledge of the sketches of the subject crawler cranes prepared by Mr. Davis. Furthermore, Mr. Rusk has knowledge of the contents and/or subject matter of the documents entitled "Caterpillar-Manitex Crawler Proposal" (02/20/97) as well as the contents and/or subject matter of all documents, facsimiles, information, drawings, sketches, and/or items exchanged between him and Womack and between him and Manitex, Inc. regarding LMI Injunction Box Crawler 320, Gallotti Car Body Specifications, and Electrical Schematics for the Crawler 320, respectively. Any additional knowledge known to or held by Mr. Rusk is unknown to Plaintiff and/or Counter-Plaintiffs at this time.

16.  James E. Hopkins
c/o Asiatrak
#169 Hai Ein Jiu Road
Attn: Port Free Trade Zone
Taian Jin, China 300456
011-86-2223355888 #1905

Mr. Hopkins has knowledge of Mr. Davis' ideas and concepts of the Crawler Cranes made the subject of this lawsuit. He also has knowledge that Mr. Davis originated the idea and/or concept of the crawler cranes prior to him (i.e. Mr. Davis) working for FFC USA. Mr. Hopkins also has knowledge of the Design Ownership/Responsibility Agreements between CIPI and FFC USA dated August 21, 1998 and March 29, 1999, respectively and their respective contents. Mr. Hopkins also has knowledge of the Purchase Orders made by or caused to be made by FFC USA in regard to Upper and Lower Structures and/or

other cranes components. Additionally, Mr. Hopkins has knowledge of the contents and/or subject matter of his discussions with either **Cheam Tek Siong, Mac Ngan Boon, Bud Davis, Daniel E. Davis, Carl Allen, Anker B. Henningsen, Julian Gallego, Glenn G. Dyer, David A. Schuldt, Koichi Monikawa, and/or any agent, employee, and/or representative of Favelle Favco Cranes USA, Inc., Favelle Favco Holdings SDN BHD, and/or Favelle Favco Cranes (M) SDN BHD in regard the Crawler Cranes, etc.**. Furthermore, Mr. Hopkins has knowledge of the contents and/or subject matter of all e-mails, memorandums, or other documents which he generated to either Cheam Tek **Siong, Mac Ngan Boon, Bud Davis, Daniel E. Davis, Carl Allen, Anker B. Henningsen, Julian Gallego, Glenn G. Dyer, David A. Schuldt, Koichi Monikawa, and/or any agent, employee, and/or representative of Favelle Favco Cranes USA, Inc., Favelle Favco Holdings SDN BHD, and/or Favelle Favco Cranes (M) SDN BHD in regard the Crawler Cranes, etc.** (**NOTE:** It may not be possible to call Mr. Hopkins to testify as a witness due to logistical circumstances and subpoena range. However, Ms. Hopkins is still being listed herein out of an abundance of caution in the event his testimony is needed at trial and can possibly be obtained.).

17.   Joe E. Conway
       c/o Manitex
       P.O. Box 1609
       3000 South Austin Avenue
       Georgetown, Texas 78627-1609

       Mr. Conway is the Executive President & General Manager of Manitex. He has knowledge of the contents of the February 12, 1999 letter to Mr. Davis, including the attached agreement, and any other correspondence, e-mails, memorandums, and/or documents between him and Mr. Davis. He also has knowledge of the conversations and/or communications he has had with Mr. Davis in regard to Mr. Davis' ideas and concepts of the subject Crawler Cranes. He also has knowledge that Mr. Davis originated the idea and/or concept of the crawler cranes (**"Davis Crawler Cranes"**) prior to him (i.e. Mr. Davis) working for FFC USA. Mr. Conway may also have knowledge of the fact that Mr. Davis is the inventor and owner of U.S. Patent No. 6,003,252 (**"the 252 patent"**). Any additional knowledge held by Mr. Conway is unknown to Plaintiff at this time.

18.   Dennis Sanchez
       **SANCHEZ, WHITTINGTON
       JANIS & ZABARTE, L.L.P.**
       100 N. Expressway 83
       Brownsville, Texas   78521
       (956) 546-3731

Mr. Sanchez is an attorney who prepared the new Shareholders' Agreement between Mr. Davis and Favelle Favco Cranes (M) SDN BHD.  He has knowledge of its contents as well as the various drafts he prepared.  Mr. Sanchez also has knowledge that the terms and conditions of said Shareholders' Agreement had been agreed to by the parties. (**NOTE:** Mr. Sanchez will not be asked to divulge or testify as to any matters constituting attorney-client privilege or attorney-work product.).

19.   Kenneth Wayne Dunkum
      521 East Washington
      Port Isabel, Texas   78578
      (956) 943-6803

      Mr. Dunkum is the former Electrical Superintendent, Assembly Manager, and Safety Coordinator for **Favelle Favco Cranes USA, Inc.**.  He has knowledge of the contents and/or subject matter of the affidavit he executed on September 20, 2000.  He also has knowledge of Mr. Davis' employment with Favelle Favco Cranes USA, Inc. and of his (i.e. Mr. Davis') idea and concept concerning the unique line of crawler cranes referred to as **"Davis Crawler Cranes"** which are the subject **of** U.S. Patent No. 6,003,252 (**"the 252 patent"**).

20.   Ralph Barrera
      414 Orange Lane
      Laguna Vista, Texas   78578
      (956) 943-2647

      Mr. Barrera is the former Purchasing and Logistics Manger for Favelle Favco Cranes USA, Inc..  He has knowledge of the contents and/or subject matter of the affidavit he executed on October 20, 2000 in regard to this case.  He also has knowledge of Mr. Davis' employment with Favelle Favco Cranes USA, Inc. and of his (i.e. Mr. Davis') idea and concept concerning the unique line of crawler cranes referred to as **"Davis Crawler Cranes"** which are the subject **of** U.S. Patent No. 6,003,252 (**"the 252 patent"**).

21.   Mike Metcalf
      c/o Favelle Favco Cranes USA, Inc.
      4 Mile East 106, Port of Harlingen
      Harlingen, Texas   78551-3049
      (956) 428-7488
      (956) 801-6861-cellular

      Mr. Metcalf is the current Quality Assurance/Quality Control Manager for Favelle Favco Cranes USA, Inc..  He may have knowledge of the contents of the Employment Contract dated June 23, 1997 which Mr. Davis signed with Favelle Favco.  He also has knowledge of the fact that Mr. Daniel E. Davis was terminated as President and Managing Director of

10

| No. | Description | Adm. | Exd. |
|---|---|---|---|
| 19 | Laser Photograph of 38 Ton Unit | | |
| 20 | Laser Photograph of 50 Ton Unit | | |
| 21 | Laser Photograph of 50 Ton Unit (Caterpillar Power Module) | | |
| 22 | Diagram of 50 MT Crane (with Dimensions) | | |
| 23 | Laser Photographs of FFC-50MT Crane | | |
| 24 | Laser Photographs of FFC-50MT Crane | | |
| 25 | Laser Photographs of FFC-50MT Crane | | |
| 26 | FIG. 8 200105 | | |
| 27 | FIG. 9 and FIG. 10 200106 | | |
| 28 | FIG. 12 200107 | | |
| 29 | FIG. 13 and FIG. 14 200108 | | |
| 30 | FIG. 15 and FIG. 16 200109 | | |
| 31 | Resume of Loren G. Helmreich | | |
| 32 | Expert Report of Loren G. Helmreich (08/03/00) (Federal Court) | | |
| 33 | Report of Richard Robey (07/31/00) | | |
| 34 | Transcript of the Oral Deposition of Cheam Tek Siong (07/11/00) with Exhibits | | |
| 35 | Transcript of the Oral Deposition of Mac Ngan Boon (07/12/00) with Exhibits | | |
| 36 | Transcript of Telephonic Video Deposition of Richard Howard Robey (10/12/00) with Exhibits | | |
| 37 | Transcript of the Oral Deposition of Loren G. Helmreich (09/01/00) with Exhibits | | |
| 38 | Transcript of the Oral and Videotaped Deposition of Daniel E. Davis (05/11/00) (Volume I) with Exhibits | | |
| 39 | Transcript of the Oral and Videotaped Deposition of Daniel E. Davis (05/12/00) (Volume II) with Exhibits | | |
| 40 | Transcript of the Oral Deposition of Greta Sullivan (08/17/00) with Exhibits | | |
| 41 | First Amended Expert Report of Loren G. Helmreich (08/18/00) | | |
| 42 | Certified copy of the Prosecution History of U.S. Patent No. 6,003,252 | | |
| 43 | Letter and/or Memorandum from Yee to Mac Ngan Boon (04/07/99) | | |

| No. | Description | Adm. | Exd. |
|-----|-------------|------|------|
| 44 | Confidentiality Agreement (11/22/97) (Re: FFC USA and ECCON) | | |
| 45 | Design Ownership/Responsibility Agreement 1. Cranes Utilizing Standard Hydraulic Excavator Main Frames (08/21/98) | | |
| 46 | Design Ownership/Responsibility Agreement 2. Cranes Utilizing Custom Main Frames (08/21/98) | | |
| 47 | Design Ownership/Responsibility Agreement 3. Cranes Utilizing Telehandler Power Modules (03/29/99) | | |
| 48 | Engineering Consulting Services Agreement (Keith J. Orgeron, P.E. & FFC USA) (01/18/98) | | |
| 49 | Memo (Daniel E. Davis to Mac Ngan Boon) (06/23/98) | | |
| 50 | Confidentiality Agreement (FFC Malaysia and Daniel E. Davis) (09/98) | | |
| 51 | Letter from J.A. Rusk Engineering to Danny E. Davis (06/03/98) | | |
| 52 | Distribution Agreement (FFC USA and Mustang Tractor & Equipment Company) (05/12/99) | | |
| 53 | Draft of Shareholders' Agreement (03/16/99) (Shirleen Lee to Daniel E. Davis) | | |
| 54 | Draft documents (06/10/97) (Michael Chen to Favelle Favco Cranes (M) (SDN BHD) (Re: Shareholders' Agreement) | | |
| 55 | May 28, 1997 letter (Daniel E. Davis to Mac Ngan Boon) (Re: Shareholders' Agreement) | | |
| 56 | First Amended Expert Report of Loren G. Helmreich (09/15/00) | | |
| 57 | Issues to be incorporated in the New Shareholders' Agreement of FFC-USA | | |
| 58 | Curriculum Vitae of Stephen M. Horner, Ph.D. | | |
| 59 | Report and Amended Report from Stephen M. Horner, Ph.D. | | |
| 60 | Report from Stephen M. Horner, Ph.D. (08/17/00) | | |
| 61 | Appendix B to Dr. Horner's report | | |
| 62 | Business Plan form Davco, Inc. (March 2000) | | |
| 63 | Business Plan from Davco, Inc. (June 2000) | | |
| 64 | Facsimile Transmittal (Cheam to Davis) (02/08/99) | | |
| 65 | Letter from Daniel E. Davis to Mac Ngan Boon (11/16/97) | | |
| 66 | Facsimile from Daniel E. Davis to Cheam Tek Siong (08/06/98) | | |

| No. | Description | Adm. | Exd. |
|-----|-------------|------|------|
| 67 | Article from Cranes Today (August 2000) | | |
| 68 | Fax Transmission (Mac Ngan Boon to Daniel E. Davis) (02/10/99) | | |
| 69 | Letter from Daniel E. Davis to Mac Ngan Boon (02/06/99) | | |
| 70 | Letter from Daniel E. Davis to Mac Ngan Boon (02/10/99) | | |
| 71 | Certificate for Coburn International Limited (09/04/97) | | |
| 72 | Certificate for Favelle Favco Cranes Holdings, SND BHD (09/04/97) | | |
| 73 | Minutes of the Annual Meeting of Shareholders and Board of Directors of Favelle Favco Cranes USA, Inc. | | |
| 74 | Consent to Action by all Shareholders and Directors of Favelle Favco Cranes USA, Inc. (01/14/99) | | |
| 75 | Consent to Action by all Shareholders and Directors of Favelle Favco Cranes USA, Inc. (11/29/97) | | |
| 76 | Minutes of the Organization Meeting of the Directors of Favelle Favco Cranes USA, Inc. (09/04/97) | | |
| 77 | Letter to Anker B. Henningsen from Jim E. Hopkins (11/19/98) | | |
| 78 | Cranes Today Article (10/00) | | |
| 79 | Internal Memorandum to Danny E. Davis from T.S. Cheam (05/12/97) | | |
| 80 | Letter to Daniel E. Davis from Jim Rusk | | |
| 81 | Minutes of the Special Meeting of Board of Directors of Favelle Favco Cranes USA, Inc. (10/03/97) | | |
| 82 | Expert Report of Loren G. Helmreich (08/14/00) (State Court) | | |
| 83 | Letter from Joe Conway, Manitex to Daniel E. Davis, FFC USA | | |
| 84 | May 1999 Cranes Today Article (Trucks and booms) | | |
| 85 | Letter from Daniel E. Davis to Mac Ngan Boon (01/20/99) | | |
| 86 | Facsimile from Katherine Wong to Daniel E. Davis (Re: Shareholders' Agreement) (05/20/97) | | |
| 87 | Passport Pages from Daniel E. Davis' Passport | | |
| 88 | Letter from Daniel E. Davis to Mac Ngan Boon (12/21/98) | | |

UNITED STATES DISTRICT COURT ☆ SOUTHERN DISTRICT OF TEXAS

| DANIEL E. DAVIS<br>versus<br>FAVELLE FAVCO CRANES USA, INC.<br>and FAVELLE FAVCO CRANES (M) SDN<br>BHD | Case No. B-00-003 |
| --- | --- |
| | **AMENDED<br>EXHIBIT LIST** |
| Judge Hilda G. Tagle | Case Manager: Letty Garza<br>Court Reporter: Breck Record |
| List of Defendants | Proceeding                    Date |

| No. | Description | Adm | Exd |
| --- | --- | --- | --- |
| 1 | 09/03/97 CERTIFICATE OF INCORPORATION of FFC USA | | |
| 2 | 09/04/97 MINUTES of Organizational Meeting of Directors of FFC USA | | |
| 3 | ORGANIZATIONAL CHART (color) | | |
| 4 | FCC 28 ton BROCHURE;<br>(EXHIBIT 12 to Davis Deposition) | | |
| 5 | FFC 38 ton BROCHURE;<br>(EXHIBIT 13 to Davis Deposition) | | |
| 6 | FFC 50 ton BROCHURE;<br>(EXHIBIT 14 to Davis Deposition) | | |
| 7 | FFC 9 ton Brochure;<br>(EXHIBIT 11 to Davis Deposition) | | |
| 8 | 11/16/97 LETTER from Danny Davis, FFC USA to Muhibbah Engineering,<br>Attn: Mac Ngan Boon, Cheam Tek Siong, Tee Yin Tiong; re: Need to execute Eccon<br>contract, contract attached<br>(EXHIBIT 29 to Davis Deposition) | | |
| 9 | 11/22/97 Executed CONFIDENTIALITY AGREEMENT between FFC USA,<br>FFC Malaysia and ECCON Engineering referenced in #8 above for engineering<br>services<br>(EXHIBIT 4 to Davis Deposition) | | |
| 10 | 10/27/97 QUOTATION No. 970387 from ECCON, H. Zimmerman, C. Hartl to FFC<br>USA, Daniel Davis | | |
| 11 | 04/30/98 FAX from Daniel Davis, FFC USA, to Sroufe, Payne & Lundeen, Attn: Al<br>W. Payne, re: Sending via fed ex signed 11/22/97 contract between ECCON, FFC<br>Malaysia and FFC USA | | |

| 12 | 04/30/98 LETTER from Daniel Davis to Al Payne, re: ECCON Agreement | | |
|----|--------------------------------------------------------------------|---|---|
| 13 | 02/03/98 ENGINEERING CONSULTING AGREEMENT Rev. 3, between Keith Orgeron and FFC USA for engineering services;<br>(EXHBIT 9 to Davis Deposition) | | |
| 14 | Keith Orgeron/Integra BILLS | | |
| 14A | 12/01/1997-02/28/98Integra Engineering Expense Report re: FFC USA Project(s) | | |
| 14B | 02/16/98 STATUS REPORT LETTER #01 from Integra Engineering to Daniel Davis, FFC USA | | |
| 14C | 02/16/98 Letter from Keith Orgeron, Integra, to FFC USA attn:Daniel E. Davis, President, re: Status Report #01 | | |
| 14D | 03/02/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0201)<br>03/02/98  Invoice from Keith Orgeron, Integra, to FFC USA attn: Purchasing re: Invoice #98-IE-0201 | | |
| 14E | 04/06/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0202)<br>04/06/98  Invoice from Keith Orgeron, Integra, to FFC USA attn: Purchasing re: Invoice #98-IE-0202<br>03/30/98-04/04/98  Integra Engineering Expense Report re: FFC USA's Project(s) | | |
| 14F | 03/01/98-03/29/98 Integra Engineering Expense Report re: FFC USA's Project(s) | | |
| 14G | 04/05/98-04/10/98 Integra Engineering Expense Reprot re: FFC USA's Project(s) | | |
| 14H | 05/05/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (398-IE-0203)<br>05/05/98 Invoice from Keith Orgeron, Integra, to FFC USA attn: Purchasing re: Invoice #98-IE-0203<br>Notes and Memos made in April 1998 | | |
| 14I | 05/18/98 Fax from Keith Orgeron, Integra, to Mr. D.E. Davis<br>Manhour Status Report to May 17, 1998 | | |
| 14J | 06/09/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0204)<br>06/09/98 Invoice from Keith Orgeron, Integra, to FFC USA attn: Purchasing re: Invoice #98-IE-0204<br>Manhour Status Report, June 1998<br>FFC USA check dated 07/21/98 payable to Integra Engineering for $10,624.00. | | |
| 14K | 04/11/98-06/10/98 Integra Engineering Expense Report re: FFC USA Project(s) | | |
| 14L | 06/24/98 FAX from Keith Orgeron, Integra to Danny Davis with invoice | | |

| 14M | 07/09/98 Letter from Keith Orgeron, Integra, to FFC USA attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0205)<br>       07/09/98 Invoice from Keith Orgeron, Integra, to FFC USA attn: Purchasing re: Invoice #98-IE-0205<br>       Manhour Status Report, June 1998 | | |
|---|---|---|---|
| 14N | 08/08/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0206)<br>       08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0206<br>       Manhour Status Report, July 1998<br>       FFC USA Check dated 09/17/98 payable to Integra Engineering for     $5,793.75.<br>       08/08/98 Invoice from Keith Orgeron, Integra to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0206 | | |
| 14O | 09/13/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0207)<br>       08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0207<br>       FFC USA Check dated 10/07/98 payable to Integra Engineering for     $5,437.50. | | |
| 14P | 10/10/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0208)<br>       08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0208 | | |
| 14Q | 11/09/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0209)<br>       08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0209 | | |
| 14R | 12/04/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#98-IE-0210)<br>       08/08/98 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #98-IE-0210<br>       FFC USA Check dated 01/06/99 payable to Integra Engineering for     $13,725.00 | | |
| 14S | 02/14/99  Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#99-IE-0213-A and #99-IE-0213-B)<br>       Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0213-A<br>       02/14/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice # 99-IE-0213-B | | |
| 14T | 04/07/99 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Status Report for Invoice (#99-IE-0215-A and #99-IE-0215-B)<br>       04/07/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0215-A.<br>       04/07/99 Invoice from Keith Orgeron, Integra, to FFC USA, attn: Accounts Payable re: Invoice #99-IE-0215-B | | |

| | | | |
|---|---|---|---|
| 14U | 02/27/98 Letter from Keith Orgeron, Integra, to FFC USA, attn: Daniel E. Davis, President, re: Engineering Copiers, Scanners & Plotters | | |
| 15 | 05/29/98 LETTER from Jim Rusk, J.A. Rusk Engineering, Kansas City, Missouri to Daniel Davis, FFC USA, re: Schedule for 28 Ton and 38 Ton units engineering services for FFC USA | | |
| 16 | 06/03/98 FAX from J.A. Rusk Engineering to Danny Davis, FFC USA with attached Description of Services Rendered for FFC USA; (EXHIBIT 26 to Davis Deposition) | | |
| 17 | 08/16/98 INVOICE from J.A. Rusk Engineering to FFC USA | | |
| 18 | 05/16/99 FAX from Jim Rusk to Danny Davis, re: Budgetary estimates with attached estimated numbers for the 50 and 75 ton engineering services for FFC USA | | |
| 19 | 11/23/99 ACCOUNT RECONCILIATION–J.A. Rusk Account, FFC USA | | |
| 20 | 12/13/99 FAX from Jim Rusk to Cheam T.S., FFC USA re: breakdown of changes and explanation of cost overrun with summary of 1998 and 1999 project work performed for FFC USA | | |
| 21 | 06/14/98 LETTER from Fredrick G. Lautz, Quarles & Brady to Mac Ngan Boon, Muhibbah Engineering (M) BHD, re: Davis' previous employment with Manitwoc | | |
| 22 | 06/23/98 MEMO from Daniel Davis to Mac Ngan Boon; re: Davis' response to Lautz letter denying use of Manitwoc's work (EXHIBIT 10 to Davis Deposition) | | |
| 23 | 08/21/98 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 1, Cranes Utilizing Standard Hydraulic Excavator Main Frames, among CAT, FFC USA and FFC Malaysia; (EXHIBIT 5 to Davis Deposition) | | |
| 24 | 08/21/98 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 2, Cranes Utilizing Custom Main Frames, among CAT, FFC USA and FFC Malaysia; (EXHIBIT 6 to Davis Deposition) | | |
| 25 | 03/29/99 Executed DESIGN OWNERSHIP/RESPONSIBILITY AGREEMENT 3, Cranes Utilizing Telehandler Powermodules between CAT and FFC USA; (EXHIBIT 7 to Davis Deposition) | | |
| 26 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by FFC USA and accepted by Bill Young, Victoria Machine & Fab. Co. | | |
| 27 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by FFC USA and accepted by P. Hines, Femco Machine Company | | |
| 28 | 02/25/98 AGREEMENT: Proprietary Information Agreement issued by FFC USA and accepted by Daryl D. Gates, Aero American Cranes | | |
| 29 | 07/20/98 LETTER from Robway Safety Systems PTY LTD to FFC USA, Attn: Daniel Davis, re:Robway Agreement to provide services to FFC USA | | |
| 30 | 08/01/98 FFC USA Employee Handbook | | |

| | | | |
|---|---|---|---|
| 31 | 08/06/98 FAX (on Hotel Negara Singapore Guest Stationery) from T.S. Cheam to Danny Davis FFC USA, re:FFC Crawler–Discussions with Jim Hopkins | | |
| 32 | 08/06/98 FAX from Daniel Davis, FFC USA to T.S. Cheam, re: Cheam's fax from Negara regarding CAT Agmt. | | |
| 33 | 08/10/98 FAX from Cheam to FFC USA, Attn: Danny Davis, re: patent application | | |
| 34 | 05/20/97 FAX (5:30 p.m.) From Katherine Wong, FFC Malaysia to New World Hotel, Hong Kon, Danny Davis with attached draft AGREEMENT between FFC Malaysia and Danny Davis | | |
| 35 | 05/28/97 Unsigned LETTER from Daniel Davis to Mac Ngan Boon, FFC Malaysia; re: Davis' comments to draft Shareholders' Agreement | | |
| 36 | 06/10/97 LETTER from Michael Chen & Lee (attorneys) to Cheam, FFC Malaysia, re: Draft Shareholders' Agreement and related documents | | |
| 37 | 06/10/97 COVER LETTER from Michael Chen & Lee (attorneys) to Cheam, FFC Malaysia, with attachments and instructions of Cheam to send to Davis | | |
| 38 | 03/16/99FAX from Shirleen Lee to Danny Davis with draft of Shareholders' Agreement | | |
| 39 | 04/08/99 Draft Shareholders' Agreement | | |
| 40 | 04/20/99 "Draft 2" Shareholders' Agreement | | |
| 41 | 04/25/99 "Draft 3" Shareholders' Agreement | | |
| 42 | 04/28/99 "Draft 4" Shareholders' Agreement | | |
| 43 | 05/01/99 "Draft 5" Shareholders' Agreement | | |
| 44 | 05/02/99 "Revised Draft 6" Shareholders' Agreement | | |
| 45 | 05/02/99 Draft Shareholders' Agreement (no number) | | |
| 46 | 05/04/99 "Draft 8" Shareholders' Agreement | | |
| 47 | 05/06/99 "Draft 9" Shareholders' Agreement | | |
| 48 | ??/??/99 "Draft 10" Shareholders' Agreement | | |
| 49 | 05/06/99 Draft Shareholders' Agreement | | |
| 50 | 08/05/98 NEW APPLICATION TRANSMITTAL by Daniel Davis (Alton Payne) to Commissioner of Patents | | |
| 51 | 10/27/98 LETTER from Al Payne to Daniel Davis at FFC USA, re: trademarks and patent applications billed to FFC USA; (EXHIBIT 22 to Davis Deposition) | | |
| 52 | Al Payne's STATEMENTS to FFC USA | | |
| 52A | 09/30/98 Invoice #809285 from Alton W. Payne to FFC USA | | |
| 52B | 10/31/98 Invoice #810500 from Alton W. Payne to FFC USA | | |

| | | | |
|---|---|---|---|
| 52C | 11/30/98 Invoice #811903 from Alton W. Payne to FFC USA | | |
| 52D | 12/31/98 Invoice #812983 from Alton W. Payne to FFC USA | | |
| 52E | 12/31/98 Invoice #812985 from Alton W. Payne to FFC USA | | |
| 52F | 03/31/99 Invoice #903018 from Alton W. Payne to FFC USA | | |
| 52G | 03/31/99 Invoice #903020 from Alton W. Payne to FFC USA | | |
| 52H | 04/05/99 Letter to from Al Payne to Daniel Davis regarding outstanding invoices with Invoice #903018 and #903020 attached | | |
| 52I | 04/30/99 Invoice #904061 from Alton W. Payne to FFC USA | | |
| 52J | 04/30/99 Invoice #904059 from Alton W. Payne to FFC USA | | |
| 52K | 05/31/99 Invoice #905100 from Alton W. Payne to FFC USA | | |
| 52L | 05/31/99 Invoice #905098 from Alton W. Payne to FFC USA | | |
| 52M | 07/30/99 Invoice #907135 from Alton W. Payne to FFC USA | | |
| 52N | 09/30/99 Invoice #909153 from Alton W. Payne to FFC USA | | |
| 52O | 09/30/99 Invoice #909155 from Alton W. Payne to FFC USA | | |
| 52P | 10/27/99 Invoice #910191 from Alton W. Payne to FFC USA | | |
| 53 | 08/20/98 CALLING CARD for Daniel E. Davis, President, FFC USA | | |
| 54 | 10/29/98 LETTER from Daniel E. Davis, President/Managing Director, FFC USA to CBI Na-Con, attn: Jerry Tubbs, Houston, TX, re: FFC-28 Crawler Crane (Telescopic) with attached Preliminary Static Load Chart | | |
| 55 | 06/14/99 LETTER from Daniel Davis, FFC USA to GAR International, re:Product literature on FFC-9 ton, FFC-28, FFC-38 and FFC-50 | | |
| 56 | 05/11/99 LETTER from Davis, FFC USA to Holt Companies of Texas, re: Crane Literature | | |
| 57 | 03/22/99 LETTER from Al Payne representing Daniel Davis to Muhibbah Engineering, attn: Shirleen Lee | | |
| 58 | 05/21/99 DISTRIBUTION AGREEMENT between FFC USA and Mustang Tractor and Equipment Company (Dealer) | | |
| 59 | All FFC USA PURCHASE ORDERS to Caterpillar | | |
| 59A | 09/08/98 Purchase Order #CFF1234 by FFC USA to Caterpillar<br>   09/08/99   FFC USA Purchase Order-Production  #CFF 1234 | | |
| 59B | 09/19/98 Purchase Order #CFF1261 by FFC USA to Caterpillar<br>   09/19/98   FFC USA Purchase Order-Production # CFF 1261 | | |
| 59C | 12/07/98 Purchase Order #CFF1370 by FFC USA to Caterpillar<br>   12/07/98   FFC USA Purchase Request Requisition #1370 | | |

| | | | |
|---|---|---|---|
| 59D | 12/07/98 Purchase Order #CFF1371 by FFC USA to Caterpillar<br>    12/07/98   FFC USA Purchase Request Requisition #1743 | | |
| 59E | 02/06/99 Purchase Order #CFF1441 by FFC USA to Caterpillar<br>    02/06/99   FFC USA Purchase Request Requisition #0250 | | |
| 59F | 02/06/99 Purchase Order #CFF 1442 by FFC USA to Caterpillar<br>    02/06/99   FFC USA Purchase Request Requisition #0859 | | |
| 59G | 02/06/99 Purchase Order #CFF1443 by FFC USA to Caterpillar<br>    02/06/99   FFC USA Purchase Request Requisition #0871 | | |
| 59H | 02/07/99 Purchase Order #CFF7058 by FFC USA to Caterpillar<br>    02/07/99   FFC USA Purchase Request Requisition #0876 | | |
| 59I | 02/07/99 Purchase Order #CFF7059 by FFC USA to Caterpillar<br>    02/07/99   FFC USA Purchase Request Requisition #0879 | | |
| 59J | 02/07/99 Purchase Order #CFF7065 by FFC USA to Caterpillar<br>    02/07/99   FFC USA Purchase Request Requisition #0880 | | |
| 59K | 03/09/99 Purchase Order #CFF7174 by FFC USA to Caterpillar<br>    03/09/99   FFC USA Purchase Request Requisition #1325 | | |
| 59L | 03/09/99 Purchase Order #CF7174 by FFC USA to Caterpillar<br>    03/09/99   FFC USA Purchase Request Requisition #1325 | | |
| 59M | 03/16/99 Purchase Order #CFF7173 by FFC USA to Caterpillar<br>    03/09/99   FFC USA Purchase Request Requisition #1324 | | |
| 59N | 05/01/99 Purchase Order #CFF7057 by FFC USA to Caterpillar<br>    02/04/99   FFC USA Purchase Request Requisition #1742 | | |
| 59O | 05/01/99 Purchase Order #CFF-80031 by FFC USA to Caterpillar<br>    03/28/98   FFC USA Purchase Order-Production #CFF-80031<br>    06/02/98   FFC USA Purchase Order-Production #SFF-80301 | | |
| 59P | 06/07/99 Purchase Order #CFF7226 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1739 | | |
| 59Q | 06/07/99 Purchase Order #CFF7226 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1739 with attachment | | |
| 59R | 06/11/99 Purchase Order #CFF7224 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1740 | | |
| 59S | 06/11/99 Purchase Order #CFF7224 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1740 | | |
| 59T | 06/11/99 Purchase Order #CFF7225 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1738 | | |
| 59U | 06/11/99 Purchase Order #CFF7225 by FFC USA to Caterpillar<br>    05/10/99   FFC USA Purchase Request Requisition #1738 | | |
| 60 | 04/20/90 E-MAIL from Jim Hopkins, Caterpillar to C.R. Allen FFC USA, re:<br>explanation of cancellation policy | | |

| 61 | 06/99 STRAIN GAUGE TESTING of FFC 38 ton Mobile Crane by Stress Engineering | | |
| --- | --- | --- | --- |
| 62 | 06/99 STRAIN GAUGE TESTING of FFC 28 ton Mobile Crane by Stress Engineering | | |
| 63 | 06/07/99 CHECK 1981, FFC USA payable to Davisco, Inc. for $10,560 | | |
| 64 | 06/24/99 CHECK 2072 FFC USA payable to Davisco Inc. for $10,560 | | |
| 65 | 07/12/99 CHECK 2107 FFC USA payable to DavisCo Inc. for $13,200 | | |
| 66 | U.S. Patent Office FILE HISTORY of U.S. Patent No. 6,003,252 | | |
| 67 | Caterpillar BROCHURES | | |
| 68 | PICTURES of FFC and Caterpillar cranes, assembly area at FFC Harlingen | | |
| 69 | ANSI REPORTS | | |
| 70 | Brochures and documents relating to the sale of crawler cranes in the United States and elsewhere | | |
| 71 | 09/13/99 LETTER for Daniel E. Davis from Payne to Whom It May Concern re:alleged crawler cranedesign of Daniel E. Davis | | |
| 72 | 02/10/99 FAX from Mac Ngan Boon, Muhibbah to Daniel Davis, re:  payments to creditors | | |
| 73 | 02/10/99 FAX from Daniel Davis, FFC USA to Mac Ngan Boon, Muhibbah, re: response to earlier fax from Mac | | |
| 74 | 03/03/99 LETTER from James E. Hopkins, CAT, Singapore to Majorie Hart, Shawnee, Kansas, re: giving permission for FFC USA  to use CAT manuals for FFC USA product literature | | |
| 75 | 05/24/99 FAX from James E. Hopkins, CIPI to Danny Davis, with attached signed letter from M. Morita | | |
| 76 | 08/17/99 FAX from Mac Ngan Boon to Danny Davis, re: Caterpillar Purchase Order | | |
| 77 | 08/26/99 RESPONSE to Trademark Applications | | |
| 78 | DRAWING (EXHIBIT 24 to Davis Deposition) | | |
| 79 | DRAWING (EXHIBIT 25 to Davis Deposition) | | |
| 80 | 9/99-10/99 *Craneworks* article "The multiple lives of a CAT" | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# BROWNSVILLE DIVISION

DANIEL E. DAVIS                         &
                                        &
VS.                                     &   CIVIL ACTION NO. B-00-003
                                        &
FAVELLE FAVCO CRANES USA, INC.,         &
and FAVELLE CRANES (M) SDN BHD,         &

---

FAVELLE FAVCO CRANES USA, INC.          &
                                        &
VS.                                     &
                                        &
DANIEL E. DAVIS, DAVISCO INC.           &
and COBURN INTERNATIONAL                &
                                        &
VS.                                     &   CIVIL ACTION NO. B-00-184
                                        &
FAVELLE FAVCO CRANES USA, INC.,         &
FAVELLE FAVCO CRANES (M) SDN            &
BHD, and FAVELLE FAVCO HOLDINGS         &
SDN BHD                                 &

---

## PLAINTIFF'S AMENDED PROPOSED CHARGE OF THE COURT

---

**MEMBERS OF THE JURY:**

You have heard the evidence in this case. I will now instruct you in the law that you must apply. It is your duty to follow the law as I give it to you. On the other hand, you the jury are the judges of the facts. Do not consider any statement that I have made in the course of trial or make in these instructions as an indication that I have any opinion about the facts of this case.

After I instruct you on the law, the attorneys will have an opportunity to make their closing arguments. Statements and arguments of the attorneys are not evidence and are not instructions on the law. They are intended only to assist the jury in understanding the evidence and the parties' contentions.

Answer each question from the facts as you find them.  Do not decide who you think should win and then answer the questions accordingly.  Your answers and your verdict must be unanimous.

You must answer all questions from a preponderance of the evidence.  By this is meant the greater weight and degree of credible evidence before you.  In other words, a preponderance of the evidence just means the amount of evidence that persuades you that a claim is more likely so than not so.  In determining whether

any fact has been proved by a preponderance of the evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.

In determining the weight to give to the testimony of a witness, you should ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact, or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony the witness gave before you during the trial.

When words are used in this charge in a sense that varies from the meaning commonly understood, you are given a proper legal definition, which you are bound to accept in place of any other meaning.

> **"The 252 patent"** means U.S. patent number 6003252.
> **"Favco USA"** means Favelle Favco Cranes USA, Inc.
> **"Favco Malaysia"** means Favelle Favco Cranes (M) SDN BHD.
> **"Favco Holdings"** means Favelle Favco Holdings SDN BHD.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth as he or she remembers it, because people may forget some things or remember other things inaccurately.  So, if a witness has made a misstatement, you need to consider whether that misstatement was an intentional falsehood or simply an innocent lapse of memory; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

CtrlPDF - www.foxito.com

While you should consider only the evidence in this case, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts that have been established by the testimony and evidence in the case.

The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if after considering all the other evidence you believe that single witness.

There are two types of evidence that you may consider in properly finding the truth as to the facts in the case. One is direct evidence - such as testimony of any eyewitness. The other is indirect or circumstantial evidence - the proof of a chain of circumstances that indicates the existence or nonexistence of certain other facts. As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.

A fact may be established by direct evidence or by circumstantial evidence of both. A fact is established by direct evidence when proved by documentary evidence or by witness who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved. [PJC 100.8]

When knowledge of technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field - he is called an expert witness - is permitted to state his opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

In deciding whether to accept or rely upon the opinion of an expert witness, you may consider any bias of the witness, including any bias you may infer form the evidence that the expert witness has been or will be paid for reviewing the case and testifying, or from evidence that he testifies regularly as an expert witness and his income from such testimony represents a significant portion of

CMSPDF - www.fesstu.com

his income.

If you want to communicate with me at any time, please give a written message or question to the bailiff, who will bring it to me. I will then respond as promptly as possible either in writing or by having you brought into the courtroom so that I can address you orally. I will always first disclose to the attorneys your question and my response before I answer your question.

After you have reached a verdict, you are not required to talk with anyone about the case unless the Court orders otherwise.

When you retire to the jury room to deliberate on your verdict, you make take this charge with you as well as exhibits which the Court has admitted into evidence. Select your Foreperson and conduct your deliberations. If you recess during your deliberations, follow all the instructions that the Court has given you about/on your conduct during the trial. After you have reached you unanimous verdict, your Foreperson is to fill in on the form your answers to the questions. Do not reveal your answers until such time as you are discharged, unless otherwise directed by me. You must never disclose to anyone, not even to me, your numerical division on any question.

In order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties so long as the party not signing accepts the contract by its acts, conduct, acquiescence, or course of dealing. See <u>Karl Rove & Co. v. Thornburg</u>, 824 F. Supp. 662, 673 (W.D. Tex. 1993), aff'd in part, 39 F.3d 1273 (5th Cir. 1994) citing <u>Augusta Dev. Co. v. Fish Oil Well Serv. Co., Inc.</u>, 761 S.W.2d 538, 544 (Tex. App.--Corpus Christi 1988, no writ).

A patent issued by the United States Patent Office is presumed to be valid. 35 U.S.C. §272.

In order to rebut the presumption that a patent issued by the United States Patent Office is valid, the Defendant must establish by clear and convincing evidence the Plaintiff's patent or any claim in the patent is not valid. N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1150 (Fed. Cir. 1987).

4

**"Clear and convincing evidence"** means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.   [PJC 110.33]

**"Malice"** means:

(a)   a specific intent by Don Davis to cause substantial injury to **DANIEL E. DAVIS**; or

(b)   an act or omission by **FAVELLE FAVCO DEFENDANTS**,

   (i)   which, when viewed objectively from the standpoint of **FAVELLE FAVCO DEFENDANTS** at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

   (ii)   of which **FAVELLE FAVCO DEFENDANTS** had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.   [PJC 110.33]

**"Exemplary damages"** means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

a.   The nature of the wrong.

b.   The character of the conduct involved.

c.   The degree of culpability of **FAVELLE FAVCO DEFENDANTS**.

d.   The situation and sensibilities of the parties concerned.

e.   The extent to which such conduct offends a public sense of justice and propriety.

5

f.   The **"net worth"** of **FAVELLE FAVCO DEFENDANTS**.   [PJC
     110.34]

CutePDF - www.fatira.com

## AMENDED PROPOSED JURY QUESTIONS

### QUESTION NO. 1:

Did **DANIEL E. DAVIS** conceptualize the idea and/or concept of the crawler cranes known as the **"Davis Crawler Cranes"** prior to him being employed by **FAVELLE FAVCO HOLDINGS SDN BHD**?

      A.    **YES**

      B.    **NO**

**ANSWER:**    _____

7

## <u>QUESTION NO. 2</u>:

In 1998, who filed for a United States patent for the cranes known as the **"Davis Crawler Cranes"**?

    A.   **DANIEL E. DAVIS**

    B.   **FAVELLE FAVCO DEFENDANTS**

<u>ANSWER</u>:   _____

8

## QUESTION NO. 3:

To whom did the United States Patent and Trademark Office grant United States Patent No. 6,003,252 on December 21, 1999?

    A.    **DANIEL E. DAVIS**

    B.    **FAVELLE FAVCO DEFENDANTS**

**ANSWER**: _____

CNIIPDF - www.texisc.com

## <u>QUESTION NO. 4</u>:

By the issuance of United States Patent No. 6,003,252 which was issued on December 21, 1999 by the United States Patent and Trademark Office, who was granted ownership of Patent No. 6,003,252?

    A.    **DANIEL E. DAVIS**

    B.    **FAVELLE FAVCO DEFENDANTS.**

<u>ANSWER</u>: _____

A patent issued by the United States Patent Office is presumed to be valid.  35 U.S.C. §272.

In order to rebut the presumption that a patent issued by the United States Patent Office is valid, the Defendant must establish by clear and convincing evidence the Plaintiff's patent or any claim in the patent is not valid.  N.V. Akzo v. E.I. DuPont de Nemours, 810 F.2d 1148, 1150 (Fed. Cir. 1987).

## QUESTION NO. 5

Did **DANIEL E. DAVIS** and **FAVELLE FAVCO HOLDINGS SDN BHD** agree to an Employment Contract?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

In order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties so long as the party not signing accepts the contract by its acts, conduct, acquiescence, or course of dealing.  See <u>Karl Rove & Co. v.</u> <u>Thornburg</u>, 824 F. Supp. 662, 673 (W.D. Tex. 1993), aff'd in part, 39 F.3d 1273 (5th Cir. 1994) citing <u>Augusta Dev. Co. v. Fish Oil</u> <u>Well Serv. Co., Inc.</u>, 761 S.W.2d 538, 544 (Tex. App.--Corpus Christi 1988, no writ).

Answer **"YES"** or **"NO"**.


**ANSWER**:     _____

If you have answered **Question No. 5 "YES"**, then answer **Question No. 6**.  Otherwise, do not answer **Question No. 6**.

11

## QUESTION NO. 6:

Did **FAVELLE FAVCO HOLDINGS SDN BHD** fail to comply with the **Employment Contract**?

Answer **"YES"** or **"NO"**.

**ANSWER**:  _____

If your answer to **Question No. 6** is **"YES"**, then answer **Question No. 7**.  Otherwise, do not answer **Question No. 7**.

12

## QUESTION NO. 7:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DANIEL E. DAVIS** for his damages, if any, that resulted from such failure to comply?

Consider the following elements of damages, if any.

a.   Lost earnings.

b.   Lost employee benefits other than earnings.

c.   Reasonable and necessary expenses in obtaining other employment.

**"Lost earnings"** equal the present cash value of the employment contract to the employee had it not been breached, less amounts actually earned. [PJC 110.24]

**"Benefits"** include but are not limited to sick-leave pay, auto allowance, vacation pay, profit-sharing benefits, stock options, pension fund benefits, housing or transportation subsidies, bonuses, monetary losses incurred as a result of the loss of health, life, dental, or similar insurance coverage. [PJC 110.24]

Answer in dollars and cents for damages, if any, that—

were sustained in the past;          **ANSWER:** _____

in reasonable probability will
be sustained in the future.          **ANSWER:** _____

13

## <u>QUESTION NO. 8</u>:

Did **DANIEL E. DAVIS** and **FAVELLE FAVCO CRANES (M) SDN BHD** agree to a Shareholders' Agreement?

Answer **"YES"** or **"NO"**.

**ANSWER:** _____

If you answered **Question No. 8 "YES"**, then answer **Question No. 9**. Otherwise, do not answer **Question No. 9**.

14

## QUESTION NO. 9:

Did **FAVELLE FAVCO CRANES (M) SDN BHD** fail to comply with the Shareholders' Agreement?

Answer **"YES"** or **"NO"**.

**ANSWER:** _____

If you answered **Question No. 9 "YES"**, then answer **Question No. 10.** Otherwise, do not answer **Question No. 10.**

15

## QUESTION NO. 10:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DANIEL E. DAVIS** for his damages, if any, that resulted from **FAVELLE FAVCO DEFENDANTS'** failure to comply with the Shareholders' Agreement?

Answer in dollars and cents for damages, if any, that

were sustained in the past:          **ANSWER:**          _____

in reasonably probability will be
sustained in the future:             **ANSWER:**          _____

16

## <u>QUESTION NO. 11</u>:

Do you find that plaintiff has proven by a preponderance of the evidence that either of Claims 1 or 6 of the Davis Patent is infringed by Defendants' mobile crane?


Claim 1 _____ Yes          _____No


Claim 6 _____ Yes          _____No


PATTERN JURY INSTRUCTIONS, (CIVIL CASES), prepared by the Committee on Pattern Jury Instructions, District Judge Association, Fifth Circuit (1980).

If you answered Question No. 11 "Yes" as to at least one claim, then answer Question No. 12.  Otherwise, do not answer Question No. 12.

17

## QUESTION NO. 12

If you found infringement of at least one claim, what amount of damages, in dollars and cents, do you find to be reasonable for Defendants' infringment of the Davis patent?


ANSWER: _____

18

## <u>QUESTION NO. 13</u>

If you find infringement of at least one claim, do you find from a preponderance of the evidence that Defendants willfully infringed the Davis Patent?

Claim 1 _____ Yes          _____ No

Claim 6 _____ Yes          _____ No


PATTERN JURY INSTRUCTIONS, (CIVIL CASES), prepared by the Committee on Pattern Jury Instructions, District Judge Association, Fifth Circuit (1980).

If you answered Question No. 13 "Yes" as to at least one claim, then answer Question No. 14.  Otherwise, do not answer Question No. 14.

19

## **QUESTION NO. 14**

If you found infringement of at least one claim, what amount of damages, in dollars and cents, do you find to be reasonable for defendants' willful infringement of the Davis patent?


ANSWER: _____

20

CVePDF - www.festo.com

## QUESTION NO. 15

Did **FAVELLE FAVCO DEFENDANTS** commit fraud against **DANIEL E. DAVIS**?

**"Fraud"** occurs when --

a.   a party makes a material misrepresentation,

b.   the misrepresentation is made with knowledge of its falsity or made recklessly without any knowledge of the truth and as a positive assertion,

c.   the misrepresentation is made with the intention that it should be acted on by the other party, and

d.   the other party acts in reliance on the misrepresentation and thereby suffers injury.  [PJC 105.2]

**"Misrepresentation"** means:

a.   A false statement of fact, or

b.   A promise of future performance made with an intent not to perform as promised.  [PJC 105.3B]

Answer **"YES"** or **"NO"**.

**ANSWER:**   _____

If your answer to **Question No. 15** is **"YES"**, then answer **Question No. 16**.  Otherwise, do not answer **Question No. 16**.

21

## QUESTION NO. 16:

What sum of money, if any, if paid now in cash, would fairly and reasonably compensate **DANIEL E. DAVIS** for his damages, if any, that resulted from **FAVELLE FAVCO DEFENDANTS'** fraudulent acts?

Answer in dollars and cents for damages, if any, that

were sustained in the past:        **ANSWER:**        _____

in reasonably probability will be
sustained in the future:        **ANSWER:**        _____

22

CIMPDF – www.fesito.com

## QUESTION NO. 17

If you have answered **"Yes"** to **Question NO, 15**, then answer the following question. Otherwise, do not answer the following question.

Do you find by clear and convincing evidence that the harm to **DANIEL E. DAVIS** resulted from malice?

**"Clear and convincing evidence"** means the measure or degree of proof that produces a firm belief or conviction of the truth of the allegations sought to be established.

**"Malice"** means:

(a)   a specific intent by Don Davis to cause substantial injury to **DANIEL E. DAVIS**; or

(b)   an act or omission by **FAVELLE FAVCO HOLDINGS SDN BHD**,

    (i)   which, when viewed objectively from the standpoint of **FAVELLE FAVCO HOLDINGS SDN BHD** at the time of its occurrence, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

    (ii)   of which **FAVELLE FAVCO HOLDINGS SDN BHD** had actual, subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare of others.

Answer **"YES"** or **"NO"**.

**ANSWER**: _____

If you have answered **"YES"** to **Question No. 17**, then answer Question No. 18. Otherwise, do not answer Question No. 18.

23

### QUESTION 18:

What sum of money, if any, if paid now in cash, should be assessed against the **FAVELLE FAVCO DEFENDANTS** and awarded to **DANIEL E. DAVIS** as exemplary damages, if any, for the conduct found in response to **Question No. 17**?

**"Exemplary damages"** means an amount that you may in your discretion award as a penalty or by way of punishment.

Factors to consider in awarding exemplary damages, if any, are—

a.    The nature of the wrong.

b.    The character of the conduct involved.

c.    The degree of culpability of the **FAVELLE FAVCO DEFENDANTS**.

d.    The situation and sensibilities of the parties concerned.

e.    The extent to which such conduct offends a public sense of justice and propriety.

f.    The **"net worth"** of the **FAVELLE FAVCO DEFENDANTS**.

Answer in dollars and cents, if any.

**ANSWER**: _____

24

## QUESTION NO. 19

Is Favelle Favco Holdings SDN BHD responsible for the conduct of Favelle Favco Cranes Malaysia (M) SDN BHD?

Answer: "Yes" or "No".

Answer: _____

Favelle Favco Cranes Malaysia (M) SDN BHD was organized and operated as a mere tool or business conduit of Favelle Favco Holdings SDN BHD; there was such unity between Favelle Favco Cranes Malaysia (M) SDN BHD and Favelle Favco Holdings SDN BHD that the separateness of Favelle Favco Cranes Malaysia (M) SDN BHD had ceased and holding only Favelle Favco Cranes Malaysia (M) SDN BHD responsible would result in injustice; and Favelle Favco Holdings SDN BHD caused Favelle Favco Cranes Malaysia (M) SDN BHD to be used for the purpose of perpetuating and did perpetuate an actual fraud on Daniel E. Davis primarily for the direct benefit of Favelle Favco Holdings SDN BHD.

In deciding whether there was such unity between Favelle Favco Cranes Malaysia (M) SDN BHD and Favelle Favco Holdings SDN BHD that the separateness of Favelle Favco Cranes Malaysia (M) SDN BHD had ceased, you are to consider the total dealings of Favelle Favco Cranes Malaysia (M) SDN BHD and ****, including:

    1.   the degree to which Favelle Favco Cranes Malaysia (M) SDN BHD property had been kept separate from that of Favelle Favco Holdings SDN BHD;

    2.   the amount of financial interest, ownership, and control Favelle Favco Holdings SDN BHD maintained over Favelle Favco Cranes Malaysia (M) SDN BHD; and

    3.   whether Favelle Favco Cranes Malaysia (M) SDN BHD had been used for personal purposes of Favelle Favco Holdings SDN BHD.

OR

Favelle Favco Holdings SDN BHD used Favelle Favco Cranes

25

Malaysia (M) SDN BHD for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis primarily for the direct personal benefit of Favelle Favco Holdings SDN BHD.

OR

Favelle Favco Holdings SDN BHD used Favelle Favco Cranes Malaysia (M) SDN BHD as a means of evading an existing legal obligation for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis for the direct personal benefit of Favelle Favco Holdings SDN BHD.

26

## QUESTION NO. 20

Is Favelle Favco Holdings SDN BHD responsible for the conduct of Favelle Favco Cranes USA, Inc.?

Answer: "Yes" or "No".

Answer: _____

Favelle Favco Cranes USA, Inc. was organized and operated as a mere tool or business conduit of Favelle Favco Holdings SDN BHD; there was such unity between Favelle Favco Cranes USA, Inc. and Favelle Favco Holdings SDN BHD that the separateness of Favelle Favco Cranes USA, Inc. had ceased and holding only Favelle Favco Cranes USA, Inc. responsible would result in injustice; and Favelle Favco Holdings SDN BHD caused Favelle Favco Cranes USA, Inc. to be used for the purpose of perpetuating and did perpetuate an actual fraud on Daniel E. Davis primarily for the direct benefit of Favelle Favco Holdings SDN BHD.

In deciding whether there was such unity between Favelle Favco Cranes USA, Inc. and Favelle Favco Holdings SDN BHD that the separateness of Favelle Favco Cranes USA, Inc. had ceased, you are to consider the total dealings of Favelle Favco Cranes USA, Inc. and Favelle Favco Holdings SDN BHD, including:

1. the degree to which Favelle Favco Cranes USA, Inc. property had been kept separate from that of Favelle Favco Holdings SDN BHD;

2. the amount of financial interest, ownership, and control Favelle Favco Holdings SDN BHD maintained over Favelle Favco Cranes USA, Inc.; and

3. whether Favelle Favco Cranes USA, Inc. had been used for personal purposes of Favelle Favco Holdings SDN BHD.

OR

Favelle Favco Holdings SDN BHD used Favelle Favco Cranes USA, Inc. for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis primarily for the direct personal

27

benefit of Favelle Favco Holdings SDN BHD.

OR

Favelle Favco Holdings SDN BHD used Favelle Favco Cranes USA, Inc. as a means of evading an existing legal obligation for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis for the direct personal benefit of Favelle Favco Holdings SDN BHD.

28

## QUESTION NO. 21

Is Favelle Favco Cranes Malaysia (M)SDN BHD responsible for the conduct of Favelle Favco Cranes USA, Inc.?

Answer: "Yes" or "No".

Answer: _____

Favelle Favco Cranes USA, Inc. was organized and operated as a mere tool or business conduit of Favelle Favco Cranes Malaysia (M)SDN BHD; there was such unity between Favelle Favco Cranes USA, Inc. and Favelle Favco Cranes Malaysia (M)SDN BHD that the separateness of Favelle Favco Cranes USA, Inc. had ceased and holding only Favelle Favco Cranes USA, Inc. responsible would result in injustice; and Favelle Favco Cranes Malaysia (M)SDN BHD caused Favelle Favco Cranes USA, Inc. to be used for the purpose of perpetuating and did perpetuate an actual fraud on Daniel E. Davis primarily for the direct benefit of Favelle Favco Cranes Malaysia (M)SDN BHD.

In deciding whether there was such unity between Favelle Favco Cranes USA, Inc. and Favelle Favco Cranes Malaysia (M)SDN BHD that the separateness of Favelle Favco Cranes USA, Inc. had ceased, you are to consider the total dealings of Favelle Favco Cranes USA, Inc. and Favelle Favco Cranes Malaysia (M)SDN BHD, including:

1. the degree to which Favelle Favco Cranes USA, Inc. property had been kept separate from that of Favelle Favco Cranes Malaysia (M)SDN BHD;

2. the amount of financial interest, ownership, and control Favelle Favco Cranes Malaysia (M)SDN BHD maintained over Favelle Favco Cranes USA, Inc.; and

3. whether Favelle Favco Cranes USA, Inc. had been used for personal purposes of Favelle Favco Cranes Malaysia (M)SDN BHD.

OR

29

Favelle Favco Cranes Malaysia (M)SDN BHD used Favelle Favco Cranes USA, Inc. for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis primarily for the direct personal benefit of Favelle Favco Cranes Malaysia (M)SDN BHD.

OR

Favelle Favco Cranes Malaysia (M)SDN BHD used Favelle Favco Cranes USA, Inc. as a means of evading an existing legal obligation for the purpose of perpetrating and did perpetrate an actual fraud on Daniel E. Davis for the direct personal benefit of Favelle Favco Cranes Malaysia (M)SDN BHD.