63

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

**FEB 2 2 2001**

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and  FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL, LTD** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

## PLAINTIFFS' RESPONSE TO DEFENDANT FFC PARTIES' SUPPLEMENTAL MOTION FOR PARTIAL SUMMARY JUDGMENT AND SUPPORTING MEMORANDUM AND CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PATENT OWNERSHIP AND SHOP RIGHTS

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:**

COME NOW, DANIEL E. DAVIS, DAVISCO INC., and COBURN

INTERNATIONAL LTD., Plaintiffs in the above-styled and numbered civil action, and file this their

Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and

Supporting Memorandum, and Cross Motion for Partial Summary Judgment on Patent Ownership

and Shop Rights in support thereof, would show this Honorable Court the following:

I.

## SUMMARY

1.01 It is undisputed that **MR. DAVIS** is the inventor of the Davis Crawler Cranes. The issue is ownership. Even if **MR. DAVIS** conceived and developed his invention after being employed, which he did not, he still did not have a duty to assign it to FFC. *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896); *American Stoker Co. v Underfeed Stoker Co.*, 182 F. 642 (CC Pa. 1910), *affd*, (3d Cir.) 188 F 314; *Atlas Brick Co. v. North*, 2 SW2d 980, 984 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519 (Being the president of a corporation when he discovers an invention and applies for a patent does not require assignment, nor did such relationship indicate acquiescence to a shop right).

1.02 It is undisputed that MR. DAVIS, at all times, demanded a royalty from FFC Parties to use his invention. (See Shareholders' Agreement, **Exhibit "D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits "H and J"**; Davis Affidavit, **Exhibit "K";** Transcript of November 8, 1999 Temporary Injunction Hearing, **Exhibit "L")**. **MR. DAVIS** did not silently acquiesce, but rather, openly restricted use of his invention. Further, **MR. DAVIS** expressly dissented to FFC using his invention without a license by signing the Shareholders' Agreement (**Exhibit "D"**), and then, prior to the end of the 3-year term in the Shareholders' Agreement, requesting that FFC sign a longer term License Agreement (**Exhibit "O"**). Still further, Davis had already conceived and developed his invention before coming to FFC. (See Rusk Affidavit, **Exhibit "M"**; and Rusk Drawings, **Exhibits "P, Q, and R")**. A shop right cannot exist because neither of the requirements existed. Thus, as a matter of law, no shop right can exist. *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896); *Atlas Brick Co. v. North*, 2 SW2d 980, 987 (Tex. Civ. App.), *which is revd*

2

*on other grounds,* 13 SW2d 59 (Tex. Com. App.), *motion gr in part,* 16 SW2d 519.

1.03  Plaintiffs deny each and every argument made by Defendant FFC Parties in their Supplemental Motion for Partial Summary Judgment. Plaintiffs assert that the evidence obtained in discovery conducted to date indicates that reasonable inferences could be drawn from said evidence to establish the existence of genuine issues of material fact which would preclude the granting of Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment.

## II.

## SUMMARY JUDGMENT EVIDENCE

2.01  Plaintiffs rely on the following Summary Judgment evidence in support of their Response to Defendant **FFC PARTIES'** Supplemental Motion for Partial Summary Judgment:

(a)  a copy of a **written report from Richard Robey, dated July 31, 2001,** attached hereto as **Exhibit "A",** and incorporated herein by reference the same as if fully copied and set forth at length;

(b)  a copy of the **Compressed Transcript of the Deposition of Richard Howard Robey, taken on October 12, 2000** attached hereto as **Exhibit "B",** and incorporated herein by reference the same as if fully copied and set forth at length;

(c)  a copy of the **Employment Contract** between Favelle Favco Holdings and Daniel E. Davis, **dated June 27, 1997,** attached hereto as **Exhibit "C"** and incorporated herein by reference the same as if fully copied and set forth at length;

(d)  a copy of the **Shareholders' Agreement** between Favelle Favco Cranes (M) SDN BHD and Daniel E. Davis, signed by Daniel E. Davis on **August 16, 1997,** attached hereto as **Exhibit "D"** and incorporated herein by reference the same as if fully copied and set forth at length;

(e)  a copy of the document entitled "**Issues to be Incorporated in the New Shareholders' Agreement for FFC-USA**", attached hereto as **Exhibit "E",** and incorporated herein by reference the same as if fully copied and set forth at length;

CutePDF - www.fastio.com

(f)   a copy of the **Internal Memorandum** from Cheam Tek Siong to Daniel E. Davis, **dated May 12, 1997**, regarding the Shareholders' Agreement, attached hereto as **Exhibit "F"**, and incorporated herein by reference the same as if fully   copied and set forth at length;

(g)   a copy of the **Facsimile Message** from Katherine Wong to Daniel E. Davis, **dated May 20, 1997**, regarding the Shareholders' Agreement, attached here hereto as **Exhibit "G"** and incorporated herein by reference the same as if fully   copied and set forth at length;

(h)   a copy of a **letter** from Daniel E. Davis to Mac Ngan Boon, **dated May 28, 1997** regarding the Shareholders' Agreement, attached here hereto as **Exhibit "H"** and incorporated herein by reference the same as if fully   copied and set forth at length;

(I)   a copy of a **letter** from Michael Chen & Lee, advocates & solicitors, to Cheam Tek Siong c/o Favelle Favco Cranes (M) SDN BHD, regarding the Shareholders' Agreement, **dated June 10, 1997** attached here hereto as **Exhibit "I"** and incorporated herein by reference the same as if fully   copied and set forth at length;

(j)   a copy of a **letter** from Daniel E. Davis to Mac Ngan Boon, regarding Favelle Favco Cranes USA, Inc., **dated January 20, 1999**, attached hereto as **Exhibit "J"** and incorporated herein by reference the same as if fully   copied and set forth at length;

(k)   The **Affidavit of Daniel E. Davis**, signed on February 21, 2001, attached hereto as **Exhibit "K"** and incorporated herein by reference the same as if fully copied and set forth at length;

(l)   a copy of the **Transcript of the Temporary Injunction Hearing of November 8, 1999,** held before the 107th Judicial District Court Judge Benjamin Euresti, attached hereto as **Exhibit "L"** and incorporated herein by reference the same as if fully copied and set forth at length;

(m)   a copy of the **Affidavit of James Alan Rusk, dated February 19, 2001**, attached hereto as **Exhibit "M"**, and incorporated herein by reference the same as if fully copied and set forth at length;

(n)   a copy of the **Affidavit of Willie C. Jones, dated February 17, 2001**, attached hereto as **Exhibit "N"**, and incorporated herein by reference the same as if fully copied and set forth at length;

(o)   a copy of the License Agreement forwarded to Defendants by Daniel E. Davis, attached hereto as **Exhibit "O"**, and incorporated herein by reference the same as if fully copied and set forth at length;

CIbPDF - www.fasttra.com

(p)     a copy of Drawings made by James Alan Rusk, dated February 20, 1997, pertaining to the Davis Crawler Cranes, attached hereto as **Exhibit "P"**, and incorporated herein by reference the same as if fully copied and set forth at length;

(q)     a copy of Drawings made by James Alan Rusk, dated February 20, 1997, pertaining to the Davis Crawler Cranes, attached hereto as **Exhibit "Q"**, and incorporated herein by reference the same as if fully copied and set forth at length; and

(r)     a copy of Drawings made by James Alan Rusk, dated February 20, 1997, pertaining to the Davis Crawler Cranes, attached hereto as **Exhibit "R,"** and incorporated herein by reference the same as if fully copied and set forth at length.

2.02 Pursuant to Rule 201 of the Federal Rules of Civil Procedure, Plaintiffs hereby move this Honorable Court to take judicial notice of all pleadings and evidence on file in this civil action.

## III.

## SUMMARY JUDGMENT STANDARD

3.01 Federal Rule of Civil Procedure 56© requires that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue," the nonmovant must "go beyond the pleadings by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designating 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

3.02 The court's review of the record on summary judgment focuses not on whether "some evidence has been introduced by the party having the burden of proof," but on "whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). "The

5

mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

3.03 "When the record--taken as a whole--could not lead a rational trier of fact to find for the nonmoving party, then there is no genuine issue for trial." *Davis v. Chevron*, 14 F.3d 1082, 1084 (5th Cir. 1994) (*citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In deciding whether a genuine issue as to material fact precludes summary judgment, the Court must consider all evidence together with all inferences to be drawn therefrom in light most favorable to the party opposing the motion. *Pierzynowski v. P.D. City of Detroit*, 941 F.Supp 633, 641 (E.D. Mo. 1996).

3.04 Summary Judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See *Hunt v. Cromartie,* 526 U.S. 541, 552 (1999). The party making a summary judgement motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Colson v. Crohman*, 174 F.3d 498, 506 (5th Cir. 1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue of trial to survive summary judgement. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

6

# IV.

## BACKGROUND FACTS WHICH SUPPORT PLAINTIFFS' CONTENTIONS

A.   **DANIEL E. DAVIS CONCEIVED THE IDEA AND/OR CONCEPT OF DAVIS' CRAWLER CRANES PRIOR TO HIS EMPLOYMENT WITH DEFENDANTS**

4.01 From the late 1970's until the mid 1980's, DANIEL E. DAVIS worked as a crane operator and/or superintendent for various companies. DANIEL E. DAVIS also worked as a crane consultant for Caltex-Indonesia for approximately 1 year. Thereafter, between approximately 1992 and 1994, DANIEL E. DAVIS worked for ESSO Malaysia as a crane supervisor/consultant and off-shore cranes maintenance person. DANIEL E. DAVIS then worked for The Manitowoc Company as an officer and Managing Director between 1994 and 1997. Between 1997 and 1999, DANIEL E. DAVIS was the President of Favelle Favco Cranes USA, Inc. located in Harlingen, Cameron County, Texas. DANIEL E. DAVIS is also a 10% shareholder in Favelle Favco Cranes USA, Inc.. (See Robey Report, **Exhibit "A"**; Robey Deposition, **Exhibit "B"**, page 13; and Davis' Affidavit, **Exhibit "K"**).

4.02    While **Mr. DAVIS** worked for Manitowoc, he conceived and developed his ideas and concepts concerning a new and unique line of crawler cranes (**Davis Crawler Cranes**). This unique crawler cranes conceived by **MR. DAVIS** use a variable-gauge excavator bottom in conjunction with an enhanced standard excavator upper. **MR. DAVIS** conceived the idea of mounting a telescoping hydraulic boom on an existing excavator lower and upper. **MR. DAVIS** discussed this idea and/or concept with Richard Robey, the former Marketing and Sales Director for Manitex, a subsidiary of Manitowoc. (See Robey Report, **Exhibit "A"**). **MR. DAVIS** discussed his idea and/or concept in detail with Mr. Robey sometime in the summer of 1995. (See Robey Report, **Exhibit "A"**; Robey

7

Deposition, **Exhibit "B"**, page 21; and Transcript of the November 8, 1999 Temporary Injunction Hearing, **Exhibit "L"**, page 31). At that point, it was very apparent to Mr. Robey that MR. DAVIS' idea and/or concept was no longer simply an idea, but a fully conceived product that already anticipated what Mr. Robey considered to be the most important aspect: The method of bringing such a product to the market. (See Robey Report, **Exhibit "A"**, page 2).

4.03 As mentioned beforehand **MR. DAVIS** diligently pursued the development of his idea and/or concept of crawler cranes. **On or about late 1996**, he provided James Alan Rusk, and engineer, with several sketches of his (i.e. **MR. DAVIS'**) ideas for the new of crawler crane. (See Rusk Affidavit, **Exhibit "M"**). **MR. DAVIS** requested that James Alan Rusk do the engineering work to confirm that his (i.e. **MR. DAVIS'**) crane ideas can be made and would work. (See Rusk Affidavit, **Exhibit "M"**). In February 1997, Mr. Rusk completed the initial engineering work for the **Davis Crawler Cranes** concept and design. Mr. Rusk's engineering work included mechanical, hydraulic and electronic work. His engineering work confirmed that **MR. DAVIS'** crane concepts and design could be made used and would work. (See Rusk Affidavit, **Exhibit "M"**).

4.04 As it is evident, **MR. DAVIS'** idea and/or concept was conceived sometime in 1995. Thereafter, **MR. DAVIS** approached Mr. Rusk for the engineering work on or about late 1996. The evidence is undisputed that **MR. DAVIS** entered into an employment contract with Favelle Favco Holdings on or about June 23, 1997. As such, it is quite clear that **MR. DAVIS'** idea and/or concept about the **Davis Crawler Cranes** was conceived by **MR. DAVIS** prior to his employment with Defendants.

8

B.   **DANIEL E. DAVIS SIGNED A VALID AND ENFORCEABLE EMPLOYMENT CONTRACT WITH DEFENDANTS**

4.05 **On or about June 23, 1997,** Plaintiff **DANIEL E. DAVIS** signed an employment contract with Defendant **FAVCO HOLDINGS to be Managing Director and President of FAVELLE FAVCO CRANES USA, INC.** in Harlingen, Texas. (See Employment Contract, **Exhibit "C"**). Defendants do not contest this fact in the Amended Joint Pretrial Order filed on January 31, 2001. The contract was for thirty-six (36) months. Plaintiff **DANIEL E. DAVIS** was to receive, among other things, the right to purchase ten percent (10%) of the stock of Favco, a monthly salary, a company car, medical benefits and a royalty for any sales of the **Davis Crawler Cranes**. (See Employment Contract, **Exhibit "C"**). Defendant **FAVCO HOLDINGS** agreed to license the manufacture and sale of the **Davis Crawler Cranes**. **MR. DAVIS** received ten percent (10%) of the stock of **FAVELLE FAVCO CRANES USA, INC.**. (See Employment Contract, **Exhibit "C"**).

C.   **DANIEL E. DAVIS SIGNED A SHAREHOLDERS' AGREEMENT WITH DEFENDANT FAVELLE FAVCO CRANES (M) SDN BHD**

4.06 Before **MR. DAVIS** began working for the Defendants, he and the Defendants had several discussions and negotiations about **FAVELLE FAVCO CRANES USA, INC.** and Shareholders' Agreement. (See "Issues to be incorporated in the New Shareholders' Agreement for FFC-USA, **Exhibit "E"**; Internal Memorandum, **Exhibit "F"**; Facsimile Message, **Exhibit "G"**; Letter dated May 28, 1997, **Exhibit "H"**; and Letter dated June 10, 1997, **Exhibit "I"**). Finally, between **June and August 1997,** Defendants through their representative Cheam Tek Siong submitted a Shareholders' Agreement to **MR. DANIEL E. DAVIS** with the instruction that if said agreement met with Mr. Davis' approval he was to sign it, return it, or if corrections or modifications

9

were needed he was to submit same for inclusion.   (See Davis Affidavit, **Exhibit "K".**) This

Shareholders' Agreement was forwarded to **MR. DAVIS** by Cheam Tek Siong, Favelle Favco Group

Manager, with instructions that if said Shareholders' Agreement met with **MR. DAVIS'** approval

he (i.e. MR. DAVIS) was to sign ti and forward it to Mr. Cheam, or if other additions or

modifications needed to be made, MR. DAVIS was to make them and forward them to Mr. Cheam

for inclusion. (See DAVIS Affidavit, **Exhibit "K"**). On **August 16, 1997, MR. DAVIS** signed the

Shareholders' Agreement and returned it to Favco (See Shareholders' Agreement **Exhibit "D"**).  Mr.

Willie C. Jones personally witnessed **MR. DAVIS** initial each page of the Shareholders' Agreement

and sign it. (See Jones Affidavit, **Exhibit "N"**).  In accord with the Shareholders' Agreement the

parties were to form a Texas Corporation which in turn became known as and was incorporated as

Favelle Favco Cranes USA, Inc.. Pursuant to this Shareholders' Agreement, Defendant **FAVELLE**

**FAVCO CRANES (M) SDN BHD** was to own ninety percent (90%) and Plaintiff **DANIEL E.**

**DAVIS** was to own ten percent (10%) of **FFC USA**.   Also, **FFC USA** was to have an initial

authorized share capital of Three Million and no/100ths Dollars ($3,000,000.00) divided into

3,000,000 ordinary shares of the par value of one Dollar ($1.00) per share (See Shareholders'

Agreement, **Exhibit "D"**).   Additionally, this Shareholders' Agreement includes language to the

effect that Defendant **FAVELLE FAVCO CRANES (M) SDN BHD** shall for a period of three (3)

years from August 16, 1997 pay Plaintiff **DANIEL E. DAVIS** royalty fee of one percent (1%) of the

sale price for the sale of each crane manufactured or assembled pursuant to Plaintiff **DANIEL E.**

**DAVIS'** patented invention, namely, the Excavator Upper and Variable Gauge Lower for the making

of a Latice and Box Boom Crawler Crane, and whether or not the sale took place before or after the

termination of the Shareholders' Agreement. (See Shareholders' Agreement, **Exhibit "D"**).

10

4.07 **MR. DAVIS** agreed to bring to **FAVELLE FAVCO CRANES USA, INC**. a line of new and unique crawler cranes (i.e. the **"Davis Crawler Cranes"**). The **Davis Crawler Cranes** were, and are unique because, among other things, they can be manufactured quicker, and less expensively resulting in a more stable crane for its overall size. **MR. DAVIS** asserts that he brought the crane know-how, designs, concept and/or idea with him when he became employed by **FAVELLE FAVCO HOLDINGS SDN BHD** and **FAVELLE FAVCO CRANES USA, INC.**.

### V.

### ARGUMENT AND DECISIVE POINTS

**POINT NO. 1:**     **THE PATENT ISSUED TO DANIEL E. DAVIS AS TO THE CRAWLER CRANES IS VALID**

5.01 **On or about December 21, 1999**, the United States Patent and Trademark Office issued Patent No. 6,003,252 ("the 252 Patent") in the name of Daniel E. Davis for crawler cranes. The Defendants do not contest this fact in the Amended Joint Pretrial Order filed on January 31, 2001. A patent issued by the United States Patent Office is presumed to be valid. 35 U.S.C. §272. The Defendants agreed to this proposition of law in the Amended Joint Pretrial Order filed on January 31, 2001. In order to rebut the presumption that a patent issued by the United States Patent Office is valid, the defendant must establish by clear and convincing evidence that Plaintiff's patent or any claim in the patent is not valid. *N.V. Akzo v. E.I. DuPont de Nemours*, 810 F.2d. 1148, 1150 (Fed. Cir. 1987). The Defendants also agreed to this proposition of law in the Amended Joint Pretrial Order filed on January 31, 2001.

5.02 It is undisputed that no express assignment exists. At no point within the Employment

11

Contract between the parties and the Shareholders' Agreement is it ever mentioned that **MR. DAVIS**

will assign his patent rights over to Defendants (See Employment Contract, **Exhibit "C"** and

Shareholders' Agreement, **Exhibit "D"**. Further, the Shareholders' Agreement drafted by

Defendants provides for a three year license to be granted to Defendant, for which Plaintiff would

receive a royalty of 1% which was signed by Plaintiff on August 16, 1997. (See Shareholders'

Agreement **Exhibit "D"**).

> **POINT NO. 2:**   **THE SHAREHOLDERS' AGREEMENT BETWEEN DANIEL E. DAVIS AND FAVELLE FAVCO CRANES (M) SDN BHD IS A BINDING VALID CONTRACT AND SHOULD BE ENFORCED**

5.03 At all times the Shareholders' Agreement was relied on by **MR. DAVIS**. (See Davis'

Affidavit, **Exhibit "K"** The said Shareholders' Agreement was **MR. DAVIS'** incentive to develop

his patent, in that after three (3) years he would own his patent free of any assignments and licenses.

Defendants, however, argue that they are entitled to an assignment of all of Plaintiff's ownership

interest in the patent or in alternative shop rights as to the use of said patents. However, it is quite

clear that Defendants merely own a three year license. (See Shareholders' Agreement, **Exhibit "D"**).

In pertinent part paragraph 7.1 of the Shareholders' Agreement states;

> "The First Party shall for a period of three years from the date of this Agreement pay to the Second Party a royalty fee of one percent (1%) of the sale price for the sale of each crane manufactured, or assembled pursuant to the Second Party's patented invention, namely, the Excavator Upper and Variable Gauge Lower for the making of a Latice and Box Boom Crawler Crane, and whether or not the sale took place before or after the termination of this agreement." (See **Exhibit "D"**).

5.04 Hence, said paragraph of the Shareholders' Agreement places limits on the rights of the

Defendants as they pertain to any assignment of the patent's ownership to the Defendants as well as

to the Defendants' claim for shop rights and as to Defendants' claim as to ownership of the design drawings, trade secrets, specifications and all technology related to the **Davis Crawler Cranes**. Therefore, it must be determined whether or not the Shareholders' Agreement is binding on the parties as a valid contract.

5.05 Valid contracts come into being when one party tenders contractual promises to another in the form of an "offer" and the other party "accepts" the offer [see, e.g., *Farley v. Clark Equipment Company*, 484 S.W.2d 142, 147 (Civ. App.--Amarillo 1972, ref. n.r.e.)--primary and essential element of express or implied contract is meeting of minds of parties by offer and acceptance; see also *Balderma v. Western Cas. Life Ins. Co.*, 794 S.W.2d 84, 90 (Tex. App.--San Antonio 1990), rev'd on other grounds, 825 S.W.2d 432 (Tex. 1991)--binding and enforceable contract is formed when offer is made, it is unconditionally accepted, and valuable consideration passes between parties]. In order to constitute a contract in writing, a writing does not necessarily have to be signed by both parties, so long as the party no signing accepts the contract by its acts, conduct, or acquiescence. *Karl Rove & Co. v. Thornburgh*, 824 F. Supp. 662, 673 (W.d. Tex. 1993), aff'd in part, 39 F.3d 1273 (5" Cir. 1994), citing *Augusta Dev. Co. v. Fish Oil Well Serv. Co., Inc.*, 761 S.W.2d 538, 544 (Tex.App.--Corpus Christi 1988, no writ).

5.06 An offer is a clear and definite proposal to enter into a contract immediately once the offer is accepted. A proposal qualifies as an offer when it is sufficiently definite so that, if accepted, it clearly and definitely establishes the promises and performances to be rendered by each party. Thus, an offer that may ripen into a contract differs an mere expression of desire or hope that the parties may, at some time in the future, come to an agreement. An offer that may ripen into a contract also differs from mere preliminary negotiations [see *Redman v. Whitney*, 541 S.W.2d 889,

13

891-892 (Civ. App.--Austin 1976, ref. n.r.e.); *Farley v. Clark Equipment Company*, 484 S.W.2d 142, 147 (Civ. App.--Amarillo 1972, ref. n.r.e.). In the matter before us it is quite clear that Defendants made an offer to Plaintiff by drafting the Shareholders' Agreement.

5.07 A contract is formed when an offer is "accepted" [see, e.g., *Sutton v. Shanley*, 192 S.W.2d 567, 572 (Civ. App.--Waco 1946, no writ)]. An acceptance means that the offeree agrees to the offer on an unconditional basis. There is no acceptance when there is an attempt to change or qualify the terms of the offer *[United Concrete Pipe Corp. v. Spin-Line Co.*, 430 S.W.2d 360, 364 (Tex. 1968)]. It is also quite clear that the Defendants' offer, (the i.e. Shareholders' Agreement) was accepted by **MR. DAVIS** as evidenced by his signature, attested to by Willie Jones. On August of 1997, of the shareholders' agreement.

5.08 A contract requires something of legal value to move from one person to another, and the thing of legal value that is transferred under a contract is known as "consideration" [see *Williams Mfg. Co. v. Prock*, **86 F. Supp. 447, 448 (N.D. Tex. 1949)**]. Consideration is the "something of value" given to induce the making of a contract *[Lemon v. Walker*, 482 S.W.2d 713, 715 (Civ. App.--Amarillo 1972, no writ); *Merchants' Nat. Bank v. Voudouris*, 248 S.W. 810, 812 (Civ. App.--Dallas 1923, no writ)]. Consideration may consist of a right, interest, profit, or benefit that accrues to one party. Alternatively, it may consist of a forbearance, loss, or responsibility that is undertaken or incurred by the other party [*Champlin Petroleum Co. v. Pruitt*, 539 S.W.2d 356, 361 (Civ. App.--Fort Worth 1976, ref. n.r.e.); *Lassiter v. Boxwell Brothers, Inc.*, 362 S.W.2d 884, 886 (Civ. App.--Amarillo 1962, no writ)]. Further, in this case it is quite clear consideration was given in that Defendant obtained a three year license and Plaintiff obtained royalties due upon said license.

5.09 Defendants contend that they did not sign the Shareholders' Agreement therefore there

is no valid contract.  However, since the Defendants prepared the Shareholders' Agreement (the offer) which was signed by **MR. DAVIS** (the acceptance) which granted to the Defendants a license to sell  and manufacture the patented product while paying a 1% royalty to the Plaintiff (the consideration, it is quite clear that an enforceable contract exists.  In summation, Defendants made an offer which was accepted by the Plaintiff and valuable consideration was exchanged between the parties.  Therefore, all that Defendants are entitled to with respect to the patent is a three year license irrespective of the time and money invested in the project by Defendants as well as no ownership interest in the design drawings, trade secrets, specifications and all technology related to the crawler cranes.

5.10 Lastly, the question whether the parties reached an agreement is  usually one for  the trier of fact when the existence of the agreement is  disputed [*Preston  Farm & Ranch Supply v. Bio-Zyme Ent.*, 625 S.W.2d 295, 298 (Tex. 1981);  see *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co.*, 480 S.W.2d 607, 609-610 (Tex. 1972)].  In this instance, the Plaintiffs contend that Defendants are not entitled to judgment with regard to the Shareholders' Agreement signed by **MR. DAVIS** on August 16, 1997.  Plaintiffs contend that the determination of whether the said Shareholders' Agreement is valid and binding is a geniune issue of material fact to be decided by the jury or trier of fact.

5.11 In deciding whether a genuine issue as to material fact precludes summary judgment, the Court must consider all evidence together with all inferences to be drawn there from in light most favorable to the party opposing the motion.  Every reasonable inference from the evidence will be indulged in favor of the non-movant, and any doubts will be resolved in the favor on the non-movant. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d, 546 548-49 (Tex. 1985), and when this is

15

done material fact issues clearly remain as to the shareholders agreement and the limits said agreement may have as to what rights each party has with respect to ownership of the patent as well as the ownership interest in the design drawings, trade secrets, specifications and all technology related to the crawler cranes. Therefore, Defendants' Motion for Partial Summary Judgment should in all respects be denied.

**POINT NO. 3:**    **THE STATUTE OF FRAUDS DOES NOT APPLY IN THIS CASE AS THE SHAREHOLDERS' AGREEMENT IS OUTSIDE SAID STATUTE**

5.12 There is an exception to the general requirement that contracts must comply with the statute of frauds to be specifically enforceable. Equitable enforcement of a contract may be available when there are equities that remove a case from the operation of the statute. To justify the intervention of equity, so that contracts failing to comply with the statute of frauds may nonetheless be specifically enforceable, the plaintiff must prove something more than a mere wrong or breach of contract [*see Meyer v. Texas Nat. Bank of Commerce of Houston*, 424 S.W.2d 417, 419-426(Tex.1968)], and the situation must be such that nonenforcement of the contract itself would plainly amount to fraud [*see Mercer v. C.A. Roberts Co.*, 570 F.2d 1232,1237 (5th Cir. [Tex.] 1978)]. This requires a promise to sign a written agreement that itself complies with the statute of frauds, and proof (1) that the promisor should have expected that the promise would lead the promisee to some definite and substantial injury, (2) that such an injury occurred, and (3) that the court must enforce the promise to avoid injustice [*Nagle v. Nagle*, 633 S.W.2d 796, 800 )Tex. 1982); *"Moore" Burger, Inc. v. Phillips Petroleum Company*, 492 S.W. 2d 934,934 (Tex. 1972)].

5.13 It is quite clear in the matter before this Court that Movant relies on the Statute of Frauds provision that requires a signed contract if that contract cannot be performed within a year.

16

Movant does not contest whether the written agreement if signed would comply with the Statute of Frauds. It is clear that Movant promised to enter into a shareholder's agreement with Respondent. It is also clear that Movant should have known that Respondent's reliance on that promise would be to his detriment and injury, which in this matter would be that Movants are trying to convert ownership of the Respondent's patent to their own. Further, this has occurred and therefore equity demands that the shareholder's agreement should be enforced.

5.14 To justify specific performance of contract failing to comply with statute of frauds, court must find that nonenforcement of contract would amount to fraud. *Mercer v. C.A. Roberts Co.*, 571 F.2d 1232, 1237 (5th Cir. [Tex.] 1978)

5.15 For specific performance of contract that does not comply with statatute of frauds, promisee must show an oral promise to sign an instrument complying with statute, that some definite and substantial injury occurred in reliance on promise, that reliance should have been anticipated, and that injustice may be avoided only by enforcing promise. *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982).

5.16 It is quite clear from the correspondence and telephone conversations between the parties that it was the intent of the parties to enter into a shareholder's agreement, i.e. the contract. Therefore, Movant should have anticipated that Respondent would rely on the actions of Movant to his detriment. Such matters demand that in the interest of equity that the shareholder's agreement be enforced.

17

.

5.17 Further, Movant is equitably estopped from claiming the defense of Statute of Frauds.

*Equitable estoppel,* also known as *estoppel in pais,* arises when all of the following elements exist

[*Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483,489 (Tex. 1991)--citing *Gulbenkian v.*

*Penn*, 151 Tex. 412, 252 S.W.2d 929, 932 (1952)]:

> 1. A party conceals or makes a false representation of material facts. There is no estoppel if an act or admission may be interpreted in more than one way and one of them is consistent with the right asserted by the party sought to be estopped [*Scott v. Vandor*, 671 S.W. 2d 79,87 Tex. App--Houston [1st Dist.] 1984, ref. n.r.e.)].

> 2. The concealment or false representation is made with actual or constructive knowledge of the truth.

> 3. The concealment or false representation is made to a party with no knowledge of the truth or reasonable means of determining the truth. The party must have used reasonable diligence to acquire whatever knowledge of the true facts is required by the circumstances. For example, a party cannot claim estoppel if the party has ignored highly suspicious circumstances that should warn the party of danger of loss [*Norris of Houston, Inc. v. Gafas*, 562 S.W.2d 894, 898 (Civ.App.-- Houston [1st Dist. 1978, ref. n.r.e.)].

> 4. The concealment or false representation was made with the intention that the concealment or misrepresentation be acted on.

> 5. The party to whom the concealment or false representation was made actually and detrimentally relied on the concealment or false representation. The party's reliance must be reasonable under the circumstances.

5.18 In addition, a party is estopped from invoking statute of frauds if that party promised to

put oral agreement into writing and party seeking enforcement of agreement detrimentally relied on

promise to put agreement in writing. *Levine v. Loma Corp.*, 661 S.W.2d 779, 781-782 (Tex.App.--

Fort Worth 1983, no writ). A promise to make a writing that complies with the statute of frauds is

enforceable in order to avoid an unjust result. In such a case, the party making the promise will be

estopped from denying the existence of a contract [*Magcobar N. Amer. v. Grasso Oilfield* S., 736 S.W.2d 787, 795 (Tex.App.--Corpus Christi 1987, dis.)].

5.19 In the matter before this Court it is clear that Movant falsely represented that would enter into a shareholder's agreement with Respondent. Said false representation was made with actual or constructive knowledge of the truth. Respondent took the necessary steps to see that the shareholder's agreement was executed. Further, said false representation was made with the intention that Respondent develop his crawler crane patent. Lastly, Respondent relied to his detriment on the false representations that a shareholder's agreement existed between the parties.

5.20 Promissory estoppel prevents the Movants from relying on the Statute of Frauds defense. *Promissory estoppel* may be asserted when all of the following elements are present [*Fretz Const. Co. v. Southern Nat. Bank, Etc.*, 626 S.W.2d 478, 480 (Tex. 1981); *Adams v. Petrade Intern., Inc.*, 754 S.W.2d 696, 707 (Tex. App.--Houston [1st Dist.] 1988, den.)]:

> 1. One party makes a promise to do something in the future that was made to induce action or is reasonably calculated to induce action. In other words, the promisor should be able to foresee that the promisee will rely on the promise [English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)].

> 2. The other party has taken definite and substantial action in reliance on that promise to that party's detriment. The party must have used reasonable diligence to acquire knowledge of the true facts of the situation, and must not ignore highly suspicious circumstances that should warn of the danger that the party will not carry out the promise.

> 3. Injustice can be avoided only by enforcement of the promise.

5.21 Promissory estoppel is primarily a defensive plea that prevents a party from insisting on strict legal rights when it would be unjust to enforce them [*see "Moore"Burger, Inc. v. Phillips Petroleum Company*, 492 S.W.2d 934,936 (Tex. 1972)]. For example, promissory estoppel was held to prevent a defendant who had promised to sign a lease but failed to do so from relying on the statute of frauds as a defense to an action for breach of the lease. The plaintiff reasonably and foreseeable relied on the promise to its detriment, and injustice could only be avoided by enforcing the oral lease.

5.22 In addition, a party is estopped from invoking statute of frauds if that party promised to put oral agreement into writing and party seeking enforcement of agreement detrimentally relied on promise to put agreement in writing. *Levine v. Loma Corp.*, 661 S.W.2d 779, 781-782 (Tex.App.-- Fort Worth 1983, no writ). A promise to make a writing that complies with the statute of frauds is enforceable in order to avoid an unjust result. In such a case, the party making the promise will be estopped from denying the existence of a contract [*Magcobar N. Amer. v. Grasso Oilfield* S., 736 S.W.2d 787, 795 (Tex.App.--Corpus Christi 1987, dis.)].

5.23 In this matter it is clear that Movants promised to enter a shareholder's agreement with Respondent. It was foreseeable that Respondent would rely on the promise. Based upon that reliance Respondent took actions to his detriment, i.e. proceeding with the development of his crawler crane patent. Further, Respondent took steps to ensure that the shareholder's agreement was executed. Therefore, equity would demand the enforcement of the shareholder's agreement.

5.24 The writing need not be signed by all contracting parties to satisfy the requirements of the statute of frauds. Only the party to be charged must sign the writing for the contract to be enforceable [*Dailey v. Transitron Overseas Corporation*, 349 F. Supp. 797, 800 (S.D. Tex 1972),

20

*aff'd on other grounds* 475 F2d 12 (5th Cir. [Tex.] 1973)].

5.25 Consideration is presumed in written contracts. A pleading asserting that a written contracts lacks consideration or that consideration has failed must be verified [T.R.C.P. 93(9)]. Since said issue of consideration has not been brought forth via a verified denial such cannot now be an issue in support of summary judgment.

5.26 Therefore, if this Honorable Court finds that issues of material exist as to the existence of the Shareholders' Agreement, said determination is dispositive as to the Shop Rights Issue because said agreement finds MR. DAVIS to be the owner of the patent which eliminates Defendants' entitlement to any ownership rights including shop rights.

5.27 Hence, since issues of material fact exist as to whether or not a contract exists between the parties inspective of whether or not the Statute of Frauds is applicable Defendants' Motion for Partial Summary Judgment should, in all respects, be denied.

## VII.

### POINT NO. 4:     THE REQUIREMENTS FOR A SHOP RIGHT DID NOT EXIST

5.28    For a shop right to exist, all the cases require the existence of two factors: (1) use of the employer's property by the employee to conceive and develop the invention, and (2) the inventor's express consent or silent acquiescence in the use of his invention or discovery by the employer. *North v. Atlas Brick Co.*, 281 SW 608 (Tex. Civ. App. 1926), *mod. on other grounds*, 288 SW 146 (Tex. Com. App.), *later app*, 2 SW2d 980 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519. However, the determining factor of whether a shop right exists is the inventor's express consent or silent acquiescence in the use of his

21

invention by the employer. *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896); *Atlas Brick Co. v. North*, 2 SW2d 980, 987 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519.It is undisputed that MR. DAVIS, at all times, demanded a royalty from FFC to use his invention.   (See Shareholders' Agreement, **Exhibit "D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits "H and J"**; Davis Affidavit, **Exhibit "K"**; Transcript of November 8, 1999 Temporary Injunction Hearing, **Exhibit "L"**).   **MR. DAVIS** did not silently acquiesce, but rather, openly restricted use of his invention.

5.29 Further, Davis expressly dissented to FFC using his invention without a license by signing the Shareholders Agreement (**Exhibit "D"**), and then, prior to the end of the 3-year term in the Shareholders Agreement, requesting that FFC sign a longer term License Agreement (**Exhibit "O"**).

5.30 Still further, **MR. DAVIS** had already conceived and developed his invention before coming to FFC. (See Rusk Affidavit, **Exhibit "M"**; and Rusk Drawings, **Exhibits " P, Q, and R"**). A shop right cannot exist because neither of the requirements existed.

> (a)    **No Shop Right Can Exist Because Davis Conceived And Perfected His Invention Before Working For FFC**

5.31 A shop right can not exist if the employee, in conceiving or perfecting his invention, did not use the employer's property. *Dysart v. Remington Rand*, 40 F. Supp. 596 (DC Conn. 1941); *Massie v. Fruit Growers' Exp. Co.*, 31 F2d 463 (DC Del. 1929), *revd on another grounds*, 41 F2d 43 (3rd Cir.); *Lion Mfg. Corp. v. Chicago Flexible Shaft Co.*, 106 F2d 930 (7th Cir. 1939). Davis

had already conceived and developed his invention before coming to FFC. (See Rusk Affidavit, **Exhibit "M"**; and Rusk Drawings, **Exhibits " P, Q, and R"**). A shop right cannot exist because neither of the requirements existed .

5.32 In a case similar to the present, an inventor in an action against a corporation to establish rights to a promised consulting agreement for the life of any patent rights which inventor assigned to the corporation, the inventor proved valid ownership of his prior invention where evidence indicated that he reduced his idea to practice prior to beginning the consulting agreement, and the inventor's idea, although not in a commercial form, was considered completed prior to employment with the corporation. *Bailey v. Chattem, Inc.* 684 F2d 386, 215 USPQ 671 (6th Cir. 1982), appeal after remand (6th Cir.), 779 F2d 49, *cert den.*, 475 U.S. 1065, 89 L. Ed. 2d 602, 106 S. Ct. 1376, later proceeding, 838 F2d 149 (6th Cir.), *cert den.*, 486 U.S. 1059, 100 L. Ed. 2d 931, 108 S. Ct. 2831.

### (b)      Employer-Employee Relationship Is Not Sufficient To Establish Shop Right

5.33 It is well settled that the mere existence of an employer-employee relationship does not in itself entitle the employer to a shop right or license in his employee's inventions and discoveries. *Massie v. Fruit Growers' Exp. Co.*, 31 F.2d 463 (DC Del. 1929), *revd on other grounds*, 41 F.2d 43 (3rd Cir. 1929); *American Stoker Co. v. Underfeed Stoker Co.*, 182 F. 642 (CC Pa. 1910), *affd*, 188 F. 314 (3rd Cir. 1910); *Toner v. Sobelman*, 86 F. Supp. 369 (DC Pa. 1949).

5.34 The leading case in Texas holding that the mere existence of an employer-employee relationship does not in itself entitle the employer to a shop right in his employee's inventions and discoveries is the *Atlas Brick* case. ***North v Atlas Brick Co.***, 281 SW 608 (Tex. Civ. App. 1926), *mod. on other grounds*, 288 SW 146 (Tex. Com. App.), *later app*, 2 SW2d 980 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519.

5.35 It was stated in ***Atlas Brick Co. v North***, 288 SW 146 (Tex. Com. App.), *later app*, 2 SW2d 980 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519, that the mere fact that an inventor at the time of his concept is in another's service is not sufficient to give the employer an interest in, or a title or right to, the invention. The court said that the ground for this rule is that the employee may perform all of the duties properly assignable to him and during the same period independently exert his conceptive faculties with the assurance that whatever invention he may thus conceive and perfect is his individual property.

5.36 In the *Atlas Brick* case, the idea was conceived during the president's employment. Even so, the court held that was not enough to establish a shop right. In the present case, it is undisputed that Davis conceived the idea, and developed it, before being employed.   (See Rusk Affidavit, **Exhibit "M"**;  and  Rusk Drawings, **Exhibits " P, Q, and R"**).

### (c)      Not Even Being The President Of The Company Is Sufficient To Establish A Shop Right

5.37 The mere fact that a person is the president of a corporation when he discovers an invention and applies for a patent was held in ***American Stoker Co. v Underfeed Stoker Co.***, (1910, CC Pa) 182 F 642, *affd*, (CA3) 188 F 314, not to entitle the company to an implied license to use the invention.  The court said that there was nothing in the evidence tending to show that the inventor,

24

as president, owed any duty to the company to give it the benefit of any discoveries that he might make; that the relation of employer and employee did not exist; and that, even if it did exist, that would not be sufficient.

5.38   The *American Stoker* case supports the leading Texas case, ***Atlas Brick Co. v. North***, 288 SW 146 (Tex. Com. App.), *later app*, 2 SW2d 980 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519. The leading case states:

> "It is also insisted that North sustained a trust relationship to the Atlas Brick Company as general manager, and for that reason what acts were done by him in that relation are deemed to be done in benefit of the trust, and we are referred to ***John v. Battle***, 58 Tex. 591. After a review of [**15] many authorities, without quoting them here, we have concluded that the circumstances under which North was put in possession and management only of the physical properties of the company, as disclosed by the written contract and other facts in connection with his possession, the John v. Battle Case has no application; the patent and patent process not being a part of nor emanating from the company's properties, but a concept of North independent thereof."

***Atlas Brick Co. v. North***, 288 SW at 984. Clearly, since Davis conceived and developed his invention before being employed, he owes no duty to assign. Nor does a shop right exist.

(d) **No Shop Right Can Exist Because Davis Always Requested A Royalty For The Use Of His Invention**

5.39  It is well settled that when the courts, and particularly the United States Supreme Court, recognize shop rights in favor of the employer, the inventor had led his employer to believe that he would not insist on his right as a patentee to prevent the employer from using, making, or selling the patented device.  Such conduct was regarded as the equivalent of a representation to that effect by the employee to the employer. See, *McClurg v. Kingsland,* 1 How. 202, 11 L. Ed. 102 (1843); *Solomons v. United States*, 137 U.S. 342, 34 L .Ed. 667, 11 S. Ct. 88 (1890).  If the employer, in reasonable reliance upon such representation, incurred a detriment, then all the elements of an equitable estoppel were present.  Consequently, when the inventor sued the employer to enforce the right the inventor's patent gave to prevent anyone from making, using, or selling his invention without his permission, he found himself estopped to claim that he did not give permission to his employer to make, use, or sell the invention.  This equitable defense resulted in the employer's having a shop right to use, make, or sell the invention even though he had no express permission from the inventor. See, *Gill v. United States*, 160 U.S. 426, 40 L. Ed. 480, 16 S. Ct. 322 (1896).   Thus, estoppel is the basis for establishing a shop right.  In order that a shop right or similar privilege in favor of the employer may come into existence, there must be proof that the employee either explicitly assented to the use of his invention by the employer or acquiesced in such use without demand for compensation.  The following cases expressly state that estoppel is a prerequisite to the establishment of a shop right.  *Gill v. United States*, 160 U.S. 426, 40 L. Ed. 480, 16 S. Ct. 322 (1896);  *Atlas Brick Co. v. North*, 288 SW 146 (Tex. Com. App.), *later app*, 2 SW2d 980 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519; *Tin Decorating Co. v. Metal Package Corp.*, 29 F.2d 1006 (DCNY 1928), *affd*, 37 F.2d 5 (2d Cir.), *cert. den.*, 281 U.S. 759, 74 L. Ed. 1168, 50 S. Ct. 410; *Neon Signal Devices v. Alpha-Claude*

26

*Neon Corp*. 54 F.2d 793 (DC Pa. 1931);  *Gate-Way, Inc. v. Hillgren*, 82 F. Supp. 546 (DC Cal. 1949), *affd*, 181 F2d 1010 (9th Cir.);  *Toner v. Sobelman*, 86 F. Supp. 369 (DC Pa. 1949);  *White Heat Products Co. v. Thomas*, 266 Pa. 551 (1920), 109 A. 685.  Davis did not explicitly assented to the use of his invention by FFC, i.e., he did not sign an agreement to let FFC use his invention free of charge.  Rather, Davis continually insisted that a royalty must be paid.  (See Shareholders' Agreement, **Exhibit "D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits "H and J"**; Davis Affidavit, **Exhibit "K"**; Transcript of November 8, 1999 Temporary Injunction Hearing, **Exhibit "L"**).    Further, **MR. DAVIS** did not acquiesce in FFC's use without demand for compensation. Davis continually insisted that a royalty must be paid. *Id*.

5.40  The view that the establishment of a shop right or similar privilege is based on the doctrine of estoppel was firmly expressed by the United States Supreme Court in *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896).  After referring to the rule that an employee who devises an improved method of doing his work, using the property or labor of his employer to put his invention into practical form and assenting to the use of such improvements by his employer, may not by taking out a patent upon the invention recover a royalty or other compensation for such use, the Supreme Court expressly stated that the shop right doctrine was really an application or outgrowth of the law of estoppel in pais.  Thus, a person looking on and assenting to that which he has the power to prevent is held to be precluded ever afterward from maintaining an action for damages.  The Supreme Court amplified this statement by saying:

> "A familiar instance is that of one who stands by, while a
> sale is being made of property in which he has an interest
> and makes no claim thereto, in which case he is held to be

27

> estopped from setting up such claim. The same principle
> is applied to an inventor who makes his discovery public,
> looks on and permits others to use it without objection or
> assertion of a claim for a royalty. In such case he is held to
> abandon his inchoate right to the exclusive use of his
> invention, to which a patent would have entitled him had
> it been applied for before such use." *Id.*

Even more significantly, the Supreme Court continued by expressly rejecting the contention that the use of the employer's property was the basis of the creation of a shop right. It said in this respect that the fact that the patentee makes use of the property and labor of the employer in putting his conceptions into practical shape is important only as furnishing an item of evidence tending to show that the patentee consented to and encouraged the employer in making use of his devices. The Supreme Court stated that <u>the ultimate fact to be proved is the estoppel arising from the consent given by the inventor to the use of his inventions by the employer, without demand for compensation</u>. *Id.*, at 435. The most conclusive evidence of such consent is an express agreement or license. But evidence may also be shown by parol testimony, or by conduct on the part of the inventor proving acquiescence on his part in the use of his invention. The fact that he made use of the time and tools of his employer, put at his service for this purpose, raises either an inference that the work was done for the benefit of such employer, or an implication of bad faith on the patentee's part in claiming the fruits of labor which technically he had no right to enlist in his service. *Id.* A shop right cannot exist when an employee continually demands an agreement providing compensation for the manufacture of the invention (As Davis did in the present case.). A state supreme court held that no shop right arose in favor of the employer where the employee continually made demands for an agreement providing compensation from the time the manufacture of the invention began in the employer's plant. The supreme court in *White Heat Products Co. v. Thomas*, 266 Pa. 551, 109 A. 685 (1920), said

that in view of the above fact no element of estoppel existed, and that under the rule as laid down in

*Gill v. United States, supra,* the ultimate fact to be proved for the existence of a shop right in the

employer is the estoppel arising from the consent given by the patentee to the use of his invention

without demand and for compensation. Davis did not consent, he dissented to use without payment.

(See Shareholders' Agreement, **Exhibit "D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits**

**"H and J"**; Davis Affidavit, **Exhibit "K"**; Transcript of November 8, 1999 Temporary Injunction

Hearing, **Exhibit "L"**).   Similarly, it was stated in *Neon Signal Devices v. Alpha-Claude Neon*

*Corp.*, 54 F.2d 793 (DC Pa. 1931), that the shop right doctrine is of equitable origin; that the

principle involved is that where an inventor or owner of an invention acquiesces in the use of the

invention by another, particularly where he induces and assists in such use without demand for

compensation or other notice of restriction of the right to continue. Thus, the inventor will be deemed

to have vested the user with an irrevocable, equitable license to use the invention.   This situation

between the inventor and employer might arise by mutual agreement, but generally arises where the

inventor induces his employer to proceed, and not only fails to object to the use, but stands by or

assists, while permitting his employer to assume expense and put himself in a position where it would

be to his detriment to be compelled to relinquish further use of the invention. Davis did not stand by,

but rather, he insisted on a royalty to use his invention.   (See Shareholders' Agreement, **Exhibit**

**"D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits "H and J"**; Davis Affidavit, **Exhibit "K"**;

Transcript of November 8, 1999 Temporary Injunction Hearing, **Exhibit "L"**).   Similarly, in *Gate-*

*Way v. Hillgren*, 82 F. Supp. 546 (DC Cal. 1949), *affd*, 181 F.2d 1010 (9th Cir.), the court quoted

with approval the statement dealing with the doctrine of shop right from *Neon Signal Devices v*

*Alpha-Claude Neon Corp., supra.*

(e)    **Since FFC Proposed In Its Shareholders Agreement To Pay Davis A Royalty, No Shop Right Can Exist**.

5.41 Courts have held that an agreement, express or implied, between employer and employee for the payment of compensation for the use of the employee's invention negatives the existence of a shop right. Stated differently, the absence of such an agreement is an essential condition for the existence of a shop right. *Dysart v. Remington Rand*, 40 F. Supp. 596 (DC Conn. 1941); *Toner v. Sobelman*, 86 F, Supp, 369 (DC Pa. 1949); *Brown v. L. V. Marks & Sons Co.*, 64 F. Supp. 352 (DC Ky 1946); *Wiles v. Union Wire Rope Corp.*, 134 F. Supp. 299 (DC Mo. 1955); *Davis v. United States*, 23 Ct. Cl. 329 (1888). Also recognizing that an agreement between employer and employee for payment of compensation for use of employee's invention negatives existence of shop right is *Mechmetals Corp. v. Telex Computer Products, Inc.*, 709 F2d 1287, 219 USPQ 20 (9th Cir. 1983). In *Dysart v. Remington Rand*, 40 F. Supp. 596 (DC Conn. 1941), the court, in declining to recognize a shop right in favor of the employer, noted that there was an agreement between the inventor and the company according to which the company would use the invention and compensate the inventor for its use when its value became ascertained after issuance of the patent for it. In the present case, Davis agreed to a one percent (1%) royalty during the initial 3-year term to evaluate the commercial viability of the Davis crawler cranes. (Shareholders' Agreement, **Exhibit "D"**). Thereafter, Davis submitted a License Agreement to increase the royalty to four percent (4%). (See License Agreement, **Exhibit "O"**). In another Texas case, an employer manufacturing company did not acquire shop right in improved pipe designs, where, during contract negotiations between parties, the issue of patent rights was specifically discussed but stricken from draft of contract upon refusal of employee-consultant to agree to it, and where employee expressed determination to retain patent rights. *Lone Star Steel Co. v. Wahl*, 636 SW2d 217 (Tex App Texarkana 1982).

30

## VI.

## UNDISPUTED FACTS SUPPORTING SUMMARY JUDGMENT OF OWNERSHIP BY DAVIS AND NO SHOP RIGHTS TO DEFENDANTS

1.      U.S. Patent No. 6,003,252 was issued by the U.S. Patent and Trademark Office to Daniel E. Davis.

2.      Daniel E. Davis is the inventor named by the U.S. Patent and Trademark Office on U.S. Patent No. 6,003,252.

3.      Under 35 U.S.C. 256, Defendants could have disputed Davis being the sole inventor, but did not. ("The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.")

4.      No written assignment exists from **MR. DAVIS** to Defendants.

5.      Any assignment must be in writing, and no such writing exists. 35 U.S.C. 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").

6.      Defendants never notified the U.S. Patent and Trademark Office that it had a claim to U.S. Patent No. 6,003,252.

7.      Defendants never sought to protect any of its alleged ideas by applying for patents.

8.      The Employment Contract is silent with respect to Davis being hired to invent, assignment of ideas or any such matters.

9.      The Employment Contract was written by Defendants.

10.     The Shareholders' Agreement expressly requires that Defendants pay Davis a royalty for using Davis' patented invention.

31

11.     The Shareholders' Agreement was written by Defendants.

12.     At Davis' request, Defendants changed the Shareholders' Agreement to include the provision requiring it to pay Davis a royalty for using Davis' patented invention.

13.     Davis conceived his invention before working for Defendants.

14.     Davis developed his invention before working for Defendants.

15.     Defendants did not make crawler cranes when Davis brought his invention to them.

16.     Davis' trade secrets and patent is not Defendants' property to conceive and develop the invention because Davis did that before he started to work.

17.     Davis did not expressly consent to Defendants using his invention..

18.     Davis, at all times, demanded a royalty from FFC Parties to use his invention.

20.     Davis did not silently acquiesce, but rather, openly restricted use of his invention.

21.     Davis expressly dissented to FFC Parties using his invention without a license by signing the Shareholders' Agreement

22.     Prior to the end of the 3-year term in the Shareholders' Agreement, Davis requested that Defendants sign a longer term License Agreement

## VII.

## <u>CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT ON PATENT</u>

## <u>OWNERSHIP AND SHOP RIGHTS</u>

**COMES NOW, DANIEL E. DAVIS, ET. AL.**, Plaintiffs in the above-styled and numbered civil action, and file this their Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights, and in support thereof would respectfully show this Honorable Court the following:

32

7.01 Plaintiffs hereby incorporate and adopt the foregoing paragraph 2.01 in its entirety in support of this Cross Motion.

7.02 Plaintiffs hereby incorporate and adopt the foregoing paragraph VI in its entirety in support of this Cross Motion.

7.03  Even if Davis conceived and developed his invention after being employed, which he did not, he still did not have a duty to assign it to FFC. *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896); *American Stoker Co. v Underfeed Stoker Co.*, 182 F. 642 (CC Pa. 1910), *affd*, (3d Cir.) 188 F 314; *Atlas Brick Co. v. North*, 2 SW2d 980, 984 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519 (Being the president of a corporation when he discovers an invention and applies for a patent does not require assignment, nor did such relationship indicate acquiescence to a shop right). The Patent Statute (35 USC 261) requires a writing to assign a patent. No such writing exists.

7.04 It is undisputed that Davis, at all times, demanded a royalty from FFC to use his invention. See Shareholders' Agreement, **Exhibit "D"**; License Agreement, **Exhibit "O"**; Letters, **Exhibits "H and J"**; Davis Affidavit, **Exhibit "K"**; Transcript of November 8, 1999 Temporary Injunction Hearing, **Exhibit "L"**). Davis did not silently acquiesce, but rather, openly restricted use of his invention. Further, Davis expressly dissented to FFC using his invention without a license by signing the Shareholders' Agreement (**Exhibit "D"**), and then, prior to the end of the 3-year term in the Shareholders' Agreement, requesting that FFC sign a longer term License Agreement (**Exhibit "O"**). Still further, Davis had already conceived and developed his invention before coming to FFC. (See Rusk Affidavit, **Exhibit "M"**; Rusk Drawings, **Exhibits "P, Q, and R".**) A shop right cannot exist because neither of the requirements existed. Thus, as a matter of law, no shop right can exist. *Gill v. United States*, 160 U.S. 426, 430, 40 L. Ed. 480, 16 S. Ct. 322, 325 (1896); *Atlas Brick Co. v. North*, 2 SW2d 980, 987 (Tex. Civ. App.), *which is revd on other grounds*, 13 SW2d 59 (Tex. Com. App.), *motion gr in part*, 16 SW2d 519.

33

CutePDF - www.texlia.com

7.05 Summary judgment is appropriate for Davis in that (1) he owns the patent, and that (2) Defendants FFC Parties do not have a shop right in the patent. As such, Plaintiffs move this Court for Judgment as a matter of law on patent ownership and shop rights.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, since Defendant FFC Parties have failed to establish that they are entitled to judgment as a matter of law for all the reasons stated herein, and because Defendant FFC Parties have failed to establish that there are no fact issues present in this civil action, Plaintiffs urge and respectfully pray that upon final hearing, Defendant FFC Parties' Supplemental Motion for Partial Summary Judgement be denied in its entirety, and that the Court grant Plaintiff's such other and further relief at law or in equity to which Plaintiff's may show themselves justly entitled.

Respectfully Submitted,

LAW OFFICES OF

ERNESTO GAMEZ, JR, P.C.

777 E. Harrison Street

Brownsville, Texas 78520

TEL/ (956) 541-3820

FAX/ (956) 541-7694

BY: _____

ERNESTO GAMEZ, JR.

State Bar No. 07606600

Federal Id. No. 8645

ATTORNEY IN-CHARGE FOR

PLAINTIFFS

34

\*VICTOR QUINTANILLA

State Bar No. 00786181

Federal Id. No. 16073

(\* SIGNED WITH PERMISSION OF
ATTORNEY IN-CHARGE)

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA,** hereby certify that on this 22nd day of February, 2001 a true and correct copy of **Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgement and Supporting Memorandum** as served <u>VIA CM RRR 7099 3220 0006 2777 6933</u> on Defendant's counsel of record Hon. Gary Gurwitz, **ATLAS & HALL, L.L.P.,** P.O. Drawer 3725, 818 Pecan, McAllen, Texas 78502.

VICTOR QUINTANILLA