United States District Court
Southern District of Texas
Brownsville Division

United States District Court
Southern District of Texas
FILED

FEB 2 7 2001

Michael N. Milby
Clerk of Court

DANIEL E. DAVIS, et al,
      plaintiffs

v.

FAVELLE FAVCO CRANES USA, INC.,
et al.,
      defendants

§
§
§
§
§
§
§

Civil Action No. B-00-003



## Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment

Gary Gurwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

February 27, 2001

# Table of Contents

1.  Statement of the nature and stage of the proceeding. . . . . . . . . . . . . . . . . . . .  1

2.  Summary of argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

3.  Summary judgment standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

4.  Davis cannot contest the fact that the patent would belong to FFC USA but
    for the alleged draft 1997 Shareholders' Agreement. . . . . . . . . . . . . . . . . . .  4
    4.1    The Employment Contract does not require a different result. . . . . . . . .  5
    4.2    The Rusk Affidavit and Davis Affidavit do not require a different
           result.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
           4.2.1  An idea is not patentable . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
           4.2.2  All work was done for FFC USA. . . . . . . . . . . . . . . . . . . . . . . . .  6
           4.2.3  All work was paid for by FFC USA. . . . . . . . . . . . . . . . . . . . . . .  8
    4.3    Davis newly produced evidence, if anything, makes the '252 patent
           invalid . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
    4.4    The presumption of validity does not relate to ownership . . . . . . . . . .  10

5.  The 1997 draft Shareholders' Agreement is ineffective and grants no rights
    to Davis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    5.1    The statute of frauds precludes enforcement of Davis' alleged
           agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
           5.1.1  The statute of frauds applies to the alleged agreement, and
                  requires a signed writing . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
           5.1.2  Davis has not pleaded estoppel . . . . . . . . . . . . . . . . . . . . . . . .  11
           5.1.3  Davis' affidavit is insufficient to raise a fact issue as to
                  promissory estoppel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
           5.1.4  Independently, Davis' alleged conduct in reliance is insufficient
                  to support application of promissory estoppel . . . . . . . . . . . . . .  13
           5.1.5  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
           5.1.6  The statute of frauds may be avoided only in extreme cases
                  where a virtual fraud is perpetrated . . . . . . . . . . . . . . . . . . . . . .  17
           5.1.7  Promissory estoppel allows only reliance damages, and Davis
                  has not requested such relief . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

6.  Nor do the 1999 drafts of the Shareholders' Agreement not require a
    different result . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

7.  Alternately, FFC USA has shop rights to, and trade secrets interests in, the
    crawler cranes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

7.1     Davis is incorrect in arguing that consent or silent acquiescence (i.e., estoppel) is required for a shop right to exist: under the "totality of the circumstances," which is the correct test, FFC USA is entitled to a shop right. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

7.2     Davis' argument that the crawler cranes at issue were conceived and developed before joining FFC USA is contradicted by the summary judgment record and is also irrelevant to whether FFC USA has a shop right. . . . . : . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

7.3     Davis' reliance on Atlas Brick Co. v. North in support of his no shop right argument is misplaced. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

7.4     Davis attempt to rely on the license agreement in the draft shareholders agreement to refute FFC USA's claim for shop rights must also fail. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

8.      Objections to evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

9.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

3

# Table of Authorities

Cases

*Ashe v. Corley,*
992 F.2d 540 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Adams v. Petrade International, Inc.,*
754 S.W.2d 696 (Tex. App.–Houston [1st Dist.] 1988, no writ) . . . . . . . . . . . . . 12, 18

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . 3, 4

*Atlas Brick Co. v. North,*
288 S.W. 146 (Tex. Comm. App. 1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

*Brown v. L.V. Marks & Co.,*
64 F.Supp 352 (E.D. Ky. 1946) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Central Power & Light Co. v. Del Mar,*
594 S.W.2d 782 (Tex. Civ. App.–San Antonio 1980, writ ref'd n.r.e.) . . . . . . . . . . . 17

*Crawford v. Formosa Plastics Corp.,*
234 F.2d 899 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Dailey v. Transitron Electronic Corp.,*
475 F.2d 12 (5th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis v. Alwac International, Inc.,*
369 S.W.2d 797 (Tex. Civ. App.–Beaumont 1963, writ ref'd n.r.e.) . . . . . . . . . . . . . . 5

*Diamond v. Diehr,*
450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) . . . . . . . . . . . . . . . . . . . . . . . 5

*Doe v. Dallas Independent School District,*
20 F.3d 380 (5th Cir. 2000),
*cert. denied,* 2001 U.S. Lexis 175 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7

*Franks v. Nimmo,*
796 F.2d 1230 (10th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Fretz Construction Co. v. Southern National Bank of Houston,*
626 S.W.2d 478 (Tex. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

CitiPDF - www.texita.com

*Gate-Way v. Hillgren,*
  82 F.Supp 546 (S.D. Cal. 1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gulbenkian v. Penn,*
  151 Tex. 412, 252 S.W.2d 919 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-14

*In re Consolidated Lewis Investment Corp.*
*(Ford Motor Credit Co. v. Hawking),*
  210 F.3d 540 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*J.A. LaPorte, Inc. v. Norfolk Dredging Co.,*
  227 U.S.P.Q. 382 (E.D. Va. 1985),
  *aff'd,* 787 F.2d 1577 (Fed. Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Levine v. Loma Corp.,*
  661 S.W.2d 779 (Tex. App.–Fort Worth 1983, no writ) . . . . . . . . . . . . . . . . . . . . . . 12

*Little v. Liquid Air Corp.,*
  37 F.3d 1069 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Mack v. United States,*
  814 F.2d 120 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Magcobar North American v. Grasso Oilfield Services, Inc.,*
  736 S.W.2d 787 (Tex. App.–Corpus Christi 1987),
  *writ dism'd per settlement,* 754 S.W.2d 646 (1988) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Martin v. Merrell Dow Pharmaceuticals, Inc.,*
  851 F.2d 703 (3d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
  475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) . . . . . . . . . . . . . . . . . . . . . . . 3

*McElmurry v. Arkansas Power & Light Co.,*
  995 F.2d 1576 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Meyer v. Texas National Bank of Commerce of Houston,*
  424 S.W.2d 417 (Tex. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mississippi River Basin Alliance v. Westphal,*
  230 F.3d 170 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

5

*Moore Burger, Inc. v. Philips Petroleum Co.,*
  492 S.W.2d 934 (Tex. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Nagle v. Nagle,*
  633 S.W.2d 796 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Rosaire v. Baroid Sales Division, National Lead Co.,*
  218 F.2d 72 (5th Cir. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Rubber-Tip Pencil Co. v. Howard,*
  87 U.S. 498,  22 L.Ed. 410, 20 Wall. 498 (1874) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Sanders v. McMullen,*
  868 F.2d 1465 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Schroeder v. Texas Iron Works, Inc.,*
  813 S.W.2d 483 (Tex. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Stokes & Smith Co. v. Transparent-Wrap Machine Co.,*
  161 F.2d 565 (2d Cir. 1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Dubilier Condenser Corp.,*
  289 U.S. 178 (1933), *amended,* 289 U.S. 706 (1933) . . . . . . . . . . . . . . . . . . . . . . . 20


<u>Statutes</u>
35 U.S.C. § 282 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

FED. R. CIV. P. 56(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FED. R. CIV. P. 8(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

CliftPDF - www.fesito.com

## Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment

Defendants Favelle Favco Cranes USA, Inc. ("FFC USA" or "Favco USA"), Favelle Favco Cranes (M) SDN BHD ("FFC Malaysia"), and Favelle Favco Holdings SDN BHD ("FFC Holdings") (collectively "FFC Parties") file this reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum ("Davis Response") as filed by Daniel E. Davis ("Davis"), DavisCo, Inc. ("DavisCo."), and Coburn International Ltd. ("Coburn") (collectively "Davis"), and would show:

1.    *Statement of the nature and stage of the proceeding.*  The case is set for final pretrial conference on March 1, 2001.  The FFC Parties have requested summary judgment: 1) declaring that FFC USA owns the patent at issue (the "'252 patent") requiring Davis to execute a proper assignment conveying such ownership to FFC USA; 2) in the alternative, whether or not FFC USA owns the '252 patent, declaring that FFC USA is entitled to shop rights in the patents at issue; 3) declaring that FFC USA owns the trade secrets, designs, drawing, plans, specifications and all technology related to the crawler cranes at issue; 4) requiring Davis to return all drawings specifications and other technology related to the crawler cranes at issue, and enjoining Davis from making use of such drawings, designs, trade secrets.  Davis, in response, alleges that a draft 1997 Shareholders Agreement is a contract between FFC Malaysia and Davis, and that, pursuant to such contract, FFC USA has only a three-year license.  The FFC Parties, in a supplemental motion for summary judgment, have alleged that any such "agreement" is

barred by the statute of frauds and also barred because the parties named in the draft

agreement did not intend to be bound absent the agreement being signed by the parties

named therein.

    2.    *Summary of argument.*  There is no genuine issue of disputed fact.  Davis'

cannot create such issue by filing affidavit(s) that contradict prior deposition testimony, as

discussed below.  Disregarding any such contradictory "evidence," the summary judgment

evidence shows that:

> ► FFC USA is entitled to own the patent at issue (and related trade secrets, etc.)
> See section 5 below.  The Rusk Affidavit and the new evidence of 1997 drawings
> predating Davis' relationship with FFC USA do not preclude summary judgment or,
> in the alternative, merely demonstrate that Davis has no valid patent.

> ► Davis' relies on the existence, validity, and enforceability of a draft 1997
> Shareholders Agreement – unsigned by any FFC Party – to deny that FFC USA has
> any rights in the patents and the crawler cranes at issue in this suit and to assert
> that FFC USA had a three-year "license" only.

> ► The draft 1997 Shareholders Agreement is not a valid or enforceable agreement
> because any such agreement is barred by the statute of frauds.  Davis does not
> deny that the statute of frauds is applicable.  See section 6 below.
>> ▷ Davis has not pleaded promissory estoppel or raised the issue in the
>> Amended Joint Pretrial Order, and should not be allowed to raise it now.
>> ▷ Davis' affidavit is insufficient to raise a fact issue as to promissory estoppel.
>> ▷ Davis' alleged conduct in reliance is insufficient to support application of
>> promissory estoppel.
>> ▷ Only extreme cases justify relief from the statute of frauds, and this is not
>> such a case.
>> ▷ Promissory estoppel allows only reliance damages, and Davis has not
>> requested such relief.

> ► Alternately, FFC USA is entitled as a matter of law to "shop rights."  The "totality
> of circumstances" demonstrates the existence of such rights.  See section 8 below.

CVisPDF - www.texiss.com

3.    *Summary judgment standard.*  Under Federal Rule of Civil Procedure 56(c),

summary judgment should be entered if the pleadings, affidavits, and other summary

judgment proof show that "there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Mississippi*

*River Basin Alliance v. Westphal,* 230 F.3d 170, 174 (5th Cir. 2000).  Summary judgment

is not a disfavored proceeding.  *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075-76 & n. 14

(5th Cir. 1994) (en banc).  As the United States Supreme Court explained in *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)

(emphasis in original):

> [T]he mere existence of <u>some</u> alleged factual dispute between
> the parties will not defeat an otherwise properly supported
> motion for summary judgment; the requirement is that there be
> no <u>genuine</u> issue of <u>material</u> fact.

A "genuine" issue of material fact exists only if the evidence is such that a

reasonable jury could return a verdict for the non-moving party.  *Crawford v. Formosa*

*Plastics Corp.,* 234 F.2d 899, 902 (5th Cir. 2000). The plaintiff cannot rely upon vague

allegations:  after the moving party has met its initial summary judgment burden, "its

opponent must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586,

106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).  There is no "genuine" issue of fact "[w]here

the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party." *Id.* at 587.  Summary judgment should be entered when, in response to a properly

supported motion for summary judgment, the nonmoving party produces only a "scintilla

3

of evidence," or where the nonmoving party's evidence "is merely colorable or is not significantly probative." *Anderson v. Liberty Lobby*, 477 U.S. at 249-50, 252; *In re Consolidated Lewis Investment Corp. (Ford Motor Credit Co. v. Hawking)*, 210 F.3d 540, 545 (5th Cir. 2000). Furthermore, a plaintiff may not manufacture a genuine issue of material fact by submitting an affidavit that impeaches prior testimony without explanation. *Doe v. Dallas Independent School District*, 20 F.3d 380, 386 (5th Cir. 2000), *cert. denied*, 2001 U.S. Lexis 175 (2001).[1] Conclusory allegations unsupported by specific facts also will not prevent an award of summary judgment: "the non-movant must respond to the motion for summary judgment by setting forth particular facts indicating that there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d at 174; *In re Consolidated Lewis Investment Corp.*, 210 F.3d at 545.

4.      *Davis cannot contest the fact that the patent would belong to FFC USA but for the alleged draft 1997 Shareholders' Agreement.* Davis still does not contest that he owed a fiduciary duty to FFC USA. Further he continues <u>not</u> to deny that the crawler cranes at issue:

> • were not patentable at the time that Davis became president and managing director of FFC USA (see Defendant Favco USA's Motion for Partial Summary Judgment ["FFC USA's MSJ"] § B(8); Amended Joint Pretrial Order ¶ 6(18) (admitted fact: "All work done on the crawler cranes manufactured and sold by Favco USA was done after Davis became President and Managing Director of Favco USA");

---

[1]  *See also Martin v. Merrell Dow Pharmaceuticals, Inc.*, 851 F.2d 703, 706 (3d Cir. 1988) ("The numerous other courts of appeals that have considered the situation in which a party contradicts, without satisfactory explanation, his or her prior testimony, have reached the same decision.  Each court has concluded that the objectives of summary judgment would be seriously impaired if the district court were not free to disregard the conflicting affidavit"; citations omitted); *Mack v. United States*, 814 F.2d 120, 124 (2d Cir. 1987); *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

4

• were developed with funds contributed solely by or on behalf of FFC USA ( see FFC USA MSJ § B(12)); Amended Joint Pretrial Order ¶ 6(9) (admitted fact: "Favco USA made every payment for every aspect of the entire crawler crane project");

• were promoted by Davis on behalf of FFC USA; and

• relate to the business of FFC USA  (see FFC USA MSJ § B(2), (4)).

As such the patent – although issued in Davis' name – clearly belongs to FFC USA and Davis's fiduciary duty requires him to assign the patent to FFC USA. *Davis v. Alwac International, Inc.,* 369 S.W.2d 797, 802 (Tex. Civ. App.–Beaumont 1963, writ ref'd n.r.e.).

4.1 *The Employment Contract does not require a different result.* Davis asserts that the Employment Contract of June 23, 1997 between Davis and FFC Holdings provided for a royalty and a license agreement. Davis Response at 9. The Employment Contract has no such provisions. See FFC MSJ Ex. A3. It does provide that Davis will be "employed as a managing director to perform on behalf of employer work done at its facility in the USA," but it says nothing about royalties, licenses, or stock ownership. *Id.*

4.2 *The Rusk Affidavit and Davis Affidavit do not require a different result.* Davis now argues that some work regarding the crawler cranes at issue was done by engineer Rusk prior to the time that Davis became president and managing director of FFC USA. However, that does not help Davis.

4.2.1 *An idea is not patentable.* A mere idea is not patentable. *Diamond v. Diehr,* 450 U.S. 175, 184, 101 S.Ct. 1048, 1056, 67 L.Ed.2d 155 (1981); *Rubber-Tip Pencil Co. v. Howard,* 87 U.S. 498, 506,  22 L.Ed. 410, 20 Wall. 498 (1874).

5

Further design and engineering work is necessary. Davis admits that he could not himself do the work to support a patent. Davis Depo. at 45-48, FFC USA MSJ Ex. A.[2]

       4.2.2 *All work was done for FFC USA.* Davis in his deposition states that he brought nothing with him from his prior employer and that, at the time he became president of FFC USA, there were no drawings or plans for the crawler cranes at issue. Davis Depo. at 35-36, 50, FFC USA MSJ Ex. A.[3] In the Amended Joint Pretrial Order, Davis admits that "[a]ll work done on the crawler cranes manufactured and sold by Favco

---

[2]

Q:    Why did you hire – why did Favco USA hire Mr. Rusk, if you could do them [patent drawings]?
A:    Because I'm not an engineer.
Q:    So they had to be done in engineer language?
A:    That's correct.
. . .
Q:    And those plans and specifications have to be signed off by an engineer, do they not?
A:    That's correct.

Davis Depo. at 46.

[3]

Q:    . . . When you left Manitowoc –
A:    Uh-huh.
Q:    – and you went and became president and managing director of Favco USA, what did you bring with you that had to do with the crawler cranes that are the subject of this lawsuit?
A:    That are the subject of this lawsuit? Nothing from Manitowoc.
Q:    Okay. You brought no plans?
A:    No. Not that was being used, no.
. . .
Q:    You didn't bring any patents?
A:    No.
Q:    You didn't being any working models?
A:    No.
Q:    What you brought, then, was what? An idea of how to build a different type of crawler crane?
A:    Yes.
Q:    So at the time you became president and managing director of Favco USA, there were not in existence any drawings, models, prototypes of the crawler cranes that we're now fighting about?
A:    No.

Davis Depo. at 35-36 (emphasis added). *See also id.* at 50 (brought nothing from Manitowoc).

6

USA was done after Davis became President and Managing Director of Favco USA," ¶ 6(18).[4]  As discussed above, Davis cannot create a genuine issue of fact on summary judgment through an affidavit that contradicts prior testimony. *Doe v. Dallas Independent School District,* 20 F.3d at 386.

Exhibit R to Davis Response is a drawing, but that drawing specifies in the legend that it is the property of "Manitex Inc," not Davis. Davis' deposition testimony is that the concept he had while he was at Manitex was different that the one on which the cranes as issue is based. Davis Depo. at 183-84 & Ex. 10 (FFC MSJ Ex. A).  Indeed, Davis – responding to a claim by Manitowoc of trade secret infringement – represented to FFC that the crawler cranes at issue <u>did not</u> infringe Manitowoc's trade secrets, and that the concept under development for FFC USA was different than the concept he had while under Manitowoc's employment.  *Id.*[5]  If Davis lied to FFC and lied in his deposition – and the

---

[4] In regard specifically to Rusk, Davis admits:

> An agreement was entered into between J.A. Rusk Engineering, ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 ton and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998. The services provided by Rusk under this contract were to belong to Favco USA. The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA. Rusk was paid for all work done under this contract by Favco USA.

Amended Joint Pretrial Order ¶ 6(14).

[5]
> Q:     And this [Davis Depo. Ex. 10] is what you wrote to Mr. Mac to explain why that was not true, that you had not taken trade secrets from Manitowoc?
> A:     That's correct.
> Q:     And that is your position? You did – nothing you used to manufacture and design these crawler cranes at Favelle Favco came from your employment at Manitowoc; is that correct?
> A:     That's correct.

Davis Depo. at 183-84.

7

work at issue does stem in part from Davis' Manitowoc employment – then he is infringing on the rights of his former employer and breached his fiduciary duty to that employer. Further, his "patent" may well be invalid, as discussed further below.

          4.2.3  *All work was <u>paid for</u> by FFC USA*.  Davis does not deny that the patent work – including the work done by Rusk – was paid for by or on behalf of FFC USA.  *See, e.g.,* Amended Joint Pretrial Order ¶ 6(admitted fact: "Favco USA made every payment for every aspect of the entire crawler crane project").  Indeed, <u>over $10 million</u> was spent by FFC USA for purpose of patenting and marketing the crawler cranes at issue. See FFC USA MSJ at 11.

      A crawler crane is not a new concept.  Davis Depo. at 32.  When Davis left Manitowoc and became president and managing director of FFC USA he brought nothing with him that is the subject of this lawsuit.  Davis Depo. at 35.  He brought no plans, patents or working models.  *Id.* He brought only an idea.  Davis Depo. at 36.  The crawler cranes he worked on at Manitowoc are not the same crawler cranes involved in this lawsuit.  Davis Depo. at 34.  There was only conceptual work being done at Manitowoc; they had nothing that could be built or patented, just an idea. *Id.*

      Furthermore, FFC USA paid Rusk about $200,000 for engineering services performed for FFC USA, which was greatly in excess of what Rusk had estimated his fees would be.  Amended Joint Pretrial Order, Defendant's Exhibit 20 (Attachment A hereto). Rusk's explanation for such cost overrun was that the work he had to do was substantially more complicated and time consuming than he had originally anticipated because of additional miscellaneous engineering, CIPI (Caterpillar) comparisons, electrical and all

8

phases of hydraulic work. *Id.* The power component was changed from Gallotti to Caterpillar, all electrical drawings had to be changed, and many extra hours were spent on hydraulic analysis, design and drafting. *Id.* The contract additions amounted to $115,972.10. *Id.*

The gravamen of Davis' argument is that FFC USA is not entitled to ownership of the '252 patent because some of the work was done at Manitowoc or Manitex before Davis became president of FFC USA, while at the same time denying that he took anything with him from that company or that he violated or took any trade secrets or breached any fiduciary duty that he owed to that company. He can't have it both ways. He either took something from Manitex/Manitowoc or did not tell the truth on his deposition. This conduct should not be permitted to defeat the legitimate claims of FFC USA and to reward Davis with the over $10 million that FFC USA invested in the crawler crane venture. A summary of Davis' testimony and other evidence regarding this point is Attachment B hereto.

4.3    *Davis newly produced evidence, if anything, makes the '252 patent invalid.* For the first time Davis claims he has now produced evidence of drawings of the crawler cranes in dispute allegedly dating back to February 1997. See Davis Response § IV. These drawings – if Davis' new allegations are correct – raise serious questions regarding the validity of the '252 patent and prejudice the rights of FFC USA. A patent is invalid if known or used by others before the inventor's date of invention or if the invention is described in a printed publication more than one year prior to filing date of the patent. 35 U.S.C. §§ 102(a) & (b) . The '252 patent was filed in August of 1998. The newly produced drawings bearing the Manitex name claim to have been done in February 1997.

9

If, as Davis now contends, those drawings were disclosed to FFC USA when Davis joined FFC USA, serious questions arise as to the validity of the '252 patent. *See Rosaire v. Baroid Sales Division, National Lead Co.,* 218 F.2d 72, 74-75 (5th Cir. 1955); *J.A. LaPorte, Inc. v. Norfolk Dredging Co.,* 227 U.S.P.Q. 382 (E.D. Va. 1985) (photograph is a printed publication invalidating patent when at least two copies were made of it and distributed to at least three companies without any obligation of confidentiality), *aff'd,* 787 F.2d 1577 (Fed. Cir. 1986).  Thus, this newly discovered evidence has prejudiced the rights of FFC USA and should be stricken.  In the alternative, FFC USA should at a minimum be entitled to amend its petition asserting invalidity defenses to the '252 patent.

        4.4    *The presumption of validity does not relate to ownership.*  Davis' arguments related to validity of the patent are misplaced and irrelevant to the determination of ownership, therefore Davis' argument for a "clear and convincing" evidentiary standard is also irrelevant. See Davis Response at 11.  Davis is correct that patents do enjoy a statutory presumption of validity under 35 U.S.C. § 282. *See* 35 U.S.C. § 282.  The statutory presumption of validity does not relate to the issue of ownership, however.  The patent office does not examine who the correct owner is, but rather takes the applicant's word for it.  The question of ownership and validity of a patent are distinct and thus unrelated. *See Stokes & Smith Co. v. Transparent-Wrap Machine Co.,* 161 F.2d 565, 566-67 (2d Cir. 1947); *Gate-Way v. Hillgren,* 82 F.Supp 546, 555 n.6 (S.D. Cal. 1949) (noting that the federal courts have exclusive jurisdiction over cases involving the construction, validity, or infringement of patents, but have no jurisdiction if the only issue

10

is ownership)  Consequently Davis' "clear and convincing" evidentiary standard is also irrelevant.

5.      *The 1997 draft Shareholders' Agreement is ineffective and grants no rights to Davis.* Davis continues to rely on the draft 1997 Shareholders Agreement.  Such reliance is misplaced because the statute of frauds precludes enforcement of such unsigned draft agreement, and in any event, as a matter of law no FFC Party intended to be bound absent a signed agreement.

5.1     *The statute of frauds precludes enforcement of Davis' alleged agreement.* Davis attempts to defeat the FFC Parties' statute of frauds argument solely by arguing the impact of promissory estoppel. However, Davis cannot meet the requirements for application of that doctrine.

5.1.1 *The statute of frauds applies to the alleged agreement, and requires a signed writing.* Davis does not deny that the statute of frauds is applicable to the alleged shareholders agreement.  Nor does he deny that a signed writing is required by the party sought to be charged, i.e., FFC USA.

5.1.2 *Davis has not pleaded estoppel.* Estoppel is an affirmative defense. Fed. R. Civ. P. 8(c); *"Moore" Burger, Inc. v. Philips Petroleum Co.,* 492 S.W.2d 934, 936-37 (Tex. 1972).  Affirmative defenses must be pleaded. Fed. R. Civ. P. 8(c); *Ashe v. Corley,* 992 F.2d 540, 545 & n. 7 (5th Cir. 1993).  Estoppel similarly is not raised in the Amended Joint Pretrial Order filed herein. As such, Davis may not raise this defense.  *Id.*

5.1.3 *Davis' affidavit is insufficient to raise a fact issue as to promissory estoppel.*  To constitute a defense to the assertion of the statute of frauds, the

11

CVuPDF - www.texisu.com

person sought to be charged with the agreement must have promised to sign an instrument complying with the statute of frauds. Even the authorities relied on by Davis reflect this principle. *Nagle v. Nagle,* 633 S.W.2d 796, 800 (Tex. 1982) ("On rehearing, the court [in *"Moore" Burger*] wrote to narrow the promissory estoppel exception to cases where the promise was 'to sign a written agreement which itself complies with the Statute of Frauds'"); *"Moore" Burger, Inc. v. Philips Petroleum Co.,* 492 S.W.2d at 937-38; *Adams v. Petrade International, Inc.,* 754 S.W.2d 696, 707 (Tex. App.–Houston [1st Dist.] 1988, no writ); *Magcobar North American v. Grasso Oilfield Services, Inc.,* 736 S.W.2d 787 (Tex. App.–Corpus Christi 1987), *writ dism'd per settlement,* 754 S.W.2d 646 (1988); *Levine v. Loma Corp.,* 661 S.W.2d 779, 781 (Tex. App.–Fort Worth 1983, no writ).[6]

The FFC Parties dispute that any agreement was reached in regard to the draft 1997 Shareholders Agreement, and dispute that any promise to sign such documents was made. However, even assuming *arguendo* that the factual assertions in the Affidavit of Daniel E. Davis ("Davis Affidavit") are correct, such affidavit does not show a promise sufficient to take the "agreement" out of the statute of frauds. Davis states:

> Between June and August, of 1997, I received a copy of the Shareholders' Agreement from Cheam Tek Siong (hereinafter Cheam) with the instructions from him that if the agreement met with my approval I was to sign it and forward it to him, or if other additions or modifications needed to be made, I was to

---

[6] The other estoppel cases cited by Davis do not involve assertion of the statute of frauds, or involved a signed writing. *E.g., Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 919 (1952) (discussing estoppel generally; statute of frauds not asserted); *Fretz Construction Co. v. Southern National Bank of Houston,* 626 S.W.2d 478 (Tex. 1981) (finding that signed letter was sufficient for estoppel; statute of frauds not raised); *Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483 (Tex. 1991) (finding generally that estoppel not established); *Dailey v. Transitron Electronic Corp.,* 475 F.2d 12 (5th Cir. 1972) (choice of law case involving a signed writing). *Meyer v. Texas National Bank of Commerce of Houston,* 424 S.W.2d 417 (Tex. 1968), predates *"Moore" Burger,* and, in any event, is discussing the part performance exception to the statute of frauds.

12

> make them and forward them to him for inclusion. I requested
> that the "shareholder's Agreement be amended to include a
> royalty to be paid to me for my crawler crane invention and any
> patent that would issue.

Davis Aff. at 2. But Davis himself attaches as Exhibit G a May 20, 1997 draft of the

Shareholders Agreement that contains no royalty provision. See Davis Response Ex. G.

Any promise to sign that document would afford Davis no relief. The addition of a royalty

to Davis would have been a significant alteration to the proposed agreement. Although

Davis did request a royalty by correspondence dated May 28, 1997 (see Davis Response

Ex. H) – not "between June and August" as Davis' affidavit suggests – it is clear that FFC's

inclusion of such royalty in the succeeding draft (June 10) did not constitute a final

agreement. The June 10, 1997 correspondence clearly references "draft documents" that

"would need to be reviewed by USA lawyers (in particular Texas Lawyers). See Cheam

Aff. Ex. 1 (attached to FFC's supplemental motion for partial summary judgment); FFC

USA MSJ Ex. 32; Davis Response Ex. I. That letter was faxed to Davis. Cheam Aff. at 2;

see Cheam Aff. Ex. 1 (handwritten notation "To: Danny, 25 pages"). Further, that draft of

the document still contained major blanks, including the members of the board of directors

on the company to be established. Id.

5.1.4 *Independently, Davis' alleged conduct in reliance is insufficient*

*to support application of promissory estoppel.* Davis, in support of his position, cites

*Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 919 (1952). *Gulbenkian,* however,

recognizes that the conduct necessary to fulfill the "reliance" aspect of promissory estoppel

13

must be referable to the alleged agreement with certainty. Mere inference is insufficient.

Specifically, *Gulbenkian* states:

> Also, "Before an estoppel can be raised there must be certainty to every intent, and the facts alleged to constitute it are not to be taken by argument or inference. Nothing can be supplied by intendment. No one should be denied the right to set up the truth unless it is in plain contradiction of his former allegations or acts. If an act or admission is susceptible of two constructions, one of which is consistent with a right asserted by the party sought to be estopped, it forms no estoppel."

*Gulbenkian,* 252 S.W.2d at 932 (quoting 31 C.J.S., *Estoppel,* § 67).

Davis' actions and the actions of the FFC Parties are not clearly referable to the alleged draft 1997 Shareholders Agreement, as opposed to his Employment Agreement and/or Davis' company's ten percent interest in FFC USA. See FFC Parties' Supplemental MSJ ¶ 3.1.3. It is at least equally inferable from Davis' conduct that his actions – assisting in the development of the crawler cranes and in having his company purchase shares in FFC USA – were pursuant to such employment agreement and ownership, as opposed to the alleged royalty agreement. In *Sanders v. McMullen,* 868 F.2d 1465, 1468 (5th Cir. 1989), for example, the Fifth Circuit held that a party's purchase of shares in corporation was not unequivocally referable to an alleged voting trust agreement. The court pointed out: "[I]n the instant case, there are any number of possible explanations for the purchase of the stock by Sanders. While the appellant's explanation is plausible, it is also plausible that he purchased the stock because he thought it was a good investment or because he had a special interest in baseball." *Id.* (holding that the part performance exception to the statute of frauds was not met).

14

Moreover, the fact that Davis caused FFC USA to make alleged "royalty" payments to his company DavisCo. cannot be said to "estop" <u>the FFC Parties</u> -- they knew nothing about the payments until the termination of Davis' employment with FFC USA. Further, the actions of the parties are in many respects <u>inconsistent</u> with Davis' alleged "agreement," including the alleged three-year "license" to FFC USA:

• Davis, as president and/or managing director of FFC USA, signed documents that stated that <u>FFC USA</u> would own all of the drawings, specifications, designs, and work product done or accomplished pursuant such agreements <u>and would own any patents issued on the crawler cranes being developed</u>. See FFC USA MSJ § B(10).

• The alleged "royalty payments" were caused by Davis to be paid by FFC USA, <u>not by FFC Malaysia</u> as would have been required by paragraph 7.1 of the 1997 Draft Shareholders Agreement. See Cheam Aff. p. 2-3 (attached to FFC USA's Supplemental MSJ). <u>FFC USA is not a party to the draft 1997 Shareholders Agreement</u>.

• The alleged "royalty payments" were caused by Davis to be paid to DavisCo., <u>not to Davis individually</u> as would have been required by paragraph 7.1 of the 1997 Draft Shareholders Agreement. *Id.*

• The "royalty" payments were in an amount equal to four percent of the sale of certain cranes, <u>not one percent</u> as would have been required by paragraph 7.1 of the 1997 Draft Shareholders Agreement. *Id.* The alleged draft 1997 Shareholders Agreement makes no reference to any "sales commission."

• Coburn International, Ltd. acquired a ten percent interest in FFC USA, <u>not Davis</u> as would have been required by paragraph 1.4 of the 1997 draft Shareholders Agreement. See FFC USA MSJ § B(1); Amended Joint Pretrial Order ¶ 6(7). Further, the 1997 draft Shareholders Agreement contemplated that FFC Malaysia would acquire a ninety percent interest in the new company; <u>instead, the interest was acquired by FFC Holdings</u>. *Id.*

• The patent applications filed by Davis expressly disclaim the existence of any such license agreement.[7]

---

[7] Such application includes a Verified Statement (Declaration) Claiming Small Entity Status, signed by Davis, which states in part: "I [Davis] have not assigned, granted, conveyed <u>or licensed</u> and am under no obligation under contract or law to assign, grant, convey <u>or license</u>, any rights in the invention to any person who

15

• Correspondence dated March 1999 from attorney Al Payne (then purporting to represent Davis individually), insists that neither FFC Malaysia nor FFC USA had a license, and accuses FFC USA and FFC Malaysia of infringing on Davis' patent (even though no patent had issued at that time) (FFC USA MSJ Ex. I).

• Davis admits in his deposition that he had no shareholders agreement with FFC USA and had <u>no license agreement with anyone</u>. Davis Depo. at 146–47.

• When the FFC Parties found out in August 1998 that Davis was applying for some type of patent in his own name, they inquired why. Amended Joint Pretrial Order, Defendant's Ex. 31 (Attachment C hereto). Davis replied that the law required him to do so because a patent is requested by a person and not a company. *Id.* Ex. 32. (Attachment D hereto). He did not claim to be the owner of the patent. *Id.* The FFC Parties informed Davis of their disagreement and instructed him that the owner should be FFC USA. FFC MSJ Ex. K. They assumed that Davis had taken care of the matter. Cheam Depo. at 137, 140 (FFC USA MSJ Ex. C).

Davis' alleged actions in reliance on the alleged 1997 draft Stockholders Agreement (or the alleged promise to sign such agreement) therefore are insufficient to result in promissory estoppel against the FFC Parties.

5.1.5 *Agreement between Davis and Malaysia, even if a valid contract, does not bind USA.* Davis does not deny that he never had a written agreement with FFC USA and certainly had no license agreement. Whatever Davis may have believed his agreement with FFC Malaysia was, that has no effect on FFC USA's rights to own the patent or alternatively to shop rights and trade secrets. It is with FFC Malaysia that Davis claims he had a license agreement, not FFC USA (which he specifically denies as having licensed). It was FFC USA that put up all the money, hired all of the engineers and other employees and provided all of the labor, equipment, time and payroll to

---

could not be classified as an independent inventor under 37 CFR 1.9(c) if that person had made the invention, or to any concern which would not qualify as a small business concern under 37 CFR 1.9(d) or a nonprofit organization under 37 CFR 1.9(e)."

16

manufacture and sell the crawler cranes in question, not Malaysia.  There was no agreement with FFC USA that even under those circumstances, Davis would own the patent and there was no agreement with FFC USA that it would not have shop rights, in any event.

There has been no offer of a contract with FFC USA that could be accepted by Davis.  The offer he claims he accepted was the alleged draft Shareholders Agreement which named FFC Malaysia as a party and not FFC USA.  Since FFC USA, admittedly, never made an offer, Davis could not have accepted one and FFC USA's claim to ownership of the patent or alternatively shop rights and trade secrets, cannot be defeated by Davis' special argument that he accepted an offer from FFC Malaysia.

> 5.1.6  *The statute of frauds may be avoided only in extreme cases where a virtual fraud is perpetrated.*  Equity may remove certain "contracts" from the statute of frauds, but only where the denial of enforcement would amount to a "virtual fraud" on the party seeking enforcement.  However, for such to be the case, the party seeking enforcement in reliance on the oral contract must have suffered a substantial detriment for which he has no adequate remedy, and the other party would reap an unearned benefit if the statute of frauds were applied.  *Central Power & Light Co. v. Del Mar,* 594 S.W.2d 782, 793 (Tex. Civ. App.–San Antonio 1980, writ ref'd n.r.e.).  No "virtual fraud" exists here: Davis' company retains its interest in FFC USA and could reap substantial benefit from the sale of crawler cranes at issue and/or other cranes.  Further, FFC USA reaps no "unearned benefit": as discussed in FFC USA's MSJ, the development of the crawler cranes and related patent work was funded entirely by FFC USA.  Indeed, <u>over $10 million</u>

17

was expended by or on behalf of FFC USA for such purpose. See FFC USA MSJ at 11.

Under Davis' argument, FFC USA would lose its investment of over $10 million and get

nothing for it.

       5.1.7 *Promissory estoppel allows only reliance damages, and Davis*

*has not requested such relief.*  As stated in Davis' authorities – *Adams v. Petrade*

*International, Inc.,* 754 S.W.2d at 709 – the damages awardable in regard to a claim of

promissory estoppel are <u>reliance</u> damages, not contract damages.  Specifically, *Adams*

(cited by Davis) states:

> It is settled law that a party's damages based on promissory
> estoppel are 'not measured by the profits that such party's
> reliance led him to expect, but instead are limited to the
> amount necessary to compensate that party for a loss already
> suffered.'  .  .  .  We reject Petrade's assertion that the
> contract/market price damages constitute the proper measure
> of promissory estoppel damages here.

*Id., citing Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 734 (Tex. 1981), and *Wheeler v. White,*

398 S.W.2d 93, 97 (Tex. 1981).  Davis, however, seeks the benefit of his alleged bargain

– i.e., the patent and related proceeds.  He does not seek out of pocket expenses in

connection with his alleged work.  Indeed, he has no such expenses – the patent work was

paid for by or on behalf of the FFC Parties, as discussed above.  Therefore, even if Davis'

authorities are accepted, his damages are limited to relief not sought.

      6.    *Nor do the 1999 drafts of the Shareholders' Agreement not require a different*

*result.*  Davis does not deny that the 1999 drafts of the Shareholders' Agreement are but

a series of unsigned, nonfinal drafts, nor does he deny that the 1999 drafts do not meet

the statute of frauds or that the agreements were prepared in connection with a proposed

18

buy out by Davis, not a renegotiation of an existing agreement. The portion of Davis'
response that relied on a draft of some provisions to be considered as part of a
Shareholders Agreement that was to be part of ongoing negotiations for Davis to purchase
FFC USA, as proof of patent ownership pursuant to the draft Shareholders Agreement that
Davis claims to have signed on August 16, 1997, virtually has been abandoned by Davis.
The draft considered, as well, that Davis would own seventy percent of FFC USA, have
four directors, put up $7 million, change the name of the company, and other matters as
well. Nothing ever came of any of it. Davis therefore cannot rely on such documents in
support of his claim.

      7.    *Alternately, FFC USA has shop rights to, and trade secrets interests in, the
crawler cranes.* At no time does Davis ever explain away the agreements he signed as
president of FFC USA that the work being done on the crawler cranes in question by
ECCON and Orgeron belong specifically to FFC USA, including any patents, and stipulated
that the work done by Rusk on the crawler cranes was for FFC USA. See FFC USA MSJ
§ B(10). By agreeing that all of such work, which was absolutely essential to the design,
development, and manufacture and sale of crawler cranes, belonged to FFC USA, Davis
is disavowing that it belonged to him personally. It is an admission that FFC USA was
entitled to use and own such work, i.e., shop rights and trade secrets. In his deposition he
repeatedly admitted that he had no personal contracts with anyone to do any work on the
crawler cranes.   How can Davis, on the one hand, say that all of the engineering work
done of the crawler cranes belonged to FFC USA, and on the other hand deny that FFC
USA had any interest in the engineering work and deny that FFC USA has the right to

CVAPDF - www.fastio.com

utilize such engineering work either by virtue of ownership of the '252 patent or by virtue of shop rights and trade secrets.

Since Davis had nothing that he could patent, build or sell before he became president and managing director of FFC USA and all the work done to be able to manufacture and sell crawler cranes was done after he became president and managing director and was paid for by FFC USA using employees, engineers, equipment, property and time belonging to FFC USA, the right to shop rights, at a minimum, is made. It was nearly two years and millions of dollars after Davis became president of FFC USA before the first crawler crane could be certified and sold.

     7.1    *Davis is incorrect in arguing that consent or silent acquiescence (i.e., estoppel) is required for a shop right to exist: under the "totality of the circumstances," which is the correct test, FFC USA is entitled to a shop right.* Davis' argues incorrectly that FFC USA has no shop right because Davis did not consent or acquiesce in FFC USA's use of the crawler cranes at issue. See Davis Response at 21-29. Although the summary judgment evidence shows in fact that Davis did acquiesce and allow Favco USA to use the crawler cranes at issue,[8] estoppel (i.e., consent or silent acquiescence) is not a requirement for a shop right to exist. *See United States v. Dubilier Condenser Corp.,* 289 U.S. 178 (1933), *amended,* 289 U.S. 706 (1933); *Brown v. L.V. Marks & Co.,* 64 F.Supp 352, 357 (E.D. Ky. 1946) ("I cannot conclude in the light of the Dubilier case that estoppel

---

[8] Davis said nothing about precluding FFC USA from making and selling the subject cranes until March of 1999, after Favco had already spent millions of dollars on the crawler crane project. What's more, Davis allowed each and every drawing used to construct the crawler cranes to bear a legend indicating FFC USA to be the owner. *See* FFC USA MSJ at 26-27.

is longer an essential element in establishing shop rights. Frequently it is present and must strengthen the case but there may be shop rights to a discovery in industry without past development. There is a vested property right which equity fixes in the invention at its inception. Where the employee makes his discovery while working with the employer's tools, machinery and materials and on the employer's time the interest or shop right in favor of the employer attaches immediately.")

The correct approach, as pointed out in FFC USA's MSJ, and stated by the Federal Circuit which has exclusive jurisdiction over patent appeals, is to look to the "totality of the circumstances" on a case by case basis, to determine whether the facts of a particular case warrant, under principles of equity and fairness, a holding that a shop right exists. *See McElmurry v. Arkansas Power & Light Co.,* 995 F.2d 1576, 1581-82 (Fed. Cir. 1993); FFC USA MSJ at 21-22. Under the "totality of the circumstances" the facts are clear that Favco USA is entitled to such shop right. *See* FFC USA MSJ at 22-27.

7.2    *Davis' argument that the crawler cranes at issue were conceived and developed before joining FFC USA is contradicted by the summary judgment record and is also irrelevant to whether FFC USA has a shop right.* Davis also argues that, because he conceived and developed the crawler cranes before joining FFC USA that FFC USA has no shop right. See Davis Response at 22-23. This argument borders on frivolous. Factually, as discussed above Davis has admitted he had no patentable design in November of 1997. *See* FFC USA MSJ at 8. Moreover, assuming arguendo that Davis had already developed the crawler cranes, Davis offers no explanation for the millions of dollars FFC USA spent on the design and  development of the crawler cranes at issue, not

21

to mention the hiring of three different crane engineers to do the necessary work. *See* FFC USA MSJ at 9-11. He further offers no explanation of why such contracts – signed by him as president and/or managing director of FFC USA, specified that FFC USA would own the work produced and any related patents. *Id.*

Moreover, even assuming Davis had conceived of the crawler cranes prior to joining Favco USA, this is irrelevant to whether Favco USA is entitled to a shop right. *McElmurry v. Arkansas Power & Light Co.,* 995 F.2d 1576, 1582-83 n.14 (Fed. Cir. 1993)("We agree with the district court's suggestion that whether [the inventor] conceived the invention prior to his employment with [employer] does not affect the ultimate conclusion in this particular case.")

       7.3    *Davis' reliance on Atlas Brick Co. v. North in support of his no shop right argument is misplaced.* Davis relies heavily on the case of *Atlas Brick Co. v. North,* 288 S.W. 146 (Tex. Comm. App. 1926), in support of his argument that Favco USA has no shop right exists. See Davis Response at 24. However, Davis' argument is misplaced. *Atlas Brick* simply does not contain anything that would deny FFC USA a shop right.

Davis initially cites *Atlas Brick* for the proposition that "the mere existence of an employer-employee relationship does not in itself entitle the employer to a shop right" and "that the mere fact that an inventor at the time of his concept is in another's service is not sufficient to give the employer an interest in, or a title or right to, the invention." Davis Response at 24. However, in the present case there is overwhelming evidence and authority that goes beyond the mere existence of an employee-employer relationship. The undisputed facts in the summary judgment record show that as President of FFC USA,

22

Davis used Favco USA's funding, resources and personnel to develop the crawler cranes, and subsequently marketed and sold these cranes under the FFC USA name.  *See* FFC USA MSJ at 23-27.

Moreover, the *Atlas Brick* case is easily distinguishable from the present case.  In Atlas Brick the court specifically found that "the patent and patent process [was not] a part of nor emanating from the company's properties."  *Atlas Brick Co. v. North*, 288 SW at 984. However in the present case, it is undisputable that Davis applied for the patent base on drawings created while at Favco USA.[9]  In addition, there is no dispute that one of Davis express responsibilities was to design and develop the crawler cranes for FFC USA and that he carries out those duties for the benefit of FFC USA.  See FFC USA MSJ at 5.

7.4   *Davis attempt to rely on the license agreement in the draft shareholders agreement to refute FFC USA's claim for shop rights must also fail.* The only argument Davis makes to defeat FFC USA's entitlement to shop rights is that the draft shareholder's agreement is a license to FFC USA, which cuts off any equitable shop rights FFC USA has.  See Davis Response at 25-30.  However, this argument must fail for several reasons.

First, as discussed in FFC USA's motion for summary judgment, the draft shareholders agreement is not enforceable because of the statute of frauds.  In addition,

---

[9]  Davis was insistent in his deposition that he brought nothing from Manitex to Favco USA.  See above § 4.2.2 above; FFC USA MSJ at 8.  Now Davis attempts to insert drawings of crawler cranes and claims that they were created at Manitex, prior to his employment with FFC USA.  These drawings have never, prior to Davis affidavit and motion, been produced by plaintiffs to FFC USA and such attempt to use them to contradict the clear deposition testimony of Mr. Davis is plainly improper.  As discussed above, Davis cannot create a fact issue on summary judgment by contradicting his prior deposition testimony.

23

CifsPDF - www.fineira.com

some of Davis' own statements in his deposition contradict his "license" claim and show that he never believed that he had a license agreement with anyone, including any of the FFC Parties.[10] Moreover, Davis' actions are inconsistent with the existence of any license agreement. See § 4.1.4 above.

8.      *Objections to evidence.*   The Davis Parties' "evidence" frequently does not rise to that level:

8.1      *Roby Report.*  The "report" purports to provide factual evidence.  See Davis' Reply to FFC MSJ Ex. A.   However, the "report" is not an affidavit.  *Id.*  It is not sworn, and it does not show that Roby is qualified to be a witness.  The "report" consists primarily of hearsay, e.g., statements purportedly made by Davis.  Further, the "report" purports to state that it is Roby's "best recollection" of his meetings and conversations with Davis "during the period from 1994 to approximately January or February of 1995," while at the same time focusing on conclusions relating to the summer of 1995.  *Id.* at 3.

8.2      *Rusk Affidavit.*  The attachments to the Rusk Affidavit are not labeled as exhibits and are impossible to correlate with the statements made in the Rusk Affidavit. See Davis' Reply to FFC MSJ Ex. M.

8.3      *Jones Affidavit.*  Contrary to the statements made in the Affidavit, there is no attachment to the Jones Affidavit. See Davis' Reply to FFC MSJ Ex. N.  Since the substance of the affidavit is the attachment, the affidavit has no evidentiary value.

---

[10]  Davis' claim of a license running to FFC USA was made for the first time during this lawsuit and Davis has produced no evidence that he has made a license claim before the filing of this suit.

9.    *Conclusion.*    Because of the statute of frauds and other reasons, the 1997 draft Shareholders Agreement is ineffective and grants no rights to Davis. Davis does not contest that, but for such alleged agreement, the patent must be assigned to FFC USA. The statute of frauds therefore defeats Davis' claims and requires Davis to assign any patents to FFC USA. Alternately, FFC USA is entitled to a judgment awarding it shop rights and declaring that it is the ownership of the trade secrets at issue.

Wherefore, premises considered, FFC USA requests that its motion for summary judgment and its supplemental motion for summary judgment be granted. The FFC USA requests such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

Gary Gukwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

**Attorney in charge for defendant**

Of counsel:

Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

## Certificate of Service

I certify that on February 27, 2001, a true and correct copy of the foregoing document was sent to all counsel of record, as follows:

| Attorney: | For: | Served by: |
|---|---|---|
| Ernesto Gamez<br>Victor Quintanilla<br>LAW OFFICES OF ERNEST GAMEZ, P.C.<br>777 E. Harrison St.<br>Brownsville, Tx 78520 | plaintiff | certified mail, return receipt requested |

Gary Gurwitz



## J. A. RUSK ENGINEERING
### 11713 FULLER
### KANSAS CITY, MISSOURI
### 64134
Phone Number  816-763-9883    Fax Number  816-763-8083

December 13, 1999

Cheam Tek Siong
Director in Charge of USA Operations
Favelle Favco Cranes (USA), Inc

Dear Cheam,

Attached is a breakdown of charges billed by J.A.Rusk Engineering during 1998 and 1999 for the FFC-28, 38, & 50 Ton units. The outputs come from my project management software, not the invoice database. Therefore, the actual amount invoiced may be slightly different from what is shown, although the differences will be small.

The results are broken down between tasks on the original BaseLine and additional tasks that constituted work not originally intended.

I am also including a list of work that I showed as outstanding on the FFC 28 and FFC38. Most of the work consisted of controls and hydraulic related work and Peter might have already resolved these to a satisfactory level.

The FFC-28 and FFC-38 combined BaseLine tasks exceeded the BaseLine cost by $11,191.00. This was a 14.7% overrun. The increase was entirely in the FFC-28 – the FFC-38 BaseLine costs were under by $12,033.

The overruns were concentrated primarily in Misc. engineering, CIPI comparisons, electrical, and all phases of Hydraulics work. The major contributors were as follows:

1. The lower changed from the Gallotti V/G TM2802 to the Caterpillar "unbuilt "design. A great deal of new required work resulted.
2. At the time of the quote, the LMI and electrical wiring were essentially completed using the PAT LMI and wiring harnesses to be built by Womack. The decision was made to go to the Robway LMI and combine the electrical harnesses with the package purchased from Robway. This resulted in redoing everything associated with Electrical.
3. At the time of the quote, Caterpillar hydraulics engineers had been consulted and the plumbing of controls, cylinders, and motors was well underway. Midway through the project it was determined that Caterpillar had not fully understood what we were doing and extreme rework had to be undertaken to get the unit performance to be acceptable. This resulted in many extra hours with respect to hydraulic analysis, design, and drafting. In the summary, some hydraulic and electrical numbers appear as "contract additions" because new line items were added to the database to accommodate the new work.

ATTACHMENT
A

DEFENDANT'S
EXHIBIT
20

FF 42719

The Contract Additions amounted to $115,972.10. They broke down as follows:

| | |
|---|---|
| FFC28 | $63,202.50 |
| FFC38 | $13,619.25 |
| FFC50 | $ 680.00 |
| File Management | $ 5,555.00 |
| On-Site Assy Support | $25,256.50 |
| Travel | $21,278.10 |

The individual breakdowns can be seen on the accompanying summary. The basic items were:

- Auxiliary offset boom heads for the FFC28 and FFC38
- Lattice Jib for the FFC28
- Changing the winches to 2-speed Braden winches with freefall options
- Providing common controls among all three machines and further refining the controls to include a standard hydraulic control system and an optional electronic control system to be used when the freefall option was ordered. The electronic control system was not completed though some time was spent on it.
- Redesigning the FFC28 Insert to accept a PD12 winch with freefall. The numbers appear under Electronic Controls on the summary since the freefall option would require the Electronic Controls option.
- Additional load chart work to handle the auxiliary offset boom heads and the lattice jib.
- File Management and "Tree BOM's". Since Favelle had no engineering documentation or MRP system, we devoted time to creating and maintaining ECN documentation and BOM Trees.
- Testing and Test Reports. The actual testing and test reports were not included in the original estimate since that depends a great deal on the client's ability to coordinate and administer testing. We spent a great deal of time coordinating the testing and developing lift configurations including designing the spreader bar so that it would function with the Water Weight equipment.
- On-Site Assembly Assistance. To help provide the manpower required getting the four units to the show, we provided 450 man-hours of assembly assistance at a reduced rate.
- Travel. Travel was excluded in the original estimate since the need for it is almost impossible to anticipate up front. With the exception of $939.70 of travel reimbursement billed in 1998, all of the travel consists of just hours during the particular trips. No other actual trip expenses were billed. This is not how I normally operate, but I bore the bulk of the travel expense in this instance since I knew money was extremely tight and the units had to get to Con-Expo.

If you have any questions, please contact me.

Sincerely,

Jim Rusk

### Summary of 1998,1999 Project Work Performed for
### Favelle Favco Cranes, USA by
### J.A.Rusk Engineering

December 15, 199

|  | Base Line Hours | Actual Hours | Base Line Cost | Actual Cost | Cost Over Base Line | Contract Additions |
|---|---|---|---|---|---|---|
| **Total Work** | 1438 | 3720 | $75,880.00 | $202,693.10 | $11,191.00 | $116,622.10 |
| **FFC28 & 38 Work** | 1438 | 2824.7 | $75,880.00 | $160,278.50 | $11,191.00 | $53,202.5 |
|  |  |  | $23,230.00 | $102,037.35 | $23,224.00 | $48,583.2 |
|  |  |  | $30,230.00 | $67,680.00 | $23,224.00 | $5,226.0 |
| 28 Ton CIPI Comparison | 50 | 53 | $3,250.00 | $3,461.50 | $201.50 |  |
| 28 Ton Mec. Engineering | 40 | 75 | $2,650.00 | $4,675.00 | $2,275.00 |  |
| Mechanical | 28 | 17 | $1,400.00 | $950.00 | -$650.00 |  |
| Hydraulic Interface | 111 | 342.5 | $6,240.00 | $18,013.00 | $12,123.00 | $950.0 |
| Electrical Interface | 36 | 133 | $2,220.00 | $4,691.50 | $1,855.50 | $4,576.0 |
| 28 Load Chart Analysis | 40 | 40 | $2,600.00 | $2,600.00 | $0.00 |  |
| Drawing | 221 | 477 | $9,840.00 | $18,059.00 | $9,119.00 |  |
| Electrical | 41 | 34.5 | $1,840.00 | $1,400.00 | -$240.00 |  |
| Hydraulic | 104 | 299.9 | $4,160.00 | $11,598.00 | $7,436.00 |  |
| Mechanical | 36 | 75 | $1,440.00 | $3,200.00 | $1,760.00 |  |
| 28 Load Charts Drft | 40 | 16 | $1,800.00 | $760.00 | -$840.00 |  |
| Assy. Drawings | 32 | 26 | $1,280.00 | $1,120.00 | -$160.00 |  |
| 28 Proceeds Drft | 25 | 4 | $800.00 | $160.00 | -$640.00 |  |
| Related Additions |  | 831 |  | $44,357.35 |  | $44,357.3 |
| 28 Load Charts |  | 14 |  | $883.50 |  | $883.5 |
| 28 Test Preparation |  | 56.6 |  | $3,607.00 |  | $3,607.0 |
| 28 Test On-Site |  | 68 |  | $4,283.25 |  | $4,283.2 |
| 28 Test Reports |  | 13 |  | $812.00 |  | $812.0 |
| FFC 28 Tree |  | 75.7 |  | $4,187.50 |  | $4,187.5 |
| Hydraulic Controls |  | 65.5 |  | $3,607.50 |  | $3,607.5 |
| Electronic Controls |  | 27 |  | $1,100.00 |  | $1,100.0 |
| FFC 28 Offset Boom Head |  | 21.3 |  | $1,275.50 |  | $1,275.5 |
| Lattice Jib |  | 301 |  | $13,512.00 |  | $13,512.0 |
| PO12 Winch |  | 115 |  | $6,295.00 |  | $6,295.0 |
| 28 Common Controls |  | 76 |  | $4,853.50 |  | $4,853.5 |

|  | Base Line Hours | Actual Hours | Base Line Cost | Actual Cost | Cost Over Base Line | Contract Additions |
|---|---|---|---|---|---|---|
|  |  |  | $46,950.00 | $46,236.25 | -$12,033.00 | $13,619.25 |
|  |  |  | $46,950.00 | $34,917.25 | -$12,033.00 |  |
| 38 Ton CIPI Comparison Study | 10 | 60 | $3,250.00 | $3,278.00 | $28.00 |  |
| 38 Mec. Engineering | 40 | 71 | $2,600.00 | $4,615.00 | $2,015.00 |  |
| Mechanical Interface | 225 | 224 | $12,600.00 | $11,271.50 | -$1,328.50 |  |
| 38 Checking-General | 20 | 13 | $1,000.00 | $950.00 | -$950.00 |  |
| Mechanical | 80 | 108.6 | $3,850.00 | $5,120.50 | $270.50 |  |
| 38 Hydraulic Controls | 315 | 38 | $13,250.00 | $1,984.00 | -$11,265.00 |  |
| 38 Assembly, Instl. Drwgs. | 40 | 40 | $1,600.00 | $1,600.00 | $0.00 |  |
| 38 Load Chart Analysis | 40 | 40 | $2,600.00 | $2,600.00 | $0.00 |  |
| 38 Load Charts Drafting | 20 | 35 | $800.00 | $1,400.00 | $600.00 |  |
| 38 Proceeds Drft | 20 | 28 | $800.00 | $1,120.00 | $320.00 |  |
| Related Additions |  | 228.7 |  | $13,619.25 |  | $13,619.25 |
| FFC 38 Aux Head |  | 18.5 |  | $785.00 |  | $785.00 |
| FFC 38 Tree |  | 61.7 |  | $3,408.00 |  | $3,408.00 |
| 38 Test Preparation |  | 42.5 |  | $2,656.50 |  | $2,656.50 |
| 38 Test On-Site |  | 75 |  | $4,783.25 |  | $4,783.25 |
| 38 Test Reports |  | 31 |  | $2,027.50 |  | $2,027.50 |

|  | Base Line Hours | Actual Hours | Base Line Cost | Actual Cost | Cost Over Base Line | Contract Additions |
|---|---|---|---|---|---|---|
| **Contract Additions** |  | 893.1 |  | $52,419.60 |  | $52,419.60 |
| FFC80 Ton Work |  | 17 |  | $888.00 |  | $888.0 |
| General On-Site Support |  | 480 |  | $25,266.00 |  | $25,266.0 |
| File Management |  | 164.1 |  | $4,966.00 |  | $4,966.0 |
| Travel |  | 322 |  | $21,378.15 |  | $21,378.1 |

*Detail of ... .2,1988 Project Work Performed for*
*Fevele Faveo Cranes, USA by*
*J.A.Rusk Engineering*

December 12, 1988

| Item Name | Resource Effort Hours | Spent Effort Hours | Total BaseLine $ (BAC) | Total Actual $ (BAC) | Over BaseLine | Items Not Included in BaseLine |
|---|---|---|---|---|---|---|
| Total 25,38,& 50 Ten Unit Charges | 1438 | 3,719.80 | $375,280.00 | $202,663.10 | $11,191.60 | $115,622.10 |
| Prototype Work | 881 | 2444.3 | $348,500.00 | $136,290.50 | $24,086.80 | $57,904.00 |
| FAVCO 50 Ten | 629 | 1800.0 | $27,180.00 | $62,376.80 | $34,624.90 | $91,262.90 |
| 25 Ten Drill Complete | 50 | | | $2,366.68 | $6,661.69 | $6661.80 |
| 25 Ten Web. Engineering | | | $2,000.00 | $4,575.88 | $3,578.88 | |
| | 20 | 17 | $1,480.00 | $580.50 | 4500.50 | |

| Task Name | Baseline Effort Hours | Spent Effort Hours | Total BaseLine $ (BAC) | Total Actual $ (EAC) | Over BaseLine | Items Not Included in BaseLine |
|---|---|---|---|---|---|---|
| FAVCO 39 Ton | 336 | 376.5 | $19,760.00 | $20,577.00 | $42.00 | $765.00 |
| 34 Ton Coil Conversion Sw// | 30 | 30 | $3,250.00 | $3,278.90 | $29.00 | |
| 34 Misc. Inspections | 40 | 71 | $2,600.00 | $4,615.00 | $2,015.00 | |
| Mechanical Interface | 225 | 224 | $12,600.00 | $11,271.90 | -$1,329.00 | |
| 35 Feedthru Layer | 40 | 6.5 | | $471.00 | -$3,174.00 | |
| 35 Laser Desten Asmy | 10 | 13 | $1,300.00 | $1,001.00 | -$300.00 | |
| 35 Laser Margial & Elect. | | 3 | $0.00 | $1,901.00 | $1,901.00 | |
| 35 Exciste Cavity Login | 60 | 64.5 | $3,400.00 | $3,953.00 | $1,573.00 | |
| 35 Shutters Design | 30 | 30 | $1,300.00 | $1,390.00 | $1,770.00 | |
| 35 Beamlimit Ceiling | 30 | 75 | $2,400.00 | $0.00 | -$1,174.00 | |
| 35 Interconnect Design | 20 | 60.5 | $1,041.00 | | -$1,170.00 | |
| 34 Chassis Design | 20 | 73 | $1,300.00 | $6550.00 | $4650.00 | |
| Actions |  | 16.5 |  | $966.00 |  | $766.00 |
| 35 Machine Head |  | 3.5 |  | $165.00 |  | $215.00 |
| 35 Aux/load Cluth |  | 7.5 |  | $375.00 |  | $115.00 |
| 35 Aux/load Craft |  | 6 |  | $240.00 |  | $57.00 |
| 35 Sub Forteiroz | 9 | 7 | $75.00 |  |  | $0.00 |
| FFC 90 Ton |  | 17 |  | $860.00 |  | $960.00 |
| FFC 37 Misc Design |  | 9 |  | $461.00 |  | $861.00 |
| On Site Support Systems |  | 400 |  | $25,294.60 |  | $25,988.66 |

| Task Name | Baseline Effort Hours | Spent Effort Hours | Total BaseLine $ (BAC) | Total Actual $ (EAC) | Over BaseLine | Items Not Included in BaseLine |
|---|---|---|---|---|---|---|
| Post Profile Mfg | 577 | 846.5 | $29,960.00 | $47,319.50 | $12,995.50 | $31,235.00 |
| FFC 90 Ton | 68 | 340.7 | $3,055.00 | $18,690.75 | -$660.00 | $13,380.75 |
| 34 Trunnion |  | 79.1 |  | $4,161.75 |  | $5,467.00 |
| 31 Top Seat |  | 25 |  | $3,720.00 |  | $1,720.00 |
| 31 Top Spacer |  | 42 |  | $2,450.00 |  | $2,450.00 |
| Hydraulic Controls |  | 34.5 |  | $1,815.00 |  | $1,815.00 |
| 35 Port Intergatedint-PC |  | 28.5 |  | $1,500.00 |  | $1,960.00 |
| 35 Hand Pressure Gauge |  | 7 |  | $1,500.00 |  | $1,500.00 |
| 35 Port Intergater Diff |  | 3 |  | $1,150.00 |  | $1,150.00 |
| Regen |  | 4 |  | $1,900.00 |  | $1,917.00 |
| 35 Hand Lift Motor |  | 17 |  | $1,347.00 |  | $1,347.00 |
| Factory Controls |  | 14 |  | $1,100.00 |  | $1,100.00 |
| Interspect-Proof at Inter |  | 4 |  | $1,500.00 |  | $1,100.00 |
| 7th P3 Micron Inter Proof |  |  |  | $900.00 |  | $900.00 |
| 30 P3 Insert Diff |  | 20 |  | $1,241.00 |  | $1,241.00 |
| Assy Design |  | 92 | 39 | $1,280.00 | $1,120.00 | $960.00 |
| 35 Shutters Assy |  | 4 |  | $140.00 | $140.00 | $0.00 |
| 35 D-1 Lower Assy |  | 4 |  | $145.00 |  | $145.00 |
| 35 D-1 Upper Assy |  | 4 |  | $145.00 |  | $145.00 |
| 35 Def Fast Assy | 10 | 7.4 |  | $145.00 | $600.00 | $200.00 |
| 35 Chassis Def | 20 | 4 | $900.00 | $150.00 | -$640.00 | |
| 35 Load Chain |  | 4 |  | $348.00 |  | $348.00 |
| 34 Test Procedure |  | 36.5 |  | $3,307.00 |  | $3,307.00 |
| 34 Test Cry Sta |  | 35 |  | $4,351.24 |  | $4,351.24 |
| 34 Test Records |  | 12 |  | $912.00 |  | $912.00 |
| FFC 36 Ton | 525 | 480.7 | $20,600.00 | $27,000.75 | -$12,995.60 | $12,954.30 |
| FFC 34 Trun |  | 81.7 |  | $3,968.00 |  | $3,968.00 |
| 34 Top Seat |  | 25 |  | $1,450.00 |  | $1,450.00 |
| 34 Top Spacer |  | 42 |  | $1,950.00 |  | $1,950.00 |
| Mechanical | 80 | 186.6 | $5,000.00 | $5,129.00 | $279.00 | $9.00 |
| 34 FTA Insert | 20 | 29.5 | $1,300.00 | $1,524.00 | $624.00 | |
| 35 Plts Bottom of Upper | Top |  | $4,990.00 |  | -$4,990.00 | |
| Bearings |  | 17 |  | $4,198.00 |  | $4,198.00 |
| 34 Insert Bearings |  | 36 |  | $2,728.00 |  | $2,728.00 |
| 34 Insert Trun-Dia |  | 35 |  | $1,950.00 |  | $1,950.00 |
| 34 Insert Trun-Dif |  | 35 |  | $1,950.00 |  | $2,051.00 |
| Hydraulic Controls | 314 | 39 | $15,300.00 | $1,644.60 | -$13,500.00 | |
| Hrd Reduce Interface | 270 | 22 | $13,300.00 | $950.00 | -$12,300.00 | |
| 35 Hrd Interface Gen Test | 30 | 1 | $1,350.00 | | -$1,350.00 | |
| 35 Hrd Interface Different UC | 20 | 3 | $920.00 | $100.00 | -$100.00 | |
| 35 Hrd Interface Desfed | 20 | 3 | $1,300.00 | $100.00 | -$100.00 | |
| 35 Hrd Scramatic Dif | 20 | 5 | $900.00 | | -$400.00 | |
| Hrd Seat Interface | 40 | 18 | $1,860.00 | $1,814.00 | -$400.00 | |
| 35 Hrd Lift | 10 | 3 | $900.00 | | -$701.00 | |
| 35 Hrd Interface Internation | 10 |  | $900.00 |  | -$900.00 | |
| 35 Back Interface Draft | 20 |  | $900.00 |  | -$900.00 | |
| 34 Assembly and Drwg | 40 | 40 | $1,900.00 | $1,900.00 | $0.00 | |
| 34 Load Chart Analysis | 40 | 40 | $2,450.00 | $2,450.00 | $0.00 | |
| 34 Hrd Crack Testing | | | $1,460.00 | $1,460.00 | | |
| 34 Regen Dif | 20 | 24 | $900.00 | $1,138.00 | $790.00 | |
| 34 Test Procedure | | 43 | | $3,468.00 | | $2,465.00 |
| 34 Test Crys/Sta | | 50 | | $4,766.00 | | $4,766.00 |
| 34 Test Records | | 31 | | $2,017.00 | | $2,457.00 |

**FF 42723**

| Task Name | Baseline Effort Hours | Spent Effort Hours | Total BaseLine $ (BAC) | Total Actual $ (BAC) | Over BaseLine | Items Not Included in BaseLine |
|---|---|---|---|---|---|---|
| File Management | 994.1 | | | $5,995.94 | | $5,995.90 |
| 38 File Management | 82.1 | | | $2,410.60 | | $2,410.38 |
| 38 File Management | 96 | | | $7,885.40 | | $7,885.39 |
| Travel | 1321 | | | $81,179.10 | | $21,572.42 |
| Above All | 592 | | | $35,598.48 | | $35,598.49 |
| 38 to Auslin Round Trip | 20 | | | $743.80 | | $743.90 |
| 38 to TRO to Austin | 10 | | | $845.50 | | $845.30 |
| Austin to Houston Trip | 94 | | | $16,394.00 | | $16,394.00 |
| Houston - LB | 4 | | | $1,074.60 | | $1,077.50 |
| Houston Phys 6-25 | 5 | | | $322.00 | | $322.00 |
| Houston to Austin | 4 | | | $812.00 | | $842.00 |
| 38 Houston | 10 | | | $561.10 | | $561.00 |
| 38 Austin Houston Nov 11-11 | 72 | | | $1,967.60 | | $1,967.60 |
| Trip to Harlingen 12-17 18 | 40 | | | $5,966.70 | | $5,966.70 |
| Trip to Harlingen 1-21 31 | 40 | | | $3,863.30 | | $3,863.30 |
| 38 Harlingen 57-13 | 36 | | | $2,067.60 | | $2,067.60 |
| 38 Harlingen 3-4 6 | 30 | | | $1,850.90 | | $1,850.90 |
| 38 Harlingen 4-13 to 4-17 | 30 | | | $1,905.60 | | $1,905.60 |
| 38 Trip to Houston | 20 | | | $546.00 | | $546.00 |
| TRO to Austin | 4 | | | $2,187.40 | | $2,887.60 |
| Expense Reimbursement | | | | $888.70 | | $888.70 |

As-of Date   13-Dec-99          Schedule File:   FAVPEND

Favco                                     256.0 hours

                                          To Go
Task Name                                 Effort

    Remaining Work To Be Done             256.0 hours
    FFC 28 Ton                            180.0 hours
        Hydraulic Controls                40.0 hours
            Electrical                    40.0 hours
                28 Hyd LMI-Des            20.0 hours
                28 Hyd LMI-Drft           20.0 hours
            Electronic Controls           140.0 hours
                Mechanical-FreeFall Insert   20.0 hours
                    28 F/F Wnch Tubes L/O    10.0 hours
                    28 F/F Wnch Tubes Drft   10.0 hours
                Hydraulics                60.0 hours
                    28 Elect Hydraul.-Engr   20.0 hours
                    28 Elect Hydraul.-Des    20.0 hours
                    28 Elet Hydraul.-Drft    20.0 hours
                Electrical                60.0 hours
                    28 Elect LMI-Engr        20.0 hours
                    28 Elect LMI-Des         20.0 hours
                    28 Elec LMI-Drft         20.0 hours
    FFC 38 Ton                            76.0 hours
        Hydraulic Controls               18.0 hours
            Hyd Elect.Interface          18.0 hours
                38 Hyd Elect. Interface Draft   18.0 hours
            Electronic Controls          58.0 hours
            Elec Hydraulics              28.0 hours
                38 Elec Hydraul-Engr     8.0 hours
                38 Elec Hydraul-Des      10.0 hours
                38 Elec Hydraul.-Drft    10.0 hours
            Elec. Electrical             30.0 hours
                38 Elec LMI-Engr         10.0 hours
                38 Elect LMI-Des         10.0 hours
                38 Elect LMI-Drft        10.0 hours

TIME LINE Gantt Chart Report, Strip 1, Page 1

FF 42725

# ATTACHMENT B

At the time Davis became President and Managing Director of Favco USA there did not exist any drawings, models or prototypes of crawler cranes that are at issue in this lawsuit. He didn't have any and he didn't know anyone who did and he didn't bring any with him[1]. Nothing that he was working on at Manitowoc including drawings, sketches or descriptions were brought with him to Favco USA[2]. Manitowoc did make allegations that Davis had violated trade secrets that he had obtained while he was at Manitowoc so Davis wrote to Mac on June 23, 1998[3] explaining that that was not true and that nothing that was used to manufacture and design the crawler cranes at Favco came from his employment at Manitowoc[4]. Davis confirmed that all the work done by Rusk, Eccon and Orgeron on the crawler cranes that are the subject of the patent and this litigation was all work that was done <u>after</u> he left Manitowoc and became President and Managing Director of Favco USA[5]. The patents that he applied for refer only to the crawler cranes that were worked on by Orgeron, Eccon, Rusk and Caterpillar pursuant to the contracts with Favco USA[6].

Now, in an attempt to defeat Defendants' Motion for Summary Judgment that has been pending since July 31, 2000, Davis has filed affidavits from Jim Rusk dated February 19, 2001 and from himself dated February 22, 2001 claiming for the first time that he not only had an idea before becoming President and Managing Director of Favco USA, but some work also was done on the

---

[1]     Davis Deposition, Vol. I, pg. 36, lines 10-20.

[2]     Davis Deposition, Vol. I, pg. 50, lines 22-24.

[3]     Davis Deposition, Vol. I, exhibit 10.

[4]     Davis Deposition, Vol. I, pg. 183, line 2-pg. 184, line 2.

[5]     Davis Deposition, Vol. I, pg. 68, line 19-pg. 69, line 2.

[6]     Davis Deposition, Vol. I., Pg. 197, lines 13-25.

crawler cranes while he was at Manitowoc. That not only is contrary to all of Davis' previous sworn testimony but contradicts the admitted facts in the Amended Pretrial Order that "Favco USA made every payment for every aspect of the entire crawler crane project," "An agreement was entered into between J.A. Rusk Engineering ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 ton and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998. The services provided by Rusk under this contract were to belong to Favco USA. The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA. Rusk was paid for all work done under this contract by Favco USA," "All work done on crawler cranes manufactured and sold by Favco USA was done after Davis became President and Managing Director of Favco USA," and "Davis had no contracts personally with Eccon, Orgeron, Rusk or CIPI to provide engineering or design services involving the crawler cranes in question in the lawsuit."

In order to carry out his duties as President and Managing Director of Favco USA, Davis hired engineers, including Jim Rusk, to reduce the idea Davis had to plans, specifications, models and whatever was necessary in order to make that idea from his head end up in a finished crawler crane that could be sold[7]. The work performed by Rusk was on behalf of Favco USA[8]. Besides Rusk, engineering and design work was done by Keith Orgeron of Integra Engineering[9] which he

---

[7]   Davis Deposition, Vol. I, pg. 40, line 25-pg. 41, line 6.

[8]   Davis Deposition, Vol. I, pg. 42, lines 11-20, page 58, lines 16-20, and pg. 65, lines 13-23.

[9]   Davis Deposition, Vol. I, pg. 52, line 19-pg. 53, line 1, pg. 60, lines 8-14 and pg. 61, lines 19-25.

performed for Favco USA. The work done by Eccon was also for Favco USA[10]. Davis hired no one personally[11].

Davis attached as exhibit R to *Plaintiff's Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights* a drawing purportedly made by Rusk on February 20, 1997 which he compares with the figures that were submitted along with the 252 patent application. In his affidavit, Rusk said he worked with Davis and Manitex, Inc. of Georgetown[12]. It is obvious that the work Mr. Rusk did was for Manitex and not for Davis personally because Davis was an employee of Manitowoc. Exhibit R, which has never been produced before, shows that it is the property of Manitex, Inc. and not Danny Davis. If Davis now claims that he brought this with him when he signed the Employment Contract on June 23, 1997 then he either took it with or without permission or Davis did not tell the truth in his deposition. Furthermore, if he brought this with him from Manitowoc, then the idea was reduced to practice in February 1997 and the patent was not applied for August 1998, more than a year later. The patent therefore is invalid. Since this is the first time that Davis has claimed to have brought anything with him when he came to FFC USA, this is the first opportunity defendants have had to allege reduction to practice.

---

[10]   Davis Deposition, Vol. I, pg. 59, line 15-pg. 60, line 1 and pg. 65, line 24-pg. 66, line 2.

[11]   Davis Deposition, Vol. I, pg. 62, line 18-pg. 63, line 7.

[12]   Manitex is a division, subsidiary or affiliated company of Manitowoc, Davis' employer from 1994 until 1997.

---

**DAVIS**
**VS.**
**FFC**

**ATTACHMENT B**
**PAGE 3**

In the Amended Pretrial Order Davis makes no claims other than he had the idea and concept of the crawler crane prior to being hired by Favco Holdings and that he discussed his idea and concept in 1995 with Richard Robey. At no point does he claim that he discussed it with James Rusk nor does he claim that he brought any plans or drawings with him when he left Manitowoc. Furthermore, it was an admitted fact that Favco made every payment for every aspect of the entire crawler crane project[13], that the work done by Rusk was to belong to Favco USA[14], that all work done on crawler cranes manufactured and sold by Favco USA was <u>after</u> Davis became President and Managing Director of Favco USA[15] and that Davis had no contracts personally with Eccon, Orgeron, Rusk or CIPI to provide engineering or design services involving the crawler cranes in question in the lawsuit[16], nor did he have any contracts personally with anyone to provide any services, materials, equipment or labor involving the crawler cranes in question in the lawsuit[17].

---

[13]   See Amended Joint Pretrial Order, filed January 31, 2001, Section 6 (Admissions of Fact), number 9.

[14]   See Amended Joint Pretrial Order, filed January 31, 2001, Section 6 (Admissions of Fact), number 14.

[15]   See Amended Joint Pretrial Order, filed January 31, 2001, Section 6 (Admissions of Fact), number 19.

[16]   See Amended Joint Pretrial Order, filed January 31, 2001, Section 6 (Admissions of Fact), number 21.

[17]   See Amended Joint Pretrial Order, filed January 31, 2001, Section 6 (Admissions of Fact), number 22.

---

**DAVIS**
**VS.**
**FFC**

**ATTACHMENT B**
**PAGE 4**

06-AUG-1998  20:39  FROM  HOTE  NEGARA          TO  0011  4237749          P.01

*Caterpillar File*
*Favelle Favco Malaysia File*



**HOTEL NEGARA**
Singapore

*Guest Stationery*
*Facsimile Transmittal*

| TO | FF (USA) Danny. | DATE | |
| | | FROM | Cheam. T.S. |
| FAX NO | 1 956-428-7749. | PAGES | |
| SUBJECT | FFC CRAWLER - Discussion with Jim Hopkins. | | |

① **AGMT with CAT.**

Comments from our lawyer :-

i - The agmt should be signed with the Group.

ii - The additional terms + conditions should be attached
    to this agmt. (refer to att 1)

iii - The indemnity clause to also extend to
      indemnify FFC.

iv - There should be no personal names mentioned.
     This is also in line with the corporate policy

② **Meeting with Jim :**
                                    (ex. iv as this is internal issue)

The above was discussed, and latest by
monday 10/8/98, will be sorted out and signed.
By this evening, Jim will get a redraft
to be sent to me in the hotel. I will then
run that pass our side before meeting the
lawyer on monday (earliest).
What Jim is saying, that this Agmt,
should not be construed as a <u>Supply Agmt</u>

ATTACHMENT C

DEFENDANT'S EXHIBIT 31

FF 39135



# HOTEL
# NEGARA
### Singapore

*Guest Stationery*
*Facsimile Transmittal*

| TO | | DATE | |
|----|----|------|----|
| | | FROM | |
| FAX NO | | PAGES | |
| SUBJECT | | | |

as stated in his fax to us. It (the Agmt) is
basically to distinguish the design ownership.
I have told our Lawyers to relook and
separate it into ① Agmt and ② Supply Contract
(if necessary).

③ P.O and Parent Company Guarantee.

   Already delivered to Jim.


Will update you further on the progress.
Call me if you need any clarification.

P/s Have we applied for the patent yet?

                              Regards.

                              [signature]

                              FF 39136

Hotel Negara Limited
10 Claymore Road, Singapore 229540
Telephone (65) 737 0811  Facsimile (65) 737 9075



DØ-NOV-99 15:11

( ATTACHMENT 3 )

## FAVELLE FAVCO
The Cranemakers

Favelle Favco Cranes USA, Inc.
P. O. Box 6942
Humblood, Texas 7840-6942

# *Facsimile*

To: CHEAM TEK SIONG / Guest at Hotel

Fax: 65-737-9075

From: Daniel E. Davis

Date: August 6, 1998  @ 5:30 pm

Re: Your Fax from Nagana regarding Cat. Figs.

Pages: _____ Including this page.

Dear Cheam,

I've looked at your Memo and "Attachment 1" looks okay but you may want to include this in a "supply contract" between Favelle Favco and C.I.I.

The Patent has been applied for and filed. You always have a name for Inventor. Patents are always filed by a person who invented not a company. Also i am having a Trademark search done world wide for Favco and Favelle Favco. AND i explained the situation in brief about our problem with G. Payton. Our course of action is to oppose the filing in the countries he has filed. We have a good chance of winning if we can prove certain things. THE lawyer is to forward me a list of questions.

Call if you wish after you recieve this. Yes to go back on Friday will be in Malaysia MONDAY MORNING.

Best Regards
DANNY.

A MEMBER OF   MUHIBBAH ENGINEERING

ATTACHMENT
D

DEFENDANT'S
EXHIBIT
32



**FAVELLE FAVCO**

**The Cranemakers**

*FAVELLE FAVCO CRANES (M) SDN. BHD.* 25:07: C
Lot 9895, 4th Mile, Jalan Kampung Jawa
4     1 Klang, Selangor Darul Ehsan, Malaysia
Tel : 603-3337835  Fax : 603-3337830  3337842

## FACSIMILE MESSAGE

001-956-423-9155

REF NO :

TO : FF USA

ATTENTION : Danny

SUBJECT : Patent

FROM : Cheam

CC 1)

CC 2)

CC 3)

CC 4)

NO OF PAGE : _____  DATE : 11/8/98  TIME : _____  FAX NO : _____

MESSAGE :

With regards to the patent, have spoken to Mae and he wants the ownership and inventor to be under Favelle Favco and Danny Davies.

Therefore pls proceed accordingly with the changes.

P/s  Mae is unhappy  this issue as you have not consulted him. Pls explain to him.

Regards,

Faxed: 11/08/98

**Exhibit K**
**to Defendant Favco USA's**
**Motion for Partial**
**Summary Judgment**

FF 43219