71

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

MAR 1 9 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DANIEL E. DAVIS | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES | § | |
| USA, INC., and FAVELLE CRANES | § | |
| (M) SDN BHD, | § | |

| | | |
|---|---|---|
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| DANIEL E. DAVIS, DAVISCO INC. and | § | |
| COBURN INTERNATIONAL, LTD | § | |
| | § | CIVIL ACTION NO. B-00-184 |
| VS. | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| FAVELLE FAVCO CRANES (M) SDN BHD, | § | |
| and FAVELLE FAVCO HOLDINGS SDN BHD | § | |

## MOTION FOR RECONSIDERATION

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS:

COMES NOW, **DANIEL E. DAVIS, ET. AL.**, Plaintiffs in the above-styled and numbered

civil action, and file this their **Motion for Reconsideration** requesting that this Honorable Court

reconsider its March 8, 2001 Order granting summary judgment in favor of Defendants FFC, and

in suport thereof, would respectfully show this Honorable Court the following:

## NOTICE TO THE COURT

In suupport of this Motion for Reconsideration, Plaintiffs rely on several exhibits which were

attached as exhibits to **Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights** previously filed on February 22, 2001. Plainitiffs hereby make reference to theses said exhibits and do not attach same heret to avoid unnecessary duplication of exhibits already on file with this Honorable Court.

## STANDARD OF REVIEW

The present Motion for Reconsideration is a FRCP 59(e) motion to alter or amend a judgment, but may also be considered as a FRCP 60(b) motion for relief from judgment. A motion for reconsideration filed within ten days of judgment is treated as a motion to alter or amend under Rule 59(e). Under Rule 60(b), the court may relieve a party from final judgment on the basis of "(1) mistake, inadvertence, surprise, or excusable neglect; ... or (6) any other reason justifying relief from the operation of the judgment." *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990) (citing *Harcon Barge Co. v. D & G Boat Rentals,* 784 F.2d 665, 669-70 (5th Cir.1986) (en banc).

Rule 59(e) of the Federal Rules of Civil Procedure has been interpreted as covering motions to vacate, modify or amend judgments. *Foman v. Davis,* 371 U.S. 178, 181, 83 S. Ct. 227, 229, 9 L. Ed. 2d 222 (1962); *Kelly v. Delaware River Joint Comm'n,* 187 F.2d 93 (3rd Cir.), *cert. denied,* 342 U.S. 812, 72 S. Ct. 25, 96 L. Ed. 614 (1951). The district court has considerable discretion in deciding whether to reopen a case under Rule 59(e). *Lavespere v. Niagara Machine & Tool Works, Inc.,* 910 F.2d 167, 174 (5th Cir.1990). However, the courts discretion is not without limit. The court must strike the proper balance between two competing factors: (1) finality, and (2) the need to render just decisions on the basis of all the facts. *Id.* This motion requests that the court render a just decision on the basis of all the facts.

A court may alter or amend a judgment where manifest injustice will result if it were allowed to stand. FRCP 59 authorizes the court to grant the motion where the order is against the weight of the evidence, where newly discovered evidence is brought to the Court's attention, or where a miscarriage of justice would result if the verdict were to stand. ***Montgomery Ward & Co. v. Duncan***, 311 U.S. 243, 61 S. Ct. 189, 85 L. Ed. 147 (1940). Plaintiffs conted that the order entered by this Honorable Court on March 8, 2001 is against the weight of the evidence, where evidence previously before the Court's is reasserted, and where a miscarriage of justice would result if the order were to stand.

## THE INAPPROPRIATE EXCLUSION OF DAVIS' AFFIDAVIT, DAVIS' DEPOSITION TESTIMONY, RUSK'S AFFIDAVIT, RUSK'S 2/20/97 PROPOSAL, RUSK'S DRAWINGS, ROBEY'S DEPOSITION TESTIMONY, ROBEY'S REPORT, ROBEY'S 11/8/99 TESTIMONY, THE EMPLOYMENT CONTRACT AND BOON'S 11/8/99 TESTIMONY

The central dispute in this case concerns whether a genuine issue exists as to the question of ownership of U.S. Patent No. 6,003,252 (**"the '252 Patent"**) and the related technology. Davis contends that a fair reading of his deposition is consistent and undisputed when considered in light of his affidavit (**Exhibit "K"**). Further, Davis' deposition and affidavit (**Exhibit "K"**) are consistent with and corroborate Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10), the Employment Contract (**Exhibit "C"**) and Mac Boon's 11/8/99 testimony (**Exhibit "L"** at 93:4-94:14 and 102:12-103:12) concerning patent ownership and shop rights. Such undisputed facts require summary judgment for Plaintiffs, not Defendants FFC/USA.

At trial, additional evidence will corroborate the evidence in this motion, which is the same

3

evidence that was before the court on the cross motions for summary judgment. And at trial, the jury and court can evaluate the credibility of the witnesses. For example, Attorney Dennis Sanchez was hired by Plaintiff Daniel E. Davis to be FFC/USA's corporate attorney and to form FFC/USA based upon the Shareholders' Agreement. (Exhibit "D"). Attorney Sanchez had extensive conversations with **MR. DAVIS**, Mac and Cheam concerning the relationship of the parties. Jim Hopkins, a Caterpillar employee, can also testify concerning the state and timing of the development of the Davis crawler cranes. Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10) and Mac Boon's 11/8/99 testimony (**Exhibit "L"** at 93:4-94:14 and 102:12-103:12). All such testimony will confirm and verify the evidence in this motion, which evidence is the same that was before the court on the cross motions for summary judgment and responses thereto.

In summary, the undisputed evidence disregarded or not considered by this Honorable Court in granting summary judgment in favor of Defendants FFC is::

| EXHIBIT | DESCRIPTION OF EVIDENCE |
|---|---|
| Davis deposition | Davis brought nothing with him from Manitowoc [35:15-37:4]. Rusk reduced Davis' ideas to drawings [42:21-23; 44:12-18; 45:3-10; 45:15-22] before going to work for FFC/USA, although when the drawings were made was not asked in the deposition. |
| Davis Affidavit (**Exhibit "K"**) | FFC did not manufacture crawler cranes [p. 3]. Davis received 10% of FFC/USA and a job as president for a license granted to FFC/USA to use his crawler crane technology [p. 3]. The Davis crawler cranes were discussed with Robey and Rusk before Davis worked for FFC/USA [p. 3]. The crawler crane designs were reduced to drawings with the assistance of Rusk, a professional engineer, before Davis worked for FFC/USA [p. 3]. |

4

| | |
|---|---|
| Rusk Affidavit (Exhibit "M") | In 1996, Rusk worked for Davis doing the engineering work to confirm Davis' crane concepts and designs. Rusk acquired information from Jim Hopkins at Caterpillar and Caterpillar engineers to confirm the Davis crane designs. In February 1997, Rusk completed the engineering work which included mechanical, hydraulic and electrical engineering work confirmed by drawings. Some of the drawings created by Rusk in February 1997 were included in the patent that was granted to Davis. |
| Rusk 2/20/97 Proposal (Attachment to Exhibit "M") | "Caterpillar-Manitex Crawler Proposal" dated 2/20/97 includes specification comparisons for the vehicle, carrier assembly, upper body, boom and jib; general performance specifications; load charts; boom derivation charts; a description of the production work to be done; suggested equipment list and estimated costs; estimated development costs; engineering drawings; function description and relief valve settings; a master schedule from implementing the mechanical interface through assembly drawings and testing; photos of Caterpillar components to be adapted. |
| Rusk Drawings (Exhibits "P," "Q" and "R") | Comparing the likeness of drawings made by Rusk in 1996-1997 (before Davis was employed by FFC/USA) to the drawings in the patent that issued to Davis. |
| Robey Deposition (Exhibit "B"), | Davis made detailed sketches of his crawler crane design before working for FFC/USA [25:6-28:25]. Davis was the driving force directing the engineers, because engineers respond to specific criteria and Davis provided that criteria [97:13-100:1]. |
| Robey Report (Exhibit "A"), | Manitowoc and Manitex refused to embrace Davis' idea of putting a hydraulic crane on a crawler. "Undeterred, Davis pursued the concept independently." During a meeting in the summer of 1995, Davis discussed details of his crawler crane design with Robey. Robey's Report was discussed in and attached to his deposition as Exhibit 2. |
| Robey 11/8/99 testimony (Exhibit "L") | Davis had "pretty well flushed out" his idea by 1995 and had consulted with Jim Rusk in doing so [31:20-33:5]. FFC only made tower-type cranes, and did not make crawler cranes until after Davis began working for them. [33:21-37:4]. Defendants' attorney knew Manitowoc and Manitex were different companies [48:10-21], but restricted the questioning to Manitowoc in Davis' deposition. The crawler cranes had been developed before the actual load testing was done to confirm specific lifting capabilities [51:18-52:10]. |
| The Employment Contract (Exhibit "C") | The Employment Contract dated 6/23/97 is silent with respect to the ownership of patents, copyrights or technical information as well as the obligation to assign anything. |

5

CMPDF - www.texiss.com

| Mac 11/8/99 testimony (Exhibit "L") | Mac knew that Davis had the "patent or concept" before signing the Employment Agreement. Further, Mac knew the Employment Agreement did not state that inventions by Davis were to belong to FFC/USA [93:4-94:14].<br>Q: "And in that [employment] agreement, did it address whose patent or concept that belonged to; to the company or to Danny Davis? Did it address it? A: At that time it was not addressed or discussed because the company funded every bit of development [94:4-8].<br>FFC has sold over 1,000 cranes, but only 3 were crawler cranes and those 3 were Davis' design [102:12-103:12]. |
|---|---|

At a minimum, such undisputed facts raise a genuine issue of material fact which precludes the granting of summary judgment in favor of Defendants FFC/USA. To the contrary, the Court held that **MR. DAVIS'** deposition unequivocally states that Davis had no plans, drawings, patents, or any working models before he was employed by FFC/USA and that nothing contained in Davis' affidavit or any other supporting evidence should be permitted to defeat the clear statements contained in **MR. DAVIS'** deposition.

The general rule for considering a motion for summary judgment is that a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corporation v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980); *Camerlin v. New York Central R. Co.*, 199 F.2d 698, 701 (1st Cir. 1952). "An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." See, 6 Moore's Federal Practice P 56-15(4), p. 56-522 (2d Ed.); *Guarantee Insurance Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 563 (D.Ill. 1972). Thus, a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition.

Despite this general rule, the Court relied on *Doe v. Dallas I.S.D.*, 220 F.3d 380, 386 5th Cir.

2000) for the proposition that a district court may grant summary judgment where an issue raised by affidavit is clearly inconsistent with earlier deposition testimony. In that case, a third-grade teacher and Boy Scout leader sexually molested numerous male students. Two discrimination suits were filed and consolidated. Defendants filed motions for summary judgment, which were granted by the district court. The district court relied on the plaintiff's 1988 affidavit and his 1996 deposition, but disregarded his conflicting 1999 affidavit. Under these facts, it was held that the district court did not incorrectly conclude that plaintiffs' evidence failed to create a genuine issue of material fact as to defendant school principal's deliberate indifference as to knowledge of the discrimination.

To avoid the general rule that a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition, the *Doe* case requires that the new facts must be "sham issues of fact," not merely discrepancies. The Fifth Circuit stated:

> "If a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out **sham issues of fact**.
>
> Perma Research and Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) (citations omitted); see also Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1365-66 (8th Cir. 1983) (stating that courts should scrutinize conflicts between affidavit and deposition testimony and **only grant summary judgment when those conflicts raise only sham issues**); Radobenko v. Automated Equip. Corp., 520 F.2d 540, 544 (9th Cir. 1975) (quoting Perma Research)."

*Doe v. Dallas I.S.D.*, 220 F.3d 380, 386 5th Cir. 2000) (emphasis added).

The Second Circuit's decision in *Perma Research & Development Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969), stands for the proposition that a district court may grant summary judgment

7

CMPDF - www.fesisi.com

where an issue raised by affidavit is <u>clearly inconsistent</u> with earlier deposition testimony. In that case, plaintiff Perma Research alleged that defendant had fraudulently entered into a contract which it never intended to perform. The president of Perma Research was extensively deposed and disclosed no specifics of the fraud claim. In a subsequent affidavit, the president referred to a conversation in which a representative of defendant allegedly stated that defendant had no intention of performing on the contract. The Second Circuit concluded that the district court had properly granted summary judgment since the statement in the affidavit was <u>blatantly inconsistent</u> with the earlier deposition. "If a party who has been <u>examined at length</u> on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as <u>a procedure for screening out sham issues of fact</u>." *Id.* at 578.

The *Doe* court also relied on ***Radobenko v. Automated Equipment Corp.***, 520 F.2d 540 (9th Cir. 1975). In ***Radobenko***, the Ninth Circuit affirmed a grant of summary judgment in a breach of contract case where the only factual issues were raised in a party's affidavit in contradiction of earlier statements in a deposition. The court acknowledged that the statements in the affidavit were material, but rejected the argument that they created a genuine issue within the meaning of Rule 56. "The very object of summary judgment is to separate real and genuine issues from those that are formal or pretended, so that only the former may subject the moving party to the burden of trial. Here we are convinced that the issues of fact created by Radobenko are not issues which this Court could reasonably characterize as genuine; rather, <u>they are sham issues</u> which should not subject the defendants to the burden of trial." *Id.* at 544. Also see ***Price v. Worldvision Enterprises, Inc.***, 455 F. Supp. 252, 260 (S.D.N.Y.1978) (affidavit testimony departs "so markedly from the prior deposition of defendants' key witness, ... as to brand as bogus the factual issues sought to be raised"), aff'd, 603 F.2d 214 (2d Cir. 1979); ***Bryant v. Western Electric Co.***, 572 F.2d 1087 (5th Cir.

8

1978); *Holifield v. Cities Service Tanker Corp.*, 421 F. Supp. 131, 136 (E.D.La.1976), aff'd 552 F.2d 367 (5th Cir. 1977).

The gravamen of the Perma Research-Radobenko-Doe line of cases is the reviewing court's determination that the issue raised by the contradictory affidavit constituted a sham. Every discrepancy contained in an affidavit does not justify a district court's refusal to give credence to such evidence. *Choudhry v. Jenkins*, 559 F.2d 1085, 1090 (7th Cir. 1977) (summary judgment was improper even though party's testimony was "not a paradigm of cogency or persuasiveness," since it was not a "transparent sham"), *cert. denied sub. nom., Indiana v. Choudhry*, 434 U.S. 997, 98 S. Ct. 634, 54 L. Ed. 2d 491 (1977). In light of the jury's role in resolving questions of credibility, this district court should not reject the content of Davis' affidavit and volumes of uncontested evidence even if it is at odds with statements made in an earlier deposition, which it is not.

The court improperly granted Defendants FFC/USA's motion for summary judgment. As an initial matter, the Davis deposition testimony relied upon by the court to exclude all other evidence is limited expressly to what Davis brought with him <u>from Manitowoc</u>, where he was employed before FFC/USA. [Davis Deposition at 35:15-37:4 and Exhibit 29 attached thereto]. Every question and response is limited to what Davis brought with him <u>from Manitowoc</u>. The answers to the deposition questions are true, accurate and consistent with all other evidence. Davis brought nothing with him from Manitowoc. Davis developed and reduced his crawler cranes to practice independently and before he was employed by FFC/USA. See, Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10), the Employment Contract (**Exhibit "C"**) and Mac Boon's 11/8/99 testimony (**Exhibit

"L" at 93:4-94:14 and 102:12-103:12)

Davis fully explained, in detail, supported by evidence from multiple sources, how he developed the unique crawler crane concept prior to his employment with FFC/USA. The Court elected to disregard all the evidence, except for a portion of Davis' deposition. And with respect to the portion of the deposition that the Court did consider, the Court misread the testimony. The Court interpreted Davis' testimony as stating that he did not bring anything with him from anywhere when he was employed by FFC/USA. Upon reading the deposition testimony, it is clear that the questions and answers are limited to Davis not bringing anything with him from Manitowoc. However, the evidence which was before the court clearly details how Davis developed the unique crawler crane concept prior to his employment with FFC/USA.

Even assuming that the deposition was unequivocal, Davis' affidavit served to create a genuine issue which would preclude summary judgment for FFC/USA. Davis' affidavit did not purport to raise a new matter, but rather to explain certain aspects of his deposition testimony. Davis was clarifying the confusion created by defendants' lawyer asking very narrow questions, then giving them a broad interpretation. Davis' assertions are supported by additional evidence from multiple sources. A fair reading of the deposition reveals frequent shifts in the questioning between topics with a degree of confusion on the parts of both Davis and defendants' attorney. The Davis affidavit is not inconsistent with his earlier testimony. Rather, Davis' affidavit merely supplements his prior testimony. Furthermore, the statements in the Davis affidavit are not at odds with all the additional evidence previously before the court.

In light of the fact that the affidavit is consistent with Davis' deposition and all the other evidence before the court, the concerns raised in Doe, Perma Research and Radobenko are not present in this case. Accordingly, the principles enunciated in those cases should not be adopted by

10

this court. Accordingly, the grant of summary judgment should be vacated, and summary judgment entered for Davis.

## EVEN CASES RELIED UPON BY THE COURT IN ITS MARCH 8, 2001 ORDER SUPPORT SUMMARY JUDGMENT FOR DAVIS CONCERNING NO FIDUCIARY DUTY EXISTING TO ASSIGN PATENT

With respect to issues of fiduciary duty, the court relied upon *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App. 1984), *Icom Systems v. Davies*, 990 S.W.2d 408, 410 (Tex. App. 1999), and *Innovo Group Inc. v. Tedesco*, 1996 WL 580465, 7, 1996 Tex. App. LEXIS 4507.

In its March 8, 2001 order, the court relied upon, as primary references, several unpublished opinions. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App. 1984) was relied upon secondarily as cited in *King v. Associated Air Center Inc.*, 1991 WL 284483, 84 (Tex. App. 1991) which was an unpublished opinion. *Fuqua* was an appeal from the trial court's imposition of a constructive trust on income received by appellant from overriding royalty interests in oil leases obtained by him. The appellant court held, *where the underlying facts are undisputed*, determination of the existence, and breach, of a fiduciary duty are questions of law exclusively within the province of the court. The *Fuqua* court stated "We note that although the existence of facts which give rise to a fiduciary duty are questions for the factfinder's determination, *MacDonald v. Follett*, 142 Tex. 616, 180 S.W.2d 334 (1944), the pertinent facts in the instant case are undisputed." *Id.* at 737-8. Thus, the present court cannot determine the existence, or breach, of a fiduciary duty as a matter of law unless the pertinent facts in the instant case are undisputed. Davis maintains the facts are undisputed in his favor, although the court found the existence and breach of a fiduciary duty as a matter of law against Davis. Reformation of the March 8, 2001 order is respectfully requested.

As in the *Fuqua* case, the relationship between the parties in the present case was defined by an agreement, i.e., the Employment Contract (**Exhibit "C"**). When the fiduciary relationship is defined by a contract, as in the present case, the court is required to look to the parties own

11

agreement to define the scope of the fiduciary relationship. Even though the relationship is fiduciary in character, the duty does not extend beyond the clear language of their own contract. *Id.*

The Employment Contract (Exhibit "C") is silent concerning any patents, inventions, technology or crawler cranes. Mac, who signed the Employment Contract for FFC, knew that Davis had the "patent or concept" before executing the Employment Contract (Exhibit "C"). Further, Mac knew the Employment Contract did not state that inventions by Davis were to belong to FFC/USA. (Mac 11/8/99 testimony, Exhibit "L" at 93:4-94:14).

> **Q**: "And in that [employment] agreement, did it address whose patent or concept that belonged to; to the company or to Danny Davis? Did it address it?
>
> **A**: <u>At that time [when the contract was signed] it was not addressed or discussed</u> because the company funded every bit of development (*Id.* at 94:4-8).

Thus, all matters expressly excluded from FFC's own Employment Contract (Exhibit "C") are excluded from the scope of the fiduciary relationship between Davis and FFC/USA.

The *Fuqua* case, relied upon by the court in this case, held:

> "Fiduciary duties, however, extend only to dealings within the scope of that relationship. [citation omitted]. In the instant case, the signed letter agreement established the relationship between the parties. That agreement, which provided that the investors would be given an option to participate if it was later deemed advisable to drill a second well, included the Sharpe lease but not the O'Kelley. Thus, the Sharpe lease was within the scope of the fiduciary relationship between appellant and appellees, but the O'Kelley lease was not. We conclude, therefore, that appellant had a fiduciary duty to inform appellees of the opportunity to reacquire the Sharpe lease, but that appellant had no such duty with respect to the acquisition of the O'Kelley lease." *Id.* at 738.

Where a party's own agreement defines its fiduciary relationship with another and the agreement is silent of a duty, then that duty is not within the scope of the fiduciary relationship. *Id.*

CVisPDF - www.fenrir.com

Simply stated, a party is held to its own agreement, and cannot later expand the scope of the clear language of its prior agreement. As a matter of law, Davis had no fiduciary duty to assign his prior developed crawler crane designs or patent.

Also relied upon in the courts March 8, 2001 opinion for usurping a corporate opportunity was *Icom Systems v. Davies*, 990 S.W.2d 408, 410 (Tex. App. 1999) which is analogous to the present case and supports summary judgment for Davis. In *Icom*, Plaintiff corporation appealed a judgment that entered a verdict in favor of defendant, former corporate officer and director, in a suit alleging a breach of fiduciary duty. The court affirmed the judgment in favor of defendant, a former corporate officer and director, because the products were not in the same line of business even though both were related businesses: interactive software programs, one for golf and the other for lawns. In the present case, FFC never made crawler cranes before Davis brought his crawler cranes to it. Davis Affidavit (**Exhibit "K"** at p. 3), Robey 11/8/99 testimony (**Exhibit "L"** at 33:21-37:4) and Mac 11/8/99 testimony (**Exhibit "L"** at 102:12-103:12). Thus, the products (FFC's tower/marine cranes and Davis' crawler cranes) were not in the same line of business and no fiduciary duty can exist as a matter of law.

The *Icom* court stated:

> "The analysis, then, turns on determining the corporate interest or expectancy. The Tyler Court of Appeals, in *Imperial Group (Texas), Inc. v. Scholnick*, 709 S.W.2d 358, 365 (Tex. App.-Tyler 1986, writ ref'd n.r.e.), embraced the "in the line of business" test to determine if a corporate officer had usurped a corporate opportunity. The court found,
>
> Where a corporation is engaged in a certain business, and an opportunity is presented to it embracing an activity as to which it has fundamental knowledge, practical experience and ability to pursue, which, logically and naturally, is adaptable to its business having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion, it may be

properly said that the opportunity is in the line of the corporation's business." *Icom Systems v. Davies*, 990 S.W.2d 408, 410 (Tex. App. 1999) (emphasis added).

The "certain business" in the present case is the crawler crane business. It is undisputed that FFC was not engaged in the crawler crane business before it hired Davis, and that FFC's tower/marine cranes are distinct and different from Davis' crawler cranes. Davis Affidavit (**Exhibit "K"** at p. 3), Robey 11/8/99 testimony (**Exhibit "L"** at 33:21-37:4) and Mac 11/8/99 testimony (**Exhibit "L"** at 102:12-103:12). FFC could not have had "fundamental knowledge" concerning crawler cranes because it was not in that business. FFC had no "practical experience" in crawler cranes because it was not in that business. And, FFC did not have the "ability to pursue" the crawler cranes because it was not in that business and got into the crawler crane business using Davis. When applying the legal criteria for the corporate opportunity test, FFC/USA had no valid corporate interest or expectancy in the Davis crawler cranes.

## 35 U.S.C. § 261 REQUIRES THAT ANY ASSIGNMENT MUST BE IN WRITING, "THE" WRITING THAT DEFINES THE RELATIONSHIP BETWEEN DAVIS AND FFC IS SILENT ON ASSIGNING PATENTS, AND THUS NO ASSIGNMENT IS APPROPRIATE

35 U.S.C. § 261 requires that <u>any assignment</u> for a patent, patent application or any interest therein <u>must be in writing</u>. ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing."). *Id*. Since the patent statute requires that any assignment must be in writing, and the Employment Contract (**Exhibit "C"**) is "the" writing that defines the scope and nature of the relationship between Davis and FFC, and the Employment Contract is silent on patents or the assignment of anything, any order requiring assignment flies in the face of the patent statute.

## THE COURT'S RELIANCE ON DAVIS V. ALWAC INT'L INC. IS MISPLACED

In this court's March 8, 2001 order, *Davis v. Alwac Int'l Inc.*, 369 S.W.2d 797 (Tex. Civ.App

1963) was relied upon as the leading Texas case regarding the duty of fiduciaries to assign patents. No Texas case, State or Federal, has been found relying on the *Davis* case for this proposition. However, a Colorado case was found that relied on *Davis* for the proposition that:

> **if** the officer invented the subject matter of the patent while employed by the corporation **and**
>
> **if** the invention relates to the business of the corporation
>
> then an officer or director's fiduciary duty may include the obligation to assign patents to the corporation.

*Lacy v. Rotating Productions Systems, Inc.*, 961 P.2d 1144 (Colo. App. 1998). A clear reading of the Davis case indicates that both criteria are required.

As this court correctly noted in its March 8, 2001 order, the *Davis* case was limited to the fact that all development occurred <u>after</u> the officer/director had been working for the company. This court's March 8, 2001 order characterized the *Davis* case stating, "While serving in these capacities, he made an invention." March 8, 2001 opinion, p. 9. The facts of the present case are clearly different. Plaintiff Daniel Davis "made his invention" before working for FFC/USA. See, Davis' deposition and affidavit (**Exhibit "K"**), Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10), the Employment Contract (**Exhibit "C"**) and Mac Boon's 11/8/99 testimony (**Exhibit "L"** at 93:4-94:14 and 102:12-103:12). Daniel Davis brought his previously developed crawler cranes to FFC/USA when he was hired.

Still further, FFC was not in the business of crawler cranes. Daniel Davis brought his previously developed crawler cranes to FFC/USA when he was hired. Thus, pursuant to the *Davis*

case relied upon in the March 8, 2001 order, even if the Davis crawler cranes were developed after Daniel Davis was hired, which they were not, crawler cranes were not part of FFC's business, and no assignment was required. Davis Affidavit (**Exhibit "K"** at p. 3), Robey 11/8/99 testimony (**Exhibit "L"** at 33:21-37:4) and Mac 11/8/99 testimony (**Exhibit "L"** at 102:12-103:12). The Davis crawler crane invention does no relate to FFC's business of tower/marine cranes.

### DAVIS ASSERTED THAT HE DEVELOPED HIS CRAWLER CRANES BEFORE COMING TO FFC/USA

In its March 8, 2001 order at p. 10, the court found it peculiar that Davis did not assert his prior development of the crawler cranes earlier in the litigation. He did.

The Joint Pretrial Order is replete with references to Davis' ownership of the patent and crawler crane technology prior to being employed by FFC. The Joint Pretrial Order states:

> Davis is alleging that the Defendants have infringed his patent and that he is entitled to damages. Joint Pretrial Order, p. 3.

> The Defendants deny that Davis owns the 252 patent and that it has been infringed. Joint Pretrial Order, p. 4.

> (2) This is an action for patent infringement. The patent infringement claims stem from Defendants' illegal manufacturing, use and sale of crawler cranes covered by the patent owned by Plaintiff, who is the inventor. Joint Pretrial Order, p. 5.

> (3) Plaintiff contends that he is the inventor and owner of U.S. Patent No. 6,003,252 ("the 252 patent") issued on December 21, 1999 and entitled "Conversion Apparatus and Method for Use with Excavator and Crane Devices. Joint Pretrial Order, p. 5.

> (4) Plaintiff further contends that on or about June of 1997, he and Defendants entered into an agreement by which he was hired as the President and Managing Director of Favco USA in Harlingen, Texas. Plaintiff agreed to bring to Favco USA a line of new and unique crawler cranes (i.e., the "Davis Crawler Cranes"). The

Davis Crawler Cranes were, and are unique because, among other things, they can be manufactured quicker and less expensively resulting in a more stable crane for its overall size. Plaintiff contends that he brought the crane know-how, designs, concept and/or idea with him when he became employed by Favco Holdings and Favco USA. Joint Pretrial Order, p. 6.

(7) Plaintiff contends that he is the owner of the 252 patent entitled "Conversion Apparatus and Method for Use with Excavator and Crane Devices." Joint Pretrial Order, p. 6.

(9) Plaintiff contends that prior to being hired by Favco Holdings he conceived the idea and concept of the crawler cranes subject of the 252 patent. Joint Pretrial Order, p. 6.

(10) Plaintiff contends that in the summer of 1995 he discussed his idea and concept of the crawler cranes with Richard Robey. Joint Pretrial Order, p. 6

Also, in Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion For Partial Summary Judgment And Supporting Memorandum And Cross Motion For Partial Summary Judgment On Patent Ownership And Shop Rights ("Plaintiffs' Response/Motion") at page 31, a complete section of "undisputed facts" were presented on Davis' ownership of the patent and crawler crane technology prior to being employed by FFC. Particularly, Plaintiffs' Response/Motion stated:

**UNDISPUTED FACTS SUPPORTING SUMMARY JUDGMENT**

**OF OWNERSHIP BY DAVIS AND NO SHOP RIGHTS TO DEFENDANTS**

1.      U.S. Patent No. 6,003,252 was issued by the U.S. Patent and Trademark Office to Daniel E. Davis.

2.      Daniel E. Davis is the inventor named by the U.S. Patent and Trademark Office on U.S. Patent No. 6,003,252.

3.      Under 35 U.S.C. 256, Defendants could have disputed Davis being the sole inventor, but did not. ("The court before which such matter is called in question may

order correction of the patent on notice and hearing of all parties concerned and the Director shall issue a certificate accordingly.")

4.    No written assignment exists from **MR. DAVIS** to Defendants.

5.    Any assignment must be in writing, and no such writing exists. 35 U.S.C. 261 ("Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing.").

6.    Defendants never notified the U.S. Patent and Trademark Office that it had a claim to U.S. Patent No. 6,003,252.

7.    Defendants never sought to protect any of its alleged ideas by applying for patents.

8.    The Employment Contract is silent with respect to Davis being hired to invent, assignment of ideas or any such matters.

9.    The Employment Contract was written by Defendants.

10.    The Shareholders' Agreement expressly requires that Defendants pay Davis a royalty for using Davis' patented invention.

11.    The Shareholders' Agreement was written by Defendants.

12.    At Davis' request, Defendants changed the Shareholders' Agreement to include the provision requiring it to pay Davis a royalty for using Davis' patented invention.

13.    Davis conceived his invention before working for Defendants.

14.    Davis developed his invention before working for Defendants.

15.    Defendants did not make crawler cranes when Davis brought his invention to them.

16.    Davis' trade secrets and patent is not Defendants'

property to conceive and develop the invention because Davis did that before he started to work.

17.     Davis did not expressly consent to Defendants using his invention.

18.     Davis, at all times, demanded a royalty from FFC Parties to use his invention.

20.     Davis did not silently acquiesce, but rather, openly restricted use of his invention.

21.     Davis expressly dissented to FFC Parties using his invention without a license by signing the Shareholders' Agreement

22.     Prior to the end of the 3-year term in the Shareholders' Agreement, Davis requested that Defendants sign a longer term License Agreement

Plaintiffs' Response/Motion, pp. 31-32 [emphasis added].

## CONCLUSION

The relevant facts remain undisputed in favor of summary judgment for Davis.  Summary judgment should have been in favor of Davis, not FFC/USA.  In the alternative, questions of fact exist and defendants summary judgment can not be sustained.  Modification of the March 8, 2001 order is respectfully requested.

Respectfully submitted,

**LAW OFFICES OF**

**ERNESTO GAMEZ, JR., P.C.**

777 E. Harrison Street

Brownsville, Texas  78520

TEL/(956) 541-3820

FAX/(956) 541-7694

BY: _____

**ERNESTO GAMEZ, JR.**

State Bar No. 07606600

Federal Id. No. 8645


**ATTORNEY-IN-CHARGE FOR**

**PLAINTIFFS**


**VICTOR QUINTANILLA**

State Bar No. 00786181

Federal Id. No. 16073


**SIGNED WITH PERMISSION OF**

**ATTORNEY-IN-CHARGE**

20

CMPDF - www.fastio.com

## CERTIFICATE OF CONFERENCE

I, **VICTOR QUINTANILLA**, hereby certify that on this 19th day of March, 2001, I

conferred with Hon. Gary Gurwitz, Attorney-in-Charge for Defendant **FAVELLE FAVCO**

**CRANES USA, INC.** about the contents and the filing of this **Motion for Reconsideration** and

he indicated that he opposes this **Motion for Reconsideration**.

VICTOR QUINTANILLA

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA**, hereby certify that on this 19th day of March, 2001 a true

and correct copy of the foregoing **Motion for Reconsideration** was served via certified mail

return receipt requested #7099 3220 0006 2777 6896  in accordance with the Federal Rules of

Civil Procedure to Hon. Gary Gurwitz at **ATLAS & HALL,**

**L.L.P.,**818Pecan, P.O. Box 3725, McAllen, Texas  78502.

VICTOR QUINTANILLA

21

ChMPDF - www.faxia.com