United States District Court
Southern District of Texas
Brownsville Division

United States District Court
Southern District of Texas
FILED

MAR 2 9 2001

Michael N. Milby
Clerk of Court

DANIEL E. DAVIS, et al,
     plaintiffs
§
§
§
v.
§
§
FAVELLE FAVCO CRANES USA, INC.,
et al.,
     defendants
§
§
§
§

Civil Action No. B-00-003

## Defendant FFC Parties' Response to Plaintiffs' Motion for Reconsideration

Gary Gurwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

# Table of Contents

1.   *Statement of the nature and stage of the proceeding.* . . . . . . . . . . . . . . . . . . . . . 1

2.   *Summary of argument* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

3.   *Summary judgment standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

4.   *The Davis Parties' arguments do not obviate the fact that Davis owed a*
     *fiduciary duty to FFC USA, and that, because of such fiduciary duty, he is*
     *required to assign the patent(s) at issue to FFC USA.* . . . . . . . . . . . . . . . . . . . 2

     4.1   *Davis owed a duty of loyalty to FFC USA.* . . . . . . . . . . . . . . . . . . . . . . 3
     4.2   *FFC USA's "business" does not obviate Davis' fiduciary duty.* . . . . . . . . 4
     4.3   *The Employment Contract does not obviate Davis' fiduciary duty.* . . . . . 5
     4.4   *The Rusk and Davis Affidavits and related materials do not*
           *obviate Davis' fiduciary duty.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

           4.4.1   *An idea is not patentable* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           4.4.2   *Davis has testified and stipulated that he brought*
                   *nothing with him when he came to FFC USA other*
                   *than an idea.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
           4.4.3   *Davis' prior deposition testimony was that he brought*
                   *nothing with him from Manitowoc.* . . . . . . . . . . . . . . . . . . . . . . 8
           4.4.4   *Davis represented to the FFC Parties, and previously*
                   *testified, that the crawler crane idea he had at*
                   *Manitowoc was different than the cranes at issue.* . . . . . . . . . . . 9
           4.4.5   *Davis' previously stipulated that he had no personal*
                   *contract with Rusk.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

     4.5   *Davis did not reduce his invention to practice by the time*
           *he joined FFC USA.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
     4.6   *Davis newly produced evidence, if anything, makes the*
           *'252 patent invalid* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
     4.7   *Davis' "new" evidence thus clearly contradicts extended*
           *deposition testimony and admissions in the pretrial order.* . . . . . . . . . 15

5.   *The "writings" provision 35 U.S.C. § 261 does not defeat summary judgment*
     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6.   *Davis does not contest the applicability of the statute of frauds to preclude*
     *reliance on the draft 1997 Shareholders Agreement* . . . . . . . . . . . . . . . . . . . 15

7.    *Objections to evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

8.    *Motion untimely* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

9.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

CVxPDF – www.fastio.com

# Table of Authorities

Cases

*Albertson v. T.J. Stevenson & Co.,*
749 F.2d 223 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Diamond v. Diehr,*
450 U.S. 175, 101 S.Ct. 1048, 67 L.Ed.2d 155 (1981) . . . . . . . . . . . . . . . . . . . . . . . . 6

*Doe v. Dallas Independent School Dist.,*
220 F.3d 380 (5th Cir. 2000),
*cert. den.,* 148 L.Ed.2d 667 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

*Fuqua v. Taylor,*
683 S.W.2d 735 (Tex. App.–Dallas 1984, writ ref'd n.r.e.) . . . . . . . . . . . . . . . . . . . . . 5

*Hazeltine Corp. v. United States,*
820 F.2d 1190 (Fed. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Icom Systems, Inc. v. Davies,*
990 S.W.2d 408 (Tex. App.–Texarkana 1999, no writ) . . . . . . . . . . . . . . . . . . . . . . . 5

*International Bankers Life Insurance Co. v. Holloway,*
368 S.W.2d 567 (Tex. 1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rubber-Tip Pencil Co. v. Howard,*
87 U.S. 498, 22 L.Ed. 410, 20 Wall. 498 (1874) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*S.W.S. Erectors, Inc. v. Infax,*
72 F.3d 489 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Scott v. Finney,*
34 F.3d 1058 (Fed. Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Thurman v. Sears, Roebuck & Co.,*
952 F.2d 128 (5th Cir. 1992),
*cert. den.,* 506 U.S. 845 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*UMC Electronics Co. v. United States,*
816 F.2d 647 (Fed. Cir. 1987),
*cert. den.,* 484 U.S. 1025 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

<u>Statutes</u>

35 U.S.C. § 261 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

F.R.C.P. 59(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**v**

**Defendant FFC Parties' Response to
Plaintiffs' Motion for Reconsideration**

Defendants Favelle Favco Cranes USA, Inc. ("FFC USA" or "Favco USA"), Favelle Favco Cranes (M) SDN BHD ("FFC Malaysia"), and Favelle Favco Holdings SDN BHD ("FFC Holdings") (collectively "FFC Parties") file this response to the Motion for Reconsideration filed by Daniel E. Davis ("Davis"), DavisCo, Inc. ("DavisCo."), and Coburn International Ltd. ("Coburn") (collectively "Davis"), and would show:

1.   *Statement of the nature and stage of the proceeding.*   After exhaustive briefing and substantial reference to the summary judgment evidence, this court granted the FFC Parties' supplemental motion for partial summary judgment.   That order established, among other things, that FFC USA is the owner of the patent(s) at issue.   The Davis Parties have filed a motion for reconsideration of that order, addressed herein.   The motion in many respects merely rehashes or rephrases the arguments this court has already rejected.

2.   *Summary of argument.*   The Davis Parties' new arguments do not defeat the FFC Parties' summary judgment motion, nor do they support the motion for summary judgment filed by the Davis parties.   Davis owed a fiduciary duty to FFC USA, and neither the employment contract nor the scope of FFC USA's "business" precludes such duty. FFC USA was formed in part for the purpose of developing the crawler cranes at issue, and such development was within the scope of Davis' duties as president and managing director.   See §§ 4.1 - 4.3 below.   Davis' arguments concerning Rusk and prior development of the patent are contradicted both by Davis' agreed stipulations of fact and

by extensive prior testimony.  See § 4.4, et seq, below.  Further, the "writings" provision of 35 U.S.C. § 261 simply is not relevant to whether Davis has a duty to assign the patent to FFC USA.  See § 5 below.

3.  *Summary judgment standard.*  The summary judgment standard is stated in the FFC's parties prior briefs.  In addition, the Fifth Circuit clearly has held that a party cannot create a fact issue on summary judgment through the submission of an affidavit that contradicts prior sworn deposition testimony without explanation.  *Doe v. Dallas Independent School Dist.,* 220 F.3d 380, 385-87 (5th Cir. 2000), *cert. den.,* 148 L.Ed.2d 667 (2001); *S.W.S. Erectors, Inc. v. Infax,* 72 F.3d 489, 495-96 (5th Cir. 1996); *Thurman v. Sears, Roebuck & Co.,* 952 F.2d 128, 136-37 & n. 23 (5th Cir. 1992), *cert. den.,* 506 U.S. 845 (1992); *Albertson v. T.J. Stevenson & Co.,* 749 F.2d 223, 233 n. 9 (5th Cir. 1984).  As is set out in prior briefs and discussed below, Davis' new "evidence" does conflict with extensive deposition testimony and documentary evidence, and Davis' arguments concerning *Doe* are therefore irrelevant.

4.  *The Davis Parties' arguments do not obviate the fact that Davis owed a fiduciary duty to FFC USA, and that, because of such fiduciary duty, he is required to assign the patent(s) at issue to FFC USA.*  The FFC Parties maintain their objections to Davis' summary judgment "evidence" as stated in Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment § 8.  Such "evidence" consists primarily of hearsay and self-contradictory statements.  Even if the evidence is considered, however, it does not defeat the FFC Parties' motion for partial summary judgment.  Indeed, this court has already considered

2

– and rejected – most of Davis' "evidence" and arguments, and his remaining arguments are without merit and do not defeat summary judgment.

        4.1    *Davis owed a duty of loyalty to FFC USA.*–Davis admits that he was president and managing director of FFC USA.  Davis Depo. at 26, Ex. A to Defendant Favelle Favco Cranes, USA's Motion for Partial Summary Judgment ("FFC USA MSJ"). Corporate officers and directors are held to an "extreme" measure of honesty, unselfishness and good faith in any transaction involving self-dealing.  *International Bankers Life Insurance Co. v. Holloway,* 368 S.W.2d 567, 576 (Tex. 1963). Self-dealing clearly was involved in this instance, with Davis usurping for himself the corporate opportunity relating to crawler cranes.  As the summary judgment evidence clearly shows, Davis did not have a patentable design when he began work for FFC USA, and over $10 million was spent by or on behalf of FFC USA in developing the crawler cranes at issue. See FFC USA MSJ at 11.  That Davis' new "evidence" contradicts his prior deposition testimony is established in Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment at § 4, et seq.

        Davis in response to FFC USA's motion for partial summary judgment has never previously denied that he owed a fiduciary duty to FFC USA.  Instead, his previous argument was that his "rights" came solely from the 1997 draft Shareholders Agreement. See Davis Depo. at 131-32.    The court held the Shareholder's Agreement was unenforceable. Davis herein does not in his motion for reconsideration re-urge any rights pursuant to such draft agreement.  Instead, Davis now – completely contrary to his previous position – argues his rights arise from the alleged fact that some work was done on the crawler cranes before he became president of FFC USA.  That inconsistent claim

3

is inconsistent with the evidence, and was so found by the court in granting the partial summary judgment.

       4.2   *FFC USA's "business" does not obviate Davis' fiduciary duty.*–FFC USA was established in part to develop and sell the crawler cranes at issue. Cheam Depo. at 58-59, 176, FFC USA MSJ Ex. C.[1] The evidence is unequivocal that FFC USA <u>is</u> in the business of manufacturing and selling cranes, including the crawler cranes being developed.   Davis, on behalf of and as president of FFC USA, contracted with various independent contractors for patent development work, and those contracts expressly recognized FFC's rights to the work. *See, e.g.,* Orgeron contract, FFC USA MSJ Ex. A9 at p. 5 (recognizing patents, etc., to belong to FFC USA); ECCON Confidentiality Agreement ¶ 1 at p. 2, FFC USA MSJ Ex. A4 ("FAVCO shall be the sole owner and the sole party to secure . . . patents on all specifications, designs, drawings, and work product generated and produced by ECCON in performing the design and development services in relation to the Crawler Crane design . . . ."); *see generally* Davis Depo. at 77-84, 157-66, 197-98.  Indeed, some $10 million was spent by or on behalf of FFC USA for development of the cranes.  See FFC USA MSJ at 11.  If FFC USA is not in the "business" of the crawler cranes at issue, there was no reason for it to spend over $10 million in designing, developing, and manufacturing them.

---

    [1] Cheam testified that the two primary reasons for starting FFC USA were: 1) "to start from scratch the design and marketing of the crawler cranes"; and 2) "to sell the existing Favco – Favelle Favco's current existing product." Cheam Depo. at 176, FFC USA MSJ Ex. C.  *See also* Mac Depo. at 21, FFC USA MSJ Ex. D ("Danny and I discussed on the formation of a company in the United States to market our Favelle Favco cranes. . . as well as to develop a crawler crane for the market"); 32; 163-64.

4

4.3    *The Employment Contract does not obviate Davis' fiduciary duty.*—The

Employment Contract provides that Davis will be "employed as a managing director to

perform on behalf of employer work done at its facility in the USA."   FFC MSJ Ex. A3.

Development of the crawler crane clearly is within the "scope of [that] relationship." *Fuqua*

*v. Taylor,* 683 S.W.2d 735, 738 (Tex. App.–Dallas 1984, writ ref'd n.r.e.).[2]  Indeed, the

testimony cited by Davis indicates that the patent was not discussed at the time of the

employment agreement only "because the company [FFC USA] funded every bit of

development." Mac Depo. at 94, FFC USA MSJ Ex. D. Davis admits that part of his duties

were to develop the crawler crane at issue:

> Q:    . . . When you became president and managing director
> of Favco USA and in connection with your duties to finalize,
> conceptualize, design and manufacture crawler cranes, did you
> tell anyone at Favco Malaysia or Favco Holdings or Favco USA

---

[2] *Fuqua,* in any event, deals with a joint venture relationship not with an employment and officer relationship. 683 S.W.2d at 737. *Icom Systems, Inc. v. Davies,* 990 S.W.2d 408 (Tex. App.–Texarkana 1999, no writ), merely affirms the trial court's judgment that the product at issue was a different business. In *Icom,* the initial business (Icom) "was formed for the sole purpose of creating and marketing the TIGRE computer system," *id.* at 411 (emphasis added), which system provided automated scheduling for golf tee times and tennis court usage, *id.* at 409. The competing business (Garden Professor), in contrast, allowed a consumer to answer certain computerized questions to correctly determine the needs of his lawn (and hence, presumably, to buy the appropriate Green Light Company fertilizer or other product). *Id.* The court points out that "The Garden Professor and TIGRE [the tennis/golf scheduling program] are dissimilar products that do not compete in the same market. No resource of Icom was used to develop the Garden Professor." *Id.* at 411. Neither of those facts exist here.

The test, even according *Icom,* is whether the business opportunity at issue "embrac[es] an activity as to which it [the employer] has fundamental knowledge, practical experience and ability to pursue, which, logically and naturally, is adaptable to its business having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion." *Id.* at 410, *quoting Imperial Group (Texas), Inc. v. Scholnick,* 709 S.W.2d 358, 365 (Tex. App.–Tyler 1986, writ ref'd n.r.e.). Clearly, the crawler cranes at issue were a "business opportunity" of FFC USA under this test.

5

how long you thought it would take to bring this idea from simply an idea to a — something that could be built and sold?

A:      I'm sure I did.

Davis Depo. at 37-38, FFC USA MSJ Ex. A.

4.4      *The Rusk and Davis Affidavits and related materials do not obviate Davis' fiduciary duty.*  Neither the Rusk or Davis affidavits or other new "evidence" preclude summary judgment for the FFC Parties.

4.4.1 *An idea is not patentable.*  A mere idea is not patentable. *Diamond v. Diehr,* 450 U.S. 175, 184, 101 S.Ct. 1048, 1056, 67 L.Ed.2d 155 (1981); *Rubber-Tip Pencil Co. v. Howard,* 87 U.S. 498, 506,  22 L.Ed. 410, 20 Wall. 498 (1874). As discussed below, Davis has testified that he had a mere idea at the time he came to FFC USA.

4.4.2 *Davis has testified and stipulated that he brought nothing with him when he came to FFC USA other than an idea.*  Davis in his deposition states that, at the time he became president of FFC USA, there were no drawings or plans for the crawler cranes at issue. Davis Depo. at 35-36, 50, FFC USA MSJ Ex. A. Specifically, Davis states:

> Q:   <u>So at the time you became president and managing director of Favco USA, there were not in existence any drawings, models, prototypes of the crawler cranes that we're now fighting about</u>?
>
> A:   <u>No.</u>
>
> Q:   You didn't have any?
>
> A:   No.
>
> Q:   And you didn't know of anyone who had any?

6

A:     Not that I'm aware of.

Davis Depo. at 36 (emphasis added). This testimony is unequivocal, and is not limited to what Davis brought from his former employer Manitowoc or even Manitex. Further Davis, when he had discussions about becoming president and managing director of FFC USA, told representatives of the FFC Parties that it would take about a year to finalize the idea so it could be built and sold.[3] Davis Depo. at 37-38, FFC USA MSJ Ex. A. He later told the FFC Parties that the ECCON agreement needed to be signed because "[w]e cannot file for a Pat. Pending or Patent unless we have a design." Memo ¶ 4 at 2, FFC MSJ Ex. B 29. Davis' new "evidence" concerning what he now says he had at the time of his association with FFC USA similarly does not explain why FFC USA spent over $10 million to develop the crane. See FFC USA MSJ at 11.

Additionally, in the Amended Joint Pretrial Order, Davis admits: "All work done on the crawler cranes manufactured and sold by Favco USA was done after Davis became

---

[3]     Q:     . . . When you became president and managing director of Favco USA and in connection with your duties to finalize, conceptualize, design and manufacture crawler cranes, did you tell anyone at Favco Malaysia or Favco Holdings or Favco USA how long you thought it would take to bring this idea from simply an idea to a – something that could be built and sold?
A:     I'm sure I did.
Q:     Who did you tell?
A:     Most likely, Mac.
Q:     And when did you tell him that?
A:     Probably during discussions of employment.
. . .
Q:     And how long was that going to take? Did you tell him about how long it would take?
A:     About a year.

Davis Depo. at 37-38, FFC USA MSJ Ex. A.

President and Managing Director of Favco USA." Amended Joint Pretrial Order ¶ 6(18) (emphasis added).[4]  Davis' "new" evidence thus contradicts not only his deposition testimony but also prior admissions of fact.

Davis also unequivocally admitted in his deposition that all the work that Rusk, Eccon and Orgeron did on the crawler cranes was done after he became President and Managing Director of Favco USA. Davis Depo. at 68-69 (FFC USA MSJ Ex. A).

4.4.3 *Davis' prior deposition testimony was that he brought nothing with him from Manitowoc.* Prior to becoming president and managing director of FFC USA, Davis was employed by the Manitowoc Company -- not Manitex. Davis Depo. at 33 (FFC USA MSJ Ex. A); Davis Aff. at 2 (Attachment K to Davis' MSJ Response).  Davis in his deposition testified that he brought nothing with him from his former employer Manitowoc (or anyone else) other than an idea:

Q:    . . . When you left Manitowoc –

A:    Uh-huh.

Q:    – and you went and became president and managing director of Favco USA, what did you bring with you that had to do with the crawler cranes that are the subject of this lawsuit?

A:    That are the subject of this lawsuit?  Nothing from Manitowoc.

Q:    Okay.  You brought no plans?

---

[4] Davis' contentions from the Amended Joint Pretrial Order are nothing more than his contentions and  cannot defeat his stipulation, and in any event are not contrary to the stipulation.  His contentions are merely that he owned the patent, that he had an idea, and that he had some discussion of his idea with Roby.  See Davis Response at 16-17.  Davis' unfounded assertions in his response to the FFC Parties' supplemental motion for partial summary judgment (see Davis Response at 17-18), are probative of nothing, and cannot serve to defeat summary judgment:

8

A:    No.  Not that was being used, no.

. . .

Q:    You didn't bring any patents?

A:    No.

Q:    You didn't bring any working models?

A:    No.

Q:    What you brought, then, was what?  An idea of how to build a different type of crawler crane?

A:    Yes.

Davis Depo. at 35-36 (emphasis added).  *See also id.* at 50 (brought nothing from Manitowoc).  The new emphasis on Manitex – for whom Davis did not work – is irrelevant. It didn't matter who he worked for, he brought nothing with him.

4.4.4  *Davis represented to the FFC Parties, and previously testified, that the crawler crane idea he had at Manitowoc was different than the cranes at issue.*–Davis' testified in his deposition that the concept he had at Manitowoc was different than the concept on which the cranes at issue are based. Davis Depo. at 34-35, 183-84 & Ex. 10 (FFC MSJ Ex. A).[5]  Indeed, Davis – responding to a claim by Manitowoc of trade

---

[5] Davis testified:

> Q:    [W]hat were you doing in connection with the crawler cranes?  Were the crawler cranes that you were involved with at Manitowoc the same crawler cranes that we're involved in this lawsuit?
> A:    No.
> Q:    Different?
> A:    Yes.
> Q:    Okay.  So that the crawler cranes that we're going to be talking about in this deposition are not the crawler cranes that

9

secret infringement – represented to FFC that the crawler cranes at issue <u>did not</u> infringe

Manitowoc's trade secrets, and that the concept under development for FFC USA was

different than the concept he had while under Manitowoc's employment. *Id.*[6]  Further,

Davis testified that, although Rusk had done some work for Manitowoc, it was with regard

to <u>different</u> crawler cranes.[7]  Davis Depo. at 253-54.

---

> were being manufactured or that you were working on while
> you were with Manitowoc?
> A:      They were not manufactured by Manitowoc.
> Q:      And they were not being worked on or trying to be
> developed by you while you were at Manitowoc?
> A:      There was some conceptual work being done, but that
> was it.
> Q:      That was it?  You didn't have something that could be
> built?
> A:      No.
> Q:      Or patented?
> A:      No.
> Q:      So it was just an idea?
> A:      That's correct.

Davis Depo. at 34-35 (FFC USA MSJ Ex. A).

[6]    Q:      And this [Davis Depo. Ex. 10] is what you wrote to Mr.
Mac to explain why that was not true, that you had not taken
trade secrets from Manitowoc?
A:      That's correct.
Q:      And that is your position?  You did – nothing you used
to manufacture and design these crawler cranes at Favelle
Favco came from your employment at Manitowoc; is that
correct?
A:      That's correct.

Davis Depo. at 183-84.

[7]    Q:      . . . Why did you pick Mr. Rusk?
A:      Because Mr. Rusk had already been working on some
plans prior to – prior to me joining Favco.
Q:      While you were at Manitowoc?
A:      That's correct.

10

4.4.5 *Davis' previously stipulated that he had no personal contract with Rusk.*  The Rusk contract clearly is with FFC USA, not Davis personally.  FFC USA MSJ Ex. B26.  Despite this, Davis now claims he had some relationship and agreement with engineer Rusk prior to the time he started as president and managing director of FFC USA, pursuant to which Rusk produced drawings for the patent.  Davis stipulated, however, that "Davis had no contracts personally with ECCON, Orgeron, Rusk or CIPI [Caterpillar] to provide engineering or design services involving the crawler cranes in question in the lawsuit."  Amended Joint Pretrial Order, Agreed Stipulation of Fact (21) at p. 22.  *See also* *id.* stipulation (22) ("Davis had no contracts personally with anyone to provide any services, materials, equipment, or labor involving the crawler cranes in question in the lawsuit").

In his deposition testimony, Davis similarly could not recall any such agreement:

> Q:    Did you have any personal agreement with Mr. Rusk?

---

> Q:    So he had done some work at Manitowoc?
> A:    That's correct.
> Q:    On crawler cranes?
> A:    That's correct.
> Q:    But not the crawler cranes that you are building at Favco?
> A:    Not the ones that I'm building right now.
> . . .
> Q:    And I guess you thought Mr. Rusk might have some information or some ability to help draw the plans and specs or designs or whatever you call it?
> A:    Mr. Rusk was – would be able to –
> Q:    For Favco USA?
> A:    He would be able to listen to me and do what I asked him to do.
> Q:    Okay.  While you were at Favco USA?
> A:    Yes.

Davis Depo. at 253-54 (emphasis added), FFC USA MSJ Ex. A.

11

CibPDF - www.fineba.com

A:    I might have.

. . .

Q:    Favco has got nothing in its possession, that I know of, where there's a deal between you and Mr. Rusk, I don't believe.

A:    Okay.

Q:    Do you have such a document?

A:    No.

. . .

Q:    Well, did he contract with you personally?

A:    I can't recall, Gary.

Q:    So he may not have contracted with you?

A:    He may not have, no.

. . .

Q:    <u>As far as you know, the only work that Mr. Rusk or Rusk Engineering was to do was for Favco USA?</u>

A:    <u>As far as I can recall.</u>

Q:    <u>And to be paid for by Favco USA?</u>

A:    <u>As far as I can recall, yes</u>.

. . .

Q:    Have you paid Mr. Rusk anything personally?

A:    No.

12

Davis Depo. at 56-59, FFC USA MSJ Ex. A (emphasis added).[8]  *See also* Davis Depo. at 41 (Rusk hired after September 1997); 197-98.  The "new" evidence that Rusk produced drawings prior to Davis' becoming president and managing director of FFC USA thus contradicts Davis' prior deposition testimony.  If Rusk did do any work for Manitex, it obviously was not for Davis personally and has no relevance here.

Further, Davis' own deposition contradicts that any work Rusk did was done prior to Davis becoming President and Managing Director of Favco USA.  Davis unequivocally stated that all work done by Rusk on the crawler cranes was after Davis became President and Managing Director of Favco USA.  Davis Depo. at 68-69 (FFC USA MSJ Ex. A).

    4.5    *Davis did not reduce his invention to practice by the time he joined FFC USA.*–Davis asserts in his motion for reconsideration that he reduced the crawler cranes to practice prior to joining FFC USA.  Motion for Reconsideration at 9.  This is simply not correct.  Reduction to practice has a definite meaning in terms of patent law.  Reduction to practice occurs when either of two events happen: 1) when an inventor files

---

[8] In regard specifically to Rusk, Davis admits:

> An agreement was entered into between J.A. Rusk Engineering, ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 ton and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998.  The services provided by Rusk under this contract were to belong to Favco USA.  The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA.  Rusk was paid for all work done under this contract by Favco USA.

Amended Joint Pretrial Order ¶ 6(14).

13

a patent application claiming the invention; or 2) when an inventor makes a physical embodiment of the invention and demonstrates that the physical embodiment is capable of achieving its intended purpose. *Hazeltine Corp. v. United States,* 820 F.2d 1190, 1196 (Fed. Cir. 1987) ("the filing of a patent application is a constructive reduction to practice"); *UMC Electronics Co. v. United States,* 816 F.2d 647, 653 (Fed. Cir. 1987), *cert. den.,* 484 U.S. 1025 (1988) ("[T]here cannot be a reduction to practice of the invention . . . without a physical embodiment which includes all limitations of the claim"); *Scott v. Finney,* 34 F.3d 1058, 1061 (Fed. Cir. 1994). The patent application was not filed until April 5, 1998, after Davis became president and managing director of FFC USA. Amended Joint Pretrial Order, agreed stipulation of fact (23) at p. 22. Also, Davis admits he had no models prior to coming to Favco USA. (See § 4.4.2). Davis clearly did not reduce the crawler cranes to practice prior to joining FFC USA.

   4.6 *Davis newly produced evidence, if anything, makes the '252 patent invalid.* As discussed in Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment § 4.3, Davis' newly produced evidence – if true – would, if anything, make his patent invalid, leaving FFC USA free to manufacture the cranes at issue. Davis cannot both assert the validity of his patent and at the same time defend against FFC USA's challenge based on evidence that would invalidate the patent. Moreover, if Davis had reduced the crawler cranes to practice more than a year prior to filing the '252 patent application and showed this to others, he was under a duty of good faith and candor to tell the Patent and Trademark Office about any such disclosure or use of the invention. See 37 C.F.R. 1.56 (2001) (detailing the duty of candor). No such disclosure was made.

4.7    *Davis' "new" evidence thus clearly contradicts extended deposition testimony and admissions in the pretrial order.*  For the reasons cited above, Davis' "new" evidence contradicts extended deposition testimony, other evidence, and his stipulations in the Amended Joint Pretrial Order.  Davis provides no explanation for the inconsistency: he points to no newly discovered evidence, nor does he attempt to excuse his prior contradictory testimony.  Davis' attempts to distinguish *Doe v. Dallas Independent School Dist.*, 220 F.3d 380, 385-87 (5th Cir. 2000), *cert. den.,* 148 L.Ed.2d 667 (2001) – even if supported by the case law – therefore fail.

5.    *The "writings" provision 35 U.S.C. § 261 does not defeat summary judgment.*–FFC USA has not argued that Davis has already assigned his patent to FFC USA, merely that is obligated to do so.  Section 261 does not address this situation.

6.    *Davis does not contest the applicability of the statute of frauds to preclude reliance on the draft 1997 Shareholders Agreement.*  Davis in his motion for reconsideration does not challenge the applicability of the statute of frauds, nor does he re-urge promissory estoppel as a defense to application of that statute.

7.    *Objections to evidence.*  The Davis Parties' maintain their objections to Davis' summary judgment "evidence" as stated in Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment § 8.  Further, Davis' reference at p. 4 of his motion for reconsideration to statements by attorney Dennis Sanchez is hearsay and not part of the summary judgment evidence.

15

8.   *Motion untimely.*   Assuming *arguendo* that the Davis parties' motion for reconsideration constitutes a motion under Federal Rule of Civil Procedure 59(e), it is untimely.  Such motions must be filed within 10 days.

9.   *Conclusion.*  Davis' motion for reconsideration does not have merit.  Indeed, his "new" arguments contradict prior stipulations and extensive deposition testimony.  For these and other reasons expressed herein, Davis' motion for reconsideration should be denied.

Wherefore, premises considered, FFC USA requests that the plaintiffs' Motion for Reconsideration be denied. The FFC USA requests such other and further relief to which it may be entitled, at law or in equity.

Respectfully submitted,

Gary Gurwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

**Attorney in charge for defendant**

**Of counsel:**

Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

16

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

### Certificate of Service

I certify that on March 28, 2001, a true and correct copy of the foregoing document was sent to all counsel of record, as follows:

| Attorney: | For: | Served by: |
|---|---|---|
| Ernesto Gamez<br>Victor Quintanilla<br>LAW OFFICES OF ERNEST GAMEZ, P.C.<br>777 E. Harrison St.<br>Brownsville, Tx 78520 | plaintiff | certified mail, return receipt requested |

Gary Gurwitz

17