73

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

APR 1 2 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| DANIEL E. DAVIS | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES | § | |
| USA, INC., FAVELLE FAVCO CRANES | § | |
| (M) SDN BHD | § | |

| | | |
|---|---|---|
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| DANIEL E. DAVIS, DAVISCO INC. and | § | |
| COBURN INTERNATIONAL | § | |
| | § | CIVIL ACTION NO. B-00-184 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| FAVELLE FAVCO CRANES | § | |
| USA, INC., FAVELLE FAVCO CRANES | § | |
| (M) SDN BHD, and FAVELLE FAVCO | § | |
| HOLDINGS SDN BHD | § | |

**DAVIS' REPLY TO DEFENDANTS' RESPONSE TO
MOTION FOR RECONSIDERATION
AND
MOTION FOR LEAVE TO TAKE DEPOSITION OF DENNIS SANCHEZ**

Plaintiff Davis respectfully files his Reply To Defendants' Response To Motion For

Reconsideration, and Motion for Leave to Take the Deposition of Dennis Sanchez.

1

## NOTICE TO THE COURT

In support of this Reply, Plaintiffs rely on several exhibits which were attached as exhibits to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights previously filed on February 22, 2001 and Plaintiffs Motion for Reconsideration filed on March 19, 2001. Plaintiffs hereby make reference to these said exhibits and do not attach same herein to avoid unnecessary duplication of exhibits already on file with this Honorable Court. (i.e. Exhibits A-R).

### I. SUMMARY

Davis presented no "new" evidence in his motion for reconsideration. The evidence relied upon in the Motion for Reconsideration was the same evidence that was before the court on the cross motions for summary judgment.

Defendants and their counsel continue to misstate the facts, when they know the statements to be untrue. Further, Defendants rely upon inapplicable law. Particularly, Defendants have misled, and continue to mislead, this court by asserting facts known to be untrue:

(1) *Davis' relationship with Manitex is irrelevant*: Rejected by **Exhibit M**, Affidavit of James Alan Rusk, dated February 19, 2001; **Exhibit R**, Drawings made by James Rusk for Manitex, dated February 20, 1997; and **Exhibit S**, Letter from Joe E. Conway, General Manager of Manitex, to Davis assigning the engineering work completed in 1997 to Davis.

(2) *Davis brought nothing with him to FFC*: Rejected by **Davis Deposition, 35:15-37:4.** Defendants' counsel asked the wrong questions at Davis' deposition, and then mislead this court with respect to the scope of those answers. Defendants counsel repeatedly asked what Davis brought from Manitowoc, and Manitowoc only. Davis answered "nothing" and continues to answer "nothing."

(3) *FFC spent over $10 million in designing, developing, and manufacturing the crawler*

2

*cranes*: Rejected by **Exhibit T**, fax letter dated February 10, 1999 from Mac Boon to Davis detailing all money expended by FFC USA totaling $8 million, including buying the Harlingen plant and all monthly expenses.

(4) *Davis did not have a patentable design when he began work for FFC USA*: Rejected by **Exhibits A and B**, Robey testimoney; **Exhibit K**, Affidavit of Daniel E. Davis dated February 21, 2001; **Exhibit M**, Affidavit of James Alan Rusk, dated February 19, 2001; **Exhibit N**, Affidavit of Willie C. Jones, dated February 17, 2001; **Exhibits P, Q and R**, 1997 drawing by Rusk.

(5) *Davis' rights came solely from the Shareholders Agreement*: Davis' rights came from the Constitution of the United States, Art. I, § 8, Cl 8 which states "To promote the progress of science and useful arts, by securing for limited times to authors and inventors [not companies] the exclusive right to their respective writings and discoveries."

(6) *The "writings" provision of 35 USC § 261 is not relevant to whether Davis has a duty to assign the patent to FFC*: Since a patent is a creature of federal statutory law, it may be transferred only in the manner provided by such law. *See* Lipscomb, Walker on Patents § 19:4, at 333 (3d ed. 1986). An assignment of a patent must be in writing. 35 U.S.C. § 261. The relationship between the parties in the present case was defined by an agreement, the Employment Contract (**Exhibit "C"**). Where a party's own agreement defines its fiduciary relationship with another and the agreement is silent of a duty, then that duty is not within the scope of the fiduciary relationship. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App. 1984). As a matter of law, Davis had no fiduciary duty to assign his prior developed crawler crane designs or patent.

(7) *FFC was in the business of crawler cranes*: Rejected by Mac 11/8/99 testimony (**Exhibit L** at 102:12-103:12), Davis Affidavit (**Exhibit K** at p. 3), and Robey 11/8/99 testimony (**Exhibit L** at 33:21-37:4). FFC was not in the business of crawler cranes. Daniel Davis brought his previously developed crawler cranes to FFC/USA when he was hired. Thus, pursuant to *Davis v. Alwac Int'l Inc.*, 369 S.W.2d 797 (Tex. Civ.App 1963), the case relied upon in the March 8, 2001 order, even if the Davis crawler cranes were developed after Davis was hired,

3

which they were not, crawler cranes were not part of FFC's business, and no assignment was required.

(8) *This court has already considered – and rejected – most of Davis' evidence and arguments*: In its order entered March 8, 2001, this court considered only Davis' deposition testimony, p. 35, line 15 through p. 37, line 4 and Exh.29, as contorted and misstated by Defendants' counsel, to mean Davis brought nothing from anywhere concerning crawler cranes when he came to FFC. A clear reading of the deposition testimony requires that the questions were limited to what was brought from Manitowoc, and only Manitowoc. This court should not allow defendants' counsel to belie his own futile questions to misrepresent facts.

Attorney Sanchez' deposition is needed to finally resolve the issues before this court. Attorney Sanchez has factual, non-privileged, information that no other person has. Attorney Sanchez has information concerning the negotiation and finalization of the Shareholders' Agreement (**Exhibit D**), Davis' request to be paid a royalty by FFC, the negotiation of a new License Agreement between Davis and FFC USA (**Exhibit O**), the issues to be incorporated in the New Shareholders' Agreement for FFC USA (**Exhibit E**), and facts concerning the ownership of the patent. Attorney Sanchez is the single source for much of the identified information.

*II.*

**THE INACCURACIES PRESENTED IN DEFENDANTS RESPONSE**

**A. Manitex cannot be irrelevant when Davis worked with Manitex and Rusk to develop the crawler cranes before Davis worked for FFC**

Defendants rely on the misstated facts that: "The new emphasis on Manitex—for whom Davis did not work—is irrelevant." (Defendants Response, p.9, § 4.4.3). "It didn't matter who he worked for, he brought nothing with him." (Defendants Response, p.9, § 4.4.3). Defendants' counsel continues to blatantly mislead this court, knowing otherwise. Manitex worked with Davis and James Rusk before Davis worked with FFC. **Exhibit M**, Affidavit of James Alan Rusk, dated February 19, 2001; **Exhibit R**, Drawings made by James Rusk and Manitex, dated February 20, 1997. Further, all the work done by Davis, Manitex and Rusk was assigned by

4

CutePDF · www.fayju.com

Manitex to Davis. **Exhibit S**, Letter from Joe E. Conway to Davis.

## B. FFC spent only $500,000 to build 4 prototypes of the Davis Crawler Cranes

Defendants represent to the court: "Indeed, some $10 million was spent by or on behalf of FFC USA for development of the cranes." (Defendants Response, p. 3, § 4.1; p.4, § 4.2). Not so – the record is clear that as of February 10, 1999, FFC only contributed $500 thousand toward all 4 prototype cranes which were built. **Exhibit T**, fax letter dated February 10, 1999 from Mac Boon detailing all money expended by FFC USA totaling $8 million, including buying the Harlingen plant and all monthly expenses. The representation to this court that FFC spent $10 million for development of the crawler cranes is only a fiction in the mind of Defendants' counsel. Defendants' counsel continues to grossly mislead this court.

## C. Davis had a patentable design and a full engineering report on the Davis Crawler Cranes when he came to FFC

Again, defendants misstate that "Davis did not have a patentable design when he began work for FFC USA." Thus, an idea is not patentable. (Defendants Response, p.3, § 4.1; p.6, § 4.4.1). The Supreme Court differs with Defendants and their counsel. "The primary meaning of the word 'invention' in the Patent Act unquestionably refers to the inventor's *conception* rather than to a physical embodiment of that idea. The statute does not contain any express requirement that an invention must be reduced to practice before it can be patented. Neither the statutory definition of the term in § 100 n8 nor the basic conditions for obtaining a patent set forth in § 101 n9 make any mention of 'reduction to practice.'" *Pfaff v. Wells Electronics, Inc.*, 525 U.S. 55, 60, 119 S. Ct. 304, 308 (1999). Clearly, Davis had a patentable invention before he came to FFC, because he had "conceived" the idea. **Exhibits A and B**, Robey testimony; **Exhibit K,** Affidavit of Daniel E. Davis dated February 21, 2001; **Exhibit M,** Affidavit of James Alan Rusk, dated February 19, 2001; **Exhibit N,** Affidavit of Willie C. Jones, dated February 17, 2001; **Exhibits P, Q and R**, 1997 drawing by Rusk.

## D. Davis had his Crawler Cranes when he came to FFC

Yet again, Defendants misstated to the court that "Davis in his deposition testified that he brought nothing with him from his former employer Manitowoc (or anyone else)..." (Defendants Response, p.8, § 4.4.3). "It didn't matter who he worked for, he brought nothing with him."

CVisPDF - www.lavia.com

(Defendants Response, p.9, § 4.4.3). Defendants counsel asked the wrong questions at Davis' deposition, and then mislead this court with respect to the scope of those answers. Defendants counsel repeatedly asked what Davis brought from Manitowoc, and Manitowoc only. Davis answered "nothing" and continues to answer "nothing," because that's the truth. **Davis Deposition, 35:15-37:4**. Knowing he asked the wrong questions, defendants' counsel now wants to misrepresent his questions to get the answer he needs. This court should not allow defendants' counsel to contort his own futile questions to fabricate facts that do not exist.

### E. Davis' rights came from the Constitution and the Patent Laws

Additionally, Defendants misstate that Davis' rights came solely from the Shareholders Agreement which this court held unenforceable. (Defendants Response, p.3, § 4.1). This position is not only untrue, but is also  legally absurd.

> "The general rule is that an individual owns the patent rights in the subject matter of which he is an inventor even though he conceived of the subject matter or reduced it to practice during the course of employment. *Chisum, supra* § 22.03. The "mere existence of an employer-employee relationship does not of itself entitle the employer to an assignment of any inventions which the employee devises during the employment." *Aetna-Standard, supra*, at 69 (citing *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 53 S. Ct. 554, 77 L. Ed. 1114 (1933)); *Marshall v. Colgate-Palmolive-Peet Co.*, 175 F.2d 215, 217 (3d Cir. 1949). This is true even where the employee uses the time and facilities of the employer. *Colgate, supra*, at 217. Even where "one is employed . . . to work in a particular line in which he is an expert, there is no inference that inventions which he makes while working belong to the employer." *Mosser Industries Inc. v. Hagar*, 200 U.S.P.Q. (BNA) 608, 612 (C.P. Lehigh 1978) (quoting Restatement (Second) of Agency § 397, comment a)." *University Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1222, 20 U.S.P.Q.2D 1401 (D. Pa. 1991).

Further, Davis' rights came from the Constitution of the United States, Art. I, § 8, Cl 8 which states "To promote the progress of science and useful arts, by securing for limited times to authors and inventors [not companies] the exclusive right to their respective writings and discoveries." The Patent Laws (35 USC §1, *et seq*.) were founded on the Constitution.

6

**F. FFC's Employment Agreement defines the fiduciary relationship with Davis, and does not require assignment**

Defendants' mistakenly propose that "The 'writings' provision of 35 USC § 261 simply is not relevant to whether Davis has a duty to assign the patent to FFC USA." (Defendants Response, p.2, § 2). Again – not so.

> "Since a patent is a creature of federal statutory law, it may be transferred only in the manner provided by such law. *See* E. Lipscomb, Walker on Patents § 19:4, at 333 (3d ed. 1986). An assignment of a patent must be in writing. 35 U.S.C. § 261. The writing must show a clear and unmistakable intent to transfer ownership, *McClaskey v. Harbison-Walker Refractories Co.*, 138 F.2d 493 (3d Cir. 1943), and must be executed by the patentee or by the patentee's assigns or legal representatives. Lipscomb, *supra*, § 19:7. *University Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1220, 20 U.S.P.Q.2D 1401 (D. Pa. 1991).

The relationship between the parties in the present case was defined by an agreement, the Employment Contract (**Exhibit "C"**). Where a party's own agreement defines its fiduciary relationship with another and the agreement is silent of a duty, then that duty is not within the scope of the fiduciary relationship. *Fuqua v. Taylor*, 683 S.W.2d 735, 737 (Tex.App. 1984). Simply stated, a party is held to its own agreement, and cannot later expand the scope of the clear language of its prior agreement. As a matter of law, Davis had no fiduciary duty to assign his prior developed crawler crane designs or patent.

The general rule is that an individual owns the patent rights in the subject matter of which he is an inventor even though he conceived of the subject matter or reduced it to practice during the course of employment. *Chisum, supra* § 22.03. The "mere existence of an employer-employee relationship does not of itself entitle the employer to an assignment of any inventions which the employee devises during the employment." *Aetna-Standard, supra*, at 69 (citing *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 53 S. Ct. 554, 77 L. Ed. 1114 (1933)); *Marshall v. Colgate-Palmolive-Peet Co.*, 175 F.2d 215, 217 (3d Cir. 1949). This is true even where the employee uses the time and facilities of the employer. *Colgate, supra*, at 217. Even where "one is employed . . . to work in a particular line in which he is an expert, there is no inference that inventions which he makes while working belong to the employer." *Mosser*

7

*Industries Inc. v. Hagar*, 200 U.S.P.Q. (BNA) 608, 612 (C.P. Lehigh 1978) (quoting Restatement (Second) of Agency § 397, comment a).

To this general rule there are two exceptions. First, an employer owns an employee's inventions if the employee is a party to a contract to that effect. Second, where an employee is hired to invent something or solve a particular problem, the property of the inventions of the employee related thereto belongs to the employer. *Standard Parts Co. v. Peck*, 264 U.S. 52, 68 L. Ed. 560, 44 S. Ct. 239 (1924); *Colgate, supra*, at 217; *Quaker State Oil Refining Co. v. Talbot*, 315 Pa. 517, 174 A. 99 (1936); *Aetna Standard*, 343 Pa. Super. at 74. *See also Chisum, supra*, § 22.03.

> These basic principles were discussed by the Supreme Court in 1933 and have remained substantially unchanged:
>
> One employed to make an invention, who succeeds, during his term of service, in accomplishing that task, is bound to assign to his employer any patent obtained. The reason is that he has only produced that which he was employed to invent. His invention is the precise subject of the contract of employment. A term of the agreement necessarily is that what he is paid to produce belongs to his paymaster. On the other hand, if the employment be general, albeit it covers a field of labor and effort in the performance of which the employee conceived the invention for which he obtained a patent, the contract is not so broadly construed as to require an assignment of the patent. . . . [citing *Dubilier*, 289 U.S. at 187-89].
> *University Patents, Inc. v. Kligman*, 762 F. Supp. 1212, 1220, 20 U.S.P.Q.2D 1401 (D. Pa. 1991).

## G. FFC is not in the business of the crawler cranes, and as a matter of law, assignment is not appropriate

Still further, Defendants propose "If FFC USA is not in the 'business' of the crawler cranes at issue, there was no reason for it to spend over $10 million in designing, developing, and manufacturing them." (Defendants Response, p.4, § 4.2). FFC was not in the business of crawler cranes. Mac 11/8/99 testimony (**Exhibit L** at 102:12-103:12), Davis Affidavit (**Exhibit K** at p. 3), and Robey 11/8/99 testimony (**Exhibit L** at 33:21-37:4). Daniel Davis brought his previously developed crawler cranes to FFC/USA when he was hired. Thus, pursuant to *Davis v. Alwac Int'l Inc.*, 369 S.W.2d 797 (Tex. Civ.App 1963), the case relied upon in the March 8, 2001 order, even

8

if the Davis crawler cranes were developed after Davis was hired, which they were not, crawler cranes were not part of FFC's business, and no assignment was required.

**H. *The only summary judgment evidence this court considered for Davis was Davis' deposition testimony, p. 35, line 15 through p. 37, line 4 and Exh. 29 as misstated by Defendants' counsel***

It is not true that "Indeed, this court has already considered – and rejected – most of Davis' 'evidence' and arguments…" (Defendants Response, p.3, § 4). In its order entered March 8, 2001, this court considered only Davis' deposition testimony, p. 35, line 15 through p. 37, line 4 and Exh.29, as contorted and misstated by Defendants' counsel, to mean Davis brought nothing from anywhere concerning crawler cranes when he came to FFC. A clear reading of the deposition testimony requires that the questions were limited to what was brought from Manitowoc, and only Manitowoc. This court should not allow defendants' counsel to belie his own futile questions to misrepresent facts.

**III.**

*The Shareholders' Agreement was relied upon by the FFC Parties
and they cannot now refute its existance*

*Attached as **Exhibit U** is a fax letter from Tan Teong Guan to Danny Davis where the FFC Parties rely upon the very Shareholders Agreement they now try to repudiate. Tan states:*

> *According to the shareholders' agreement, the shareholding should be, FFC Holding (90%) and yourself (10%). However, based upon the Organization Meeting Minutes of 4 September 1997, the shareholders are FFC Holding (90%) and Coburn International Limited (10%) ("Coburn"). Please clarify if you want to place you [sic] shares in Coburn? ... Please clarify the above so we can proceed to finalize the agreement, i.e., ... Shareholders' Agreement.*

The only issue outstanding was who Davis wanted his stock issued to. All other issues were resolved. A meeting of the minds is clearly demonstrated in Tan's fax letter to Davis. **Exhibit U.** Yet Defendants represent to this court that they did not have an agreement. Defendants forthrightness to this court should be scrutinized.

9

## IV.

*The summary judgment standard requires that this court consider Davis' Affidavit, Davis' Deposition Testimony, Rusk's Affidavit, Rusk's 2/20/97 Proposal, Rusk's Drawings, Robey's Deposition Testimony, Robey's Report, Robey's 11/8/99 Testimony, The Employment Contract and Boon's 11/8/99 Testimony*

The central dispute in this case concerns whether a genuine issue exists as to the question of ownership of U.S. Patent No. 6,003,252 ("the '252 Patent") and the related technology. Davis contends that a fair reading of his deposition is consistent and undisputed when considered in light of his affidavit (**Exhibit "K"**). Further, Davis' deposition and affidavit (**Exhibit "K"**) are consistent with and corroborate Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10), the Employment Contract (**Exhibit "C"**) and Mac Boon's 11/8/99 testimony (**Exhibit "L"** at 93:4-94:14 and 102:12-103:12) concerning patent ownership and shop rights. Such undisputed facts require summary judgment for Davis, not FFC/USA.

In summary, the undisputed evidence disregarded or not considered by the Court in granting defendants summary judgment is:

| EXHIBIT | DESCRIPTION OF EVIDENCE |
|---|---|
| Davis deposition | Davis brought nothing with him from Manitowoc [35:15-37:4]. Rusk reduced Davis' ideas to drawings [42:21-23; 44:12-18; 45:3-10; 45:15-22] before going to work for FFC/USA, although when the drawings were made was not asked in the deposition. |
| Davis Affidavit (**Exhibit "K"**) | FFC did not manufacture crawler cranes [p. 3]. Davis received 10% of FFC/USA and a job as president for a license granted to FFC/USA to use his crawler crane technology [p. 3]. The Davis crawler cranes were discussed with Robey and Rusk before Davis worked for FFC/USA [p. 3]. The crawler crane designs were reduced to drawings with the assistance of Rusk, a professional engineer, before Davis worked for FFC/USA [p. 3]. |

10

| | |
|---|---|
| Rusk Affidavit<br>(**Exhibit "M"**) | In 1996, Rusk worked for Davis doing the engineering work to confirm Davis' crane concepts and designs. Rusk acquired information from Jim Hopkins at Caterpillar and Caterpillar engineers to confirm the Davis crane designs. In February 1997, Rusk completed the engineering work which included mechanical, hydraulic and electrical engineering work confirmed by drawings. Some of the drawings created by Rusk in February 1997 were included in the patent that was granted to Davis. |
| Rusk 2/20/97<br>Proposal<br>(**Attachment to Exhibit "M"**) | "Caterpillar-Manitex Crawler Proposal" dated 2/20/97 includes specification comparisons for the vehicle, carrier assembly, upper body, boom and jib; general performance specifications; load charts; boom derivation charts; a description of the production work to be done; suggested equipment list and estimated costs; estimated development costs; engineering drawings; function description and relief valve settings; a master schedule from implementing the mechanical interface through assembly drawings and testing; photos of Caterpillar components to be adapted. |
| Rusk Drawings<br>(**Exhibits "P," "Q" and "R"**) | Comparing the likeness of drawings made by Rusk in 1996-1997 (before Davis was employed by FFC/USA) to the drawings in the patent that issued to Davis. |
| Robey Deposition<br>(**Exhibit "B"**), | Davis made detailed sketches of his crawler crane design before working for FFC/USA [25:6-28-25]. Davis was the driving force directing the engineers, because engineers respond to specific criteria and Davis provided that criteria [97:13-100:1]. |
| Robey Report<br>(**Exhibit "A"**), | Manitowoc and Manitex refused to embrace Davis' idea of putting a hydraulic crane on a crawler. "Undeterred, Davis pursued the concept independently." During a meeting in the summer of 1995, Davis discussed details of his crawler crane design with Robey. Robey's Report was discussed in and attached to his deposition as Exhibit 2. |

| | |
|---|---|
| Robey 11/8/99 testimony (**Exhibit "L"**) | Davis had "pretty well flushed out" his idea by 1995 and had consulted with Jim Rusk in doing so [31:20-33:5].<br>FFC only made tower-type cranes, and did not make crawler cranes until after Davis began working for them. [33:21-37:4].<br>Defendants' attorney knew Manitowoc and Manitex were different companies [48:10-21], but restricted the questioning to Manitowoc in Davis' deposition.<br>The crawler cranes had been developed before the actual load testing was done to confirm specific lifting capabilities [51:18-52:10]. |
| The Employment Contract (**Exhibit "C"**) | The Employment Contract dated 6/23/97 is silent with respect to the ownership of patents, copyrights or technical information as well as the obligation to assign anything. |
| Mac 11/8/99 testimony (**Exhibit "L"**) | Mac knew that Davis had the "patent or concept" before signing the Employment Agreement. Further, Mac knew the Employment Agreement did not state that inventions by Davis were to belong to FFC/USA [93:4-94:14].<br>**Q**: "And in that [employment] agreement, did it address whose patent or concept that belonged to; to the company or to Danny Davis? Did it address it? **A**: At that time it was not addressed or discussed because the company funded every bit of development [94:4-8].<br>FFC has sold over 1,000 cranes, but only 3 were crawler cranes and those 3 were Davis' design [102:12-103:12]. |
| **Exhibit T** fax letter dated February 10, 1999 from Mac Boon to Davis | Provides an itemization of all money expended by FFC USA totaling $8 million, including among other things buying the Harlingen plant and all monthly expenses |

12

| Exhibit U<br>fax letter from Tan<br>Teong Guan to<br>Danny Davis | The only issue outstanding was who Davis wanted his stock issued to,<br>Coburn or Davis. All other issues were resolved. A meeting of the minds<br>is clearly demonstrated in Tan's fax letter to Davis. |
|---|---|
| *Exhibit S*<br>*Letter assigning*<br>*rights to Davis from*<br>*Manitex* | *Manitex assignment of rights to Davis said assignment not made by*<br>*Manitowoc.* |

The general rule for considering a motion for summary judgment is that a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corporation v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980); *Camerlin v. New York Central R. Co.*, 199 F.2d 698, 701 (1st Cir. 1952). "An opposing party's affidavit should be considered although it differs from or varies his evidence as given by deposition or another affidavit and the two in conjunction may disclose an issue of credibility." See, 6 Moore's Federal Practice P 56-15(4), p. 56-522 (2d Ed.); *Guarantee Insurance Agency Co. v. Mid-Continental Realty Corp.*, 57 F.R.D. 555, 563 (D.Ill. 1972). Thus, a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition.

Despite this general rule, the Court relied on *Doe v. Dallas I.S.D.*, 220 F.3d 380, 386 5th Cir. 2000) for the proposition that a district court may grant summary judgment where an issue raised by affidavit is clearly inconsistent with earlier deposition testimony. In that case, a third-grade teacher and Boy Scout leader sexually molested numerous male students. Two discrimination suits were filed and consolidated. Defendants filed motions for summary judgment, which were granted by the district court. The district court relied on the plaintiff's 1988 affidavit and his 1996 deposition, but disregarded his conflicting 1999 affidavit. Under these facts, it was held that the district court did not incorrectly conclude that plaintiffs' evidence failed to create a genuine issue of material fact as to defendant school principal's deliberate indifference as to knowledge of the discrimination.

13

*V.*

## Motion for Leave To Take deposition of Dennis Sanchez

Additional evidence will supplement the evidence before the court. Particularly, Attorney Dennis Sanchez was hired by Davis to be FFC USA's corporate attorney and to form FFC/USA based upon the Shareholder's Agreement. (**Exhibit "D"**). Attorney Sanchez had extensive conversations with Davis, Mac, Yee and Cheam concerning the relationship of the parties. Attorney Sanchez has factual, non-privileged, information that no other person has. Attorney Sanchez has information concerning the negotiation and finalization of the Shareholders' Agreement (**Exhibit D**), Davis' request to be paid a royalty by FFC, the negotiation of a new License Agreement between Davis and FFC USA (**Exhibit O**), the issues to be incorporated in the New Shareholders' Agreement for FFC USA (**Exhibit E**), and facts concerning the ownership of the patent. Attorney Sanchez is the single source for much of the identified information.

Further, Attorney Sanchez would be able to coordinate the facts among Rusk's affidavit (**Exhibit "M"**), Rusk's 2/20/97 proposal (**Attachment to Exhibit "M"**), Rusk's drawings (**Exhibits "P," "Q" and "R"**), Robey's deposition testimony (**Exhibit "B"** at 25:6-28-25; 97:13-100:1), Robey's report (**Exhibit "A"**), Robey's 11/8/99 testimony (**Exhibit "L"** at 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10) and Mac Boon's 11/8/99 testimony (**Exhibit "L"** at 93:4-94:14 and 102:12-103:12). Sanchez' testimony will confirm and verify the evidence Davis has submitted to this court.

## VI.

### *Conclusion*

Defendants and their counsel continue to misstate the facts, when they know the statements to be untrue. Particularly, Defendants have misled, and continue to mislead, this court by making assertions known to be untrue. The relevant facts remain undisputed in favor of summary judgment for Davis. Attorney Sanchez' deposition is needed to finally resolve the issues before this court. Attorney Sanchez has factual, non-privileged, information that no other person has. Summary judgment should have been in favor of Davis, not FFC/USA. In the alternative, questions of fact exist and Defendants' summary judgment can not be sustained.

Modification of the March 8, 2001 order is respectfully requested.

A proposed order was previously submitted.

Respectfully submitted,

**OF COUNSEL**
**LAW OFFICES OF**
**ERNESTO GAMEZ, JR., P.C.**
*777 E. Harrison Street*
*Brownsville, Texas   78520*
*TEL/(956) 541-3820*
*FAX/(956) 541-7694*

**ERNESTO GAMEZ, JR.**
**SBOT NO.** *07606600*
**FED. ID NO.** *8645*
**Attorney-in-Charge for Plaintiffs**

**VICTOR QUINTANILLA**
**SBOT NO.** *00786181*
**FED. ID NO.** *16073 ***

**\* (Signed with Permission of**
**Attorney-in-Charge)**

### CERTIFICATE OF SERVICE

*On this the 12th day of April, 2001 I certify that a true and correct copy of this document was served via certified mail on the Hon. Gary Gurwitz lead attorney for the Defendants.*

*Victor Quintanilla*

15

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL, LTD** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

# EXHIBIT "S"

Joe E. Conway
Executive Vice President
& General Manager

February 12, 1999

A Subsidiary of
The Manitowoc Company, Inc.

Mr. Danny E. Davis
President
Favelle Favco Cranes (USA) Inc.
P. O. Box 3049
Harlingen, TX 78551-3049

Subject: Supplier Agreement

Dear Mr. Davis:

Pursuant to previous conversations, I am formalizing these discussions and agreements as respect to the product development of certain products that Danny E. Davis (Licensor) has initiated with Caterpillar.

These products include initial boom design and carrier tie-in design concepts that Manitex originated by contract with Mr. James Rusk, Rusk Engineering, and that were subsequently released to Danny E. Davis by release of said confidentiality agreements between Manitex and James Rusk.

The products involved are Manitex booms (9 ton. 28 ton & 38 ton or any future boom designs) for mounting on Caterpillar's all terrain rubber tire forklift and Caterpillar's variable truck carrier—specifically the 9 ton boom for the forklift and 28 ton and 38 ton booms for the variable truck carrier.

Manitex. in exchange for transferring said technology developed by it through its contract with James Rusk. hereby agrees to continue whatever development/design work is required to make the product development between Danny E. Davis (Licensor) and Caterpillar (or any other Licensee) reach a successful and expeditious conclusion that will last for an extended time via a successful product launch to a worldwide market.

Additionally. Manitex hereby agrees to provide the manufacturing resources and capacity (via JIT) whatever product quantities the future may hold or a "Special OEM Price" structure in accordance with "Exhibit A", hereby enclosed, in exchange for an exclusive buying agreement from the Licensee as appointed by Danny E. Davis (Licensor).



TELEPHONE: 512-942-3000 ▪ TELEFAX: 512-942-3093 ▪ DID: 512-942-3041
P.O. Box 1609
3000 SOUTH AUSTIN AVENUE (78626)
GEORGETOWN, TEXAS 78627-1609

Mr. Danny E. Davis
February 12, 1999
Page - 2 -


Manitex looks forward to a successful and healthy relationship with both Licensor and Licensee.  If any additional information is required, please contact me directly.

Sincerely,

MANITEX, INC.

Joe E. Conway
Executive Vice President
and General Manager

JEC:cs


Acceptance: _____         Date: _5/18/99_
                  Danny E. Davis (Licensor)


_____ President         Date: _5/18/99_
        Fulvelle Favco (Licensee)

CUSPDF - www.texsu.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and  FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL, LTD** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

# EXHIBIT "T"

# MU_ JBBAH ENGINEERING _M) BHD

(12737~K)

## FAX TRANSMISSION

| | | | |
|---|---|---|---|
| TO : | | ATTN : | Daniel Davis |
| FROM : | Mac Ngan Boon | DATE : | February 10, 1999 |
| NO. OF PAGES : | 2 | FAX NO : | 00 1 956 428 7307 |
| (INCL. THIS FORM) | | OUR REF : | |

NOTE: Please advice us by Fax/Phone if any part of this Transmission failed.

Dear Danny,

Received your fax and your comments and noted. I have given a copy of your fax to Cheam and has asked him to investigate the delay in the response to the licensing and also your comments on the design from Australia. This was a subject of my discussion yesterday with him and Tee.

On the issue of your comments on Favco's Australia payment to creditors, I would like to say that they are compounded by Favco's America drain on the cash flow. America has till todate drain from the Favco's group as follows:-

| | |
|---|---|
| Investment in Harlingen Factory | USD1,000,000 |
| Investment in Plants | USD 700,000 |
| Monthly expenses | USD1,500,000 |
| Cost of Pemex | USD 900,000 |
| Cost of 2 units M440DHS | USD2,000,000 |
| Cost of 2 units 220SK | USD 700,000 |
| Cost of 2 units 120 RX | USD 300,000 |
| Cost Development of Cat Crane | USD 200,000 |
| Cost of Design of Cat Crane | USD 300,000 |
| Others | USD 400,000 |
| Approximately Total | USD8,000,000 |

Favco's Australia and Malaysia are in a bind because of the money incurred based on your promised of sales. But till todate you have not fulfill the part of collections to pay for these work completed nor the second hand cranes bought and sent to you to sell or rent. I have yet to see any contract of your deal with LaQuila, and Lomma nor the rental contracts. I am worried that these details are not properly tied down and people here are concern.

Danny all company survives by cash flow. But in your case it is only cash flow out and no cash inflow todate. I need to know otherwise or you will bring the whole group to its knees.

...page 2/-

Lot 585, 2nd Mile, Jalan Batu Tiga Lama, 41300 Klang, Selangor Darul Ehsan, West Malaysia.
Tel: (603) 3424322, 3424323 Fax: (603) 3424327, 3429816 Telex: MA 39579 MUHIBA

11. FEB. 1999  10:24     MUHIBBAH ENG HQ&BIHYW  3424327     NO.827     P.1

- 2 -

Muhibbah can only support if you also play your part in collection.

Regards,

MAC NGAN BOON

ChilPDF - www.fastio.com

CMxPDF - www.fasta.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL, LTD** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

# EXHIBIT "U"

# MUHIBBAH
### ENGINEERING (M) BHD
(12737-K)

Lot 586 & 579, 2nd Mile,
Jalan Batu Tiga Lama,
41300 Klang,
Selangor Darul Ehsan, Malaysia.
Tel  (603) 3424322, 3424323
Fax  (603) 3424327, 3429816
Telex  MA 39579 MUHIBA

## FACSIMILE TRANSMITTAL SHEET

| TO | FROM: |
|---|---|
| Danny Davis | Tan Teong Guan |

| COMPANY | DATE: |
|---|---|
| Favelle Favco Cranes ( USA ) Inc | January 7, 1998 |

| FAX NUMBER. | TOTAL NO. OF PAGES INCLUDING COVER |
|---|---|
| 001-956 423 9135 | |

| PHONE NUMBER: | C.C |
|---|---|
| 02-9816 2996 | Mr Cheam Tek Siong |
| | Ms Shirleen Lee |

RE.
INCREASE IN PAID UP CAPITAL IN FFC USA

☐ URGENT   ☐ FOR REVIEW   ☐ PLEASE COMMENT   ☐ PLEASE REPLY   ☐ PLEASE RECYCLE

NOTES/COMMENTS:
Dear Danny,

I refer to Shirleen Lee's fax of November 29,1998 and the reply from Sanchez, Whittington, Janis & Zabarte ( "SWJZ" ) and write to inquire about the share capital of FFC USA.

I appreciate if you can advise me on the following:

i)   Has the share capital been increased to USD 500,000? As per the documents prepared by SWJZ, it seems that the share capital is only USD 1,000 (10,000 shares of 10cents each ) and not USD 500,000 as requested in our fax of 29 November 1997.,

ii)  According to the shareholders' agreement, the shareholding should be; FFC Holding (90%) and yourself (10%). However, based on the Organization Meeting Minutes of 4 September 1997, the shareholders are FFC Holding (90%) and Coburn International Limited (10%) ( "Coburn"). Please clarify if you want to place you shares in Coburn? If this is the case, it will be necessary to amend the shareholders meeting accordingly.

iii) Draft-loan agreement between yourself and FFC Malaysia is still pending on the repayment terms and monthly installment. We are proposing a period of not more than 2 years. Please give us your feed back.

Please clarify the above so that we can proceed to finalized the agreement, i.e. Memorandum of Deposit, Loan Agreement, Power of Attorney and Shareholders' Agreement.

Kindly revert back as soon as possible. Thank you

Regards

## CONSENT TO ACTION BY ALL SHAREHOLDERS
## AND DIRECTORS
## OF
## FAVELLE FAVCO CRANES USA, INC.

### November 29, 1997

A Special Meeting of the Shareholders Directors of Favelle Favco Cranes USA, Inc. was held on November 29, 1997.

Consultation was held by and among the shareholders and directors telephonically, and the parties have unanimously agreed to the actions taken at this meeting by their execution to the minutes of the meeting, signifying their consent to all actions taken. Pursuant to the provisions of Article 9.10 Sections A and B of the Texas Business Corporation Act, the undersigned, being all of the shareholders and directors of Favelle Favco Cranes USA, Inc. authorize and ratify the following resolutions and actions:

RESOLVED, that the stockholders of the company and their percentages of interest are as follows:

| Shareholder | Percentage |
|---|---|
| Coburn International, Ltd., a British Virgin Islands company | 10% |
| Favelle Favco Cranes Holdings, SDN BHD, a Malaysian company | 90% |

RESOLVED, that the current outstanding capital of the company is $1,000.00.

RESOLVED, that since the initiation of the company, the company has received advances from Favelle Favco Cranes (M), SDN BHD in the amount of $1,085,400.18, which advances have been made as follows:

| | | |
|---|---|---|
| 08/25/97 | Earnest Money Deposit for Acquisition of Building | $50,000.00 |
| 08/25/97 | Legal Expenses | 1,150.00 |
| 09/30/97 | Money Used For Acquisition of Building | 50,000.00 |
| 09/30/97 | Money Used for Acquisition of Building | 860,000.00 |

| | | |
|---|---|---:|
| 09/30/97 | Money Used to Purchase Equipment from Ritchie Brothers | 47,441.75 |
| 10/30/97 | Working Capital and Start-Up Expenses | 120,500.00 |
| 10/30/97 | Payment to Supplier | 6,308.43 |
| | **TOTAL** | **$1,085,400.18** |

RESOLVED, that the parties desire to provide for additional paid-in capital to the corporation in order to give the company greater financial strength, as well as to make it more creditworthy and better able to secure loans from financial banking institutions. It is

RESOLVED, that Favelle Favco Cranes USA, Inc. hereby acknowledges the advancement of $1,085,400.18 from Favelle Favco Cranes Holdings, SDN BHD.  It is

FURTHER RESOLVED, that Favelle Favco Cranes Holdings, SDN BHD hereby agrees that from the amount of $1,085,400.18 owed to it by Favelle Favco Cranes USA, Inc., the amount of $450,000.00 shall be deducted from such advancement and credited as additional paid-in capital by Favelle Favco Cranes Holdings, SDN BHD.  It is

FURTHER RESOLVED, that the parties hereby agree that the value of the Manitowoc Crane, Model No. 3900, bearing Serial No. 3990, shall be the sum of $50,000, and that said Crane shall be transferred to Favelle Favco Cranes USA, Inc. as additional paid-in capital by Coburn International, Ltd. in the amount of $50,000, which transfer is hereby accepted by the Company.

FURTHER RESOLVED, that after the crediting of the $500,000.00 as additional paid-in capital, the amount of stock held by each company and the amount of consideration paid for such shares shall be as follows:

| Shareholder | Number of Shares Owned | Capital and Additional Paid-In Capital |
|---|---|---|
| Coburn International, Ltd. | 1,000 Shares | $  50,100.00 |
| Favelle Favco Cranes Holdings, SDN BHD | 9,000 Shares | 450,900.00 |
| | | Total   $ 501,000.00 |

FURTHER RESOLVED, that the additional paid in capital of $500,000.00 shall, together with the original capital of $1,000,  be and constitute stated capital of this company.

FURTHER RESOLVED, that after crediting the amount of $500,000.00 toward additional paid-in capital of all issued and outstanding shares, the amount of indebtedness owed

by Favelle Favco Cranes USA, Inc. to Favelle Favco Cranes Holdings, SDN BHD shall be $585,400.18. Said indebtedness shall be reflected by a Promissory Note executed by Daniel E. Davis, President of Favelle Favco Cranes USA, Inc. to Favelle Favco Cranes Holdings, SDN BHD. Said Promissory Note shall be for a term of four (4) years, shall provide for interest at the rate of seven percent (7%) per annum, and shall be due and payable at the end of the four-year term, if not before. It is 7%.

FURTHER RESOLVED, that the president of the Company is hereby directed to carry out the foregoing actions.

There foregoing Consent and actions reflect the agreements and actions of the parties and this Company.

Date: 24/1/98      Daniel E. Davis, Director

Date: 24/1/98      Mac Ngan Boon, Director

Date: 24/1/98      Tee Yin Tiong, Director

Date: 24/1/98      Cheam Tek Siong, Director

SHAREHOLDERS:

Favelle Favco Cranes Holdings, SDN BHD

Date: 24/1/98      By: _____
               Its _____

Coburn International, Ltd.

Date: 24/1/98      By: _____
               Its _____

# MINUTES OF THE ORGANIZATION MEETING OF THE DIRECTORS OF FAVELLE FAVCO CRANES USA, INC.

## September 4, 1997

The organization meeting of directors was held at the Law Offices of Sanchez, Whittington, Janis & Zabarte, L.L.P., on September 4, 1997, at 4:00 p.m.

The following were present: Dennis Sanchez, being the sole director of the corporation, and Daniel E. Davis.

Daniel Davis was appointed chairman of the meeting and Dennis Sanchez was appointed secretary.

The secretary then presented and read to the meeting the waiver of notice of the meeting, subscribed by all the directors named in the articles of incorporation, and it was ordered that it be appended to the minutes of the meeting.

The secretary then presented and read to the meeting a copy of the articles of incorporation and reported that on September 3, 1997, the original thereof was filed in the office of the Secretary of State of the State of Texas and that the Secretary of State issued a formal Certificate of Incorporation to the company on that date.  The secretary presented the Certificate of Incorporation annexed to an approved duplicate of the articles of incorporation as filed and it was ordered appended to the minutes of the meeting.

The secretary then presented to the meeting the resignation of Dennis Sanchez as director of the corporation, and it was ordered that the resignation be filed with the minutes of the meeting.

RESOLVED that the resignation of director as presented to the meeting is hereby approved and accepted and is to take effect at the close of the organization meeting.

The chairman then stated that nominations were in order for election of directors of the corporation to hold office until the

CutePDF - www.favba.com

first annual meeting of shareholders and until their successors shall be elected and shall qualify.

The following persons were nominated:

> Daniel E. Davis
> Mac Ngan Boon
> Tee Yin Tiong
> Cheam Tek Siong

No further nominations being made nominations were closed and a vote was taken.

After the vote had been counted, the chairman declared that the foregoing named nominees were elected directors of the corporation.  The chairman then stated that the newly elected directors would assume their responsibilities immediately.

The secretary then presented a proposed form of bylaws prepared by Dennis .Sanchez, counsel to the corporation.  The proposed bylaws were read to the meeting, considered and upon motion duly made, seconded and carried, were adopted as and for the bylaws of the corporation and ordered appended to the minutes of the meeting.

The chairman of the meeting then called for the election of officers of the corporation.  The following persons were nominated to the office preceding their name:

> president — Daniel E. Davis
>
> secretary - Daniel E. Davis.

No further nominations being made the nominations were closed and the directors proceeded to vote on the nominees.  The chairman announced that the foregoing nominees were elected to the offices set before their respective names.

The secretary submitted to the meeting a seal proposed for use as the corporate seal, a specimen share certificate proposed for use as the corporate certificate for shares, the corporate record book, and the share transfer ledger.  Upon motion duly made, seconded and carried, it was

RESOLVED, that the seal now presented at this meeting, an impression of which is directed to be made in the minutes of this meeting, be and the same hereby is adopted as the seal of the corporation, and further,

RESOLVED, that the specimen share certificate presented to this meeting be and hereby is adopted as the form certificate for shares to be issued to represent shares in the corporation, and further

RESOLVED, that the corporate record book, including the share transfer ledger, be and hereby is adopted as the record book and share transfer ledger of the corporation.

Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that the treasurer of the corporation be and hereby is authorized to pay all charges and expenses incident to or arising out of the organization of the corporation and to reimburse any person who has made any disbursement therefor.

Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that an office of the corporation be established and maintained at in the City of Brownsville, State of Texas, and that meetings of the board of directors from time to time may be held either at the principal office or at such other place as the board of directors shall from time to time order.

Upon motion duly made, seconded and unanimously carried, it was

RESOLVED, that for the purpose of authorizing the corporation to do business in any state, territory or dependency of the United States or any foreign country in which it is necessary or expedient for this corporation to transact business, the proper officers of this corporation are hereby authorized to appoint and substitute all necessary agents or attorneys for

Organization Minutes

service of process, to designate and change the location of all
necessary statutory offices and, under the corporate seal, to
make and file all necessary certificates, reports, powers of
attorney and other instruments as may be required by the laws of
such state, territory, dependency or country to authorize the
corporation to transact business therein.

The chairman then stated that it was desirable to designate
a depository for the funds of the corporation.  Thereupon, on
motion duly made, seconded and unanimously adopted, it was

RESOLVED, that the president be and hereby is authorized to
open a bank account in behalf of the corporation with Nations
Banc, located in Harlingen, Texas, and a resolution for that
purpose on the printed form of said bank was adopted and was
ordered appended to the minutes of this meeting.

The secretary then presented to the meeting a written
proposal from Coburn International Limited, a British Virgin
Islands Company, to purchase a ten-percent (10%) interest in the
corporation, and Favelle Favco Cranes (M), SND, BHD, a Malaysian
company, to purchase a ninety-percent (90%) interest in the
corporation.  Said proposal is dated September 4, 1997, and
addressed to this corporation.

Upon motion duly made, seconded and carried, the said
proposal was ordered filed with the secretary, and he was
requested to append a copy of the proposal to the minutes.

The proposal was taken up for consideration and the
following resolution was on motion unanimously adopted.

WHEREAS, in the judgment of the board of directors the
assets proposed to be transferred to the corporation are
reasonably worth the amount of the consideration demanded
therefor, and that it is in the best interests of this
corporation to accept the said offer as set forth in said
proposal,

NOW, THEREFORE, IT IS RESOLVED, that said offer, as set
forth in said proposal, be and the same hereby is approved and
accepted, and that in accordance with the terms thereof, this
corporation shall as full payment for said property issue to said

---

A true copy of each of the following papers referred to in the foregoing minutes is appended hereto:

Waiver of notice of the meeting
Certificate of Incorporation and articles of incorporation
Resignation of directors
Bylaws
Specimen share certificates
Resolution designated depository of funds

Organization Minutes

## PROPOSAL TO PURCHASE STOCK

TO:   Officers and Directors of FAVELLE FAVCO CRANES USA, INC., a
      Texas corporation

DATE:     September 4, 1997

Gentlemen:

We, the undersigned, do hereby offer to purchase the
following numbers of shares of stock in FAVELLE FAVCO CRANES USA,
INC., for an aggregate total purchase price of $1,000.00 (a per-
share price of $.10 per share):

| Purchaser | Percentage of Ownership | No. of Shares |
|---|---|---|
| Coburn International Limited | 10% | 1,000 |
| Favelle Favco Cranes Holdings, SDN BHD. | 90% | 9,000 |

COBURN INTERNATIONAL LIMITED           FAVELLE FAVCO CRANES HOLDINGS.
                                       SND BHD.

By: _____              By: _____

    Its _____                    Its _____