

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 0 3 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| Plaintiff, | § § § | |
| v. | § | CIVIL ACTION NO. B-00-003 |
| FAVELLE FAVCO CRANES USA, INC. and FAVELLE FAVCO CRANES (M) SDH BHD, | § § § § § | (consolidated with No. B-00-184) |
| Defendants. | § | |
| AND | § § | |
| FAVELLE FAVCO CRANES USA, INC. | § § | |
| Plaintiff, | § § | |
| v. | § § § | |
| DANIEL E. DAVIS, DAVISCO INC., and COBURN INTERNATIONAL | § § § § | |
| Defendants. | § § | |

## ORDER

### I. Procedural Background

In its previous orders [Dkt. Nos. 69 & 70], the Court granted Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting Memorandum [Dkt. No. 61] and denied Plaintiff Daniel E. Davis' Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63]. As a result of those rulings, Mr. Davis filed his:

(1) Motion for Reconsideration [Dkt. No. 71];

(2) Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and

Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and (3) Request for Trial Setting [Dkt. No. 76]. The Court will address each of these in turn:

## II. Plaintiff's Motion for Reconsideration [Dkt. No. 71]

### A. Procedural Rule and Timeliness of Motion

Mr. Davis brings his motion to reconsider under Federal Rule of Civil Procedure 59(e). In addition to Rule 59, Mr. Davis brings his motion as a Federal Rule of Civil Procedure 60(b) motion for relief from judgment. However, Mr. Davis merely quotes portions of Rule 60(b), and does not specify what the "mistake, inadvertence, surprise, or excusable neglect... or any other reason" is for which the Court may relieve him from judgment. Since Mr. Davis does not provide a justification for which the Court should relieve him under Rule 60(b) from the operation of its judgment, the Court will treat his motion as a motion for new trial or amendment of judgment under Rule 59(e).

Rule 59(e) motions must be filed no later than ten (10) days after entry of judgment, excluding intermediate Saturdays and Sundays [Rule 6(a)]. The Court's reasoning was handed down on March 8, 2001; therefore, Mr. Davis' motion under Rule 59(e) was timely filed on March 19, 2001.

### B. Standard of Review

Under Rule 59, a judgment may be altered or amended after its entry to correct manifest errors of law or fact. Fed. R. Civ. P. 59(a); see Lennar Homes, Inc. v. Masonite Corp., 32 F.Supp.2d 396, 398 (E.D.La. 1998), citing Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir.1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc). Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion to balance the need for finality against the need for justice in granting or denying the motion. See Lavespere, 910 F.2d at 174; Smith v. Pan American Life Ins. Co., 1998 WL 690959, *1 (E.D.La.), citing Edward H.

2

Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993). However, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. See Smith, 1998 WL 690959 at *1. The Court should consider, inter alia, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before he responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is re-opened. See Fidelity & Deposit Co. of Maryland v. Omnibank, 1999 WL 970526, *3 (E.D.La.), citing Lavespere, 910 F.2d at 174. A Rule 59(e) motion, however, cannot be used to re-litigate issues with new arguments that could and should have been presented before the judgment was rendered. See id., citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir. 1990).

**C.    Mr. Davis contends that there is a genuine issue of fact regarding patent ownership**

In his motion for reconsideration, Mr. Davis argues that there is a genuine issue of fact respecting the ownership of United States Patent No. 6,003,252 ("the Patent") which the Court ordered Mr. Davis to assign to FFC USA [Dkt. No. 70]. The crux of Mr. Davis' argument is that the Court improperly disregarded evidence demonstrating that he had a patentable design for the unique crawler crane concept before he became President and Managing Director of FFC USA. Such evidence includes:

(1)     An unsworn statement entitled "The Robey Report" [Dkt. No. 63, Exh. A] in which Mr. Richard Robey, an employee of Manitex which is a subsidiary of Manitowac, states that Mr. Davis had fully conceived and partially engineered the product that resulted in the unique crawler crane. This report is not an affidavit to which Mr. Robey attests personal knowledge of the matters related therein. Therefore, the report is not competent summary judgment evidence, and was properly disregarded by the Court.

(2)     The Robey deposition [Id., Exh. B], in which Mr. Robey testifies that Mr. Davis sketched his crawler crane design in Summer 1995 [Id., 24:7-

3

25:19]. Even if Mr. Davis sketched his crawler crane design in Summer 1995, this does not demonstrate that he had a patentable design before he came to FFC USA. In order to get a patent, the inventor must "describe his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is, and if he points out, some practicable way of putting it into operation." See <u>Pfaff v. Wells Electronics, Inc.</u>, 525 U.S. 55, 62, 119 S.Ct. 304, 309, 142 L.Ed.2d 261 (1998). Mr. Robey does not opine that the sketches from Summer 1995 were sufficiently clear and precise as to be patentable; in fact, he actually stated that there were some "technical problems" that would have to be addressed, for which "engineers would come in" [Dkt. No. 63, Exh. B, Robey Deposition, 25:14-22].

Mr. Robey also states that Mr. Davis provided the criteria for engineers to design the crawler crane [<u>Id.</u>, 97:13-100:1]. Even if Mr. Davis provided engineers with the criteria to design the crawler crane, again, this does not show that Mr. Davis had a patentable design before he came to FFC USA. Mr. Davis did not have a crawler crane design to be patented before he hired an engineering team while he was FFC USA's President and Managing Director, discussed in Section ii, <u>infra</u>. Although Mr. Robey characterizes Mr. Davis as the "driving force" behind the crawler crane idea [<u>Id.</u>, 99:10-100:1], there is a vast difference between an idea and a patentable design.

(3) The transcript of the temporary injunction hearing [Dkt. No. 63, Exh. L], in which Mr. Robey testified that "load testing" had not been performed on a prototype of the crane which he saw at a ConExpo trade show in March 1999 also does not raise a fact issue. Mr. Davis was FFC USA's President and Managing Director at that point in time, such that it would be reasonable to infer that if the crawler crane design had been patentable by March 1999, it became patentable during Mr. Davis' tenure

4

as President and Managing Director of FFC USA.

Mr. Robey's testimony also demonstrates that defense counsel knew Manitex was a subsidiary of Manitowac, and is presented by Mr. Davis to argue that defense counsel restricted their questions of Mr. Davis in his deposition to Manitowac and purposely excluded questions regarding Manitex. However, the method of defense counsel's questioning is irrelevant to the facts in the summary judgment record, and as such, need not be considered by the Court.

Mr. Davis also cites the transcript of the temporary injunction hearing to show that Mac Ngan Boon, Managing Director of Muhibbah Engineering [Dkt. No. 28, Exh. D, Mac Deposition, 14:13-15], knew that Mr. Davis had a patent before signing the Employment Contract. However, the excerpt clearly shows that the issue of the ownership of any "patent or concept... was not addressed nor discussed because the company funded every bit of development" [Dkt. No. 63, Exh. L, Transcript of Temporary Injunction Hearing, 94:4-8]. Therefore, this does not prove that any of the FFC Parties recognized Mr. Davis as having a patentable design before coming to FFC USA.

(4)  Mr. Davis' affidavit [Id., Exh. K] in which he states that he had preliminary sketches regarding the crawler crane, and that he developed a unique crawler crane design with the assistance of engineer James Alan Rusk before he became President of FFC USA. This affidavit contradicts Mr. Davis' own sworn deposition testimony that he had an idea when he came to FFC USA and that he hired engineers on behalf of FFC USA to reduce his idea to a patentable design, see Section ii, infra.

(5)  The affidavit of James Alan Rusk [Id., Exh. M], in which Mr. Rusk attests that he worked with Mr. Davis and Manitex in February 1997 when he completed engineering work that confirmed Mr. Davis' crane concepts could be made. In addition, Mr. Rusk attaches a "Caterpillar-Manitex

5

Proposal" which presumably details engineering work for Mr. Davis' unique crane concept, and drawings dated February 1997 [also at Dkt. No. 63, Exhs. P, Q, and R] which he claims are the same as the drawings that supported the Patent that issued to Mr. Davis. This affidavit also clearly contradicts Mr. Davis' deposition testimony that Mr. Rusk was hired to perform engineering work on his crawler crane concept after Mr. Davis became President and Managing Director of FFC USA, see Section ii, infra.

### i. The Law

The Fifth Circuit does not allow a party to defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony. See Doe v. Dallas I.S.D., 220 F.3d 380, 386 (5th Cir. 2000), citing S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996).

Mr. Davis argues that although the Court found that his affidavit and Mr. Rusk's affidavit could not be used to raise a genuine issue of fact, the Fifth Circuit's decisions in Kennet-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980) and Dibidale of Louisiana, Inc. v. American Bank & Trust Co., 916 F.2d 300 (5th Cir. 1990) allow this Court to consider those affidavits as competent summary judgment evidence.

However, the Court finds that these cases are clearly distinguishable from the case at hand. In Kennet-Murray, the Fifth Circuit concluded that a party's affidavit which conflicted with previously given testimony could create a genuine issue of material fact. However Kennet-Murray is distinguishable from the case at bar because in that instance, inconsistencies existed within the deposition itself. 622 F.2d at 894. Here however, Mr. Davis' deposition testimony is unequivocal that he hired engineers including Mr. Rusk to work on the crawler crane design after Mr. Davis became President and Managing Director of FFC USA [see Section ii, infra]. Also, the Fifth Circuit noted in Kennet-Murray that the affidavit did not seek to raise a new matter but rather sought to explain certain aspects of the deposition testimony. Again, that case is

6

distinguishable because in his affidavit Mr. Davis does not seek to supplement his deposition testimony, but instead injects totally new evidence of the timing of the work Mr. Rusk did for him. This contradicts Mr. Davis' deposition testimony, see Section ii, infra, and as such, could not at the eleventh hour manufacture a genuine issue of fact to defeat summary judgment.

In addition, the Dibidale case cited by Mr. Davis concerned whether a loan by American Bank to Mr. Dibidale was conditioned on hiring American Bank's choice of contractor, Ronnie Theriot. In moving for summary judgment, American Bank relied on deposition testimony of Mr. Dibidale's agent, Mr. Popich, in which he stated that the bank "never once told me to give [Theriot] the work.... But we're all business people. He wanted [Theriot] to have the work.... The Bank, as far as I was concerned, was supportive of [Theriot]; good enough for the Bank, good enough for me." 916 F.2d at 307. However in opposing summary judgment, Mr. Dibidale presented Mr. Popich's affidavit, in which he stated that the bank "was strongly urging the use of Theriot throughout the loan negotiation...." Id. The Fifth Circuit stated that Mr. Popich's affidavit was not necessarily inconsistent with his deposition testimony. Id. Unlike the instant matter, however, Mr. Davis unequivocally testified in his deposition that he hired engineers such as Mr. Rusk to work on the crawler crane design after he came to FFC USA, see Section ii, infra. Therefore, Mr. Davis cannot rely on Dibidale to bind this Court to reconsider its decision based on affidavits and evidence that clearly contradict sworn deposition testimony.

> ii. **Mr. Davis' affidavits and accompanying evidence that purport to prove that he had a patentable design before coming to FFC USA contradict sworn deposition testimony**

Mr. Davis contends that his affidavit and Mr. Rusk's affidavit, with its accompanying evidence, do not contradict his deposition testimony, but explains the testimony which was taken out of context by the Court in granting summary judgment in FFC USA's favor. On the contrary, the affidavits and accompanying evidence, i.e., the

7

attached proposal and Rusk drawings [also at Dkt. No. 63, Exhs. P, Q and R] contradict the deposition testimony of Mr. Davis. He clearly testified that Mr. Rusk worked for Mr. Davis, who was President and Managing Director of FFC USA, after FFC USA was incorporated in September 1997:

> Q. What engineers or designers did you make – were arrangements made with to, I assume, bring your idea from an idea to something that could actually be manufactured?
>
> A. The idea, it was already there.
>
> Q. But what – who did you hire or who was hired to reduce the idea to plans, specifications, models, whatever were [sic] necessary in order to take that idea from your head to end up in a finished crawler crane that could be sold?
>
> A. Jim Rusk.
>
> Q. ... And when was – when was an agreement entered into with Mr. Rusk?
>
> A. I don't know.
>
> Q. Well, ... if Favco USA was incorporated in September of '97, using that as a benchmark, relative to that date, when did you engage Mr. Rusk?
>
> A. I can't remember.
>
> Q. It was after that date?
>
> A. Yes.

[Dkt. No. 28, Exh. A, Davis Deposition, 41:11-24]. Moreover, Mr. Davis admitted that the services Mr. Rusk performed of reducing the idea into "engineer language" or engineering drawings were done on behalf of FFC USA [Id., 42:6-46:25]. Reiterating the fact that there were no drawings of the unique crawler crane concept prior to his coming to FFC USA, Mr. Davis stated:

> Q. Now, what was Mr. Rusk to do?
>
> A. Reduce the idea, the drawings, into technical – technical writing or technical jargon, you know.
>
> Q. But you told us you had no drawings when you came to Favco USA.

8

A.  No, but I had them in my head.

[Id., 42:24-43:2].  Clearly then, there is no conflict within the deposition itself that Mr. Rusk was hired to reduce Mr. Davis' idea into a design that could be patented.

In addition, Mr. Davis testified that he only had an idea for the unique crawler crane before coming to FFC USA:

> Q.  ....When you left Manitowac... and you went and became president and managing director of Favco USA, what did you bring with you that had to do with the crawler cranes that are the subject of this lawsuit?
>
> A.  That are the subject of this lawsuit?  Nothing from Manitowac.
>
> Q.  Okay.  You brought no plans?
>
> A.  No.  Not that was being used, no.
>
> Q.  Not that was being used?
>
> A.  No, I did not.
>
> Q.  That are being used in connection with cranes that are in issue in this lawsuit?
>
> A.  That's right.
>
> Q.  You didn't bring any patents?
>
> A.  No.
>
> Q.  You didn't bring any working models?
>
> A.  No.
>
> Q.  What you brought, then, was what?  An idea of how to build a different type of crawler crane?
>
> A.  Yes.
>
> Q.  So at the time you became president and managing director of Favco USA, there were not in existence any drawings, models, prototypes of the crawler cranes that we're now fighting about?
>
> A.  Not that I'm aware of.
>
> Q.  You didn't have any?
>
> A.  No.

9

> Q. And you didn't know of anyone who had any?
>
> A. Not that I'm aware of.
>
> Q. And you didn't bring any with you?
>
> A. No.
>
> Q. Were there any drawings, sketches, or... descriptions?
>
> A. Yes, there was [sic] descriptions.
>
> Q. What were they? Where are they?
>
> A. I can't – I can't recall. I mean, what they – I mean, there was a few, but I can't – right now, I can't recall what they are.
>
> Q. But you didn't bring them with you from Manitowac?
>
> A. As far as what, sir?
>
> Q. As far as drawings, sketches or descriptions?
>
> A. Yes.

[Id., 35:12-37:11]. Although Mr. Davis indicated that he had "descriptions" [Id. at 36:23] or a "sketch" [Id. at 47:2-49:2], he admitted that Mr. Rusk had to make drawings of the crawler crane because they had to be done "in engineer language" [Id. at 45:7-47:7] or "signed off by an engineer" [Id. at 45:23-25] so they could be built. Furthermore, in his own affidavit, he admits that any sketches were "preliminary" and therefore, could not have supported a patent before he came to FFC USA [Dkt. No. 63, Exh. K, p. 3]. Therefore, this evidence does not create a material issue of fact that Mr. Davis developed his crawler crane design before he came to FFC USA.

In addition, Mr. Davis hired other engineers, such as ECCON and Keith Orgeron, while he was President of FFC USA to help design the crawler crane concept [Dkt. No. 28, Exh. A, Davis Deposition, 41:16-24; 53:2-25; 63:17-24; Attachments 4 and 9]. Moreover, Mr. Davis told FFC Parties that the agreement with ECCON needed to be executed because "[w]e cannot file for a...patent unless we have a design [Id., Attachment 29]. Furthermore, Mr. Davis testified that even before he became President of FFC USA, he told FFC Parties that it would take about a year to take the idea of the crawler crane from simply an idea to something that could be built and sold [Id. at 38:1-

10

25].

Finally, Mr. Davis admitted in the Amended Joint Pre-trial Order that he hired several engineers for FFC USA to design and develop the crawler crane, and that all the work done on the crawler cranes was done after he became President and Managing Director of FFC USA [Amended Joint Pre-trial Order, Dkt. No. 55, Section of Admissions of Fact, ¶¶ 8 and 18].

The affidavits and evidence cited by Mr. Davis do not seek to explain Mr. Davis' deposition testimony; rather, they seek to raise a new matter, i.e. that Mr. Rusk created the crawler crane design and drawings for the Patent before Mr. Davis became President and Managing Director of FFC USA, which directly conflicts with unambiguous testimony that engineers including Mr. Rusk were hired after Mr. Davis came to FFC USA with only an idea for a unique crawler crane concept. The evident conflict between Mr. Davis' deposition testimony and his subsequently proffered evidence cannot be reconciled. Therefore, the Court finds that Mr. Davis' clear answers to unambiguous questions negate the existence of any genuine issue that the development of the design for the unique crawler crane concept was aided by engineers including Mr. Rusk after Mr. Davis became President and Managing Director of FFC USA.

### D. The Employment Contract does not limit the scope of Mr. Davis' fiduciary duties as President and Managing Director of FFC USA

Mr. Davis argues that since his Employment Contract is silent regarding patent ownership, then the duty to assign the patent is not within the scope of his fiduciary duties. In an attempt to analogize to <u>Fuqua v. Taylor</u>, 683 S.W.2d 735, 737 (Tex. App. 1984), Mr. Davis does not disagree that the determination of the existence and breach of a fiduciary duty are questions of law where the underlying facts are undisputed. This was indeed the case: it is undisputed that the design for the crawler crane was developed by a team of engineers who were hired on behalf of FF USA while Mr. Davis was the corporation's President and Managing Director, see Section ii, <u>supra</u>.

11

Instead, Mr. Davis attempts to analogize this matter to <u>Fuqua</u>'s holding that fiduciary duties among joint venturers are defined by their joint venture agreement. 683 S.W.2d at 737. Mr. Davis argues that it follows that all matters excluded from his Employment Contract are excluded from the scope of the fiduciary relationship between Mr. Davis and FFC USA. Mr. Davis therefore claims that he had no fiduciary duty to assign his patent for the crawler crane design because the Employment Contract is silent with respect to any patents, inventions, technology or crawler cranes.

Initially, however, a Rule 59(e) motion cannot be used to re-litigate issues with new arguments that could and should have been presented before the judgment was rendered. <u>See</u> <u>Simon</u>, 891 F.2d at 1159. This argument was not presented by Mr. Davis in his summary judgment motion [Dkt. No. 63], and thus, need not be addressed by this Court upon consideration of his motion to reconsider.

Even so, this Court finds that Mr. Davis' situation is distinguishable from the facts in <u>Fuqua</u>. In that case, the <u>Fuqua</u> court concluded that a geologist who pooled funds from investors in a joint venture to drill oil wells was obligated to give the investors an option to participate in a subsequent drilling opportunity in an area covered by "the Sharpe lease" because it was included in their signed letter agreement, but was not required to inform investors of an opportunity in an area covered by "the O'Kelley lease" because it was not included in their agreement. The <u>Fuqua</u> court reasoned that the scope of fiduciary duties among joint venturers had been established by their signed letter agreement, and since the letter agreement did not include the O'Kelley lease, then the geologist had no duty to inform investors of that opportunity.

The <u>Fuqua</u> case concerned the fiduciary duties among joint venturers, as opposed to this instance, in which the Parties are not joint venturers. Mr. Davis was employed by Favelle Favco Holdings to be Managing Director of FFC USA. That the Employment Contract is silent with respect to the ownership of the patent does not mean that his fiduciary duty not to usurp a corporate opportunity did not exist. As a matter of law, Mr. Davis was a fiduciary of FFC USA because he was its Managing Director, as discussed in the Court's March 8, 2001 Order [Dkt. No. 70, p. 8]. As a

12

fiduciary of the corporation, Mr. Davis was obligated not to usurp a corporate opportunity [id.]. Since the Employment Contract did not limit Mr. Davis' fiduciary duties, Mr. Davis had a duty to not usurp a corporate opportunity.

### E. The development of Mr. Davis' unique crawler crane concept was in FFC USA's line of business

Mr. Davis also argues that the development of crawler cranes was not in the line of FFC USA's business under the Icom Systems test, such that it was not a corporate opportunity to which FFC USA was entitled. See Icom Systems v. Davies, 990 S.W.2d 408, 410 (Tex. App. 1999). Mr. Davis cites Mr. Robey's testimony at the temporary injunction hearing that FFC USA did not make crawler cranes until after Mr. Davis became its President and Managing Director [Dkt. No. 63, Exh. L]. However, this does not prove that the crawler cranes were not contemplated by FFC USA's business. Mr. Davis' duties as Managing Director was to "perform.... work done at its facility in the USA" [Dkt. No. 28, Exh. A, Attachment 3, Employment Contract]. The "work" being done at FFC USA was the development of the crawler cranes [Dkt. No. 28, Cheam Deposition, Exh. C, 58:22-59:8 and Mac Deposition, Exh. D, 21:9-19; 32:5-13; 163:17-164:5; Amended Joint Pre-trial Order, Dkt. No. 55, Section of Admissions of Fact, ¶ 6]. Thus, the business opportunity of developing crawler cranes was clearly one that was "adaptable to [FFC USA's] business[,] having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion." See Icom Systems, 990 S.W.2d at 410. Therefore, the Court finds that this argument has no merit.

### F. This Court's order to assign the Patent to FFC USA does not violate federal law

Mr. Davis argues that since 35 U.S.C. § 261 requires a patent assignment to be in writing, and the Employment Contract is silent with respect to the issue of patent ownership, then the Court's Order requiring Mr. Davis to assign the patent to FFC USA

13

contravenes federal law. This argument holds no weight. First, the Employment Contract does not limit the scope and nature of the relationship between Davis and FFC USA, see Section D, supra. Second, the Court did not order anything that would be in derogation of federal patent law. By obligating Mr. Davis to assign the patent to FFC USA, Mr. Davis, in turn, must follow the proper procedures set forth by law to assign the patent, i.e., that it must be in writing pursuant to 35 U.S.C. § 261. Therefore, the Court finds that this argument, too, has no merit.

### G. Based the foregoing, the Court DENIES Mr. Davis' Motion for Reconsideration [Dkt. No. 71]

Based on the foregoing, the Court finds that among the reasons it denied Mr. Davis' motion for summary judgment was his own deposition testimony in which he unequivocally states that the crawler crane concept was developed and designed with the aid of engineers who were hired while he was President and Managing Director of of FFC USA. While evidence, such as Mr. Davis' affidavit, Mr. Rusk's affidavit, and Mr. Rusk's drawings, was available for the Court's consideration upon summary judgment, none of the evidence raised an issue of material fact because the evidence was in clear contradiction to Mr. Davis' earlier, sworn deposition testimony. Mr. Davis could not manufacture an issue of fact at the eleventh hour with contradictory affidavits. In addition, FFC USA will suffer unfair prejudice if the case is re-opened, since the Court has already determined that the Patent should be assigned to it. Moreover, the Court finds that Mr. Davis' other arguments, discussed in Sections D, E and F supra, are without merit. Therefore, the Court hereby **DENIES** Mr. Davis' Motion for Reconsideration [Dkt. No. 71].

### III. Mr. Davis' Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and Request to Take Mr. Sanchez's Deposition in camera [Dkt. No. 78]

Mr. Davis argues that testimony from Dennis Sanchez, who was hired by Mr. Davis to be FFC USA's corporate attorney, will support the facts alleged in the evidence

14

cited above. Mr. Davis also argues that Mr. Sanchez has non-privileged information regarding the negotiation of the Shareholders' Agreement that was found to be invalid under the statute of frauds by this Court in its previous order. In addition, Mr. Davis argues that the use of Mr. Sanchez's testimony is of no surprise to the FFC Parties since he was listed as a trial witness.

However, the Court finds that Mr. Davis' arguments have no merit. First, the discovery deadline was September 28, 2000 [Dkt. No. 19], with the Parties extending the deadline by agreement to October 13, 2000 [Dkt. No. 31]. The discovery deadline in this matter has well passed. In addition, Mr. Davis does not show good cause why Mr. Sanchez's deposition was not taken before the close of discovery, such that the Court should make an exception to the deadline. Although Mr. Davis argues that the Court itself sua sponte amended its own deadline for filing dispositive motions, Mr. Davis mischaracterizes the Court's actions: the Court notified the Parties that it would enter summary judgment sua sponte [Dkt. No. 58], and gave the Parties the opportunity to brief the issues on which it would base summary judgment sua sponte.

Finally, a party is not entitled to have a summary judgment set aside on the basis of evidence not produced prior to summary judgment unless he demonstrates a valid excuse for the failure to produce the evidence prior to the court's summary judgment ruling. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1052 (5th Cir. 1996), citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473-74 (5th Cir.1989). Therefore, a district court may properly refuse to review the new evidence because the moving party failed to show any reason for failing to provide the evidence prior to summary judgment. Id. Hence, even if the Court were to allow the deposition of Mr. Sanchez, the Court could not then consider the testimony in order to set aside its judgment because Mr. Davis has presented no valid excuse for why his testimony was not produced prior to summary judgment.

Therefore, the Court **DENIES** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and **DENIES** the Request to Take Mr. Sanchez's Deposition in camera [Dkt. No. 78].

15

## IV. Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s Request for Trial Setting [Dkt. No. 76]

The Court hereby **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a.m. in order to discuss issues related to setting this matter for trial. At that time, the Court will determine whether a trial setting is appropriate. Therefore, the Court **DECLARES** Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s request as **MOOT**.

## V. Conclusion

In sum, the Court:

(1) **DENIED** the Motion for Reconsideration [Dkt. No. 71];

(2) **DENIED** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and **DENIED** the Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and

(3) **DECLARES** as **MOOT** the Request for Trial Setting [Dkt. No. 76].

(4) The Court also **DECLARES** as **MOOT** the following:

  i. Motion in Limine [Dkt. No. 57];

  ii. Request for Authentification of Exhibits [Dkt. No. 60];

  iii. Motion to Strike Request for Authentification [Dkt. No. 62];

  iv. Motion for Leave to File Supplemental Joint Pretrial Order [Dkt. No. 64]; and

  v. Motion to Strike Affidavits of Daniel E. Davis and James Alan Rusk [Dkt. No. 67].

16

The Court also **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a.m. to discuss the appropriateness of a trial setting in this matter.

DONE in Brownsville, this 3rd day of July 2001.

_____
Hilda G. Tagle
United States District Court

17