**89**

**COPY**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

JUL 0 6 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and  FAVELLE CRANES** | § | |
| **(M) SDN BHD,** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

<u>**PLAINTIFFS' REQUEST FOR PERMISSION TO
APPEAL INTERLOCUTORY ORDERS**</u>

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS:**

    **COME NOW,  DANIEL E. DAVIS, ET. AL.,** Plaintiffs in the above-styled and

numbered civil action, and file this **Request for Permission to Appeal Interlocutory Orders,**

and in support thereof, would respectfully show this Honorable Court the following:

I.

## ORDERS SUBJECT OF PLAINTIFFS' INTENDED APPEAL

1.01    Plaintiffs respectfully request permission to appeal the Order signed and entered by

this Honorable Court on **July 3, 2001** and by which this Honorable Court denied Plaintiffs'

Motion for Reconsideration and Motion for Leave to Take Deposition of Dennis Sanchez and

Request to Take Mr. Sanchez' Deposition in Camera.   A true and correct copy of said Order is

attached hereto as **Exhibit "A"**, and incorporated herein by reference the same as if fully copied

and set forth at length.   These Motions were timely filed in response to this Honorable Court's

Order Granting Defendants' Supplemental Motion for Partial Summary Judgment and Supporting

Memorandum and Denying Plaintiffs' Cross-Motion for Partial Summary Judgment on Patent

Ownership and Shop Rights

1.02    Plaintiffs would show that the aforementioned Order, in essence, affirmed this

Court's Order Granting Defendants' Supplemental Motion for Partial Summary Judgment and

Supporting Memorandum and Denying Plaintiffs' Cross-Motion for Partial Summary Judgment

on Patent Ownership and Shop Rights, signed on **March 7, 2001.**   A true and correct copy of

said Order is attached hereto as **Exhibit "B".**   Plaintiffs also request permission to appeal this

Order.

1.03    The Motions for Summary Judgment were filed as per this Honorable Court's

request on February 1, 2001 during the Final Pre-Trial Conference in which it notified the parties

hereto that it would consider ordering summary judgment *sua sponte*.

II.

## BASIS FOR REQUEST FOR PERMISSION

2.01    Pursuant to 28 U.S.C. §1292(b), Plaintiffs respectfully request that this Honorable Court grant them permission to appeal the aforementioned Orders, which are interlocutory orders, to the Fifth.Circuit Court of Appeals.

2.02    Plaintiffs would respectfully show this Honorable Court that the Orders signed and entered **July 3, 2001** and **March 7, 2001,** respectively, involve a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from this Order may materially advance the ultimate termination of this litigation.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that this **Request for Permission to Appeal Interlocutory Orders** be in all things granted by this Honorable Court, and that the Court enter an appropriate Order granting them permission to appeal the July 3, 2001 and March 7, 2001 Orders, which are interlacutory orders, to the Fifth Circuit Court of Appeals, and that the Court grant Plaintiffs such other and further relief at law or in equity to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

**LAW OFFICES OF**
**ERNESTO GAMEZ, JR, P.C.**
777 East Harrison Street
Brownsville, Texas 78520
TEL/ (956) 541-3820
FAX/ (956) 541-7694

BY: _____

**ERNESTO GAMEZ, JR.**
State Bar No. 07606600
Federal Id. No. 8645

**ATTORNEY IN-CHARGE FOR**
**PLAINTIFFS DAVIS**

**\*VICTOR QUINTANILLA**
State Bar No. 00786181
Federal Id. No. 16073
(\* SIGNED WITH PERMISSION
OF ATTORNEY IN-CHARGE)

## CERTIFICATE OF CONFERENCE

I, **VICTOR QUINTANILLA**, hereby certify that on the 6th day of July 2001, I hereby

certify that I conferred with Hon. Gary Gurwitz of Atlas & Hall, L.L.P., Attorney-in-Charge for

Defendants, to discuss the filing of this **Request for Permission to Appeal Interlocutory Order**,

and he advised me that he would consider it and then advise me of his position later today.

However, prior to the filing of this Request for Permission to Appeal Interlocutory Orders, I did not

receive a follow-up call from Mr Gurwitz to further advise me of his position.

_____
**VICTOR QUINTANILLA**

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA,** hereby certify that on this 6th day of July, 2001 a true and correct copy of **Plaintiffs Davis' Request for Permission to Appeal Interlocutory Order** was served **VIA CM RRR 7099 3220 0006 2779 6726** on the Attorney-in-Charge for Defendants, Hon. Gary Gurwitz, **ATLAS & HALL, L.L.P.,** P.O. Drawer 3725, 818 Pecan, McAllen, Texas 78502.

**VICTOR QUINTANILLA**

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| DANIEL E. DAVIS | § |
| | § |
|     Plaintiff, | § |
| | § CIVIL ACTION NO. B-00-003 |
| v. | § (Consolidated with No. B-00-184) |
| | § |
| FAVELLE FAVCO CRANES USA, INC. | § |
| and FAVELLE FAVCO CRANES (M) | § |
| SDH BHD | § |
| | § |
|     Defendants. | § |
| | § |
| AND | § |
| | § |
| FAVELLE FAVCO CRANES USA, INC. | § |
| | § |
|     Plaintiff, | § |
| v. | § |
| | § |
| DANIEL E. DAVIS, | § |
| DAVISCO INC., and | § |
| COBURN INTERNATIONAL | § |
| | § |
|     Defendants. | § |

# EXHIBIT "A"
# <u>ORDERS</u>
## (July 3, 2001)

CHzPDF - www.fxstio.com

8 c

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

United States Dist. ... ...
Southern Dist ... ... Texas
ENTERED

JUL 0 3 2001

Michael N. Milby, Clerk by Deputy
By Deputy Clerk

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO B-00-003 |
| | § | (consolidated with No. B-00-184) |
| FAVELLE FAVCO CRANES USA, INC | § | |
| and FAVELLE FAVCO CRANES (M) | § | |
| SDH BHD, | § | |
| | § | |
| Defendants | § | |
| | § | |
| **AND** | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v | § | |
| | § | |
| DANIEL E DAVIS, | § | |
| DAVISCO INC., and | § | |
| COBURN INTERNATIONAL | § | |
| | § | |
| | § | |
| Defendants. | § | |

## ORDER

### I.    Procedural Background

In its previous orders [Dkt Nos 69 & 70], the Court granted Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting Memorandum [Dkt No 61] and denied Plaintiff Daniel E Davis' Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63] As a result of those rulings, Mr Davis filed his

(1) Motion for Reconsideration [Dkt No. 71],

(2) Motion for Leave to Take Deposition of Dennis Sanchez [Dkt No 73] and

Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and

(3) Request for Trial Setting [Dkt. No. 76].

The Court will address each of these in turn.

## II.   Plaintiff's Motion for Reconsideration [Dkt. No. 71]

### A.   Procedural Rule and Timeliness of Motion

Mr. Davis brings his motion to reconsider under Federal Rule of Civil Procedure 59(e). In addition to Rule 59, Mr. Davis brings his motion as a Federal Rule of Civil Procedure 60(b) motion for relief from judgment. However, Mr. Davis merely quotes portions of Rule 60(b), and does not specify what the "mistake, inadvertence, surprise, or excusable neglect ... or any other reason" is for which the Court may relieve him from judgment. Since Mr. Davis does not provide a justification for which the Court should relieve him under Rule 60(b) from the operation of its judgment, the Court will treat his motion as a motion for new trial or amendment of judgment under Rule 59(e).

Rule 59(e) motions must be filed no later than ten (10) days after entry of judgment, excluding intermediate Saturdays and Sundays [Rule 6(a)]. The Court's reasoning was handed down on March 8, 2001; therefore, Mr. Davis' motion under Rule 59(e) was timely filed on March 19, 2001.

### B.   Standard of Review

Under Rule 59, a judgment may be altered or amended after its entry to correct manifest errors of law or fact. Fed. R. Civ. P. 59(a), see Lennar Homes, Inc. v. Masonite Corp., 32 F.Supp.2d 396, 398 (E.D.La. 1998), citing Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir.1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc). Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion to balance the need for finality against the need for justice in granting or denying the motion. See Lavespere, 910 F.2d at 174, Smith v. Pan American Life Ins. Co., 1998 WL 690959, *1 (E.D.La.), citing Edward H.

8

Bohlin Co. v. Banning Co., 6 F 3d 350, 355 (5th Cir. 1993)   However, reconsideration
of a judgment after its entry is an extraordinary remedy which should be used sparingly.
See Smith, 1998 WL 690959 at *1   The Court should consider inter alia, the reasons
for the moving party's default, the importance of the omitted evidence to the moving
party's case, whether the evidence was available to the non-movant before he
responded to the summary judgment motion, and the likelihood that the nonmoving
party will suffer unfair prejudice if the case is re-opened   See Fidelity & Deposit Co. of
Maryland v. Omnibank, 1999 WL 970526, *3 (E.D La ), citing Lavespere, 910 F 2d at
174.  A Rule 59(e) motion, however, cannot be used to re-litigate issues with new
arguments that could and should have been presented before the judgment was
rendered   See id., citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990)

C.   **Mr. Davis contends that there is a genuine issue of fact regarding**
     **patent ownership**

In his motion for reconsideration, Mr. Davis argues that there is a genuine issue
of fact respecting the ownership of United States Patent No. 6,003,252 (' the Patent")
which the Court ordered Mr. Davis to assign to FFC USA [Dkt No. 70]. The crux of Mr
Davis' argument is that the Court improperly disregarded evidence demonstrating that
he had a patentable design for the unique crawler crane concept before he became
President and Managing Director of FFC USA   Such evidence includes

(1)   An unsworn statement entitled "The Robey Report" [Dkt No. 63, Exh A]
      in which Mr. Richard Robey, an employee of Manitex which is a subsidiary
      of Manitowoc, states that Mr. Davis had fully conceived and partially
      engineered the product that resulted in the unique crawler crane   This
      report is not an affidavit to which Mr. Robey attests personal knowledge of
      the matters related therein   Therefore, the report is not competent
      summary judgment evidence  and was properly disregarded by the Court
(2)   The Robey deposition [Id., Exh. B], in which Mr. Robey testifies that Mr
      Davis sketched his crawler crane design in Summer 1995 [Id , 24 7-

25:19]   Even if Mr. Davis sketched his crawler crane design in Summer 1995, this does not demonstrate that he had a patentable design before he came to FFC USA.  In order to get a patent, the inventor must "describe his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is  and if he points out, some practicable way of putting it into operation."  See Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 62, 119 S.Ct. 304, 309, 142 L.Ed.2d 261 (1998)  Mr. Robey does not opine that the sketches from Summer 1995 were sufficiently clear and precise as to be patentable, in fact  he actually stated that there were some "technical problems" that would have to be addressed, for which "engineers would come in" [Dkt. No. 63, Exh B, Robey Deposition, 25 14-22]

Mr. Robey also states that Mr. Davis provided the criteria for engineers to design the crawler crane [Id., 97 13-100.1].  Even if Mr. Davis provided engineers with the criteria to design the crawler crane, again, this does not show that Mr. Davis had a patentable design before he came to FFC USA.  Mr. Davis did not have a crawler crane design to be patented before he hired an engineering team while he was FFC USA's President and Managing Director, discussed in Section II, infra. Although Mr. Robey characterizes Mr. Davis as the "driving force" behind the crawler crane idea [Id., 99 10-100 1], there is a vast difference between an idea and a patentable design

(3)     The transcript of the temporary injunction hearing [Dkt. No. 63, Exh. L], in which Mr. Robey testified that "load testing" had not been performed on a prototype of the crane which he saw at a ConExpo trade show in March 1999 also does not raise a fact issue   Mr. Davis was FFC USA's President and Managing Director at that point in time, such that it would be reasonable to infer that if the crawler crane design had been patentable by March 1999, it became patentable during Mr. Davis' tenure

↓

as President and Managing Director of FFC USA.

Mr. Robey's testimony also demonstrates that defense counsel knew Manitex was a subsidiary of Manitowoc, and is presented by Mr. Davis to argue that defense counsel restricted their questions of Mr. Davis in his deposition to Manitowoc and purposely excluded questions regarding Manitex. However, the method of defense counsel's questioning is irrelevant to the facts in the summary judgment record, and as such, need not be considered by the Court.

Mr. Davis also cites the transcript of the temporary injunction hearing to show that Mac Ngan Boon, Managing Director of Muhibbah Engineering [Dkt. No. 28, Exh. D, Mac Deposition, 14:13-15], knew that Mr. Davis had a patent before signing the Employment Contract. However, the excerpt clearly shows that the issue of the ownership of any "patent or concept.. was not addressed nor discussed because the company funded every bit of development" [Dkt. No. 63, Exh. L, Transcript of Temporary Injunction Hearing, 94:4-8]. Therefore, this does not prove that any of the FFC Parties recognized Mr. Davis as having a patentable design before coming to FFC USA.

(4)   Mr. Davis' affidavit [Id., Exh. K] in which he states that he had preliminary sketches regarding the crawler crane, and that he developed a unique crawler crane design with the assistance of engineer James Alan Rusk before he became President of FFC USA. This affidavit contradicts Mr. Davis' own sworn deposition testimony that he had an idea when he came to FFC USA and that he hired engineers on behalf of FFC USA to reduce his idea to a patentable design, see Section ii, infra.

(5)   The affidavit of James Alan Rusk [Id., Exh. M], in which Mr. Rusk attests that he worked with Mr. Davis and Manitex in February 1997 when he completed engineering work that confirmed Mr. Davis' crane concepts could be made. In addition, Mr. Rusk attaches a "Caterpillar-Manitex

Proposal" which presumably details engineering work for Mr. Davis'
unique crane concept, and drawings dated February 1997 [also at Dkt
No. 63, Exhs. P, Q, and R] which he claims are the same as the drawings
that supported the Patent that issued to Mr. Davis. This affidavit also
clearly contradicts Mr. Davis' deposition testimony that Mr. Rusk was hired
to perform engineering work on his crawler crane concept after Mr. Davis
became President and Managing Director of FFC USA, see Section ii,
infra

### i.    The Law

The Fifth Circuit does not allow a party to defeat a motion for summary judgment
using an affidavit that impeaches, without explanation, sworn testimony. See Doe v.
Dallas I.S.D., 220 F.3d 380, 386 (5th Cir. 2000), citing S.W.S. Erectors, Inc. v. Infax,
Inc., 72 F.3d 489, 495 (5th Cir. 1996)

Mr. Davis argues that although the Court found that his affidavit and Mr. Rusk's
affidavit could not be used to raise a genuine issue of fact, the Fifth Circuit's decisions
in Kennet-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980) and Dibidale of Louisiana,
Inc. v. American Bank & Trust Co., 916 F.2d 300 (5th Cir. 1990) allow this Court to
consider those affidavits as competent summary judgment evidence.

However, the Court finds that these cases are clearly distinguishable from the
case at hand. In Kennet-Murray, the Fifth Circuit concluded that a party's affidavit
which conflicted with previously given testimony could create a genuine issue of
material fact. However Kennet-Murray is distinguishable from the case at bar because
in that instance, inconsistencies existed within the deposition itself. 622 F.2d at 894.
Here however, Mr. Davis' deposition testimony is unequivocal that he hired engineers
including Mr. Rusk to work on the crawler crane design after Mr. Davis became
President and Managing Director of FFC USA [see Section ii, infra]. Also, the Fifth
Circuit noted in Kennet-Murray that the affidavit did not seek to raise a new matter but
rather sought to explain certain aspects of the deposition testimony. Again, that case is

6

distinguishable because in his affidavit Mr. Davis does not seek to supplement his deposition testimony, but instead injects totally new evidence of the timing of the work Mr. Rusk did for him. This contradicts Mr. Davis' deposition testimony, see Section ii, infra, and as such, could not at the eleventh hour manufacture a genuine issue of fact to defeat summary judgment.

In addition, the Dibidale case cited by Mr. Davis concerned whether a loan by American Bank to Mr. Dibidale was conditioned on hiring American Bank's choice of contractor, Ronnie Theriot. In moving for summary judgment, American Bank relied on deposition testimony of Mr. Dibidale's agent, Mr. Popich, in which he stated that the bank "never once told me to give [Theriot] the work.... But we're all business people. He wanted [Theriot] to have the work.... The Bank, as far as I was concerned, was supportive of [Theriot]; good enough for the Bank, good enough for me." 916 F.2d at 307. However in opposing summary judgment, Mr. Dibidale presented Mr. Popich's affidavit, in which he stated that the bank "was strongly urging the use of Theriot throughout the loan negotiation. . ." Id. The Fifth Circuit stated that Mr. Popich's affidavit was not necessarily inconsistent with his deposition testimony. Id. Unlike the instant matter, however, Mr. Davis unequivocally testified in his deposition that he hired engineers such as Mr. Rusk to work on the crawler crane design after he came to FFC USA, see Section ii, infra. Therefore, Mr. Davis cannot rely on Dibidale to bind this Court to reconsider its decision based on affidavits and evidence that clearly contradict sworn deposition testimony.

      ii.     **Mr. Davis' affidavits and accompanying evidence that purport to prove that he had a patentable design before coming to FFC USA contradict sworn deposition testimony**

Mr. Davis contends that his affidavit and Mr. Rusk's affidavit, with its accompanying evidence, do not contradict his deposition testimony, but explains the testimony which was taken out of context by the Court in granting summary judgment in FFC USA's favor. On the contrary, the affidavits and accompanying evidence, i.e., the

7

attached proposal and Rusk drawings [also at Dkt. No. 63, Exhs. P, Q and R] contradict
the deposition testimony of Mr. Davis. He clearly testified that Mr. Rusk worked for Mr.
Davis, who was President and Managing Director of FFC USA, after FFC USA was
incorporated in September 1997.

> Q. What engineers or designers did you make – were arrangements made
> with to, I assume, bring your idea from an idea to something that could
> actually be manufactured?
>
> A. The idea, it was already there
>
> Q. But what – who did you hire or who was hired to reduce the idea to plans,
> specifications, models, whatever were [sic] necessary in order to take that
> idea from your head to end up in a finished crawler crane that could be
> sold?
>
> A Jim Rusk
>
> Q ... And when was – when was an agreement entered into with Mr. Rusk?
>
> A. I don't know.
>
> Q Well, ... if Favco USA was incorporated in September of '97, using that as
> a benchmark, relative to that date, when did you engage Mr. Rusk?
>
> A. I can't remember.
>
> Q. It was after that date?
>
> A. Yes.

[Dkt. No. 28, Exh. A, Davis Deposition, 41:11-24]. Moreover, Mr. Davis admitted that
the services Mr. Rusk performed of reducing the idea into "engineer language" or
engineering drawings were done on behalf of FFC USA [Id., 42:6-46:25]. Reiterating
the fact that there were no drawings of the unique crawler crane concept prior to his
coming to FFC USA, Mr. Davis stated:

> Q Now, what was Mr. Rusk to do?
>
> A Reduce the idea, the drawings, into technical – technical writing or
> technical jargon you know
>
> Q But you told us you had no drawings when you came to Favco USA.

8

> A      No, but I had them in my head.

[Id., 42:24-43:2]. Clearly then, there is no conflict within the deposition itself that Mr
Rusk was hired to reduce Mr. Davis' idea into a design that could be patented.

In addition, Mr. Davis testified that he only had an idea for the unique crawler
crane before coming to FFC USA

> Q      .. When you left Manitowoc... and you went and became president and
> managing director of Favco USA. what did you bring with you that had to
> do with the crawler cranes that are the subject of this lawsuit?
>
> A.      That are the subject of this lawsuit?  Nothing from Manitowoc.
>
> Q      Okay.  You brought no plans?
>
> A.      No.  Not that was being used, no.
>
> Q.      Not that was being used?
>
> A.      No, I did not.
>
> Q.      That are being used in connection with cranes that are in issue in this
> lawsuit?
>
> A.      That's right
>
> Q.      You didn't bring any patents?
>
> A      No.
>
> Q.      You didn't bring any working models?
>
> A.      No
>
> Q.      What you brought, then, was what?  An idea of how to build a different
> type of crawler crane?
>
> A.      Yes.
>
> Q.      So at the time you became president and managing director of Favco
> USA  there were not in existence any drawings, models. prototypes of the
> crawler cranes that we're now fighting about?
>
> A      Not that I'm aware of.
>
> Q.      You didn t have any?
>
> A      No

Q      And you didn't know of anyone who had any?

A.     Not that I'm aware of

Q      And you didn't bring any with you?

A.     No

Q      Were there any drawings, sketches, or, descriptions?

A      Yes, there was [sic] descriptions.

Q      What were they? Where are they?

A      I can't – I can't recall. I mean, what they – I mean, there was a few, but I can't – right now, can't recall what they are.

Q.     But you didn't bring them with you from Manitowoc?

A      As far as what, sir?

Q.     As far as drawings, sketches or descriptions?

A      Yes.

[Id., 35 12-37:11]   Although Mr Davis indicated that he had 'descriptions" [Id. at 36:23] or a "sketch" [Id. at 47:2-49:2], he admitted that Mr Rusk had to make drawings of the crawler crane because they had to be done "in engineer language" [Id. at 45:7-47:7] or "signed off by an engineer" [Id. at 45:23-25] so they could be built. Furthermore, in his own affidavit, he admits that any sketches were "preliminary" and therefore, could not have supported a patent before he came to FFC USA [Dkt. No 63, Exh K, p. 3] Therefore, this evidence does not create a material issue of fact that Mr. Davis developed his crawler crane design before he came to FFC USA.

In addition, Mr Davis hired other engineers, such as ECCON and Keith Orgeron, while he was President of FFC USA to help design the crawler crane concept [Dkt No 28, Exh A, Davis Deposition, 41 16-24; 53:2-25; 63 17-24; Attachments 4 and 9] Moreover, Mr Davis told FFC Parties that the agreement with ECCON needed to be executed because "[w]e cannot file for a patent unless we have a design [Id., Attachment 29]. Furthermore, Mr Davis testified that even before he became President of FFC USA, he told FFC Parties that it would take about a year to take the idea of the crawler crane from simply an idea to something that could be built and sold [Id at 38 1-

25].

Finally. Mr. Davis admitted in the Amended Joint Pre-trial Order that he hired several engineers for FFC USA to design and develop the crawler crane, and that all the work done on the crawler cranes was done after he became President and Managing Director of FFC USA [Amended Joint Pre-trial Order, Dkt. No. 55, Section of Admissions of Fact, ¶¶ 8 and 18]

The affidavits and evidence cited by Mr Davis do not seek to explain Mr Davis' deposition testimony: rather, they seek to raise a new matter, i.e. that Mr Rusk created the crawler crane design and drawings for the Patent before Mr Davis became President and Managing Director of FFC USA, which directly conflicts with unambiguous testimony that engineers including Mr Rusk were hired after Mr. Davis came to FFC USA with only an idea for a unique crawler crane concept   The evident conflict between Mr. Davis' deposition testimony and his subsequently proffered evidence cannot be reconciled   Therefore, the Court finds that Mr. Davis' clear answers to unambiguous questions negate the existence of any genuine issue that the development of the design for the unique crawler crane concept was aided by engineers including Mr. Rusk after Mr. Davis became President and Managing Director of FFC USA.

### D.    The Employment Contract does not limit the scope of Mr. Davis' fiduciary duties as President and Managing Director of FFC USA

Mr Davis argues that since his Employment Contract is silent regarding patent ownership, then the duty to assign the patent is not within the scope of his fiduciary duties.  In an attempt to analogize to Fuqua v. Taylor, 683 S.W.2d 735, 737 (Tex. App 1984), Mr Davis does not disagree that the determination of the existence and breach of a fiduciary duty are questions of law where the underlying facts are undisputed   This was indeed the case   it is undisputed that the design for the crawler crane was developed by a team of engineers who were hired on behalf of FF USA while Mr. Davis was the corporation's President and Managing Director. see Section ii, supra.

CVISPDF - www.fineime.com

Instead, Mr. Davis attempts to analogize this matter to Fuqua's holding that fiduciary duties among joint venturers are defined by their joint venture agreement  683 S.W.2d at 737.  Mr. Davis argues that it follows that all matters excluded from his Employment Contract are excluded from the scope of the fiduciary relationship between Mr. Davis and FFC USA.  Mr. Davis therefore claims that he had no fiduciary duty to assign his patent for the crawler crane design because the Employment Contract is silent with respect to any patents, inventions, technology or crawler cranes.

Initially, however, a Rule 59(e) motion cannot be used to re-litigate issues with new arguments that could and should have been presented before the judgment was rendered.  See Simon, 891 F.2d at 1159.  This argument was not presented by Mr. Davis in his summary judgment motion [Dkt. No. 63] and thus, need not be addressed by this Court upon consideration of his motion to reconsider.

Even so, this Court finds that Mr. Davis' situation is distinguishable from the facts in Fuqua.  In that case, the Fuqua court concluded that a geologist who pooled funds from investors in a joint venture to drill oil wells was obligated to give the investors an option to participate in a subsequent drilling opportunity in an area covered by "the Sharpe lease" because it was included in their signed letter agreement, but was not required to inform investors of an opportunity in an area covered by "the O'Kelley lease" because it was not included in their agreement.  The Fuqua court reasoned that the scope of fiduciary duties among joint venturers had been established by their signed letter agreement, and since the letter agreement did not include the O'Kelley lease, then the geologist had no duty to inform investors of that opportunity

The Fuqua case concerned the fiduciary duties among joint venturers  as opposed to this instance, in which the Parties are not joint venturers.  Mr. Davis was employed by Favelle Favco Holdings to be Managing Director of FFC USA.  That the Employment Contract is silent with respect to the ownership of the patent does not mean that his fiduciary duty not to usurp a corporate opportunity did not exist.  As a matter of law, Mr. Davis was a fiduciary of FFC USA because he was its Managing Director, as discussed in the Court's March 8, 2001 Order [Dkt. No. 70, p. 8]  As a

12

fiduciary of the corporation, Mr. Davis was obligated not to usurp a corporate opportunity [id.]  Since the Employment Contract did not limit Mr. Davis' fiduciary duties, Mr. Davis had a duty to not usurp a corporate opportunity.

###    E.    The development of Mr. Davis' unique crawler crane concept was in FFC USA's line of business

Mr. Davis also argues that the development of crawler cranes was not in the line of FFC USA's business under the Icom Systems test, such that it was not a corporate opportunity to which FFC USA was entitled.  See Icom Systems v. Davies, 990 S.W.2d 408, 410 (Tex. App. 1999).  Mr. Davis cites Mr. Robey's testimony at the temporary injunction hearing that FFC USA did not make crawler cranes until after Mr. Davis became its President and Managing Director [Dkt. No. 63, Exh. L].  However, this does not prove that the crawler cranes were not contemplated by FFC USA's business.  Mr. Davis' duties as Managing Director was to "perform . work done at its facility in the USA" [Dkt. No. 28, Exh. A, Attachment 3, Employment Contract]  The "work" being done at FFC USA was the development of the crawler cranes [Dkt. No. 28, Cneam Deposition, Exh. C, 58:22-59 8 and Mac Deposition, Exh. D, 21:9-19, 32.5-13; 163:17-164.5; Amended Joint Pre-trial Order Dkt. No. 55, Section of Admissions of Fact, ¶ 6]  Thus, the business opportunity of developing crawler cranes was clearly one that was "adaptable to [FFC USA's] business[,] having regard for its financial position  and is one that is consonant with its reasonable needs and aspirations for expansion."  See Icom Systems, 990 S.W.2d at 410.  Therefore, the Court finds that this argument has no merit.

###    F.    This Court's order to assign the Patent to FFC USA does not violate federal law

Mr. Davis argues that since 35 U.S.C. § 261 requires a patent assignment to be in writing, and the Employment Contract is silent with respect to the issue of patent ownership, then the Court's Order requiring Mr. Davis to assign the patent to FFC USA

CutePDF - www.texiw.com

contravenes federal law   This argument holds no weight   First, the Employment Contract does not limit the scope and nature of the relationship between Davis and FFC USA, see Section D, supra   Second, the Court did not order anything that would be in derogation of federal patent law.  By obligating Mr  Davis to assign the patent to FFC USA, Mr. Davis, in turn, must follow the proper procedures set forth by law to assign the patent, i.e., that it must be in writing pursuant to 35 U.S.C  § 261.  Therefore, the Court finds that this argument, too, has no merit.

G.    **Based the foregoing, the Court DENIES Mr. Davis' Motion for Reconsideration [Dkt. No. 71]**

Based on the foregoing, the Court finds that among the reasons it denied Mr. Davis' motion for summary judgment was his own deposition testimony in which he unequivocally states that the crawler crane concept was developed and designed with the aid of engineers who were hired while he was President and Managing Director of of FFC USA   While evidence, such as Mr  Davis' affidavit, Mr. Rusk's affidavit, and Mr Rusk s drawings, was available for the Court's consideration upon summary judgment, none of the evidence raised an issue of material fact because the evidence was in clear contradiction to Mr. Davis' earlier, sworn deposition testimony   Mr. Davis could not manufacture an issue of fact at the eleventh hour with contradictory affidavits   In addition, FFC USA will suffer unfair prejudice if the case is re-opened, since the Court has already determined that the Patent should be assigned to it.  Moreover  the Court finds that Mr  Davis' other arguments, discussed in Sections D, E and F supra, are without merit.  Therefore, the Court hereby **DENIES** Mr. Davis' Motion for Reconsideration [Dkt  No. 71]

III.   **Mr. Davis' Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and Request to Take Mr. Sanchez's Deposition in camera [Dkt. No. 78]**

Mr  Davis argues that testimony from Dennis Sanchez, who was hired by Mr Davis to be FFC USA's corporate attorney, will support the facts alleged in the evidence

14

cited above  Mr. Davis also argues that Mr. Sanchez has non-privileged information regarding the negotiation of the Shareholders' Agreement that was found to be invalid under the statute of frauds by this Court in its previous order  In addition, Mr. Davis argues that the use of Mr. Sanchez's testimony is of no surprise to the FFC Parties since he was listed as a trial witness

However, the Court finds that Mr. Davis' arguments have no merit.  First, the discovery deadline was September 28, 2000 [Dkt. No. 19], with the Parties extending the deadline by agreement to October 13, 2000 [Dkt. No. 31].  The discovery deadline in this matter has well passed  In addition, Mr Davis does not show good cause why Mr Sanchez's deposition was not taken before the close of discovery, such that the Court should make an exception to the deadline.  Although Mr. Davis argues that the Court itself sua sponte amended its own deadline for filing dispositive motions  Mr Davis mischaracterizes the Court's actions: the Court notified the Parties that it would enter summary judgment sua sponte [Dkt. No  58], and gave the Parties the opportunity to brief the issues on which it would base summary judgment sua sponte.

Finally, a party is not entitled to have a summary judgment set aside on the basis of evidence not produced prior to summary judgment unless he demonstrates a valid excuse for the failure to produce the evidence prior to the court's summary judgment ruling  See Wallace v. Texas Tech Univ., 80 F 3d 1042, 1052 (5th Cir  1996), citing Waltman v. Int'l Paper Co  875 F 2d 468, 473-74 (5th Cir 1989)  Therefore, a district court may properly refuse to review the new evidence because the moving party failed to show any reason for failing to provide the evidence prior to summary judgment.  Id. Hence, even if the Court were to allow the deposition of Mr  Sanchez, the Court could not then consider the testimony in order to set aside its judgment because Mr. Davis has presented no valid excuse for why his testimony was not produced prior to summary judgment.

Therefore, the Court **DENIES** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No  73] and **DENIES** the Request to Take Mr  Sanchez's Deposition in camera [Dkt  No  78]

15

IV.   **Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s Request for Trial Setting [Dkt. No. 76]**

The Court hereby **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a.m. in order to discuss issues related to setting this matter for trial. At that time, the Court will determine whether a trial setting is appropriate. Therefore, the Court **DECLARES** Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s request as **MOOT**.

V.   **Conclusion**

In sum, the Court.

(1)   **DENIED** the Motion for Reconsideration [Dkt. No. 71];

(2)   **DENIED** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt No. 73] and **DENIED** the Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and

(3)   **DECLARES** as **MOOT** the Request for Trial Setting [Dkt. No. 76]

(4)   The Court also **DECLARES** as **MOOT** the following:

    i.    Motion in Limine [Dkt. No. 57]

    ii.   Request for Authentification of Exhibits [Dkt. No. 60];

    iii.  Motion to Strike Request for Authentification [Dkt. No. 62];

    iv.   Motion for Leave to File Supplemental Joint Pretrial Order [Dkt. No. 64]; and

    v.    Motion to Strike Affidavits of Daniel E. Davis and James Alan Rusk [Dkt. No. 67].

16

The Court also **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a.m to discuss the appropriateness of a trial setting in this matter.

DONE in Brownsville, this 3rd day of July 2001.

Hilda G. Tagle
United States District Court

17

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| DANIEL E. DAVIS | § |
| | § |
| Plaintiff, | § |
| | § CIVIL ACTION NO. B-00-003 |
| v. | § (Consolidated with No. B-00-184) |
| | § |
| FAVELLE FAVCO CRANES USA, INC. | § |
| and FAVELLE FAVCO CRANES (M) | § |
| SDH BHD | § |
| | § |
| Defendants. | § |
| | § |
| AND | § |
| | § |
| FAVELLE FAVCO CRANES USA, INC. | § |
| | § |
| Plaintiff, | § |
| v. | § |
| | § |
| DANIEL E. DAVIS, | § |
| DAVISCO INC., and | § |
| COBURN INTERNATIONAL | § |
| | § |
| Defendants. | § |

# EXHIBIT "B"
# ORDER
## (March 7, 2001)

70

United States District Court
Southern District of Texas
ENTERED

MAR 0 8 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-00-003 |
| | § | (consolidated with No. B-00-184) |
| FAVELLE FAVCO CRANES USA, INC. | § | |
| and FAVELLE FAVCO CRANES (M) | § | |
| SDH BHD, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| **AND** | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DANIEL E. DAVIS, | § | |
| DAVISCO INC., and | § | |
| COBURN INTERNATIONAL | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that the Court previously **GRANTED** [Dkt. No. 69] Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting Memorandum [Dkt. No. 61] and **DENIED** Plaintiff Daniel E. Davis' Response and Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63].  The Court hereby gives a fuller explanation for its rulings.

1

## I.   Contentions of the Parties

Mr. Davis asserts that he conceived of and developed this unique design of crawler crane, such that FFC USA is liable for infringement in its use of the design. FFC USA on the other hand asserts that Mr. Davis usurped its interest in patent of the crawler crane and should be assigned ownership of the patent.

## II. Facts in the summary judgment record

Muhibbidah Engineering (M) BHD has a holding company, Favelle Favco Holdings SDH BHD ("Holdings") for its many subsidiaries, including Favelle Favco Cranes (M) SDH BHD ("FFC Malaysia") and Favelle Favco Cranes, USA ("FFC USA"). FFC USA designs, develops, manufactures, and sells crawler cranes.  Daniel E. Davis served as president and managing director of FFC USA.  In his deposition, Mr. Davis testified that he had no patentable design for crawler cranes.  He was doing conceptual work at his former employer, Manitowac, but had no plans, patents, or any working models from there.  His idea for the crawler crane patent at issue was just that – an idea.

After his employment with Manitowac, Holdings employed Mr. Davis under a written employment contract to be managing director of FFC USA.  The contract did not address the issue of ownership of patents from the development of crawler cranes; in fact, it does not mention crawler cranes at all.

In addition to the aforementioned employment contract, Mr. Davis claims that the terms of his employment were also contained in a Shareholders' Agreement (the "Agreement") between him and FFC Malaysia.  The Agreement as written and endorsed by Mr. Davis is incomplete as to several of its material terms, such as: ¶ 1.1 contains a blank for the date for when the parties would form a corporation; the Constitution referred in ¶ 1.2 is not annexed to the Agreement; and ¶ 2.1 regarding the composition of the board of directors is incomplete.  Furthermore, the cover letter that was sent with the Agreement to Mr. Davis states in no uncertain terms that the enclosures are draft documents that would "need to be reviewed by US lawyers (in

2

particular, Texas lawyers)." Mr. Davis signed the Agreement on August 16, 1997; however, the signature line for FFC Malaysia is blank.

Among the express terms of the draft Agreement were that Mr. Davis would own 10% of FFC USA, that FFC Malaysia would own 90% of FFC USA, and that FFC Malaysia would pay a royalty fee to Mr. Davis in the amount of 1% of the sale of each crane manufactured or assembled pursuant to Mr. Davis' patented invention. However, neither Mr. Davis nor FFC Malaysia conformed their actions to these explicit terms. For example, Coburn International, Ltd., a corporation owned by Mr. Davis, purchased a 10% interest in FFC USA. In addition, Holdings acquired a 90% interest in FFC USA, not FFC Malaysia as recited in the Agreement. Moreover, royalty payments were made by FFC USA to Davisco, a corporation owned by Mr. Davis, and not to Mr. Davis himself. Indeed, FFC Malaysia did not perform at all under the Agreement.

During Mr. Davis' tenure as president and managing director of FFC USA, a particular type of crawler crane was developed. Mr. Davis admits in his deposition that he could not himself do the work to support a patent for this unique crawler crane design. In fact, Mr. Davis hired several contract engineers, including James Alan Rusk, Keith Orgeron, and ECCON on behalf of FFC USA to design and develop the crawler crane. Mr. Davis had no contracts personally with any of these engineers to provide design services involving crawler cranes; all of the work the engineers did was on behalf of FFC USA. FFC USA paid for every aspect of the entire crawler crane project. All work done on the crawler cranes was done after Mr. Davis became president and managing director of FFC USA.

On August 6, 1998 Mr. Davis notified Cheam Tek Siong, Group General Manager for Holdings at the time, that he applied for a patent for the unique crawler cranes in his name only. Mr. Cheam stated in his deposition that he immediately countermanded this act. Despite his application for the patent in his name, he continued to sign agreements on behalf of FFC USA with component suppliers providing that the resulting designs were property of FFC USA. In addition, Mr. Davis promoted the crawler cranes on behalf of FFC USA at trade shows. Mr. Davis received

3

U.S. Patent No. 6,003,252 in his name for the unique crawler crane design in
December 1998.

## III.  Summary judgment standard

Summary judgment is appropriate when, viewing the evidence and all justifiable
inferences in the light most favorable to the non-moving party, "the pleadings,
depositions, answers to interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue of material fact and that the
moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  See Hunt
v. Cromartie, 526 U.S. 541, 552 (1999).  The party making a summary judgment motion
has the initial burden of informing the court of the basis for their motion and identifying
those portions of the pleadings and discovery documents which demonstrate the
absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999).  If the moving
party meets this burden, the non-movant then must designate specific facts showing
there is a genuine issue for trial to survive summary judgment.  See Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th
Cir.1994).

## IV.     Discussion

### A.     The Enforcement of the terms of the Shareholders' Agreement is precluded by the statute of frauds

A promise or agreement is uneforceable unless it is (1) in writing, and (2) signed
by the person to be charged with the promise or agreement or by someone lawfully
authorized to sign for him.  Tex. Bus. & Com. Code § 26.01(a) (West 2000).  These
requirements apply to an agreement which is not to be performed within one year from
the date of the making of the agreement.  Id. at § 26.001(b)(6).  Whether a contract falls
within the statute of frauds generally is a question of law.  Choi v. McKenzie, 975
S.W.2d 740, 743 (Tex. App. – Corpus Christi 1998, pet. denied).

4

The Shareholders' Agreement that Mr. Davis seeks enforcement of comes within the statute of frauds because one of its terms provides that FFC Malaysia is to pay Mr. Davis a royalty fee of 1% for a period of three years, and as such, the period of performance exceeds one year.  However, the Shareholders' Agreement is not signed by the entity to be charged, FFC Malaysia.  Thus, as a matter of law the statute of frauds bars enforcement of the terms of the Agreement.

**B.**    **Promissory Estoppel does not save the Agreement from invalidity under the statute of frauds**

Promissory estoppel is an equitable defense which circumvents the statute of frauds in limited circumstances when it is necessary to prevent an actual fraud as distinguished from a mere wrong.  See Birenbaum, M.D. v. Option Care, Inc., 971 S.W.2d 497, 504 (Tex. App. – Dallas 1997), citing  Nagle v. Nagle, 633 S.W.2d 796, 799 (Tex.1982); Coastal Corp. v. Atlantic Richfield Co., 852 S.W.2d 714, 718 (Tex. App. – Corpus Christi 1993).  Promissory estoppel is a narrow exception to the defense of the statute of frauds.  See Triad Home Renovators, Inc. v. Comerica Bank-Texas, 1999 WL 1080730, *3 (Tex. App. – Houston 1999).  In determining whether the equitable defense of promissory estoppel should be used to preclude the operation of the statute of frauds, the Texas Supreme Court has consistently required a showing that non-application of an equitable defense would result in fraud.  See Birenbaum, 971 S.W.2d at 503.  "To warrant equity's 'breaking through the statute' to enforce a parol contract the case must be such that the nonenforcement of the contract, or the enforcement of the statute would, itself, plainly amount to a fraud."  See id., citing Hooks v. Bridgewater, 111 Tex. 122, 128, 229 S.W. 1114, 1116 (1921).

Promissory estoppel precludes a statute of frauds defense in only situations: (1) where the promise to be enforced is to sign a written agreement that would otherwise comply with the statute of frauds, or (2) where there is reliance on a misrepresentation that the statute of frauds had been satisfied.  See Triad, 1999 WL 1080730 at *3.

Where summary judgment proof establishes a statute of frauds defense as a

5

matter of law, the party asserting promissory estoppel must raise a fact issue concerning its applicability.  See id.  If the party asserting promissory estoppel fails to raise a fact issue on any of the elements, a trial court may render summary judgment in the moving party's favor.  Id.

Mr. Davis claims that Mr. Cheam promised him that the Shareholders' Agreement would be signed [Davis Deposition, page 129, lines 11-20].  Therefore, Mr. Davis raises a material issue of fact as to the existence of a promise to sign the Shareholders' Agreement.  However, Mr. Davis fails to raise triable issues of material fact with regards to the other requirements of promissory estoppel, such that he cannot avail himself of the equitable defense against the statute of frauds.

### 1.    The Agreement itself was not a finalized expression as to all material terms

For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written contract that had been prepared and that would satisfy the requirements of the statute of frauds. See National Floral Service, Inc. v. Weingarten Realty Investors, 2000 WL 257822, *5, citing Nagle, 633 S.W.2d at 800. That is, the party asserting promissory estoppel must show that the writing that is the subject of the promise demonstrates the parties have come to a final agreement as to all material terms.  See Birnbaum, 971 S.W.2d at 504.  A complete agreement on the terms and wording of the written contract is required to permit the application of promissory estoppel to a statute of frauds defense. See Coastal, 852 S.W.2d at 718, citing "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 940 (Tex. 1972).

In H. Molsen & Co. v. Hicks, 550 S.W.2d 354, 356 (Tex. Civ. App. – El Paso 1977, writ ref'd n.r.e.), one of the factors which contributed to the non-application of promissory estoppel was the fact that the sellers' attorney had to approve the contract before it would be executed.  There was no meeting of the minds as to the final terms and no acceptance by the sellers of the writings.  Id.

As stated supra, Mr. Davis raises an issue of material fact that there was a

promise to sign the Shareholders' Agreement. However, Mr. Davis fails to raise a genuine issue of material fact that the Agreement was final as to all its material terms. The draft Agreement is incomplete as discussed in Section I, supra, and does not satisfy the requirements of the statute of frauds. In addition, the cover letter that was sent to Mr. Davis with the enclosed Agreement states in no uncertain terms that it is a "draft document" that would "need to be reviewed by US lawyers[.]" Therefore, he does not make out a genuine issue of material fact that the draft Agreement was a finalized expression as to all material terms to save it from invalidity by the statute of frauds.

## 2. It was not foreseeable that Davis would rely on the Agreement, and Davis himself did not substantially rely on the Agreement

The elements required to prove promissory estoppel through reliance on a misrepresentation that the statute of frauds had been satisfied are: (i) a promise, (ii) foreseeability that the promisee would rely on the promise, and (iii) substantial reliance by the promisee to his detriment. See Citizens Bank & Trust Co. of Baytown v. Ertel, 2001 WL 26141, *5, citing Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 707 (Tex. App. – Houston 1988, writ denied).

Although the Court recognizes that Mr. Davis raises an issue of material fact that there was a promise to sign the Shareholders' Agreement, Mr. Davis does not raise a genuine issue of material fact regarding the third necessary element of promissory estoppel, i.e., that he substantially relied on the draft Agreement. There is no evidence that either he or FFC Malaysia conformed their actions to the terms of the draft Agreement. For example, while the Agreement recites that Davis himself would own 10% of FFC USA, it was Coburn International, Ltd. that purchased a 10% interest in FFC USA. Furthermore, although the Agreement stated that royalty fees were to be paid to Davis, payments were made instead to Davisco, a corporation owned by Mr. Davis. In addition, although the Agreement represented that FFC Malaysia would pay royalties, payments were instead made by FFC USA. Moreover, although the Agreement set forth that FFC Malaysia was to acquire 90% of FFC USA, it was FFC

7

Holdings that acquired the interest. Many of the Agreement's express terms were not carried out by Mr. Davis himself, much less by FFC Malaysia. Since Mr. Davis does not raise a genuine issue of material fact concerning his substantial reliance on the draft Agreement, it does not warrant saving from the operation of the statute of frauds under promissory estoppel.

C.      **Without a contract providing otherwise, as President and Managing Director, Mr. Davis owed FFC USA a fiduciary duty to assign the patent**

Although federal courts have exclusive jurisdiction over civil actions arising under the patent statute, cases involving the ownership of patent rights are generally matters of state law. 28 U.S.C. § 1338; see American Telephone and Telegraph Co. v. Integrated Network Corp., 972 F.2d 1321 (Fed. Cir. 1992); Kennedy v. Wright, 676 F.Supp 888, 891 (C.D. Ill. 1988).

Texas corporate law holds that corporate officers and directors are fiduciaries. See Gatlin v. GXG, Inc., 1994 WL 137233, *3 (Tex. App. 1994); International Bankers Life Insurance Co. v. Holloway, 368 S.W.2d 567, 576 (Tex. 1963). An officer of a corporation, by virtue of his authority, privileges and trust, has a strict fiduciary obligation to the corporation. See Innovo Group, Inc. v. Tedesco, 1996 WL 580465, *7 (Tex. App. 1996), citing Holloway, 368 S.W.2d at 576. Any question about the existence of a fiduciary duty is a question of law for the court's determination. See King v. Associated Air Center, Inc., 1991 WL 284483, *4 (Tex. App. 1991), citing Fuqua v. Taylor, 683 S.W.2d 735, 737 (Tex. App. 1984).

Texas corporation law applies the "corporate opportunity" doctrine where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. See United Teachers Associates Insurance Co. v. MacKeen & Bailey, Inc., 99 F.3d 645, 651 (5th Cir. 1996), citing In re Safety International, Inc., 775 F.2d 660, 662 (5th Cir.1985). A corporate fiduciary is under obligation not to usurp corporate opportunities for personal gain. See King, 1991

WL 284483 at *6, citing <u>Holloway</u>, 368 S.W.2d at 576-77.  When a corporate officer or director diverts a corporate opportunity to himself, he breaches his fiduciary duty of loyalty to the corporation.  <u>See</u> <u>MacKeen</u>, 99 F.3d at 651.

To establish breach of fiduciary duty by usurping a corporate opportunity, the corporation must prove that an officer or director misappropriated a business opportunity that properly belongs to the corporation.  <u>See</u> <u>Icom Systems v. Davies</u>, 990 S.W.2d 408, 410 (Tex. App. 1999), citing <u>Holloway</u>, 368 S.W.2d at 576-78 and <u>Alexander v. Sturkie</u>, 909 S.W.2d 166, 169 (Tex. App. 1995).  The business opportunity arises where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity.  <u>See</u> <u>Icom</u>, 990 S.W.2d at 410.

The test for whether a corporation has an interest or expectancy in the business opportunity is the "in the line of business" test.  <u>See</u> <u>Id.</u>  Where a corporation is engaged in a certain business, and an opportunity is presented to it as to which it has fundamental knowledge, practical experience and ability to pursue, the opportunity is in line of the corporation's business.  <u>See</u> <u>id.</u>, citing <u>Imperial Group v. Scholnick</u>, 709 S.W.2d 358 (Tex. App. 1986).

The leading Texas case regarding the duty of fiduciaries to assign patents is <u>Davis v. Alwac Int'l, Inc.</u>, 369 S.W.2d 797 (Tex. Civ. App. 1963).  In that case, appellant Davis (not to be confused with Mr. Daniel E. Davis of this lawsuit) was a vice president, director and part owner of a business enterprise.  While serving in these capacities, he made an invention.  A dispute over ownership of the invention ensued between him and the business enterprise.  The court concluded that Davis, as a fiduciary, had an obligation to assign his rights in the invention to the corporation.  He appealed, arguing that his name was listed on the applications pending as a co-inventor.  This was done while he was still serving as an officer and director of the company.  The court ruled that as a fiduciary, he should have exercised the utmost good faith in all transactions related to his duties.  Among these is the obligation to assign to the corporation for its benefit any invention which he may develop while occupying such a position and which relate

to the occupation of the corporation.  369 S.W.2d at 802.

In the instant matter, Mr. Davis was president and managing director of FFC USA.  As an officer of the corporation, Mr. Davis occupied a position of privilege, authority and trust and as such, owed a strict fiduciary relationship to the corporation.  When he came to FFC USA, Mr. Davis had no patentable crawler crane design until after he started working there.  Indeed, Mr. Davis could not himself do the work to support a patent.  In fact, the unique crawler crane design was developed after he started working for FFC USA in his capacity as fiduciary.

In his affidavit, Mr. Davis states that he came to FFC USA with his crawler crane design already developed [Dkt. No. 63, Exh. K].  The affidavit of engineer James Alan Rusk corroborates this claim [Id. at Exh. M].  However, affidavits that contradict prior testimony cannot be used to manufacture a genuine issue of material fact without explanation.  See Doe v. Dallas I.S.D., 220 F.3d 380, 386 (5th Cir. 2000).  Indeed, a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.  Id.  These affidavits contradict Mr. Davis' own, earlier deposition testimony that he came to FFC USA with only an idea for the unique crawler crane design, and had no plans, patents, or any working models [Davis Deposition, pg. 35, line 15 - pg. 37, line 4 and Exh. 29 attached thereto].  Indeed, Mr. Davis could not himself do the work to support the patent [Davis Deposition, pg. 45-48].  Yet, Mr. Davis gives no explanation how he could now claim that he had developed the unique crawler crane concept prior to his employ with FFC USA.  It is also peculiar that these contentions were not claimed by Mr. Davis previously in the course of litigation, either in response to FFC USA's earlier motion for summary judgment [Dkt. Nos. 28 & 48] or in submission of the Parties' Joint Pretrial Orders [Dkt. Nos. 51 & 55].  By these affidavits Mr. Davis cannot, at the eleventh hour, manufacture an issue of fact to defeat a motion for summary judgment.

Mr. Davis oversaw the development of the unique crawler crane design.  Mr. Davis directed a design team comprising of engineers with whom Mr. Davis had no personal contracts, and who were paid directly by FFC USA.  This unique crawler crane

10

design related to the business of FFC USA of designing, developing, manufacturing and selling cranes. Mr. Davis actively marketed the crawler crane on behalf of FFC USA at trade shows. All these circumstances show that FFC USA had a legitimate expectancy in, and the financial resources to take advantage of, the unique crawler crane such that Mr. Davis was under a strict fiduciary duty not to usurp it. That Mr. Davis allegedly demanded royalties is of no consequence, absent an enforceable contract which altered FFC USA's right to the patent vis a vis Mr. Davis' fiduciary duty to the corporation.[1] As discussed _supra_, at no time was there an enforceable agreement in place which would trump the operation of the default rules of corporate law regarding Mr. Davis' strict fiduciary duties. Mr. Davis had an obligation to exercise the utmost good faith in all transactions related to his duties. Among these is the obligation that any invention which he may develop while occupying such a position and which relate to the business of the corporation must be assigned to the corporation for its benefit.

Therefore, the Court **ORDERS** that Mr. Davis **ASSIGN** the patent to FFC USA. As such, all of the design drawings, trade secrets, and other confidential information related to the crawler crane design properly belong FFC USA.

## V.     Conclusion

In sum, the Court:

1)     **GRANTS** Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting

---

[1] Mr. Davis claimed that he demanded royalties in response to the shop right argument, and not in response to the argument that Mr. Davis owed FFC USA strict fiduciary duties. Since the Court finds that the patent should be assigned to FFC USA, it need not address FFC USA's alternative shop right argument. However, of particular note is the fact that Mr. Davis never addressed the fiduciary duty argument in the context of his obligation not to usurp a corporate opportunity in his fiduciary capacity.

11

Memorandum [Dkt. No. 61].  As such, the Court **ORDERS** that Mr. Davis **ASSIGN** U.S. Patent No. 6,003,252 for the unique crawler crane design to FFC USA, and that all of the design drawings, trade secrets, and other confidential information related to the crawler crane design properly belong FFC USA; and

2)     **DENIES** Plaintiff Daniel E. Davis' Response and Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63].

DONE at Brownsville, Texas, this _____ day of March 2001.

Hilda G. Tagle
United States District Judge

12

United States District Court
Southern District of Texas
RECEIVED

JUL 0 6 2001

Michael N. Milby, Clerk

LAW OFFICES OF

# ERNEST GAMEZ, JR., P.C.

ERNEST GAMEZ, JR.
YVONNE MARIE GOMEZ
VICTOR QUINTANILLA
SEAN P. BELLEVILLE

777 E. HARRISON
BROWNSVILLE, TEXAS 78520-7118
TELEPHONE (956) 541-3820
FAX (956) 541-7694

July 6, 2001

Mr. Michael N. Milby                    **VIA HAND-DELIVERY**
U. S. District Clerk
600 E. Harrison Street
Brownsville, Texas   78520

Re: Daniel E. Davis vs. Favelle Favco Cranes, USA, Inc.; Civil
    Action B-00-003; Civil Action No. B-00-184

Dear Mr. Milby:

Enclosed herewith is **Plaintiffs' Request for Permission to Appeal
Interlocutory Orders** for filing with the Court in the above-styled
and numbered civil action.

A copy of same has been forwarded to opposing counsel as noted
below.

Thanking you in advance for your professional courtesy and
attention in this matter.

Respectfully,

LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.

VICTOR QUINTANILLA

VQ/er

Enclosures

xc: Hon. Gary Gurwitz        **VIA CM RRR #7099 3220 0006 2779 6726**
    ATLAS & HALL, L.L.P.
    Professional Arts Building
    818 Pecan, P.O. Box 3725
    McAllen, Texas  78502-3725