94

United States District Court
Southern District of Texas
FILED

JUL 1 3 2001

Michael N. Milby
Clerk of Court

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

| | | |
|---|---|---|
| **DANIEL E. DAVIS** | § | |
| | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. B-00-003** |
| | § | |
| **FAVELLE FAVCO CRANES** | § | |
| **USA, INC., and FAVELLE CRANES** | § | |
| **(M) SDN BHD** | § | |

| | | |
|---|---|---|
| **FAVELLE FAVCO CRANES USA, INC.** | § | |
| | § | |
| **VS.** | § | |
| | § | |
| **DANIEL E. DAVIS, DAVISCO INC. and** | § | |
| **COBURN INTERNATIONAL** | § | |
| | § | **CIVIL ACTION NO. B-00-184** |
| **VS.** | § | |
| | § | |
| **FAVELLE FAVCO CRANES USA, INC.,** | § | |
| **FAVELLE FAVCO CRANES (M) SDN BHD,** | § | |
| **and FAVELLE FAVCO HOLDINGS SDN BHD** | § | |

### PLAINTIFFS' OBJECTIONS TO THE COURT'S ORDERS
### AND SECOND MOTION FOR RECONSIDERATION

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS:**

COME NOW, **DANIEL E. DAVIS, ET. AL.,** Plaintiffs in the above-styled and numbered civil action, and file these **Plaintiffs' Objections to the Court's Orders** signed and entered on **March 7, 2001 and July 3, 2001, respectively, and Second Motion for Reconsideration,** and in support thereof, would respectfully show this Honorable Court the following:

# I.

## BRIEF STATEMENT OF THE ISSUES

1.01    The principal issues in these Objections and Second Motion for Reconsideration are

as follows:

> **(1)** Whether Plaintiff Daniel E. Davis conceived and/or developed the idea or concept of the Davis Crawler Cranes before being employed by Favelle Favco Cranes USA, Inc.;
>
> **(2)** Whether there is a valid Shareholders' Agreement between Plaintiff Daniel E. Davis and the Defendants FFC Parties.; and
>
> **(3)** Whether Plaintiff Daniel E. Davis owns the patent for the invention of the Davis Crawler Cranes or the Defendants FFC Parties own the patent for the invention of the Davis Crawler Cranes.

# II.

## THE RECORD IS REPLETE WITH EVIDENCE WHICH RAISE AND ESTABLISH GENUINE ISSUES OF MATERIAL FACT IN THIS CASE

2.01    Plaintiffs would show this Honorable Court that there is plenty of evidence which was

before this Honorable Court which create genuine issues of material fact as to the issues outlined in

the foregoing paragraph 1.01 of these Objections and Second Motion for Reconsideration.  This

evidence includes, but is not limited to the following:

(1) the **Oral and Videotaped Deposition of Daniel E. Davis ( taken on May 11, 2000 and May 12, 2001);**

(2) the **Affidavit of Daniel E. Davis (signed on February 22, 2001);**

(3) the **Affidavit of James Alan Rusk (signed on February 19, 2001);**

(4) the **Caterpillar-Manitex Crawler Proposal** by J.A.Rusk Engineering **(prepared on February 20, 1997);**

CAMPDF - www.feniso.com

(5) the **Drawings** prepared by James Alan Rusk of J.A. Rusk Engineeing **(February 20, 1997);**

(6) the **Telephonic Video Deposition of Richard Howard Robey (taken on October 12, 2000);**

(7) the **written report of Richard Robey (signed on July 31, 2000);**

(8) the **testimony of Richard H. Robey from the Temporary Injuction hearing** in the 107th Judicial District Court of Cameron County, Texas **(November 8, 1999);**

(9) the **testimony of Mac Ngan Boon from the Temporary Injunction hearing** in the 107th Judicial District Court of Cameron County, Texas **(November 8, 1999); and**

(10) the **Amended Joint Pretrial Order (filed on January 31, 2001).**

## III.

## <u>BRIEF BACKGROUND FACTS</u>

3.01    Plaintiff Daniel E. Davis (hereinafter referred to as **"Mr. Davis")** was previously employed as the President and Managing Director of Favelle Favco Cranes USA, Inc. (hereinafter referred to as **"FFC USA"**) at its plant in Harlingen, Cameron County, Texas. **(See Amended Joint Pretrial Order, page 20, item 4).**   Mr. Davis was employed by FFC USA from on or about **September 4, 1997** through **September 8, 1999. (See Amended Joint Pretrial Order, page 14, item 2; and page 20, item 4).**

3.02    Mr. Davis and the Defendants entered into an Employment Contract on **June 23, 1997** by which he was hired as the President and Managing Director of FFC USA, and Mr. Davis agreed to bring to FFC USA a line of new and unique crawler cranes **(i.e. "Davis Crawler Cranes"). (See Amended Joint Pretrial Order, page 6, item 4).**

3.03    Prior to his employment with FFC USA, Mr. Davis was employed by the **Manitowoc Company** as an officer and Managing Director.  The period of employment was between 1994 and 1997.  At **Manitowoc,** Mr. Davis was responsible for marketing and selling crawler cranes in Indonesia, Singapore, Thailand, Korea, Vietnam and the whole Southeast Asia area.

3.04    On or about **August 16, 1997,** Mr. Davis executed a Shareholders' Agreement between him and Defendant Favelle Favco Cranes (M) SDN BHD, hereinafter referred to as **"FFC Malaysia". (See Amended Joint Pretrial Order, page 7, item 17).**  Although Mr. Davis returned the Shareholders' Agreement to the Defendants, it was not signed by them.

3.05    Pursant to the Shareholders' Agreement, FFC Malaysia was to pay Mr. Davis for a period of **three (3) years** from **August 16, 1997** royalty fee of one percent (1%) of the sale price for the sale of each crawler crane manufactured or assembled pursuant to Mr. Davis' patented invention. **(See Amended Joint Pretrial Order, page 8, item 18).**

3.06    On or about **April of 1999,** the Defendants, by and through their agent, employee, and/or representative, Yee Yang Chien, requested Mr. Davis to agree to changes in the Shareholders' Agreement and to execute a **"New Shareholder's Agreement for FFC-USA".**  This document entitled **"New Shareholder's Agreement for FFC-USA"** included, among other issues, the issue of Mr. Davis being recognized as the inventor and owner of the patents to the Davis Crawler Cranes design. **(See Amended Joint Pretrial Order, page 8, item 19).**

3.07    On or about **September 8, 1999,** Mr. Davis was terminated from his employment with FFC USA without cause. **(See Amended Joint Pretrial Order, page 7, item 15).**

Cib PDF - www.tesiss.com

## IV.

## ORDERS SUBJECT OF PLAINTIFFS' OBJECTIONS AND
## SECOND MOTION FOR RECONSIDERATION

4.01    Plaintiffs **object** to this Honorable Court's Orders Granting Defendants'

Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Denying

Plaintiffs' Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights,

signed on **March 7, 2001.** A true and correct copy of said Order is attached hereto as **Exhibit**

**"A",** and incorporated herein by reference the same as if fully copied and set forth at length.

Plaintiffs contend that this Honorable Court either disregarded or excluded several key pieces of

evidence that raise genuine issues of material fact and accordingly defeat Defendants FFC Parties'

Supplemental Motion for Partial Summary Judgment.

4.02    Plaintiffs **also object** to the Order signed and entered by this Honorable Court on

**July 3, 2001** by which this Honorable Court denied Plaintiffs' Motion for Reconsideration and

Motion for Leave to Take Deposition of Dennis Sanchez and Request to Take Mr. Sanchez'

Deposition in Camera. A true and correct copy of said Order is attached hereto as **Exhibit "B"**,

and incorporated herein by reference the same as if fully copied and set forth at length. These

Motions were timely filed in response to this Honorable Court's Order Granting Defendants'

Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Denying

Plaintiffs' Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights.

4.03    Plaintiffs agree with the Order signed by this Honorable Court on **January 23,**

**2001** and entered on **January 24, 2001,** by which the Court denied Defendant Favelle Favco

Cranes USA, Inc.'s Motion for Summary Judgment and Brief in Support Thereof. A true and

correct copy of said Order is attached hereto as **Exhibit "C",** and incorporated herein by

reference the same as if fully copied and set forth at length.  In said Order, this Honorable Court

properly ruled that a material issue of fact existed as to whether FFC USA or FFC Malaysia

acknowledged Mr. Davis as the owner of the crawler crane design and agreed to license its use

from Mr. Davis.  The Court's ruling revolved around the Shareholders' Agreement, signed by Mr.

Davis on August 17, 1997.  In its Order signed on January 23, 2001, this Honorable Court held

that the Shareholders' Agreement need not have been signed by FFC Malaysia or FFC USA for it

to be effective; the companies need only have conformed its actions to the terms of the

Shareholders' Agreement concerning Mr. Davis for there to be an enforceable agreement between

them.  **(See January 23, 2001 Order, Exhibit "C", page 4).**


## V.

## DOCUMENTS RELIED UPON BY PLAINTIFFS IN MAKING THEIR OBJECTIONS AND IN SUPPORT OF THEIR SECOND MOTION FOR RECONSIDERATION

5.01     Plaintiffs rely on the following documents and/or items in support of their

Objections to the Court's Orders, and their Second Motion for Reconsideration:

(1)     Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum **(February 15, 2001)** and accompanying attachments and/or exhibits;

(2)     Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights **(February 22, 2001)** and all accompanying attachments and/or exhibits;

(3)     Defendant FFC Parties' Reply to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment **(February 27, 2001)** and any accompanying attachments and/or exhibits;

(4)    Order Granting Defendants' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Denying Plaintiffs' Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights **(February 28, 2001);**

(5)    Order (giving a fuller explanation of the Court's ruling on February 28, 2001) **(March 8, 2001);**

(6)    Plaintiffs' Motion for Reconsideration **(March 19, 2001)** and all accompanying attachments and/or exhibits;

(7)    Defendant FFC Parties' Response to Plaintiffs' Motion for Reconsideration **(March 30, 2001)** and all accompanying attachments and/or exhibits;

(8)    Davis' Reply to Defendants' Response to Motion for Reconsideration and Motion for Leave to Take Deposition of Dennis Sanchez **(April 12, 2001)** and all accompanying attachments and/or exhibits;

(9)    Defendant FFC Parties' Response to Plaintiffs' Motion for Leave to Take Deposition of Dennis Sanchez **(May 3, 2001)**;

(10)    Defendant FFC Parties' Supplemental Response to Plaintiffs' Motion for Reconsideration **(May 3, 2001);**

(11)    Plaintiffs' Reply to Defendants' Response to Motion for Leave to Take Deposition of Dennis Sanchez and Reply to Supplemental Response to Motion for Reconsideration **(May 8, 2001);**

(12)    Plaintiffs/Counter-Plaintiffs' Request for Trial Setting **(May 8, 2001);**

(13)    Davis' Request for the Court to Take Dennis Sanchez' Deposition *in Camera* **(May 15, 2001);**

(14)    Defendant FFC Parties' Response to Davis' Request for the Court to Take Deposition of Dennis Sanchez' Deposition *in Camera* **(May 18, 2001);**

(15)    Deposition FFC Parties' Response to Plaintiffs' Motion for Trial Setting **(May 18, 2001);**

(16)    Davis' Response to FFC's Objection to Trial Setting **(May 21, 2001);**

(17)    Davis' Response to FFC's Objection to Taking Dennis Sanchez' Deposition *In Camera* **(May 21, 2001);**

(18)   Defendant FFC Parties' Reply to Davis' Response to FFC's Objections to Taking Dennis Sanchez' Deposition *in Camera* **(May 25, 2001);**

(19)   Defendant FFC Parties' Reply to Davis' Response toFFC's Objection to Trial Setting **(May 25, 2001);**

(20)   Davis' Reply to FFC's Objection to Trial Setting **(May 30, 2001);**

(21)   Davis' Reply to FFC's Objection to Taking Dennis Sanchez' Deposition (*In Camera* **(May 30, 2001);** and

(22)   Order Denying Plaintiffs' Motion for Reconsideration and Motion for Leave to Take Deposition of Dennis Sanchez and Denying the Request to Take Mr. Sanchez's Deposition *in Camera* **(July 3, 2001)**

5.02   Pursuant to Rule 201 of the Federal Rules of Civil Procedure, Plaintiffs hereby move this Honorable Court to take judicial notice of all of the documents listed in the foregoing paragraph 5.01 as said documents are already part of the Court's file and to avoid duplicating and attaching them as exhibits to these Objections.

**VI.**

**THIS COURT ERRED IN DISREGARDING AND/OR EXCLUDING SEVERAL KEY PIECES OF SUMMARY JUDGMENT EVIDENCE**

6.01     Plaintiffs contend that this Honorable Court disregarded and/or did not consider the following evidence in granting Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment on **February 28, 2001**, and in denying Plaintiffs' Motion for Reconsideration and Motion to Take Deposition of Dennis Sanchez and Request to Take Mr. Sanchez' Deposition in Camera on **July 3, 2001**:

     (1) the **Oral and Videotaped Deposition of Daniel E. Davis ( taken on May 11, 2000 and May 12, 2001);**

     (2) the **Affidavit of Daniel E. Davis (signed on February 22, 2001);**

     (3) the **Affidavit of James Alan Rusk (signed on February 19, 2001);**

     (4) the **Caterpillar-Manitex Crawler Proposal** by J.A.Rusk Engineering **(prepared on February 20, 1997);**

     (5) the **Drawings** prepared by James Alan Rusk of J.A. Rusk Engineeing;

     (6) the **Telephonic Video Deposition of Richard Howard Robey (taken on October 12, 2000);**

     (7) the **written report of Richard Robey (signed on July 31, 2000);**

     (8) the **testimony of Richard H. Robey from the Temporary Injuction hearing** in the 107th Judicial District Court of Cameron County, Texas **(November 8, 1999);**

     (9) the **testimony of Mac Ngan Boon from the Temporary Injunction hearing** in the 107th Judicial District Court of Cameron County, Texas **(November 8, 1999);**

    (10) the **Amended Joint Pretrial Order (filed on January 31, 2001); and**

    (11) the **anticipated testimony of Dennis Sanchez.**

9

6.02    Plaintiffs would show this Honorable Court that copies of the aforementioned **items 1 through 9** were attached as exhibits to Plaintiffs' Response to Defendant FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum and Cross-Motion for Partial Summary Judgment on Patent Ownership and Shop Rights and filed with the Court on **February 22, 2001.** The Amended Joint Pretrial Order **(item 10)** was filed with the Court on **January 31, 2001.** As to **item 11,** a Motion for Leave to Take Deposition of Dennis Sanchez was filed with the Court on **April 12, 2001** in which Plaintiffs explained to this Honorable Court why Mr. Sanchez' testimony would be helpful in explaining to this Honorable Court the negotiation and finalization of the subject Shareholders' Agreement.

## ARGUMENT ON OBJECTONS TO THE COURT'S ORDERS

## VII.

### POINT NO. 1: THE COURT ERRED IN RULING THAT MR. DAVIS' AFFIDAVIT CONTRADICTED HIS DEPOSITION TESTIMONY

7.01    The general rule for considering a motion for summary judgment is that a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corporation v. Bone*, 622 F.2d 887, 893 (5th Cir. 1980). Thus, a genuine issue can exist by virtue of a party's affidavit even if it conflicts with earlier testimony in the party's deposition.

7.02    Plaintiffs **object** to the following rulings of this Honorable Court with respect to **Mr. Davis' affidavit** as contained in its July 3, 2001 Order:

> **(a)** that Mr. Davis' **affidavit** contradicts his own sworn deposition that he had an idea when he came to FFC USA and that he hired engineers on behalf of FFC USA to reduce his idea to a patentable

design **(See July 3, 2001 Order, Exhibit "A", page 5);**

**(b)** that Mr. Davis' **affidavit** does not seek to supplement his deposition testimony, but instead injects totally new evidence of the timing of the work Mr. Rusk did for him **(See July 3, 2001 Order, Exhibit "A", page 7);** and

**(c)** that Mr. Davis' **affidavit** contradicts his deposition and, as such could not at the eleventh hour manufacture a genuine issue of fact to defeat summary judgment **(See July 3, 2001 Order, Exhibit "A", page 7).**

7.03   Plaintiffs hereby respond to the aforementioned rulings of this Honorable Court in the order that said rulings have been listed:

**(a)** Mr. Davis' affidavit **does not contradict** his own sworn deposition.   In fact, Mr. Davis' affidavit merely supplements his deposition testimony.   Mr. Davis,  a fact witness, states in his **affidavit** that between June and August of 1997, he received a copy of the Shareholders' Agreement from Cheam Tek Siong with instructions from him (i.e Cheam) that if the agreement met with his (i.e. Mr. Davis') approval he was to sign it and forward it to Cheam, or if other additions or modifications needed to made, he (i.e. Mr. Davis) was to make them and forward them to Cheam for inclusion. **(See Davis Affidavit, page 2).** The main purpose of the Shareholders' Agreement was to create what became known as Favelle Favco Cranes USA, Inc., to which Mr. Davis would be ten percent (10%) shareholder and to market his crawler crane design with Mr. Davis as the owner of any patent. **(See Davis Affidavit, page 3).**  Favelle Favco Cranes USA, Inc. did not manufacture crawler cranes and Mr. Davis had already developed his new crawler crane concept. **(See Davis Affidavit, page 3).**  Mr. Davis further states in his **affidavit** that preliminary sketches and designs regarding the crawler cranes were prepared prior to his employment with Favelle Favco Cranes USA, Inc.. **(See Davis Affidavit, page 3).**  Mr. Davis' affidavit testimony corroborates Mr. Davis' deposition testimony that there

11

CMPDF - www.fscito.com

were drawings, sketches, and descriptions of the crawler cranes in existence before he came to work at Favelle Favco Cranes USA, Inc. **(See Davis Deposition, page 36, lines 21-25; page 37, lines 1-11; page 44, lines 5-15; page 47, lines 8-21; page 48, lines 6-12; page 49, lines 1-25; page 50, lines 12-15).**

    **(b)Mr. Davis' affidavit does not** interject totally new evidence of the timing of the work Mr. Rusk did for him. On this note, Plaintiffs point out the following:

> **First,** Mr. Davis' affidavit is only five (5) pages in length. (See Davis Affidavit)..
>
> **Second,** Mr. Davis' affidavit does not include any mention of any new evidence of the timing of the work Mr. Rusk did for him. Mr. Davis merely sets forth a brief background history of the Shareholders' Agreement and how he came to sign it. **(See Davis Affidavit, pages 2, 3, and 4).**
>
> **Third,** Mr. Davis also sets forth briefly in his affidavit what he has already testified to, i.e. the preliminary sketches and designs regarding the crawler cranes were prepared prior to his employment with Favelle Favco Cranes USA, Inc. **(See Davis Affidavit, page 3).**
>
> **Fourth,** there is prior evidence already part of the record of the timing of the work Mr. Rusk did for Mr. Davis. This evidence includes, but is not limited to Mr. James Alan Rusk's affidavit, the Caterpillar-Manitex Crawler Proposal, Mr. Rusk's drawings, Mr. Richard Howard Robey's deposition testimony, Mr. Robey's report dated July 31, 2000, Mr. Robey's testimony at the Temporary Injunction hearing on November 8, 1999 before the 107th Judicial District Court of Cameron County, Texas, and Mr. Mac Ngan Boon's testimony at the Temporary Injunction hearing on November 8, 1999 before the 107th Judicial District Court of Cameron County, Texas.

    **(c)** Mr. Davis' affidavit **does not** at the eleventh hour manufacture a genuine issue of material fact to defeat summary judgment. The fact is that there is plenty of evidence available for this Honorable Court to consider and rely on in deciding that there are genuine issues of material fact to

12

defeat summary judgment. As such, there is absolutely no need for Plaintiffs at the eleventh hour to manufacture a genuine issue of material fact. Quite simply, this Honorable Court has failed to properly consider the evidence which Plaintiffs attached to their Response to Defendants FFC Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum.

7.04    On another note, Mr. Davis' **affidavit** and his deposition testimony are consistent with and corroborates the following evidence:

### MR. DAVIS INVENTED THE SUBJECT CRAWLER CRANES PRIOR TO HIS EMPLOYMENT WITH FFC USA AND BROUGHT HIS IDEA WITH HIM TO FFC USA

**(1) Mr. James Alan Rusk's affidavit**---in that Mr. Davis developed the idea and concept for the patent crawler cranes prior to his employment with Favelle Favco Cranes USA, Inc.; that **on or about mid-1996,** he met Mr. Davis and **several months later,** Mr. Davis provided him with several sketches of Mr. Davis' ideas for a new type of crawler crane **(See Rusk Affidavit, page 2)**; that Mr.Davis requested that Mr. Rusk do the engineering work to confirm that Mr. Davis' crane ideas could be made and would work **(See Rusk Affidavit, page 2)**; that engineering drawings and designs regarding the crawler cranes were prepared prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc. **(See Rusk Affidavit, page 2)**

**(2) the Caterpillar-Manitex Crawler Proposal**---in that this proposal was prepared on or about **February 20, 1997,** prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.;

**(3) Mr. Rusk's drawings**---in that these drawings were prepared by Mr. Rusk on or about **February 20, 1997,** prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.;

**(4) Mr. Robey's deposition testimony**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Deposition, page 21, lines 2-4; page 22, lines 1-23; and page 23, lines 1-9)**

13

**(5) Mr. Robey's report dated July 31, 2000**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Report, page 2);**

**(6) Mr. Robey's testimony at the Temporary Injunction hearing on November 8, 1999 before the 107th Judicial District Court of Cameron County, Texas**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Temporary Injunction hearing testimony, page 31, lines 11-14);** and

**(7) Mr. Mac Ngan Boon's testimony at the Temporary Injunction hearing on November 8, 1997 before the 107th Judicial District Court of Cameron County, Texas**---in that Mr. Davis was employed by Favelle Favco Cranes USA, Inc. to promote it and develop crawler cranes **(See Mac Temporary Injunction hearing testimony, page 93, lines 18-22).**

7.05    Based on the foregoing, Plaintiffs contend that this Honorable Court **erred** in determining that **Mr. Davis' affidavit** contradicts his deposition testimony.   Plaintiffs also contend that the aforementioned evidence, at a minimum, raise or establish genuine issues of  material fact which are outlined in Paragraph 1.01 herein.


**VIII.**

**POINT NO.2:  THE COURT ERRED IN  DISREGARDING MR. DAVIS'
DEPOSITION TESTIMONY**

8.01    Plaintiffs **object** to this Honorable Court's ruling that the affidavits of Mr. Davis and Mr. Rusk and accompanying evidence, i.e. Caterpillar-Manitex Crawler Proposal and Rusk drawings contradict Mr. Davis' **deposition** testimony.  **(See July 3, 2001 Order, Exhibit "A", pages 5 and 6).** Plaintiffs contend that this Honorable Court erred in holding that Mr. Davis' **deposition**

unequivocally states that he (i.e. Mr. Davis) had no plans, drawings, patents, or any working models before he was employed by Favelle Favco Cranes USA, Inc. and that nothing contained in Davis' affidavit or any other supporting evidence should be permitted to defeat the clear statements contained in Mr. Davis' **deposition**.

8.02     Mr. Davis' **deposition** testimony relied upon by this Honorable Court to exclude all other evidence is limited expressly to what Davis brought with him **from Manitowoc,** where he was employed before FFC/USA. **(See the Court's Order signed and entered on July 3, 2001, pages 9 and 10, referring to Mr. Davis' deposition, pages 35, 36, 45, and 47)**.  Plaintiffs again point out that every question and response in Mr. Davis' **deposition** is limited to what Mr. Davis brought with him **from Manitowoc. (See Davis Deposition, page 35, lines 12-25, page 36, lines 1-25, page 37, lines 1-24)(Emphasis added).** Mr. Davis' answers to the questions posed by Defendants FFC Parties' lawyer are true, accurate and consistent with all other evidence. The fact of the matter is that Mr. Davis brought nothing with him from **Manitowoc.** (Emphasis added).  Mr. Davis brought his ideas and engineering drawings from **Manitex.**  Therefore, irrespective of a business relationship between Manitowoc and Manitex, they are still separate and distinct corporate entities and it, therefore, cannot be inferred that by merely asking questions regarding one entity that questions are being asked with respect to both entities.

8.03     Similiar to Mr. Davis' affidavit, Mr. Davis' **deposition** testimony is consistent with and corroborates the following evidence:

> **MR. DAVIS INVENTED THE SUBJECT CRAWLER CRANES**
> **PRIOR TO HIS EMPLOYMENT WITH FFC USA AND BROUGHT**
> **HIS IDEA WITH HIM TO FFC USA**

**(1) Mr. James Alan Rusk's affidavit**---in that Mr. Davis developed the idea and concept for the patent crawler cranes prior to his employment with Favelle Favco Cranes USA, Inc.; that **on or about mid-1996,** he met Mr. Davis and **several months later,** Mr. Davis provided him with several sketches of Mr. Davis' ideas for a new type of crawler crane **(See Rusk Affidavit, page 2)**;  that Mr. Davis requested that Mr. Rusk do the engineering work to confirm that Mr. Davis' crane ideas could be made and would work **(See Rusk Affidavit, page 2)**; that engineering drawings and designs regarding the crawler cranes were prepared prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Rusk Affidavit, page 2)**;

**(2) the Caterpillar-Manitex Crawler Proposal**---in that this proposal was prepared on or about **February 20, 1997,** prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.;

**(3) Mr. Rusk's drawings**---in that these drawings were prepared by Mr. Rusk on or about **February 20, 1997,** prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.;

**(4) Mr. Robey's deposition testimony**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Deposition, page 21, lines 2-4; page 22, lines 1-23; and page 23, lines 1-9);**

**(5) Mr. Robey's report dated July 31, 2000**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Report, page 2);**

**(6) Mr. Robey's testimony at the Temporary Injunction hearing on November 8, 1999 before the 107th Judicial District Court of Cameron County, Texas**---in that Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995,** a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Temporary Injunction hearing testimony, page 31, lines 11-14)**; and

**(7) Mr. Mac Ngan Boon's testimony at the Temporary Injunction hearing on November 8, 1997 before the 107th Judicial District Court of Cameron County, Texas**—in that Mr. Davis was employed by Favelle Favco Cranes USA, Inc. to promote it and develop crawler cranes **(See Mac Temporary Injunction hearing testimony, page 93, lines 18-22).**

8.04    The Court elected to disregard all the evidence, except for a portion of Davis' **deposition. (See Davis Deposition, page 35, lines 12-20; and page 37, lines 1-6).** With respect to that portion of Mr. Davis' **deposition** that this Honorable Court did consider, the Court **misread** Mr. Davis' testimony. The Court interpreted Mr. Davis' **deposition** testimony to mean that Mr. Davis did not bring anything with him from anywhere when he was employed by Favelle Favco Cranes USA, Inc. **(See July 3, 2001 Order, Exhibit "A", pages 4, 8, and 9).** Upon reading the said portion of **Mr. Davis' deposition** testimony, it is clear that the questions and answers are limited to Davis not bringing anything with him <u>**from Manitowoc**</u>.   **(See Davis Deposition, page 35, lines 12-20; and page 37, lines 1-6).**

8.05    However, the evidence which was before this Honorable Court (i.e. Mr. James Alan Rusk's affidavit, the Caterpillar-Manitex Crawler Proposal, Mr. Rusk's drawings, Mr. Robey's deposition testimony, Mr. Robey's report dated July 31, 2000, Mr. Robey's testimony at the Temporary Injunction hearing on November 8, 1999, and Mr. Mac Ngan Boon's testimony at the Temporary Injunction hearing on November 8, 1999) clearly details how Mr. Davis developed the unique crawler crane concept **prior** to his employment with FFC USA..

8.06    Based on the foregoing, Plaintiffs contend that this Honorable Court **erred** in disregarding **Mr. Davis' deposition.** Plaintiffs also contend that the aforementioned evidence, together with Mr. Davis' deposition, at a minimum, creates a genuine issue of material fact as to

17

whether or not Mr. Davis conceived and/or developed the idea or concept of the Davis Crawler

Cranes before being employed by Favelle Favco Cranes USA, Inc. and also as to whether or not Mr.

Davis brought his idea or concept of the Davis Crawler Cranes with him to Favelle Favco Cranes

USA, Inc..

**IX.**

.

**POINT NO. 3:THE COURT ERRED IN DISREGARDING THE AFFIDAVIT OF
MR. RUSK(MR. DAVIS' ENGINEER),THE CATERPILLAR-
MANITEX CRAWLER PROPOSAL, AND THE  RUSK DRAWINGS**

9.01    Plaintiffs **object** to this Honorable Court's ruling that **Mr. Rusk's affidavit** clearly

contradicts Mr. Davis' deposition testimony that Mr. Rusk was hired to peform engineering work on

his crawler crane concept after Mr. Davis became President and Managing Director of Favelle Favco

Cranes USA, Inc. **(See July 3, 2001 Order, page 6).**

9.02    Mr. Rusk, an engineer, was listed by the Plaintiffs in their Amended Witness List.

This Amended Witness List was attached to the Amended Joint Pretrial Order which was filed in this

case on **January 31, 2001.  (See Amended Joint Pretrial Order, Amended Witness List of

Plaintiffs, page 8, no. 15).**  Mr. Rusk is identified as an engineer who has knowledge of the

conversations and/or communications he had with Mr. Davis in regard to Mr. Davis' ideas and

concepts of the subject crawler cranes.  Mr. Rusk is also identified as having knowledge of the

engineering drawings and/or plans he prepared in regard to the subject crawler cranes.  Mr. Rusk is

also identified as having knowledge of the sketches of the subject crawler cranes prepared by Mr.

Davis.  Furthermore, Mr. Rusk is identified as having knowledge of the contents and/or subject

matter of the documents entitled "Caterpillar-Manitex Crawler Proposal" (02/20/97).  **(See Amended**

18

CVisPDF - www.fasiso.com

**Joint Pretrial Order, Amended Witness List of Plaintiffs, page 8, no. 15).**

9.03   **Mr. Rusk's affidavit** clearly explains to this Honorable Court the following facts:

(1) **In 1996,** Mr. Rusk worked with Mr. Davis to do the engineering work  to confirm that Mr. Davis' ideas and concepts regarding the crawler cranes could be made and would work. **(See Rusk Affidavit, pages 1 and 2).**

(2) that he worked with Mr. Davis and Manitex in February of 1997 to complete the engineering work that confirmed Mr. Davis' crawler cranes concepts and designs **(See Rusk Affidavit, page 2);**

(3) Mr. Rusk acquired information from Jim Hopkins at  Caterpillar and Caterpillar engineers to confirm the  engineering  calculations for Mr. Davis' crawler crane concepts and designs **(See Rusk Affidavit, page 2);**

(4) **In February of 1997,** Mr. Rusk completed the initial engineering work for Mr. Davis' crawler crane concepts and design. Mr. Rusk's engineering included mechanical, hydraulic, and electrical work **(See Rusk Affidavit, page 2);**

(5) Mr. Rusk's engineering work confirmed that Mr. Davis' crawler crane concepts and design could be made, used and would work **(See Rusk Affidavit, page 2);;**

(6)   **Before the end of February of 1997,** Mr. Rusk created engineering drawings of  some of Mr. Davis' crawler crane concepts and designs **(See Rusk Affidavit, page 2); and**

(7) Some of the drawings created by Mr. Rusk in **February of 1997** were included in the patent that was granted to Mr. Davis  **(See Rusk Affidavit, page 2).**

9.04   As to the **Caterpillar-Manitex Crawler Proposal** and **drawings** prepared by Mr.

Rusk, the engineer consulted by Mr. Davis, they are not clearly contradictory with Mr. Davis'

deposition testimony and position in this case.  In fact, these documents **do  not** contradict Mr. Davis'

testimony.  Rather, the **Caterpillar-Manitex Crawler Proposal and drawings** prepared by Mr.

CSIsPDF - www.fesolu.com

Rusk support Mr. Davis' deposition testimony as follows:

(1) The **Caterpillar-Manitex Crawler Proposal** and **drawings** clearly indicate on their face that these items were prepared by Mr. Rusk on or about **February 20, 1997.** It is also quite clear that these items were created and/or prepared by Mr. Rusk **prior** to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.. The dates on these items speak for themselves.

(2) Furthermore, the **Caterpillar-Manitex Crawler Proposal** contains specific information about Mr. Davis' crawler crane ideas and/or concepts, including, but not limited to preliminary specification comparisons, description of production work to be done, suggested equipment list and estimated costs, estimated development costs, and sketches and/or drawings of the cranes. The specifications, designs, and drawings contained in the **Caterpillar-Manitex Crawler Proposal** clearly indicate that said information was from **Manitex** and **not Manitowoc.** As such, the **Caterpillar-Manitex Crawler Proposal** substantiates Mr. Davis' deposition testimony that he did not bring anything from **Manitowoc.**

(3) The **Caterpillar-Manitex Crawler Proposal** and **drawings** also substantiate Mr. Davis' deposition testimony that there were drawings, sketches, and descriptions of the crawler cranes in existence before he came to work at Favelle Favco Cranes USA, Inc. **(See Davis Deposition, pages 36, 37, 44, 47, 48, 49, and 50, respectively);**

(4) The **Caterpillar-Manitex Crawler Proposal** and **drawings** also substantiate Mr. Davis' deposition testimony that the idea of the crawler cranes was conceived and developed prior to his employment with Favelle Favco Cranes USA, Inc.. **(See Davis Deposition, page 41,lines 7-10; page 43, lines 1-25; and page 44, lines 5-15).**

9.05 Based on the foregoing, Plaintiffs contend that this Honorable Court **erred** in disregarding **Mr. Rusk's affidavit, the Caterpillar-Manitex Crawler Proposal, and Mr. Rusk's drawings.** Plaintiffs also contend that these documents, at a minimum, establish a genuine issue of material fact as to whether or not Mr. Davis conceived and/or developed the idea or concept of the

Davis Crawler Cranes before being employed by Favelle Favco Cranes USA, Inc. and also as to whether or not Mr. Davis brought his idea or concept of the Davis Crawler Cranes with him to Favelle Favco Cranes USA, Inc..

**X.**

**POINT NO. 4: <u>THE COURT ERRED IN DISREGARDING RICHARD ROBEY'S DEPOSITION TESTIMONY, ROBEY'S REPORT, AND MR. ROBEY'S TESTIMONY FROM THE TEMPORARY INJUNCTION HEARING</u>**

10.01   Plaintiffs **object** to this Honorable Court's disregarding **Mr. Richard Robey's deposition testimony.**   Plaintiffs contend that **Mr. Robey's deposition testimony** does not contradict Mr. Davis' deposition testimony.   Rather, **Mr. Robey's deposition testimony** supports Mr. Davis' deposition testimony and other evidence in this case.

10.02   Mr. Robey, **a crane marketing and development expert,** was listed by the Plaintiffs in their Amended Witness List.   This Amended Witness List was attached to the Amended Joint Pretrial Order which was filed in this case on January 31, 2001.   **(See Amended Joint Pretrial Order, Amended Witness List of Plaintiffs, page 7, no. 13).**   Mr. Robey is identified as a fact and/or expert witness who has knowledge about the fact that Mr. Davis came up with the concept or idea which is the subject of U.S. Patent No. 6, 003, 252 **("the 252 patent")** issued by the United States Patent and Trademark Office on December 21, 1999.   Mr. Robey is also identified as having knowledge and being familiar with the concept or idea and subject matter invented by Mr. Davis. Additionally, Mr. Robey is identified as having knowledge of the contents of his report dated July 31, 2000 and the discussion of the facts included therein. **(See Amended Joint Pretrial Order,**

21

**Amended Witness List of Plaintiffs, page 7, no. 13).**

10.03   **Mr. Robey's deposition testimony** clearly explains to this Honorable Court the

following facts:

> **(1)** He met with Mr. Davis in Georgetown, Texas in the **summer of 1995 (See Robey Deposition, page 23, lines 1-9);**

> **(2)** Mr. Davis had conceived and discussed the idea of the crawler cranes with him in the **summer of 1995**, a date prior to Mr. Davis' employment with Favelle Favco Cranes USA, Inc.**(See Robey Deposition, page 21, lines 2-4, page 22, lines 1-23, and page 23, lines 1-9);**

> **(3)** Mr. Davis showed Mr. Robey some detailed sketches of Mr. Davis' crawler crane designs made by Mr. Davis before Mr. Davis' began working for Favelle Favco Cranes USA, Inc.**(See Robey Deposition, page 26, lines 12-25; and page 27, lines 1-6);** and

> **(4)** Mr. Davis was the "driving force" behind the Davis Crawler Cranes idea and/or concept **(See Robey Deposition, page 99, lines 5-25; and page 100, line 1).**

10.04   Plaintiffs **also object** to this Honorable Court's disregarding **Mr. Richard Robey's report.**   As to **Mr. Robey's report,** dated July 31, 2000, it was authenticated by him in his deposition taken on October 12, 2000.   The fact that **Mr. Robey's report** is not an affidavit to which Mr. Robey attests personal knowledge of the matters related therein as stated by this Honorable Court in its July 3, 2001 Order is irrelevant.   The fact is that Mr. Robey did testify to and corroborate the contents of his written report in his deposition which was taken under oath.   **Mr. Robey's report** is not inconsistent with Mr. Davis' deposition testimony.   Plaintiffs contend that **Mr. Robey's report does not** contradict Mr. Davis' testimony.   Rather, **Mr. Robey's report** reaffirms Mr. Davis' deposition testimony and position in this case.   **Mr. Robey's report** also explains quite clearly to this Honorable Court the same or similar facts as Mr. Robey's deposition testimony.   **(See Robey Report,**

22

**pages 1-4).**  Even if this Honorable Court finds that Mr. Robey's report is not competent summary judgment evidence, said finding cannot ignore nor replace Mr. Robey's sworn court testimony at the Temporary Injuction hearing on November 8, 1999 or his sworn deposition testimony on October 12, 2000.  This sworn testimony is competent summary judgment evidence.

     10.05   Plaintiffs **further object** to this Honorable Court's ruling that the **testimony of the Temporary Injunction hearing** does not prove that any of the FFC Parties recognized Mr. Davis as having a patentable design before coming to Favelle Favco Cranes USA, Inc. **(See July 3, 2001 Order, Exhibit "A", page 5).**  Plaintiffs contend that this Honorable Court is missing the point.  The point and contention in this case have always been that the idea and concept of the Davis Crawler Cranes have always belong to Mr. Davis and not the Defendants FFC Parties.  As such, Plaintiffs contend that Mr. Robey's testimony at the Temporary Injunction hearing is another piece of evidence that affirms their contention.

     10.06   **Mr. Robey's testimony at the Temporary Injunction hearing** clearly explains to this Honorable Court the following facts:

> **(1)** Mr. Davis came up with the concept or idea to change an excavator or utilize an excavator to also become a crawler crane **(See Robey Temporary Injunction hearing testimony, page 27, lines 19-22);**

> **(2)** Mr. Robey and Mr. Davis had several conversations and then a meeting in the **summer of 1995** in which they discussed Mr. Davis' idea or concept of the crawler cranes **(See Robey Temporary Injunction hearing testimony, page 31, lines 11-14);** and

> **(3)** By the **summer of 1995,** prior to Mr. Davis' employment with FFC USA, Mr. Davis had a **"pretty well flushed out"** idea about the crawler cranes, and had already discussed this idea with Mr. Rusk, the engineer. **(See Robey Temporary Injunction hearing testimony, page 31, lines 18-19).**

23

10.07   Based on the foregoing, Plaintiffs contend that this Honorable Court **erred** in disregarding **Mr. Robey's deposition testimony, Mr. Robey's report, and Mr. Robey's testimony from the Temporary Injunction hearing.**   Plaintiffs also contend that these pieces of evidence, at a minimum, establish a genuine issues of material fact as outlined in paragraph 1.01 herein..

## XI..

### POINT NO. 5: <u>THE COURT ERRED IN DISREGARDING AND/OR EXCLUDING THE TESTIMONY OF MAC NGAN BOON AT THE TEMPORARY INJUNCTION HEARING</u>

11.01   Plaintiffs **further object** to this Honorable Court's ruling that the **testimony of the Temporary Injunction hearing** does not prove that any of the FFC Parties recognized Mr. Davis as having a patentable design before coming to Favelle Favco Cranes USA, Inc. **(See July 3, 2001 Order, Exhibit "A", page 5).**   Plaintiffs again contend that this Honorable Court is missing the point.  The point and contention in this case have always been that the idea and concept of the Davis Crawler Cranes have always belong to Mr. Davis and not the Defendants FFC Parties.   As such, Plaintiffs object to this Honorable Court's disregarding **Mr. Mac Ngan Boon's testimony at the Temporary Injunction hearing.**   Plaintiffs contend that **Mr. Mac's testimony at the Temporary Injuction hearing** does not contradict Mr. Davis' deposition testimony or position in this case. Rather, **Mr. Mac's  testimony at the Temporary Injunction hearing** supports Mr. Davis' deposition testimony and other evidence in this case.

24

11.02   **Mr. Mac's testimony at the Temporary Injunction hearing** clearly explains to this Honorable Court the following facts:

> **(1)** Mr. Davis was employed to promote Favco in the United States and to develop crawler cranes using Caterpillar chassis **(See Mac Temporary Injunction hearing testimony, page 85, lines 1-5; and page 93, lines 18-22);**

> **(2)** Mr. Davis had the idea to convert excavators to cranes, prior to his employment with Favelle Favco Cranes USA, Inc. **(See Mac Temporary Injunction hearing testimony, page 111, lines 21-25; and page 112, lines 1-3);**

> **(3)** Mr. Davis was hired by Favelle Favco Cranes USA, Inc. because he was a good salesman and he had the idea of the crawler cranes **(See Mac Temporary Injunction hearing testimony, page 113, lines 4-6); and**

> **(4)** The crawler cranes were developed at Favelle Favco Cranes USA, Inc. after Mr. Davis began working there **(See Mac Temporary Injunction hearing testimony, page 103, lines 1-7).**

11.03   Based on the foregoing, Plaintiffs contend that this Honorable Court **erred** in disregarding **and/or not considering Mr. Mac'a testimony from the Temporary Injunction hearing.** Plaintiffs also contend that this testimony, at a minimum, establishes genuine issues of material fact as outlined in paragraph 1.01 herein.

## XII.

### POINT NO. 6: <u>THE COURT ERRED IN ITS CONSIDERATION OF THE AMENDED JOINT PRETRIAL ORDER</u>

12.01   Plaintiffs **object** to this Honorable Court's ruling that Mr. Davis admitted in the **Amended Joint Pretrial Order** that he hired several engineers for FFC USA to design and develop

the crawler crane, and that all the work done on the crawler cranes was done after he became President and Managing Director of FFC USA. **(See July 3, 2000 Order, Exhibit "A", page 11).**

12.02   Plaintiffs contend that this Honorable Court disregarded the section of the Amended Joint Pretrial Order that states the opposite of what this Honorable Court considered in its ruling. Specifically, the Amended Joint Pretrial Order includes the following **contested issues of fact:**

(1) When Davis became President, Managing Director and a Director of Favco USA he had no patentable crawler crane design **(See Amended Joint Pretrial Order page 26, item 49);**

(2) Davis had no engineering drawings, manufacturing, drawings, working plans, patents or anything that could be patented, engineering specifications, prototypes or models of the crawler cranes in question at the time he became President, Managing Director and a Director of Favco USA **(See Amended Joint Pretrial Order page 27, item 56);**

(3) All labor used in the manufacture of crawler cranes at the Favco USA facility, or elsewhere, was contracted to and paid for by Favco USA **(See Amended Joint Pretrial Order , page 27, item 61);**

(4) All materials purchased in connection with the crawler crane project were purchased and paid for by Favco USA **(See Amended Joint Pretrial Order , page 27, item 62);**

(5) All design work related to the crawler cranes was done while Defendant was President and Managing Director of Favco USA **(See Amended Joint Pretrial Order, page 27, item 64).**

At trial, additional evidence will corroborate the evidence in this motion, which is the same evidence that was before the court on the cross motions for summary judgment. And at trial, the jury and court can evaluate the credibility of the witnesses. For example, Attorney Dennis Sanchez was hired by Plaintiff Daniel E. Davis to be FFC/USA's corporate attorney and to form FFC/USA based upon the Shareholders' Agreement. Attorney Sanchez had extensive conversations with **MR. DAVIS**, Mac and Cheam concerning the relationship of the parties. Jim Hopkins, a Caterpillar employee, can also testify concerning the state and timing of the development of the Davis crawler cranes. Rusk's affidavit, Rusk's 2/20/97 proposal , Rusk's drawings, obey's deposition testimony (pages 25:6-28-25; 97:13-100:1), Robey's report , Robey's 11/8/99 testimony (pages 31:20-33:5, 33:21-37:4, 48:10-21 and 51:18-52:10) and Mac Boon's 11/8/99 testimony (pages 93:4-94:14 and 102:12-103:12). All such testimony will confirm and verify the evidence in this motion, which evidence is the same that was before the court on the cross motions for summary judgment and responses thereto.

## SECOND MOTION FOR RECONSIDERATION

Based upon the aforementioned objections and argument, Daniel E. Davis requests that this Honorable Court reconsider its' decision in denying his Motion for Reconsideration of the Granting of Favelle Favco Cranes USA, Inc., Motion for Partial Summary Judgment.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs respectfully pray that these

**Objections to the Court's Orders** be included among the papers of this civil action and be noted

by this Honorable Court, and that this Honorable Court grants Plaintiffs such other and further

relief at law or in equity to which Plaintiffs may show themselves justly entitled.

Respectfully Submitted,

**LAW OFFICES OF
ERNESTO GAMEZ, JR, P.C.**

777 East Harrison Street
Brownsville, Texas 78520
TEL/ (956) 541-3820
FAX/ (956) 541-7694

BY: _____

**ERNESTO GAMEZ, JR.**
State Bar No. 07606600
Federal Id. No. 8645

**ATTORNEY IN-CHARGE FOR
PLAINTIFFS**

**\*VICTOR QUINTANILLA**
State Bar No. 00786181
Federal Id. No. 16073

**(\* SIGNED WITH PERMISSION
OF ATTORNEY IN-CHARGE)**

## CERTIFICATE OF CONFERENCE

I, **VICTOR QUINTANILLA**, hereby certify that on the 13th day of July, 2001 I conferred

with Attorney-in-Charge for Defendants' Hon. Lisa Powell to discuss the filing of this **Plaintiffs'**

**Objections to the Court's Orders and Second Motion for Reconsideration** and he advised me

that he is opposed to the filing of this **Plaintiffs' Objections to the Court's Orders and Second**

**Motion for Reconsideration**.

VICTOR QUINTANILLA

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA,** hereby certify that on this 13th day of July, 2001 a true

and correct copy of **Plaintiffs' Objections to the Court's Orders** was served **VIA CM RRR**

**#7099 3220 0006 2779 6757** on Defendants' Attorney-in-Charge, Hon. Gary Gurwitz, **ATLAS**

**& HALL, L.L.P.,** P.O. Drawer 3725, 818 Pecan, McAllen, Texas 78502.

VICTOR QUINTANILLA

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS | & | |
| | & | |
| V. | & | CIVIL ACTION NO. B-00-003 |
| | & | (consolidated with No. B-00-184) |
| FAVELLE FAVCO CRANES USA, INC., | & | |
| and **FAVELLE CRANES (M) SDN BHD**, | & | |
| FAVELLE FAVCO CRANES USA, INC. | & | |
| | & | |
| AND | & | |
| | & | |
| FAVELLE FAVCO CRANES USA, INC. | & | |
| | & | |
| V. | & | |
| | & | |
| DANIEL E. DAVIS, DAVISCO INC. | & | |
| and COBURN INTERNATIONAL | & | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

# EXHIBIT "A"

# ORDER
# MARCH 7, 2001

70

United States District Court
Southern District of Texas
ENTERED

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

MAR 0 8 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-00-003 |
| | § | (consolidated with No. B-00-184) |
| FAVELLE FAVCO CRANES USA, INC. | § | |
| and FAVELLE FAVCO CRANES (M) | § | |
| SDH BHD, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| **AND** | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DANIEL E. DAVIS, | § | |
| DAVISCO INC., and | § | |
| COBURN INTERNATIONAL | § | |
| | § | |
| Defendants. | § | |

## ORDER

BE IT REMEMBERED that the Court previously **GRANTED** [Dkt. No. 69] Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting Memorandum [Dkt. No. 61] and **DENIED** Plaintiff Daniel E. Davis' Response and Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63]. The Court hereby gives a fuller explanation for its rulings.

1

## I.   Contentions of the Parties

Mr. Davis asserts that he conceived of and developed this unique design of crawler crane, such that FFC USA is liable for infringement in its use of the design. FFC USA on the other hand asserts that Mr. Davis usurped its interest in patent of the crawler crane and should be assigned ownership of the patent.

## II. Facts in the summary judgment record

Muhibbidah Engineering (M) BHD has a holding company, Favelle Favco Holdings SDH BHD ("Holdings") for its many subsidiaries, including Favelle Favco Cranes (M) SDH BHD ("FFC Malaysia") and Favelle Favco Cranes, USA ("FFC USA"). FFC USA designs, develops, manufactures, and sells crawler cranes.  Daniel E. Davis served as president and managing director of FFC USA.  In his deposition, Mr. Davis testified that he had no patentable design for crawler cranes.  He was doing conceptual work at his former employer, Manitowac, but had no plans, patents, or any working models from there.  His idea for the crawler crane patent at issue was just that – an idea.

After his employment with Manitowac, Holdings employed Mr. Davis under a written employment contract to be managing director of FFC USA.  The contract did not address the issue of ownership of patents from the development of crawler cranes; in fact, it does not mention crawler cranes at all.

In addition to the aforementioned employment contract, Mr. Davis claims that the terms of his employment were also contained in a Shareholders' Agreement (the "Agreement") between him and FFC Malaysia.  The Agreement as written and endorsed by Mr. Davis is incomplete as to several of its material terms, such as: ¶ 1.1 contains a blank for the date for when the parties would form a corporation; the Constitution referred in ¶ 1.2 is not annexed to the Agreement; and ¶ 2.1 regarding the composition of the board of directors is incomplete.  Furthermore, the cover letter that was sent with the Agreement to Mr. Davis states in no uncertain terms that the enclosures are draft documents that would "need to be reviewed by US lawyers (in

2

particular, Texas lawyers)." Mr. Davis signed the Agreement on August 16, 1997; however, the signature line for FFC Malaysia is blank.

Among the express terms of the draft Agreement were that Mr. Davis would own 10% of FFC USA, that FFC Malaysia would own 90% of FFC USA, and that FFC Malaysia would pay a royalty fee to Mr. Davis in the amount of 1% of the sale of each crane manufactured or assembled pursuant to Mr. Davis' patented invention. However, neither Mr. Davis nor FFC Malaysia conformed their actions to these explicit terms. For example, Coburn International, Ltd., a corporation owned by Mr. Davis, purchased a 10% interest in FFC USA. In addition, Holdings acquired a 90% interest in FFC USA, not FFC Malaysia as recited in the Agreement. Moreover, royalty payments were made by FFC USA to Davisco, a corporation owned by Mr. Davis, and not to Mr. Davis himself. Indeed, FFC Malaysia did not perform at all under the Agreement.

During Mr. Davis' tenure as president and managing director of FFC USA, a particular type of crawler crane was developed. Mr. Davis admits in his deposition that he could not himself do the work to support a patent for this unique crawler crane design. In fact, Mr. Davis hired several contract engineers, including James Alan Rusk, Keith Orgeron, and ECCON on behalf of FFC USA to design and develop the crawler crane. Mr. Davis had no contracts personally with any of these engineers to provide design services involving crawler cranes; all of the work the engineers did was on behalf of FFC USA. FFC USA paid for every aspect of the entire crawler crane project. All work done on the crawler cranes was done after Mr. Davis became president and managing director of FFC USA.

On August 6, 1998 Mr. Davis notified Cheam Tek Siong, Group General Manager for Holdings at the time, that he applied for a patent for the unique crawler cranes in his name only. Mr. Cheam stated in his deposition that he immediately countermanded this act. Despite his application for the patent in his name, he continued to sign agreements on behalf of FFC USA with component suppliers providing that the resulting designs were property of FFC USA. In addition, Mr. Davis promoted the crawler cranes on behalf of FFC USA at trade shows. Mr. Davis received

3

U.S. Patent No. 6,003,252 in his name for the unique crawler crane design in December 1998.

### III. Summary judgment standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).

### IV. Discussion

#### A. The Enforcement of the terms of the Shareholders' Agreement is precluded by the statute of frauds

A promise or agreement is uneforceable unless it is (1) in writing, and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. Tex. Bus. & Com. Code § 26.01(a) (West 2000). These requirements apply to an agreement which is not to be performed within one year from the date of the making of the agreement. Id. at § 26.001(b)(6). Whether a contract falls within the statute of frauds generally is a question of law. Choi v. McKenzie, 975 S.W.2d 740, 743 (Tex. App. – Corpus Christi 1998, pet. denied).

4

The Shareholders' Agreement that Mr. Davis seeks enforcement of comes within the statute of frauds because one of its terms provides that FFC Malaysia is to pay Mr. Davis a royalty fee of 1% for a period of three years, and as such, the period of performance exceeds one year. However, the Shareholders' Agreement is not signed by the entity to be charged, FFC Malaysia. Thus, as a matter of law the statute of frauds bars enforcement of the terms of the Agreement.

### B.    Promissory Estoppel does not save the Agreement from invalidity under the statute of frauds

Promissory estoppel is an equitable defense which circumvents the statute of frauds in limited circumstances when it is necessary to prevent an actual fraud as distinguished from a mere wrong. See Birenbaum, M.D. v. Option Care, Inc., 971 S.W.2d 497, 504 (Tex. App. – Dallas 1997), citing Nagle v. Nagle, 633 S.W.2d 796, 799 (Tex.1982); Coastal Corp. v. Atlantic Richfield Co., 852 S.W.2d 714, 718 (Tex. App. – Corpus Christi 1993). Promissory estoppel is a narrow exception to the defense of the statute of frauds. See Triad Home Renovators, Inc. v. Comerica Bank-Texas, 1999 WL 1080730, *3 (Tex. App. – Houston 1999). In determining whether the equitable defense of promissory estoppel should be used to preclude the operation of the statute of frauds, the Texas Supreme Court has consistently required a showing that non-application of an equitable defense would result in fraud. See Birenbaum, 971 S.W.2d at 503. "To warrant equity's 'breaking through the statute' to enforce a parol contract the case must be such that the nonenforcement of the contract, or the enforcement of the statute would, itself, plainly amount to a fraud." See id., citing Hooks v. Bridgewater, 111 Tex. 122, 128, 229 S.W. 1114, 1116 (1921).

Promissory estoppel precludes a statute of frauds defense in only situations: (1) where the promise to be enforced is to sign a written agreement that would otherwise comply with the statute of frauds, or (2) where there is reliance on a misrepresentation that the statute of frauds had been satisfied. See Triad, 1999 WL 1080730 at *3.

Where summary judgment proof establishes a statute of frauds defense as a

matter of law, the party asserting promissory estoppel must raise a fact issue concerning its applicability.  See id.  If the party asserting promissory estoppel fails to raise a fact issue on any of the elements, a trial court may render summary judgment in the moving party's favor.  Id.

Mr. Davis claims that Mr. Cheam promised him that the Shareholders' Agreement would be signed [Davis Deposition, page 129, lines 11-20].  Therefore, Mr. Davis raises a material issue of fact as to the existence of a promise to sign the Shareholders' Agreement.  However, Mr. Davis fails to raise triable issues of material fact with regards to the other requirements of promissory estoppel, such that he cannot avail himself of the equitable defense against the statute of frauds.

### 1.   The Agreement itself was not a finalized expression as to all material terms

For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written contract that had been prepared and that would satisfy the requirements of the statute of frauds. See National Floral Service, Inc. v. Weingarten Realty Investors, 2000 WL 257822, *5, citing Nagle, 633 S.W.2d at 800. That is, the party asserting promissory estoppel must show that the writing that is the subject of the promise demonstrates the parties have come to a final agreement as to all material terms.  See Birnbaum, 971 S.W.2d at 504.  A complete agreement on the terms and wording of the written contract is required to permit the application of promissory estoppel to a statute of frauds defense. See Coastal, 852 S.W.2d at 718, citing "Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 940 (Tex. 1972).

In H. Molsen & Co. v. Hicks, 550 S.W.2d 354, 356 (Tex. Civ. App. – El Paso 1977, writ ref'd n.r.e.), one of the factors which contributed to the non-application of promissory estoppel was the fact that the sellers' attorney had to approve the contract before it would be executed.  There was no meeting of the minds as to the final terms and no acceptance by the sellers of the writings.  Id.

As stated supra, Mr. Davis raises an issue of material fact that there was a

CibiPDF - www.fastio.com

promise to sign the Shareholders' Agreement.  However, Mr. Davis fails to raise a
genuine issue of material fact that the Agreement was final as to all its material terms.
The draft Agreement is incomplete as discussed in Section I, _supra_, and does not
satisfy the requirements of the statute of frauds.  In addition, the cover letter that was
sent to Mr. Davis with the enclosed Agreement states in no uncertain terms that it is a
"draft document" that would "need to be reviewed by US lawyers[.]"  Therefore, he does
not make out a genuine issue of material fact that the draft Agreement was a finalized
expression as to all material terms to save it from invalidity by the statute of frauds.

> **2.      It was not foreseeable that Davis would rely on the Agreement,
>          and Davis himself did not substantially rely on the Agreement**

        The elements required to prove promissory estoppel through reliance on a
misrepresentation that the statute of frauds had been satisfied are: (i) a promise, (ii)
foreseeability that the promisee would rely on the promise, and (iii) substantial reliance
by the promisee to his detriment.  See Citizens Bank & Trust Co. of Baytown v. Ertel,
2001 WL 26141, *5, citing Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 707 (Tex. App.
– Houston 1988, writ denied).

        Although the Court recognizes that Mr. Davis raises an issue of material fact that
there was a promise to sign the Shareholders' Agreement, Mr. Davis does not raise a
genuine issue of material fact regarding the third necessary element of promissory
estoppel, _i.e._, that he substantially relied on the draft Agreement.  There is no evidence
that either he or FFC Malaysia conformed their actions to the terms of the draft
Agreement.  For example, while the Agreement recites that Davis himself would own
10% of FFC USA, it was Coburn International, Ltd. that purchased a 10% interest in
FFC USA.  Furthermore, although the Agreement stated that royalty fees were to be
paid to Davis, payments were made instead to Davisco, a corporation owned by Mr.
Davis.  In addition, although the Agreement represented that FFC Malaysia would pay
royalties, payments were instead made by FFC USA.  Moreover, although the
Agreement set forth that FFC Malaysia was to acquire 90% of FFC USA, it was FFC

Holdings that acquired the interest. Many of the Agreement's express terms were not carried out by Mr. Davis himself, much less by FFC Malaysia. Since Mr. Davis does not raise a genuine issue of material fact concerning his substantial reliance on the draft Agreement, it does not warrant saving from the operation of the statute of frauds under promissory estoppel.

**C.     Without a contract providing otherwise, as President and Managing Director, Mr. Davis owed FFC USA a fiduciary duty to assign the patent**

Although federal courts have exclusive jurisdiction over civil actions arising under the patent statute, cases involving the ownership of patent rights are generally matters of state law. 28 U.S.C. § 1338; see American Telephone and Telegraph Co. v. Integrated Network Corp., 972 F.2d 1321 (Fed. Cir. 1992); Kennedy v. Wright, 676 F.Supp 888, 891 (C.D. Ill. 1988).

Texas corporate law holds that corporate officers and directors are fiduciaries. See Gatlin v. GXG, Inc., 1994 WL 137233, *3 (Tex. App. 1994); International Bankers Life Insurance Co. v. Holloway, 368 S.W.2d 567, 576 (Tex. 1963). An officer of a corporation, by virtue of his authority, privileges and trust, has a strict fiduciary obligation to the corporation. See Innovo Group, Inc. v. Tedesco, 1996 WL 580465, *7 (Tex. App. 1996), citing Holloway, 368 S.W.2d at 576. Any question about the existence of a fiduciary duty is a question of law for the court's determination. See King v. Associated Air Center, Inc., 1991 WL 284483, *4 (Tex. App. 1991), citing Fuqua v. Taylor, 683 S.W.2d 735, 737 (Tex. App. 1984).

Texas corporation law applies the "corporate opportunity" doctrine where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. See United Teachers Associates Insurance Co. v. MacKeen & Bailey, Inc., 99 F.3d 645, 651 (5th Cir. 1996), citing In re Safety International, Inc., 775 F.2d 660, 662 (5th Cir.1985). A corporate fiduciary is under obligation not to usurp corporate opportunities for personal gain. See King, 1991

8

WL 284483 at *6, citing Holloway, 368 S.W.2d at 576-77. When a corporate officer or director diverts a corporate opportunity to himself, he breaches his fiduciary duty of loyalty to the corporation. See MacKeen, 99 F.3d at 651.

To establish breach of fiduciary duty by usurping a corporate opportunity, the corporation must prove that an officer or director misappropriated a business opportunity that properly belongs to the corporation. See Icom Systems v. Davies, 990 S.W.2d 408, 410 (Tex. App. 1999), citing Holloway, 368 S.W.2d at 576-78 and Alexander v. Sturkie, 909 S.W.2d 166, 169 (Tex. App. 1995). The business opportunity arises where a corporation has a legitimate interest or expectancy in, and the financial resources to take advantage of, a particular business opportunity. See Icom, 990 S.W.2d at 410.

The test for whether a corporation has an interest or expectancy in the business opportunity is the "in the line of business" test. See Id. Where a corporation is engaged in a certain business, and an opportunity is presented to it as to which it has fundamental knowledge, practical experience and ability to pursue, the opportunity is in line of the corporation's business. See id., citing Imperial Group v. Scholnick, 709 S.W.2d 358 (Tex. App. 1986).

The leading Texas case regarding the duty of fiduciaries to assign patents is Davis v. Alwac Int'l, Inc., 369 S.W.2d 797 (Tex. Civ. App. 1963). In that case, appellant Davis (not to be confused with Mr. Daniel E. Davis of this lawsuit) was a vice president, director and part owner of a business enterprise. While serving in these capacities, he made an invention. A dispute over ownership of the invention ensued between him and the business enterprise. The court concluded that Davis, as a fiduciary, had an obligation to assign his rights in the invention to the corporation. He appealed, arguing that his name was listed on the applications pending as a co-inventor. This was done while he was still serving as an officer and director of the company. The court ruled that as a fiduciary, he should have exercised the utmost good faith in all transactions related to his duties. Among these is the obligation to assign to the corporation for its benefit any invention which he may develop while occupying such a position and which relate

9

to the occupation of the corporation.  369 S.W.2d at 802.

In the instant matter, Mr. Davis was president and managing director of FFC USA.  As an officer of the corporation, Mr. Davis occupied a position of privilege, authority and trust and as such, owed a strict fiduciary relationship to the corporation. When he came to FFC USA, Mr. Davis had no patentable crawler crane design until after he started working there.  Indeed, Mr. Davis could not himself do the work to support a patent.  In fact, the unique crawler crane design was developed after he started working for FFC USA in his capacity as fiduciary.

In his affidavit, Mr. Davis states that he came to FFC USA with his crawler crane design already developed [Dkt. No. 63, Exh. K].  The affidavit of engineer James Alan Rusk corroborates this claim [Id. at Exh. M].  However, affidavits that contradict prior testimony cannot be used to manufacture a genuine issue of material fact without explanation.  See Doe v. Dallas I.S.D., 220 F.3d 380, 386 (5th Cir. 2000).  Indeed, a nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.  Id.  These affidavits contradict Mr. Davis' own, earlier deposition testimony that he came to FFC USA with only an idea for the unique crawler crane design, and had no plans, patents, or any working models [Davis Deposition, pg. 35, line 15 - pg. 37, line 4 and Exh. 29 attached thereto].  Indeed, Mr. Davis could not himself do the work to support the patent [Davis Deposition, pg. 45-48].  Yet, Mr. Davis gives no explanation how he could now claim that he had developed the unique crawler crane concept prior to his employ with FFC USA.  It is also peculiar that these contentions were not claimed by Mr. Davis previously in the course of litigation, either in response to FFC USA's earlier motion for summary judgment [Dkt. Nos. 28 & 48] or in submission of the Parties' Joint Pretrial Orders [Dkt. Nos. 51 & 55].  By these affidavits Mr. Davis cannot, at the eleventh hour, manufacture an issue of fact to defeat a motion for summary judgment.

Mr. Davis oversaw the development of the unique crawler crane design.  Mr. Davis directed a design team comprising of engineers with whom Mr. Davis had no personal contracts, and who were paid directly by FFC USA.  This unique crawler crane

10

design related to the business of FFC USA of designing, developing, manufacturing and selling cranes. Mr. Davis actively marketed the crawler crane on behalf of FFC USA at trade shows. All these circumstances show that FFC USA had a legitimate expectancy in, and the financial resources to take advantage of, the unique crawler crane such that Mr. Davis was under a strict fiduciary duty not to usurp it. That Mr. Davis allegedly demanded royalties is of no consequence, absent an enforceable contract which altered FFC USA's right to the patent vis a vis Mr. Davis' fiduciary duty to the corporation.[1] As discussed <u>supra</u>, at no time was there an enforceable agreement in place which would trump the operation of the default rules of corporate law regarding Mr. Davis' strict fiduciary duties. Mr. Davis had an obligation to exercise the utmost good faith in all transactions related to his duties. Among these is the obligation that any invention which he may develop while occupying such a position and which relate to the business of the corporation must be assigned to the corporation for its benefit.

Therefore, the Court **ORDERS** that Mr. Davis **ASSIGN** the patent to FFC USA. As such, all of the design drawings, trade secrets, and other confidential information related to the crawler crane design properly belong FFC USA.

## V.   Conclusion

In sum, the Court:

1)   **GRANTS** Defendant Favelle Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment and Supporting

---

[1] Mr. Davis claimed that he demanded royalties in response to the shop right argument, and not in response to the argument that Mr. Davis owed FFC USA strict fiduciary duties. Since the Court finds that the patent should be assigned to FFC USA, it need not address FFC USA's alternative shop right argument. However, of particular note is the fact that Mr. Davis never addressed the fiduciary duty argument in the context of his obligation not to usurp a corporate opportunity in his fiduciary capacity.

Memorandum [Dkt. No. 61]. As such, the Court **ORDERS** that Mr. Davis **ASSIGN** U.S. Patent No. 6,003,252 for the unique crawler crane design to FFC USA, and that all of the design drawings, trade secrets, and other confidential information related to the crawler crane design properly belong FFC USA; and

2)   **DENIES** Plaintiff Daniel E. Davis' Response and Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No. 63].

DONE at Brownsville, Texas, this _____ day of March 2001.

_____
Hilda G. Tagle
United States District Judge

12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL E. DAVIS                          &

v.                                       &

                                         &   CIVIL ACTION NO. B-00-003
                                         &   (consolidated with No. B-00-184)
FAVELLE FAVCO CRANES USA, INC.,          &
and FAVELLE CRANES (M) SDN BHD,          &
FAVELLE FAVCO CRANES USA, INC.           &

AND                                      &
                                         &
FAVELLE FAVCO CRANES USA, INC.           &
                                         &
v.                                       &
                                         &
                                         &
DANIEL E. DAVIS, DAVISCO INC.            &
and COBURN INTERNATIONAL                 &
* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

# EXHIBIT "B"

# ORDER
# JULY 3, 2001

8 c

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
ENTERED

JUL 0 3 2001

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. B-00-003 |
| | § | (consolidated with No. B-00-184) |
| FAVELLE FAVCO CRANES USA, INC | § | |
| and FAVELLE FAVCO CRANES (M) | § | |
| SDH BHD, | § | |
| | § | |
| Defendants | § | |
| | § | |
| **AND** | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DANIEL E. DAVIS, | § | |
| DAVISCO INC., and | § | |
| COBURN INTERNATIONAL | § | |
| | § | |
| Defendants. | § | |

## ORDER

### I.    Procedural Background

In its previous orders [Dkt. Nos. 69 & 70], the Court granted Defendant Favelle
Favco Cranes USA, Inc., et al.'s Supplemental Motion for Partial Summary Judgment
and Supporting Memorandum [Dkt. No. 61] and denied Plaintiff Daniel E. Davis' Cross
Motion for Partial Summary Judgment on Patent Ownership and Shop Rights [Dkt. No.
63]  As a result of those rulings, Mr. Davis filed his:

    (1) Motion for Reconsideration [Dkt. No. 71],

    (2) Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and

Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and

(3) Request for Trial Setting [Dkt. No. 76].

The Court will address each of these in turn:

## II.   Plaintiff's Motion for Reconsideration [Dkt. No. 71]

### A.   Procedural Rule and Timeliness of Motion

Mr. Davis brings his motion to reconsider under Federal Rule of Civil Procedure 59(e). In addition to Rule 59, Mr. Davis brings his motion as a Federal Rule of Civil Procedure 60(b) motion for relief from judgment. However, Mr. Davis merely quotes portions of Rule 60(b), and does not specify what the "mistake, inadvertence, surprise, or excusable neglect . or any other reason" is for which the Court may relieve him from judgment. Since Mr. Davis does not provide a justification for which the Court should relieve him under Rule 60(b) from the operation of its judgment, the Court will treat his motion as a motion for new trial or amendment of judgment under Rule 59(e).

Rule 59(e) motions must be filed no later than ten (10) days after entry of judgment, excluding intermediate Saturdays and Sundays [Rule 6(a)]. The Court's reasoning was handed down on March 8, 2001; therefore, Mr. Davis' motion under Rule 59(e) was timely filed on March 19, 2001.

### B.   Standard of Review

Under Rule 59, a judgment may be altered or amended after its entry to correct manifest errors of law or fact. Fed. R. Civ. P. 59(a), see Lennar Homes, Inc. v. Masonite Corp., 32 F.Supp.2d 396, 398 (E.D.La. 1998), citing Lavespere v. Niagara Machine & Tool Works, Inc., 910 F.2d 167, 174 (5th Cir 1990), abrogated on other grounds, Little v. Liquid Air Corp., 37 F.3d 1069, 1075 n. 14 (5th Cir.1994) (en banc). Since specific grounds for a motion to amend or alter are not listed in the rule, the district court enjoys considerable discretion to balance the need for finality against the need for justice in granting or denying the motion. See Lavespere, 910 F.2d at 174; Smith v. Pan American Life Ins. Co., 1998 WL 690959, *1 (E.D.La.), citing Edward H.

Bohlin Co. v. Banning Co., 6 F.3d 350, 355 (5th Cir. 1993). However, reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly. See Smith, 1998 WL 690959 at *1. The Court should consider, inter alia, the reasons for the moving party's default, the importance of the omitted evidence to the moving party's case, whether the evidence was available to the non-movant before he responded to the summary judgment motion, and the likelihood that the nonmoving party will suffer unfair prejudice if the case is re-opened. See Fidelity & Deposit Co. of Maryland v. Omnibank, 1999 WL 970526 *3 (E.D.La.), citing Lavespere, 910 F.2d at 174. A Rule 59(e) motion, however, cannot be used to re-litigate issues with new arguments that could and should have been presented before the judgment was rendered. See id., citing Simon v. United States, 891 F.2d 1154, 1159 (5th Cir.1990).

   C.    **Mr. Davis contends that there is a genuine issue of fact regarding patent ownership**

       In his motion for reconsideration, Mr. Davis argues that there is a genuine issue of fact respecting the ownership of United States Patent No. 6,003,252 ("the Patent") which the Court ordered Mr. Davis to assign to FFC USA [Dkt. No. 70]. The crux of Mr. Davis' argument is that the Court improperly disregarded evidence demonstrating that he had a patentable design for the unique crawler crane concept before he became President and Managing Director of FFC USA. Such evidence includes:

       (1)    An unsworn statement entitled "The Robey Report" [Dkt. No. 63, Exh. A] in which Mr. Richard Robey, an employee of Manitex which is a subsidiary of Manitowoc, states that Mr. Davis had fully conceived and partially engineered the product that resulted in the unique crawler crane. This report is not an affidavit to which Mr. Robey attests personal knowledge of the matters related therein. Therefore, the report is not competent summary judgment evidence, and was properly disregarded by the Court.

       (2)    The Robey deposition [Id., Exh. B], in which Mr. Robey testifies that Mr. Davis sketched his crawler crane design in Summer 1995 [Id., 24:7-

3

25.19]  Even if Mr. Davis sketched his crawler crane design in Summer 1995, this does not demonstrate that he had a patentable design before he came to FFC USA.  In order to get a patent, the inventor must "describe his method with sufficient clearness and precision to enable those skilled in the matter to understand what the process is, and if he points out, some practicable way of putting it into operation."  See Pfaff v. Wells Electronics, Inc., 525 U.S. 55, 62, 119 S.Ct. 304, 309, 142 L.Ed 2d 261 (1998)  Mr. Robey does not opine that the sketches from Summer 1995 were sufficiently clear and precise as to be patentable, in fact he actually stated that there were some "technical problems" that would have to be addressed, for which  engineers would come in" [Dkt. No. 63, Exh. B, Robey Deposition, 25 14-22]

Mr. Robey also states that Mr. Davis provided the criteria for engineers to design the crawler crane [id., 97 13-100 1]  Even if Mr. Davis provided engineers with the criteria to design the crawler crane, again, this does not show that Mr. Davis had a patentable design before he came to FFC USA.  Mr. Davis did not have a crawler crane design to be patented before he hired an engineering team while he was FFC USA's President and Managing Director, discussed in Section II, infra. Although Mr. Robey characterizes Mr. Davis as the "driving force" behind the crawler crane idea [Id., 99 10-100 1], there is a vast difference between an idea and a patentable design

(3)   The transcript of the temporary injunction hearing [Dkt. No. 63, Exh. L], in which Mr. Robey testified that "load testing" had not been performed on a prototype of the crane which he saw at a ConExpo trade show in March 1999 also does not raise a fact issue   Mr. Davis was FFC USA's President and Managing Director at that point in time, such that it would be reasonable to infer that if the crawler crane design had been patentable by March 1999, it became patentable during Mr. Davis  tenure

4

as President and Managing Director of FFC USA.

Mr. Robey's testimony also demonstrates that defense counsel knew Manitex was a subsidiary of Manitowac, and is presented by Mr. Davis to argue that defense counsel restricted their questions of Mr. Davis in his deposition to Manitowac and purposely excluded questions regarding Manitex. However, the method of defense counsel's questioning is irrelevant to the facts in the summary judgment record, and as such, need not be considered by the Court.

Mr. Davis also cites the transcript of the temporary injunction hearing to show that Mac Ngan Boon, Managing Director of Muhibbah Engineering [Dkt. No. 28, Exh. D, Mac Deposition, 14:13-15], knew that Mr. Davis had a patent before signing the Employment Contract. However, the excerpt clearly shows that the issue of the ownership of any "patent or concept" was not addressed nor discussed because the company funded every bit of development' [Dkt. No. 63, Exh. L, Transcript of Temporary Injunction Hearing, 94:4-8]. Therefore, this does not prove that any of the FFC Parties recognized Mr. Davis as having a patentable design before coming to FFC USA.

(4)     Mr. Davis' affidavit [Id., Exh. K] in which he states that he had preliminary sketches regarding the crawler crane, and that he developed a unique crawler crane design with the assistance of engineer James Alan Rusk before he became President of FFC USA. This affidavit contradicts Mr. Davis' own sworn deposition testimony that he had an idea when he came to FFC USA and that he hired engineers on behalf of FFC USA to reduce his idea to a patentable design, see Section ii, infra.

(5)     The affidavit of James Alan Rusk [Id., Exh. M], in which Mr. Rusk attests that he worked with Mr. Davis and Manitex in February 1997 when he completed engineering work that confirmed Mr. Davis' crane concepts could be made. In addition, Mr. Rusk attaches a "Caterpillar-Manitex

5

Proposal" which presumably details engineering work for Mr. Davis'
unique crane concept, and drawings dated February 1997 [also at Dkt
No. 63, Exhs. P, Q and R] which he claims are the same as the drawings
that supported the Patent that issued to Mr. Davis. This affidavit also
clearly contradicts Mr. Davis' deposition testimony that Mr. Rusk was hired
to perform engineering work on his crawler crane concept after Mr. Davis
became President and Managing Director of FFC USA, see Section ii
infra

### i.    The Law

The Fifth Circuit does not allow a party to defeat a motion for summary judgment
using an affidavit that impeaches, without explanation, sworn testimony.  See Doe v.
Dallas I.S.D., 220 F.3d 380, 386 (5th Cir. 2000), citing S.W.S. Erectors, Inc. v. Infax,
Inc., 72 F.3d 489, 495 (5th Cir. 1996)

Mr. Davis argues that although the Court found that his affidavit and Mr. Rusk's
affidavit could not be used to raise a genuine issue of fact, the Fifth Circuit's decisions
in Kennet-Murray Corp. v. Bone, 622 F.2d 887 (5th Cir. 1980) and Dibidale of Louisiana,
Inc. v. American Bank & Trust Co., 916 F.2d 300 (5th Cir. 1990) allow this Court to
consider those affidavits as competent summary judgment evidence.

However, the Court finds that these cases are clearly distinguishable from the
case at hand.  In Kennet-Murray, the Fifth Circuit concluded that a party's affidavit
which conflicted with previously given testimony could create a genuine issue of
material fact.  However Kennet-Murray is distinguishable from the case at bar because
in that instance, inconsistencies existed within the deposition itself.  622 F.2d at 894.
Here however, Mr. Davis' deposition testimony is unequivocal that he hired engineers
including Mr. Rusk to work on the crawler crane design after Mr. Davis became
President and Managing Director of FFC USA [see Section ii, infra].  Also, the Fifth
Circuit noted in Kennet-Murray that the affidavit did not seek to raise a new matter but
rather sought to explain certain aspects of the deposition testimony   Again, that case is

6

distinguishable because in his affidavit Mr. Davis does not seek to supplement his deposition testimony, but instead injects totally new evidence of the timing of the work Mr. Rusk did for him. This contradicts Mr. Davis' deposition testimony, see Section ii, infra, and as such, could not at the eleventh hour manufacture a genuine issue of fact to defeat summary judgment.

In addition, the Dibidale case cited by Mr. Davis concerned whether a loan by American Bank to Mr. Dibidale was conditioned on hiring American Bank's choice of contractor, Ronnie Theriot. In moving for summary judgment, American Bank relied on deposition testimony of Mr. Dibidale's agent, Mr. Popich, in which he stated that the bank "never once told me to give [Theriot] the work.. But we're all business people. He wanted [Theriot] to have the work ... The Bank, as far as I was concerned, was supportive of [Theriot]; good enough for the Bank, good enough for me." 916 F.2d at 307. However in opposing summary judgment, Mr. Dibidale presented Mr. Popich's affidavit, in which he stated that the bank "was strongly urging the use of Theriot throughout the loan negotiation." Id. The Fifth Circuit stated that Mr. Popich's affidavit was not necessarily inconsistent with his deposition testimony. Id. Unlike the instant matter, however, Mr. Davis unequivocally testified in his deposition that he hired engineers such as Mr. Rusk to work on the crawler crane design after he came to FFC USA, see Section ii, infra. Therefore, Mr. Davis cannot rely on Dibidale to bind this Court to reconsider its decision based on affidavits and evidence that clearly contradict sworn deposition testimony.

> ii. **Mr. Davis' affidavits and accompanying evidence that purport to prove that he had a patentable design before coming to FFC USA contradict sworn deposition testimony**

Mr. Davis contends that his affidavit and Mr. Rusk's affidavit, with its accompanying evidence, do not contradict his deposition testimony, but explains the testimony which was taken out of context by the Court in granting summary judgment in FFC USA's favor. On the contrary, the affidavits and accompanying evidence, i.e., the

attached proposal and Rusk drawings [also at Dkt. No. 63, Exhs. P, Q and R] contradict the deposition testimony of Mr. Davis. He clearly testified that Mr. Rusk worked for Mr. Davis, who was President and Managing Director of FFC USA, after FFC USA was incorporated in September 1997.

> Q.   What engineers or designers did you make – were arrangements made with to, I assume, bring your idea from an idea to something that could actually be manufactured?
>
> A.   The idea, it was already there.
>
> Q.   But what – who did you hire or who was hired to reduce the idea to plans, specifications, models, whatever were [sic] necessary in order to take that idea from your head to end up in a finished crawler crane that could be sold?
>
> A.   Jim Rusk.
>
> Q.   . And when was – when was an agreement entered into with Mr. Rusk?
>
> A.   I don't know.
>
> Q.   Well, if Favco USA was incorporated in September of '97, using that as a benchmark, relative to that date, when did you engage Mr. Rusk?
>
> A.   I can't remember.
>
> Q.   It was after that date?
>
> A.   Yes.

[Dkt. No. 28, Exh. A, Davis Deposition, 41:11-24]. Moreover, Mr. Davis admitted that the services Mr. Rusk performed of reducing the idea into "engineer language" or engineering drawings were done on behalf of FFC USA [Id., 42:6-46:25]. Reiterating the fact that there were no drawings of the unique crawler crane concept prior to his coming to FFC USA, Mr. Davis stated:

> Q.   Now, what was Mr. Rusk to do?
>
> A.   Reduce the idea, the drawings, into technical – technical writing or technical jargon, you know.
>
> Q.   But you told us you had no drawings when you came to Favco USA.

8

A    No, but I had them in my head.

[Id., 42:24-43:2]  Clearly then, there is no conflict within the deposition itself that Mr.
Rusk was hired to reduce Mr. Davis' idea into a design that could be patented.

In addition, Mr. Davis testified that he only had an idea for the unique crawler
crane before coming to FFC USA.

Q        When you left Manitowac... and you went and became president and
         managing director of Favco USA. what did you bring with you that had to
         do with the crawler cranes that are the subject of this lawsuit?

A.       That are the subject of this lawsuit?  Nothing from Manitowac.

Q        Okay.  You brought no plans?

A.       No. Not that was being used, no

Q.       Not that was being used?

A.       No, I did not

Q.       That are being used in connection with cranes that are in issue in this
         lawsuit?

A        That's right

Q.       You didn't bring any patents?

A.       No.

Q.       You didn't bring any working models?

A.       No

Q.       What you brought, then. was what?  An idea of how to build a different
         type of crawler crane?

A.       Yes.

Q.       So at the time you became president and managing director of Favco
         USA  there were not in existence any drawings, models. prototypes of the
         crawler cranes that we're now fighting about?

A        Not that I'm aware of.

Q.       You didn't have any?

A        No

Q.   And you didn't know of anyone who had any?

A.   Not that I'm aware of

Q    And you didn't bring any with you?

A.   No

Q    Were there any drawings, sketches  or   descriptions?

A    Yes, there was [sic] descriptions

Q    What were they?  Where are they?

A.   I can't – I can't recall.  I mean, what they – I mean, there was a few, but I
     can't – right now,  can't recall what they are

Q.   But you didn't bring them with you from Manitowac?

A    As far as what, sir?

Q.   As far as drawings, sketches or descriptions?

A    Yes.

[Id., 35 12-37:11]  Although Mr. Davis indicated that he had "descriptions" [Id at 36:23]
or a "sketch" [Id  at 47:2-49 2], he admitted that Mr. Rusk had to make drawings of the
crawler crane because they had to be done "in engineer language" [Id  at 45:7-47:7] or
"signed off by an engineer" [Id  at 45:23-25] so they could be built  Furthermore, in his
own affidavit, he admits that any sketches were "preliminary" and therefore, could not
have supported a patent before he came to FFC USA [Dkt. No  63, Exh  K, p. 3]
Therefore, this evidence does not create a material issue of fact that Mr. Davis
developed his crawler crane design before he came to FFC USA.

       In addition, Mr  Davis hired other engineers, such as ECCON and Keith Orgeron,
while he was President of FFC USA to help design the crawler crane concept [Dkt  No
28, Exh  A. Davis Deposition, 41 16-24; 53:2-25; 63:17-24; Attachments 4 and 9].
Moreover, Mr. Davis told FFC Parties that the agreement with ECCON needed to be
executed because "[w]e cannot file for a  patent unless we have a design [Id.,
Attachment 29].  Furthermore, Mr  Davis testified that even before he became President
of FFC USA, he told FFC Parties that it would take about a year to take the idea of the
crawler crane from simply an idea to something that could be built and sold [Id  at 38 1-

25].

Finally  Mr. Davis admitted in the Amended Joint Pre-trial Order that he hired several engineers for FFC USA to design and develop the crawler crane, and that all the work done on the crawler cranes was done after he became President and Managing Director of FFC USA [Amended Joint Pre-trial Order, Dkt. No  55, Section of Admissions of Fact, ¶¶ 8 and 18]

The affidavits and evidence cited by Mr. Davis do not seek to explain Mr. Davis' deposition testimony  rather, they seek to raise a new matter, i.e. that Mr. Rusk created the crawler crane design and drawings for the Patent before Mr. Davis became President and Managing Director of FFC USA, which directly conflicts with unambiguous testimony that engineers including Mr. Rusk were hired after Mr. Davis came to FFC USA with only an idea for a unique crawler crane concept  The evident conflict between Mr. Davis' deposition testimony and his subsequently proffered evidence cannot be reconciled   Therefore, the Court finds that Mr. Davis' clear answers to unambiguous questions negate the existence of any genuine issue that the development of the design for the unique crawler crane concept was aided by engineers including Mr. Rusk after Mr. Davis became President and Managing Director of FFC USA

## D.    The Employment Contract does not limit the scope of Mr. Davis' fiduciary duties as President and Managing Director of FFC USA

Mr Davis argues that since his Employment Contract is silent regarding patent ownership, then the duty to assign the patent is not within the scope of his fiduciary duties.  In an attempt to analogize to Fuqua v. Taylor, 683 S.W.2d 735, 737 (Tex. App. 1984), Mr Davis does not disagree that the determination of the existence and breach of a fiduciary duty are questions of law where the underlying facts are undisputed.  This was indeed the case  it is undisputed that the design for the crawler crane was developed by a team of engineers who were hired on behalf of FF USA while Mr. Davis was the corporation's President and Managing Director, see Section ii, supra

11

Instead, Mr. Davis attempts to analogize this matter to Fuqua's holding that fiduciary duties among joint venturers are defined by their joint venture agreement. 683 S.W.2d at 737. Mr. Davis argues that it follows that all matters excluded from his Employment Contract are excluded from the scope of the fiduciary relationship between Mr. Davis and FFC USA. Mr. Davis therefore claims that he had no fiduciary duty to assign his patent for the crawler crane design because the Employment Contract is silent with respect to any patents, inventions, technology or crawler cranes.

Initially, however, a Rule 59(e) motion cannot be used to re-litigate issues with new arguments that could and should have been presented before the judgment was rendered. See Simon, 891 F.2d at 1159. This argument was not presented by Mr. Davis in his summary judgment motion [Dkt. No. 63] and thus, need not be addressed by this Court upon consideration of his motion to reconsider.

Even so, this Court finds that Mr. Davis' situation is distinguishable from the facts in Fuqua. In that case, the Fuqua court concluded that a geologist who pooled funds from investors in a joint venture to drill oil wells was obligated to give the investors an option to participate in a subsequent drilling opportunity in an area covered by "the Sharpe lease" because it was included in their signed letter agreement, but was not required to inform investors of an opportunity in an area covered by "the O'Kelley lease" because it was not included in their agreement. The Fuqua court reasoned that the scope of fiduciary duties among joint venturers had been established by their signed letter agreement, and since the letter agreement did not include the O'Kelley lease, then the geologist had no duty to inform investors of that opportunity.

The Fuqua case concerned the fiduciary duties among joint venturers as opposed to this instance, in which the Parties are not joint venturers. Mr. Davis was employed by Favelle Favco Holdings to be Managing Director of FFC USA. That the Employment Contract is silent with respect to the ownership of the patent does not mean that his fiduciary duty not to usurp a corporate opportunity did not exist. As a matter of law, Mr. Davis was a fiduciary of FFC USA because he was its Managing Director, as discussed in the Court's March 8, 2001 Order [Dkt. No. 70, p. 8]. As a

12

fiduciary of the corporation, Mr. Davis was obligated not to usurp a corporate opportunity [id.] Since the Employment Contract did not limit Mr. Davis' fiduciary duties, Mr. Davis had a duty to not usurp a corporate opportunity.

**E.    The development of Mr. Davis' unique crawler crane concept was in FFC USA's line of business**

Mr. Davis also argues that the development of crawler cranes was not in the line of FFC USA's business under the Icom Systems test, such that it was not a corporate opportunity to which FFC USA was entitled. See Icom Systems v. Davies, 990 S.W.2d 408, 410 (Tex. App. 1999). Mr. Davis cites Mr. Robey's testimony at the temporary injunction hearing that FFC USA did not make crawler cranes until after Mr. Davis became its President and Managing Director [Dkt. No. 63, Exh. L] However, this does not prove that the crawler cranes were not contemplated by FFC USA's business. Mr. Davis' duties as Managing Director was to "perform ... work done at its facility in the USA" [Dkt. No. 28, Exh. A, Attachment 3, Employment Contract] The "work" being done at FFC USA was the development of the crawler cranes [Dkt. No. 28, Cheam Deposition, Exh. C, 58:22-59 8 and Mac Deposition, Exh. D, 21:9-19, 32 5-13; 163:17-164:5; Amended Joint Pre-trial Order, Dkt. No. 55, Section of Admissions of Fact, ¶ 6] Thus, the business opportunity of developing crawler cranes was clearly one that was "adaptable to [FFC USA's] business[,] having regard for its financial position, and is one that is consonant with its reasonable needs and aspirations for expansion." See Icom Systems, 990 S.W.2d at 410. Therefore, the Court finds that this argument has no merit.

**F.    This Court's order to assign the Patent to FFC USA does not violate federal law**

Mr. Davis argues that since 35 U.S.C. § 261 requires a patent assignment to be in writing, and the Employment Contract is silent with respect to the issue of patent ownership, then the Court's Order requiring Mr. Davis to assign the patent to FFC USA

13

contravenes federal law   This argument holds no weight   First, the Employment Contract does not limit the scope and nature of the relationship between Davis and FFC USA, see Section D, supra   Second, the Court did not order anything that would be in derogation of federal patent law.  By obligating Mr Davis to assign the patent to FFC USA, Mr Davis, in turn, must follow the proper procedures set forth by law to assign the patent, i.e., that it must be in writing pursuant to 35 U S C  § 261.  Therefore, the Court finds that this argument, too, has no merit.

**G.    Based the foregoing, the Court DENIES Mr. Davis' Motion for Reconsideration [Dkt. No. 71]**

Based on the foregoing, the Court finds that among the reasons it denied Mr. Davis' motion for summary judgment was his own deposition testimony in which he unequivocally states that the crawler crane concept was developed and designed with the aid of engineers who were hired while he was President and Managing Director of of FFC USA  While evidence, such as Mr Davis' affidavit, Mr Rusk's affidavit, and Mr Rusk's drawings, was available for the Court's consideration upon summary judgment, none of the evidence raised an issue of material fact because the evidence was in clear contradiction to Mr. Davis' earlier, sworn deposition testimony.  Mr. Davis could not manufacture an issue of fact at the eleventh hour with contradictory affidavits   In addition, FFC USA will suffer unfair prejudice if the case is re-opened, since the Court has already determined that the Patent should be assigned to it.  Moreover  the Court finds that Mr Davis' other arguments, discussed in Sections D, E and F supra, are without merit   Therefore, the Court hereby **DENIES** Mr. Davis' Motion for Reconsideration [Dkt  No. 71]

**III.    Mr. Davis' Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and Request to Take Mr. Sanchez's Deposition in camera [Dkt. No. 78]**

Mr. Davis argues that testimony from Dennis Sanchez, who was hired by Mr Davis to be FFC USA's corporate attorney, will support the facts alleged in the evidence

14

CMSPDF - www.lexisio.com

cited above. Mr. Davis also argues that Mr. Sanchez has non-privileged information regarding the negotiation of the Shareholders' Agreement that was found to be invalid under the statute of frauds by this Court in its previous order. In addition, Mr. Davis argues that the use of Mr. Sanchez's testimony is of no surprise to the FFC Parties since he was listed as a trial witness.

However, the Court finds that Mr. Davis' arguments have no merit. First, the discovery deadline was September 28, 2000 [Dkt. No. 19], with the Parties extending the deadline by agreement to October 13, 2000 [Dkt. No. 31]. The discovery deadline in this matter has well passed. In addition, Mr. Davis does not show good cause why Mr. Sanchez's deposition was not taken before the close of discovery, such that the Court should make an exception to the deadline. Although Mr. Davis argues that the Court itself sua sponte amended its own deadline for filing dispositive motions, Mr. Davis mischaracterizes the Court's actions: the Court notified the Parties that it would enter summary judgment sua sponte [Dkt. No. 58] and gave the Parties the opportunity to brief the issues on which it would base summary judgment sua sponte.

Finally, a party is not entitled to have a summary judgment set aside on the basis of evidence not produced prior to summary judgment unless he demonstrates a valid excuse for the failure to produce the evidence prior to the court's summary judgment ruling. See Wallace v. Texas Tech Univ., 80 F.3d 1042, 1052 (5th Cir. 1996), citing Waltman v. Int'l Paper Co., 875 F.2d 468, 473-74 (5th Cir. 1989). Therefore, a district court may properly refuse to review the new evidence because the moving party failed to show any reason for failing to provide the evidence prior to summary judgment. Id. Hence, even if the Court were to allow the deposition of Mr. Sanchez, the Court could not then consider the testimony in order to set aside its judgment because Mr. Davis has presented no valid excuse for why his testimony was not produced prior to summary judgment.

Therefore, the Court **DENIES** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt. No. 73] and **DENIES** the Request to Take Mr. Sanchez's Deposition in camera [Dkt. No. 78].

15

IV.  **Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s Request for Trial Setting [Dkt. No. 76]**

The Court hereby **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a.m. in order to discuss issues related to setting this matter for trial. At that time, the Court will determine whether a trial setting is appropriate. Therefore, the Court **DECLARES** Mr. Davis, Davisco Inc., and Coburn International, Ltd.'s request as **MOOT**.

V.  **Conclusion**

In sum, the Court:

(1)  **DENIED** the Motion for Reconsideration [Dkt. No. 71];

(2)  **DENIED** the Motion for Leave to Take Deposition of Dennis Sanchez [Dkt No. 73] and **DENIED** the Request to Take Mr. Sanchez's Deposition in Camera [Dkt. No. 78]; and

(3)  **DECLARES** as **MOOT** the Request for Trial Setting [Dkt. No. 76]

(4)  The Court also **DECLARES** as **MOOT** the following:

    i.  Motion in Limine [Dkt. No. 57]

    ii.  Request for Authentification of Exhibits [Dkt. No. 60],

    iii.  Motion to Strike Request for Authentification [Dkt. No. 62];

    iv.  Motion for Leave to File Supplemental Joint Pretrial Order [Dkt. No. 64]; and

    v.  Motion to Strike Affidavits of Daniel E. Davis and James Alan Rusk [Dkt. No. 67]

The Court also **ORDERS** the Parties to appear for a status conference on Friday, July 6, 2001 at 10:00 a m  to discuss the appropriateness of a trial setting in this matter

DONE in Brownsville, this 3rd day of July 2001

Hilda G. Tagle
United States District Court

17

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

DANIEL E. DAVIS                          &
                                         &
V.                                       &   CIVIL ACTION NO. B-00-003
                                         &   (consolidated with No. B-00-184)
FAVELLE FAVCO CRANES USA, INC.,          &
and FAVELLE CRANES (M) SDN BHD,          &
FAVELLE FAVCO CRANES USA, INC.           &
                                         &
AND                                      &
                                         &
FAVELLE FAVCO CRANES USA, INC.           &
                                         &
V.                                       &
                                         &
DANIEL E. DAVIS, DAVISCO INC.            &
and COBURN INTERNATIONAL                 &

***********************************************************************

# EXHIBIT "C"
# ORDER
# JANUARY 23, 2001

Case 1:00-cv-00003   Document 94   Filed in TXSD on 07/13/2001   Page 62 of 67



United States District Court
Southern District of Texas
ENTERED

**JAN 2 4 2001**

Michael N. Milby, Clerk of Court
By Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DANIEL E. DAVIS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC | § | |
| and FAVELLE FAVCO CRANES (M) | § | |
| SDH BHD. | § | |
| | § | |
| Defendants | § | |
| | § | |
| | § | |
| | § | |
| FAVELLE FAVCO CRANES USA, INC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| DANIEL E. DAVIS, | § | |
| DAVISCO INC., and | § | |
| COBURN INTERNATIONAL | § | |
| | § | |
| Defendants. | § | |
| | § | |

## ORDER

BE IT REMEMBERED that the Court previously **DENIED** [Dkt. No. 50] Favelle Favco Cranes, USA's Motion for Summary Judgment and Brief in Support Thereof. The Court hereby gives a fuller explanation of its reasons for denying Favelle Favco Cranes, USA s Motion for Summary Judgment [Dkt. No 28], and also **DENIES** Daniel E Davis' Motion for Leave to File a Response [Dkt. No 47] as **MOOT**

1

CutePDF - www.cutepdf.com

## I. Facts in the summary judgment record

Muhibbidah Engineering (M) BHD has a holding company, Favelle Favco Holdings SDH BHD ("Holdings") for its many subsidiaries including Favelle Favco Cranes (M) SDH BHD ("FFC Malaysia") and Favelle Favco Cranes, USA ("FFC USA") FFC USA designs, develops, manufactures, and sells crawler cranes The Plaintiff Daniel E. Davis served as president and managing director of FFC USA. During his tenure a particular type of crane was developed. Mr. Davis asserts that he conceived of and developed this unique design of crawler crane. FFC USA on the other hand asserts that Mr Davis usurped its interest in the crane

Holdings employed Mr. Davis under a written employment contract to be a managing director of FFC USA Mr. Davis' employment contract with Holdings contained no information regarding the ownership of patents from the development of crawler cranes; in fact, it does not mention crawler cranes at all.

In addition to the aforementioned employment contract, Mr. Davis claims that the terms of his employment were also contained in a Shareholder's Agreement (the "Agreement"), signed by Mr. Davis on August 16, 1997. The Agreement states that Mr Davis was responsible for finalizing, conceptualizing, and designing a unique crawler crane design. The Agreement further states that FFC Malaysia would pay Mr. Davis a royalty fee of 1% of the sale price from the sale of each crane manufactured pursuant to Mr. Davis' patented invention The Agreement recites that FFC USA would be held 90% by FFC Malaysia and 10% by Mr Davis. Although there was a signature line for a representative for FFC Malaysia, neither it nor FFC USA signed the Agreement The signature line is blank

The summary judgment record also contains a document entitled "Issues to be Incorporated in the New Shareholder's Agreement for FFC USA" [Dkt. No 49, Exh. A]. This document has a handwritten note from Y.C. Yee, an individual who was sent to assist Mr. Davis in the operation of FFC USA, indicating that the issues contained in the document were to be addressed in a new Shareholder's Agreement [Dkt No. 49, Affidavit of Daniel E. Davis]. Among the issues to be incorporated was the express

CAMPDF - www.fasoo.com

acknowledgment that Mr. Davis was the "inventor and owner of the patents to the design," and that FFC USA licensed the right to use the design and drawings in exchange for royalties [Dkt. No. 49, Exh. A at ¶ 3]. However, there is no indication that a draft of this new agreement was ever reduced to a finalized writing.

## II. Summary judgment standard

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See Hunt v. Cromartie, 526 U.S. 541, 552 (1999). The party making a summary judgment motion has the initial burden of informing the court of the basis for their motion and identifying those portions of the pleadings and discovery documents which demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Colson v. Grohman, 174 F.3d 498, 506 (5th Cir.1999). If the moving party meets this burden, the non-movant then must designate specific facts showing there is a genuine issue for trial to survive summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986), Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994).

In this case, the Plaintiff did not file a response to the Defendants' motion for summary judgment. "The nonmovant's failure to respond to a summary judgment motion in conformity with the requirements of Rule 56(e) does not automatically entitle the moving party to judgment." SCHWARZER, HIRSCH & BARRANS, THE ANALYSIS AND DECISION OF SUMMARY JUDGMENT MOTIONS, p. 48-49 (Federal Judicial Center 1991); see Eversley v. MBank Dallas, 843 F.2d 172, 173-74 (5th Cir. 1988). Instead, summary judgment shall be entered only "if appropriate." Fed. R. Civ. P. 56(e).

5

### III.   Relevant Contract Law

In order to constitute a contract in writing a writing does not necessarily have to be signed by both parties, so long as the party not signing accepts the contract by its acts, conduct, or acquiescence. Karl Rove. & Co. v. Thornburgh, 824 F Supp. 662, 673 (W.D Tex 1993). aff'd in part, 39 F.3d 1273 (5th Cir. 1994), citing Augusta Dev. Co. v. Fish Oil Well Serv. Co., Inc., 761 S W.2d 538 544 (Tex.App. -- Corpus Christi 1988, no writ)

### IV.   A material issue of fact exists as to whether FFC USA or FFC Malaysia acknowledged Mr. Davis as the owner of the crawler crane design and agreed to license its use from Mr. Davis.

FFC USA contends that because the Agreement was unsigned, it is not binding. Therefore, since Mr. Davis created the crawler crane design for FFC USA while he was its president and managing director, FFC USA owns the design. At the very least, FFC USA argues, it is entitled to a shop right, which is a defense to any alleged patent infringement in its use of the design.

However, the Agreement need not have been signed by FFC Malaysia or FFC USA for it to be effective; the companies need only have conformed its actions to the terms of the Agreement concerning Mr. Davis for there to be an enforceable agreement between them. The evidence in the summary judgment record that FFC Malaysia or FFC USA acted pursuant to the Agreement is: (1) Mr. Davis was held responsible for, among other duties, finalizing, conceptualizing, and designing a unique design for crawler cranes, as stated in the Agreement; (2) Mr. Davis was paid a royalty fee of 1% of the sale price from the sale of each crawler crane as outlined in the Agreement, (3) ownership of FFC USA was 90% FFC Malaysia, 10% Mr. Davis, as expressed in the Agreement; (4) a document indicating that a new shareholder's agreement was being discussed between FFC USA and Mr Davis explicitly acknowledges that Mr. Davis was the owner of a patent for the crawler crane design and (5) the document further indicates that FFC USA agreed to license the designs in exchange for a royalty.

4

Based on the evidence in the summary judgment record, a material issue of fact exists as to whether FFC USA or FFC Malaysia recognized that Mr. Davis would be the owner of any patents from the crawler crane design. Furthermore, a material issue of fact exists as to whether FFC USA or FFC Malaysia agreed to license the patent design from Mr. Davis in exchange for royalties. Therefore, summary judgment is **DENIED**.

DONE at Brownsville, Texas, this 23rd day of January, 2001

Hilda G. Tagle
United States District Judge

5

FAX   FROM                                                                                    

# UNITED STATES DISTRICT COURT

M:CHAEL N  MILBY

To        District Galvez          

Re        Notice of Entry of Order or Judgment

---

Enclosed Order or Judgment entered on

case number              2 00-cv-00003

instrument number

Failed three attempts this fax failed, then we would send this order, could not to fax it.  For questions
please call (713) 250-5768

Number of pages including cover sheet