*/02*

In the United States District Court
Southern District of Texas
Brownsville Division

U.S. DISTRICT COURT
SOUTHERN DISTRICT TEXAS
FILED

01 JUL 27 PM 1:02

MICHAEL N. MILBY, CLERK

| | | |
|---|---|---|
| DANIEL E. DAVIS, et al, <br> plaintiffs | § <br> § <br> § | |
| v. | § <br> § | Civil Action No. B-00-003 <br> (B-00-184 Consolidated) |
| FAVELLE FAVCO CRANES USA, INC., <br> et al., <br> defendants | § <br> § <br> § <br> § | |

---

## Defendant FFC Parties' Second Motion for
## Summary Judgment and Supporting Memorandum

---

Gary Gurwitz
State Bar No. 08631000
Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

February 15, 2001

# Table of Contents

1.   *Background.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

2.   *Summary judgment order: February 2001.* . . . . . . . . . . . . . . . . . . . . . . . . . .  2

3.   *Summary judgment evidence.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

4.   *Summary judgment standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

5.   *Summary judgment as to Davis' breach of employment contract claim is appropriate.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
    5.1   *Employment agreement allows discharge.* . . . . . . . . . . . . . . . . . . . . . . .  3
    5.2   *Davis was discharged for good cause as a matter of law, and hence is not entitled to additional benefits.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4
    5.3   *Davis therefore is not entitled to damages for breach of the employment contract.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

6.   *Summary judgment as to Davis' fraud in the inducement of contract claim is appropriate.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
    6.1   *Fraud in the inducement claim inconsistent.* . . . . . . . . . . . . . . . . . . . . . .  7
    6.2   *Elements of fraud.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
    6.3   *Davis' deposition testimony is inconsistent with his fraud in the inducement of contract claims.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
    6.4   *Davis has no fraud claim as to "misrepresentation" no. 1 (employment).*  8
    6.5   *Davis has no fraud claim as to "misrepresentation" no. 2 (benefits if discharged for cause).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8
    6.6   *Davis has no fraud claim as to "misrepresentation" no. 3 (10% ownership).*  10
    6.7   *Davis has no fraud claim as to "misrepresentations" no. 4 - 6 (trade secrets, royalty, drawings and technology).* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
    6.8   *The statute of frauds precludes enforcement of the "contract" and recovery of benefit of the bargain damages.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

7.   *Remaining claims should be formally disposed of for purposes of finality.* . .  14
    7.1   *Summary judgment and/or dismissal as to the Davis Parties' other pleaded claims is appropriate.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
    7.2   *The FFC Parties are entitled to summary judgment on certain of their remaining claims.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

8.   *Issues of attorneys' fees remain.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

CLMPDF - www.fesisc.com

# Table of Authorities

Cases

*DeSantis v. Wackenhut,*
793 S.W.2d 670, 688 (Tex. 1990),
*cert. denied,* 111 S.Ct. 755 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Estate of Blardone v. McConnico,*
604 S.W.2d 278 (Tex. Civ. App.-Corpus Christi 1980),
writ ref'd n.r.e. per curiam, 608 S.W.2d 618 (Tex. 1980) . . . . . . . . . . . . . . . . . . . . 13

*Gulbenkian v. Penn,*
151 Tex. 412, 252 S.W.2d 929 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Hobbs Trailers v. J.T. Arnett Grain Co.,*
560 S.W.2d 85 (Tex. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hubacek v. Ennis State Bank,*
159 Tex. 166, 317 S.W.2d 30 (1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Leach v. Conoco, Inc.,*
892 S.W.2d 954 (Tex. App.–Houston [1st Dist.] 1995, writ dism'd w.o.j.) . . . . . . . . . 14

*Leon Ltd. v. Albuquerque Commons Partnership,*
862 S.W.2d 693 (Tex. App.--El Paso 1993, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Lewis v. East Texas Financing Co.,*
136 Tex. 149, 146 S.W.2d 977 (1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*McPherson v. Johnson,*
436 S.W.2d 930 (Tex. Civ. App.--Amarillo 1968, writ ref'd n.r.e.) . . . . . . . . . . . . . . . 9

*Pan American Bank v. Nowland,*
650 S.W.2d 879 (Tex. Civ. App.--San Antonio 1983, writ ref'd n.r.e.) . . . . . . . . . . . . 9

*Smith v. Smith,*
794 S.W.2d 823 (Tex. App.–Dallas 1990, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Sonnichsen v. Baylor University,*
47 S.W.3d 122 (Tex. App.–Waco 2001, n.p.h.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Stone v. Lawyers' Title Insurance Corp.,*
554 S.W.2d 183 (Tex. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Trenholm v. Ratcliff,*
646 S.W.2d 927 (Tex. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States District Court
Southern District of Texas
Brownsville Division

| | | |
|---|---|---|
| DANIEL E. DAVIS, et al,<br>    plaintiffs | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. B-00-003<br>(B-00-184 Consolidated) |
| FAVELLE FAVCO CRANES USA, INC.,<br>et al.,<br>    defendants | §<br>§<br>§<br>§ | |

## Defendant FFC Parties' Second Motion for
## Summary Judgment and Supporting Memorandum

Pursuant to this court's instructions at the July 6 status conference, Defendants Favelle Favco Cranes USA, Inc. ("FFC USA"), Favelle Favco Cranes (M) SDN BHD ("FFC Malaysia"), and Favelle Favco Holdings SDN BHD ("FFC Holdings") (collectively "FFC Parties") file this motion for summary judgment, and would show:

1.    *Background.*  This suit arises from the development and patent of a crawler crane while Danny Davis ("Davis") was president and managing director of FFC USA. Davis and defendants Coburn International ("Coburn") and DavisCo. will be referred to as the "Davis Parties."  Although the pleadings filed by the parties in this case (and B-00-184, consolidated) contain allegations of numerous causes of action, only two require further substantive consideration by the court: Davis' allegations of breach of the employment contract and fraud in the inducement of contract. See Order (July 26, 2001) at 5.  The FFC Parties are entitled to summary judgment that the Davis Parties take nothing as to such claims as discussed in section 5 below.  In addition, certain pleaded causes of action need to be formally disposed of for purposes of finality (section 6 below), and this court has

CHIPDF - www.texhs.com

stated that attorneys' fees will be considered by the court on motion and affidavit after the conclusion of trial and/or summary judgment.

2.    *Summary judgment order: February 2001.*    This court by order entered February 28, 2001, granted the FFC USA's Supplemental Motion for Partial Summary Judgment. *See also* Order of March 8, 2001 ("3/8/01 Order").    The court also denied Davis' Cross Motion for Partial Summary Judgment on Patent Ownership and Shop Rights. The court, among other things, determined:

• Enforcement of the "Shareholders' Agreement" was barred by the statute of frauds.  3/8/01 Order at 4-5.

• Davis did not rely on the alleged promise to sign the "Shareholders' Agreement." 3/8/01 Order at 7-8.

• Davis had an obligation to exercise the utmost good faith in all transactions related to his duties.  3/8/01 Order at 11.  Davis breached that duty.  *Id.*

• Davis should assign the patent to at issue to FFC USA.  3/8/01 Order at 11.

• All of the design drawing, trade secrets, and other confidential information related to the crawler crane design properly belong to FFC USA.  3/8/01 Order at 11.

3.    *Summary judgment evidence.*    Voluminous summary judgment evidence already has been filed with the court  in connection with Defendant Favelle Favco Cranes, USA's Motion for Partial Summary Judgment ("FFC USA MSJ"), incorporated herein. Rather than attach additional copies of such documents, the FFC Parties herein refer to the evidence previously filed. This summary judgment motion also is based on the pleadings, discovery responses, this court's orders, and other documents filed herein.

4.    *Summary judgment standard.* The summary judgment standard is set forth in the FFC Parties' prior motion for summary judgment, and is not repeated herein.

5.    *Summary judgment as to Davis' breach of employment contract claim is appropriate.*  Davis was discharged as president and managing director of FFC USA on

2

CUtePDF - www.favco.com

September 8, 1999.  Amended Joint Pretrial Order (Jan. 31, 2001), Admissions of Fact

§6(4) at p. 20.  Davis alleges that the FFC Parties terminated Davis' employment with FFC

USA in breach of the employment contract in question.   Defendants' [Davis Parties] First

Amended Counterclaim ¶¶ 3.01 - 3.04.  The FFC Parties acknowledge the existence of the

employment contract, but deny that Davis was discharged in violation of its provisions.  The

FFC Parties assert that Davis was discharged for cause.

      5.1   *Employment agreement allows discharge.* The employment contract

allows Davis' discharge, with or without good cause. Employment contract ¶ 2(b), FFC USA

MSJ Ex. A3.  Where the discharge is for good cause, Davis is entitled only to salary and

benefits up to the time of discharge:

> If Employer discharges Employee for cause, this Employment
> Contract shall terminate at the moment of discharge, and
> Employee shall thereupon be entitled to salary, home leave
> and other benefits accrued prior to that date and, in addition,
> Employer shall pay cost of return transportation and expenses
> as prescribed in Appendix "A" hereto.  Discharge for cause
> shall include but not be limited to . . . wilful . . .misconduct . . .;
> refusal to work; engaging in conduct prejudicial to the interests
> of the Employer . . . ; or any other act of substantial
> misconduct.

Employment contract ¶ 2(b)(2), FFC USA MSJ Ex. A3.  If the discharge is without good

cause, Davis is entitled to certain additional salary. *Id.* ¶ 2(b)(1).[1]

---

[1]  Davis could be discharged even without good cause:

> If Employer gives written notice of termination for its convenience . . ., this
> Employment Contract shall terminate upon the date specified in that notice,
> Employee shall thereupon be entitled to any accrued salary and home leave,
> and other benefits which may have accrued prior to that date and, in addition,
> Employer shall pay cost of return transportation and expenses.  However,
> should the Employer give notice of termination for its convenience prior to
> completion of this contract, the Employee will receive twenty four (24) months
> base salary or payment of Employee's base salary through the end of this
> Contract, whichever is less.  This separation payment will be the full and final
> settlement of all wages due Employee.

Employment Contract ¶ 2(b)(1).

3

5.2    *Davis was discharged for good cause as a matter of law, and hence is not entitled to additional benefits*.  "Good cause" is defined in the employment contract to include "conduct prejudicial to the interests of the Employer" or "any other act of substantial misconduct." Employment contract ¶ 2(b)(2), FFC USA MSJ Ex. A3.   Davis was discharged primarily because he claimed the rights to the patent at issue and related royalties, drawings, and information, directly contrary to the rights of FFC USA.  Deposition of Cheam Tek Siong ("Chem Depo.") at 134-36, 206-10, FFC USA MSJ Ex. C; Deposition of Mac Ngan Boon ("Mac Depo.") at 53, FFC USA MSJ Ex. D.[2]  For example, Davis' counsel wrote in March 1999, prior to the termination of Davis employment:

> Therefore, other than the display of cranes at CONEXPO, any use whatsoever by Muhibbah or any related company, including particularly Favelle Favco Cranes (USA) Inc., of Mr. Davis' proprietary crawler crane designs or machines embodying those designs will be an infringement of his valuable property rights.  Such illegal activity includes, by way of example and without limitation, the offer for sale, taking of orders, sale, or Muhibbah or any related company in any way holding itself out as having any rights or interest in or to the proprietary crawler crane designs or machines embodying those designs.

FFC USA MSJ Ex. I.  As this court has found, Davis had an obligation to exercise the utmost good faith in all transactions related to his duties.  3/8/01 Order at 11.  He breached

---

[2]

> Q. So the main issue, the reason – as far as you're concerned, as the head of Muhibbah and all the related Favelle Favco companies, the main issue that caused you to agree with the firing of Danny Davis was that he claimed the patent belong to him?

> A. Yeah.  There are other reasons.  I think that Mr. Cheam has stated them.  I recall that. . . .

> . . .

> Q. But this is the main reasons as far as you're concerned?

> A. As far as I'm concerned, this is the main reason.

Mac Depo. at 53, FFC USA MSJ Ex. D.

4

CtmPDF - www.Texiia.com

that duty by claiming the patent, company property, as his own. In short, Davis was "not working in the best interest of the company," Cheam Depo. at 136, FFC USA MSJ Ex. C, and was engaging in conduct prejudicial to the interests of his employer. As a matter of law, Davis was discharged for good cause.

5.3   *Davis therefore is not entitled to damages for breach of the employment contract.*  Because Davis was discharged for good cause, he is not entitled to benefits under the employment contract subsequent to his discharge. Davis does not claim that he was not compensated pursuant to the contract prior to discharge.[3] He was, in fact, fully compensated. See Attachment A.

6.   *Summary judgment as to Davis' fraud in the inducement of contract claim is appropriate.*  The Davis Parties allege that the FFC Parties made false representations that induced Davis' agreement to the employment contract. Defendants' [Davis Parties] First Amended Counterclaim ¶ 3.23. Specifically, the Davis Parties allege the following "false" representations:

(1)   MR. DAVIS was to be employed as Managing Director and President of FFC USA;

(2)   MR. DAVIS was to be paid his salary, home leave benefits, and other benefits accured [sic] if he was discharged for cause;

---

[3]

Q. . . . How did Favco breach that contract [employment] or those contract? What did they do that breached them?

A. Terminated me.

Q. Okay. Anything else?

A. That's it. They terminated me.

Q. Okay. That's the breach that you're talking about?

A. That's correct.

2 Davis Depo. 65, FFC USA MSJ Ex. B.

5

(3)     MR. DAVIS would have a ten percent (10%) ownership in FFC USA;

(4)     MR. DAVIS would receive a royalty fee of one percent (1%) of the sale price for the sale of each crane manufactured or assembled pursuant to his patented invention, namely, the Excavator Upper and Variable Gague [sic] Lower for the making of a lattice and box boom Crawler Crane, and whether or not the sale took place before or after the termination of the Shareholders' Agreement;

(5)     MR. DAVIS would be acknowledged as the inventor of and owner of the trade secrets to the DAVIS CRAWLER CRANES; and

(6)     MR. DAVIS would be acknowledged as the owner of all technology and drawings associated with the DAVIS CRAWLER CRANES.

Defendants' [Davis Parties] First Amended Counterclaim ¶ 3.24.  Davis, however, could not identify any specific fraud in his deposition.[4]  Davis' fraud claims fail as a matter of law.

   6.1   *Fraud in the inducement claim inconsistent.*   As discussed above, Davis seeks to <u>enforce</u> the employment contract, arguing breach of that contract by the

---

[4]
Q. Okay.  Then you say:
"Counterplaintiff has committed fraud against the counterdefendant."

   . . .

Q. . . . You did authorize the attorneys to file this, did you not?

A. Yes, Sir.

Q. I just want to know what the fraud is.  Or is that more legal talk?

A. I think they should be answering it, shouldn't they?

Q. I'm asking you.  If you know – you may not know.

A. I don't know.

Q. It's just lawyer mumbo jumbo?  You don't know what it means?

A. Yes.

2 Davis Depo. 39, FFC USA MSJ Ex. B.

6

FFC Parties and resulting damages.  Davis' fraud claim is inconsistent with enforcing the employment contract.  He cannot both set aside the employment contract for fraud and seek to enforce it at the same time.

6.2   *Elements of fraud.*   To establish fraud, the Davis Parties must demonstrate:

1.   A material misrepresentation was made;
2.   the representation was false;
3.   when the representation was made, the speaker knew it was false, or made it recklessly without any knowledge of its truth and as a positive assertion;
4.   the representation was made with the intention that it should be acted on by the recipient;
5.   the recipient acted in reliance on it; and
6.   the recipient suffered injury because of that reliance.

*DeSantis v. Wackenhut,* 793 S.W.2d 670, 688 (Tex. 1990), *cert. denied,* 111 S.Ct. 755 (1991); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 930 (Tex. 1983); *Stone v. Lawyers' Title Insurance Corp.,* 554 S.W.2d 183, 185 (Tex. 1977).  The plaintiffs cannot establish such claim.

6.3   *Davis' deposition testimony is inconsistent with his fraud in the inducement of contract claims.*  The only reasons Davis gives in his deposition for leaving his prior employment was that he wanted to come back to the United States. Davis Depo at 98, FFC USA MSJ Ex. A.[5]  Similarly, when asked why he chose to work with FFC Holdings, Davis responded:

---

[5]

Q. Why were you leaving Manitowoc?

A. I was leaving Manitowoc because there was a downturn in the – in the – commerce, you know, the economy in Asia – in Asia.  And plus, I had been overseas probably nine, nine and a half years.

Davis Depo at 98, FFC USA MSJ Ex. A.

Q. Why did you pick the one you finally picked or how did you decide that was the one to do?

A. Because it was back in the States.

Davis Depo. at 100, FFC USA MSJ Ex. A.

6.4   *Davis has no fraud claim as to "misrepresentation" no. 1 (employment).* Davis alleges that the FFC Parties falsely represented that he was to be employed as Managing Director and President of FFC USA. Davis, however, was so employed. Davis Depo. at 26, FFC USA MSJ Ex. A. No fraud exists as a matter of law.

6.5   *Davis has no fraud claim as to "misrepresentation" no. 2 (benefits if discharged for cause).* The employment contract at issue expressly addresses discharge: Davis could be discharged with or without cause, but if he was discharged for cause he was to receive benefits <u>only</u> to the time of discharge. See section 5.1.1 above. Davis' claim that the FFC Parties misrepresented that he would receive benefits even if discharged for cause is directly contrary to the employment contract, and his claim is barred by the parole evidence rule and the merger doctrine.

The parole evidence rule is a principle of substantive law which denies effect to prior contemporaneous expressions relating to the same subject matter as that found within a final written contract between the parties. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *Leon Ltd. v. Albuquerque Commons Partnership,* 862 S.W.2d 693, 700 (Tex. App.--El Paso 1993, no writ); *Pan American Bank v. Nowland,* 650 S.W.2d 879, 884 (Tex. Civ. App.--San Antonio 1983, writ ref'd n.r.e.). The parole evidence rule thus precludes the enforcement of inconsistent prior or contemporaneous oral agreements. *Lewis v. East Texas Financing Co.,* 136 Tex. 149, 146 S.W.2d 977, 980 (1941). The purpose of memorializing an agreement is said to be to settle its terms with definiteness

8

and to exclude all oral understandings to the contrary, *Hobbs Trailers v. J.T. Arnett Grain Co.*, 560 S.W.2d 85, 87 (Tex. 1977).

Davis' claim that he was induced to enter into the employment contract by the representation that he would receive salary and benefits even if discharged for cause is barred by the parole evidence rule and the merger doctrine,[6] in conjunction with the integration clause contained in the employment contract. Any prior "agreement" would be deemed to have merged into the final employment contract. The employment contract provides:

> EMPLOYEE HEREBY CERTIFIES THAT HE HAS READ THE FOREGOING EMPLOYMENT CONTRACT, AND THAT HE FULLY UNDERSTAND ITS TERMS AND CONDITIONS, AND EMPLOYEE FURTHER CERTIFIES THAT:
>
> THE FOREGOING TERMS AND CONDITIONS CONSTITUTE HIS ENTIRE EMPLOYMENT CONTRACT WITH FAVELLE FAVCO CRANES HOLDING SDN BHD AND THAT
>
> <u>NO STATEMENTS, PROMISES OR UNDERSTANDING, EITHER ORAL OR WRITTEN, HAVE BEEN MADE OTHER THAT THOSE STATED ABOVE.</u>
>
> THIS CONTRACT SHALL BE SUBJECT TO MODIFICATION ONLY BY WRITTEN INSTRUMENT SIGNED BY BOTH EMPLOYEE AND EMPLOYER.

---

[6] "Merger" is related to the parole evidence rule:

> Merger refers to the extinguishment of one contract by it[s] absorption into another subsequent contract and is largely a matter of intention of the parties. . . . Merger occurs when the same parties to a prior agreement subsequently enter into a written integrated agreement covering the same subject matter. . . . If the terms of the second agreement are so inconsistent with those of the first agreement that both cannot stand, the second is conclusively presumed to have superseded the first.

*Leon Ltd.*, 862 S.W.2d at 700 (citations omitted). Conversations and negotiations prior to the written agreement therefore are inadmissible as they are deemed to have merged into the writing. *McPherson v. Johnson*, 436 S.W.2d 930, 932 (Tex. Civ. App.--Amarillo 1968, writ ref'd n.r.e.).

Employment contract ¶ 10, FFC USA MSJ Ex. A-3 (underline added; caps in original). The integration clause expressly precludes Davis' claim of fraud in the inducement. *Smith v. Smith,* 794 S.W.2d 823, 827 (Tex. App.–Dallas 1990, no writ) (parole evidence rule is particularly applicable where the parties have included an integration clause).

6.6    *Davis has no fraud claim as to "misrepresentation" no. 3 (10% ownership).*  Davis claims that he was fraudulently induced to enter into the employment contract by the representation that he would receive a ten percent ownership interest in FFC USA. In fact, a ten percent interest in FFC USA was taken in the name of Coburn. Davis Depo. at 26-27, 30-31, FFC USA MSJ Ex. A.[7] Davis therefore cannot demonstrate falsity, nor can he demonstrate reliance or damages merely because the interest was taken in the name of Coburn. This fraudulent inducement claim therefore fails as a matter of law.

6.7    *Davis has no fraud claim as to "misrepresentations" no. 4 - 6 (trade secrets, royalty, drawings and technology).*    Davis alleges that it was falsely misrepresented that he would be acknowledge as owner of the trade secrets, that he would own the drawings and technology related to his patent, and that he was to receive a royalty fee of one percent (1%) of the sale price for the sale of each crane manufactured or assembled "pursuant to his patented invention." In fact, Davis unilaterally took a four percent (4%) "commission" – not just a one percent (1%) royalty – in the name of DavisCo. on the cranes sold while he was president of the company. Davis Depo. at 27-28, 94-95, 134 FFC USA MSJ Ex. A; Affidavit of Cheam Tek Siong at 2-3, attached to Defendant FFC

---

[7]      Q.    For some reasons, you had the ten percent of the stock issued in the name of this offshore company; is that correct?
         A.    That's correct.
         Q.    And why was that?
         A.    That's what I felt like doing.

Davis Depo. at 30, FFC USA MSJ Ex. A.

10

Parties' Supplemental Motion for Partial Summary Judgment and Supporting Memorandum.

*Restatement of previously decided patent claim.* The "trade secrets," "technology and drawings," and "royalty" allegations are merely a restatement of Davis' claims in connection with the alleged Shareholder's Agreement. Indeed, Davis in his deposition repeatedly took the position that the <u>only</u>" deal" was the alleged Shareholder's Agreement, and the employment contract. Davis Depo. at 17-18, FFC USA MSJ Ex. A.[8] This court previously has held that Davis, as a matter of law, should assign the patent to FFC USA, that Davis did not rely on the agreement to sign the alleged shareholder's agreement, and that all of the design drawing, trade secrets, and other confidential information related to the crawler crane design properly belong to FFC USA. See section 2 above. These prior holdings also negate Davis' "misrepresentation" claims.

The claims that Davis would be acknowledged as the owner and inventor of the trade secrets and drawings, for example, are negated by Davis' own conduct. Davis, <u>as president and managing director of FFC USA</u>, signed multiple agreements specifying that FFC USA was to be the owner of such matters:

---

[8]Davis testified:

> Q.     Okay.   So the documents, then, would be the repository of the agreement?
> A.     Yes.
> Q.     Those two documents you mentioned?
> A.     Shareholders' and Employment Agreement.

Davis Depo. at 18, FFC USA MSJ Ex. A. He also stated:

> Q.     . . . And you've told us repeatedly that the only deal that you had is Exhibit 2 [draft Shareholders' Agreement] and Exhibit 3 [employment contract].
> A.     That's right.

Davis Depo. at 149, FFC USA MSJ Ex. A.

• The agreement between FFC USA, FFC Malaysia, and ECCON – signed by Davis on behalf of FFC USA – states that "ECCON agrees and stipulates that it is performing the design, specification, fabrication and testing services <u>solely for FAVCO and that all designs, specifications, work product, and prototypes generated, produced or resulting from ECCON's services shall be the exclusive proprietary property of FAVCO</u>."  Confidentiality Agreement § 1 at p. 2, FFC USA MSJ Ex. A4 (emphasis added).  The ECCON agreement was signed on November 22, 1997. *Id.*

• The agreement between FFC USA and Keith J. Orgeron, signed by Davis on behalf of FFC USA on January 18, 1998, states that "[a]ny ideas, patents, copyrights, drawings, etc., produced by Consultant [Orgeron] under this Agreement <u>shall be the sole property of the Company [FFC USA]</u> . . . ." Engineering Consulting Services Agreement at p. 5, FFC USA MSJ Ex. A9 (emphasis added).

• Multiple agreements between FFC USA and Caterpillar Industrial Products, Inc. ("CIPI"), signed by Davis on behalf of FFC USA, provided that FFC USA would provide CIPI with information and drawings, and further recognized:  "<u>The parties agree that the drawings owned by each party are proprietary and confidential</u> and each party will use the same efforts to maintain the confidentiality of such drawings and the information contained therein as it uses to protect its own information of like kind."  Design Ownership/Responsibility Agreement at 1, 2, FFC USA MSJ Ex. A5 (emphasis added). *See also* FFC USA MSJ Ex. A6 & A7.

• The parties stipulated: "An agreement was entered into between J.A. Rusk engineering, ("Rusk"), and Favco USA for Rusk to provide engineering and design services in connection with the 28 and 38 ton crawler crane project as reflected in Rusk's letters to Danny Davis at Favco USA, dated May 29, 1998 and June 3, 1998. <u>The services provided by Rusk under this contract were to belong to Favco USA.</u> The work done under this contract was performed during the time that Davis was President and Managing Director of Favco USA.  Rusk was paid for all work done under this contract by Favco USA."  Amended Pretrial Order (Jan. 31, 2001), Admissions of Fact § 6(14) at 21-22 (emphasis added).

Davis should not be heard to contradict his own unequivocal actions.

*Waiver/estoppel.*  Further, the FFC Parties relied on their ownership of the trade

secrets and related information in spending millions of dollars to develop the cranes at

issue.  Cheam Depo. at 225-26, 262, FFC USA MSJ Ex. C. The Davis parties therefore are

estopped to assert and/or have waived their fraud claim. *Gulbenkian v. Penn,* 151 Tex.

412, 252 S.W.2d 929, 932 (1952); *Estate of Blardone v. McConnico,* 604 S.W.2d 278, 282

CVAPDF - www.fastio.com/

(Tex. Civ. App.-Corpus Christi 1980), writ ref'd n.r.e. per curiam, 608 S.W.2d 618 (Tex. 1980).

*Parole evidence rule.* The Davis Parties' fraud in the inducement claim also is barred by the parole evidence rule and merger doctrine, as discussed in section 5.6 above, to the extent that Davis seeks to contradict the terms of the employment contract. Varying the compensation to be received, through royalty or additional benefits, would contradict the contract.

*Davis has no patent claim.* Further, the alleged representation as to royalty relates to Davis' "patented invention." This court has previously ruled that rights to the patent properly belong with FFC USA. As such, no "royalty" would be due even under Davis' alleged representation.

6.8    *The statute of frauds precludes enforcement of the "contract" and recovery of benefit of the bargain damages.* This court previously has held that Davis' claims for enforcement of the draft shareholder's agreement are barred by the statute of frauds.[9] The Davis Parties' fraud in the inducement claims are largely an "end run" attempt to enforce the draft shareholder's agreement and/or to otherwise seek to enforce his rights under that "agreement" to the patent (and related "rights" to royalty and trade secrets).[10] His claims for royalty, for example, extend beyond three years, as would his claims for permanent "ownership." The Davis Parties cannot use a fraud cause of action to enforce indirectly an otherwise unenforceable promise and recover benefit of the bargain damages.

---

[9] The statute of frauds has been discussed in depth in prior motions for summary judgment, incorporated herein.

[10] Royalty: "In patent law, signifies sum paid to owner os a patent for its use or for the right to operate under is, and may also refer to the obligation giving rise to the right to such sums." Black's Law Dictionary (6th ed. 1990) at 1331. As discussed in note 10 above, Davis repeatedly stated that the "only deal he had" was the alleged draft shareholder's agreement and the employment contract.

13

*Sonnichsen v. Baylor University,* 47 S.W.3d 122, 127-28 (Tex. App.–Waco 2001, n.p.h.); *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 960 (Tex. App.–Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Collins v. McCombs,* 511 S.W.2d 745, 747 (Tex. App.–San Antonio 1974, writ ref'd n.r.e.). There is no evidence of damages for which recovery can be had.

      7.    *Remaining claims should be formally disposed of for purposes of finality.* Although only the two issues discussed above remain to be tried by the court, the parties pleadings assert various additional causes of action. Those claims should be formally disposed of so that a final judgment can be entered.

      7.1   *Summary judgment and/or dismissal as to the Davis Parties' other pleaded claims is appropriate.* The Davis Parties' pleadings also pleaded claims for (1) misappropriation of trade secrets, proprietary information, and confidential information; (2) breach of fiduciary duty; (3) breach of shareholder's agreement; (4) tortious interference with business relationships; (5) patent infringement; and (6) misrepresentation. The Davis Parties at the July 6 status conference did not list these claims as among those remaining and requested trial only on the issues of breach of contract and fraud in the inducement of contract; dismissal therefore would be appropriate. Additionally, summary judgment is appropriate as to these claims in that the determinations made in connection with prior summary judgment proceedings negate one or more elements of such claims.[11]

---

[11] The court denied Davis' motion for summary judgment on his patent infringement claim. The FFC Parties are entitled to summary judgment that Davis take nothing on his patent infringement claim because of the court's determination that the FFC Parties have rights to the patent.

    The Davis Parties' pleaded claim for misappropriation of trade secrets, proprietary information, and confidential information is predicated on Davis' alleged pursuit "of his unique and singular crawler crane design." Defendants' [Davis Parties] First Amended Counterclaim ¶ 3.10 at 10. This court in the 3/8/01 order found that the '252 patent relating to the crawler crane at issue should be assigned to FFC USA, and also determined that "all of the design drawing, trade secrets, and other confidential information related to the crawler crane design properly belong to FFC USA." 3/8/01 Order at 11. The order thus disposed of one required element of Davis'

14

7.2    *The FFC Parties are entitled to summary judgment on certain of their remaining claims.* This court's order of March 8, 2001, determined that the patent at issue should be assigned to FFC USA and the FFC USA had rights to the patent and related trade secrets.  In accordance with that order, FFC USA and FFC Malaysia are entitled to declaratory judgment that they have <u>not</u> infringed the '252 patent or any other patent or patent application filed by Davis related to the crawler cranes.

8.    *Issues of attorneys' fees remain.* At the status conference on July 6, the court determined that the issue of attorneys' fees will be taken up by the court after disposition of other issues, either by summary judgment or trial on the merits.  The court advised counsel that issues involving attorneys' fees would be decided by the court on motion and affidavits.

---

misappropriation claims.

Davis' breach of fiduciary duty claim is predicated on the existence of the alleged Shareholders' Agreement. Defendants' [Davis Parties] First Amended Counterclaim ¶¶ 3.20 - 3.22. The court in the 3/8/01 Order determined that the alleged Shareholders Agreement is unenforceable, and thus disposed of one required element of the breach of fiduciary duty claims.

Davis alleged a cause of action based on the claimed breach of the alleged Shareholders Agreement. Defendants' [Davis Parties] First Amended Counterclaim ¶¶ 3.05 - 3.09. The court in the 3/8/01 Order determined that the alleged Shareholders Agreement is unenforceable.

Davis' tortious interference claim alleges that the FFC Parties (1) refused to build three crawler cranes that Davis sold to Mustang Equipment prior to the termination of Davis' employment; and (2) interfered with Davis' attempts to sell "his" crawler cranes by initiating this litigation. Defendants' [Davis Parties] First Amended Counter-claim ¶¶ 3.13 - 3.16.   However, Davis did not have cranes to sell. FFC USA – not Davis – manufactured the crawler cranes at issue, spending something in excess of $10 million to develop, market, and manufacture such cranes.  Cheam Depo. at 225-26, 262.  This court has further found that the patent at issue should be assigned to FFC USA, and that all of the drawings, trade secrets, and other confidential information related to the cranes at issue properly belong to FFC USA. 3/8/01 Order at 11. Therefore, no claim for tortious interference is stated as a matter of law, either in connection with the alleged "sales" to Mustang or otherwise.

The Davis Parties allege that the FFC Parties led Davis to believe that he was the owner of the patent and that he was going to receive or be paid a royalty fee of one percent of the sale price for the sale of each crane manufactured pursuant to "his" patent. Defendants' [Davis Parties] First Amended Counterclaim ¶¶ 3.17 - 3.19. Summary judgment is appropriate as to this claim for the reasons stated above in connection with Davis' fraud claims and because the court has found that Davis has no rights to the patent.

15

Wherefore, premises considered, the FFC Parties request that their motion for summary judgment be granted, and that final judgment be entered that the Davis Parties take nothing as against them.    The FFC Parties further request that they be granted summary judgment (1) that the Davis Parties take nothing on their claims for  fraud in the inducement of contract, breach of employment contract, patent infringement, misappropriation of trade secrets, breach of fiduciary duty; breach of shareholders agreement, tortious interference with business relationship, and misrepresentation; (2) declaring that the FFC USA and FFC Malaysia did not infringe the patent at issue.   The FFC Parties request such other and further relief to which they may be entitled, at law or in equity.

Respectfully submitted,

Gary Gurwitz
State Bar No. 08631000
Southern Dist. ID No. 1194
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

Attorney in charge for defendant

Of counsel:

Charles C. Murray
State Bar No. 14719700
Southern Dist. ID No. 1214
818 Pecan/P. O. Box 3725
McAllen, Texas 78501/78502
(956) 682-5501 (phone)
(956) 686-6109 (fax)

16

Willem Schuurman
Brian K. Buss
VINSON & ELKINS, L.L.P.
2700 One American Center
600 Congress Ave.
Austin, Tx 78701-3200

CVisPDF - www.fasteo.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| DANIEL E. DAVIS, et al. | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES USA, INC., | § | |
| et al. | § | |

---

### AFFIDAVIT OF CHEAM TEK SIONG

---

| | |
|---|---|
| THE STATE OF TEXAS | § |
| | § |
| COUNTY OF HIDALGO | § |

BEFORE ME, the undersigned notary public, on this day personally appeared CHEAM TEK

SIONG, who being by me duly sworn on oath stated:

My name is Cheam Tek Siong. I am the Group Manager of Favelle Favco Holdings
Sdn Bhd. I am authorized in all respects to make this affidavit, and am competent
to make this affidavit. The facts stated in this affidavit are within my personal
knowledge and are true and correct.

Daniel E. Davis was discharged from his position as Managing Director and
President of Favelle Favco Cranes, USA on September 8, 1999. His discharge was
for good cause. He has been paid all salaries and benefits to which he was entitled
up to the date of his discharge under the Employment Contract dated June 23, 1997,
between Favelle Favco Holdings and Daniel E. Davis.

Further affiant sayeth not.

Cheam Tek Siong

SWORN TO AND SUBSCRIBED TO BEFORE ME on the __27ᵗʰ__ day of July, 2001, to

certify which witness my hand and official seal.



DIANE HARGROVE
Notary Public,
State of Texas My
Comm. Exp. 08-03-2002

Notary Public in and for the State of Texas
My Commission expires:

# Certificate of Service

I certify that on July 27, 2001, a true and correct copy of the foregoing document was sent to all counsel of record, as follows:

| Attorney: | For: | Served by: |
|---|---|---|
| Ernesto Gamez<br>Victor Quintanilla<br>LAW OFFICES OF ERNEST GAMEZ, P.C.<br>777 E. Harrison St.<br>Brownsville, Tx 78520 | plaintiff | hand delivery |

Gary Gurwitz

18