

United States District Court
Southern District of Texas
FILED

AUG 1 0 2001

Michael N. Milby
Clerk of Court

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| DANIEL E. DAVIS | § | |
| | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. B-00-003 |
| | § | |
| FAVELLE FAVCO CRANES | § | |
| USA, INC., FAVELLE FAVCO CRANES | § | |
| (M) SDN BHD | § | |

---

| | | |
|---|---|---|
| FAVELLE FAVCO CRANES USA, INC. | § | |
| | § | |
| VS. | § | |
| | § | |
| DANIEL E. DAVIS, DAVISCO INC. and | § | |
| COBURN INTERNATIONAL, LTD.. | § | |
| | § | CIVIL ACTION NO. B-00-184 |
| | § | |
| | § | |
| VS. | § | |
| | § | |
| FAVELLE FAVCO CRANES | § | |
| USA, INC., FAVELLE FAVCO CRANES | § | |
| (M) SDN BHD, and FAVELLE FAVCO | § | |
| HOLDINGS SDN BHD | § | |

**PLAINTIFFS' OBJECTIONS TO DEFENDANTS' EXHIBITS**
**AS LISTED ON THEIR THIRD AMENDED EXHIBIT LIST**

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF TEXAS, BROWNSVILLE DIVISION:**

**COME NOW, DANIEL E. DAVIS, DAVISCO, INC., AND COBURN**

**INTERNATIONAL LTD.,** Plaintiffs in the above-styled and numbered civil actions, and assert the

following objections to Defendants' Exhibits as listed on their Third Amended Exhibit List:

1.01   **Plaintiffs object to Defendants' Exhibits 7A and 7B (06/99 Strain Gauge Testing of FFC 38 ton Mobile Crane by Stress Engineering and 06/99 Strain Gauge Testing of FFC 28 ton Mobile Crane by Stress Engineering)** pursuant to **Rules 401 and 402 of the Federal Rules of Evidence** on the grounds that said exhibits are not relevant to any issue being litigated in this civil action.  Objection is also made to these exhibits pursuant to **Rules 801 and 802 of the Federal Rules of Evidence** on the grounds that said exhibits are hearsay and/or contain hearsay and Defendants have not shown that these exhibits fall under any exceptions to the hearsay rule.  Plaintiffs further **object** to these exhibits on the grounds that said exhibits have not been properly authenticated by the person making or preparing said documents and the Defendants have not identified any  custodian of records for the **Stress Engineering Services, Inc**. or any person who will testify as to the authenticity of said exhibits.

1.02   **Plaintiffs object to Defendants' Exhibits 10A-10V (Documents from Keith Orgeron, P.E. and Integra Engineering, including letters, expense reports, and/or invoices)** pursuant to **Rules 401 and 402 of the Federal Rules of Evidence** on the grounds that said exhibits are not relevant to any issue being litigated in this civil action.  Objection is also made to these exhibits pursuant to **Rules 801 and 802 of the Federal Rules of Evidence** on the grounds that said exhibits are hearsay and/or contain hearsay and Defendants have not shown that these exhibits fall under any exceptions to the hearsay rule.  Plaintiffs further **object** to these exhibits on the grounds that said exhibits have not been properly authenticated by the person making or preparing said documents and the Defendants have not identified any  custodian of records for the **Integra Engineering** or any person who will testify as to the authenticity of said exhibits.

1.03   **Plaintiffs object to Defendants' Exhibit 18 (all  expert reports of FFC Parties'**

2

**experts)** on the grounds that said exhibits are not specifically identifed by the Defendants and this listing does not properly give the Plaintiffs notice of what the Defendants intend to offer as evidence for the Court and Jury's consideration.   **Objection** is also made to these exhibits and/or any exhibits which are either made part of these reports or alluded to by these reports pursuant to **Rules 801 and 802 of the Federal Rules of Evidence** on the grounds that said exhibits are hearsay and/or contain hearsay and Defendants have not shown that these exhibits fall under any exceptions to the hearsay rule.  Plaintiffs further **object** to these exhibits on the grounds that the exhibits made a part of these reports or alluded to by these reports have not been properly authenticated by the person making or preparing said documents and the Defendants have not identified any  custodian of records for the **entities** or any persons who will testify as to the authenticity of said exhibits.

Respectfully submitted,

**LAW OFFICES OF
ERNESTO GAMEZ, JR., P.C.**
777 E. Harrison Street
Brownsville, Texas   78520
Telephone No.: (956) 541-3820
Facsimile  No. : (956) 541-7694

**ERNESTO GAMEZ, JR.**
**SBOT NO**. 07606600
**FED. ID NO.** 8645

ATTORNEY-IN-CHARGE FOR
PLAINTIFFS

**VICTOR QUINTANILLA***
**SBOT NO.** 00786181
**FED. ID NO.** 16073

3

**(\*Signed with permission of Attorney-in-Charge for Plaintiffs)**

## CERTIFICATE OF SERVICE

I, **VICTOR QUINTANILLA,** hereby certify that a true and correct copy of the above and foregoing instrument was served via facsimile **(956) 686-6109** on the Attorney-in-Charge for Defendants, Hon. Gary R, Gurwitz, **ATLAS & HALL, L.L.P.**, 818 Pecan, P.O. Box 3725, McAllen, Texas 78502-3725  on this 10th day of August, 2001.

VICTOR QUINTANILLA

4



*CAB-00-003*

*attach to pldg #100*
*III*

# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

July 24, 1997

Jorge Alaniz
Port Isabel Police Department
Port Isabel, TX  78578

Commander II Alaniz,

Effective immediately this date, you are being reassigned
from C.I.D. Supervisor to Warrant Officer.  This assignment
is temporary.  As warrant officer you will obtain warrants
from the Municipal Court Clerk, serve warrants, make
arrests, book prisoners and submit arrest reports, according
to department Policy and Procedures.  You will be working
out of the Municipal Court Clerks office.

Immediately upon this assignment the Police Department
Master Key and Investigator Patrol Unit keys will be turned
in to me.

All C.I.D. equipment will remain in the C.I.D. Office.

This temporary assignment does not include any salary or
benefit adjustments.

P.A. Collazo
Temporary Chief of Police

cc:  City Manager
     Finance Director
     D. Streif
     M. Salinas
     File
     Personnel File



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

July 24, 1997

Danny Marchan
Port Isabel Police Department
Port Isabel, TX  78578

PO II Marchan,

Effective immediately this date, you are no longer under the
supervision of Commander II Alaniz. You will serve under the
direction of the Temporary Chief of Police.

Your duties, operations and responsibilities will remain the
same.
This temporary assignment does not include any salary or
benefit adjustments.

P.A. Collazo
Temporary Chief of Police

cc:  City Manager
     Finance Director
     D. Streif
     M. Salinas
     File
     Personnel File



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

July 27, 1997

Horacio Zamora
Port Isabel Police Department
Port Isabel, TX  78578

PO II Zamora,

Effective immediately this date, you are temporarily
reassigned to C.I.D. You will serve under the direction of
the Temporary Chief of Police.

You will assume the duties, operations and responsibilities
performed in C.I.D.
This temporary assignment does not inclue any salary or
benefit adjustments.

P.A. Collazo
Temporary Chief of Police

cc:  City Manager
     Finance Director
     D. Streif
     M. Salinas
     File
     Personnel File



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

October 31, 1997

CMDR Jorge Alaniz
Port Isabel Police Department
Port Isabel, Texas 78578

Commander Alaniz,

Effective November 1, 1997, you are being reassigned to Patrol Division. Your shift will be 6am to 2pm

You will serve in the position of Commander I. Your clothing allowance has been withheld until Chief Ochoa assigns an investigator. You have been issued uniforms and a Purchase Order for three uniform pants is prepared, you need to go to Manny's located at 1407 E. Jefferson in Brownsville, Texas, so that you can fit the correct size.

I know you look forward to working Patrol Division, be safe in your assignment.

Pedro A. Collazo
Interim Chief of Police

cc. City Manager
Finance Director
Personnel File
File



PORT ISABEL
TEXAS

# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

November 3, 1997

Horacio Zamora
Port Isabel Police Department
Port Isabel, Texas 78578

PO II Horacio Zamora,

Effective Immediately this date, you are being reassigned from Temporary C.I.D. to fulltime C.I.D.

You will serve under the direction of the Chief of Police.

You will assume the duties, operations and responsibilities performed in C.I.D.

This assignment includes a clothing allowance adjustment.

Joel Ochoa
Chief of Police

cc:City Manager
Finance Director
Personnel File
File



# Law Enforcement Code of Ethics

**As a Law Enforcement Officer,** my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

**I will** keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

**I will** never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

**I recognize** the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.

Compliments of Texas Commission on Law Enforcement Officer Standards and Education

B.  Investigations

The Chief of Police will order all internal investigations.

14.02   Investigative Steps:

A.  Criminal Prosecution - Internal affairs officers assigned
by the Chief of Police, at an early stage of any internal
investigation, will have to decide whether the evidence and
the allegation warrant criminal prosecution of the officer
or employee.  If it appears that a criminal charge may be
brought, the Chief of Police will be notified and the case
will be handled by C.I.D. or any officer the Chief of Police
may designate.  Once the case is re-assigned as criminal
then the officer's must adhere to all the restrictions of a
normal criminal investigation.  The officer will be given
his miranda type warnings and will be afforded all his rights
as given to any other suspect.  An officer or employee may;
however, face both criminal and internal charges, but evidence
gathered for internal discipline shall not be used in the
criminal prosecution.  The two investigators, (criminal and
internal affairs) must keep both cases separte and apart.

B.  Failure to Cooperate - All officers and employees of the
police department are expected to cooperate in all internal
investigations.  Any officers or employee who fails to
cooperate, fails to obey an order, such failure may and will
be the basis for a further charge against the officer or
employee.  The officer or employee must be informed that his
failure to cooperate may lead to further disciplinary action,
including discharge.  The warning may be oral, followed by a
direct order in writing.  The officer or employee shall
acknowledge receipt of the written warning or direct order by
dating and signing his name to the original and one copy of
said order.

C.  Questioning the Officer or Employee - One of the most effi-
cient methods of investigating a complaint against an officer
or employee is to question the person.  The questions asked
officers or employees must be narrowly and directly related
to the performance of their duties and the on going investi-
gation.  Officer's or employee do not have the right to refuse
to answer questions that are directly and narrowly related
to their official duties, and if they refuse to answer questions
they may be ordered to do so.  Any incriminating statements
by them, obtained under direct order, will not be admissable
in a criminal prosecution, but, however, will be admissable in
an administrative hearing arising out of the alleged misconduct.
Officers or employees will not be forced to waive their privilege
against self-incrimination under threat of losing their jobs,
but, if the officer or employee refuse to answer, he or she may
be disciplined or even discharged for insubordination.

*Tomas Salazar*    9-3-98

1934 hrs.



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

September 16, 1998

Jorge Alaniz
Sergeant
Police Department
Port Isabel, Texas 78578

Dear Sergeant Alaniz,

I have requested that an Internal Investigation be conducted in reference to allegations made against you by several officers that have served under your command. The officers allege that you have engaged in intimidating tactics that have created a hostile working environment. This situation has escalated to the point that it has effected morale and job performance. This investigation has been conducted in accordance with Chapter XIV, Section 14.01B of the Port Isabel Police Department Policy Manual.

On September 1, 1998, at approximately 12:15 PM.,Officer Tomas Salazar came to my office and asked to have a conference with me, concerning a supervisory decision you had made during his 10:00PM to 6:00AM shift. At approximately 12:15AM, as he patrolled through the H.E.B. parking lot, he observed a female subject using a public telephone. Officer Salazar recognized this subject as Sonia Sanchez, who had an outstanding warrant from the South Padre Island Police Department. He then used a public telephone to contact Officer J. Puente of the S.P.I. P.D. to get confirmation on the warrant. At this point the subject had driven off and Officer Salazar followed while waiting for the confirmation. When he observed the subject commit a traffic violation, he proceeded to conduct a legal stop of the vehicle. He then had Dispatcher David Gorham reaffirm the outstanding warrant, and was advised that the S.P.I.P.D. had a unit enroute to serve the warrant #96-00-3051/3052.

At this point you requested via police radio what the traffic offense was in regard to Officer Salazar's traffic stop. Officer Salazar advised you that the subject had an outstanding warrant from South Padre Island P.D. for unpaid fines. You drove to the scene, and again asked Officer Salazar what the warrant was for, and "what the hell do you think you are doing?" He again repeated himself and advised you that he had obtained confirmation from Officer J. Puente of the S.P.I.P.D. of the warrant for Mrs. Sonia Sanchez. You then stated to Officer Salazar, "What does the City of Port Isabel have to gain by serving warrants out of other cities?" Officer Salazar stated that he was just trying to do his job as a Peace Officer, and maintaining good inter-agency relations. At this point you ordered Officer Salazar to release the subject, and resume patrol.

1

CSAPDF - www.fenito.com

Officer Salazar attempted to advise you that an officer from the S.P.I.P.D. was enroute to serve the warrant, but you insisted by direct order that he release her and resume patrol.

A few minutes later at approximately 12:50AM, you called officer Salazar to meet with you at the Police Station. There, you again asked Officer Salazar, "What the hell do you think you were doing?" He had to repeat himself and told you that he was just trying to do his job as a Peace Officer. You went on to demand why he had detained Mrs. Sanchez without a warrant or warrant number in hand. You further advised him that the violation he had stopped the subject for was a "chicken shit violation, and that he was going to be sued if he wasn't careful."

Officer Salazar further states that approximately 5:05AM, during the same shift you ordered him and officer Homer Reyna to meet with you at the police station. A check of the radio log reflects that you, unit 102 and Officer Salazar unit 106, went off duty (10-42) at 5:06AM. Officer Homer Reyna unit 117, went off duty (10-42) at 5:09AM. The radio log also reflects that the ending mileage for each patrol car used, was also recorded. The normal working hours required by this shift was 10:00PM to 6:00AM. The radio log reflects that the 10:00 PM to 6:00 AM shift, on Monday, August 31, 1998, was ordered by you, to go off duty approximately 51 minutes early. I find that there was no legitimate reason for you to have the officers go off duty, and leave the city without any police patrol for almost an hour.

In regard to Officer Tomas Salazar's allegations against you I find that you violated Port Isabel Police Department Policy Manual, Chapter 5 section 5.23 Unbecoming Conduct: It includes unjustified behavior which brings the Department into disrepute, discredits a member of the Department or impairs the operation of the Department, when you ordered him to release a subject he had legally detained for another agency on an outstanding arrest warrant. I found nothing improper or illegal in his traffic stop. You as an experience police officer and in a supervisory position should have known that Officers Salazar's actions were proper and legal. Therefore, I find that you violated section 5.42 Unsatisfactory Performance: Officers shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions. Officers shall perform their duties in a manner that will maintain the highest standards of the Department. I find you to be in violation of section 5.58 (1)(3) Dereliction of Duty: On the part of the supervisor or other members of the Department, prejudicial to the proper performance of the functions of the Department. 1. Failure to observe and give effect to the policies of the Department. 3. Failure to make proper report of offenses investigated, observed, or reported. Your dereliction of duty was demonstrated when you prevented a Peace Officer from carrying out his duties. You violated Chapter 22.01(A)(B)(C) Supervisory Reprimands: when you believed that Officer Tomas Salazar's actions were illegal and improper to the degree that you had to order him to release the subject. But yet you failed to explain the reprimand in a written report promptly and forward it to the Chief of Police, as required. You failed to advise Officer Salazar that he had a right to have his reprimand reviewed, if he desired to do so within five days of receiving the reprimand. I also found that you violated section 5.02 Insubordination: when you ordered Officers Salazar, and Reyna to go off duty 51 minutes before the completion of their tour of duty at 6:00AM, when you knew or should have known that I had issued a directive on August 20, 1998, concerning unreasonable long periods of time spend on breaks. I consider this a willful act of defiance on your part of my directive of August 20, 1998.

2

Chapter VII-Conduct of the City of Port Isabel Policy Manual: Attendance; Rest Periods: Employees may take one morning and one afternoon rest period (or coffee break) at the time designated by the supervisor, each full work day. You violated T.P.C. 38.15 (a)(1)(b) Interference with Public Duties when you ordered Officer Salazar to release a subject he had legally detained, and was carrying out his duties as a Peace Officer. (a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with; (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law. An offense under this section is a Class "B" misdemeanor. I find that you violated T.P.C.38.05 (a)(2); Hindering apprehension or prosecution: A person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; An offense under this section is a Class "A" misdemeanor.

Officer Homer Reyna states that on Friday, May 22, 1998, he was working the 2:00 PM to 10:00 PM shift under you command. On this date Officer Reyna stated that the patrol car he was driving appeared to be having transmission problems. It was after 5:00 PM and all the repair shops were closed. I requested that he park it for the weekend and not let anyone else drive it. I made this request as a cost and maintenance preventive measure, and for the safety of the officer and motoring public. However, Officer Reyna states that you overruled my order and ordered him to drive the patrol car. You further stated to Officer Reyna, "I don't care what the Chief told you, I am your supervisor. I'm telling you to take 95-3, if it breaks down it breaks. We can not do anything about it."

Officer Reyna states that between the hours of 2:00PM,the beginning of his shift and 5:00PM he had been asked by the Department to run some documents to City Hall,and to go by the bank and make a deposit. He further states that you were upset at him because he was performing these duties. Later on in the shift, Dispatcher Arnulfo Martinez, asked Officer Reyna to get him something to eat, which is a common practice by all our officers. At this point the dispatcher advised that there was someone at the station to get someone out of jail. Since, Officer Reyna was already enroute to the station to deliver the meal, he requested permission to process the prisoner. You refused to grant the permission and ordered him to stay on the road. At approximately 6:00PM you requested that Officer Reyna meet with you at the Port Bowl parking lot. You then ordered him to go to the Housing Authority and do foot patrol, and told him not to leave the area until you said so. Officer Reyna followed your orders and proceeded to the Housing Authority to perform his foot patrol. You then called the dispatcher on your radio and advised him of your decision in a manner that all officers could monitor.

Officer Reyna feels that he had not done anything wrong for you to punish him in this manner. He feels that the actions you took were only to embarrass him and humiliate him. In his mind he questions your actions and professionalism. At approximately 7:55 AM you requested that Officer Reyna meet you at the police station, where you ordered him to go home two hours before the completion of his shift. He asked if he was to claim only 6 hours instead of 8 on his time sheet, but you advised him not to worry that you would take care of it. Again, he followed your order and went home.

3

On August 31, 1998, Officer Reyna stopped to assist Officer Salazar on a traffic stop. Officer Salazar requested that Officer Reyna assist him in searching a vehicle for weapons or contraband. Officer Salazar had obtained consent from the driver to search the vehicle. While Officer Reyna was conducting the search, you arrived at the scene and asked him "what the hell are you doing?" Upon giving you his explanation, you ordered him to stop right then and there and resume patrol. You sarcastically added that he was getting like Officer Juan Ayala, wanting to search every vehicle that he stops. Officer Reyna obeyed your order, advised Officer Salazar of said order, and left him to handle to traffic stop by himself.

In regard to Officer Homer Reyna's allegations, I find that you were in violation of Police Department Policy Manual Chapter 5, section 5.06 Insubordination: You arrogantly and defiantly disobeyed my instructions. You ordered Officer Reyna to drive a patrol car that he had reported as having a defective transmission, when I had ordered him to park it. You violated section 5.23 Unbecoming Conduct: You demonstrated your arrogance and lack of professionalism when you ordered Officer Reyna to do foot patrol at the Housing Authority as a punishment. Officer Reyna had not violated any Department policies, rules, or regulations. Your actions only served to demean, embarrass, and humiliate Officer Reyna. Your arrogance was demonstrated when you told Officer Reyna, that you did not care what the Chief had said. This action clearly demonstrates the disrespect you have for your superiors and subordinates. I find that you violated section 5.42 Unsatisfactory Performance: You made the decision to punish or reprimand an officer without just cause. Again, you interfered with an officer's duties when you ordered Officer Reyna to stop the search of a vehicle, when he had obtained consent to search. The consent was obtained incidentally to a legal traffic stop. Your actions, again only served to demean, and embarrass an officer who was just doing his job. You violated section 5.58 Dereliction of Duty: 1. Failure to observe and give effect to the policies of the Department. (1) You prevented the officers from carrying out their duties as Peace Officers. (2) You failed to follow procedures when you reprimanded Officer Reyna. 2. Failure to obey orders, when you ordered Officer Reyna to drive a car against the Chief of Police orders.

I further find that you violated Chapter XI-Safety of the City of Port Isabel Policy Manual, Section 1101: Purpose and Basis; (2) Insuring that all municipal motor vehicles are operated in a safe manner and are in a safe operating condition. You ordered an officer to drive a vehicle that had been reported to have a transmission defect. Your actions put the safety of the officer and motoring public at risk. You also ran the risk of creating a high cost in repairs, to the city and the Department. Section 1104: Accident Prevention Procedure; (2) require full compliance from each supervisory and non-supervisory subordinate with all applicable written and oral standards of safety, including, but not limited to Safety Review Board policies, City administrative and departmental policies. Section 1109: (4): Vehicle and Equipment Operation; (4) any City employee who abuses or negligently uses City owned motor vehicles or motorized equipment or who violates the traffic ordinances of the City or vehicle and traffic laws of the State of Texas in the course and scope of his/her employment shall be subject to disciplinary action in accordance with the personnel rules. Section 1111: Fleet Safety Policy Statement-Operating Procedures; (7) Vehicles will be operated only when they are in safe operating condition. Continuous awareness of your vehicle's condition should be accomplished and operating defect reported to management or corrected prior to operation. Section 1114: (2) A system of reporting and

CIVIPDF - www.texis.com

correcting defects should be established. Drivers should be instructed to observe their vehicles on a continuous basis and report defects for correction.

During the month of July 1998, Officer Moore was working the 10:00 PM to 6:00 AM shift, under your command. He does not remember the exact night or time but remembers that on one occasion during this month he discovered loud music coming from within the High School complex. He advised dispatcher Nadine McDowell of the situation and asked for assistance. Officer Moore advised that he had not found a door opened but wanted back up to be enroute in case he found someone inside the building. Dispatcher McDowell proceeded to dispatch Officer Javier Gutierrez who advised he was enroute. You then, upon finding out what was going on assumed that the music was coming from the weight room, and canceled the assistance. Officer Moore advised that while he was checking the situation out the assistance never arrived. He further stated that a unit did not even conduct a roll by which is common practice by our officers for their safety.

In regard to Officer Ronald Moore's allegations, I find you violated Chapter XI-Safety (3) of the City of Port Isabel Policy Manual. (3) Verifying that all municipal services are performed in a safe manner and are in a safe operating condition. You called off Officer Moore's assistance assuming that his safety was not in jeopardy. You were not at the scene, therefore you could not have known the facts to evaluate the situation, much less make that determination. Section 5.58 Dereliction of Duty (1): Of the Port Isabel Police Department Policy Manual. (1) Failure to observe and give effect to the policies of the department. I find your actions to be prejudicial to the proper performance of the functions of the Department. Section 2.05 Organizational Relationships: The administration desires that personnel in the various organizational positions perform and interact in a way that best contributes to the goals of the Port Isabel Police Department.

Officer Juan Manuel Ayala states that on August 22, 1998, while working the 10:00AM to 6:00AM at approximately 2:45AM traveling west approaching the Travel Trailer passed by him he smelled an odor of burnt marijuana. After the car had passed he no longer detected the odor of burnt marijuana. He pursued the vehicle and observed an occupant in the vehicle throw an object out the window. He then noticed a defective license plate light and obvious violation of the law. He then conducted a traffic stop for the violation. Officer Ayala then noticed that there were about 8 subjects in the vehicle and requested assistance from Officer Tomas Salazar. A driver's license check revealed that the driver did not have a valid Texas driver's license. Another violation he noticed, was that several small children in the vehicle were not restrained as required by State law.

You then arrived at the scene and asked "what was going on?" Officer Ayala advised you of what he had. You then took over the traffic stop and advised the driver that he could go. You advised that you did not smell any odor of marijuana but you disregarded the other violations. Officer Ayala had made a legal traffic stop and discovered other violations incidental to the traffic stop.

On August 28, 1998, Sergeant Pedro Collazo requested that Officer Ayala stay about 30 minutes passed his shift to assist in processing a prisoner. The morning shift officer had been dispatched

5

to  a call of a vehicle traveling on the wrong side of the causeway. The next day on August 29, 1998, again Sgt. Collazo requested that Officer Ayala stay to process all the prisoners. He again took 30 minutes to process the prisoners and correct some mistakes on the finger print cards. Officer Ayala then filled out the required comp-time forms to claim his time as required by city policy and FLSA section 560 Compensatory Time law. On September 1, 1998, when he returned from his two days off you questioned why he was claiming the comp-time. You advised Officer Ayala that it was going to look bad at City Hall if they were to look at his activity log. You discouraged Officer Ayala from submitting comp-time forms for time worked and earned. Officer Ayala disposed of the forms, but re-submitted them when Sgt. Collazo advised him to do so. In view of the recent problems the City of Port Isabel had with the Labor Department, I find your behavior inexcusable. The City of Port Isabel had to pay $55,737.00 for violations under the Fair Labor Standards Act, that were committed by the Police Department, while you were second in command. In your capacity as a Police Department supervisor should know not to allow a violation like this occur.

In regard to Officer Juan Manuel Ayala's allegations, you violated Chapter 5; section 5.23: Unbecoming Conduct. You again interfered with a police officer's duty and impaired the operation of the Department. Section 5.42 Unsatisfactory Performance: Officers shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions. Your unsatisfactory performance was demonstrated when you failed to take action or prevented another officer to take enforcement action on a law violation. I find that you again violated T.P.C. 38.15 (a)(1)(b), Interference with Public Duties.

The operator of this vehicle did not possess a valid driver's license, and there were children in the vehicle that were not restrained. I find that you violated Transportation code 521.458(b) Permitting an unauthorized person to drive. (A Class "C" misdemeanor)
Upon instructing Officer Ayala not to submit his comp-time forms, you violated Chapter VI Compensation and Benefits of the City of Port Isabel Policy Manual. You also violated FLSA section 560-Compensatory Time law, which requires the submission of these form to claim time earned.

Officer Delvin Lee Hatley Jr. submitted a statement in which he states that on several occasions he has personally heard you make derogatory remarks toward other fellow officers and Department employees. Examples are: "where's that fat little rollie pollie fuck?" or " where is the pinche marana?" referring to Sergeant Pedro Collazo. He further states that you have made similar remarks about Communications Officer Nadine McDowell. You asked Officer Hatley, "tell me the truth, have you ever wondered how Nadine wipes her ass?" These statements were made loud enough to where the people you were talking about could have heard you.

In regard to the statement that was submitted by Officer Hatley, I find that again you were insubordinate toward the Chief of Police. You demonstrate a willful act of defiance to my directive of June 6, 1998. In the directive I specifically request that indecent and vulgar language not be used in the Police Department.

6

Sergeant Alaniz, your style of supervising your subordinates is contrary to the basic skills of supervision. It is not consistent with skills that are based on job knowledge, human relations, conceptual skills to eliminate errors and imrove proficiency, and affective skills to create an environment based on fairness and equality. A supervisor should place emphasis on the development of the skills of their subordinates, rather than restricting them from doing their job, and humiliating them without just cause.

I believe your style of supervising prevents your subordinates from maximizing their talents. You restrict them from achieving individual needs, in order to obtain job satisfaction. You limit their opportunity for satisfying professional goals. It is your duty as a supervisor to create a pleasant or at least a civil working environment in which officers want to work, and not be afraid of coming to work. It is also your duty as a supervisor to make yourself available to help or guide your subordinates in solving problems as they occur.

I have reviewed your evaluation of July 9, 1998, and have concluded that you have not made any effort to meet any of the expectations in this evaluation. Among these were a need on your part; (1). to make an effort toward leading and motivating your subordinates to improving job performance. (2). To work toward the common goal of providing efficient, quality,and professional service to our citizens. (3). Improve traffic enforcement on your shift. It seems that you attempt to do the opposite. I see no effort on your part to motivate your subordinates to improving their job performance. Traffic enforcement has not improved, and you have not demonstrated any willingness to provide efficient, quality, and professional service to our citizens. This would be in working toward one of the goals of the Port Isabel Police Department.

The evidence obtained in this investigation of your conduct, reflects that you have failed to meet these standards expected of you as a supervisor. You have repeatedly abuse your position of authority and have engaged in conduct that is unacceptable as a Sergeant or member of the Port Isabel Police Department. You have committed serious violations of policy and law, and to that extent, you have become a liability to the City and the Department. I feel that you can no longer be effective as a supervisor or member of the Port Isabel Police Department. Therefore I am terminating your position as a member of this Department effective September 16, 1998, at 5:00 PM. You must turn in all property entrusted to you and belonging to the City of Port Isabel, before you receive your pay check.

You have the right to appeal this action with the City Manager, as provided by policy within ten days after receiving this letter.

Respectfully,

Joel Ochoa
Chief of Police


cc:     City Manager
        Personnel File
        File

7



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

September 3, 1998

Jorge Alaniz
Sergeant
Port Isabel Police Department
Port Isabel, Texas 78578

Dear Sergeant Alaniz,

I have received several complaints from various officers under your command, about the manner in which you are supervising them. These officers feel that you are engaging in intimidating tactics that have created a hostile environment. This situation has escalated to the point that it has effected morale and job performance. In fact, one of the complaints from the officers is that you on occasions have restricted their ability to perform their job.

In view of the seriousness of the allegations, I have ordered an internal investigation into this matter. The investigation is in accordance with Chapter XIV, Section 14.01B of the Port Isabel Police Department Policy Manual.

In accordance with Chapter XIV, Section 14.01.9 of the Port Isabel Police Department Policy Manual, you are suspended with pay pending further disciplinary action. Your suspension is effective September 3, 1998. The purpose of this suspension is to relieve you from the burden of daily work while under the strain of an investigation, and to avoid any embarrassment or conflict that might arise from the continued service of an employee who is accused of, or charged with misconduct.

Respectfully Submitted,

Joel Ochoa
Chief of Police

cc:     City Manager
        Personnel File
        File



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

## MEMORANDUM

DATE:        September 3, 1998

TO:          Sergeant Pedro Collazo

FROM:        Chief Joel Ochoa

RE:          Internal Investigation

There have been allegations made against Sergeant Jorge Alaniz of possible misconduct regarding the manner in which he treats his men under his command. In view of the seriousness of the allegations, I am requesting that you conduct an internal investigation into this matter.

I expect you to assure that this investigation is carried out in a professional and unbiased manner. In order to be fair to everyone concerned, I am relying on you to make sure that we deal with facts and truthfulness, and not with personal feelings or biases.

# CITY OF PORT ISABEL



October 19, 1998

Mr. Jorge Alaniz
Sergeant
Port Isabel Police Department
Port Isabel, TX 78578

Dear Sergeant Alaniz:

After careful consideration of the facts regarding your employment status with the Port Isabel Police Department I find that I must uphold Chief Joel Ochoa's decision.  Termination of an employee is a difficult decision to make, but I could not find reason to reverse the Chief's decision to terminate your employment with the City of Port Isabel effective October 19, 1998.

Please return any property, (if any), that you may have in your possession belonging to the City of Port Isabel.  The Finance Director will forward your final check to you with all compensation due.

I want to thank you for your many years of service to the City of Port Isabel and its citizens.  I wish you only the best.

Respectfully,

Patrick H. Marchan
Mayor and Acting City Manager

xc:   Chief of Police
      City Attorney
      Personnel file
      File

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

# U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration



I, __JOSE BARRIOS_____, hereby acknowledge receipt of payment in full
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D.__
(Name and location of establishment)

for the period beginning with the workweek ending _____9/95_____ through the workweek

ending _____9/97_____ of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **3,734.14** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ 1,227 09 |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ 2,507 05 |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act.  Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X _2-19-98_       Address X _RT 3 FDN 1-C  LOS FRESNOS TX_
(Number, Street, (Apt. No.), City, State, ZIP Code) _78566_

**EMPLOYER'S CERTIFICATION**
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2-19-98_ paid the above-named employee
in full covering unpaid wages as stated above.

Signed _____       Title **FINANCE DIRECTOR**
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY                                    Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

# U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __PETE COLLAZO_____, hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from ___CITY OF PORT ISABEL P.D._____
(Name and location of establishment)

for the period beginning with the workweek ending _____9/95_____ through the workweek

ending ___9/97_____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __3,617.75__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __1,149 03__ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ __2,468.72__ |

**NOTICE TO EMPLOYEE.** - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Pete Collazo_

Date X _2/19/98_

Address X _BX 6716 Port Isabel, Tx 78_
(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
### To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2-19-98_____ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____   Title __FINANCE DIRECTOR__
(Employer or authorized representative)

## PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration



I, **GREGORIO CRUZ**, hereby acknowledge receipt of payment in full
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.**
(Name and location of establishment)

for the period beginning with the workweek ending **9/95** through the workweek

ending **9/97** of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| | | |
|---|---|---|
| XX The Fair Labor Standards Act | ☐ The Davis-Bacon and Related Acts | Gross amount $ **1,832.88** |
| ☐ The Walsh-Healey Public Contracts Act | ☐ The Contract Work Hours and Safety Standards Act | Legal deductions $ **446 50** |
| ☐ The Service Contract Act | ☐ Title III - Consumer Credit Protection Act | Net amount received $ **1,386 38** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Greg Cruz_

Date X _3-16-98_     Address X _411 W. Elk Rd Port Isabel TX_
(Number, Street, Apt. No.), City, State, ZIP Code)  _78364_

**EMPLOYER'S CERTIFICATION**
**To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor**

I hereby certify that I have on this (date) _3-16-98_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____     Title **FINANCE DIRECTOR**
(Employer or authorized representative)

### PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

CutePDF – www.cutepdf.com

**Receipt For Payment of Back Wages**
As computed or approved by the Wage and Hour Division

**U.S. Department of Labor**
Wage and Hour Division
Employment Standards Administration

I, __MANUEL CRUZ_____ , hereby acknowledge receipt of payment in full
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D._____
(Name and location of establishment)

for the period beginning with the workweek ending _____9/95_____ through the workweek

ending _____9/97_____ of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $  3,123.18 |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $  990.96 |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $  2,132.22 |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Sophie C. Cruz_

Date X _March 9, 1998_     Address X _R+1 Box 38-A Sebastian, TX 785__
(Surviving Spouse)                    (Number, Street, Apt. No.), City, State, ZIP Code)

**EMPLOYER'S CERTIFICATION**
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) ____3-9-98_____ paid the above-named employee
in full covering unpaid wages as stated above.

Signed _____     Title __FINANCE DIRECTOR__
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

# U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration



I, __JAVIER GUTIERREZ_____ , hereby acknowledge receipt of payment in full
           (Type or print name of employee)

from __CITY OF PORT ISABEL_____
                (Name and location of establishment)

for the period beginning with the workweek ending _____ 9/95 _____ through the workweek

ending _____ 9/97 _____ of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __595.82__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __144.97__ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ __450.85__ |

NOTICE TO EMPLOYEE. - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right
you may have to bring suit for such back wages under Section 16(b) of that Act.  Section 16(b) provides that an employee may bring suit on
his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees
and court costs.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this report unless you have actual-
ly received payment of the back wages due.

Signature of employee X _____

Date X _2-20-98_____   Address X _RT3 BOX 173C. HARLINGEN TX 78550_
                                (Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date)_ _2-20-98_____ paid the above-named employee
in full covering unpaid wages as stated above.

Signed _____   Title _FINANCE DIRECTOR_
             (Employer or authorized representative)

## PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

CIMPDF - www.fastio.com

**Receipt For Payment of Back Wages**
As computed or approved by the Wage and Hour Division

**U.S. Department of Labor**
Wage and Hour Division
Employment Standards Administration



I, __DELVIN HATLEY_____ , hereby acknowledge receipt of payment in full
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D._____
(Name and location of establishment)

for the period beginning with the workweek ending _____ 9/95 _____ through the workweek

ending _____ 9/97 _____ of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __2,859.67__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __719.99__ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ __2,139.68__ |

**NOTICE TO EMPLOYEE.** - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X _02-19-98_____   Address X _1400-C Pino Dr. Laguna Vista, TX 73578_
(Number, Street, (Apt. No.), City, State, ZIP Code)

**EMPLOYER'S CERTIFICATION**
**To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor**

I hereby certify that I have on this (date) _2-19-98_____ paid the above-named employee in full covering unpaid wages as stated above.

Signed X _____   Title __FINANCE DIRECTOR__
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY                    Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __JUAN HINOJOSA_____, hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from _____CITY OF PORT ISABEL P.D._____
(Name and location of establishment)

for the period beginning with the workweek ending _____9/95_____ through the workwee

ending _____9/97_____of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [xx] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ ___665.91___ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ ___98.34___ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ ___567.57___ |

NOTICE TO EMPLOYEE. - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actual-ly received payment of the back wages due.

Signature of employee X _Juan Carlos Hinojosa_

Date X 02-20-98       Address X 39 Casa de Amigos Brownsville, T
(Number, Street, (Apt. No.), City, State, ZIP Code)       7852

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2-20-98_____ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____       Title __FINANCE DIRECTOR__
(Employer or authorized representative)

### PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration



I, **MICHAEL LONGORIA** _____, hereby acknowledge receipt of payment in fu

(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.** _____

(Name and location of establishment)

for the period beginning with the workweek ending ____ **9/95** ____ through the workwee'

ending ____ **9/97** ____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| [xx] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **3,032.31** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **1,080 45** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **1,951 86** |

**NOTICE TO EMPLOYEE.** - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X *Michael Longoria*

Date X **FEBRUARY 19, 1998**   Address X *540 W. Palm, San Benito, TX 78586*

(Number, Street, (Apt. No.), City, State, ZIP Code)

### EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) **2-19-98** paid the above-named employee in full covering unpaid wages as stated above.

Signed _____   Title **FINANCE DIRECTOR**

(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY                    Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __ADAN LOPEZ__ , hereby acknowledge receipt of payment in fi

(Type or print name of employee)

from __CITY OF PORT ISABEL__

(Name and location of establishment)

for the period beginning with the workweek ending _____ 9/95 _____ through the workwee

ending _____ 9/97 _____ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [xx] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ 3,583.56 |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ 1,078.53 |
| [ ] The Service Contract Act | [ ] Title III – Consumer Credit Protection Act | Net amount received $ 2,505.03 |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X _02-19-98_    Address X _690 Edreu ___ Isle  San Ben- to 7_

(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2-19-98_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____    Title __FINANCE DIRECTOR__

(Employer or authorized representative)

## PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **DANNY MARCHAN** _____ , hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.**
(Name and location of establishment)

for the period beginning with the workweek ending _____ **9/95** _____ through the workwec

ending _____ **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **2,610.00** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **753.49** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **1,856.51** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right
you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on
his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees
and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actual-
ly received payment of the back wages due.

Signature of employee X _D. D. Marcha_

Date X _Oct 19/ 1998_

Address X _4C) Habic Cixt - P.O. Box 775 Pt Isabel TX_
(Number, Street, (Apt. No.), City, State, ZIP Code) _78578_

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2-19-98_ _____ paid the above–named employee
in full covering unpaid wages as stated above.

Signed _____ Title **FINANCE DIRECTOR**
(Employer or authorized representative)

### PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **JORGE MORIN** _____, hereby acknowledge receipt of payment in f
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.** _____
(Name and location of establishment)

for the period beginning with the workweek ending _____ **9/95** _____ through the workwe

ending _____ **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **3,264.23** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **1,045.47** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **2,218.76** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Jorge Morin III_

Date X 02-20-98   Address X 122 E Taylor Harlingen TX 78550
(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) __2-20-98__ paid the above-named employee
in full covering unpaid wages as stated above.

Signed _____   Title **FINANCE DIRECTOR**
(Employer or authorized representative) 2-23-98

## PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY                    Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division



## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **OMAR OLGUIN** _____, hereby acknowledge receipt of payment in fu

(Type or print name of employee)

from **CITY OF PORT ISABEL** _____

(Name and location of establishment)

for the period beginning with the workweek ending _____ **9/95** _____ through the workwee

ending _____ **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **3,734.14** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **1,324 33** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **2,409 81** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Omar Olguin_

Date X _Feb. 19, 1998_   Address X _1000 Hibiscus # 207 Laguna Vista, Te_

(Number, Street, (Apt. No.), City, State, ZIP Code) _78578_

### EMPLOYER'S CERTIFICATION
**To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor**

I hereby certify that I have on this (date) _2-19-98_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____   Title **FINANCE DIRECTOR**

(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

# U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __CORNELIO RENTERIA__ , hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D.__
(Name and location of establishment)

for the period beginning with the workweek ending ___9/95___ through the workwee

ending ___9/97___ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | |
|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act |

Gross amount $ __1,860.14__

Legal deductions $ __392 20__

Net amount received $ __1,467 94__

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act.  Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this report unless you have actually received payment of the back wages due.

Date X __02/19/98__

Signature of employee X _Cornelio Renteria_

Address X _1743, Villanova Brownsville, Tx._
(Number, Street, (Apt. No.), City, State, ZIP Code) _78520_

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) __2-19-98__ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____
(Employer or authorized representative)

Title __FINANCE DIRECTOR__

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration



I, **FELIX RODRIGUEZ** _____, hereby acknowledge receipt of payment in full

(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.**

(Name and location of establishment)

for the period beginning with the workweek ending **9/95** _____ through the workweek

ending **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| [xx] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **1,019.42** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **200.32** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **819.10** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X **2-19-98**

Address X **3306 Coffe Rd Vcl Lot 31 Brownsville TX 78521**

(Number, Street, (Apt. No.), City, State, ZIP Code) **78521**

### EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) **2-19-98** paid the above-named employee in full covering unpaid wages as stated above.

Signed _____

(Employer or authorized representative)

Title **FINANCE DIRECTOR**

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)



# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

# U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __JAIME RODRIGUEZ__ , hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D.__
(Name and location of establishment)

for the period beginning with the workweek ending ___9/95___ through the workweek

ending ___9/97___ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __700.96__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __121 56__ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ __579 40__ |

**NOTICE TO EMPLOYEE.** - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _[signature]_

Date X _3-5-98_     Address X _A, Tx 378-A   San Benito Texas 78586_
(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _3/5/98_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _[signature]_     Title **FINANCE DIRECTOR**
(Employer or authorized representative)

## PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS

2. EMPLOYER COPY     Form WH-58 (Rev. Jan. 1982)



# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **TOMAS SALAZAR** , hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.**
(Name and location of establishment)

for the period beginning with the workweek ending _____ **9/95** _____ through the workweek

ending _____ **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| | | |
|---|---|---|
| XX The Fair Labor Standards Act | ☐ The Davis-Bacon and Related Acts | Gross amount $ **2,350.38** |
| ☐ The Walsh-Healey Public Contracts Act | ☐ The Contract Work Hours and Safety Standards Act | Legal deductions $ **773.36** |
| ☐ The Service Contract Act | ☐ Title III - Consumer Credit Protection Act | Net amount received $ **1,577.02** |

**NOTICE TO EMPLOYEE.** - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _Tomas Salazar_

Date X 2-19-98        Address X 1105 BASS St. + Isabel TX 78 78
(Number, Street, (Apt. No.), City, State, ZIP Code)

### EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) 2-19-98 paid the above-named employee in full covering unpaid wages as stated above.

Signed _____        Title **FINANCE DIRECTOR**
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY        Form WH-58 (Rev. Jan. 1982)



# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **MARTIN SALINAS**_____, hereby acknowledge receipt of payment in full
          (Type or print name of employee)

from _____ **CITY OF PORT ISABEL P.D.**_____
                        (Name and location of establishment)

for the period beginning with the workweek ending _____**9/95**_____ through the workweek

ending _____**9/97**_____of unpaid wages due me (as shown in the column to the right) under the Act(s)

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **4,169.42** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **1,373.09** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **2,796.33** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit in his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X _2-19-98_

Address X _Box 4746 Port Isabel Tx 78578_
                  (Number, Street, (Apt. No.), City, State, ZIP Code)

### EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2 - 19-98_____ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____ Title **FINANCE DIRECTOR**
      (Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

**2. EMPLOYER COPY**

Form WH-58 (Rev. Jan. 1982)

CMsPDF - www.tesisa.com

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, __ROBERT STREIF__ , hereby acknowledge receipt of payment in f
(Type or print name of employee)

from __CITY OF PORT ISABEL P.D.__
(Name and location of establishment)

for the period beginning with the workweek ending ____9/95____ through the workwe

ending ____9/97____ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __4,719.80__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __1,604 79__ |
| [ ] The Service Contract Act | [ ] Title III – Consumer Credit Protection Act | Net amount received $ __3,115.01__ |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right
you may have to bring suit for such back wages under Section 16(b) of that Act.  Section 16(b) provides that an employee may bring suit on
his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees
and court costs.  Generally, a 2-year statute of limitations applies to the recovery of back wages.  Do not sign this report unless you have actual-
ly received payment of the back wages due.

Signature of employee X _____

Date X _2/19/98_          Address X _P Box 301 Port Isabel TX 7857_
(Number, Street, (Apt. No.), City, State, ZIP Code)

### EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _2/19/98_ paid the above-named employee
in full covering unpaid wages as stated above.

Signed _____          Title __FINANCE DIRECTOR__
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY                Form WH-58 (Rev. Jan. 1982)

**Receipt For Payment of Back Wages**
As computed or approved by the Wage and Hour Division

**U.S. Department of Labor**
Wage and Hour Division
Employment Standards Administration

I, ___EMILIO VASQUEZ_____ , hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from ___CITY OF PORT ISABEL, P.D._____
(Name and location of establishment)

for the period beginning with the workweek ending _____9/95_____ through the workwee

ending _____9/97_____ of unpaid wages due me (as shown in the column to the right) under the Act(s

indicated in the marked box(es):

| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ __1,774.94__ |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ __364.82__ |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ __1,410.12__ |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actual- ly received payment of the back wages due.

Signature of employee X _Emilio Vasquez_

Date X _02/19/9L_          Address X _Col 5101 Cod Isabel 72 78578_
(Number, Street, (Apt. No.), City, State, ZIP Code)

**EMPLOYER'S CERTIFICATION**
**To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor**

I hereby certify that I have on this (date) _2-19-98_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____          Title **FINANCE DIRECTOR**
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY                          Form WH-58 (Rev. Jan. 1982)

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **STEVEN WESTON** _____, hereby acknowledge receipt of payment in fu
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.** _____
(Name and location of establishment)

for the period beginning with the workweek ending _____ **9/95** _____ through the workwee'

ending _____ **9/97** _____ of unpaid wages due me (as shown in the column to the right) under the Act(

indicated in the marked box(es):

| | | |
|---|---|---|
| [XX] The Fair Labor Standards Act | [ ] The Davis-Bacon and Related Acts | Gross amount $ **2,567.17** |
| [ ] The Walsh-Healey Public Contracts Act | [ ] The Contract Work Hours and Safety Standards Act | Legal deductions $ **615.72** |
| [ ] The Service Contract Act | [ ] Title III - Consumer Credit Protection Act | Net amount received $ **1,951 45** |

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Signature of employee X _____

Date X _**2-20-18**_ 

Address X _P.C. Box 3197  S. Pad. Island TX 78_
(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) _**2-20-98**_ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____

Title **FINANCE DIRECTOR**
(Employer or authorized representative)

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

AS PER OUR CONVERSATION 10/2/97 1:20 P.M.

CORY CARRIZALES
DEPT. OF LABOR

1)      SALARY SCHEDULE

2)      REQUIRED TRAINING OVERSEEN BY THE POLICE DEPARTMENT

3)      POLICE DEPT. EMPLOYEE NAME LIST LAST TWO YEARS
        AUGUST 1995 TO INCLUDE START AND END DATE

# CITY OF PORT ISABEL
# POLICE DEPARTMENT
# STEP PAY PLAN 95-96

| STEP | POLICE OFFICER I | POLICE OFFICER II | COMMANDER I | COMMANDER II | |
|---|---|---|---|---|---|
| A<br>INCREASE 96-97 | $15,200.00<br>$16,200.00 | $17,400.00 | $19,800.00 | $22,200.00 | |
| B | | $18,600.00 | $21,000.00 | $23,600.00 | AFTER 2 YEARS STEP A |
| C | | $19,800.00 | $22,200.00 | $24,800.00 | AFTER 3 YEARS STEP B |
| D | | $21,000.00 | $23,600.00 | $26,000.00 | AFTER 3 YEARS STEP C |

AFTER ONE YEAR
PROBATION MOVE
TO POLICE OFFICER II
STEP A

CERTIFICATION INCENTIVES
INCENTIVES WILL BE PAID ON A SEPARATE CHECK ON A QUARTERLY BASIS AS A BONUS

| | |
|---|---|
| INTERMEDIATE CERTIFICATION | $50.00 A MONTH |
| ADVANCED CERTIFICATION | $50.00 A MONTH |
| MASTER PEACE OFFICER | $50.00 A MONTH |
| INTOXILIZER OPERATOR | $50.00 A MONTH |
| FIREARMS INSTRUCTOR | $50.00 A MONTH |
| FIREARMS PROFICIENCY | $25.00 A MONTH |
| CLOTHING ALLOWANCE | $100.00 A MONTH |

a: salaries lotus123, plan96.wk4
08/01/95

# CITY OF PORT ISABEL
## POLICE DEPARTMENT
### STEP PAY PLAN 95-96 DISPATCHERS

| STEP | RATE PER HOUR | PER YEAR |
|---|---|---|
| CURRENT RATE | $5.96 | $12,400.00 |
| 1ST 6 MONTHS PROBATION | $6.83 | $14,206.40 |
| A: ER 6 MONTHS | $7.79 | $16,203.20 EQUAL TO A PROBATIONARY POLICE OFFICER |

S: RY TO INCREASE IN A PROPORTIONAL AMOUNT, EQUAL TO A PROBATIONARY POLICE OFFICER'S SALARY RANGE

a:1   aa lotus123, plan96d.wk4

08/01/95



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

September 3, 1998

Jorge Alaniz
Sergeant
Port Isabel Police Department
Port Isabel, Texas 78578

Dear Sergeant Alaniz,

I have received several complaints from various officers under your command, about the manner in which you are supervising them. These officers feel that you are engaging in intimidating tactics that have created a hostile environment. This situation has escalated to the point that it has effected morale and job performance. In fact, one of the complaints from the officers is that you on occasions have restricted their ability to perform their job.

In view of the seriousness of the allegations, I have ordered an internal investigation into this matter. The investigation is in accordance with Chapter XIV, Section 14.01B of the Port Isabel Police Department Policy Manual.

In accordance with Chapter XIV, Section 14.01.9 of the Port Isabel Police Department Policy Manual, you are suspended with pay pending further disciplinary action. Your suspension is effective September 3, 1998. The purpose of this suspension is to relieve you from the burden of daily work while under the strain of an investigation, and to avoid any embarrassment or conflict that might arise from the continued service of an employee who is accused of, or charged with misconduct.

Respectfully Submitted,

Joel Ochoa
Chief of Police

cc:    City Manager
       Personnel File
       File



# PORT ISABEL POLICE DEPARTMENT

110 W. HICKMAN ST. • PHONE (210) 943-1242 • FAX (210) 943-1949
PORT ISABEL, TEXAS 78578

## MEMORANDUM

DATE:        September 3, 1998

TO:          Sergeant Pedro Collazo

FROM:        Chief Joel Ochoa

RE:          Internal Investigation


There have been allegations made against Sergeant Jorge Alaniz of possible misconduct regarding the manner in which he treats his men under his command. In view of the seriousness of the allegations, I am requesting that you conduct an internal investigation into this matter.

I expect you to assure that this investigation is carried out in a professional and unbiased manner. In order to be fair to everyone concerned, I am relying on you to make sure that we deal with facts and truthfulness, and not with personal feelings or biases.

# CITY OF PORT ISABEL



October 19, 1998

Mr. Jorge Alaniz
Sergeant
Port Isabel Police Department
Port Isabel, TX 78578

Dear Sergeant Alaniz:

After careful consideration of the facts regarding your employment status with the Port Isabel Police Department I find that I must uphold Chief Joel Ochoa's decision.  Termination of an employee is a difficult decision to make, but I could not find reason to reverse the Chief's decision to terminate your employment with the City of Port Isabel effective October 19, 1998.

Please return any property, (if any), that you may have in your possession belonging to the City of Port Isabel.  The Finance Director will forward your final check to you with all compensation due.

I want to thank you for your many years of service to the City of Port Isabel and its citizens.  I wish you only the best.

Respectfully,

Patrick H. Marchan
Mayor and Acting City Manager

xc:   Chief of Police
      City Attorney
      Personnel file
      File

*"An Equal Opportunity Employer"*

305 E. MAXAN ST.        PORT ISABEL, TEXAS 78578        PHONE 956/943-2682        FAX 956/943-2029

# Receipt For Payment of Back Wages
As computed or approved by the Wage and Hour Division

## U.S. Department of Labor
Wage and Hour Division
Employment Standards Administration

I, **HORACIO ZAMORA** , hereby acknowledge receipt of payment in
(Type or print name of employee)

from **CITY OF PORT ISABEL P.D.**
(Name and location of establishment)

for the period beginning with the workweek ending ____**9/95**____ through the workwe

ending ____**9/97**____ of unpaid wages due me (as shown in the column to the right) under the Ac

indicated in the marked box(es):

[XX] The Fair Labor Standards Act

[ ] The Davis-Bacon and Related Acts

[ ] The Walsh-Healey Public Contracts Act

[ ] The Contract Work Hours and Safety Standards Act

[ ] The Service Contract Act

[ ] Title III - Consumer Credit Protection Act

Gross amount $ __790.53__

Legal deductions $ __129.60__

Net amount received $ __660.93__

**NOTICE TO EMPLOYEE.** – Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for such back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorney's fees and court costs. Generally, a 2-year statute of limitations applies to the recovery of back wages. Do not sign this report unless you have actually received payment of the back wages due.

Date X 02/19/98

Signature of employee X

Address X Box 1301 Port Isabel Tx 78578
(Number, Street, (Apt. No.), City, State, ZIP Code)

## EMPLOYER'S CERTIFICATION
To Wage and Hour Division, Employment Standards Administration, U.S. Department of Labor

I hereby certify that I have on this (date) __2-19-98__ paid the above-named employee in full covering unpaid wages as stated above.

Signed _____
(Employer or authorized representative)

Title **FINANCE DIRECTOR**

**PENALTIES ARE PRESCRIBED FOR FALSE STATEMENTS AND FALSE RECEIPTS**

2. EMPLOYER COPY

Form WH-58 (Rev. Jan. 1982)

STATE OF TEXAS        ᾝ

COUNTY OF CAMERON    ᾝ

Before me the undersigned authority on this day personally appeared

Tomas Salazar,              who after being by me duly sworn did

depose and say:     :

My name is Tomas Salazar. I am 27 years old and currently employed with the city of Port Isabel as a Patrolman II. I can be reached at (956) 943-1242.

On September 1, 1998 at about 1215 hours I was patrolling the H.E.B. parking lot when I saw a female by the name of Sonia Sanchez, who I had been told by South Padre Island Investigator Jaime Rodriquez that she had an outstanding warrant out of their city. I then drove to Texmart, which is located on Texas Highway 100 and Highway 48 and called S.P.I. Officer J. Puente and asked him if Mrs. Sanches was still wanted out of their city. Officer Puente then told me that he would confirm the warrant and would call me back.

At about 1233 hours, I saw Mrs. Sanchez get into a black Chevy Pickup truck and drive onto Highway 48 Northbound. I followed the black pickup which was displaying Texas Lp's #728-2WZ to the traffic light on Highway 48 and 100 and saw that the driver had failed to signal a left trun. I then made a traffic stop on the vehicle at West of Fourth St, As I made contact with the driver, I asked her for her driver's license and explained to her why she had been detained. I then went back to my patrol car and asked communication Officer D. Gorham to run a check on the driver's licens number and to ask S.P.I. if they had confirmed the warrant for Mrs. Sanchez.

At this time Sergeant J. Alaniz asked me what the traffic was. I told Sgt. Alaniz that I was unsure and that S.P.I. would notify us, but I believed that the warrant was for unpaid fines (public intoxication). Sgt. Alaniz then drove to my location and asked me again what the warrant was for and what the hell did I think I was doing. I told him again that Mrs. Sanchez was wanted out of the Island and that Officer J. Puente had confirmed it. Sgt. Alaniz then asked what the city of Port Isabel had to gain in arresting violators out of other cities. I told Sgt. Alaniz that I was trying to build good work relations with the Island and that we had not had any prior calls or traffic going on at the time anyway. Sgt. Alaniz then told me to go back into service and to let Mrs. Sanchez go before S.P.I. were able to arrive. I told him again that S.P.I. had already sent one of their officers to pick up Mrs. Sanchez. Sgt. Alaniz then called communication Officer Gorham and asked him if S.P.I. was going to send an Officer because if not we were going to release her. Officer Gorham told Sgt. Alaniz that yes S.P.I. had already sent an officer and that he would be at our locaion shortly. At this time Sgt. Alaniz gave me a direct order to release Mrs. Sanchez and for me to get back to work. I then made contact with Mrs. Sanchez and told her that she did have a warrant for her arrest at the Island and that she had to take care of it as soon as possible or else she would be placed under arrest next time.

I released Mrs. Sanchez and advised Officer Gorham to notify S.P.I. to disreguard and that I was back in service.

STATE OF TEXAS                    Ø
COUNTY OF CAMERON                 Ø

Before me the undersigned authority on this day personally appeared

____Tomas Salazar.·_____ who after being by me duly sworn did

depose and say:

Alaniz then told me that I was not a one man team and asked who had told me that Mrs. Sanchez was wanted. He also demanded to know why I had detained Mrs. Sanchez without a warrant or warrant number on hand. I told Sgt. Alaniz that I had not detained her for the warrant ant that I had detained her for the violation. Sgt. Alaniz then told me that it was a chicken shit violation and that I was going to be sued if I wasn't careful. Sgt. Alaniz then asked me again what our department had to gian in arresting violators out of another city. I explained to him the warrant are not addressed to any one agency but read to any peace officer in the state of Texas and therefore I could arrest. Sgt. Alaniz then told me that I was not to detain anyone unless I had a warrant or warrant number in my hand. Sgt. Alaniz then told me that I was dismissed and that I was not to do what I did again and if that was understood.

At about 0450 hours Sgt. Alaniz asked me what my location was and I told him that I was stationary at the Port of Call doing my reports and that I was almost finished. At about 0505 Sgt. Alaniz told Officer Reyna and I to meet him at the station where we went of duty at 0506 hours. Shift ends at 0600 hours.

I, Tomas Salazar, do not believe that I did anything wrong or out of my duties as a Port Isabel Police Officer on the morning of September 1, 1998. Furthermore, I feel that what Sgt. Alaniz did by interfering with my duties did nothing but demoralize me in front of my peers and also in front of the South Padre Island Police Department. The reason I say the S.P.I. Police Department is because I have already been questioned as to why I had asked to have a warrant confirmed by them if I was not going to detain the suspect or subject for them. I also believe that Sgt. Alaniz had no grounds for verbally reprimanding me. I feel it necessary to point out that I realize Sgt. Alaniz is my superior officer and that I respect his authority and always have; however, I feel that as my superior officer it is within his duties to communicate with officers respectfully. It is within his job description to Facilitator, Motivator, and Coach to personnel. I did not feel that I was given respect or support in this manner.

This is a true and correct statememet to the best of my knowledge of the events that occurred on September 1. 1998.

_Tomas Salazar_____

Tomas Salazar

**MEMORANDUM**

DATE: August 20,1998

TO: All Patrol Supervisors

FROM: Chief Joel Ochoa

RE: Violation of Port Isabel Police Department Manual, Chapter 4, Section 4.01B.

On August 19, 1998, I received a complaint, informing me that during the 10:00PM to 6:00 AM shift all officers working the shift are taking their coffee and/or meal break at the same time. This of course is in violation of Department Policy. Furthermore, the complainant stated, that the officers were at the Whataburger from approximately 3:05 AM to approximately 4:20 AM. This is an unreasonably long period of time to spend on a coffee break and/or meal.

On the morning of August 20, 1998, I came out at 3:00 AM and was disappointed that I was able to confirm the complaint as valid. The three officers working the shift checked out at Whathaburger at approximately 3:25 AM. One officer then checked back in at approximately 3:56 AM, while the other two remained at the Whataburger until approximately 4:15 AM.

I am holding the shift Supervisor responsible for this, and expect this situation to be corrected immediately. I do not want it to get to the point that disciplinary action has to be taken. I expect all Supervisors to be good examples to their subordinates, and not get in a position where you will bring discredit to yourself and the Department.

**THIRTY MINUTES SHOULD BE REASONABLE AND SUFFICIENT FOR YOUR MEAL AND/OR COFFEE BREAK.**

1

## 2.07   JOB DESCRIPTIONS

Job descriptions are issued to personnel and are filed in the Port Isabel Police Department personnel files. The job descriptions serve to inform personnel and those interested in employment or reassignment what is generally expected of a person in a particular position.

## 2.08   AUTHORITY

Authority is the legitimate power which is given to the City of Port Isabel to manage the Department's personnel and other resources. The City of Port Isabel delegates authority to other personnel as he believes will best serve Department goals.

## 2.09   ACCOUNTABILITY

P  sons receiving authority over another person or r  .eiving authority to carry out job duties are accountable to the City of Port Isabel either directly or indirectly as indicated by their job description or by special instructions from the City of Port Isabel or his designee.

## 2.10   RESPONSIBILITY

Personnel of the Department accept responsibility for performing the duties indicated in the job description of their position as directed by their supervisor. Additionally, personnel are guided in their performance by the goals and objectives of the Department and specifically by the policies, procedures and rules contained in the Manual.

## 2.11   VERBAL DIRECTIVES

Personnel promptly obey verbal instructions and orders of a superior officer. All such instructions or orders are obeyed only if lawful.

## 2.12   LIMITED DURATION DIRECTIVES

Certain written directives are required to inform personnel concerning matters which are normally of limited duration. Such directives specify the persons affected and the applicable time period involved.

Personnel comply with written directives.

*Tomas Salg~  9-3-98*
*2050hrs.*

3

5.20    Out-of-Uniform Enforcement - An officer not in uniform shall not seek an arrest based on minor traffic violations and Class C misdemeanors. (This exception does not apply to flagrant or dangerous offenses such as "Failure to stop and give information," "Failure to stop and render aid," or "driving while intoxicated.")

5.21    Request for Indentification - An officer shall politely furnish his name and badge number to any person requesting such information except when instructed otherwise by proper authority or when necessary in the performance of police work.

5.22    Courtesy - An officer shall be courteous to the public. An officer shall perform his duties with tact, by controlling his temper and exercising the utmost patience and discretion. An officer shall not engage in argumentative discussions even in the face of extreme provocation. In the performance of his duties, he shall not use coarse, violent, profane or insolent language or gestures. An officer shall not express any prejudice concerning race, religion, politics, national origin or similar personal characteristics.

5.23    Unbecoming Conduct - An officer shall always conduct himself (both on and off duty) in a way which reflects most favorable on the department. Unbecoming conduct includes unjustified behavior which brings the department into disrepute, discredits a member of the department or impairs the operation of the department.

5.24    Reporting for Duty - An officer shall report for duty at the time and place specified by his superior officer. At the time he reports, an officer shall be mentally and physically fit to perform his duties. He shall be properly equipped so that he can immediately assume his duties.

5.25    Neglect of Duty - An officer shall not engage in any activity, entertainment or personal business which would distract him or cause him to neglect his official duties.

5.26    Alertness on Duty - An officer shall remain awake and alert during the entire time he remains on duty. If unable to do so, he shall immediately report to his superior officer.

5.27    Operation of Vehicles - An officer shall operate an official vehicle carefully and prudently. An officer shall obey all laws of the State as well as departmental orders pertaining to vehicle operation.

5.28    Use of Weapons - An officer shall handle and use weapons with extreme care and prudence. An officer shall use weapons in strict accordance with established departmental procedures.

5.42   Unsatisfactory Performance - Officers shall maintain sufficient
       competency of properly perform their duties and assume the
       responsibilities of their positions. Officers shall perform their
       duties in a manner which will maintain the highest standards of
       efficiency in carrying out the functions and objectives of the
       department. Unsatisfactory performance may be demonstrated by a
       lack of knowledge in the application of laws required to be
       enforced and unwillingness or inability to perform assigned tasks,
       the failure to conform to work standards established for the
       officer's rank, grade or position, the failure to take appropriate
       action on the occasion of a crime, disorder, or other condition
       deserving police attention or absence without leave. In addition
       to other indications to unsatisfactory performance the following
       will be considered further evidence of unsatisfactory performance:
       repeated poor evaluations or written record of repeated infractions
       of rules, regulations, directives or orders of the department.

5.43   Subject to call Off Duty - A member shall have regularly scheduled
       hours assigned for active duty and when not so employed, shall be
       considered off-duty. A member shall, however, be subject to being
       called to duty as needed and subject to orders from competent
       authority and emergency calls from citizens.

5.44   Abuse of Process - An officer shall not make any false accusation
       or criminal charge, or intentionally manufacture, falsify, destroy,
       or withhold evidence or information.

5.45   Payment of Debts - An officer shall not incur any financial
       obligation which he knows or should know he cannot meet. An
       officer shall pay his just debts when due. Financial difficulties
       stemming from unforeseen medical expenses or personal disaster
       shall not be cause for discipline, provided that the officer has
       undertaken a good faith effort to settle all accounts. An officer
       shall not cosign a note for any superior officer.

5.46   Carrying of Firearms - An officer, when off duty, should carry an
       authorized firearm if he is traveling in public places within the
       jurisdiction of his department. When wearing civilian clothes,
       the officer shall conceal his firearm from public view. While
       off-duty and outside the local jurisdiction, an officer need not
       carry a firearm.

5.47   Falsifying Over-time Records - Any person who intentionally claims
       over-time or compensatory time for work not actually performed,
       will be immediately dismissed from the service.

5.48   Physical Fitness for Duty - All members of the department shall
       maintain good physical condition so they can handle the strenuous
       physical contact often required of a law enforcement officer.

56

5.55    Identification -

    (a)    Officers shall carry their badges and identification cards
          on their persons at all times except when impractical or
          dangerous to their safety or to an investigation.

    (b)    Whenever a member takes any police action, he/she shall
          promptly and courteously identify himself/herself by
          giving his/her rank and name and other appropriate
          identification to persons involved unless the exigency
          of a matter requires immediate response.  However, at the
          first opportunity, such identification shall be made.  A
          member shall also furnish his/her name, rank and assignment
          to any citizen who may reasonably request same, except when
          withholding of such information is necessary for the performance
          of police duties or is authorized by proper authorities.

5.56    Sexual Harassment - Sexual harassment toward any individual by any
    member of this department is strictly prohibited.  Sexual harrassment
    may be defined as, but not restricted to:

    (a)    the making of suggestive, obscene, or sexually aggressive
          remarks,

    (b)    the making of suggestive, obscene, or sexually aggressive
          gestures or physical contact, and

    (c)    the unwanted and unwarranted display of suggested sexually
          aggressive behavior of any kind.

    In order to prevent any misunderstanding over such acts,
    although they may be of an innocent or humorous intent, actions
    or remarks of any sexual nature should be avoided.  For the same
    reason,fraternization between employees is strongly discourged.

5.57    Security of Weapons - No weapon shall be left unsecured in any
    public location at any time.  This is to include all areas of the
    police station except private locked offices; desks; locked
    lockers; approved weapon lockers; and similar such secured areas.

5.58    Dereliction of Duty



    Dereliction of duty on the part of a supervisory officer or other
    members of the Department, prejudicial to the proper performance of
    the functions of the Department, are causes for disciplinary action
    and will be punished according to the degree of the offense, the
    results brought about by the dereliction, and the effect it has upon
    the discipline, good order and best interest of the Department.  The
    following constitute violations of the Section:

*TS* 1.  Failure to observe and give effect to the policies of the department.

*TS* 2.  Failure to obey orders.

*TS* 3.  Failure to make proper report of offenses investigated, observed or reported.

Failure of a commanding officer to immediately relieve from duty any subordinate officer for any of the following shall constitute dereliction of duty on the part of a supervisory officer:

4.  Willful disobedience of any lawful order issued to him.

5.  For disrespect shown to a Superior Officer.

6:  For cowardice.

7:  For conduct subversive to the good order and discipline of the Department.

In any of the above listed violations a commanding officer shall immediately relieve the offending officer from duty, instruct him to report to the Chief of Police, and make a complete report of the incident.

Instruction From A Supervisor

*TS* In issuing instructions or correcting conduct, no supervisory officer shall use abusive or _insulting_ language toward a subordiate. Insulting language was used towards me during reprimand

5.59  Duty to Know

Each officer and employee shall familiarize himself with the Port Isabel Police Department Rules, Regulations, Policies and Procedures as set out in this manual.

Members of the department shall be considered as always on duty for the purpose of discipline.

5.60  Those acts, not specifically set out herein, which involve moral turpitude, or which may bring discredit upon the individual or upon the Police Department, or which may conflict with policies announced by the Department from time to time, if committed by an officer or employee of the Department, will be taken according to the seriousness of the offense in the same manner and degree as if the offense had been specifically set out herein.

Case 1:00-cv-00003   Document 111   Filed in TXSD on 08/10/2001   Page 57 of 113

## CHAPTER TWENTY-TWO

22.01    SUPERVISORY REPRIMANDS

A. A supervisory or commanding officer shall have the authority to reprimand a subordinate officer for minor infractions. Such reprimands, whether oral or written, may include a warning, coorective advise, or recommend additional counseling or training. A supervisor properly imposes a reprimand when he reasonably determines that the alleged misconduct does not require further investigation or action. *reprimand without cause*

B. After imposing a reprimand, the supervisory or commanding officer shall explain that reprimand in a written report promptly forwarded to the Chief.

C. The commanding or supervisory officer shall also promptly notify the involved officer that he has the right to have a supervisory reprimand reviewed. If the officer desires such review, he shall notify the Chief within five days of receiving the supervisory reprimand. By failing to request such review, the officer permanently waives his right to such review. *The reprimand could be reviewed. Nevertheless.*

D. A supervisory or commanding officer shall have the authority to temporarily relieve from duty any officer for the balance of the working day (with full pay and benefits) if the officer, by continuing to work, would tend to discredit or impair the operation of the department. The supervisory or commanding officer shall immediately notify the Chief in writing of any such temporary action. The Chief shall have the authority to continue such relief from duty for cause.

132

I.    Position Title
      Police Sergeant

Position Summary:

Entry to this classification is limited to promotion from
within the Police Department.  Under general supervision,
incumbent may be assigned to law enforcement responsibilities
in the:

Supervision and coordination of the activities of a
squad of police officers assigned to designated areas
of the municipality in the enforcement of criminal and
traffic laws and City Ordinances.

Supervision and coordination of activities at the
police station.

Investigations to prevent crime or solve criminal cases.

Technical operation to collect evidence at scene of
crime or fatal accident, classify and identify finger-
prints and photographs evidence for use in criminal
and civil cases.

Example of Duties:

(Note:  The following is a sample of duties performed.  The list
amy or may not include ALL tasks performed; nor are all duties
performed by all position).

1. Supervises and coordinates activities of squad of Police
   Officers assigned to designated area of municipality in
   the enforcement of criminal and traffic laws and City
   Ordinances.

2. Observes Police Officers in performance of duties in
   accident investigations, patrol and enforcement tactics,
   case preparations, arrest techniques, operation of patrol
   vehicle and other police activity taking corrective action
   as required.

3. Enforces efficient performance of duty.

4. Investigates and takes necessary actions in emergencies
   and major incidents.

5. Inspects uniforms and equipment.

6. Investigates known or suspected criminals or facts of
   particular cases to detect planned criminal activities
   or clues.

7. Frequents known areas of criminals and becomes familiar
   with criminals to determine criminal's habits, associates
   characteristics, aliases, and other personnel information.

8. Examines scene of crime to obtain clues and gather evidence
   including development and lifting to latent fingerprints,
   and photographing and sketching crime scenes and other
   evidence as applicable.

9. Prepares assigned cases for court and testifies in court.

133

10. Prepares complete and comprehensive reports on investigations and other reports as required.

11. Interviews and interrogates victim, witnesses and suspects involved in criminal matters; arrests or assists in arrest of criminals or suspects.

12. Investigates and interviews juvenile offenders making appropriate recommendations, and/or taking appropriate actions.

13. Develops and presents programs to civic clubs, public schools and other agencies in prevention and resolving problems relating to human relations or drug and alcohol abuse.

14. Photographs crime or accident scene to obtain record of evidence.

15. Photographs, records physical descriptions, and finger-prints homicide victims and suspects for identification purposes.

16. Performs related duties as required.

Experience:

Two years as a Police Officer preferred.

Abilities Required to Perform Work:

Must have knowledge of police techniques and departmental rules, regulations, and procedures pertaining to patrol, accident investigation, juvenile delinquency arrest and search techniques, techniques and departmental rules, regulations and procedures pertaining to crime against property, crimes of death and injury, crimes of sex and drugs, collection of evidence, and interrogation and interview; legal knowledge including court demeanor, arrest, search and seizure, criminal and juvenile laws; knowledge of basic principles of supervision and departmental rules and regulations relative to personnel practices, training and safety; physical strength and ability to make forceful arrest when necessary; requires emotional and mental stability to work under trying circumstances; ability to pass required physical examination.

Working Conditions and Hazards.

May work at desk, counter, or assigned area in patrol car; depending on work assignment may work rotating shifts including nights, weekends and holidays; subjected to hazards and potential physical dangers inherent to law enforcement work.

Special Requirements and Licenses:

Basic Certificate, Texas Commission on Law Enforcement Officer Standards and Education.

Valid Texas Drivers License

immediately receive any pay increases necessary to insure that they are not compensated less than the new employee.

### Section 603: Promotion Compensation

A newly promoted employee shall normally be compensated at the lowest step which would provide an increase in pay over that received in the lower level job.

### Section 604: Individual Increases (Merit Pay System)

It is the policy of the City of Port Isabel to place a high priority and emphasis on having well-trained, qualified, productive personnel within its ranks. The City therefore acknowledges that an effective employee performance system can help to foster greater productivity, morale, and efficiency within its divisions, departments, and employees. These individual increases are considered to be an essential means of providing compensation rewards and recognition to employees for their exceptional ability, service, efficiency, and contribution to the City.

The compensation plan, then, is designed to provide pay increases to employees to reward ability, efficiency, and increased value to the City through length of service and performance. Individual increases, if granted, shall be granted at the end of each fiscal year (to be included in the next year's Annual Budget), or upon recommendation of department heads, who shall give careful consideration to the ability, attitude, and performance record of each employee. These recommendations are subject to approval, modification, or disapproval of the City Manager, who will then present his findings to the City Commission for final concurrence and ratification thereof.

### Section 605: Compensatory Time

Compensatory Time is defined as time off granted to an employee by a previous agreement between the department heads and supervisory personnel. Under compensatory time, there is no change in the weekly or biweekly salaries. The sole purpose is to trade time during which work is performed for time off at a time more convenient for the City and the employee.

Compensatory time may be substituted for overtime compensation at the request of the employee and at the discretion of the department head, or in the circumstance where the financial position of the City so warrants, as in the case of budgetary shortage or economic emergency.

Compensatory time will be earned and accumulated at the rate of time and one-half and may be taken at any time that is mutually agreeable to both the employee and the supervisor. Comp. time should be given within a reasonable amount of time of its accumulation, so long as it does not unduly disrupt the City's operations. Accumulation of comp. time shall be limited to fifteen (15) days total, and if not used shall be payable at the rate of employment earned upon separation from City service.

13

### Section 606:  Overtime

Overtime is defined as the time in excess of 80 hours which is actually worked in a two week pay period (day shift Monday through night shift Sunday).  Overtime will be paid to all "non-exempt" employees in accordance with applicable State and Federal legislation.  Before becoming eligible for overtime, a non-exempt employee must meet the 80 hour obligation per two week pay period.

Exempt employees are not eligible for overtime pay and are defined as all Department heads and Assistant Department heads who qualify as Executive and/or Administrative employees as defined in Section 12 (a) of FSLA.  Police, fire, and EMS ersonnel are partially exempt from overtime under Section 207 (k) of FSLA.

**Circumstance in Which Overtime May be Authorized:**

1.  Overtime may be authorized only when it is not possible to adjust staffing patterns and/or employee work schedules to provide essential staffing in the following types of circumstances:

A.  Emergency Circumstances
    1.  These are adverse circumstances of a temporary nature which reduce normal staffing or increase staffing requirements.  For example:
        a.  The unexpected absence of an employee whose positions must be filled to avoid a disruption of necessary services;
        b.  The necessity to immediately perform an unexpected heavier than normal volume of work to avoid disruption of necessary services;
        c.  Situations which uncontrollable, such as natural disasters, disruption of utilities, etc.

B.  Non-emergency Circumstances
    1.  These are situations in which overtime work is considered to be the best way to make necessary staff available to handle a particular situation.  For example:
        a.  To provide essential staffing where vacancies exist in a department due to the unavailability of qualified applicants;
        b.  To perform an unusually heavy volume of work of a temporary nature in the implementation of an approved program;
        c.  To perform work which cannot be performed during normal working hours without disrupting necessary activities or services.

14

16-4012—CAPIAS PRO FINE—Municipal Court—Class 2 (174) ⑨      Hart Graphics, Austin

HART

# THE STATE OF TEXAS

TO ANY PEACE OFFICER OF THE STATE OF TEXAS, GREETING:

WHEREAS, On the _____1st_____ day of _____January_____ A. D. 19_97_, in the Municipal

Court of ____South Padre Island____, Texas, in Cause No. _96-00-3051/3053_ the State of Texas

vs. _____Sonia Sanchez_____

_____ a judgment was rendered

by said Court in favor of the State of Texas, against the said _____Sonia Sanchez_____

for the sum of ____ ----- SEVEN HUNDRED SIXTY FOUR -----_____ Dollars,

and all costs of said cause; and there is due and unpaid of said judgment the amount of_____

_____ -- SIX HUNDRED FOURTEEN --------------_____ Dollars;

YOU ARE THEREFORE COMMANDED to take the body of the said _____

_____Sonia Sanchez_____ Defendant and place him in the jail of your City

until the said amount due upon said judgment, and the further costs of collecting the same, are paid, or

until the said defendant is otherwise legally discharged.

HEREIN FAIL NOT, but of this Writ make due return on or before the_____ day of

_____ A. D. 19_____, showing how you have executed the same.

WITNESS my signature and seal of office this the ____30th____ day of ____April____, A. D. 19_97_.

_David K. Garrett_____ Judge, Municipal Court, _South Padre Island_, Texas.

*** KVP - 757 ***

DATE: 8-3    DISPATCHER:    DAY Monday

| COMPLAINT NUMBER | UNIT NO. | 10 SGN. | TIME REC. | TIME ENRT. | TIME ARRIV. | TIME IN SERVICE | COMPLAINT & ADDRESS / TRAFFIC STOPS | DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 117 | 72 | 1217 | | | 1217 | 272 | | |
| 117 | 73 | 1229 | | | 1229 | 20v 7 | | |
| 102 | 71 | 1231 | | | 1231 | 20v 1 | | |
| 117 | 28 | 1235 | | | 1235 | | WIK IS 776 | |
| 101 | 34 | 1230 | | | 1230 | 718 287 | 10/14/11 | |
| 117 | 72 | 1246 | | | 1246 | 20v 8 | 13028 883 | |
| 106 | 6 | 1351 | | | 1357-1 | 255 | #27 | |
| 117 | 72 | 1357 | | | 1357 | Donve 54 | | |
| 101 | 72 | 1357 | | | 1357 | 284 571 | | |
| 106 | 72 | 1358 | | | 1358 | 352 | | |
| 100 | 72 | 1359 | | | 1359 | 65c | | |
| 100 | 72 | 100 | | | 100 | 385 | | |
| 104 | 71 | 102 | | | 102 | 387 383 384 | | |
| 102 | 6 | 103 | | | 108 | Shell Habbon | | |
| 108 | 72 | 104 | | | 104 | 352 390 | | |
| 106 | 72 | 104 | | | 109 | 493 292 376 | | |
| 106 | 72 | 105 | | | 105 | 351 390 388 eng | | |
| 102 | 72 | 105 | | | 105 | 650 650-2 347 | | |
| 102 | 72 | 105 | | | 106 | 650 Anice | | |
| 106 | 71 | 106 | | | 106 | 389 | | |

*** KVP - 757 ***  DAY Monday   DATE ___   DISPATCHER:

| UNT/ER UNIT NO. | 10 SIGN. | TIME REC. | TIME ENRT. | TIME ARRIV. | TIME IN SERVICE | COMPLAINANT & ADDRESS / TRAFFIC STOPS | DISPOSITION |
|---|---|---|---|---|---|---|---|
| 106 72 | 424 | | | | 424 | Zone 34 | |
| 102 72 | 437 | | | | 437 | Zone 8 | |
| 111 72 | 443 | | | | 443 | Zone 67 | |
| 102 72 | 444 | | | | 444 | Zone 2 | |
| 102 72 | 502 | | | | 502 | Zone 6 | |
| 102 72 | 506 | | | | 506 | 57 7435 | |
| 102 41 | 526 | | | | 526 | 84487 | |
| 102 41 | 509 | | | | 509 | Lights speeding 1-7 | |
| 107 41 | | | | | 509 | 123204 | |
| 114 41 | 601 | | | | 601 | 8th 976 35179 | |
| 112 41 | 601 | | | | 601 | 973 84487 | |

THE STATE OF TEXAS    )
COUNTY OF CAMERON    )

Before me the undersigned authority on this day personally appeared
_____ who after being by me duly sworn did
depose and say:

     My name is Juan Ayala, I am currently employed with
the Port Isabel Police Department..I can be reached at
(956) 943-1242.
     On August 28, 1998 I was requested to stay after 6:00 a.m.
to help the with a prisoner that needed to be booked, because
the incomming shift had an emergency at the base of the Caus-
way.
     The next day On August 29, I was requested by Sergeant
Collazo, to come in and process all of the prisoners. It took
me until 6:30 a.m. to finish all of the finger print cards,
because I had some errors that Sergeant Collazo had me correct.
that same morning I filled out two comp time sheets, only with
the date and time . I figured I would come in the next day and
complete the information needed.
     On September 1, 1998, I came into work from my two days
off and Sergeant Alanis, came over to me, and asked me why I
had filled out the comp. time sheets. I gave him brief reason why.
He suggested to me it would look bad over at the main office if
were to look at my activity log, and realize there was nothing
on it. He also suggested to me that forget about the comp. time
sheets, because it was only one hour. I agreed and did not give
much more thought. So I disposed of them. Sergeant Alaniz told me
he would let me go one hour if I needed to do so. I once again
'agreed.
     The above statement is true and correct to the best of my
knowledge of the events that took place on August 27 thru
September 1, 1998.

_____
Juan M. Ayala

SUBSCRIBED AND SWORN to and before me this _____ day of _____
A.D. 19_____.

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY, TEXAS

THE STATE OF TEXAS        )
COUNTY OF CAMERON         )

Before me the undersigned authority on this day personally appeared
_____ who after being by me duly sworn did
depose and say:

My name is Juan Manuel Ayala, I am currently employed with
the Port Isabel Police Department. I can be reached at (956)
943-1242.

On August 22, 1998, at 2:45 a.m. I was traveling west
approaching the Travel Trailer. I suddenly noticed a mild
odor of brunt marihuana. I looked over and saw a vehicle pass
me traveling east bound. After the car past I could no longer
smell the burnt marihuana. I figured I could have been coming
form the car, so I began to follow it.

As I followed behind the car I saw that one of the passengers
thru something out of the window. At this point I could not tell
what it was, so I continued to follow. As I followed I noticed
the vehicle, had no license plate light so I decided to stop them
to check if everything was fine.

The vehicle came to a stop at Highway 100 and Port Motel.
It displayed Texas license plate XRF-54H. As I started to get
off of my car I was greeted by the driver. I asked the driver
if he had a driver license, he told me he did not have one.
that statement was comfirmed by dispatch Officer David Gorham,
by using name and date of birth.The only thing that came back
was an identification card #17759773.

Shortly after I spoke with him I noticed there were
approximatly eight subjects in the car so I called for
Officer Tommy Salazar as a back up unit. I was then joined
by Sergeant Alaniz. He asked what was going on, and I told him.
He confirmed the same information I had gathered. He then went
over to the car and spoke to the passengers, and found out
no one had a driver license. every one of them said they were
going to the beach for a ride.

At this time I noticed several small children in the back seat
that were not restrained. I then returned with Sergeant Alaniz,
and he told be he did not smell any marihuana. After that I
stepped back and let him take over the scene. He then told the
driver' to get going. Both Sergeant Alaniz and I went back into
service. No further information was taken.

The above statment is true and correct to the best of
my knowledge of the events that took place on August 22, 1998,
at 2:45 a.m.

Juan M. Ayala

SUBSCRIBED AND SWORN to and before me this _____ day of _____
A.D. 19_____.

NOTARY PUBLIC IN AND FOR
CAMERON COUNTY, TEXAS



# Law Enforcement Code of Ethics

**As a Law Enforcement Officer,** my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

**I will** keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

**I will** never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

**I recognize** the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession ... *law enforcement.*

Compliments of Texas Commission on Law Enforcement Officer Standards and Education

B.  Investigations

      The Chief of Police will order all internal investigations.

14.02  Investigative Steps:

    A.  Criminal Prosecution - Internal affairs officers assigned
by the Chief of Police, at an early stage of any internal
investigation, will have to decide whether the evidence and
the allegation warrant criminal prosecution of the officer
or employee.  If it appears that a criminal charge may be
brought, the Chief of Police will be notified and the case
will be handled by C.I.D. or any officer the Chief of Police
may designate.  Once the case is re-assigned as criminal
then the officer's must adhere to all the restrictions of a
normal criminal investigation.  The officer will be given
his miranda type warnings and will be afforded all his rights
as given to any other suspect.  An officer or employee may;
however, face both criminal and internal charges, but evidence
gathered for internal discipline shall not be used in the
criminal prosecution.  The two investigators, (criminal and
internal affairs) must keep both cases separte and apart.

    B.  Failure to Cooperate - All officers and employees of the
police department are expected to cooperate in all internal
investigations.  Any officers or employee who fails to
cooperate, fails to obey an order, such failure may and will
be the basis for a further charge against the officer or
employee.  The officer or employee must be informed that his
failure to cooperate may lead to further disciplinary action,
including discharge.  The warning may be oral, followed by a
direct order in writing.  The officer or employee shall
acknowledge receipt of the written warning or direct order by
dating and signing his name to the original and one copy of
said order.

    C.  Questioning the Officer or Employee - One of the most effi-
cient methods of investigating a complaint against an officer
or employee is to question the person. —The questions asked
officers or employees must be narrowly and directly related
to the performance of their duties and the on going investi-
gation.  Officer's or employee do not have the right to refuse
to answer questions that are directly and narrowly related
to their official duties, and if they refuse to answer questions
they may be ordered to do so.  Any incriminating statements
by them, obtained under direct order, will not be admissable
in a criminal prosecution, but, however, will be admissable in
an administrative hearing arising out of the alleged misconduct.
Officers or employees will not be forced to waive their privilege
against self-incrimination under threat of losing their jobs,
but, if the officer or employee refuse to answer, he or she may
be disciplined or even discharged for insubordination.

*[signature]* 9-4-98

*[signature]* 9-5-98

*** KVP - 757 ***     DAY _Friday_    DATE 8-28

DISPATCHER:

| COMPLAINT NUMBER | UNIT NO. | 10 SIGN. | TIME REC. | TIME ENRT. | TIME ARRIV. | TIME IN SERVICE | COMPLAINANT & ADDRESS / TRAFFIC STOPS | DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| 3-2087 | | 43 | 662 | | | 602 | 1 male sub running by the PD poss burgl... | |
| | 208 16 | 606 | | | 609 | Buse of course way Red Truck coming against traffic | |
| | 114 8 | 608 | | | 609 | 8387S 97-8 218 E Washington 10-59 | |
| 404 | 43 | 613 | | | 613 | Call Transferred to S.O. | |
| | 114 6 | 613 | | | 2.7 | | |
| | 114 6 | 655 | | | 655 | 51 cup 100 block | |
| | 114 6 | 701 | | | 706 | 27 | |
| | 208 6 | 714 | | | 721 | washington + manestoe | |
| | 114 6 | 718 | | | 721 | W/ 208 | |
| | 208 6 | 725 | | | 711 | Res 10-100 | |
| | 111 8 | 725 | | | 16-8 10-41 | | |
| | 801 8 | 729 | | | 16-8 10-41 | | |
| | 801 6 | 736 | | | 755 lowrica | |
| | 114 6 | 736 | | | 753 lowrica | |
| | 208 2 | 755 | | | 755 Type MM3 592 | |
| | 208 6 | 759 | | | 2.7 | |
| | 114 6 | 759 | | | 700 Dvirg Cluveway | |
| | 801 6 | 759 | | | 801 W/ 114 | |
| | 114 6 | 800 | | | 817 zone 6 | |

*** KVP-757 ***

DATE: Saturday

| COMPLAINT NUMBER | UNIT NO. | 10 SIGN. | TIME REC. | TIME ENRT. | TIME ARRIV. | TIME IN SERVICE | COMPLAINANT & ADDRESS / TRAFFIC STOPS | DISPOSITION |
|---|---|---|---|---|---|---|---|---|
| | 102 | 4 | 226 | | | 226 | Zone 2 | |
| | 104 | 4 | 223 | | | 228 | cat 418 | |
| | 112 | 20 | 227 | | | 232 | Spouse | |
| | 117 | 72 | 236 | | | 236 | Zone SC | |
| | 102 | 6 | 235 | | | 239 | city 1294 | |
| | 104 | | 235 | | | 235 | 743 | |
| | 102 | 72 | 240 | | | 240 | 229  273 | |
| | 118 | 72 | 241 | | | 241 | Alex  272 | |
| | 116 | 72 | 241 | | | 241 | 246  294 | |
| | 117 | 72 | 242 | | | 242 | 285 - 257 | |
| | 117 | 72 | 243 | | | 243 | 673  672  1424 | |
| | 118 | 38 | 245 | | | 257 | XLF547t  100/per net | |
| | 108 | 72 | 246 | | | 246 | 268  575  220  280 | |
| | 110 | 72 | 247 | | | 247 | 662  382  383 | |
| | 117 | 72 | 245 | | | 245 | 389 | |
| | 102 | | 250 | | | 254 | W112 | |
| | 117 | 72 | 251 | | | 251 | 388  390  391 | |
| | 110 | 72 | 251 | | | 252 | 388  390  391 | |
| | 104 | 38 | 254 | | | 254 | 396  398  822 | |
| | 102 | 6 | 255 | | | 255 | 10-9  21 | |
| | 117 | | 254 | | | 254 | 821 | |

2.07   JOB DESCRIPTIONS

Job descriptions are issued to personnel and are filed in
the Port Isabel Police Department personnel files. The
job descriptions serve to inform personnel and those inte-
rested in employment or reassignment what is generally
expected of a person in a particular position.

2.08   AUTHORITY

Authority is the legitimate power which is given to the
City of Port Isabel to manage the Department's personnel
and other resources. The City of Port Isabel delegates
authority to other personnel as he believes will best
serve Department goals.

2.09   ACCOUNTABILITY

Persons receiving authority over another person or
receiving authority to carry out job duties are ac-
countable to the City of Port Isabel either directly or
indirectly as indicated by their job description or by
special instructions from the City of Port Isabel or his
designee.

2.10   RESPONSIBILITY

Personnel of the Department accept responsibility for
performing the duties indicated in the job description
of their position as directed by their supervisor.
Additionally, personnel are guided in their performance
by the goals and objectives of the Department and
specifically by the policies, procedures and rules
contained in the Manaul.

2.11   VERBAL DIRECTIVES

Personnel promptly obey verbal instructions and orders
of a superior officer. All such instructions or orders
are obeyed only if lawful.

2.12   LIMITED DURATION DIRECTIVES

Certain written directives are required to inform
personnel concerning matters which are normally of
limited duration. Such directives specify the per-
sons affected and the applicable time period involved.

Personnel comply with written directives.

5.06    Insubordination - An officer shall promptly obey any lawful order
        of a superior officer. "Superior Officer" includes any officer
        having authority to exercise command in a given situation. In-
        subordination includes the willful disobedience of any order law-
        fully issued by a superior officer, or any insolent language or
        conduct toward a superior officer.

5.07    Criticism - An officer shall not publicly criticize or ridicule
        the department, its policies, or its members by talking, writing,
        or otherwise make defamatory, obscene or unlawful statements which
        impair the operation of the department.

5.08    Immoral Conduct - An officer shall maintain a level of moral
        conduct in his personal affairs in keeping with the highest standards
        of the law enforcement profession. No officer shall participate
        in any incident involving moral turpitude which may impair his
        ability to perform as an officer or cause the department to suffer
        disrepute.

5.09    Use of Intoxicants -

        (a)  On Duty or in Uniform - An officer shall not use intoxicants
        (e.g., alcohol or other drug) while in uniform. An officer shall
        not report for duty, or be on duty, while under the influence of
        any intoxicants to any degree whatsover. A plainclothes officer
        on duty may only drink alcoholic beverages (but shall not become
        intoxicated) when such activity is appropriate in furthering a
        legitmate police mission.

        (b)  Alcohol in Police Installations - An officer shall not bring
        into or store alcoholic beverages in any police facility or vehicle,
        except those which may be held for evidence.

        (c)  Off Duty - An officer, while off duty, shall refrain from
        consuming intoxicating beverages to the extent that it results
        in offense behavior which might discredit the department.

        (d)  Non-alcoholic Drugs - An officer shall not use narcotics,
        hallucinogens, or dangerous drugs except when prescribed by a
        physician or dentist. Whenever an officer must take dangerous
        drugs, narcotics, or hallucinogens, the officer shall so notify
        his supervisor.

5.10    Gambling - An officer shall not engage or participate in gambling
        in any form while on duty or in uniform or while in any departmental
        facility. He shall not engage in any form of illegal gambling at
        any time, except in the performance of duty and while acting under
        proper and specific orders from his superior.

3

5.20    Out-of-Uniform Enforcement - An officer not in uniform shall not
        seek an arrest based on minor traffic violations and Class C misde-
        meanors. (This exception does not apply to flagrant or dangerous
        offenses such as "Failure to stop and give information," "Failure
        to stop and render aid," or "driving while intoxicated.")

5.21    Request for Indentification - An officer shall politely furnish
        his name and badge number to any person requesting such information
        except when instructed otherwise by proper authority or when neces-
        sary in the performance of police work.

5.22    Courtesy - An officer shall be courteous to the public. An officer
        shall perform his duties with tact, by controlling his temper and
        exercising the utmost patience and discretion. An officer shall not
        engage in argumentative discussions even in the face of extreme
        provocation. In the performance of his duties, he shall not use
        coarse, violent, profane or insolent language or gestures. An officer
        shall not express any prejudice concerning race, religion, politics,
        national origin or similar personal characteristics.

5.23    Unbecoming Conduct - An officer shall always conduct himself (both
        on and off duty) in a way which reflects most favorable on the
        department. Unbecoming conduct includes unjustified behavior which
        brings the department into disrepute, discredits a member of the
        department or impairs the operation of the department.

5.24    Reporting for Duty - An officer shall report for duty at the time
        and place specified by his superior officer. At the time he reports,
        an officer shall be mentally and physically fit to perform his duties.
        He shall be properly equipped so that he can immediately assume his
        duties.

5.25    Neglect of Duty - An officer shall not engage in any activity,
        entertainment or personal business which would distract him or
        cause him to neglect his official duties.

5.26    Alertness on Duty - An officer shall remain awake and alert during
        the entire time he remains on duty. If unable to do so, he shall
        immediately report to his superior officer.

5.27    Operation of Vehicles - An officer shall operate an official
        vehicle carefully and prudently. An officer shall obey all laws
        of the State as well as departmental orders pertaining to vehicle
        operation.

5.28    Use of Weapons - An officer shall handle and use weapons with
        extreme care and prudence. An officer shall use weapons in
        strict accordance with established departmental procedures.

5.42   Unsatisfactory Performance - Officers shall maintain sufficient
       competency of properly perform their duties and assume the
       responsibilities of their positions.  Officers shall perform their
       duties in a manner which will maintain the highest standards of
       efficiency in carrying out the functions and objectives of the
       department.  Unsatisfactory performance may be demonstrated by a
       lack of knowledge in the application of laws required to be
       enforced and unwillingness or inability to perform assigned tasks,
       the failure to conform to work standards established for the
       officer's rank, grade or position, the failure to take appropriate
       action on the occasion of a crime, disorder, or other condition
       deserving police attention or absence without leave.  In addition
       to other indications to unsatisfactory performance the following
       will be considered further evidence of unsatisfactory performance;
       repeated poor evaluations or written record of repeated infractions
       of rules, regulations, directives or orders of the department.

5.43   Subject to call Off Duty - A member shall have regularly scheduled
       hours assigned for active duty and when not so employed, shall be
       considered off-duty.  A member shall, however, be subject to being
       called to duty as needed and subject to orders from competent
       authority and emergency calls from citizens.

5.44   Abuse of Process - An officer shall not make any false accusation
       or criminal charge, or intentionally manufacture, falsify, destroy,
       or withhold evidence or information.

5.45   Payment of Debts - An officer shall not incur any financial
       obligation which he knows or should know he cannot meet.  An
       officer shall pay his just debts when due.  Financial difficulties
       stemming from unforeseen medical expenses or personal disaster
       shall not be cause for discipline, provided that the officer has
       undertaken a good faith effort to settle all accounts.  An officer
       shall not cosign a note for any superior officer.

5.46   Carrying of Firearms - An officer, when off duty, should carry an
       authorized firearm if he is traveling in public places within the
       jurisdiction of his department.  When wearing civilian clothes,
       the officer shall conceal his firearm from public view.  While
       off-duty and outside the local jurisdication, an officer need not
       carry a firearm.

5.47   Falsifying Over-time Records - Any person who intentionally claims
       over-time or compensatory time for work not actually performed,
       will be immediately dismissed from the service.

5.48   Physical Fitness for Duty - All members of the department shall
       maintain good physical condition so they can handle the strenuous
       physical contact often required of a law enforcement officer.

36

5.55    Identification -

(a)    Officers shall carry their badges and identification cards
       on their persons at all times except when impractical or
       dangerous to their safety or to an investigation.

(b)    Whenever a member takes any police action, he/she shall
       promptly and courteously identify himself/herself by
       giving his/her rank and name and other appropriate
       identification to persons involved unless the exigency
       of a matter requires immediate response.  However, at the
       first opportunity, such identification shall be made.  A
       member shall also furnish his/her name, rank and assignment
       to any citizen who may reasonably request same, except when
       withholding of such information is necessary for the performance
       of police duties or is authorized by proper authorities.

5.56    Sexual Harassment - Sexual harassment toward any individual by any
        member of this department is strictly prohibited.  Sexual harassment
        may be defined as, but not restricted to:

(a)    the making of suggestive, obscene, or sexually aggressive
       remarks,

(b)    the making of suggestive, obscene, or sexually aggressive
       gestures or physical contact, and

(c)    the unwanted and unwarranted display of suggested sexually
       aggressive behavior of any kind.

       In order to prevent any misunderstanding over such acts,
       although they may be of an innocent or humorous intent, actions
       or remarks of any sexual nature should be avoided.  For the same
       reason, fraternization between employees is strongly discouraged.

5.57    Security of Weapons - No weapon shall be left unsecured in any
        public location at any time.  This is to include all areas of the
        police station except private locked offices; desks; locked
        lockers; approved weapon lockers; and similar such secured areas.

5.58    Dereliction of Duty

        Dereliction of duty on the part of a supervisory officer or other
        members of the Department, prejudicial to the proper performance of
        the functions of the Department, are causes for disciplinary action
        and will be punished according to the degree of the offense, the
        results brought about by the dereliction, and the effect it has upon
        the discipline, good order and best interest of the Department.  The
        following constitute violations of the Section:

37

1.   Failure to observe and give effect to the policies of
the department.

2.   Failure to obey orders.

3.   Failure to make proper report of offenses investigated,
observed or reported.

Failure of a commanding officer to immediately relieve from
duty any subordinate officer for any of the following shall
constitute dereliction of duty on the part of a supervisory officer:

4.   Willful disobedience of any lawful order issued to him.

5.   For disrespect shown to a Superior Officer.

6.   For cowardice.

7.   For conduct subversive to the good order and discipline
of the Department.

In any of the above listed violations a commanding officer shall
immediately relieve the offending officer from duty, instruct
him to report to the Chief of Police, and make a complete report
of the incident.

Instruction From A Supervisor

In issuing instructions or correcting conduct, no supervision
officer shall use abusive or insulting language toward a subordinate.

5.59   Duty to Know

Each officer and employee shall familiarize himself with the Port
Isabel Police Department Rules, Regulations, Policies and Procedures
as set out in this manual.

Members of the department shall be considered as always on duty
for the purpose of discipline.

5.60   Those acts, not specifically set out herein, which involve moral
turpitude, or which may bring discredit upon the individual or upon
the Police Department, or which may conflict with policies announced
by the Department from time to time, if committed by an officer or
employee of the Department, will be taken according to the seriousness
of the offense in the same manner and degree as if the offense had
been specifically set out herein.

CHAPTER TWENTY-TWO

22.01   SUPERVISORY REPRIMANDS

A.   A supervisory or commanding officer shall have the authority
     to reprimand a subordinate officer for minor infractions.
     Such reprimands, whether oral or written, may include a
     warning, coorective advise, or recommend additional counseling
     or training.   A supervisor properly imposes a reprimand when
     he reasonably determines that the alleged misconduct does not
     require further investigation or action.

B.   After imposing a reprimand, the supervisory or commanding
     officer shall explain that reprimand in a written report
     promptly forwarded to the Chief.

C.   The commanding or supervisory officer shall also promptly
     notify the involved officer that he has the right to have
     a supervisory reprimand reviewed.   If the officer desires
     such review, he shall notify the Chief within five days of
     receiving the supervisory reprimand.   By failing to request
     such review, the officer permanently waives his right to
     such review.

D.   A supervisory or commanding officer shall have the authority
     to temporarily relieve from duty any officer for the balance
     of the working day (with full pay and benefits) if the officer,
     by continuing to work, would tend to discredit or impair the
     operation of the department.   The supervisory or commanding
     officer shall immediately notify the Chief in writing of any
     such temporary action.   The Chief shall have the authority to
     continue such relief from duty for cause.

I.   Position Title
     Police Sergeant

Position Summary:

     Entry to this classification is limited to promotion from
     within the Police Department.  Under general supervision,
     incumbent may be assigned to law enforcement responsibilities
     in the:

          Supervision and coordination of the activities of a
          squad of police officers assigned to designated areas
          of the municipality in the enforcement of criminal and
          traffic laws and City Ordinances.

          Supervision and coordination of activities at the
          police station.

          Investigations to prevent crime or solve criminal cases.

          Technical operation to collect evidence at scene of
          crime or fatal accident, classify and identify finger-
          prints and photographs evidence for use in criminal
          and civil cases.

Example of Duties:

     (Note:  The following is a sample of duties performed.  The list
     amy or may not include ALL tasks performed; nor are all duties
     performed by all position).

     1.   Supervises and coordinates activities of squad of Police
          Officers assigned to designated area of municipality in
          the enforcement of criminal and traffic laws and City
          Ordinances.

     2.   Observes Police Officers in performance of duties in
          accident investigations, patrol and enforcement tactics,
          case preparations, arrest techniques, operation of patrol
          vehicle and other police activity taking corrective action
          as required.

     3.   Enforces efficient performance of duty.

     4.   Investigates and takes necessary actions in emergencies
          and major incidents.

     5.   Inspects uniforms and equipment.

     6.   Investigates known or suspected criminals or facts of
          particular cases to detect planned criminal activities
          or clues.

     7.   Frequents known areas of criminals and becomes familiar
          with criminals to determine criminal's habits, associates
          characteristics, aliases, and other personnel information.

     8.   Examines scene of crime to obtain clues and gather evidence
          including development and lifting to latent fingerprints,
          and photographing and sketching crime scenes and other
          evidence as applicable.

     9.   Prepares assigned cases for court and testifies in court.

133

10. Prepares complete and comprehensive reports on investigations and other reports as required.

11. Interviews and interrogates victim, witnesses and suspects involved in criminal matters; arrests or assists in arrest of criminals or suspects.

12. Investigates and interviews juvenile offenders making appropriate recommendations, and/or taking appropriate actions.

13. Develops and presents programs to civic clubs, public schools and other agencies in prevention and resolving problems relating to human relations or drug and alcohol abuse.

14. Photographs crime or accident scene to obtain record of evidence.

15. Photographs, records physical descriptions, and finger-prints homicide victims and suspects for identification purposes.

16. Performs related duties as required.

Experience:

Two years as a Police Officer preferred.

Abilities Required to Perform Work:

Must have knowledge of police techniques and departmental rules, regulations, and procedures pertaining to patrol, accident investigation, juvenile delinquency arrest and search techniques, techniques and departmental rules, regulations and procedures pertaining to crime against property, crimes of death and injury, crimes of sex and drugs, collection of evidence, and interrogation and interview; legal knowledge including court demeanor, arrest, search and seizure, criminal and juvenile laws; knowledge of basic principles of supervision and departmental rules and regulations relative to personnel practices, training and safety; physical strength and ability to make forceful arrest when necessary; requires emotional and mental stability to work under trying circumstances; ability to pass required physical examination.

Working Conditions and Hazards.

May work at desk, counter, or assigned area in patrol car; depending on work assignment may work rotating shifts including nights, weekends and holidays; subjected to hazards and potential physical dangers inherent to law enforcement work.

Special Requirements and Licenses:

Basic Certificate, Texas Commission on Law Enforcement Officer Standards and Education.

Valid Texas Drivers License

CVAPDF - www.texis.com

immediately receive any pay increases necessary to insure that they are not compensated less than the new employee.

### Section 603:  Promotion Compensation

A newly promoted employee shall normally be compensated at the lowest step which would provide an increase in pay over that received in the lower level job.

### Section 604:  Individual Increases (Merit Pay System)

It is the policy of the City of Port Isabel to place a high priority and emphasis on having well-trained, qualified, productive personnel within its ranks.  The City therefore acknowledges that an effective employee performance system can help to foster greater productivity, morale, and efficiency within its divisions, departments, and employees.  These individual increases are considered to be an essential means of providing compensation rewards and recognition to employees for their exceptional ability, service, efficiency, and contribution to the City.

The compensation plan, then, is designed to provide pay increases to employees to reward ability, efficiency, and increased value to the City through length of service and performance.  Individual increases, if granted, shall be granted at the end of each fiscal year (to be included in the next year's Annual Budget), or upon recommendation of department heads, who shall give careful consideration to the ability, attitude, and performance record of each employee.  These recommendations are subject to approval, modification, or disapproval of the City Manager, who will then present his findings to the City Commission for final concurrence and ratification thereof.

### Section 605:  Compensatory Time

Compensatory Time is defined as time off granted to an employee by a previous agreement between the department heads and supervisory personnel.  Under compensatory time, there is no change in the weekly or biweekly salaries.  The sole purpose is to trade time during which work is performed for time off at a time more convenient for the City and the employee.

Compensatory time may be substituted for overtime compensation at the request of the employee and at the discretion of the department head, or in the circumstance where the financial position of the City so warrants, as in the case of budgetary shortage or economic emergency.

Compensatory time will be earned and accumulated at the rate of time and one-half and may be taken at any time that is mutually agreeable to both the employee and the supervisor.  Comp. time should be given within a reasonable amount of time of its accumulation, so long as it does not unduly disrupt the City's operations.  Accumulation of comp. time shall be limited to fifteen (15) days total, and if not used shall be payable at the rate of employment earned upon separation from City service.

13

## Section 606:  Overtime

Overtime is defined as the time in excess of 80 hours which is actually worked in a two week pay period (day shift Monday through night shift Sunday).  Overtime will be paid to all "non-exempt" employees in accordance with applicable State and Federal legislation.  Before becoming eligible for overtime, a non-exempt employee must meet the 80 hour obligation per two week pay period.

Exempt employees are not eligible for overtime pay and are defined as all Department heads and Assistant Department heads who qualify as Executive and/or Administrative employees as defined in Section 12 (a) of FSLA.  Police, fire, and EMS ersonnel are partially exempt from overtime under Section 207 (k) of FSLA.

### Circumstance in Which Overtime May be Authorized:

1.  Overtime may be authorized only when it is not possible to adjust staffing patterns and/or employee work schedules to provide essential staffing in the following types of circumstances:

A.  Emergency Circumstances
   1.  These are adverse circumstances of a temporary nature which reduce normal staffing or increase staffing requirements.  For example:
      a.  The unexpected absence of an employee whose positions must be filled to avoid a disruption of necessary services;
      b.  The necessity to immediately perform an unexpected heavier than normal volume of work to avoid disruption of necessary services;
      c.  Situations which uncontrollable, such as natural disasters, disruption of utilities, etc.

B.  Non-emergency Circumstances
   1.  These are situations in which overtime work is considered to be the best way to make necessary staff available to handle a particular situation.  For example:
      a.  To provide essential staffing where vacancies exist in a department due to the unavailability of qualified applicants;
      b.  To perform an unusually heavy volume of work of a temporary nature in the implementation of an approved program;
      c.  To perform work which cannot be performed during normal working hours without disrupting necessary activities or services.

14

Juan Manuel Ayala
954 E. Harrison
Brownsville, TX 78520

544-0878

THE STATE OF TEXAS          )
COUNTY OF CAMERON           )

Before me the undersigned authority on this day personally appeared
_____Homer Reyna_____who after being by me duly sworn did
depose and say:          My name is Homer Reyna, I am presently employed
by the City of Port Isabel Police Department, as a patrolman.
I can be reach at 956-943-1242. Home address is 106 Pine Street
in Los Fresnos, Texas.

On May 22,1998 I was working the 2:00 pm.to 10:pm. shift. On or
about 5:30pm. I met with Sgt. George Alaniz by the front parking lot
next to the police station. As I approach Sgt. Alaniz vehicle I notice
that he had an expression on his face, that appeared he was upset.
As I met with him he told me what I had been doing all this time,
refering to what type of work I had done during the time 2:00-5:00 pm.
I told him that I had done several different things (made of couple
of runs to City Hall, bank deposite for the Police Assication etc.
I also advised him that I had talked to the Chief in regards to the
patrol unit #95-3 how bad the transmission was skipping.I went on
telling him that the Chief had order me to take patrol unit #97-6
and to park 95-3. At this time Sgt. Alaniz told me not to take 97-6
and to keep 95-3. I went on explaining to him about the transmission
promblem, His exact words were "I don't care what the Chief told you,
I am your suspervisor, I am telling you to take 95-3, if it breaks
down it breaks we cannot do anything about it." I got my stuff out of
97-6 and resume patrol driving 95-3.

Later on that same evening, dispatcher (Mr. Martinez) had asked
me to pick up a meal order for him, which I did and was enrouted to
drop it off to him, when I heard over the radio there was someone at
the station to get out a prisoner. I asked Sgt. Alaniz if he wanted
for me to go ahead and do the releasing on the prisoner, because I
was on my way to the station to drop off Mr. Martinez meal. Sgt.
Alaniz advised for me to stay on the road.

At approximately 6:00 pm. I was advised by Sgt. Alaniz to meet
with him by the Port Bowl parking lot. Once I met with him, he told
me to go by the Housing Authority (Projects) and do foot patrol and
for me not to leave the area until he said so. I did not question
his reason or action, and proceeded to the projects. On my way to
the projects I heard Sgt. Alaniz come over the radio and advised
dispatcher, that 117 was on foot patrol at the projects and was
not to leave the area until he advised. At this point of time,
I felt that Sgt. Alaniz was only trying to embrass me and humilate me
over the radio, so everyone heard what he was doing. I felt if I
had done something wrong the matter should of have been discuss at
the station or in his office. In my mind I questioned his action
and professonalism.

At approximately 7:55pm. Sgt. Alaniz called me to meet with him
at the police station. Once I met with him he told me to go home, and
not to worry about the remainder of the shift, refering to the last

SUBSCRIBED AND SWORN to and before me this _____day of_____
A.D. 19_____.


_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY, TEXAS.

(2) hours of my shift work. I asked him if I was to put in 6 hours instead of 8 on my time sheet, he again told me not to worry about it, he would take care of it. Thereafter I went home.

On 31st of August 1998, I backed up officer Tommy Salazar on a traffic stop he had made by Mata's and SouthShore. While conducting a brief search on the violator vehicle, and with his permission (consent) to search for control bands, weapons, etc. Sgt. Alaniz arrived and questioned my doing by saying " what the hell you doing" I went on to explain my actions and he order for me to stop right there and then, and resume patrol. He further stated that I was just becoming like officer Juan Ayala, stating that every traffic stop he made he wanted to search the vehicles. I obey his direct order to resume patrol thus advising officer Salazar of said order given out, and left the area.

_____
SIGNATURE

SUBSCRIBED AND SWORN TO BRFORE ME, THIS _____ DAY OF_____, 19____

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY TEXAS

MY COMMISSION EXPIRES_____

On September 01,1998, I was working the 10:00 pm. to 6:00 am. shift.
At approximately 11:30-12:00 am. I heard dispatcher David Gorham over
the radio for officer Tommy Salazar to contact someone on the Island
by telephone. Minutes later I heard officer Salazar tell dispatcher
to call same person from the island, and have him call him back what I
believe was at a payphone'at the H.E.B. due to seeing him there couple
of minutes earlier in that area. As I was patrolling zone one, I heard
Officer Salazar advising he was attempting to make a traffic stop on
a black truck on Hwy 100 by 4th street. I proceeded to his location
to make sure everything was alright at the time. I met with Tommy
for approximately less than a minute and after he advising everything
was alright, I told him I was leaving because I knew Sgt. Alaniz
was right behind and if caught there at the traffic stop, he would
of probably question why I was there, so I left before he got there.
As I was partolling other areas of the city, I did heardSgt. Alaniz
call out at officer Salazar asking him what traffic he had with the
violator about 2-3 times and no answer was related back for unknown

_Homer Reyna_
SIGNATURE

SUBSCRIBED AND SWORN TO BRFORE ME, THIS _____ DAY OF_____, 19____

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY TEXAS

MY COMMISSION EXPIRES_____

reason or due to the porable radio. At times I would hear officer Salazar

ask the dispatcher to check with the Island P.D. and confirm a warrant

out of there  city on the female he had just stopped. As to what I

heard over the police radio, it was confirm that there  was a warrant

out, and that a unit from the Island was enroute to Officer Salazar

location to pick up the female. Minutes later I hear Sgt. Alaniz

check out with officer Salazar, and advising him to release the female

and resume patrol. Thereafter I hear Sgt. Alaniz advise officer

Salazar to meet with him at the police station. Minutes later I

hear officer Salazar stating that he would be doing security checks

on South Garcia Street.

This is a true and correct statement to the best of my

knowledge.

_Homer Reyna_
SIGNATURE

SUBSCRIBED AND SWORN TO BRFORE ME, THIS _____ DAY OF_____, 19_____

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY TEXAS

MY COMMISSION EXPIRES_____



# Law Enforcement Code of Ethics

**As a Law Enforcement Officer,** my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

**I will** keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

**I will** never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

**I recognize** the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession ... law enforcement

Compliments of Texas Commission on Law Enforcement Officer Standards and Education

B.   Investigations

        The Chief of Police will order all internal investigations.

14.02   Investigative Steps:

    A.   Criminal Prosecution - Internal affairs officers assigned
         by the Chief of Police, at an early stage of any internal
         investigation, will have to decide whether the evidence and
         the allegation warrant criminal prosecution of the officer
         or employee.  If it appears that a criminal charge may be
         brought, the Chief of Police will be notified and the case
         will be handled by C.I.D. or any officer the Chief of Police
         may designate.  Once the case is re-assigned as criminal
         then the officer's must adhere to all the restrictions of a
         normal criminal investigation.  The officer will be given
         his miranda type warnings and will be afforded all his rights
         as given to any other suspect.  An officer or employee may;
         however, face both criminal and internal charges, but evidence
         gathered for internal discipline shall not be used in the
         criminal prosecution.  The two investigators, (criminal and
         internal affairs) must keep both cases separte and apart.

    B.   Failure to Cooperate - All officers and employees of the
         police department are expected to cooperate in all internal
         investigations.  Any officers or employee who fails to
         cooperate, fails to obey an order, such failure may and will
         be the basis for a further charge against the officer or
         employee.  The officer or employee must be informed that his
         failure to cooperate may lead to further disciplinary action,
         including discharge.  The warning may be oral, followed by a
         direct order in writing.  The officer or employee shall
         acknowledge receipt of the written warning or direct order by
         dating and signing his name to the original and one copy of
         said order.

    C.   Questioning the Officer or Employee - One of the most effi-
         cient methods of investigating a complaint against an officer
         or employee is to question the person.  The questions asked
         officers or employees must be narrowly and directly related
         to the performance of their duties and the on going investi-
         gation.  Officer's or employee do not have the right to refuse
         to answer questions that are directly and narrowly related
         to their official duties, and if they refuse to answer questions
         they may be ordered to do so.  Any incriminating statements
         by them, obtained under direct order, will not be admissable
         in a criminal prosecution, but, however, will be admissable in
         an administrative hearing arising out of the alleged misconduct.
         Officers or employees will not be forced to waive their privilege
         against self-incrimination under threat of losing their jobs,
         but, if the officer or employee refuse to answer, he or she may
         be disciplined or even discharged for insubordination.

09-03-98
Homer Reyna

09-04-98
Homer Reyna

## 2.07   JOB DESCRIPTIONS

Job descriptions are issued to personnel and are filed in the Port Isabel Police Department personnel files.  The job descriptions serve to inform personnel and those inte-rested in employment or reassignment what is generally expected of a person in a particular position.

## 2.08   AUTHORITY

Authority is the legitimate power which is given to the City of Port Isabel to manage the Department's personnel and other resources.  The City of Port Isabel delegates authority to other personnel as he believes will best serve Department goals.

## 2.09   ACCOUNTABILITY

Persons receiving authority over another person or r eiving authority to carry out job duties are ac-countable to the City of Port Isabel either directly or indirectly as indicated by their job description or by special instructions from the City of Port Isabel or his designee.

## 2.10   RESPONSIBILITY

Personnel of the Department accept responsibility for performing the duties indicated in the job description of their position as directed by their supervisor. Additionally, personnel are guided in their performance by the goals and objectives of the Department and specifically by the policies, procedures and rules contained in the Manual.

## 2.11   VERBAL DIRECTIVES

Personnel promptly obey verbal instructions and orders of a superior officer.  All such instructions or orders are obeyed only if lawful.

## 2.12   LIMITED DURATION DIRECTIVES

Certain written directives are required to inform personnel concerning matters which are normally of limited duration.  Such directives specify the per-sons affected and the applicable time period involved.

Personnel comply with written directives.

09-04-98
Homer Reyna

5.06   Insubordination - An officer shall promptly obey any lawful order
       of a superior officer. "Superior Officer" includes any officer
       having authority to exercise command in a given situation. In-
       subordination includes the willful disobedience of any order law-
       fully issued by a superior officer, or any insolent language or
       conduct toward a superior officer.

5.07   Criticism - An officer shall not publicly criticize or ridicule
       the department, its policies, or its members by talking, writing,
       or otherwise make defamatory, obscene or unlawful statements which
       impair the operation of the department.

5.08   Immoral Conduct - An officer shall maintain a level of moral
       conduct in his personal affairs in keeping with the highest standards
       of the law enforcement profession. No officer shall participate
       in any incident involving moral turpitude which may impair his
       ability to perform as an officer or cause the department to suffer
       disrepute.

5.09   Use of Intoxicants -

       (a)  On Duty or in Uniform - An officer shall not use intoxicants
       (e.g., alcohol or other drug) while in uniform. An officer shall
       not report for duty, or be on duty, while under the influence of
       any intoxicants to any degree whatsoever. A plainclothes officer
       on duty may only drink alcoholic beverages (but shall not become
       intoxicated) when such activity is appropriate in furthering a
       legitimate police mission.

       (b)  Alcohol in Police Installations - An officer shall not bring
       into or store alcoholic beverages in any police facility or vehicle,
       except those which may be held for evidence.

       (c)  Off Duty - An officer, while off duty, shall refrain from
       consuming intoxicating beverages to the extent that it results
       in offense behavior which might discredit the department.

       (d)  Non-alcoholic Drugs - An officer shall not use narcotics,
       hallucinogens, or dangerous drugs except when prescribed by a
       physician or dentist. Whenever an officer must take dangerous
       drugs, narcotics, or hallucinogens, the officer shall so notify
       his supervisor.

5.10   Gambling - An officer shall not engage or participate in gambling
       in any form while on duty or in uniform or while in any departmental
       facility. He shall not engage in any form of illegal gambling at
       any time, except in the performance of duty and while acting under
       proper and specific orders from his superior.

3

5.20   Out-of-Uniform Enforcement - An officer not in uniform shall not
       seek an arrest based on minor traffic violations and Class C misde-
       meanors. (This exception does not apply to flagrant or dangerous
       offenses such as "Failure to stop and give information," "Failure
       to stop and render aid," or "driving while intoxicated.")

5.21   Request for Indentification - An officer shall politely furnish
       his name and badge number to any person requesting such information
       except when instructed otherwise by proper authority or when neces-
       sary in the performance of police work.

5.22   Courtesy - An officer shall be courteous to the public. An officer
       shall perform his duties with tact, by controlling his temper and
       exercising the utmost patience and discretion. An officer shall not
       engage in argumentative discussions even in the face of extreme
       provocation. In the performance of his duties, he shall not use
       coarse, violent, profane or insolent language or gestures. An officer
       shall not express any prejudice concerning race, religion, politics,
       national origin or similar personal characteristics.

5.23   Unbecoming Conduct - An officer shall always conduct himself (both
       on and off duty) in a way which reflects most favorable on the
       department. Unbecoming conduct includes unjustified behavior which
       brings the department into disrepute, discredits a member of the
       department or impairs the operation of the department.

5.24   Reporting for Duty - An officer shall report for duty at the time
       and place specified by his superior officer. At the time he reports,
       an officer shall be mentally and physically fit to perform his duties.
       He shall be properly equipped so that he can immediately assume his
       duties.

5.25   Neglect of Duty - An officer shall not engage in any activity,
       entertainment or personal business which would distract him or
       cause him to neglect his official duties.

5.26   Alertness on Duty - An officer shall remain awake and alert during
       the entire time he remains on duty. If unable to do so, he shall
       immediately report to his superior officer.

5.27   Operation of Vehicles - An officer shall operate an official
       vehicle carefully and prudently. An officer shall obey all laws
       of the State as well as departmental orders pertaining to vehicle
       operation.

5.28   Use of Weapons - An officer shall handle and use weapons with
       extreme care and prudence. An officer shall use weapons in
       strict accordance with established departmental procedures.

5.42    Unsatisfactory Performance - Officers shall maintain sufficient competency of properly perform their duties and assume the responsibilities of their positions. Officers shall perform their duties in a manner which will maintain the highest standards of efficiency in carrying out the functions and objectives of the department. Unsatisfactory performance may be demonstrated by a lack of knowledge in the application of laws required to be enforced and unwillingness or inability to perform assigned tsake, the failure to conform to work standards established for the officer's rank, grade or position, the failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention or absence without leave. In addition to other indications to unsatisfactory performance the following will be considered further evidence of unsatisfactory performance; repeated poor evaluations or written record of repeated infractions of rules, regulations, directives or orders of the department.

5.43    Subject to call Off Duty - A member shall have regularly scheduled hours assigned for active duty and when not so employed, shall be considered off-duty. A member shall, however, be subject to being called to duty as needed and subject to orders from competent authority and emergency calls from citizens.

5.44    Abuse of Process - An officer shall not make any false accusation or criminal charge, or intentionally manufacture, falsify, deatroy, or withhold evidence or information.

5.45    Payment of Debts - An officer shall not incur any financial obligation which he knows or should know he cannot meet. An officer shall pay his just debts when due. Financial difficulties stemming from unforeseen medical expenses or personal disaster shall not be cause for discipline, provided that the officer has undertaken a good faith effort to settle all accounts. An officer shall not cosign a note for any superior officer.

5.46    Carrying of Firearms - An officer, when off duty, should carry an authorized firearm if he is traveling in public places within the jurisdiction of his department. When wearing civilian clothes, the officer shall conceal his firearm from public view. While off-duty and outside the local jurisdication, an officer need not carry a firearm.

5.47    Falsifying Over-time Records - Any person who intentionally claims over-time or compensatory time for work not actually performed, will be immediately dismissed from the service.

5.48    Physical Fitness for Duty - All members of the department shall maintain good physical condition so they can handle the strenuous physical contact often required of a law enforcement officer.

1.   Failure to observe and give effect to the policies of the department.

2.   Failure to obey orders.

3.   Failure to make proper report of offenses investigated, observed or reported.

Failure of a commanding officer to immediately relieve from duty any subordinate officer for any of the following shall constitute dereliction of duty on the part of a supervisory officer:

4.   Willful disobedience of any lawful order issued to him.

5.   For disrespect shown to a Superior Officer.

6.   For cowardice.

7.   For conduct subversive to the good order and discipline of the Department.

In any of the above listed violations a commanding officer shall immediately relieve the offending officer from duty, instruct him to report to the Chief of Police, and make a complete report of the incident.

Instruction From A Supervisor

In issuing instructions or correcting conduct, no supervisory officer shall use abusve or insulting language toward a subordinate.

5.59   Duty to Know

Each officer and employee shall familiarize himself with the Port Isabel Police Department Rules, Regulations, Policies and Procedures as set out in this manual.

Members of the department shall be considered as always on duty for the purpose of discipline.

5.60   Those acts, not specifically set out herein, which involve moral turpitude, or which may bring discredit upon the individual or upon the Police Department, or which may conflict with policies announced by the Department from time to time, if committed by an officer or employee of the Department, will be taken according to the seriousness of the offense in the same manner and degree as if the offense had been specifically set out herein.

5.55    Identification -

    (a)    Officers shall carry their badges and identification cards on their persons at all times except when impractical or dangerous to their safety or to an investigation.

    (b)    Whenever a member takes any police action, he/she shall promptly and courteously identify himself/herself by giving his/her rank and name and other appropriate identification to persons involved unless the exigency of a matter requires immediate response. However, at the first opportunity, such identification shall be made. A member shall also furnish his/her name, rank and assignment to any citizen who may reasonably request same, except when withholding of such information is necessary for the performance of police duties or is authorized by proper authorities.

5.56    Sexual Harassment - Sexual harassment toward any individual by any member of this department is strictly prohibited. Sexual harassment may be defined as, but not restricted to:

    (a)    the making of suggestive, obscene, or sexually aggressive remarks,

    (b)    the making of suggestive, obscene, or sexually aggressive gestures or physical contact, and

    (c)    the unwanted and unwarranted display of suggested sexually aggressive behavior of any kind.

In order to prevent any misunderstanding over such acts, although they may be of an innocent or humorous intent, actions or remarks of any sexual nature should be avoided. For the same reason, fraternization between employees is strongly discourged.

5.57    Security of Weapons - No weapon shall be left unsecured in any public location at any time. This is to include all areas of the police station except private locked offices; desks; locked lockers; approved weapon lockers; and similar such secured areas.

5.58    Dereliction of Duty

Dereliction of duty on the part of a supervisory officer or other members of the Department, prejudicial to the proper performance of the functions of the Department, are causes for disciplinary action and will be punished according to the degree of the offense, the results brought about by the dereliction, and the effect it has upon the discipline, good order and best interest of the Department. The following constitute violations of the Section:

CHAPTER TWENTY-TWO

22.01    SUPERVISORY REPRIMANDS

A.    A supervisory or commanding officer shall have the authority
      to reprimand a subordinate officer for minor infractions.
      Such reprimands, whether oral or written, may include a
      warning, corrective advise, or recommend additional counselin
      or training.  A supervisor properly imposes a reprimand when
      he reasonably determines that the alleged misconduct does not
      require further investigation or action.

B.    After imposing a reprimand, the supervisory or commanding
      officer shall explain that reprimand in a written report
      promptly forwarded to the Chief.

C.    The commanding or supervisory officer shall also promptly
      notify the involved officer that he has the right to have
      a supervisory reprimand reviewed.  If the officer desires
      such review, he shall notify the Chief within five days of
      receiving the supervisory reprimand.  By failing to request
      such review, the officer permanently waives his right to
      such review.

D.    A supervisory or commanding officer shall have the authority
      to temporarily relieve from duty any officer for the balance
      of the working day (with full pay and benefits) if the officer
      by continuing to work, would tend to discredit or impair the
      operation of the department.  The supervisory or commanding
      officer shall immediately notify the Chief in writing of any
      such temporary action.  The Chief shall have the authority to
      continue such relief from duty for cause.

132

I.   Position Title
Police Sergeant

Position Summary:

Entry to this classification is limited to promotion from within the Police Department.  Under general supervision, incumbent may be assigned to law enforcement responsibilities in the:

Supervision and coordination of the activities of a squad of police officers assigned to designated areas of the municipality in the enforcement of criminal and traffic laws and City Ordinances.

Supervision and coordination of activities at the police station.

Investigations to prevent crime or solve criminal cases.

Technical operation to collect evidence at scene of crime or fatal accident, classify and identify finger-prints and photographs evidence for use in criminal and civil cases.

Example of Duties:

(Note:  The following is a sample of duties performed.  The list amy or may not include ALL tasks performed; nor are all duties performed by all position).

1.   Supervises and coordinates activities of squad of Police Officers assigned to designated area of municipality in the enforcement of criminal and traffic laws and City Ordinances.

2.   Observes Police Officers in performance of duties in accident investigations, patrol and enforcement tactics, case preparations, arrest techniques, operation of patrol vehicle and other police activity taking corrective action as required.

3.   Enforces efficient performance of duty.

4.   Investigates and takes necessary actions in emergencies and major incidents.

5.   Inspects uniforms and equipment.

6.   Investigates known or suspected criminals or facts of particular cases to detect planned criminal activities or clues.

7.   Frequents known areas of criminals and becomes familiar with criminals to determine criminal's habits, associates characteristics, aliases, and other personnel information.

8.   Examines scene of crime to obtain clues and gather evidence including development and lifting to latent fingerprints, and photographing and sketching crime scenes and other evidence as applicable.

9.   Prepares assigned cases for court and testifies in court.

133

10. Prepares complete and comprehensive reports on investigations and other reports as required.

11. Interviews and interrogates victim, witnesses and suspects involved in criminal matters; arrests or assists in arrest of criminals or suspects.

12. Investigates and interviews juvenile offenders making appropriate recommendations, and/or taking appropriate actions.

13. Develops and presents programs to civic clubs, public schools and other agencies in prevention and resolving problems relating to human relations or drug and alcohol abuse.

14. Photographs crime or accident scene to obtain record of evidence.

15. Photographs, records physical descriptions, and finger-prints homicide victims and suspects for identification purposes.

16. Performs related duties as required.

Experience:

Two years as a Police Officer preferred.

Abilities Required to Perform Work:

Must have knowledge of police techniques and departmental rules, regulations, and procedures pertaining to patrol, accident investigation, juvenile delinquency arrest and search techniques, techniques and departmental rules, regulations and procedures pertaining to crime against property, crimes of death and injury, crimes of sex and drugs, collection of evidence, and interrogation and interview; legal knowledge including court demeanor, arrest, search and seizure, criminal and juvenile laws; knowledge of basic principles of supervision and departmental rules and regulations relative to personnel practices, training and safety; physical strength and ability to make forceful arrest when necessary; requires emotional and mental stability to work under trying circumstances; ability to pass required physical examination.

Working Conditions and Hazards.

May work at desk, counter, or assigned area in patrol car; depending on work assignment may work rotating shifts including nights, weekends and holidays; subjected to hazards and potential physical dangers inherent to law enforcement work.

Special Requirements and Licenses:

Basic Certificate, Texas Commission on Law Enforcement Officer Standards and Education.

Valid Texas Drivers License

immediately receive any pay increases necessary to insure that they are not compensated less than the new employee.

### Section 603:  Promotion Compensation

A newly promoted employee shall normally be compensated at the lowest step which would provide an increase in pay over that received in the lower level job.

### Section 604:  Individual Increases (Merit Pay System)

It is the policy of the City of Port Isabel to place a high priority and emphasis on having well-trained, qualified, productive personnel within its ranks.  The City therefore acknowledges that an effective employee performance system can help to foster greater productivity, morale, and efficiency within its divisions, departments, and employees.  These individual increases are considered to be an essential means of providing compensation rewards and recognition to employees for their exceptional ability, service, efficiency, and contribution to the City.

The compensation plan, then, is designed to provide pay increases to employees to reward ability, efficiency, and increased value to the City through length of service and performance. Individual increases, if granted, shall be granted at the end of each fiscal year (to be included in the next year's Annual Budget), or upon recommendation of department heads, who shall give careful consideration to the ability, attitude, and performance record of each employee.  These recommendations are subject to approval, modification, or disapproval of the City Manager, who will then present his findings to the City Commission for final concurrence and ratification thereof.

### Section 605:  Compensatory Time

Compensatory Time is defined as time off granted to an employee by a previous agreement between the department heads and supervisory personnel.  Under compensatory time, there is no change in the weekly or biweekly salaries.  The sole purpose is to trade time during which work is performed for time off at a time more convenient for the City and the employee.

Compensatory time may be substituted for overtime compensation at the request of the employee and at the discretion of the department head, or in the circumstance where the financial position of the City so warrants, as in the case of budgetary shortage or economic emergency.

Compensatory time will be earned and accumulated at the rate of time and one-half and may be taken at any time that is mutually agreeable to both the employee and the supervisor. Comp. time should be given within a reasonable amount of time of its accumulation, so long as it does not unduly disrupt the City's operations.  Accumulation of comp. time shall be limited to fifteen (15) days total, and if not used shall be payable at the rate of employment earned upon separation from City service.

13

### Section 606:  Overtime

Overtime is defined as the time in excess of 80 hours which is actually worked in a two week pay period (day shift Monday through night shift Sunday).  Overtime will be paid to all "non-exempt" employees in accordance with applicable State and Federal legislation.  Before becoming eligible for overtime, a non-exempt employee must meet the 80 hour obligation per two week pay period.

Exempt employees are not eligible for overtime pay and are defined as all Department heads and Assistant Department heads who qualify as Executive and/or Administrative employees as defined in Section 12 (a) of FSLA.  Police, fire, and EMS ersonnel are partially exempt from overtime under Section 207 (k) of FSLA.

**Circumstance in Which Overtime May be Authorized:**

1.  Overtime may be authorized only when it is not possible to adjust staffing patterns and/or employee work schedules to provide essential staffing in the following types of circumstances:

    A.  Emergency Circumstances
        1.  These are adverse circumstances of a temporary nature which reduce normal staffing or increase staffing requirements.  For example:
            a.  The unexpected absence of an employee whose positions must be filled to avoid a disruption of necessary services;
            b.  The necessity to immediately perform an unexpected heavier than normal volume of work to avoid disruption of necessary services;
            c.  Situations which uncontrollable, such as natural disasters, disruption of utilities, etc.

    B.  Non-emergency Circumstances
        1.  These are situations in which overtime work is considered to be the best way to make necessary staff available to handle a particular situation.  For example:
            a.  To provide essential staffing where vacancies exist in a department due to the unavailability of qualified applicants;
            b.  To perform an unusually heavy volume of work of a temporary nature in the implementation of an approved program;
            c.  To perform work which cannot be performed during normal working hours without disrupting necessary activities or services.

*** KVP-757 ***

DAY FRIDAY

| COMPLAINT NUMBER | UNIT NO. | 10 SIGN. | TIME REC. | TIME ENRT. | TIME ARRIV. | TIME IN SERVICE | COMPLAINANT & ADDRESS / TRAFFIC STOPS |
|---|---|---|---|---|---|---|---|
| 98-1186 | 112 | 50 | 1338 | | 1340 | 1342 | MINOR 10-50 / GARZA 4 BLVD |
| | 117 | 41 | 1345 | | | 1345 | 10-8 |
| | 208 | 6 | 1346 | | | 2-7 | 10-41 |
| | 112 | 27 | 1349 | | | 1412 | PARRISH, CRAIG   10-18-74 |
| | 112 | 27 | 1404 | | | 1412 | 1253 723 |
| | 112 | 6 | 1420 | | | 2-7 | |
| | 117 | 72 | 1436 | | | 2006 | |
| | 112 | 6 | 1436 | | | 1436 | 10-8 |
| | 109 | 38 | 1511 | | | 1511 | 0425 OT |
| | 117 | 6 | 1521 | | | 1530 | 1654 ILLINOIS 9-1-1 MONTELONGO, RMA |
| | 109 | 256 | 1524 | | 1524 | 1524 | YLYIIC 4 N 34 CGH |
| | 109 | 38 | 1546 | | 1554 | 1554 | 0173 ZF |
| | 109 | 27 | 1550 | | | 1554 | 10 21 9463 100 + CITY LIMITS |
| | 404 | 28 | 1555 | | | 1555 | YL Z 60 F |
| | 116 | 8 | 1609 | | | 1609 | 10-8 |
| 98-1187 | 116 | 38 | 1617 | | | 1700 | 247 TDG 9-TAMPS |
| | 117 | 8 | 1623 | | 1623 | 1623 | 10-8 |
| | 117 | 6 | 1624 | | 1624 | 1626 | 301 MANATON / GARZA, RODOLFO  993-6258 |
| | 116 | 76 | 1621 | | 1623 | 1700 | 2-7 INSTANDARD |
| | 116 | 52 | 1643 | | | 1700 | 10-52   (BAY AREA) |
| | 111 | 6 | 1654 | | | 1700 | ALLEN CHRISTIAN APTS |

100 + CITY LIMITS

(PORTABLE)

100 + BRIDGE

1497

THE STATE OF TEXAS     )
COUNTY OF CAMERON     )

Before me the undersigned authority on this day personally appeared
_____Ronald Moore_____ who after being by me duly sworn did
depose and say:

During the grave yard shift sometime in July, while doing my security chec
at the high school I heard some music coming from the auto mechanics department
I advised Communication officer Nadine McDowell about the music and asked her t
send out another unit (officer) to my location. Comm. Officer McDowell asked m
if I had an open door. I advised her that I had not checked the doors yet, but
there was music coming from inside and I wanted a unit enroute to my location
just in case there was an open door. Comm. officer McDowell the dispatch offic
Javier Gutierrez to my location at the rear of the high school. After offficer
Gutierrez told dispatch that he was enroute to my location,Sgt. Jorge Alaniz
asked Comm. Officer McDowell what traffic (whats going on) I had at the high
school. Comm. Officer McDowell advised Sgt. Alaniz that I had Music coming fro
the auto Mechanics department. Sgt. Alaniz then told officer Gutierrez to
disregard the last transmition from dispatch. Sgt. Alaniz then told me that t
music was coming from the weight room. I then checked the doors to the auto
mechanics department and found that they were secured. No unit (officer) came
to back me up nor give me a roll by.
THIS IS A TRUE AND CORRECT STATEMENT TO THE BEST OF MY MEMORY AND KNOWLEDGE.

_____

SUBSCRIBED AND SWORN to and before me this _____day of_____
A.D. 19_____.

_____
NOTARY PUBLIC IN AND FOR
CAMERON COUNTY, TEXAS.



# Law Enforcement Code of Ethics

**As a Law Enforcement Officer**, my fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the peaceful against violence or disorder; and to respect the Constitutional rights of all men to liberty, equality and justice.

**I will** keep my private life unsullied as an example to all; maintain courageous calm in the face of danger, scorn, or ridicule; develop self-restraint; and be constantly mindful of the welfare of others. Honest in thought and deed in both my personal and official life, I will be exemplary in obeying the laws of the land and the regulations of my department. Whatever I see or hear of a confidential nature or that is confided to me in my official capacity will be kept ever secret unless revelation is necessary in the performance of my duty.

**I will** never act officiously or permit personal feelings, prejudices, animosities or friendships to influence my decisions. With no compromise for crime and with relentless prosecution of criminals, I will enforce the law courteously and appropriately without fear or favor, malice or ill will, never employing unnecessary force or violence and never accepting gratuities.

**I recognize** the badge of my office as a symbol of public faith, and I accept it as a public trust to be held so long as I am true to the ethics of the police service. I will constantly strive to achieve these objectives and ideals, dedicating myself before God to my chosen profession . . . law enforcement.

Compliments of Texas Commission on Law Enforcement Officer Standards and Education

B.  Investigations

    The Chief of Police will order all internal investigations.

14.02   Investigative Steps:

    A.  Criminal Prosecution - Internal affairs officers assigned
by the Chief of Police, at an early stage of any internal
investigation, will have to decide whether the evidence and
the allegation warrant criminal prosecution of the officer
or employee.  If it appears that a criminal charge may be
brought, the Chief of Police will be notified and the case
will be handled by C.I.D. or any officer the Chief of Police
may designate.  Once the case is re-assigned as criminal
then the officer's must adhere to all the restrictions of a
normal criminal investigation.  The officer will be given
his miranda type warnings and will be afforded all his rights
as given to any other suspect.  An officer or employee may;
however, face both criminal and internal charges, but evidence
gathered for internal discipline shall not be used in the
criminal prosecution.  The two investigators, (criminal and
internal affairs) must keep both cases separte and apart.

    B.  Failure to Cooperate - All officers and employees of the
police department are expected to cooperate in all internal
investigations.  Any officers or employee who fails to
cooperate, fails to obey an order, such failure may and will
be the basis for a further charge against the officer or
employee.  The officer or employee must be informed that his
failure to cooperate may lead to further disciplinary action,
including discharge.  The warning may be oral, followed by a
direct order in writing.  The officer or employee shall
acknowledge receipt of the written warning or direct order by
dating and signing his name to the original and one copy of
said order.

    C.  Questioning the Officer or Employee - One of the most effi-
cient methods of investigating a complaint against an officer
or employee is to question the person.  The questions asked
officers or employees must be narrowly and directly related
to the performance of their duties and the on going investi-
gation.  Officer's or employee do not have the right to refuse
to answer questions that are directly and narrowly related
to their official duties, and if they refuse to answer questions
they may be ordered to do so.  Any incriminating statements
by them, obtained under direct order, will not be admissable
in a criminal prosecution, but, however, will be admissable in
an administrative hearing arising out of the alleged misconduct.
Officers or employees will not be forced to waive their privilege
against self-incrimination under threat of losing their jobs,
but, if the officer or employee refuse to answer, he or she may
be disciplined or even discharged for insubordination.

*Ronell Meir*    9-3-98

2.07  JOB DESCRIPTIONS

Job descriptions are issued to personnel and are filed in
the Port Isabel Police Department personnel files.  The
job descriptions serve to inform personnel and those inte-
rested in employment or reassignment what is generally
expected of a person in a particular position.

2.08  AUTHORITY

Authority is the legitimate power which is given to the
City of Port Isabel to manage the Department's personnel
and other resources.  The City of Port Isabel delegates
authority to other personnel as he believes will best
serve Department goals.

2.09  ACCOUNTABILITY

F   sons receiving authority over another person or
r  .eiving authority to carry out job duties are ac-
countable to the City of Port Isabel either directly or
indirectly as indicated by their job description or by
special instructions from the City of Port Isabel or his
designee.

2.10  RESPONSIBILITY

Personnel of the Department accept responsibility for
performing the duties indicated in the job description
of their position as directed by their supervisor.
Additionally, personnel are guided in their performance
by the goals and objectives of the Department and
specifically by the policies, procedures and rules
contained in the Manaul.

2.11  VERBAL DIRECTIVES

Personnel promptly obey verbal instructions and orders
of a superior officer.  All such instructions or orders
are obeyed only if lawful.

2.12  LIMITED DURATION DIRECTIVES

Certain written directives are required to inform
personnel concerning matters which are normally of
limited duration.  Such directives specify the per-
sons affected and the applicable time period involved.

Personnel comply with written directives.

*[signature]*  9-4-98

5.06   Insubordination - An officer shall promptly obey any lawful order
       of a superior officer. "Superior Officer" includes any officer
       having authority to exercise command in a given situation. In-
       subordination includes the willful disobedience of any order law-
       fully issued by a superior officer, or any insolent language or
       conduct toward a superior officer.

5.07   Criticism - An officer shall not publicly criticize or ridicule
       the department, its policies, or its members by talking, writing,
       or otherwise make defamatory, obscene or unlawful statements which
       impair the operation of the department.

5.08   Immoral Conduct - An officer shall maintain a level of moral
       conduct in his personal affairs in keeping with the highest standards
       of the law enforcement profession. No officer shall participate
       in any incident involving moral turpitude which may impair his
       ability to perform as an officer or cause the department to suffer
       disrepute.

5.09   Use of Intoxicants -

       (a)   On Duty or in Uniform - An officer shall not use intoxicants
       (e.g., alcohol or other drug) while in uniform. An officer shall
       not report for duty, or be on duty, while under the influence of
       any intoxicants to any degreee whatsover. A plainclothes officer
       on duty may only drink alcoholic beverages (but shall not become
       intoxicated) when such activity is appropriate in furthering a
       legitmate police mission.

       (b)   Alcohol in Police Installations - An offic - shall not bring
       into or store alcoholic beverages in any police facility or vehicle,
       except those which may be held for evidence.

       (c)   Off Duty - An officer, while off duty, shall refrain from
       consuming intoxicating beverages to the extent that it results
       in offense behavior which might discredit the department.

       (d)   Non-alcoholic Drugs - An officer shall not use narcotics,
       hallucinogens, or dangerous drugs except when prescribed by a
       physician or dentist. Whenever an officer must take dangerous
       drugs, narcotics, or hallucinogens, the officer shall so notify
       his supervisor.

5.10   Gambling - An officer shall not engage or participate in gambling
       in any form while on duty or in uniform or while in any departmental
       facility. He shall not engage in any form of illegal gambling at
       any time, except in the performance of duty and while acting under
       proper and specific orders from his superior.

3

5.20   Out-of-Uniform Enforcement - An officer not in uniform shall not seek an arrest based on minor traffic violations and Class C misdemeanors. (This exception does not apply to flagrant or dangerous offenses such as "Failure to stop and give information," "Failure to stop and render aid," or "driving while intoxicated.")

5.21   Request for Identification - An officer shall politely furnish his name and badge number to any person requesting such information except when instructed otherwise by proper authority or when necessary in the performance of police work.

5.22   Courtesy - An officer shall be courteous to the public. An officer shall perform his duties with tact, by controlling his temper and exercising the utmost patience and discretion. An officer shall not engage in argumentative discussions even in the face of extreme provocation. In the performance of his duties, he shall not use coarse, violent, profane or insolent language or gestures. An officer shall not express any prejudice concerning race, religion, politics, national origin or similar personal characteristics.

5.23   Unbecoming Conduct - An officer shall always conduct himself (both on and off duty) in a way which reflects most favorable on the department. Unbecoming conduct includes unjustified behavior which brings the department into disrepute, discredits a member of the department or impairs the operation of the department.

5.24   Reporting for Duty - An officer shall report for duty at the time and place specified by his superior officer. At the time he reports, an officer shall be mentally and physically fit to perform his duties. He shall be properly equipped so that he can immediately assume his duties.

5.25   Neglect of Duty - An officer shall not engage in any activity, entertainment or personal business which would distract him or cause him to neglect his official duties.

5.26   Alertness on Duty - An officer shall remain awake and alert during the entire time he remains on duty. If unable to do so, he shall immediately report to his superior officer.

5.27   Operation of Vehicles - An officer shall operate an official vehicle carefully and prudently. An officer shall obey all laws of the State as well as departmental orders pertaining to vehicle operation.

5.28   Use of Weapons - An officer shall handle and use weapons with extreme care and prudence. An officer shall use weapons in strict accordance with established departmental procedures.

5.42  Unsatisfactory Performance - Officers shall maintain sufficient competency of properly perform their duties and assume the responsibilities of their positions.  Officers shall perform their duties in a manner which will maintain the highest standards of efficiency in carrying out the functions and objectives of the department.  Unsatisfactory performance may be demonstrated by a lack of knowledge in the application of laws required to be enforced and unwillingness or inability to perform assigned tasks, the failure to conform to work standards established for the officer's rank, grade or position, the failure to take appropriate action on the occasion of a crime, disorder, or <u>other condition deserving police attention</u> or absence without leave.  In addition to other indications to unsatisfactory performance the following will be considered further evidence of unsatisfactory performance; repeated poor evaluations or written record of repeated infractions of rules, regulations, directives or orders of the department.

5.43  Subject to call Off Duty - A member shall have regularly scheduled hours assigned for active duty and when not so employed, shall be considered off-duty.  A member shall, however, be subject to being called to duty as needed and subject to orders from competent authority and emergency calls from citizens.

5.44  Abuse of Process - An officer shall not make any false accusation or criminal charge, or intentionally manufacture, falsify, destroy, or withhold evidence or information.

5.45  Payment of Debts - An officer shall not incur any financial obligation which he knows or should know he cannot meet.  An officer shall pay his just debts when due.  Financial difficulties stemming from unforeseen medical expenses or personal disaster shall not be cause for discipline, provided that the officer has undertaken a good faith effort to settle all accounts.  An officer shall not cosign a note for any superior officer.

5.46  Carrying of Firearms - An officer, when off duty, should carry an authorized firearm if he is traveling in public places within the jurisdiction of his department.  When wearing civilian clothes, the officer shall conceal his firearm from public view.  While off-duty and outside the local jurisdiction, an officer need not carry a firearm.

5.47  Falsifying Over-time Records - Any person who intentionally claims over-time or compensatory time for work not actually performed, will be immediately dismissed from the service.

5.48  Physical Fitness for Duty - All members of the department shall maintain good physical condition so they can handle the strenuous physical contact often required of a law enforcement officer.

5.55    Identification -

    (a)    Officers shall carry their badges and identification cards
        on their persons at all times except when impractical or
        dangerous to their safety or to an investigation.

    (b)    Whenever a member takes any police action, he/she shall
        promptly and courteously identify himself/herself by
        giving his/her rank and name and other appropriate
        identification to persons involved unless the exigency
        of a matter requires immediate response.  However, at the
        first opportunity, such identification shall be made.  A
        member shall also furnish his/her name, rank and assignment
        to any citizen who may reasonably request same, except when
        withholding of such information is necessary for the performance
        of police duties or is authorized by proper authorities.

5.56    Sexual Harassment - Sexual harassment toward any individual by any
    member of this department is strictly prohibited.  Sexual harassment
    may be defined as, but not restricted to:

    (a)    the making of suggestive, obscene, or sexually aggressive
        remarks,

    (b)    the making of suggestive, obscene, or sexually aggressive
        gestures or physical contact, and

    (c)    the unwanted and unwarranted display of suggested sexually
        aggressive behavior of any kind.

    In order to prevent any misunderstanding over such acts,
    although they may be of an innocent or humorous intent, actions
    or remarks of any sexual nature should be avoided.  For the same
    reason,fraternization between employees is strongly discourged.

5.57    Security of Weapons - No weapon shall be left unsecured in any
    public location at any time.  This is to include all areas of the
    police station except private locked offices; desks; locked
    lockers; approved weapon lockers; and similar such secured areas.

5.58    Dereliction of Duty

    Dereliction of duty on the part of a supervisory officer or other
    members of the Department, prejudicial to the proper performance of
    the functions of the Department, are causes for disciplinary action
    and will be punished according to the degree of the offense, the
    results brought about by the dereliction, and the effect it has upon
    the discipline, good order and best interest of the Department.  The
    following constitute violations of the Section:

1. Failure to observe and give effect to the policies of the department.

2. Failure to obey orders.

3. Failure to make proper report of offenses investigated, observed or reported.

Failure of a commanding officer to immediately relieve from duty any subordinate officer for any of the following shall constitute dereliction of duty on the part of a supervisory officer:

4. Willful disobedience of any lawful order issued to him.

5. For disrespect shown to a Superior Officer.

6. For cowardice.

7. For conduct subversive to the good order and discipline of the Department.

In any of the above listed violations a commanding officer shall immediately relieve the offending officer from duty, instruct him to report to the Chief of Police, and make a complete report of the incident.

Instruction From A Supervisor

In issuing instructions or correcting conduct, no supervisor officer shall use abusve or insulting language toward a subordiate.

5.59   Duty to Know

Each officer and employee shall familiarize himself with the Port Isabel Police Department Rules, Regulations, Policies and Procedures as set out in this manual.

Members of the department shall be considered as always on duty for the purpose of discipline.

5.60   Those acts, not specifically set out herein, which involve moral turpitude, or which may bring discredit upon the individual or upon the Police Department, or which may conflict with policies announced by the Department from time to time, if committed by an officer or employee of the Department, will be taken according to the seriousness of the offense in the same manner and degree as if the offense had been specifically set out herein.

CHAPTER TWENTY-TWO

22.01   SUPERVISORY REPRIMANDS

A.   A supervisory or commanding officer shall have the authority
to reprimand a subordinate officer for minor infractions.
Such reprimands, whether oral or written, may include a
warning, coorective advise, or recommend additional counseling
or training.   A supervisor properly imposes a reprimand when
he reasonably determines that the alleged misconduct does not
require further investigation or action.

B.   After imposing a reprimand, the supervisory or commanding
officer shall explain that reprimand in a written report
promptly forwarded to the Chief.

C.   The commanding or supervisory officer shall also promptly
notify the involved officer that he has the right to have
a supervisory reprimand reviewed.   If the officer desires
such review, he shall notify the Chief within five days of
receiving the supervisory reprimand.   By failing to request
such review, the officer permanently waives his right to
such review.

D.   A supervisory or commanding officer shall have the authority
to temporarily relieve from duty any officer for the balance
of the working day (with full pay and benefits) if the officer,
by continuing to work, would tend to discredit or impair the
operation of the department.   The supervisory or commanding
officer shall immediately notify the Chief in writing of any
such temporary action.   The Chief shall have the authority to
continue such relief from duty for cause.

132

I.   Position Title
Police Sergeant

Position Summary:

Entry to this classification is limited to promotion from
within the Police Department.  Under general supervision,
incumbent may be assigned to law enforcement responsibilities
in the:

Supervision and coordination of the activities of a
squad of police officers assigned to designated areas
of the municipality in the enforcement of criminal and
traffic laws and City Ordinances.

Supervision and coordination of activities at the
police station.

Investigations to prevent crime or solve criminal cases.

Technical operation to collect evidence at scene of
crime or fatal accident, classify and identify finger-
prints and photographs evidence for use in criminal
and civil cases.

Example of Duties:

(Note:  The following is a sample of duties performed.  The list
amy or may not include ALL tasks performed; nor are all duties
performed by all position).

1.   Supervises and coordinates activities of squad of Police
Officers assigned to designated area of municipality in
the enforcement of criminal and traffic laws and City
Ordinances.

2.   Observes Police Officers in performance of duties in
accident investigations, patrol and enforcement tactics,
case preparations, arrest techniques, operation of patrol
vehicle and other police activity taking corrective action
as required.

3.   Enforces efficient performance of duty.

4.   Investigates and takes necessary actions in emergencies
and major incidents.

5.   Inspects uniforms and equipment.

6.   Investigates known or suspected criminals or facts of
particular cases to detect planned criminal activities
or clues.

7.   Frequents known areas of criminals and becomes familiar
with criminals to determine criminal's habits, associates
characteristics, aliases, and other personnel information.

8.   Examines scene of crime to obtain clues and gather evidence
including development and lifting to latent fingerprints,
and photographing and sketching crime scenes and other
evidence as applicable.

9.   Prepares assigned cases for court and testifies in court.

133

10. Prepares complete and comprehensive reports on investigations and other reports as required.

11. Interviews and interrogates victim, witnesses and suspects involved in criminal matters; arrests or assists in arrest of criminals or suspects.

12. Investigates and interviews juvenile offenders making appropriate recommendations, and/or taking appropriate actions.

13. Develops and presents programs to civic clubs, public schools and other agencies in prevention and resolving problems relating to human relations or drug and alcohol abuse.

14. Photographs crime or accident scene to obtain record of evidence.

15. Photographs, records physical descriptions, and finger-prints homicide victims and suspects for identification purposes.

16. Performs related duties as required.

Experience:

Two years as a Police Officer preferred.

Abilities Required to Perform Work:

Must have knowledge of police techniques and departmental rules, regulations, and procedures pertaining to patrol, accident investigation, juvenile delinquency arrest and search techniques, techniques and departmental rules, regulations and procedures pertaining to crime against property, crimes of death and injury, crimes of sex and drugs, collection of evidence, and interrogation and interview; legal knowledge including court demeanor, arrest, search and seizure, criminal and juvenile laws; knowledge of basic principles of supervision and departmental rules and regulations relative to personnel practices, training and safety; physical strength and ability to make forceful arrest when necessary; requires emotional and mental stability to work under trying circumstances; ability to pass required physical examination.

Working Conditions and Hazards.

May work at desk, counter, or assigned area in patrol car; depending on work assignment may work rotating shifts including nights, weekends and holidays; subjected to hazards and potential physical dangers inherent to law enforcement work.

Special Requirements and Licenses:

Basic Certificate, Texas Commission on Law Enforcement Officer Standards and Education.

Valid Texas Drivers License

immediately receive any pay increases necessary to insure that they are not compensated less than the new employee.

### Section 603: Promotion Compensation

A newly promoted employee shall normally be compensated at the lowest step which would provide an increase in pay over that received in the lower level job.

### Section 604: Individual Increases (Merit Pav System)

It is the policy of the City of Port Isabel to place a high priority and emphasis on having well-trained, qualified, productive personnel within its ranks. The City therefore acknowledges that an effective employee performance system can help to foster greater productivity, morale, and efficiency within its divisions, departments, and employees. These individual increases are considered to be an essential means of providing compensation rewards and recognition to employees for their exceptional ability, service, efficiency, and contribution to the City.

The compensation plan, then, is designed to provide pay increases to employees to reward ability, efficiency, and increased value to the City through length of service and performance. Individual increases, if granted, shall be granted at the end of each fiscal year (to be included in the next year's Annual Budget), or upon recommendation of department heads, who shall give careful consideration to the ability, attitude, and performance record of each employee. These recommendations are subject to approval, modification, or disapproval of the City Manager, who will then present his findings to the City Commission for final concurrence and ratification thereof.

### Section 605: Compensatorv Time

Compensatory Time is defined as time off granted to an employee by a previous agreement between the department heads and supervisory personnel. Under compensatory time, there is no change in the weekly or biweekly salaries. The sole purpose is to trade time during which work is performed for time off at a time more convenient for the City and the employee.

Compensatory time may be substituted for overtime compensation at the request of the employee and at the discretion of the department head, or in the circumstance where the financial position of the City so warrants, as in the case of budgetary shortage or economic emergency.

Compensatory time will be earned and accumulated at the rate of time and one-half and may be taken at any time that is mutually agreeable to both the employee and the supervisor. Comp. time should be given within a reasonable amount of time of its accumulation, so long as it does not unduly disrupt the City's operations. Accumulation of comp. time shall be limited to fifteen (15) days total, and if not used shall be payable at the rate of employment earned upon separation from City service.

13

CSMPDF - www.testio.com